No. _____

IN THE

# United States Court of Appeals for the Ninth Circuit

## IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION
*(Multidistrict Litigation)*

UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC,

*Defendants-Petitioners*,

v.

UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION,

*Respondent*,

A.G., an individual, A.H.M., an individual, A.M., an individual, A.P., an individual, ARIANE CUNNINGHAM, an individual, ASHLEY JONES, an individual, AUNDREYA ROLLO, an individual, B.R., an individual, BECK GLASER, an individual, C.S., an individual, C.T., an individual, CYNTHIA CRAWFORD, an individual, D.P., an individual, E.C., an individual, E.D., an individual, E.E., an individual, E.M., an individual, E.R., an individual, ELUNDA MURPHY, an individual, H.B., an individual, H.D., an individual, HEATHER WORZALLA, an individual, J.B., an individual, J.C., an individual, JANE DOE, an individual, JANE DOE F-1, an individual, JANE DOE F-2, an individual, JANE DOE F-3, an individual, JANE DOE LS 13, an individual, JANE DOE LS 134, an individual, JANE DOE LS 144, an individual, JANE DOE LS 149, an individual, JANE DOE LS 154, an individual, JANE DOE LS 155, an individual, JANE DOE LS 158, an individual, JANE DOE LS 159, an individual, JANE DOE LS 16, an individual, JANE DOE LS 164, an individual, JANE DOE LS 203, an individual, JANE DOE LS 218, an individual, JANE DOE LS 231, an individual, JANE DOE LS 237, an individual, JANE DOE LS 238, an individual, JANE DOE LS 249, an individual,

JANE DOE LS 250, an individual, JANE DOE LS 257, an individual, JANE DOE LS 259, an individual, JANE DOE LS 260, an individual, JANE DOE LS 293, an individual, JANE DOE LS 320, an individual, JANE DOE LS 348, an individual, JANE DOE LS 354, an individual, JANE DOE LS 37, an individual, JANE DOE LS 63, an individual, JANE DOE LS 67, an individual, JANE DOE LS 75, an individual, JANE DOE LS 90, an individual, JANE DOE LS 91, an individual, JANE DOE LSA 340, an individual, JESSICA FRESHWATER, an individual, JILLIAN SULLIVAN, an individual, JOSHUA CORMIER, an individual, K.O., an individual, KATHERINE HYLIN, an individual, KATIE ESPINOSA, an individual, KELLY COWSERT, an individual, M.H., an individual, M.R., an individual, MELANIE HALSTENBERG, an individual, N.F., an individual, N.R., an individual, R.M., an individual, R.T., an individual, S.D., an individual, S.W., an individual, TAYLOR GAVIN, an individual, TRAVON BROWN, an individual, V.R., an individual, WILLIAM ADORNO, on behalf of his minor child, I.O.,

*Real Parties in Interest.*

---

On Petition for a Writ of Mandamus to the United States
Judicial Panel on Multidistrict Litigation
(MDL Docket No. 3084)

---

**UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S
PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

---

ROBERT ATKINS (SBN: 2210771)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email: ratkins@paulweiss.com

*Counsel for Defendants-Petitioners*
UBER TECHNOLOGIES, INC.;
RASIER, LLC; and RASIER-CA, LLC

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendants-Petitioners Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") submit this Corporate Disclosure Statement.

Uber Technologies, Inc. is a publicly held corporation with no parent company. Based solely on SEC filings regarding beneficial ownership of Uber's stock, Uber is unaware of any shareholder who beneficially owns ten percent or more of Uber's outstanding stock. Rasier, LLC and Rasier-CA, LLC are wholly owned subsidiaries of Uber Technologies, Inc.

# **TABLE OF CONTENTS**

STATEMENT OF JURISDICTION................................................................1

PRELIMINARY STATEMENT ..................................................................1

ISSUE PRESENTED ..................................................................................4

RELIEF SOUGHT ......................................................................................4

STATEMENT OF FACTS ..........................................................................4

    A.   TNCs Are Regulated by Different Statutes, Regulations, and Laws
On the Local Level That Vary from State to State ...................................5

    B.   The California Cases and the Forum Non Conveniens Dismissals ..........6

    C.   The District Court Actions .......................................................................8

    D.   The MDL Motion and Transfer Order ...................................................10

ARGUMENT ............................................................................................13

I.    Uber Has No Other Adequate Means To Obtain Relief .................................14

II.   Uber Has A Clear and Indisputable Right To Relief ......................................14

    A.   The Panel Clearly Erred As a Matter of Law By Disregarding the
Fundamental Legal Issues That Vary From State to State.......................15

        1.   *The Panel Clearly Erred In Finding That Non-Common Issues
Are Not "At The Root Of The Litigation"* ........................................15

        2.   *The Panel Clearly Erred in Disregarding State-by-State
Disparities in the Other Fundamental Legal Questions* .................16

    B.   The Panel Clearly Erred in Failing to Consider that the Multitude
of Individual Issues Will Predominate Over the Few Common
Issues ......................................................................................................19

        1.   *The Panel Clearly Erred by Mischaracterizing Individual
Issues As Common* ..........................................................................19

2. *The Panel Clearly Erred By Failing to Consider The Numerous Other Individual Factual Issues* ......................................21

C. The Panel Clearly Erred By Expressly Declining to Consider Myriad Highly-Individualized Issues Relating to the Drivers' Third-Party Fault and Liability ................................................................23

D. The Panel Clearly Erred In Concluding That Centralization Would Promote Convenience and Efficiency ........................................26

E. The Panel Clearly Erred In Concluding that Uber's Terms of Use Did Not Foreclose Transfer ......................................................29

III. Mandamus Is Appropriate ..................................................................30

CONCLUSION ..............................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Agent Orange Prod. Liab. Litig.*,
818 F.2d 145 (2d Cir. 1987) ...............................................................26

*Bauman* v. *U.S. Dist. Ct.*,
557 F.2d 650 (9th Cir. 1977) ......................................................14, 30

*Branham* v. *Ford Motor Co.*,
390 S.C. 203 (2010).............................................................................18

*Cheney* v. *U.S. Dist. Court for Dist. of Columbia*,
542 U.S. 367 (2004).....................................................................13, 14

*Cordas* v. *Uber Techs., Inc.*,
228 F. Supp. 3d 985 (N.D. Cal. 2017).................................................30

*In re DIRECTV, Inc., Fair Labor Standards Act (FLSA) and Wage &*
*Hour Litig.*,
84 F. Supp. 3d 1373 (J.P.M.L. 2015) ...........................................16, 27

*Doe* v. *Uber Techs., Inc.*,
551 F. Supp. 3d 341 (S.D.N.Y. 2021) .................................................17

*In re Electrolux Dryer Prods. Liab. Litig.*,
978 F. Supp. 2d 1376 (J.P.M.L. 2013) ................................................19

*FedEx Ground Package Sys., Inc.* v. *U.S. Judicial Panel on*
*Multidistrict Litig.*,
662 F.3d 887 (7th Cir. 2011) ......................................................13, 14

*Graff* v. *Motta*,
695 A.2d 486 (R.I. 1997).....................................................................24

*Gregg* v. *Ameriprise Financial, Inc.*,
245 A.3d 637 (Pa. 2021)......................................................................18

*In re Healthextras Ins. Marketing & Sales Practices Litig.*,
24 F. Supp. 3d 1376 (J.P.M.L. 2014) ..................................................16

*Karnoski* v. *Trump*,
926 F.3d 1180 (9th Cir. 2019) ...................................................13

*In re Kirkland*,
75 F.4th 1030 (9th Cir. 2023) ...................................................14

*Lewis Tree Serv., Inc.* v. *Lucent Techs.*,
211 F.R.D. 228 (S.D.N.Y. 2002) ...............................................18

*Lewis* v. *Lead Indus. Assoc.*,
178 N.E. 3d 1046 (Ill. 2020) ....................................................18

*McReynolds* v. *Krebs*,
725 S.E.2d 584 (Ga. 2012) .......................................................24

*Meyer* v. *Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) .......................................................30

*In re Mortg. Electronic Registration Sys., Inc.*,
754 F.3d 772 (9th Cir. 2014) ....................................................14

*Pacific Car & Foundry Co.* v. *Pence*,
403 F.2d 949 (9th Cir. 1968) ....................................................28

*Pedeferri* v. *Seidner Enters.*,
216 Cal. App. 4th 359 (2013) ...................................................24

*In re Rite Aid Corp. Wage & Hour Employment Pracs. Litig.*,
655 F. Supp. 2d 1376 (J.P.M.L. 2009) ......................................16

*Sunshine Beauty Supplies, Inc.* v. *U.S. Dist. Ct. for the Cent. Dist. of Cal.*,
872 F.2d 310 (9th Cir. 1989), *abrogated on other grounds by Cortez Byrd Chips, Inc.* v. *Bill Harbert Constr. Co.*, 529 U.S. 193 (2000) ................................................................................30

*In re Title Ins. Real Estate Settlement Procs. Act (RESPA) & Antitrust Litig.*,
560 F. Supp. 2d 1374 (J.P.M.L. 2008) ......................................16

*Tyler* v. *Uber Techs., Inc.*,
No. 19-CV-03492, ECF No. 27 (D.D.C. Sept. 17, 2020).............30

*In re Uber Technologies, Inc., Wage & Hour Employment Practices*,
158 F. Supp. 3d 1372 (J.P.M.L. 2016) ...............................................16

*In re Varsity Spirit Athlete Abuse Litigation*,
2023 WL 3828645 (J.P.M.L. June 5, 2023) ................................24, 25

*Villavicencio* v. *Uber Techs., Inc.*,
No. CGC-21-590336 (Cal. Superior Ct., San Francisco Cnty., July
13, 2021) .............................................................................................30

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) .............................................................30

*In re Westinghouse Elec. Corp. Employment Discrimination Litig.*,
MDL No. 305, 438 F. Supp. 937 (J.P.M.L. 1977)..............................19

*WHBE 3 et al.* v. *Uber Techs., Inc.*,
Nos. A167458, A167709 (9th Cir. Aug. 17, 2023) ..............................8

*In re Wilson*,
451 F.3d 161 (3d Cir. 2006) .................................................................1

*Wu* v. *Uber Techs., Inc.*,
186 N.Y.S. 3d 500 (N.Y. Sup. Ct. 2022).............................................30

*Zinser* v. *Accufix Research Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001) ............................................................18

**Statutes**

28 U.S.C. § 1404(a) .................................................................................28

28 U.S.C. § 1407..............................................................................*passim*

28 U.S.C. § 1407(a) ...........................................................................4, 23

28 U.S.C. § 1407(e) .........................................................1, 4, 13, 14

Ariz. Rev. Stat. Ann. 23-1601(B) .............................................................6

Fla. Stat. § 627.748(9)...............................................................................6

Ga. Code Ann. § 51-1-11.1 .....................................................................18

N.C. Gen. Stat. § 20-280.8 ...............................................................6

N.Y. Veh. & Traf. Law § 1692(1) ....................................................5

Tex. Occ. Code § 2402.002 .............................................................5

Tex. Occ. Code § 2402.114 .............................................................6

**Other Authorities**

9th Cir. R. 21-2(c) ..........................................................................32

Fed. R. App. P. 21(a)(2)(C) ...........................................................32

Fed. R. App. P. 21(d) .....................................................................32

Fed. R. App. P. 27(d) .....................................................................32

Fed. R. App. P. 32(a)(5) .................................................................32

Fed. R. App. P. 32(a)(6) .................................................................32

Fed. R. App. P. 32(f) ......................................................................32

RAINN, Safety and Prevention, https://www.rainn.org/safety-
    prevention ................................................................................22

## **STATEMENT OF JURISDICTION**

Under 28 U.S.C. § 1407(e), "[p]etitions for an extraordinary writ to review an order to transfer or orders subsequent to transfer shall be filed only in the court of appeals having jurisdiction over the transferee district." Because the Panel's order established that the transferee district is the Northern District of California, this Court is the proper venue for Uber's petition for a writ of mandamus. *See In re Wilson*, 451 F.3d 161, 168 (3d Cir. 2006).

## **PRELIMINARY STATEMENT**

Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") respectfully request that this Court issue a writ of mandamus directing the Judicial Panel on Multidistrict Litigation (the "Panel") to vacate its October 4, 2023 transfer order in MDL 3084 (the "Transfer Order"). The Panel ordered the centralization of 22 (and growing) individual personal injury lawsuits arising from the sexual assault of plaintiffs allegedly perpetrated by third-party drivers using the Uber App - - each of which involved a different driver-assailant, under different and unique circumstances, in different states with very different laws, presenting a variety of highly individualized and case-specific questions.

Respectfully, the Panel abused its discretion and made clearly erroneous findings in at least the following respects:

1.      Even though the pivotal legal questions at the heart of these suits - - *e.g.*, whether the drivers are employees and whether Uber is a common carrier - - are governed by a patchwork of different laws that vary from state to state, the Panel concluded that the variation in state law is not "at the root of the litigation." APP563. That is a clear legal error. According to plaintiffs' own complaints, those questions are right at the root of their causes of action and their theories of Uber's alleged liability. Centralizing these actions will require a single MDL judge to adjudicate dispositive and other substantive motions under the laws of at least 14 states and potentially numerous choice-of-law challenges.

2.      In evaluating the common and individual issues, the only "[c]ommon factual questions" identified by the Panel, APP562, are actually individual questions that turn on the unique facts of each case. For example, whether implementing certain safety measures would have prevented the alleged incidents will depend on the particular circumstances under which each incident occurred, which will vary from incident to incident and from case to case. The Panel nevertheless failed to appreciate the individual nature of these questions and the fact that general causation is absent in plaintiffs' actions.

3.      Although the fault and liability of the third-party drivers are at the center of and differ in each lawsuit, the Panel decided not to consider any of those individualized issues. APP563. That is a clear legal error. The conduct of each

individual driver is what gives rise to every one of these lawsuits. Whether the drivers are added as third-party defendants or are just the primary cause of the alleged assaults, their conduct raises myriad individual factual questions related to, *inter alia*, causation and allocation of fault. The Panel erroneously failed to consider the inefficiency and added complications that centralization would impose with respect to these questions, including on the process for joining the drivers.

4. The Panel committed further clear error by finding that the numerous individual state-by-state and case-by-case legal and factual issues do not "negate the efficiencies" of centralization. *Id.* (citation omitted). There is little efficiency to be gained from centralizing highly individualized cases that may arise and be filed indefinitely into the future, unlike product liability cases which tend to arise from conduct alleged to have occurred in the past and thus do not present this problem.

5. Finally, the Panel erred by concluding that Uber's Terms of Use do not preclude centralization, when the terms expressly prohibit plaintiffs from litigating claims in "consolidated" and "coordinated" actions. APP564.

Taken alone or together, these legal errors give Uber the clear and indisputable right to relief from the Transfer Order to avoid inevitable prejudice that cannot be remedied through any other means. Uber therefore respectfully requests that this Court issue a writ of mandamus.

## ISSUE PRESENTED

Whether the Panel clearly abused its discretion and committed clear error in transferring cases to the Northern District of California for coordinated or consolidated proceedings under 28 U.S.C. § 1407(a) without considering the predominance of state-specific and case-specific legal and factual questions, the impact of the primary (but unnamed) tortfeasors in the underlying cases, the inefficiency of centralization, including as to joinder of the alleged third-party tortfeasors (the drivers), or the binding terms of the parties' agreement not to proceed in a consolidated action.

## RELIEF SOUGHT

Pursuant to 28 U.S.C. § 1407(e), Uber seeks a writ of mandamus reversing the Panel's October 4, 2023 order granting plaintiffs' motion to transfer their cases to the Northern District of California for coordinated or consolidated proceedings.

## STATEMENT OF FACTS

Uber is a transportation network company ("TNC") that uses its proprietary software to develop and maintain multi-sided, digital platforms. Through the ride-sharing Uber App, passengers looking for a ride can connect with independent drivers, who are neither hired nor employed by Uber.

Uber has 37 offices in the United States spanning 20 different states, with its headquarters in California. APP300. Regional teams are based in the offices across the country, and Uber's executives and heads of various teams reside in different

regions. *Id.* In order to ensure compliance with applicable local regulations, Uber conducts its business operations on a local - - rather than centralized - - basis. *Id.* Regional teams maintain significant organizational and operational autonomy, managing compliance with local TNC laws and overseeing regional operations, including safety and customer service complaints. *Id.*

### A. TNCs Are Regulated by Different Statutes, Regulations, and Laws on the Local Level That Vary from State to State

TNCs like Uber are regulated by local statutes, regulations, and laws. Each of the 14 states where plaintiffs' alleged assaults occurred has its own set of TNC laws, resulting in a patchwork of legal standards that vary from state to state on several central and potentially dispositive issues in plaintiffs' lawsuits, including:

- **Common Carrier Status**. Critical to plaintiffs' negligence claims is whether Uber is (or is not) subject to the duty of care of common carriers. *See, e.g.*, APP045, APP061-062, APP074-077. That question has no common answer. In some states, whether TNCs are (or are not) common carriers will be answered by statute, and in other states the answer will depend on common law.[1]

- **Driver Classification**. Also critical to plaintiffs' negligence and vicarious liability claims is whether drivers who use the Uber App are independent

---

[1] In some states, TNCs are exempt from the definition of common carrier by statute. *See, e.g.*, Tex. Occ. Code § 2402.002; N.Y. Veh. & Traf. Law § 1692(1). Other states, like Georgia and Arkansas, have no statute regarding the common carrier status of TNCs at all.

contractors or Uber's employees.  *See, e.g.*, APP045, APP047, APP061, APP063, APP068-069, APP073, APP081, APP085-088.  That too has no common answer. Laws providing for how to determine the classification of ridesharing drivers vary from state to state.[2]

- **Driver Background Checks**.  One of the theories that certain individual plaintiffs may attempt to assert depending on the facts of their specific case relates to the adequacy of driver background checks.  *See, e.g.*, APP068, APP072.  In most states, the standards applicable to background checks are governed by different statutes and regulations, which again vary from state to state.

Of course, these various different state-by-state statutory and regulatory regimes are in addition to the numerous variations in state common law regarding the liability of the drivers and Uber for negligence, vicarious liability, product liability, fraud, and plaintiffs' other claims.

**B.**    **The California Cases and the *Forum Non Conveniens* Dismissals**

The MDL motion was not the first attempt to centralize cases against Uber in a single court.  In June 2021, plaintiffs from 23 different states who filed suit against Uber in the California state courts, sought to coordinate their sexual assault suits in

---

[2] In some states, TNC drivers are independent contractors by statute.  *See, e.g.*, Fla. Stat. § 627.748(9); Tex. Occ. Code § 2402.114.  In others, there is a presumption that TNC drivers are independent contractors.  *See, e.g.*, Ariz. Rev. Stat. Ann. 23-1601(B); N.C. Gen. Stat. § 20-280.8.  Some states, like Illinois and Georgia, have no statute regarding the classification of TNC drivers.

the Superior Court. Initially, the cases were ordered to proceed on a coordinated basis in the Superior Court of San Francisco (the "Superior Court") as a Judicial Council Coordination Proceeding (the "JCCP").

In January 2023, however, the Superior Court granted Uber's motion to dismiss on *forum non conveniens* grounds all of the approximately 1,000 cases involving plaintiffs who reside outside of California and allege incidents that occurred outside of California. *See* APP119-141. The Superior Court recognized that it is not efficient or convenient for so many disparate cases to be coordinated in a single court (at least not in California) given that, *inter alia*, the "individual sexual assault/misconduct cases" would be governed by state laws and regulations of some 40 states. APP130. It stressed the "importance of other states' tort and regulatory law in setting the standards by which Uber's liability" will be determined, including the "key legal issues in these cases" - - *e.g.*, whether Uber is a common carrier or whether it adequately screened independent drivers. APP134. It also stressed the importance of the facts in each action, acknowledging that each plaintiff must first prove "that an assault took place." APP130 (quoting *Doe* v. *Uber Techs., Inc.*, 2017 WL 2352032, at *3 (N.D. Cal. May 31, 2017)).

The Superior Court therefore ordered the nearly 1,000 out-of-state plaintiffs to refile their individual actions in the courts of other states where venue is appropriate. *See* APP 142-220. Many of those plaintiffs subsequently filed actions

in federal district court (in 11 judicial districts and counting) - - including 12 of the 22 plaintiffs who brought the MDL Motion - - that subsequently were ordered to be transferred to the MDL by the Panel. Hundreds of other non-California plaintiffs appealed the Superior Court's *forum non conveniens* order, thereby staying that order of dismissal. *See generally* Opening Brief, *WHBE 3 et al.* v. *Uber Techs., Inc.*, Nos. A167458, A167709 (9th Cir. Aug. 17, 2023). The appeal is pending and, should the order be affirmed, it is fair to expect that many of those plaintiffs also will file federal actions against Uber.

### C. The District Court Actions

Based on the particular facts of their alleged incidents, plaintiffs allege that Uber is vicariously liable for the conduct of the third-party drivers, *see, e.g.*, APP085 (Vicarious Liability); Uber negligently failed to prevent the drivers from committing the alleged assaults, *see, e.g.*, APP070-077, APP081-082 (General Negligence, Negligent Hiring, Retention, and Supervision, Common Carrier Negligence, Negligent Infliction of Emotional Distress); Uber misled plaintiffs about the safety of rides facilitated by the Uber App, *see, e.g.*, APP077-081(Negligent Failure to Warn, Intentional Misrepresentation, Negligent Misrepresentation); Uber breached its contracts with plaintiffs, *see, e.g.*, APP083 (Breach of Contract); and Uber is liable for "design defects" that caused the drivers to commit the alleged assaults or failed to prevent them, *see, e.g.*, APP083-085 (Strict Product Liability).

The individual factual and legal issues raised by each of these complaints vary dramatically. Each claim arises from a unique set of facts and circumstances: different sexual assaults each committed by a different independent driver in a different way, in a different location, at a different time, and under different conditions. Each claim will involve a different set of questions about whether Uber could have done anything that would have prevented the alleged assault. And, of course, a threshold question as to whether an assault occurred as alleged.

No two alleged incidents are the same. The alleged driver conduct ranges from inappropriate comments to grievous sexual assaults. Depending on the particular details of the incidents, plaintiffs allege that their assaults would not have occurred but for allegedly inadequate driver background checks, the absence of video cameras in cars, the lack of GPS tracking programs, or allegedly deficient driver training. *See, e.g.*, APP082. Which, if any, of those or numerous other factors was the cause of any particular incident (versus simply the independent criminal conduct of a third-party driver) will depend on the unique circumstances of each incident.

The complaints also directly implicate the different laws and regulations of different states. Not just variations in state tort law - - which alone are numerous and significant - - but also differences in TNC statutes and regulations that go to the core questions raised by the complaints. For example:

-9-

- Plaintiffs assert claims for "Common Carrier Negligence," seeking to hold Uber liable under the standards of care of "common carriers." *See, e.g.*, APP074-077. But whether Uber is treated as a common carrier has different answers in different states. Whether "common carrier negligence" is an independent theory of liability also varies by state; often, common carrier status is relevant only to the applicable duty of care.

- Plaintiffs assert claims for "Vicarious Liability for Driver's Torts," seeking to hold Uber liable for the tortious and criminal conduct of drivers allegedly "within the scope of employment" under principles of *respondeat superior*. *See, e.g.*, APP085-088. To that end, the complaints repeatedly allege, as a central component of the complaints, that the drivers were employed by Uber. *See, e.g.*, APP045, APP047, APP061, APP063, APP068-069, APP073, APP081, APP085-088. Whether drivers are treated as employees, or rather as independent contractors, is determined by different legal tests in different states.

### D.    The MDL Motion and Transfer Order

On July 14, 2023, plaintiffs in 14 actions brought a motion pursuant to 28 U.S.C. § 1407 seeking centralization of their cases in the Northern District of California. Subsequently, plaintiffs in 65 additional actions filed notices to relate and tag along their cases to the proposed MDL. Across the 79 actions, plaintiffs alleged assaults by third-party drivers in 28 states. On October 4, 2023, the Panel

-10-

granted plaintiffs' motion, and ordered that the individual actions be centralized in the Northern District of California before the Honorable Charles R. Breyer.

The Panel found that plaintiffs' cases raise "complex factual questions," but nonetheless concluded that the individual issues would not "negate the efficiencies to be gained by centralization." APP562-563. Although the Panel found that there are some "[c]ommon factual questions," APP562, it did not evaluate whether those few questions would be outweighed by the numerous individualized case-by-case (and state-by-state) factual and legal questions. Despite acknowledging Uber's argument that "an overarching question of general causation will not be at issue here," the Panel did not explain why centralization would nonetheless be appropriate. Instead, the Panel only pointed to other issues that it identifies as "common" ones warranting "centralization." Moreover, those "common" factual questions the Panel relied on in ordering centralization are really individual issues that turn on the unique facts of each alleged incident. *Id.*

With respect to the variations and disparities in state laws and regulations, the Panel addressed only one - - the classification of drivers as independent contractors or employees - - and found that it is not "at the root of the litigation." APP563. The Panel did not address, *inter alia*, the state-by-state differences in common carrier laws, background check regulations, vicarious liability standards, and third-party liability of the drivers.

With respect to the third-party drivers, the Panel stated that it "decline[s] to speculate as to the impact of as yet unfiled third-party claims," *id.*, and therefore chose not to address any of the many individualized questions regarding causation, intervening and superseding cause, comparative fault, and allocation of fault - - all of which will be plaintiff-specific and case-by-case (and state-by-state) questions, whether or not the drivers are added as third-party defendants, which they will be.

The Panel declined to enforce Uber's Terms of Use, which expressly prohibit riders from bringing claims against Uber in any "consolidated" and/or "coordinated" actions. It did so without addressing whether the Terms were enforceable as to plaintiffs, but instead held that "[t]he Panel is not bound by Uber's Terms of Use." APP564. The Panel held that the question of the enforceability of the consolidated-action waiver could be decided through "streamlined briefing" in the MDL. *Id.*

The Panel centralized the actions in the Northern District of California because plaintiffs had elected to bring many of the actions in that district (despite the fact that the alleged assaults happened elsewhere) and because Uber's headquarters and the JCCP are located there. *Id.* The Panel concluded that the Superior Court's *forum non conveniens* decision in the JCCP was "not relevant" to

its determination because that court's analysis involved "public interest considerations" that the Panel deemed immaterial to its Section 1407 analysis.  *Id.*[3]

## **ARGUMENT**

To qualify for mandamus relief, three conditions must be satisfied: (1) "the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires"; (2) "the petitioner must satisfy 'the burden of showing that [his] right to issuance of the writ is 'clear and indisputable'"; and (3) the Court, "in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances."  *Cheney* v. *U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380-81 (2004) (citations omitted); *Karnoski* v. *Trump*, 926 F.3d 1180, 1203 (9th Cir. 2019).  *See also, e.g.*, *FedEx Ground Package Sys., Inc.* v. *U.S. Judicial Panel on Multidistrict Litig.*, 662 F.3d 887, 890 (7th Cir. 2011).  As the Supreme Court has instructed, these conditions, "however demanding, are not insuperable."  *Cheney*, 542 U.S. at 381.  Uber satisfies those conditions, and the Court should grant Uber's petition for mandamus relief under 28 U.S.C. § 1407(e).

---

[3] The Panel therefore did not address any aspect of the Superior Court decision, including (i) its emphasis on the "importance of other states' tort and regulatory law in setting the standards by which Uber's liability" is assessed, (ii) its observation that plaintiffs must first prove "that an assault took place" to prevail on their claims, or (iii) its conclusion that the interests of the state in which the incident occurred outweighed California's interest based on the location of Uber's headquarters. APP130, APP133-134.

-13-

## I.    UBER HAS NO OTHER ADEQUATE MEANS TO OBTAIN RELIEF

Uber must show that it "has no other adequate means, such as a direct appeal, to attain the relief [it] desires" without the issuance of mandamus relief. *Bauman* v. *U.S. Dist. Ct.*, 557 F.2d 650, 654 (9th Cir. 1977). Section 1407 provides that "[n]o proceedings for review of any order of the panel may be permitted except by extraordinary writ." 28 U.S.C. § 1407(e). Thus, "[m]andamus is the exclusive mechanism for reviewing JPML orders" and direct appeal is expressly prohibited. *In re Mortg. Electronic Registration Sys., Inc.*, 754 F.3d 772 (9th Cir. 2014); *see also FedEx*, 662 F.3d at 890.

## II.    UBER HAS A CLEAR AND INDISPUTABLE RIGHT TO RELIEF

A petitioner can show its clear and indisputable right to mandamus relief where the "order [on review] is clearly erroneous as a matter of law," *In re Kirkland*, 75 F.4th 1030, 1040 (9th Cir. 2023) (quoting *Bauman* v. *U.S. Dist. Ct.*, 557 F.2d 650, 654-55 (9th Cir. 1977)), or where the judicial action was a "clear abuse of discretion," *Cheney*, 542 U.S. at 380 (quotations omitted). As demonstrated below, the Panel here clearly erred and abused its discretion by: (A) failing to address the fact that the answers to many of the fundamental legal questions at the core of these lawsuits will vary from state to state; (B) failing to consider that many highly individualized questions will predominate over the very few common questions; (C) declining to consider the fault and liability of third-party drivers; (D) finding that it

will be efficient and convenient to centralize; and (E) disregarding Uber's Terms of Use.

### A. The Panel Clearly Erred as a Matter of Law by Disregarding the Fundamental Legal Issues That Vary from State to State

The Panel clearly erred by failing to consider the implications of the disparate array of state laws and regulations that will govern plaintiffs' actions.

#### 1. *The Panel Clearly Erred in Finding That Non-Common Issues Are Not "At the Root of the Litigation"*

The Panel's finding that the state-specific issue of driver classification - - *i.e.*, whether the drivers are independent contractors or employees - - was not "at the root of the litigation" was clearly erroneous. APP563. Plaintiffs all allege that, even if Uber did nothing to cause or contribute to the alleged assaults, it should be held vicariously liable for the conduct of the third-party drivers, because the drivers were allegedly Uber's "employees" who acted "within the scope of employment." *See, e.g.*, APP085. Determining whether Uber is vicariously liable therefore depends substantially on the classification of the status of drivers. Whether a driver is an employee or independent contractor is governed by widely disparate state laws, including TNC statutes in some states and common law balancing tests in other states. *See supra* note 2.

The Panel acknowledged that the laws governing driver classification "vary substantially from state to state," but then dismissed that variance. APP563; *see also*

*In re Healthextras Ins. Marketing & Sales Practices Litig.*, 24 F. Supp. 3d 1376, 1376-77 (J.P.M.L. 2014) (holding that a legal issue is "not a common one" when it is "defined by the laws and regulations of the relevant state"). That decision directly conflicts with the Panel's denial of centralization in a prior case brought by drivers against Uber, in which the Panel concluded that the issue of driver classification "rest[s] on state-specific legal and factual inquiries <u>that are not suitable for centralized pretrial proceedings</u>." *In re Uber Technologies, Inc., Wage & Hour Employment Practices*, 158 F. Supp. 3d 1372, 1373 (J.P.M.L. 2016) (emphasis added). Without any explanation, the Panel here found driver classification would not be "at the root of the litigation." APP563. Doing so was clearly erroneous given the centrality of that issue to plaintiffs' vicarious liability claims.

**2.    *The Panel Clearly Erred in Disregarding State-by-State Disparities in the Other Fundamental Legal Questions***

The Panel further erred by failing to consider, or even address, other state-specific legal questions at the root of plaintiffs' causes of action. Cases involving legal questions that "vary substantially from state to state" ordinarily are not considered appropriate for centralization. *See In re DIRECTV, Inc., Fair Labor Standards Act (FLSA) and Wage & Hour Litig.*, 84 F. Supp. 3d 1373, 1375 (J.P.M.L. 2015); *In re Rite Aid Corp. Wage & Hour Employment Pracs. Litig.*, 655 F. Supp. 2d 1376 (J.P.M.L. 2009); *In re Title Ins. Real Estate Settlement Procs. Act (RESPA) & Antitrust Litig.*, 560 F. Supp. 2d 1374, 1376 (J.P.M.L. 2008).

Nonetheless, instead of engaging with any number of state-specific legal issues presented by plaintiffs' claims, the Panel found that plaintiffs' claims would be more suited to centralization than the ones in *Uber Wage & Hour* because the claims here "focus[] on far more than [the] one issue" of driver classification. APP563. That is not logical: if one legal issue that varies from state to state is grounds to deny centralization, then multiple legal issues that vary from state to state are even more reason to deny centralization.

For example, one of the central claims in plaintiffs' complaints is that Uber failed to comply with the standard of care owed by common carriers to members of the public. *See, e.g.*, APP062. But whether Uber is a common carrier must be resolved under state law, and the applicable laws vary significantly depending on the jurisdiction - - including whether "common carrier negligence" is a standalone cause of action. As discussed *supra* note 1, some states have "statutes and regulations that govern whether a TNC is a common carrier," APP134, while other jurisdictions employ varying multi-factor common law tests to resolve this question. Even in states where TNCs have common carrier status, state law differs as to whether common carriers should be held "to a heightened duty of care" or to the "ordinary standard of negligence." *Doe* v. *Uber Techs., Inc.*, 551 F. Supp. 3d 341, 357 (S.D.N.Y. 2021).

Another claim that is repeated across plaintiffs' complaints is that Uber failed to implement adequate background checks to screen drivers. *See, e.g.*, APP068, APP072. But, as discussed above, varying state laws govern "what criminal background checks [a TNC] must conduct" before allowing a driver access to the App. APP134.

There are also significant differences in the common law of the various states. For instance, plaintiffs' fraud and misrepresentation claims turn on state-specific legal questions. *See Lewis Tree Serv., Inc.* v. *Lucent Techs.*, 211 F.R.D. 228, 236 (S.D.N.Y. 2002). As an example, under Illinois law, intentional misrepresentation applies only where a defendant knew or believed it was making a false statement. *Lewis* v. *Lead Indus. Assoc.*, 178 N.E. 3d 1046, 1055-56 (Ill. 2020). But in Pennsylvania, a defendant can be liable for intentional misrepresentation for making a false statement with "reckless disregard as to whether it is true or false." *Gregg* v. *Ameriprise Financial, Inc.*, 245 A.3d 637, 646 (Pa. 2021).

Plaintiffs' product liability claims likewise turn on state-specific legal questions. *See Zinser* v. *Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001). For instance, some states do not recognize a cause of action in strict product liability at all. Ga. Code Ann. § 51-1-11.1. Among those that do, some apply a form of a risk-utility analysis, while others exclusively apply the consumer expectations test. *Branham* v. *Ford Motor Co.*, 390 S.C. 203, 220-22 (2010). Yet other states

use a hybrid approach, depending on the facts of the particular case. *Id.* at 221 n.13 (collecting cases).

### B. The Panel Clearly Erred in Failing to Consider That the Multitude of Individual Issues Will Predominate over the Few Common Issues

The Panel clearly erred by failing to observe that the core factual questions to be answered in plaintiffs' cases will be unique to each action.

#### 1. *The Panel Clearly Erred by Mischaracterizing Individual Issues as Common*

Multidistrict litigation is reserved for civil actions in which "common questions of fact" will "predominate over individual factual issues." *In re Westinghouse Elec. Corp. Employment Discrimination Litig.*, MDL No. 305, 438 F. Supp. 937, 938 (J.P.M.L. 1977); *see also In re Electrolux Dryer Prods. Liab. Litig.*, 978 F. Supp. 2d 1376, 1377 (J.P.M.L. 2013). The Panel, however, supports its conclusion that plaintiffs' cases present "sufficient common issues . . . to warrant centralized treatment," with a list of potential issues that are, in fact, not common at all. *See* APP562-563. It held that common factual questions may include:

> whether Uber failed to [1] conduct adequate background checks of its drivers, [2] train drivers regarding sexual assault and harassment, [3] implement adequate safety measures to protect passengers from sexual assault, and [4] adequately respond to complaints about drivers.

*Id.*  The Panel also mentions, as an additional so-called common fact, Uber's "representations regarding safety."  APP563.  But none of these issues will actually be common among the cases.

Whether any one of these issues is relevant to an action turns on case-specific facts.  For example, whether Uber failed to "adequately respond to complaints about drivers" is only relevant in a case in which Uber allegedly mishandled a prior complaint about the alleged assailant driver.  Allegations about whether Uber failed to "conduct adequate background checks" will only be relevant in a case in which an independent driver had a prior criminal history that Uber's background check did not flag.  And whether Uber made improper "representations regarding safety" is only relevant in a case in which the plaintiff saw or heard such representations *and* relied on them.

Which facts are relevant to any of these issues will also vary by case.  For example, the facts relevant to assessing the adequacy of alleged driver training will depend on the driver and his particular background.  And the facts relevant to whether Uber implemented "adequate safety measures" will depend on what exactly happened to the plaintiff and what additional safety measure might have prevented it from happening.  Plaintiffs allege, for instance, that Uber should have required video cameras in cars.  *See, e.g.*, APP082.  Whether or not that would have prevented any particular incident will depend on whether the alleged assault took place inside

the car with the camera on or, as is often the case, outside the car or while the camera was off. That is an individualized causation question that will be asked (on summary judgment) on a case-by-case, incident-by-incident basis.

These are not common issues; they are precisely the sorts of questions that underscore just how individual plaintiffs' claims are. Indeed, there is no theory of general causation among plaintiffs' actions, a fact the Panel acknowledged. What the Panel failed to appropriately consider is whether any conduct by Uber had any role in causing plaintiffs' alleged injuries will depend on the circumstances of the alleged assault (including, as a threshold matter, whether it occurred as alleged) and how plaintiff and independent driver interacted with the Uber App. It was clearly erroneous to characterize these factual questions as common.

### 2. *The Panel Clearly Erred by Failing to Consider the Numerous Other Individual Factual Issues*

In addition, the Panel failed to consider numerous other individual factual issues that will overwhelm the actions. The crux of each plaintiff's complaint is that she was sexually assaulted by an independent driver with whom she was connected via the Uber App. But that is where the similarities end. In each case, a factfinder must answer a litany of case-specific questions, including: What sexual misconduct or assault is the independent driver alleged to have engaged in? Did Uber previously investigate any complaints about the independent driver? How were those investigations conducted? Did the alleged assault occur inside or outside the vehicle,

-21-

during or after the ride?  Did the plaintiff rely upon any safety representations from Uber in deciding to take a ride facilitated by the Uber App?  Is there anything that could have prevented the incident from occurring?  What are the plaintiff's damages?  Was the driver the intervening or superseding cause of those alleged damages?  What is the driver's percentage of fault?  Can Uber recover from the driver based on contribution and indemnity agreements?

In the face of these overwhelmingly individualized factual questions - - about the alleged assault, the ride, the use of the Uber App, and, critically, the independent driver - - it was clearly erroneous for the Panel to conclude that there were "sufficient common issues present to warrant centralized treatment" and that individual factual issues did not "negate the efficiencies to be gained by centralization."  APP563 (citation omitted).  Many of the issues will be litigated at the summary judgment stage; others will be adjudicated at trial.  But they will always be individual, not common, issues - - and will have to be decided under the laws of more than 14 states.

Indeed, by centralizing disparate fact issues into a single MDL, the Panel created a unique situation whereby multidistrict litigation may continue to persist indefinitely because the only common fact - - alleged sexual assault by drivers using the Uber App - - is not something Uber can ever foreclose entirely.  RAINN, Safety and Prevention, https://www.rainn.org/safety-prevention ("[T]here's no way to eliminate the chance" of sexual assault.).  An MDL that encompasses claims arising

from conduct that *may occur in the future* is at odds with the purpose of the statute authorizing multidistrict litigation, which contemplates proceedings that are "convenien[t]" and that "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).

### C. The Panel Clearly Erred by Expressly Declining to Consider Myriad Highly Individualized Issues Relating to the Drivers' Third-Party Fault and Liability

One highly individualized factual question may demonstrate the Panel's error better than any other: the conduct and fault of the drivers. There would be no lawsuits but for the intentionally tortious and criminal conduct of independent drivers. That is why Uber has in prior litigation - - including some cases in the JCCP - - added the drivers as third-party defendants and will do so in these cases. But in any event, Uber will assert that the alleged conduct of the drivers caused each incident and will seek to allocate fault to the drivers in each incident. The Panel, however, *chose* not to address any of that. It stated that it would "decline to speculate as to the impact of as yet unfiled third-party claims on the efficiency of common proceedings." APP563. In other words, because the time had not yet come for Uber to file third-party claims, the Panel just skipped over all the individual issues of driver causation, driver fault, and driver liability.

The drivers need not be joined as third-party defendants (though they will be, as they are in the pending JCCP) in order for their conduct to raise numerous

individual case-by-case issues, however.  The question of Uber's liability is entirely contingent upon the conduct of these third-party independent drivers, as is Uber's ability to seek indemnification from the drivers.  Questions of causation, intervening and superseding cause, and comparative fault will all vary from plaintiff to plaintiff and will vary from state to state based on the different applicable state laws.  For example, different states apply different rules in apportioning liability and damages among multiple tortfeasors.  Some states allow a plaintiff to recover all damages from a single, partly liable defendant, while other states allow recovery for only that defendant's portion of the damages. *Compare, e.g.*, *Graff* v. *Motta*, 695 A.2d 486, 493 (R.I. 1997) (joint and several liability), *with McReynolds* v. *Krebs*, 725 S.E.2d 584, 587 (Ga. 2012) (apportionment of damages according to percentage of fault). And whether a third party's criminal conduct - - here, the driver's alleged assault - - qualifies as a superseding cause, severing the chain of causation, is a "normative question of policy." *Pedeferri* v. *Seidner Enters.*, 216 Cal. App. 4th 359, 372 (2013).

The Panel's discussion of *In re Varsity Spirit Athlete Abuse Litigation*, 2023 WL 3828645 (J.P.M.L. June 5, 2023), underscores the Panel's error.  In that case, the Panel denied centralization of actions arising out of alleged sexual abuse at gyms affiliated with Varsity, a cheerleading company.  *Id.* at *1.  It held that "any efficiencies to be gained by centralization may be diminished by unique factual

issues" concerning the individual coaches alleged to have committed acts of sexual abuse and the "particulars of the abuse alleged by each plaintiff." *Id.*

Exactly the same reasoning would justify denying centralization here, but, instead, the Panel distinguished *Varsity* on the basis that alleged assailant coaches in *Varsity* were named as defendants. APP563. But as discussed above, Uber need not sue the drivers - - though it will - - in order to find that the issues of driver causation and fault can only be decided on the facts of each case. The "unique factual issues" about the "particulars of the abuse alleged by each plaintiff," *Varsity*, 2023 WL 3828645 at *1, will need to be decided in the underlying *Varsity* cases, regardless of whether the alleged assailants have been named. So too here. If the Panel had appropriately considered the key individual factual issues related to the independent drivers, it could not reasonably have concluded that common issues "warrant centralized treatment." APP563.

Instead, by centralizing plaintiffs' cases in an MDL, the Panel created unnecessary and undue complication and confusion with respect to the procedure for joining drivers as parties in these lawsuits.[4] Sixty-two of the 79 actions pending at the time of the Panel's order were filed in the Northern District of California, even

---

[4] Drivers have not yet been impleaded in plaintiffs' cases because very few cases have proceeded to the responsive pleading stage. It would not even be possible to implead drivers at this stage, because most of the pleadings are too devoid of information to allow Uber to identify the independent driver.

though *only two* of the incidents in those 62 cases took place in California (and *all* of the plaintiffs are residents of states other than California). Any independent drivers who are not California residents - - likely, the *vast majority* of the drivers - - will not be subject to personal jurisdiction in California.

Although transfers under Section 1407 are "not encumbered by considerations of in personam jurisdiction and venue," *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 163 (2d Cir. 1987) (citation omitted), the non-California drivers are likely to argue that they cannot be joined or impleaded into an action that is part of a multidistrict litigation in a court where they are not subject to personal jurisdiction of the forum in which the case was originally filed. By declining to consider the impact of Uber's anticipated claims against the independent drivers - - which Uber informed the Panel it intended to pursue - - the Panel failed to account for the unnecessary procedural complications and inefficiency that centralization stands to impose.

### D. The Panel Clearly Erred in Concluding That Centralization Would Promote Convenience and Efficiency

In light of the Panel's clearly erroneous disregard for variations in governing law, the predominance of individual factual questions, and the key questions regarding the independent drivers, the Panel committed clear error by finding that these issues do not "negate the efficiencies" of centralization. APP563. Indeed, it is difficult to imagine that centralization could produce any efficiencies here,

particularly because the number of cases may continue to grow indefinitely.

Tasking one judge with managing and adjudicating individual cases based on different parties, different tortfeasors, different facts, different evidence, and different laws will only serve to increase complexity and decrease efficiency. The judge will have to decide dispositive motions under the different statutes, regulations, and tort laws of more than 14 states. Yet the Panel failed to consider and give proper weight to the inefficiency of burdening one court with applying the laws of 14 different states and conducting as many choice-of-law analyses.

What would be more efficient is for the courts in the states-of-injury, which are more familiar in applying state-specific laws, to bear the burden of adjudicating plaintiffs' claims. That is precisely why the Superior Court held in the JCCP that non-California cases should be litigated in the states of incident, rather than in a single California court. APP099 (quoting APP133).[5] And contrary to the Panel's conclusion, centralization will not promote efficiency by "prevent[ing] inconsistent pretrial rulings." APP563. Thus, if courts reach different rulings, those rulings would be *different*, but they would not be "inconsistent."

---

[5] The Panel dismissed the Superior Court's analysis as "not relevant" because it "weighed public interest considerations—such as avoiding overburdening local courts with foreign cases—that we do not examine under Section 1407." APP564. But burden to the transferee court, particularly when the laws of multiple states are at issue, *is* a relevant efficiency consideration under Section 1407. *See, e.g.*, *DIRECTV*, 84 F. Supp. 3d at 1375 (denying centralization because claims would "implicate over 30 state laws" and "very well could overwhelm a single judge.").

Moreover, the Panel committed clear legal error when it refused to even *consider* any of this evidence relating to the convenience of the parties and the witnesses. This Court has granted mandamus relief in the similar Section 1404(a) transfer context, where the district court failed to properly consider the "showing of inconvenience . . . made by the petitioner." *Pacific Car & Foundry Co.* v. *Pence*, 403 F.2d 949, 955 (9th Cir. 1968); *see* 28 U.S.C. § 1404(a). Section 1404(a) and Section 1407(a) contain identical language requiring that transfer must be "for the convenience of parties and witnesses."

No proper reading of the evidence in the record could support the conclusion that centralization will promote convenience. There is no dispute that the vast majority of these alleged incidents occurred outside of California, that *all* plaintiffs reside outside of California, and that in all likelihood, drivers and other witnesses - - fellow passengers, police officers, healthcare providers, employers, and eyewitnesses - - will be located outside of California. Many of the relevant Uber witnesses, such as Regional General Managers who oversee business operations at the state and local level, are also located all over the country.

Thus, for the additional reasons that centralization will be inefficient and inconvenient, Uber has a clear and indisputable right to mandamus relief.

### E.   The Panel Clearly Erred in Concluding That Uber's Terms of Use Did Not Foreclose Transfer

It was clear error for the Panel to grant plaintiffs' request for centralization even though plaintiffs contractually agreed not to adjudicate their claims in any "consolidated" or "coordinated" proceeding.  Before any rider can use the Uber App, they must assent to Uber's Terms of Use, which create a "contractual relationship" between Uber and each plaintiff.  The Terms of Use plainly provide that claims may not be brought or litigated as part of a "consolidated" or "coordinated" proceeding,[6] which is exactly what plaintiffs sought by bringing the MDL motion.  *See* APP019 (requesting transfer "for coordinated or consolidated proceedings").

In granting plaintiffs' motion, the Panel held that the Terms of Use do not "preclude the motion for centralization" because "[t]he Panel is not bound by Uber's Terms of Use."  APP564.  But courts routinely enforce contract terms that limit the contracting parties' ability to proceed in courts that are otherwise empowered to hear their claims - - for example, arbitration clauses and forum selection clauses.  In enforcing dispute resolution terms, courts need not consider whether they are bound by the parties' agreement, but whether *the parties are bound* by that agreement.  If

---

[6]  For a comprehensive collection of Uber's Terms of Use, see the Declaration of Alejandra O'Connor and accompanying exhibits, filed in support of Uber's Opposition to the MDL Motion. APP297-530.  These Terms of Use consistently preclude riders from bringing "consolidated" and/or "coordinated" actions against Uber.

that Panel's conclusion were correct, that would mean that no party could ever enforce a consolidated-action waiver (or any contract provision at all) because no judicial body is ever bound by a private contract among parties.[7]

The Panel's suggestion that centralization "will allow for streamlined briefing" on the enforceability of the Terms of Uber does not salvage its clear legal error. *Id.* The contract between the parties provides that plaintiffs' claims shall not proceed in a "consolidated" manner, and the Panel had no legal basis to consolidate resolution of any issue, let alone this very contract provision.

## III. MANDAMUS IS APPROPRIATE

Here, a writ of mandamus is necessary because Uber "will be damaged or prejudiced in a way not correctable on appeal." *Bauman*, 557 F.2d at 654. The harm resulting from transfer "will already have been done by the time the case[s] [are] tried and appealed, and the prejudice suffered cannot be put back in the bottle." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 319 (5th Cir. 2008); *Sunshine Beauty Supplies, Inc.* v. *U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 872 F.2d 310, 311 (9th Cir. 1989), *abrogated on other grounds by Cortez Byrd Chips, Inc.* v. *Bill Harbert*

---

[7] That is clearly not the case; indeed, a number of courts have recognized Uber's Terms of Use as valid and enforceable. *See, e.g.*, *Meyer* v. *Uber Techs., Inc.*, 868 F.3d 66, 80 (2d Cir. 2017); *Cordas* v. *Uber Techs., Inc.*, 228 F. Supp. 3d 985, 992 (N.D. Cal. 2017); *Tyler* v. *Uber Techs., Inc.*, No. 19-CV-03492, ECF No. 27 at 1 (D.D.C. Sept. 17, 2020); *Villavicencio* v. *Uber Techs., Inc.*, No. CGC-21-590336 (Cal. Superior Ct., San Francisco Cnty., July 13, 2021); *Wu* v. *Uber Techs., Inc.*, 186 N.Y.S.3d 500, 544-45 (N.Y. Sup. Ct. 2022).

*Constr. Co.*, 529 U.S. 193 (2000) ("[T]he prejudice that results from an erroneous transfer order is of a type not correctable on appeal."). And because the writ of mandamus is the exclusive means to challenge the Panel's Transfer Order, any appeal after final judgment would not correct these harms.

## **CONCLUSION**

For the foregoing reasons, the Court should grant this petition for a writ of mandamus and reverse the Panel's Transfer Order.

DATED: November 10, 2023      **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By:   */s/ Robert Atkins*
      **ROBERT ATKINS**
      1285 Avenue of the Americas
      New York, NY 10019
      Telephone: (212) 373-3000
      Facsimile: (212) 757-3990
      ratkins@paulweiss.com

      *Counsel for Defendants-Petitioners*
      UBER TECHNOLOGIES, INC.,
      RASIER, LLC, and RASIER-CA, LLC

-31-

## CERTIFICATE OF COMPLIANCE

This petition for writ of mandamus complies with the length requirements of Fed. R. App. P. 21(d) and 9th Cir. R. 21-2(c) because, excluding the parts of the document exempted by Fed. R. App. P. 21(a)(2)(C) and Fed. R. App. P. 32(f) because this document contains 7329 words.

This petition for writ of mandamus complies with the form requirements of Fed. R. App. P. 27(d), the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

DATED: November 10, 2023      **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By:    *_/s/ Robert Atkins_*
      **ROBERT ATKINS**
      1285 Avenue of the Americas
      New York, NY 10019
      Telephone: (212) 373-3000
      Facsimile: (212) 757-3990
      ratkins@paulweiss.com

      *Counsel for Defendants-Petitioners*
      UBER TECHNOLOGIES, INC.,
      RASIER, LLC, and RASIER-CA, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, I electronically filed the foregoing **PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION** with the clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I also certify that a true copy of the foregoing document was mailed to:

Hon. Karen K. Caldwell
Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, NE
Room G-255, North Lobby
Washington, DC 20544-0005

I further certify that true copies of the foregoing document were electronically served on counsel of record as follows:

| | |
|---|---|
| Rachel B. Abrams<br>Adam B. Wolf<br>Angela J. Nehmans<br>PEIFFER WOLF CARR KANE<br>CONWAY & WISE, LLP<br>555 Montgomery Street, Suite 820<br>San Francisco, CA 94111<br>Email: rabrams@peifferwolf.com<br>    awolf@peifferwolf.com<br>    anehmens@peifferwolf.com | William A. Levin<br>Laurel L. Simes<br>David M. Grimes<br>LEVIN SIMES LLP<br>1700 Montgomery Street, Suite 250<br>San Francisco, CA 94111<br>Email: wlevin@levinsimes.com<br>    llsimes@levinsimes.com<br>    dgrimes@levinsimes.com |

| | |
|---|---|
| Walt Cubberly<br>WILLIAM HART & BOUNDAS, LLP<br>8441 Gulf Freeway, Suite 600<br>Houston, Texas 77017<br>Email: wcubberly@whlaw.com | Bartlet Brebner<br>BREBNER LAW FIRM PC<br>4647 N. 32nd Street, Suite 285<br>Phoenix, AZ 85018<br>Email: bbrebner@brebnerlaw.com |
| Bret D Stanley<br>Eric Hawley<br>Steven J Kherkher<br>KHERKHER GARCIA, LLP<br>2925 Richmond Avenue, Suite 1560<br>Houston, TX 77098<br>Email: bstanley@kherkhergarcia.com<br>ehawley@kherkhergarcia.com<br>skherkher@kherkhergarcia.com | Michael Lee Nimmo<br>Charles Mendez<br>WAHLBERG WOODRUFF NIMMO<br>& SLOANE LLP<br>4601 DTC Boulevard, Suite 950<br>Denver, CO 80237<br>Email:<br>michael@denvertriallawyers.com<br>charles@denvertriallawyers.com |
| Carl Kessinger<br>Eric D. Holland<br>HOLLAND LAW FIRM<br>211 North Broadway, Suite 2625<br>St. Louis, MO 63102<br>Email: ckessinger@allfela.com<br>eholland@hollandtriallawyers.com | Benjamin T. Carroll<br>KENNEY & CONLEY, P.C.<br>100 Grandview Road, Suite 218<br>Braintree, MA 02184<br>Email: benjamin@kenneyconley.com |
| Charles Andrew Childers<br>CHILDERS SCHLUETER &<br>SMITH LLC<br>1932 N. Druid Hills Road, Suite 100<br>Atlanta, GA 30319<br>Email: achilders@cssfirm.com | Matthew Ryan Wilson<br>MEYER WILSON CO., LPA<br>305 W. Nationwide Blvd.<br>Columbus, OH 43215<br>Email: Mwilson@meyerwilson.com |
| Richard Samuel Clark<br>MEYER WILSON CO., LPA<br>310 Tappan Street<br>Columbus, OH 43201<br>Email: Rclark@meyerwilson.com | Roopal Luhana<br>Peter T. Anderson<br>Eric Chaffin<br>CHAFFIN LUHANA LLP<br>600 3rd Avenue, 12th Floor<br>New York, NY 10016<br>Email: Anderson@ChaffinLuhana.com<br>Luhana@ChaffinLuhana.com<br>Chaffin@ChaffinLuhana.com |

| | |
|---|---|
| Paula S. Bliss, Esq.<br>Kimberly A. Dougherty, Esq.<br>Kelly Guagenty, Esq.<br>JUSTICE LAW COLLABORATIVE,<br>LLC<br>210 Washington Street<br>North Easton, MA 02356<br>Email: paula@justicelc.com<br>       kim@justicelc.com<br>       kelly@justicelc.com | Erin Copeland, Esq.<br>FIBICH LEEBRON COPELAND &<br>BRIGGS<br>1150 Bissonnet Street<br>Houston, TX 77005<br>Email: ecopeland@fibichlaw.com |
| Karen Barth Menzies<br>KBM LAW CALIFORNIA<br>6701 Center Drive West, Suite 1400<br>Los Angeles, CA 90045<br>Email: kbm@classlawgroup.com | |

DATED: November 10, 2023     **PAUL, WEISS, RIFKIND, WHARTON &**
**GARRISON LLP**

By:     */s/ Robert Atkins*
      **ROBERT ATKINS**
      1285 Avenue of the Americas
      New York, NY 10019
      Telephone: (212) 373-3000
      Facsimile: (212) 757-3990
      ratkins@paulweiss.com

*Counsel for Defendants-Petitioners*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

No. _____

# In The
# United States Court of Appeals
# for the Ninth Circuit

---

**IN RE: UBER TECHNOLOGIES, INC.,
PASSENGER SEXUAL ASSAULT LITIGATION**
*(Multidistrict Litigation)*

---

UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC,

*Defendants-Petitioners*,

v.

UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION,

*Respondent,*

A.G., an individual, A.H.M., an individual, A.M., an individual, A.P., an individual, ARIANE CUNNINGHAM, an individual, ASHLEY JONES, an individual, AUNDREYA ROLLO, an individual, B.R., an individual, BECK GLASER, an individual, C.S., an individual, C.T., an individual, CYNTHIA CRAWFORD, an individual, D.P., an individual, E.C., an individual, E.D., an individual, E.E., an individual, E.M., an individual, E.R., an individual, ELUNDA MURPHY, an individual, H.B., an individual, H.D., an individual, HEATHER WORZALLA, an individual, J.B., an individual, J.C., an individual, JANE DOE, an individual, JANE DOE F-1, an individual, JANE DOE F-2, an individual, JANE DOE F-3, an individual, JANE DOE LS 13, an individual, JANE DOE LS 134, an individual, JANE DOE LS 144, an individual, JANE DOE LS 149, an individual, JANE DOE LS 154, an individual, JANE DOE LS 155, an individual, JANE DOE LS 158, an individual, JANE DOE LS 159, an individual, JANE DOE LS 16, an individual, JANE DOE LS 164, an individual, JANE DOE LS 203, an individual, JANE DOE LS 218, an individual, JANE DOE LS 231, an individual, JANE DOE LS 237, an individual, JANE DOE LS 238, an individual, JANE DOE LS 249, an individual,

JANE DOE LS 250, an individual, JANE DOE LS 257, an individual, JANE DOE LS 259, an individual, JANE DOE LS 260, an individual, JANE DOE LS 293, an individual, JANE DOE LS 320, an individual, JANE DOE LS 348, an individual, JANE DOE LS 354, an individual, JANE DOE LS 37, an individual, JANE DOE LS 63, an individual, JANE DOE LS 67, an individual, JANE DOE LS 75, an individual, JANE DOE LS 90, an individual, JANE DOE LS 91, an individual, JANE DOE LSA 340, an individual, JESSICA FRESHWATER, an individual, JILLIAN SULLIVAN, an individual, JOSHUA CORMIER, an individual, K.O., an individual, KATHERINE HYLIN, an individual, KATIE ESPINOSA, an individual, KELLY COWSERT, an individual, M.H., an individual, M.R., an individual, MELANIE HALSTENBERG, an individual, N.F., an individual, N.R., an individual, R.M., an individual, R.T., an individual, S.D., an individual, S.W., an individual, TAYLOR GAVIN, an individual, TRAVON BROWN, an individual, V.R., an individual, and WILLIAM ADORNO, on behalf of his minor child, I.O.,

*Real Parties in Interest.*

---

On Petition for a Writ of Mandamus to the United States
Judicial Panel on Multidistrict Litigation
(MDL Docket No. 3084)

---

**APPENDIX IN SUPPORT OF PETITION FOR A WRIT OF MANDAMUS
TO THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

**VOLUME I OF I – PAGES APP001 – APP567**

---

ROBERT ATKINS (SBN: 2210771)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email: ratkins@paulweiss.com

*Counsel for Defendants-Petitioners*
UBER TECHNOLOGIES, INC.;
RASIER, LLC; and RASIER-CA, LLC

**TABLE OF CONTENTS**

**(APPENDIX VOLUME I OF I)**

| DATE | DESCRIPTION | DKT NO. | VOL. | PAGES |
|---|---|---|---|---|
| 2023-11-09 | Civil Docket for MDL No. 3084 | N/A | 1 | APP001 - APP018 |
| 2023-07-14 | Plaintiffs' Motion for Transfer of Actions to the Northern District of California | 1 | 1 | APP019 - APP020 |
| 2023-07-14 | Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Transfer of Actions to the Northern District of California | 1-1 | 1 | APP021 - APP038 |
| 2023-07-14 | Exhibit A-1 to Plaintiffs' Motion for Transfer of Actions (Complaint, filed April 5, 2023, *Hylin v. Uber Technologies, Inc.*, Case No. 23-cv-01630-AMO [N.D. Cal.]) | 1-4 | 1 | APP039 - APP091 |
| 2023-08-18 | Uber's Response to Plaintiffs' Motion for Transfer of Actions | 65 | 1 | APP092 - APP116 |
| 2023-08-18 | Declaration of Robert Atkins in Support of Uber's Response to Plaintiffs' Motion for Transfer of Actions | 65-1 | 1 | APP117 - APP118 |
| 2023-08-18 | Exhibit 1 to Atkins Declaration (Order on Uber Technologies, Inc. and Rasier LLC's Motions to Stay or Dismiss Based on Forum Non Conveniens, filed January 23, 2023, Case No. CJC-21-005188 [S.F. Sup. Ct.]) | 65-1 | 1 | APP119 - APP141 |
| 2023-08-18 | Exhibit 2 to Atkins Declaration (Order re: Application of January 23, 2023 Order to All Cases in Proceeding, filed February 28, 2023, Case No. CJC-21-005188 [S.F. Sup. Ct.]) | 65-1 | 1 | APP142 - APP220 |
| 2023-08-18 | Exhibit 3 to Atkins Declaration (Order on Uber Technologies, Inc. and Rasier LLC's Demurrer to Plaintiff's Master Long-Form Complaint, filed January 23, 2023, Case No. CJC-21-005188 [S.F. Sup. Ct.]) | 65-1 | 1 | APP221 - APP241 |

| Date | Description | Dkt No. | Vol. | Pages |
|---|---|---|---|---|
| 2023-08-18 | Exhibit 4 to Atkins Declaration (Related Case Order [ECF 19], filed June 2, 2023, *Hylin v. Uber Technologies, Inc.*, Case No. 23-cv-01630-AMO [N.D. Cal.]) | 65-1 | 1 | APP242 - APP244 |
| 2023-08-18 | Exhibit 5 to Atkins Declaration (Uber Technologies, Inc. and Rasier LLC's Motion to Dismiss and Strike [ECF 17], filed July 6, 2023, *C.S. v. Uber Technologies, Inc.*, Case No. 1:23-cv-02766 [N.D. Ill.]) | 65-1 | 1 | APP245 - APP260 |
| 2023-08-18 | Exhibit 6 to Atkins Declaration (Uber Technologies, Inc. and Rasier LLC's Motion to Dismiss [ECF 29], filed June 12, 2023, *Doe LSA 340 v. Uber Technologies, Inc.*, Case No. 23-cv-01165-AMO [N.D. Cal.]) | 65-1 | 1 | APP261 - APP296 |
| 2023-08-18 | Declaration of Alejandra O'Connor in Support of Uber's Response to Plaintiffs' Motion for Transfer of Actions | 65-2 | 1 | APP297 - APP300 |
| 2023-08-18 | Exhibit A to O'Connor Declaration (Uber's Terms of Use dated November 21, 2016) | 65-2 | 1 | APP301 - APP311 |
| 2023-08-18 | Exhibit B to O'Connor Declaration (Uber's Terms of Use dated March 23, 2017) | 65-2 | 1 | APP312 - APP324 |
| 2023-08-18 | Exhibit C to O'Connor Declaration (Uber's Terms of Use dated December 13, 2017) | 65-2 | 1 | APP325 - APP335 |
| 2023-08-18 | Exhibit D to O'Connor Declaration (Uber's Terms of Use dated November 12, 2019) | 65-2 | 1 | APP336 - APP344 |
| 2023-08-18 | Exhibit E to O'Connor Declaration (Uber's Terms of Use dated March 17, 2020) | 65-2 | 1 | APP345 - APP351 |
| 2023-08-18 | Exhibit F to O'Connor Declaration (Uber's Terms of Use dated July 15, 2020) | 65-2 | 1 | APP352 - APP361 |
| 2023-08-18 | Exhibit G to O'Connor Declaration (Uber's Terms of Use dated January 18, 2020) | 65-2 | 1 | APP362 - APP374 |
| 2023-08-18 | Exhibit H to O'Connor Declaration (Uber's Terms of Use dated April 14, 2021) | 65-2 | 1 | APP375 - APP387 |
| 2023-08-18 | Exhibit I to O'Connor Declaration (Uber's Terms of Use dated July 12, 2021) | 65-2 | 1 | APP388 - APP404 |

| Date | Description | Dkt No. | Vol. | Pages |
|------|-------------|---------|------|-------|
| 2023-08-18 | Exhibit J to O'Connor Declaration (Uber's Terms of Use dated December 16, 2021) | 65-2 | 1 | APP405 - APP426 |
| 2023-08-18 | Exhibit K to O'Connor Declaration (Uber's Terms of Use dated April 4, 2022) | 65-2 | 1 | APP427 - APP452 |
| 2023-08-18 | Exhibit L to O'Connor Declaration (Uber's Terms of Use dated August 16, 2022) | 65-2 | 1 | APP453 - APP477 |
| 2023-08-18 | Exhibit M to O'Connor Declaration (Uber's Terms of Use dated January 17, 2023) | 65-2 | 1 | APP478 - APP503 |
| 2023-08-18 | Exhibit N to O'Connor Declaration (Uber's Terms of Use dated June 14, 2023) | 65-2 | 1 | APP504 - APP530 |
| 2023-08-25 | Plaintiffs' Reply Memorandum in Support of Motion for Transfer of Actions | 75 | 1 | APP531 - APP541 |
| 2023-09-28 | Transcript on Motion for Transfer of Actions, dated September 28, 2023 [MDL No. 3084] | N/A | 1 | APP542 - APP561 |
| 2023-10-04 | Transfer Order of the United States Judicial Panel on Multidistrict Litigation [Docketed as ECF 24 in Case No. 3:23-cv-03488] | 94 | 1 | APP562 - APP567 |

# CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, I electronically filed the foregoing **APPENDIX IN SUPPORT OF PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION, VOLUME I OF I** with the clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I also certify that a true copy of the foregoing document was mailed to:

Hon. Karen K. Caldwell
Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, NE
Room G-255, North Lobby
Washington, DC 20544-0005

I further certify that true copies of the foregoing document were electronically served on counsel of record as follows:

| | |
|---|---|
| Rachel B. Abrams<br>Adam B. Wolf<br>Angela J. Nehmans<br>PEIFFER WOLF CARR KANE<br>CONWAY & WISE, LLP<br>555 Montgomery Street, Suite 820<br>San Francisco, CA 94111<br>Email: rabrams@peifferwolf.com<br>awolf@peifferwolf.com<br>anehmens@peifferwolf.com | William A. Levin<br>Laurel L. Simes<br>David M. Grimes<br>LEVIN SIMES LLP<br>1700 Montgomery Street, Suite 250<br>San Francisco, CA 94111<br>Email: wlevin@levinsimes.com<br>llsimes@levinsimes.com<br>dgrimes@levinsimes.com |

| | |
|---|---|
| Walt Cubberly<br>WILLIAM HART & BOUNDAS, LLP<br>8441 Gulf Freeway, Suite 600<br>Houston, Texas 77017<br>Email: wcubberly@whlaw.com | Bartlet Brebner<br>BREBNER LAW FIRM PC<br>4647 N. 32nd Street, Suite 285<br>Phoenix, AZ 85018<br>Email: bbrebner@brebnerlaw.com |
| Bret D Stanley<br>Eric Hawley<br>Steven J Kherkher<br>KHERKHER GARCIA, LLP<br>2925 Richmond Avenue, Suite 1560<br>Houston, TX 77098<br>Email: bstanley@kherkhergarcia.com<br>    ehawley@kherkhergarcia.com<br>    skherkher@kherkhergarcia.com | Michael Lee Nimmo<br>Charles Mendez<br>WAHLBERG WOODRUFF NIMMO<br>& SLOANE LLP<br>4601 DTC Boulevard, Suite 950<br>Denver, CO 80237<br>Email:<br>michael@denvertriallawyers.com<br>charles@denvertriallawyers.com |
| Carl Kessinger<br>Eric D. Holland<br>HOLLAND LAW FIRM<br>211 North Broadway, Suite 2625<br>St. Louis, MO 63102<br>Email: ckessinger@allfela.com<br>    eholland@hollandtriallawyers.com | Benjamin T. Carroll<br>KENNEY & CONLEY, P.C.<br>100 Grandview Road, Suite 218<br>Braintree, MA 02184<br>Email: benjamin@kenneyconley.com |
| Charles Andrew Childers<br>CHILDERS SCHLUETER &<br>SMITH LLC<br>1932 N. Druid Hills Road, Suite 100<br>Atlanta, GA 30319<br>Email: achilders@cssfirm.com | Matthew Ryan Wilson<br>MEYER WILSON CO., LPA<br>305 W. Nationwide Blvd.<br>Columbus, OH 43215<br>Email: Mwilson@meyerwilson.com |
| Richard Samuel Clark<br>MEYER WILSON CO., LPA<br>310 Tappan Street<br>Columbus, OH 43201<br>Email: Rclark@meyerwilson.com | Roopal Luhana<br>Peter T. Anderson<br>Eric Chaffin<br>CHAFFIN LUHANA LLP<br>600 3rd Avenue, 12th Floor<br>New York, NY 10016<br>Email: Anderson@ChaffinLuhana.com<br>    Luhana@ChaffinLuhana.com<br>    Chaffin@ChaffinLuhana.com |

| | |
|---|---|
| Paula S. Bliss, Esq.<br>Kimberly A. Dougherty, Esq.<br>Kelly Guagenty, Esq.<br>JUSTICE LAW COLLABORATIVE,<br>LLC<br>210 Washington Street<br>North Easton, MA 02356<br>Email: paula@justiclc.com<br>      kim@justiclc.com<br>      kelly@justiclc.com | Erin Copeland, Esq.<br>FIBICH LEEBRON COPELAND &<br>BRIGGS<br>1150 Bissonnet Street<br>Houston, TX 77005<br>Email: ecopeland@fibichlaw.com |
| Karen Barth Menzies<br>KBM LAW CALIFORNIA<br>6701 Center Drive West, Suite 1400<br>Los Angeles, CA 90045<br>Email: kbm@classlawgroup.com | |

DATED:  November 10, 2023      **PAUL, WEISS, RIFKIND, WHARTON &**
                                          **GARRISON LLP**

                                     By:    */s/ Robert Atkins*
                                            **ROBERT ATKINS**
                                            1285 Avenue of the Americas
                                            New York, NY 10019
                                            Telephone: (212) 373-3000
                                            Facsimile: (212) 757-3990
                                            ratkins@paulweiss.com

                                       *Counsel for Defendants-Petitioners*
                                       UBER TECHNOLOGIES, INC.,
                                       RASIER, LLC, and RASIER-CA, LLC

| Query | Reports ▾ | Utilities ▾ | Help | Log Out |
|-------|-----------|-------------|------|---------|

**TRANSFERRED**

### United States Judicial Panel on Multidistrict Litigation
### CIVIL DOCKET FOR CASE #: MDL No. 3084

**IN RE: Uber Technologies, Inc., Passenger Sexual Assault Litigation**
Assigned to: Charles R. Breyer
Transferee District: California Northern
Master Docket Number: 3:23-md-3084
Member cases:

Date Filed: 07/14/2023
MDL Status: Transferred
Date Ordered: 10/04/2023
Citation: _F.Supp.3d_

AZ/2:23-cv-00875 (Transfer)
CAC/2:23-cv-08115 (CTO Final)
CAN/3:23-cv-01165 (NTN)
CAN/3:23-cv-01630 (NTN)
CAN/3:23-cv-02051 (NTN)
CAN/3:23-cv-02071 (NTN)
CAN/3:23-cv-02111 (NTN)
CAN/3:23-cv-02290 (NTN)
CAN/3:23-cv-03406 (NTN)
CAN/3:23-cv-03482 (NTN)
CAN/3:23-cv-03488 (NTN)
CAN/3:23-cv-03758 (NTN)
CAN/3:23-cv-03805 (NTN)
CAN/3:23-cv-03807 (NTN)
CAN/3:23-cv-03811 (NTN)
CAN/3:23-cv-03816 (NTN)
CAN/3:23-cv-03846 (NTN)
CAN/3:23-cv-03851 (NTN)
CAN/3:23-cv-03852 (NTN)
CAN/3:23-cv-03945 (NTN)
CAN/3:23-cv-03949 (NTN)
CAN/3:23-cv-03951 (NTN)
CAN/3:23-cv-03956 (NTN)
CAN/3:23-cv-03966 (NTN)
CAN/3:23-cv-03970 (NTN)
CAN/3:23-cv-03973 (NTN)
CAN/3:23-cv-03995 (NTN)
CAN/3:23-cv-04008 (NTN)
CAN/3:23-cv-04010 (NTN)
CAN/3:23-cv-04011 (NTN)
CAN/3:23-cv-04012 (NTN)
CAN/3:23-cv-04014 (NTN)
CAN/3:23-cv-04175 (NTN)
CAN/3:23-cv-04299 (NTN)
CAN/3:23-cv-04301 (NTN)
CAN/3:23-cv-04302 (NTN)
CAN/3:23-cv-04306 (NTN)
CAN/3:23-cv-04308 (NTN)
CAN/3:23-cv-04310 (NTN)
CAN/3:23-cv-04313 (NTN)

CAN/3:23-cv-04316 (NTN)
CAN/3:23-cv-04364 (NTN)
CAN/3:23-cv-04365 (NTN)
CAN/3:23-cv-04366 (NTN)
CAN/3:23-cv-04367 (NTN)
CAN/3:23-cv-04368 (NTN)
CAN/3:23-cv-04369 (NTN)
CAN/3:23-cv-04370 (NTN)
CAN/3:23-cv-04371 (NTN)
CAN/3:23-cv-04372 (NTN)
CAN/3:23-cv-04373 (NTN)
CAN/3:23-cv-04374 (NTN)
CAN/3:23-cv-04385 (NTN)
CAN/3:23-cv-04387 (NTN)
CAN/3:23-cv-04388 (NTN)
CAN/3:23-cv-04393 (NTN)
CAN/3:23-cv-04617 (NTN)
CAN/3:23-cv-04643 (NTN)
CAN/3:23-cv-04705 (NTN)
CAN/3:23-cv-04706 (NTN)
CAN/3:23-cv-04723 (NTN)
CAN/3:23-cv-04731 (NTN)
CAN/3:23-cv-04744 (NTN)
CAN/3:23-cv-04745 (NTN)
CAN/3:23-cv-04772 (NTN)
CAN/3:23-cv-04939 (NTN)
CAN/3:23-cv-04940 (NTN)
CAN/3:23-cv-04972 (NTN)
CAN/3:23-cv-05183 (NTN)
CAN/3:23-cv-05187 (NTN)
CAN/3:23-cv-05193 (NTN)
CAN/3:23-cv-05196 (NTN)
CAN/3:23-cv-05197 (NTN)
CAN/3:23-cv-05219 (NTN)
CAN/3:23-cv-05230 (NTN)
CAN/3:23-cv-05232 (NTN)
CAN/3:23-cv-05233 (NTN)
CAN/3:23-cv-05236 (NTN)
CAN/3:23-cv-05237 (NTN)
CAN/3:23-cv-05282 (NTN)
CAN/3:23-cv-05286 (NTN)
CAN/3:23-cv-05292 (NTN)
CAN/3:23-cv-05293 (NTN)
CAN/3:23-cv-05303 (NTN)
CAN/3:23-cv-05319 (NTN)
CAN/3:23-cv-05322 (NTN)
CAN/3:23-cv-05324 (NTN)
CAN/3:23-cv-05328 (NTN)
CAN/3:23-cv-05346 (NTN)
CAN/3:23-cv-05359 (NTN)
CAN/3:23-cv-05362 (NTN)
CAN/3:23-cv-05363 (NTN)

CAN/3:23-cv-05368 (NTN)
CAN/3:23-cv-05370 (NTN)
CAN/3:23-cv-05377 (NTN)
CAN/3:23-cv-05387 (NTN)
CAN/3:23-cv-05409 (NTN)
CAN/3:23-cv-05410 (NTN)
CAN/3:23-cv-05413 (NTN)
CAN/3:23-cv-05414 (NTN)
CAN/3:23-cv-05415 (NTN)
CAN/3:23-cv-05417 (NTN)
CAN/3:23-cv-05418 (NTN)
CAN/3:23-cv-05421 (NTN)
CAN/3:23-cv-05424 (NTN)
CAN/3:23-cv-05427 (NTN)
CAN/3:23-cv-05433 (NTN)
CAN/3:23-cv-05442 (NTN)
CAN/3:23-cv-05445 (NTN)
CAN/3:23-cv-05449 (NTN)
CAN/3:23-cv-05503 (NTN)
CAN/3:23-cv-05526 (NTN)
CO/1:23-cv-01734 (Transfer)
CO/1:23-cv-01735 (Transfer)
DC/1:23-cv-02347 (CTO Final)
GAM/5:23-cv-00246 (Transfer)
GAN/1:23-cv-02603 (Transfer)
ILN/1:23-cv-02766 (Transfer)
ILN/1:23-cv-02767 (Transfer)
ILN/1:23-cv-03425 (Transfer)
ILN/1:23-cv-14205 (CTO Final)
MA/1:23-cv-10745 (Transfer)
MA/1:23-cv-11859 (CTO Final)
MA/1:23-cv-11896 (CTO Final)
MD/1:23-cv-02580 (Awaiting Info)
MIE/1:23-cv-11991 (No Action Taken)
MOW/2:23-cv-04133 (Transfer)
NCE/5:23-cv-00317 (Transfer)
OHS/3:23-cv-00198 (CTO Final)
OHS/3:23-cv-00327 (CTO Filed)
TXN/3:23-cv-01519 (Transfer)
TXS/3:23-cv-00216 (Transfer)

**Plaintiff**

**Liaison Counsel for Plaintiffs**


V.

**Defendant**

**Liaison Counsel for Defendants**


| Date Filed | # | Docket Text |
|---|---|---|
| 07/14/2023 | 1 | MOTION TO TRANSFER (INITIAL MOTION) with Brief in Support. -- 22 Action(s) -- from California Northern District Court (3:23-cv-01630,3:23-cv-02111,3:23-cv-02290,3:23-cv-02051,3:23-cv-02071,3:23- |

cv-03406, 4:23-cv-03482,4:23-cv-03488,3:23-cv-01165), Illinois Northern District Court (1:23-cv-02766,1:23-cv-02767,1:23-cv-03425), Georgia Northern District Court (1:23-cv-02603), Georgia Middle District Court (5:23-cv-00246), North Carolina Eastern District Court (5:23-cv-00317), Texas Southern District Court (3:23-cv-00216), Arizona District Court (2:23-cv-00875), Texas Northern District Court (3:23-cv-01519), Colorado District Court (1:23-cv-01735,1:23-cv-01734), Missouri Western District Court (2:23-cv-04133), Massachusetts District Court (1:23-cv-10745)

**Suggested Transferee Court:** N.D. California
**Filed by:** Plaintiffs A.G., Kathrine Hylin, Taylor Gavin, Cynthia Crawford, E.R., A.M., A.H.M., H.B., C.S., Jillian Sullivan, Elunda Murphy, N.R., S.W., and Aundreya Rollo

(Attachments: # 1 Brief, # 2 Exhibit A - Schedule of Actions, # 3 Proof of Service, # 4 Exhibit A-1 (Docket Sheet, Complaint - NDCA 3:23-cv-01630-AMO), # 5 Exhibit A-2 (Docket Sheet, Complaint - NDCA 3:23-cv-02111-AMO), # 6 Exhibit A-3 (Docket Sheet, Complaint - NDCA 3:23-cv-02290-VC), # 7 Exhibit A-4 (Docket Sheet, Complaint - NDCA 3:23-cv-02051-TLT), # 8 Exhibit A-5 (Docket Sheet, Complaint - NDCA 3:23-cv-02071-CRB), # 9 Exhibit A-6 (Docket Sheet, Complaint - NDCA 3:23-cv-03406-JD), # 10 Exhibit A-7 (Docket Sheet, Complaint - NDCA 4:23-cv-03482), # 11 Exhibit A-8 (Docket Sheet, Complaint - NDCA 4:23-cv-03488), # 12 Exhibit A-9 (Docket Sheet, Complaint - NDIL 1:23-cv-02766), # 13 Exhibit A-10 (Docket Sheet, Complaint - NDIL 1:23-cv-02767), # 14 Exhibit A-11 (Docket Sheet, Complaint - NDIL 1:23-cv-03425), # 15 Exhibit A-12 (Docket Sheet, Complaint - NDGA 1:23-cv-02603), # 16 Exhibit A-13 (Docket Sheet, Complaint - EDNC 5:23-cv-317-D-BM), # 17 Exhibit A-14 (Docket Sheet, Complaint - SDTX 3:23-cv-00216), # 18 Exhibit A-15 (Docket Sheet, Complaint - AZ 2:23-cv-00875-DWL), # 19 Exhibit A-16 (Docket Sheet, Complaint - NDTX 3:23-cv-01519-N), # 20 Exhibit A-17 (Docket Sheet, Complaint - CO 1:23-cv-01735-KLM), # 21 Exhibit A-18 (Docket Sheet, Complaint - CO 1:23-cv-01734-NYW-KLM), # 22 Exhibit A-19 (Docket Sheet, Complaint - WDMO 2:23-cv-04133-BP), # 23 Exhibit A-20 (Docket Sheet, Complaint - MA 1:23-cv-10745-LTS), # 24 Exhibit A-21 (Docket Sheet, Complaint - NDCA 3:23-cv-01165-AMO), # 25 Exhibit A-22 (Docket Sheet, Complaint - MDGA 5:23-cv-00246-MTT), # 26 Exhibit B - List of Motions and Stipulations)(Abrams, Rachel) Modified on 7/17/2023 (TF). ADDED PARTY TYPE. MODIFIED OFFICE NUMBERS. MODIFIED DOCUMENT DESCRIPTIONS. (Entered: 07/14/2023)

| | | |
|---|---|---|
| 07/17/2023 | 2 | MOTION TO TRANSFER (CORRECTED) -- *(re: pldg. 1 )* Correcting the following items: **Proof of service,** -- Filed by: Plaintiffs *A.G., Kathrine Hylin, Taylor Gavin, Cynthia Crawford, E.R., A.M., A.H.M., H.B., C.S., Jillian Sullivan, Elunda Murphy, N.R., S.W., and Aundreya Rollo* (Abrams, Rachel) Modified on 7/18/2023 (TF). ADDED PARTY TYPE. (Entered: 07/17/2023) |
| 07/18/2023 | 3 | MDL Number 3084 Assigned -- MOTION FOR TRANSFER ACCEPTED FOR FILING re: pldg. ( 1 in Pending No. 24), ( 2 in Pending No. 24) Associated Cases: Pending No. 24, AZ/2:23-cv-00875, CAN/3:23-cv-01165, CAN/3:23-cv-01630, CAN/3:23-cv-02051, CAN/3:23-cv-02071, CAN/3:23-cv-02111, CAN/3:23-cv-02290, CAN/3:23-cv-03406, CAN/3:23-cv-03482, CAN/3:23-cv-03488, CO/1:23-cv-01734, CO/1:23-cv-01735, GAM/5:23-cv-00246, GAN/1:23-cv-02603, ILN/1:23-cv-02766, ILN/1:23-cv-02767, ILN/1:23-cv-03425, MA/1:23-cv-10745, MOW/2:23-cv-04133, NCE/5:23-cv-00317, TXN/3:23-cv-01519, TXS/3:23-cv-00216 (TF) (Entered: 07/18/2023) |
| 07/18/2023 | 4 | ***TEXT ONLY NOTICE*** <br><br> **NOTICE OF FILING AND PUBLICATION OF BRIEFING SCHEDULE** *re: pldg. ( 1 in MDL No. 3084), ( 2 in MDL No. 3084)* <br><br> **BRIEFING SCHEDULE IS SET AS FOLLOWS:** <br> **Notices of Appearance due on or before 8/1/2023.** <br> **Corporate Disclosure Statements due on or before 8/1/2023.** <br> **Responses due on or before 8/8/2023.** <br> **Reply, if any, due on or before 8/15/2023.** <br><br> **In their briefs, the parties should address what steps they have taken to pursue alternatives to centralization (including, but not limited to, engaging in informal coordination of discovery and scheduling, and seeking Section 1404 transfer of one or more of the subject cases).** <br><br> Appearance forms (JPML form 18) and Corporate Disclosure forms can be downloaded from our website. **Important**: A Corporate Disclosure Form, if required, must be filed, even if one has previously been filed in this MDL. <br><br> Please visit the CM/ECF Filing Guidelines & Forms page of our website for additional information. Attorneys must be registered to file in the JPML. Please visit our website for Registration Information. |

| | | |
|---|---|---|
| | | Signed by Clerk of the Panel Tiffany D. Pete on 7/18/2023.<br><br>Associated Cases: MDL No. 3084, AZ/2:23-cv-00875, CAN/3:23-cv-01165, CAN/3:23-cv-01630, CAN/3:23-cv-02051, CAN/3:23-cv-02071, CAN/3:23-cv-02111, CAN/3:23-cv-02290, CAN/3:23-cv-03406, CAN/3:23-cv-03482, CAN/3:23-cv-03488, CO/1:23-cv-01734, CO/1:23-cv-01735, GAM/5:23-cv-00246, GAN/1:23-cv-02603, ILN/1:23-cv-02766, ILN/1:23-cv-02767, ILN/1:23-cv-03425, MA/1:23-cv-10745, MOW/2:23-cv-04133, NCE/5:23-cv-00317, TXN/3:23-cv-01519, TXS/3:23-cv-00216 (TF) (Entered: 07/18/2023) |
| 07/19/2023 | 5 | NOTICE OF APPEARANCE re: pldg.( 1 in MDL No. 3084) Filed by William A Levin on behalf of Plaintiff Jane Doe LSA 340 (Attachments: # 1 Proof of Service) Associated Cases: MDL No. 3084, CAN/3:23-cv-01165 (Levin, William) Modified on 7/20/2023 (TF). REMOVED DUPLICATE ATTACHMENT. (Entered: 07/19/2023) |
| 07/20/2023 | 6 | MOTION FOR EXTENSION OF TIME TO FILE RESPONSE re: pldg. ( 1 in MDL No. 3084) Filed by Robert A Atkins on behalf of Defendants Raiser, LLC, Uber Technologies, Inc. (Attachments: # 1 Schedule of Actions, # 2 Proof of Service)<br><br>Associated Cases: MDL No. 3084, AZ/2:23-cv-00875, CAN/3:23-cv-01165, CAN/3:23-cv-01630, CAN/3:23-cv-02051, CAN/3:23-cv-02071, CAN/3:23-cv-02111, CAN/3:23-cv-02290, CAN/3:23-cv-03406, CAN/3:23-cv-03482, CAN/3:23-cv-03488, CO/1:23-cv-01734, CO/1:23-cv-01735, GAM/5:23-cv-00246, GAN/1:23-cv-02603, ILN/1:23-cv-02766, ILN/1:23-cv-02767, ILN/1:23-cv-03425, MA/1:23-cv-10745, MOW/2:23-cv-04133, NCE/5:23-cv-00317, TXN/3:23-cv-01519, TXS/3:23-cv-00216 (Atkins, Robert) Modified on 7/21/2023 (TF). REMOVED DUPLICATE PARTIES. (Entered: 07/20/2023) |
| 07/21/2023 | 7 | ERRATA - to (3 in AZ/2:23-cv-00875, 4 in CAN/3:23-cv-01165, 3 in CAN/3:23-cv-01630, 3 in CAN/3:23-cv-02051, 3 in CAN/3:23-cv-02071, 3 in CAN/3:23-cv-02111, 3 in CAN/3:23-cv-02290, 3 in CAN/3:23-cv-03406, 3 in CAN/3:23-cv-03482, 3 in CAN/3:23-cv-03488, 3 in CO/1:23-cv-01734, 3 in CO/1:23-cv-01735, 3 in GAM/5:23-cv-00246, 3 in GAN/1:23-cv-02603, 3 in ILN/1:23-cv-02766, 3 in ILN/1:23-cv-02767, 3 in ILN/1:23-cv-03425, 3 in MA/1:23-cv-10745, 6 in MDL No. 3084, 3 in MOW/2:23-cv-04133, 3 in NCE/5:23-cv-00317, 3 in TXN/3:23-cv-01519, 3 in TXS/3:23-cv-00216) - Filed by Defendants Rasier, LLC, Uber Technologies, Inc. (Attachments: # 1 Motion for Extension of Time, # 2 Schedule of Actions, # 3 Proof of Service) Associated Cases: MDL No. 3084, AZ/2:23-cv-00875, CAN/3:23-cv-01165, CAN/3:23-cv-01630, CAN/3:23-cv-02051, CAN/3:23-cv-02071, CAN/3:23-cv-02111, CAN/3:23-cv-02290, CAN/3:23-cv-03406, CAN/3:23-cv-03482, CAN/3:23-cv-03488, CO/1:23-cv-01734, CO/1:23-cv-01735, GAM/5:23-cv-00246, GAN/1:23-cv-02603, ILN/1:23-cv-02766, ILN/1:23-cv-02767, ILN/1:23-cv-03425, MA/1:23-cv-10745, MOW/2:23-cv-04133, NCE/5:23-cv-00317, TXN/3:23-cv-01519, TXS/3:23-cv-00216 (Atkins, Robert) Modified on 7/21/2023 (TF). REMOVED DUPLICATE PARTIES. (Entered: 07/21/2023) |
| 07/24/2023 | 8 | NOTICE OF RELATED ACTION -- 1 Action(s) -- Filed by attorney Rachel Abrams, Counsel for Plaintiffs Kathrine Hylin, Taylor Gavin, Cynthia Crawford, E.R., A.G., A.M., A.H.M., H.B., C.S., Jillian Sullivan, Elunda Murphy, N.R., S.W., Aundreya Rollo -- Ohio Southern District Court (3:23-cv-00198) (Attachments: # 1 Schedule of Actions, # 2 Proof of Service, # 3 Exhibit A-1 (Docket Sheet, Complaint - SDOH 3:23-cv-00198-WHR-PBS)) (Abrams, Rachel) Modified on 7/25/2023 (TF). ADDED PARTY TYPE. (Entered: 07/24/2023) |
| 07/25/2023 | 9 | ***TEXT ONLY ENTRY***<br><br>MINUTE ORDER (re: pldg. ( 6 in MDL No. 3084), ( 7 in MDL No. 3084) ) -- Motion of Defendants Raiser, LLC, Uber Technologies, Inc. for Extension of Time to File Response -- **GRANTED IN PART.**<br><br>**Responses due on or before 8/18/2023.**<br>**Reply, if any, due on or before 8/25/2023.**<br><br>**Signed by Clerk of the Panel Tiffany D. Pete on 7/25/2023.**<br><br>**Associated Cases: MDL No. 3084, AZ/2:23-cv-00875, CAN/3:23-cv-01165, CAN/3:23-cv-01630, CAN/3:23-cv-02051, CAN/3:23-cv-02071, CAN/3:23-cv-02111, CAN/3:23-cv-02290, CAN/3:23-cv-03406, CAN/3:23-cv-03482, CAN/3:23-cv-03488, CO/1:23-cv-01734, CO/1:23-cv-01735, GAM/5:23-cv-00246, GAN/1:23-cv-02603, ILN/1:23-cv-02766, ILN/1:23-cv-02767, ILN/1:23-cv-03425, MA/1:23-cv-10745, MOW/2:23-cv-04133, NCE/5:23-cv-00317, TXN/3:23-cv-01519, TXS/3:23-cv-00216 (TP) (Entered: 07/25/2023)** |
| 07/25/2023 | 10 | NOTICE OF APPEARANCE re: pldg.( 1 in MDL No. 3084) Filed by Rachel Beth Abrams on behalf of Plaintiffs A. G., et al. (Attachments: # 1 Schedule of Actions Exhibit A, # 2 Proof of Service) Associated Cases: MDL No. 3084, CAN/3:23-cv-01630, CAN/3:23-cv-02051, CAN/3:23-cv-02071, CAN/3:23-cv- |

| | | |
|---|---|---|
| | | 02111, CAN/3:23-cv-02290, CAN/3:23-cv-03406, CAN/3:23-cv-03482, CAN/3:23-cv-03488, GAN/1:23-cv-02603, ILN/1:23-cv-02766, ILN/1:23-cv-02767, ILN/1:23-cv-03425, NCE/5:23-cv-00317, TXS/3:23-cv-00216 (Abrams, Rachel) (Entered: 07/25/2023) |
| 07/26/2023 | 11 | **SEE CORRECTED PLEADING 14 IN MDL NO. 3084**<br><br>NOTICE OF APPEARANCE re: pldg.( 1 in MDL No. 3084) Filed by Eric D. Holland on behalf of Plaintiff Kelly Cowsert (Attachments: # 1 Proof of Service) Associated Cases: MDL No. 3084, MOW/2:23-cv-04133 (Holland, Eric) Modified on 7/28/2023 (TF). (Entered: 07/26/2023) |
| 07/26/2023 | 12 | NOTICE OF APPEARANCE re: pldg.( 1 in MDL No. 3084) Filed by Benjamin T. Carroll on behalf of Plaintiff Jane Doe (Attachments: # 1 Proof of Service) Associated Cases: MDL No. 3084, MA/1:23-cv-10745 (Carroll, Benjamin) (Entered: 07/26/2023) |
| 07/27/2023 | 13 | NOTICE OF APPEARANCE re: pldg.( 1 in MDL No. 3084) Filed by Eric D. Holland on behalf of Plaintiff Kelly Cowsert (Attachments: # 1 Proof of Service) Associated Cases: MDL No. 3084, MOW/2:23-cv-04133 (Holland, Eric) (Entered: 07/27/2023) |
| 07/27/2023 | 14 | NOTICE OF APPEARANCE (CORRECTED) re: pldg.( 1 in MDL No. 3084),( 11 in MDL No. 3084) Filed by Robert A Atkins on behalf of Defendants Uber Technologies, Inc., Rasier, LLC and Rasier-CA,LLC. (Attachments: # 1 Proof of Service) Associated Cases: MDL No. 3084, AZ/2:23-cv-00875, CAN/3:23-cv-01165, CAN/3:23-cv-01630, CAN/3:23-cv-02051, CAN/3:23-cv-02071, CAN/3:23-cv-02111, CAN/3:23-cv-02290, CAN/3:23-cv-03406, CAN/3:23-cv-03482, CAN/3:23-cv-03488, CO/1:23-cv-01734, CO/1:23-cv-01735, GAM/5:23-cv-00246, GAN/1:23-cv-02603, ILN/1:23-cv-02766, ILN/1:23-cv-02767, ILN/1:23-cv-03425, MA/1:23-cv-10745, MOW/2:23-cv-04133, NCE/5:23-cv-00317, OHS/3:23-cv-00198, TXN/3:23-cv-01519, TXS/3:23-cv-00216 (Atkins, Robert) Modified on 7/28/2023 (TF). REMOVED DUPLICATE PARTIES. ADDED MDL LINK. (Entered: 07/27/2023) |
| 07/27/2023 | 15 | CORPORATE DISCLOSURE STATEMENT re: pldg. ( 1 in MDL No. 3084) -- Identifying **Corporate Parent** No Parent Corp. for UBER TECHNOLOGIES INC. (Attachments: # 1 Proof of Service) Associated Cases: MDL No. 3084, AZ/2:23-cv-00875, CAN/3:23-cv-01165, CAN/3:23-cv-01630, CAN/3:23-cv-02051, CAN/3:23-cv-02071, CAN/3:23-cv-02111, CAN/3:23-cv-02290, CAN/3:23-cv-03406, CAN/3:23-cv-03482, CAN/3:23-cv-03488, CO/1:23-cv-01734, CO/1:23-cv-01735, GAM/5:23-cv-00246, GAN/1:23-cv-02603, ILN/1:23-cv-02766, ILN/1:23-cv-02767, ILN/1:23-cv-03425, MA/1:23-cv-10745, MOW/2:23-cv-04133, NCE/5:23-cv-00317, OHS/3:23-cv-00198, TXN/3:23-cv-01519, TXS/3:23-cv-00216 (Atkins, Robert) Modified on 7/28/2023 (TF). REMOVED DUPLICATE PARTIES. (Entered: 07/27/2023) |
| 07/27/2023 | 16 | CORPORATE DISCLOSURE STATEMENT re: pldg. ( 1 in MDL No. 3084) -- Identifying **Corporate Parent** UBER TECHNOLOGIES, INC. for Raiser LLC. (Attachments: # 1 Proof of Service) Associated Cases: MDL No. 3084, AZ/2:23-cv-00875, CAN/3:23-cv-01165, CAN/3:23-cv-01630, CAN/3:23-cv-02051, CAN/3:23-cv-02071, CAN/3:23-cv-02111, CAN/3:23-cv-02290, CAN/3:23-cv-03406, CAN/3:23-cv-03482, CAN/3:23-cv-03488, CO/1:23-cv-01734, CO/1:23-cv-01735, GAM/5:23-cv-00246, GAN/1:23-cv-02603, ILN/1:23-cv-02766, ILN/1:23-cv-02767, ILN/1:23-cv-03425, MOW/2:23-cv-04133, NCE/5:23-cv-00317, OHS/3:23-cv-00198, TXN/3:23-cv-01519, TXS/3:23-cv-00216 (Atkins, Robert) Modified on 7/28/2023 (TF). REMOVED DUPLICATE PARTIES. (Entered: 07/27/2023) |
| 07/27/2023 | 17 | CORPORATE DISCLOSURE STATEMENT re: pldg. ( 1 in MDL No. 3084) -- Identifying **Corporate Parent** UBER TECHNOLOGIES, INC., a Delaware Corporation for Rasier-CA, LLC. (Attachments: # 1 Proof of Service) Associated Cases: MDL No. 3084, CAN/3:23-cv-01165 (Atkins, Robert) (Entered: 07/27/2023) |
| 07/28/2023 | 18 | NOTICE OF APPEARANCE re: pldg.( 1 in MDL No. 3084) Filed by Bartlet Brebner on behalf of Plaintiff William Adorno (Attachments: # 1 Proof of Service) Associated Cases: MDL No. 3084, AZ/2:23-cv-00875 (Brebner, Bartlet) (Entered: 07/28/2023) |
| 07/31/2023 | 19 | NOTICE OF APPEARANCE re: pldg.( 1 in MDL No. 3084) Filed by Charles Andrew Childers on behalf of Plaintiff JESSICA FRESHWATER (Attachments: # 1 Proof of Service) Associated Cases: MDL No. 3084, GAM/5:23-cv-00246 (Childers, Charles) Modified on 8/1/2023 (TF). REMOVED DUPLICATE ATTACHMENT. (Entered: 07/31/2023) |
| 08/01/2023 | 20 | NOTICE OF APPEARANCE re: pldg.( 1 in MDL No. 3084) Filed by Michael Nimmo on behalf of Plaintiff M.H. (Attachments: # 1 Proof of Service) Associated Cases: MDL No. 3084, CO/1:23-cv-01735 (Nimmo, Michael) (Entered: 08/01/2023) |
| 08/01/2023 | 21 | NOTICE OF APPEARANCE re: pldg.( 1 in MDL No. 3084) Filed by Michael Nimmo on behalf of Plaintiff Beck Glaser (Attachments: # 1 Proof of Service) Associated Cases: MDL No. 3084, CO/1:23-cv-01734 (Nimmo, Michael) (Entered: 08/01/2023) |

| 08/01/2023 | 22 | NOTICE OF APPEARANCE re: pldg.( 1 in MDL No. 3084) Filed by Bret D Stanley on behalf of Plaintiff Katie Espinosa (Attachments: # 1 Proof of Service) Associated Cases: MDL No. 3084, TXN/3:23-cv-01519 (Stanley, Bret) (Entered: 08/01/2023) |
|---|---|---|
| 08/01/2023 | 23 | NOTICE OF APPEARANCE re: pldg.( 8 in MDL No. 3084) Filed by Layne Hilton on behalf of Plaintiff V.R. (Attachments: # 1 Proof of Service) Associated Cases: MDL No. 3084, OHS/3:23-cv-00198 (Hilton, Layne) (Entered: 08/01/2023) |
| 08/08/2023 | 24 | RESPONSE -- *(re: pldg. ( 1 in MDL No. 3084), ( 2 in MDL No. 3084) )* Filed by Plaintiff Jane Doe LSA 340 (Attachments: # 1 Exhibit A - List of Cases, # 2 Proof of Service)<br><br>Associated Cases: MDL No. 3084, CAN/3:23-cv-01165 (Levin, William) Modified on 8/9/2023 (TF). MODIFIED ATTACHMENT DESCRIPTIONS. Modified on 8/25/2023 (TF). MODIFIED EVENT TYPE. (Entered: 08/08/2023) |
| 08/11/2023 | 25 | HEARING ORDER re: pldg. ( 1 in MDL No. 3084) - SECTION A (DESIGNATED FOR ORAL ARGUMENT)<br><br>**PANEL HEARING set for 9/28/2023 in Lexington, Kentucky. Notices of Presentation or Waiver of Oral Argument due on or before 9/5/2023.**<br><br>Notice of Presentation or Waiver of Oral Argument form (JPML form 9) can be downloaded from our website.<br><br>Signed by Judge Karen K. Caldwell, Chair, PANEL ON MULTIDISTRICT LITIGATION, on 8/11/2023.<br><br>(Attachments: # 1 Courtroom Advisory)<br><br>Associated Cases: MDL No. 3084, AZ/2:23-cv-00875, CAN/3:23-cv-01165, CAN/3:23-cv-01630, CAN/3:23-cv-02051, CAN/3:23-cv-02071, CAN/3:23-cv-02111, CAN/3:23-cv-02290, CAN/3:23-cv-03406, CAN/3:23-cv-03482, CAN/3:23-cv-03488, CO/1:23-cv-01734, CO/1:23-cv-01735, GAM/5:23-cv-00246, GAN/1:23-cv-02603, ILN/1:23-cv-02766, ILN/1:23-cv-02767, ILN/1:23-cv-03425, MA/1:23-cv-10745, MOW/2:23-cv-04133, NCE/5:23-cv-00317, TXN/3:23-cv-01519, TXS/3:23-cv-00216 (RH) (Entered: 08/11/2023) |
| 08/11/2023 | 26 | RELATED ACTION -- (re: pldg. 24 ) -- 17 Action(s) -- JPML has identified the following action(s) for potential inclusion in the proposed MDL: California Northern District Court (3:23-cv-03758,3:23-cv-03805,3:23-cv-03807,3:23-cv-03949,3:23-cv-03951,3:23-cv-03956, 3:23-cv-03966,3:23-cv-03970,3:23-cv-03995,3:23-cv-04010,3:23-cv-04011,3:23-cv-04014, 4:23-cv-03811,4:23-cv-03816,4:23-cv-03945,4:23-cv-03973,4:23-cv-04008) (Attachments: # 1 Complaint CAN/3:23-3758, # 2 Complaint CAN/3:23-3805, # 3 Complaint CAN/3:23-3807, # 4 Complaint CAN/3:23-3949, # 5 Complaint CAN/3:23-3951, # 6 Complaint CAN/3:23-3956, # 7 Complaint CAN/3:23-3966, # 8 Complaint CAN/3:23-3970, # 9 Complaint CAN/3:23-3995, # 10 Complaint CAN/3:23-4010, # 11 Complaint CAN/3:23-4011, # 12 Complaint CAN/3:23-4014, # 13 Complaint CAN/4:23-3811, # 14 Complaint CAN/4:23-3816, # 15 Complaint CAN/4:23-3945, # 16 Complaint CAN/4:23-3973, # 17 Complaint CAN/4:23-4008) (TF) (Entered: 08/11/2023) |
| 08/15/2023 | 27 | NOTICE OF RELATED ACTION -- 1 Action(s) -- Filed by attorney Roopal P. Luhana, Counsel for Plaintiff Ariane Cunningham -- District of Columbia District Court (1:23-cv-02347) (Attachments: # 1 Schedule of Actions, # 2 Proof of Service, # 3 Complaint) (Luhana, Roopal) Modified on 8/16/2023 (TF). ADDED PARTY TYPE. (Entered: 08/15/2023) |
| 08/16/2023 | 28 | NOTICE OF APPEARANCE re: pldg.( 1 in MDL No. 3084) Filed by John Eddie Williams, Jr on behalf of Plaintiffs Jane Doe F-2, Jane Doe F-1, Jane Doe F-3 (Attachments: # 1 Schedule of Actions, # 2 Proof of Service) Associated Cases: MDL No. 3084, CAN/3:23-cv-03949, CAN/3:23-cv-03951, CAN/4:23-cv-03945 (Williams, John) (Entered: 08/16/2023) |
| 08/16/2023 | 29 | NOTICE OF PRESENTATION OF ORAL ARGUMENT re: pldg. ( 25 in MDL No. 3084) Filed by John Eddie Williams, Jr on behalf of Plaintiffs Jane Doe F-2, Jane Doe F-1, Jane Doe F-3 (Attachments: # 1 Schedule of Actions, # 2 Proof of Service) Associated Cases: MDL No. 3084, CAN/3:23-cv-03949, CAN/3:23-cv-03951, CAN/4:23-cv-03945 (Williams, John) (Entered: 08/16/2023) |
| 08/16/2023 | 30 | NOTICE OF RELATED ACTION -- 5 Action(s) -- Filed by attorney Rachel Abrams, Counsel for Plaintiffs Kathrine Hylin, Taylor Gavin, Cynthia Crawford, E.R., A.G., A.M., A.H.M., H.B., C.S., Jillian Sullivan, Elunda Murphy, N.R., S.W., Aundreya Rollo, D.P., Ashley Jones, S.D. -- California Northern District Court (3:23-cv-03846,3:23-cv-03851,3:23-cv-03852), Massachusetts District Court (1:23-cv-11859), Michigan Eastern District Court (1:23-cv-11991) (Attachments: # 1 Schedule of Actions, # 2 Proof of Service, # 3 Exhibit A-1 (Docket Sheet, Complaint - NDCA 3:23-cv-03846-JSC), # 4 Exhibit A-2 (Docket Sheet, |

|  |  |  |
|---|---|---|
|  |  | Complaint - NDCA 3:23-cv-03851-CRB), # 5 Exhibit A-3 (Docket Sheet, Complaint - NDCA 3:23-cv-03852-JSW), # 6 Exhibit A-4 (Docket Sheet, Complaint - MA 1:23-cv-11859-DJC), # 7 Exhibit A-5 (Docket Sheet, Complaint - EDMI 1:23-cv-11991-TLL-PTM)) (Abrams, Rachel) Modified on 8/22/2023 (dld). ADDED PARTY TYPE (Entered: 08/16/2023) |
| 08/17/2023 | 31 | NOTICE OF APPEARANCE re: pldg.( 27 in MDL No. 3084) Filed by Roopal P. Luhana on behalf of Plaintiff ARIANE CUNNINGHAM Associated Cases: MDL No. 3084, DC/1:23-cv-02347 (Luhana, Roopal) (Entered: 08/17/2023) |
| 08/17/2023 | 32 | INTERESTED PARTY RESPONSE IN SUPPORT -- (re: pldg. ( 1 in MDL No. 3084) ) Filed by Plaintiff ARIANE CUNNINGHAM<br><br>Associated Cases: MDL No. 3084, DC/1:23-cv-02347 (Luhana, Roopal) Modified on 8/18/2023 (dld). EDITED EVENT TYPE (Entered: 08/17/2023) |
| 08/17/2023 | 33 | CERTIFICATE OF SERVICE (AMENDED) - Amendment to (1 in CAN/3:23-cv-03949, 1 in CAN/3:23-cv-03951, 1 in CAN/4:23-cv-03945, 28 in MDL No. 3084) Notice of Appearance,, (2 in CAN/3:23-cv-03949, 2 in CAN/3:23-cv-03951, 2 in CAN/4:23-cv-03945, 29 in MDL No. 3084) Notice of Presentation of Oral Argument,, Filed by Plaintiffs Jane Doe F-2, Jane Doe F-1, Jane Doe F-3 Associated Cases: MDL No. 3084, CAN/3:23-cv-03949, CAN/3:23-cv-03951, CAN/4:23-cv-03945 (Williams, John) Modified on 8/18/2023 (dld). EDITED EVENT TYPE (Entered: 08/17/2023) |
| 08/17/2023 | 34 | **FILED IN ERROR SEE PLDG. 37**<br><br>INTERESTED PARTY RESPONSE IN SUPPORT WITH MEMORANDUM -- (re: pldg. 1 ) Filed by Plaintiff, N.F.<br><br>(Dougherty, Kimberly) Modified on 8/18/2023 (dld). ADDED NOTATION (Entered: 08/17/2023) |
| 08/17/2023 | 35 | NOTICE OF APPEARANCE re: pldg.( 30 in MDL No. 3084) Filed by Marlene J. Goldenberg on behalf of Plaintiff Kristie Wood (Attachments: # 1 Proof of Service) Associated Cases: MDL No. 3084, MIE/1:23-cv-11991 (Goldenberg, Marlene) (Entered: 08/17/2023) |
| 08/18/2023 | 36 | NOTICE OF RELATED ACTION -- 1 Action(s) -- Filed by attorney Karen Barth Menzies, Counsel for Plaintiff, Travon Brown -- California Northern District Court (3:23-cv-04175) (Attachments: # 1 Schedule of Actions, # 2 Proof of Service, # 3 Complaint with Docket Sheet) (Menzies, Karen) (Entered: 08/18/2023) |
| 08/18/2023 | 37 | INTERESTED PARTY RESPONSE IN SUPPORT -- (re: pldg. ( 1 in MDL No. 3084) ) Filed by Plaintiff N.F.<br><br>Associated Cases: MDL No. 3084, MA/1:23-cv-11859 (Dougherty, Kimberly) (Entered: 08/18/2023) |
| 08/18/2023 | 38 | NOTICE OF APPEARANCE re: pldg.(1 in MA/1:23-cv-11859, 37 in MDL No. 3084) Filed by Kimberly Dougherty on behalf of Plaintiff N.F. Associated Cases: MDL No. 3084, MA/1:23-cv-11859 (Dougherty, Kimberly) (Entered: 08/18/2023) |
| 08/18/2023 | 39 | **WITHDRAWN SEE PLDG. 67**<br><br>NOTICE OF APPEARANCE re: pldg.(1 in MA/1:23-cv-11859, 37 in MDL No. 3084) Filed by Paula S. Bliss on behalf of Plaintiff N.F. Associated Cases: MDL No. 3084, MA/1:23-cv-11859 (Bliss, Paula) Modified on 8/22/2023 (dld). ADDED NOTATION (Entered: 08/18/2023) |
| 08/18/2023 | 40 | NOTICE OF APPEARANCE re: pldg.( 36 in MDL No. 3084) Filed by Karen Barth Menzies on behalf of Plaintiff Travon Brown (Attachments: # 1 Proof of Service) Associated Cases: MDL No. 3084, CAN/3:23-cv-04175 (Menzies, Karen) (Entered: 08/18/2023) |
| 08/18/2023 | 41 | INTERESTED PARTY RESPONSE IN SUPPORT -- (re: pldg. ( 1 in MDL No. 3084) ) Filed by Plaintiff Travon Brown (Attachments: # 1 Proof of Service)<br><br>Associated Cases: MDL No. 3084, CAN/3:23-cv-04175 (Menzies, Karen) (Entered: 08/18/2023) |
| 08/18/2023 | 42 | NOTICE OF PRESENTATION OF ORAL ARGUMENT re: pldg. (2 in CAN/3:23-cv-04175, 41 in MDL No. 3084), ( 25 in MDL No. 3084) Filed by Plaintiff Travon Brown (Attachments: # 1 Proof of Service) Associated Cases: MDL No. 3084, CAN/3:23-cv-04175 (Menzies, Karen) (Entered: 08/18/2023) |
| 08/18/2023 | 43 | ERRATA - to (2 in DC/1:23-cv-02347, 1 in DC/1:23-cv-02347, 31 in MDL No. 3084, 32 in MDL No. 3084) - Filed by Plaintiff ARIANE CUNNINGHAM (Attachments: # 1 Other Notice of Appearance, # 2 Other |

| | | |
|---|---|---|
| | | Interested Party Response Memorandum) Associated Cases: MDL No. 3084, DC/1:23-cv-02347 (Luhana, Roopal) Modified on 8/18/2023 (dld). ADDED MDL LINKS (Entered: 08/18/2023) |
| 08/18/2023 | 44 | CERTIFICATE OF SERVICE re: pldg. (3 in DC/1:23-cv-02347, 43 in MDL No. 3084) Filed by Plaintiff ARIANE CUNNINGHAM -- Associated Cases: MDL No. 3084, DC/1:23-cv-02347 (Luhana, Roopal) (Entered: 08/18/2023) |
| 08/18/2023 | 45 | **WITHDRAWN SEE PLDG. 67**<br><br>CERTIFICATE OF SERVICE (AMENDED) re: pldg. (3 in MA/1:23-cv-11859, 39 in MDL No. 3084) Filed by Plaintiff N.F. -- Associated Cases: MDL No. 3084, MA/1:23-cv-11859 (Bliss, Paula) Modified on 8/22/2023 (dld). ADDED NOTATION (Entered: 08/18/2023) |
| 08/18/2023 | 46 | **SEE CORRECTED PLEADING 54**<br><br>CERTIFICATE OF SERVICE (AMENDED) re: pldg. (1 in MA/1:23-cv-11859, 37 in MDL No. 3084), (2 in MA/1:23-cv-11859, 38 in MDL No. 3084) Filed by Plaintiff N.F. -- Associated Cases: MDL No. 3084, MA/1:23-cv-11859 (Dougherty, Kimberly) Modified on 8/21/2023 (dld). ADDED NOTATION (Entered: 08/18/2023) |
| 08/18/2023 | 47 | **SEE CORRECTED PLDG. 52**<br><br>RESPONSE IN SUPPORT -- *(re: pldg. ( 1 in MDL No. 3084) )* Filed by Plaintiff Jane Doe<br><br>Associated Cases: MDL No. 3084, MA/1:23-cv-10745 (Carroll, Benjamin) Modified on 8/22/2023 (dld). ADDED NOTATION (Entered: 08/18/2023) |
| 08/18/2023 | 48 | NOTICE OF PRESENTATION OF ORAL ARGUMENT re: pldg. (11 in CAN/3:23-cv-01165, 24 in MDL No. 3084), (12 in CAN/3:23-cv-01165, 25 in MDL No. 3084), ( 1 in MDL No. 3084), ( 2 in MDL No. 3084) Filed by William A Levin on behalf of Plaintiffs Jane Doe LS 134, et al. (Attachments: # 1 Schedule of Actions, # 2 Proof of Service) Associated Cases: MDL No. 3084, CAN/3:23-cv-01165, CAN/3:23-cv-03758, CAN/3:23-cv-03805, CAN/3:23-cv-03807, CAN/3:23-cv-03956, CAN/3:23-cv-03966, CAN/3:23-cv-03970, CAN/3:23-cv-03995, CAN/3:23-cv-04010, CAN/3:23-cv-04011, CAN/3:23-cv-04014, CAN/3:23-cv-03811, CAN/4:23-cv-03816, CAN/4:23-cv-03973, CAN/4:23-cv-04008 (Levin, William) Modified on 8/18/2023 (dld). REMOVED ADDITIONAL FILING PARTIES (Entered: 08/18/2023) |
| 08/18/2023 | 49 | RESPONSE IN SUPPORT -- *(re: pldg. ( 1 in MDL No. 3084) )* Filed by Plaintiff Kelly Cowsert (Attachments: # 1 Proof of Service)<br><br>Associated Cases: MDL No. 3084, MOW/2:23-cv-04133 (Holland, Eric) Modified on 8/21/2023 (dld). REMOVED DUPLICATE ATTACHMENT NAME (Entered: 08/18/2023) |
| 08/18/2023 | 50 | NOTICE OF RELATED ACTION -- 1 Action(s) -- Filed by attorney Paula S. Bliss, Counsel for Plaintiff E.D. -- Massachusetts District Court (1:23-cv-11896) (Attachments: # 1 Schedule of Actions Schedule of Actions, # 2 Proof of Service # 3 Complaint and Docket Sheet) (Bliss, Paula) Modified on 8/21/2023 (dld). REMOVED DUPLICATE ATTACHMENT NAMES (Entered: 08/18/2023) |
| 08/18/2023 | 51 | INTERESTED PARTY RESPONSE IN SUPPORT -- (re: pldg. ( 1 in MDL No. 3084) ) Filed by Plaintiff V.R. (Attachments: # 1 Proof of Service)<br><br>Associated Cases: MDL No. 3084, OHS/3:23-cv-00198 (Hilton, Layne) (Entered: 08/18/2023) |
| 08/18/2023 | 52 | RESPONSE IN SUPPORT -- *(re: pldg. ( 1 in MDL No. 3084) )* Filed by Plaintiff Jane Doe (Attachments: # 1 Proof of Service)<br><br>Associated Cases: MDL No. 3084, MA/1:23-cv-10745 (Carroll, Benjamin) (Entered: 08/18/2023) |
| 08/18/2023 | 53 | **FILED IN ERROR SEE PLDG. 67**<br><br>WITHDRAWAL OF FILING re: pldg. (3 in MA/1:23-cv-11859, 39 in MDL No. 3084), (4 in MA/1:23-cv-11859, 45 in MDL No. 3084) Filed by Plaintiff N.F.<br>FILING WITHDRAWN FOR THE FOLLOWING REASON: **Other**.<br><br><br>Associated Cases: MDL No. 3084, MA/1:23-cv-11859<br>(Bliss, Paula) Modified on 8/22/2023 (dld). ADDED NOTATION (Entered: 08/18/2023) |

| 08/18/2023 | 54 | CERTIFICATE OF SERVICE (AMENDED) re: pldg. (5 in MA/1:23-cv-11859, 46 in MDL No. 3084, 37 in MDL No. 3084, 38 in MDL No. 3084) Filed by Plaintiff N.F. -- Associated Cases: MDL No. 3084, MA/1:23-cv-11859 (Dougherty, Kimberly) Modified on 8/21/2023 (dld). ADDED MDL LINKS (Entered: 08/18/2023) |
|---|---|---|
| 08/18/2023 | 55 | RESPONSE IN SUPPORT -- *(re: pldg. ( 1 in MDL No. 3084) )* Filed by Plaintiffs Beck Glaser, M.H. (Attachments: # 1 Proof of Service)<br><br>Associated Cases: MDL No. 3084, CO/1:23-cv-01734, CO/1:23-cv-01735 (Nimmo, Michael) (Entered: 08/18/2023) |
| 08/18/2023 | 56 | RESPONSE IN SUPPORT Filed by Plaintiff Katie Espinosa (Attachments: # 1 Proof of Service)<br><br>Associated Cases: MDL No. 3084, TXN/3:23-cv-01519 (Stanley, Bret) (Entered: 08/18/2023) |
| 08/18/2023 | 57 | **SEE CORRECTED PLDG. 69**<br><br>NOTICE OF PRESENTATION OF ORAL ARGUMENT re: pldg. (11 in TXN/3:23-cv-01519) Filed by Bret D Stanley on behalf of Plaintiff Katie Espinosa Associated Cases: MDL No. 3084, TXN/3:23-cv-01519 (Stanley, Bret) Modified on 8/22/2023 (dld). ADDED NOTATION (Entered: 08/18/2023) |
| 08/18/2023 | 58 | NOTICE OF PRESENTATION OF ORAL ARGUMENT re: pldg. ( 1 in MDL No. 3084, 25 in MDL No. 3084) Filed by Rachel Beth Abrams on behalf of Plaintiffs A. G., et al. (Attachments: # 1 Schedule of Actions, # 2 Proof of Service) Associated Cases: MDL No. 3084 et al. (Abrams, Rachel) Modified on 8/22/2023 (dld). ADDED MDL LINK (Entered: 08/18/2023) |
| 08/18/2023 | 59 | CERTIFICATE OF SERVICE (AMENDED) re: pldg. ( 36 in MDL No. 3084) Filed by Plaintiff Travon Brown -- Associated Cases: MDL No. 3084, CAN/3:23-cv-04175 (Menzies, Karen) (Entered: 08/18/2023) |
| 08/18/2023 | 60 | SUPPLEMENTAL INFORMATION -- re: pldg(s). ( 30 in MDL No. 3084) -- Filed by Plaintiffs A. G., et al.. (Attachments: # 1 Proof of Service) Associated Cases: MDL No. 3084, AZ/2:23-cv-00875, CAN/3:23-cv-01165, CAN/3:23-cv-01630, CAN/3:23-cv-02051, CAN/3:23-cv-02071, CAN/3:23-cv-02111, CAN/3:23-cv-02290, CAN/3:23-cv-03406, CAN/3:23-cv-03482, CAN/3:23-cv-03488, CAN/3:23-cv-03758, CAN/3:23-cv-03805, CAN/3:23-cv-03807, CAN/3:23-cv-03846, CAN/3:23-cv-03851, CAN/3:23-cv-03949, CAN/3:23-cv-03951, CAN/3:23-cv-03956, CAN/3:23-cv-03966, CAN/3:23-cv-03970, CAN/3:23-cv-03995, CAN/3:23-cv-04010, CAN/3:23-cv-04011, CAN/3:23-cv-04014, CAN/3:23-cv-04175, CAN/4:23-cv-03811, CAN/4:23-cv-03816, CAN/4:23-cv-03852, CAN/4:23-cv-03945, CAN/4:23-cv-04008, CO/1:23-cv-01734, CO/1:23-cv-01735, DC/1:23-cv-02347, GAM/5:23-cv-00246, GAN/1:23-cv-02603, ILN/1:23-cv-02766, ILN/1:23-cv-02767, ILN/1:23-cv-03425, MA/1:23-cv-10745, MA/1:23-cv-11859, MIE/1:23-cv-11991, MOW/2:23-cv-04133, NCE/5:23-cv-00317, OHS/5:23-cv-00198, TXN/3:23-cv-01519, TXS/3:23-cv-00216 (Abrams, Rachel) (Entered: 08/18/2023) |
| 08/18/2023 | 61 | NOTICE OF APPEARANCE re: pldg.(11 in CAN/3:23-cv-01165), ( 26 in MDL No. 3084) Filed by William A Levin on behalf of Plaintiffs Jane Doe LS 134, et al. (Attachments: # 1 Schedule of Actions, # 2 Proof of Service) Associated Cases: MDL No. 3084, CAN/3:23-cv-01165, CAN/3:23-cv-03758, CAN/3:23-cv-03805, CAN/3:23-cv-03807, CAN/3:23-cv-03956, CAN/3:23-cv-03966, CAN/3:23-cv-03970, CAN/3:23-cv-03995, CAN/3:23-cv-04010, CAN/3:23-cv-04011, CAN/3:23-cv-04014, CAN/4:23-cv-03811, CAN/4:23-cv-03816, CAN/4:23-cv-03973, CAN/4:23-cv-04008 (Levin, William) (Entered: 08/18/2023) |
| 08/18/2023 | 62 | CERTIFICATE OF SERVICE (AMENDED) - Amendment to (13 in CAN/3:23-cv-01165, 1 in CAN/3:23-cv-03758, 1 in CAN/3:23-cv-03805, 1 in CAN/3:23-cv-03807, 1 in CAN/3:23-cv-03956, 1 in CAN/3:23-cv-03966, 1 in CAN/3:23-cv-03970, 1 in CAN/3:23-cv-03995, 1 in CAN/3:23-cv-04010, 1 in CAN/3:23-cv-04011, 1 in CAN/3:23-cv-04014, 1 in CAN/4:23-cv-03811, 1 in CAN/4:23-cv-03816, 1 in CAN/4:23-cv-03973, 1 in CAN/4:23-cv-04008, 48 in MDL No. 3084) Notice of Presentation of Oral Argument,,, Filed by Plaintiffs Jane Doe LS 134, et al. Associated Cases: MDL No. 3084, CAN/3:23-cv-01165, CAN/3:23-cv-03758, CAN/3:23-cv-03805, CAN/3:23-cv-03807, CAN/3:23-cv-03956, CAN/3:23-cv-03966, CAN/3:23-cv-03970, CAN/3:23-cv-03995, CAN/3:23-cv-04010, CAN/3:23-cv-04011, CAN/3:23-cv-04014, CAN/4:23-cv-03811, CAN/4:23-cv-03816, CAN/4:23-cv-03973, CAN/4:23-cv-04008 (Levin, William) Modified on 8/22/2023 (dld). EDITED EVENT TYPE Modified (Entered: 08/18/2023) |
| 08/18/2023 | 63 | RESPONSE IN SUPPORT -- *(re: pldg. ( 1 in MDL No. 3084) )* Filed by Plaintiff William Adorno (Attachments: # 1 Proof of Service)<br><br>Associated Cases: MDL No. 3084, AZ/2:23-cv-00875 (Brebner, Bartlet) (Entered: 08/18/2023) |
| 08/18/2023 | 64 | **SEE PLDG. 71** |

APP010

| | | |
|---|---|---|
| | | NOTICE OF PRESENTATION OF ORAL ARGUMENT re: pldg. (13 in AZ/2:23-cv-00875, 63 in MDL No. 3084) Filed by Bartlet Brebner on behalf of Plaintiff William Adorno (Attachments: # 1 Proof of Service) Associated Cases: MDL No. 3084, AZ/2:23-cv-00875 (Brebner, Bartlet) Modified on 8/22/2023 (dld). ADDED NOTATION (Entered: 08/18/2023) |
| 08/18/2023 | 65 | RESPONSE IN OPPOSITION -- *(re: pldg. ( 1 in MDL No. 3084), ( 2 in MDL No. 3084) )* Filed by Defendants RAISER LLC, UBER TECHNOLOGIES INC (Attachments: # 1 Declaration of Robert Atkins, # 2 Declaration of Alejandra O'Connor, # 3 Proof of Service)<br><br>Associated Cases: MDL No. 3084, CAN/3:23-cv-01165, CAN/3:23-cv-01630, CAN/3:23-cv-02051, CAN/3:23-cv-02071, CAN/3:23-cv-02111, CAN/3:23-cv-02290, CAN/3:23-cv-03406, CAN/3:23-cv-03482, CAN/3:23-cv-03488, CO/1:23-cv-01734, CO/1:23-cv-01735, GAM/5:23-cv-00246, GAN/1:23-cv-02603, ILN/1:23-cv-02766, ILN/1:23-cv-02767, ILN/1:23-cv-03425, MA/1:23-cv-10745, MOW/2:23-cv-04133, NCE/5:23-cv-00317, TXN/3:23-cv-01519, TXS/3:23-cv-00216 (Atkins, Robert) (Entered: 08/18/2023) |
| 08/21/2023 | 66 | ERRATA - to ( 51 in MDL No. 3084, 5 in OHS/3:23-cv-00198) - Filed by Plaintiff V.R. (Attachments: # 1 Proof of Service) Associated Cases: MDL No. 3084, OHS/3:23-cv-00198 (Hilton, Layne) (Entered: 08/21/2023) |
| 08/21/2023 | 67 | WITHDRAWAL OF FILING re: pldg. (3 in MA/1:23-cv-11859, 39 in MDL No. 3084), (4 in MA/1:23-cv-11859, 45 in MDL No. 3084) Filed by Plaintiff N.F.<br>FILING WITHDRAWN FOR THE FOLLOWING REASON: **Filed in error**.<br><br>(Attachments: # 1 Proof of Service)<br>Associated Cases: MDL No. 3084, MA/1:23-cv-11859<br>(Bliss, Paula) (Entered: 08/21/2023) |
| 08/21/2023 | 68 | ERRATA - to ( 56 in MDL No. 3084, 11 in TXN/3:23-cv-01519) - Filed by Plaintiff Katie Espinosa (Attachments: # 1 Proof of Service) Associated Cases: MDL No. 3084, TXN/3:23-cv-01519 (Stanley, Bret) (Entered: 08/21/2023) |
| 08/21/2023 | 69 | NOTICE OF PRESENTATION OF ORAL ARGUMENT re: pldg. ( 25 in MDL No. 3084, 56 in MDL No. 3084, 57 in MDL No. 3084, 12 in TXN/3:23-cv-01519) Bret D Stanley replaces Bret Stanley and is now designated to present oral argument on behalf of Plaintiff Katie Espinosa (Attachments: # 1 Proof of Service) Associated Cases: MDL No. 3084, TXN/3:23-cv-01519 (Stanley, Bret) Modified on 8/22/2023 (dld). ADDED MDL LINKS (Entered: 08/21/2023) |
| 08/21/2023 | 70 | CERTIFICATE OF SERVICE (AMENDED) re: pldg. (11 in AZ/2:23-cv-00875, 14 in CAN/3:23-cv-01165, 11 in CAN/3:23-cv-01630, 11 in CAN/3:23-cv-02051, 11 in CAN/3:23-cv-02071, 11 in CAN/3:23-cv-02111, 11 in CAN/3:23-cv-02290, 11 in CAN/3:23-cv-03406, 11 in CAN/3:23-cv-03482, 11 in CAN/3:23-cv-03488, 2 in CAN/3:23-cv-03758, 2 in CAN/3:23-cv-03805, 2 in CAN/3:23-cv-03807, 1 in CAN/3:23-cv-03846, 1 in CAN/3:23-cv-03851, 4 in CAN/3:23-cv-03949, 4 in CAN/3:23-cv-03951, 2 in CAN/3:23-cv-03956, 2 in CAN/3:23-cv-03966, 2 in CAN/3:23-cv-03970, 2 in CAN/3:23-cv-03995, 2 in CAN/3:23-cv-04010, 2 in CAN/3:23-cv-04011, 2 in CAN/3:23-cv-04014, 4 in CAN/3:23-cv-04175, 2 in CAN/4:23-cv-03811, 2 in CAN/4:23-cv-03816, 1 in CAN/4:23-cv-03852, 4 in CAN/4:23-cv-03945, 2 in CAN/4:23-cv-03973, 2 in CAN/4:23-cv-04008, 12 in CO/1:23-cv-01734, 12 in CO/1:23-cv-01735, 5 in DC/1:23-cv-02347, 11 in GAM/5:23-cv-00246, 11 in GAN/1:23-cv-02603, 11 in ILN/1:23-cv-02766, 11 in ILN/1:23-cv-02767, 11 in ILN/1:23-cv-03425, 12 in MA/1:23-cv-10745, 8 in MA/1:23-cv-11859, 58 in MDL No. 3084, 13 in MOW/2:23-cv-04133, 11 in NCE/5:23-cv-00317, 6 in OHS/3:23-cv-00198, 13 in TXN/3:23-cv-01519, 11 in TXS/3:23-cv-00216) Filed by Plaintiffs A. G., et al. -- Associated Cases: MDL No. 3084 et al. (Abrams, Rachel) (Entered: 08/21/2023) |
| 08/22/2023 | 71 | NOTICE OF WAIVER OF ORAL ARGUMENT re: pldg. ( 25 in MDL No. 3084, 13 in AZ/2:23-cv-00875, 63 in MDL No. 3084) Filed by Bartlet Brebner on behalf of Plaintiff William Adorno (Attachments: # 1 Proof of Service) Associated Cases: MDL No. 3084, AZ/2:23-cv-00875 (Brebner, Bartlet) Modified on 8/22/2023 (dld). ADDED MDL LINKS (Entered: 08/22/2023) |
| 08/23/2023 | 72 | NOTICE OF APPEARANCE re: pldg.( 1 in MDL No. 3084), ( 2 in MDL No. 3084) Filed by Robert A Atkins on behalf of Defendants Rasier, LLC, Rasier-CA, LLC, and Uber Technologies, Inc. (Attachments: # 1 Schedule of Actions, # 2 Proof of Service) Associated Cases: MDL No. 3084 et al. (Atkins, Robert) Modified on 8/24/2023 (TF). REMOVED DUPLICATE PARTIES. (Entered: 08/23/2023) |
| 08/24/2023 | 73 | ERRATA - to (17 in AZ/2:23-cv-00875, 20 in CAN/3:23-cv-01165, 15 in CAN/3:23-cv-01630, 15 in CAN/3:23-cv-02051, 15 in CAN/3:23-cv-02071, 15 in CAN/3:23-cv-02111, 15 in CAN/3:23-cv-02290, 15 in CAN/3:23-cv-03406, 15 in CAN/3:23-cv-03482, 15 in CAN/3:23-cv-03488, 7 in CAN/3:23-cv-03758, 7 in CAN/3:23-cv-03805, 7 in CAN/3:23-cv-03807, 4 in CAN/3:23-cv-03846, 4 in CAN/3:23-cv-03851, 7 in CAN/3:23-cv-03949, 7 in CAN/3:23-cv-03951, 7 in CAN/3:23-cv-03956, 7 in CAN/3:23-cv-03966, 7 in |

| | | |
|---|---|---|
| | | CAN/3:23-cv-03970, 7 in CAN/3:23-cv-03995, 7 in CAN/3:23-cv-04010, 7 in CAN/3:23-cv-04011, 7 in CAN/3:23-cv-04014, 8 in CAN/3:23-cv-04175, 7 in CAN/4:23-cv-03811, 7 in CAN/4:23-cv-03816, 4 in CAN/4:23-cv-03852, 7 in CAN/4:23-cv-03945, 7 in CAN/4:23-cv-03973, 7 in CAN/4:23-cv-04008, 16 in CO/1:23-cv-01734, 16 in CO/1:23-cv-01735, 8 in DC/1:23-cv-02347, 15 in GAM/5:23-cv-00246, 15 in GAN/1:23-cv-02603, 15 in ILN/1:23-cv-02766, 15 in ILN/1:23-cv-03425, 16 in MA/1:23-cv-10745, 12 in MA/1:23-cv-11859, 2 in MA/1:23-cv-11896, 72 in MDL No. 3084, 17 in MOW/2:23-cv-04133, 15 in NCE/5:23-cv-00317, 10 in OHS/3:23-cv-00198, 19 in TXN/3:23-cv-01519, 15 in TXS/3:23-cv-00216) - Filed by Defendants Rasier, LLC, et al. (Attachments: # 1 Proof of Service) Associated Cases: MDL No. 3084 et al. (Atkins, Robert) (Entered: 08/24/2023) |
| 08/25/2023 | 74 | NOTICE OF RELATED ACTION -- 8 Action(s) -- Filed by attorney Rachel Abrams, Counsel for Plaintiffs Kathrine Hylin, Taylor Gavin, Cynthia Crawford, E.R., A.G., A.M., A.H.M., H.B., C.S., Jillian Sullivan, Elunda Murphy, N.R., S.W., Aundreya Rollo, D.P., Ashley Jones, S.D. -- California Northern District Court (3:23-cv-04313,3:23-cv-04308,3:23-cv-04310,3:23-cv-04299,4:23-cv-04306,3:23-cv-04316, 3:23-cv-04302,4:23-cv-04301) (Attachments: # 1 Schedule of Actions, # 2 Proof of Service, # 3 Exhibit A-1 (Docket Sheet, Complaint - NDCA 3:23-cv-04313), # 4 Exhibit A-2 (Docket Sheet, Complaint - NDCA 3:23-cv-04308), # 5 Exhibit A-3 (Docket Sheet, Complaint - NDCA 3:23-cv-04310), # 6 Exhibit A-4 (Docket Sheet, Complaint - NDCA 3:23-cv-04299), # 7 Exhibit A-5 (Docket Sheet, Complaint - NDCA 4:23-cv-04306), # 8 Exhibit A-6 (Docket Sheet, Complaint - NDCA 3:23-cv-04316), # 9 Exhibit A-7 (Docket Sheet, Complaint - NDCA 3:23-cv-04302), # 10 Exhibit A-8 (Docket Sheet, Complaint - NDCA 4:23-cv-04301)) (Abrams, Rachel) Modified on 8/28/2023 (TF). ADDED PARTY TYPE. (Entered: 08/25/2023) |
| 08/25/2023 | 75 | REPLY TO RESPONSE TO MOTION FOR TRANSFER re: pldgs. (18 in CAN/3:23-cv-01165, 13 in CAN/3:23-cv-01630, 13 in CAN/3:23-cv-02051, 13 in CAN/3:23-cv-02071, 13 in CAN/3:23-cv-02111, 13 in CAN/3:23-cv-02290, 13 in CAN/3:23-cv-03406, 13 in CAN/3:23-cv-03482, 13 in CAN/3:23-cv-03488, 14 in CO/1:23-cv-01734, 14 in CO/1:23-cv-01735, 13 in GAM/5:23-cv-00246, 13 in GAN/1:23-cv-02603, 13 in ILN/1:23-cv-02766, 13 in ILN/1:23-cv-02767, 13 in ILN/1:23-cv-03425, 14 in MA/1:23-cv-10745, 65 in MDL No. 3084, 15 in MOW/2:23-cv-04133, 13 in NCE/5:23-cv-00317, 15 in TXN/3:23-cv-01519, 13 in TXS/3:23-cv-00216), ( 24 in MDL No. 3084), ( 32 in MDL No. 3084), ( 37 in MDL No. 3084), ( 41 in MDL No. 3084), ( 49 in MDL No. 3084), ( 51 in MDL No. 3084), ( 52 in MDL No. 3084), ( 55 in MDL No. 3084), ( 56 in MDL No. 3084), ( 63 in MDL No. 3084). Filed by Plaintiffs A. G., et al. (Attachments: # 1 Declaration Of Rachel Abrams In Support Of Plaintiffs' Reply, # 2 Proof of Service)<br><br>Associated Cases: MDL No. 3084 et al. (Abrams, Rachel) Modified on 8/29/2023 (TF). ADDED MDL LINKS. (Entered: 08/25/2023) |
| 08/25/2023 | 76 | **PLEADING WITHDRAWN. SEE PLEADING 78 IN MDL NO. 3084**<br><br>MOTION Motion in Support of Plaintiff's Motion to Transfer re: pldg. (9 in CAN/4:23-cv-03945) - Filed by John Eddie Williams, Jr on behalf of Plaintiffs Jane Doe F-2, Jane Doe F-1, Jane Doe F-3 (Attachments: # 1 Proof of Service)<br><br>Associated Cases: MDL No. 3084 et al. (Williams, John) Modified on 8/30/2023 (TF). (Entered: 08/25/2023) |
| 08/28/2023 | 77 | **MINUTE ORDER CLOSING BRIEFING** re: pldg. (3 in AZ/2:23-cv-00875, 4 in CAN/3:23-cv-01165, 3 in CAN/3:23-cv-01630, 3 in CAN/3:23-cv-02051, 3 in CAN/3:23-cv-02071, 3 in CAN/3:23-cv-02111, 3 in CAN/3:23-cv-02290, 3 in CAN/3:23-cv-03406, 3 in CAN/3:23-cv-03482, 3 in CAN/3:23-cv-03488, 3 in CO/1:23-cv-01734, 3 in CO/1:23-cv-01735, 3 in GAM/5:23-cv-00246, 3 in GAN/1:23-cv-02603, 3 in ILN/1:23-cv-02766, 3 in ILN/1:23-cv-02767, 3 in ILN/1:23-cv-03425, 3 in MA/1:23-cv-10745, 6 in MDL No. 3084, 3 in MOW/2:23-cv-04133, 3 in NCE/5:23-cv-00317, 3 in TXN/3:23-cv-01519, 3 in TXS/3:23-cv-00216), ( 1 in MDL No. 3084)<br><br>Briefing in this matter is now closed. The parties to actions on the motion(s) remain under a duty, pursuant to Panel Rules 6.1(f) and 6.2(d), to notify the Clerk of the Panel promptly of potential tag-along actions, as well as any development that moots the motion or fully disposes of any action on the motion. Parties in any potential tag-along action may file an Interested Party response, but must do so promptly, and in any event, no later than the Thursday prior to the hearing session at which the motion for transfer is to be heard by the Panel.<br><br>Signed by Clerk of the Panel Tiffaney D. Pete on 8/28/2023.<br><br>Associated Cases: MDL No. 3084 et al. (TF) (Entered: 08/28/2023) |
| 08/30/2023 | 78 | WITHDRAWAL OF FILING re: pldg. (23 in CAN/3:23-cv-01165, 18 in CAN/3:23-cv-01630, 18 in CAN/3:23-cv-02051, 18 in CAN/3:23-cv-02071, 18 in CAN/3:23-cv-02111, 18 in CAN/3:23-cv-02290, 18 in CAN/3:23-cv-03406, 18 in CAN/3:23-cv-03482, 18 in CAN/3:23-cv-03488, 10 in CAN/3:23-cv-03949, |

| | | |
|---|---|---|
| | | 10 in CAN/3:23-cv-03951, 10 in CAN/3:23-cv-04011, 10 in CAN/4:23-cv-03945, 19 in CO/1:23-cv-01734, 19 in CO/1:23-cv-01735, 18 in GAM/5:23-cv-00246, 18 in GAN/1:23-cv-02603, 18 in ILN/1:23-cv-02766, 18 in ILN/1:23-cv-03425, 19 in MA/1:23-cv-10745, <u>76</u> in MDL No. 3084, 20 in MOW/2:23-cv-04133, 18 in NCE/5:23-cv-00317, 22 in TXN/3:23-cv-01519, 18 in TXS/3:23-cv-00216) Filed by Plaintiffs Jane Doe F-2, Jane Doe F-1, Jane Doe F-3 <br> FILING WITHDRAWN FOR THE FOLLOWING REASON: **Filed in error**. <br><br> (Attachments: # <u>1</u> Proof of Service) <br> Associated Cases: MDL No. 3084, CAN/3:23-cv-01165, CAN/3:23-cv-01630, CAN/3:23-cv-02051, CAN/3:23-cv-02071, CAN/3:23-cv-02111, CAN/3:23-cv-02290, CAN/3:23-cv-03406, CAN/3:23-cv-03482, CAN/3:23-cv-03488, CAN/3:23-cv-03949, CAN/3:23-cv-03951, CAN/3:23-cv-04011, CAN/4:23-cv-03945, CO/1:23-cv-01734, CO/1:23-cv-01735, GAM/5:23-cv-00246, GAN/1:23-cv-02603, ILN/1:23-cv-02766, ILN/1:23-cv-03425, MA/1:23-cv-10745, MOW/2:23-cv-04133, NCE/5:23-cv-00317, TXN/3:23-cv-01519, TXS/3:23-cv-00216 <br> (Williams, John) (Entered: 08/30/2023) |
| 08/30/2023 | <u>79</u> | NOTICE OF PRESENTATION OF ORAL ARGUMENT re: pldg. ( <u>25</u> in MDL No. 3084) Filed by Paula S. Bliss on behalf of Plaintiff E.D (Attachments: # <u>1</u> Proof of Service Proof of Service) Associated Cases: MDL No. 3084, MA/1:23-cv-11896 (Bliss, Paula) (Entered: 08/30/2023) |
| 09/01/2023 | <u>80</u> | INTERESTED PARTY RESPONSE IN SUPPORT -- (re: pldg. ( <u>1</u> in MDL No. 3084) ) Filed by Plaintiff E.D (Attachments: # <u>1</u> Proof of Service) <br><br> Associated Cases: MDL No. 3084, MA/1:23-cv-11896 (Bliss, Paula) Modified on 9/5/2023 (TF). REMOVED DUPLICATE ATTACHMENT. (Entered: 09/01/2023) |
| 09/01/2023 | <u>81</u> | NOTICE OF APPEARANCE re: pldg.( <u>50</u> in MDL No. 3084) Filed by Paula S. Bliss on behalf of Plaintiff E.D Associated Cases: MDL No. 3084, MA/1:23-cv-11896 (Bliss, Paula) (Entered: 09/01/2023) |
| 09/01/2023 | <u>82</u> | NOTICE OF WAIVER OF ORAL ARGUMENT re: pldg. (10 in CO/1:23-cv-01734, 10 in CO/1:23-cv-01735, <u>25</u> in MDL No. 3084) Filed by Michael Nimmo on behalf of Plaintiffs Beck Glaser, M.H. (Attachments: # <u>1</u> Schedule of Actions, # <u>2</u> Proof of Service) Associated Cases: MDL No. 3084, CO/1:23-cv-01734, CO/1:23-cv-01735 (Nimmo, Michael) (Entered: 09/01/2023) |
| 09/05/2023 | <u>83</u> | NOTICE OF WAIVER OF ORAL ARGUMENT re: pldg. ( <u>1</u> in MDL No. 3084), ( <u>25</u> in MDL No. 3084) Filed by Eric D. Holland on behalf of Plaintiff Kelly Cowsert (Attachments: # <u>1</u> Proof of Service) Associated Cases: MDL No. 3084, MOW/2:23-cv-04133 (Holland, Eric) Modified on 9/6/2023 (RH). EDITED EVENT TYPE AND ADDED MDL LINK (Entered: 09/05/2023) |
| 09/05/2023 | <u>84</u> | NOTICE OF PRESENTATION OF ORAL ARGUMENT re: pldg. (10 in AZ/2:23-cv-00875, 12 in CAN/3:23-cv-01165, 10 in CAN/3:23-cv-01630, 10 in CAN/3:23-cv-02051, 10 in CAN/3:23-cv-02071, 10 in CAN/3:23-cv-02111, 10 in CAN/3:23-cv-02290, 10 in CAN/3:23-cv-03406, 10 in CAN/3:23-cv-03482, 10 in CAN/3:23-cv-03488, 10 in CO/1:23-cv-01734, 10 in CO/1:23-cv-01735, 10 in GAM/5:23-cv-00246, 10 in GAN/1:23-cv-02603, 10 in ILN/1:23-cv-02766, 10 in ILN/1:23-cv-02767, 10 in ILN/1:23-cv-03425, 9 in MA/1:23-cv-10745, <u>25</u> in MDL No. 3084, 11 in MOW/2:23-cv-04133, 10 in NCE/5:23-cv-00317, 10 in TXN/3:23-cv-01519, 10 in TXS/3:23-cv-00216) Filed by Robert A Atkins on behalf of Defendants Rasier, LLC, <u>et al.</u> (Attachments: # <u>1</u> Schedule of Actions, # <u>2</u> Proof of Service) Associated Cases: MDL No. 3084 et al. (Atkins, Robert) Modified on 9/6/2023 (RH). DELTED DUPLICATE PARTIES NAMES (Entered: 09/05/2023) |
| 09/05/2023 | <u>85</u> | NOTICE OF APPEARANCE re: pldg.( <u>1</u> in MDL No. 3084), ( <u>2</u> in MDL No. 3084) Filed by Robert A Atkins on behalf of Defendants Rasier, LLC, <u>et al.</u> (Attachments: # <u>1</u> Schedule of Actions, # <u>2</u> Proof of Service) Associated Cases: MDL No. 3084 et al. (Atkins, Robert) (Entered: 09/05/2023) |
| 09/05/2023 | <u>86</u> | NOTICE OF APPEARANCE re: pldg.( <u>74</u> in MDL No. 3084) Filed by Lauren Welling on behalf of Plaintiffs C.T., <u>et al.</u> (Attachments: # <u>1</u> Schedule of Actions, # <u>2</u> Proof of Service) Associated Cases: MDL No. 3084, CAN/3:23-cv-04299, CAN/3:23-cv-04302, CAN/3:23-cv-04308, CAN/3:23-cv-04310, CAN/3:23-cv-04313, CAN/3:23-cv-04316, CAN/4:23-cv-04301, CAN/4:23-cv-04306 (Welling, Lauren) (Entered: 09/06/2023) |
| 09/06/2023 | <u>87</u> | INTERESTED PARTY RESPONSE IN SUPPORT -- (re: pldgs. ( <u>1</u> in MDL No. 3084),( <u>75</u> in MDL No. 3084) Filed by Plaintiffs Jane Doe F-2, Jane Doe F-1, Jane Doe F-3 (Attachments: # <u>1</u> Proof of Service) <br><br> Associated Cases: MDL No. 3084, CAN/3:23-cv-03949, CAN/3:23-cv-03951, CAN/4:23-cv-03945 (Williams, John) Modified on 9/6/2023 (TF). ADDED MDL LINK. (Entered: 09/06/2023) |

| 09/07/2023 | 88 | EXHIBIT TO PLEADING re: pldg.( 87 in MDL No. 3084) Filed by Plaintiffs Jane Doe F-2, Jane Doe F-1, Jane Doe F-3 (Attachments: # 1 Proof of Service) Associated Cases: MDL No. 3084, CAN/3:23-cv-03949, CAN/3:23-cv-03951, CAN/4:23-cv-03945 (Williams, John) (Entered: 09/07/2023) |
|---|---|---|
| 09/07/2023 | 89 | NOTICE OF RELATED ACTION -- 16 Action(s) -- Filed by attorney William A. Levin, Counsel for Counsel for Plaintiffs Jane Doe LSA 340, Jane Doe LS 16, Jane Doe LS 75, Jane Doe LS 134, Jane Doe LS 154, Jane Doe LS 348, Jane Doe LS 90, Jane Doe LS 13, Jane Doe LS 218, Jane Doe LS 237, Jane Doe LS 250, Jane Doe LS 149, Jane Doe LS 320, Jane Doe LS 260, and Jane Doe LS 257 -- California Northern District Court (3:23-cv-04012,4:23-cv-04365,4:23-cv-04364,3:23-cv-04366,4:23-cv-04367,3:23-cv-04368, 3:23-cv-04369,3:23-cv-04370,3:23-cv-04371,3:23-cv-04372,3:23-cv-04373,3:23-cv-04374, 3:23-cv-04385,3:23-cv-04387,3:23-cv-04388,4:23-cv-04393) (Attachments: # 1 Schedule of Actions, # 2 Proof of Service, # 3 Exhibit A (Complaint - CAN 3:23-cv-04012), # 4 Exhibit B (Complaint - CAN 4:23-cv-04365), # 5 Exhibit C (Complaint - CAN 4:23-cv-04364), # 6 Exhibit D (Complaint - CAN 3:23-cv-04366), # 7 Exhibit E (Complaint - CAN 4:23-cv-04367), # 8 Exhibit F (Complaint - CAN 3:23-cv-04368), # 9 Exhibit G (Complaint - CAN 3:23-cv-04369), # 10 Exhibit H (Complaint - CAN 3:23-cv-04370), # 11 Exhibit I (Complaint - CAN 3:23-cv-04371), # 12 Exhibit J (Complaint - CAN 3:23-cv-04372), # 13 Exhibit K (Complaint - CAN 3:23-cv-04373), # 14 Exhibit L (Complaint - CAN 3:23-cv-04374), # 15 Exhibit M (Complaint - CAN 3:23-cv-04385), # 16 Exhibit N (Complaint - CAN 3:23-cv-04387), # 17 Exhibit O (Complaint - CAN 3:23-cv-04388), # 18 Exhibit P (Complaint - 4:23-cv-04393)) (Levin, William) (Entered: 09/07/2023) |
| 09/08/2023 | 90 | CERTIFICATE OF SERVICE (AMENDED) re: pldg. ( 89 in MDL No. 3084) Filed by Plaintiffs Jane Doe LS 158, et al. -- Associated Cases: MDL No. 3084, CAN/3:23-cv-04012, CAN/3:23-cv-04366, CAN/3:23-cv-04368, CAN/3:23-cv-04369, CAN/3:23-cv-04370, CAN/3:23-cv-04371, CAN/3:23-cv-04372, CAN/3:23-cv-04373, CAN/3:23-cv-04374, CAN/3:23-cv-04385, CAN/3:23-cv-04387, CAN/3:23-cv-04388, CAN/4:23-cv-04364, CAN/4:23-cv-04365, CAN/4:23-cv-04367, CAN/4:23-cv-04393 (Levin, William) (Entered: 09/08/2023) |
| 09/15/2023 | 91 | NOTICE OF RELATED ACTION -- 8 Action(s) -- Filed by attorney Rachel Abrams, Counsel for Plaintiffs Kathrine Hylin, Taylor Gavin, Cynthia Crawford, E.R., A.G., A.M., A.H.M., H.B., C.S., Jillian Sullivan, Elunda Murphy, N.R., S.W., Aundreya Rollo, D.P., Ashley Jones, S.D., H.D., K.O., Melanie Halstenberg, B.R., J.C., Heather Worzalla, E.E., Joshua Cormier -- California Northern District Court (3:23-cv-04617,3:23-cv-04643,3:23-cv-04706,3:23-cv-04723,4:23-cv-04731,4:23-cv-04744,3:23-cv-04745) (Attachments: # 1 Schedule of Actions, # 2 Proof of Service, # 3 Exhibit A-1 (Docket Sheet, Complaint - NDCA 3:23-cv-04617-VC), # 4 Exhibit A-2 (Docket Sheet, Complaint - NDCA 3:23-cv-04643-VC), # 5 Exhibit A-3 (Docket Sheet, Complaint - NDCA 3:23-cv-04705-AMO), # 6 Exhibit A-4 (Docket Sheet, Complaint - NDCA 3:23-cv-04706-JSC), # 7 Exhibit A-5 (Docket Sheet, Complaint - NDCA 4:23-cv-04723), # 8 Exhibit A-6 (Docket Sheet, Complaint - NDCA 4:23-cv-04731-DMR), # 9 Exhibit A-7 (Docket Sheet, Complaint - NDCA 4:23-cv-04744-DMR), # 10 Exhibit A-8 (Docket Sheet, Complaint - NDCA 3:23-cv-04745-JCS)) (Abrams, Rachel) Modified on 9/20/2023 (TF). ADDED PARTY TYPE. (Entered: 09/15/2023) |
| 09/26/2023 | 92 | NOTICE OF APPEARANCE re: pldg.( 1 in MDL No. 3084), ( 2 in MDL No. 3084) Filed by Robert A Atkins on behalf of Defendants Uber Technologies, Inc., Rasier, LLC and Rasier-CA, LLC. (Attachments: # 1 Schedule of Actions, # 2 Proof of Service) Associated Cases: MDL No. 3084 et al. (Atkins, Robert) Modified on 9/27/2023 (TF). REMOVED DUPLICATE PARTIES. (Entered: 09/26/2023) |
| 10/04/2023 | 93 | CONSENT ORDER re: pldg(s). 1 Consenting to transfer of litigation to Judge Charles R. Breyer in the California Northern District Court for coordinated or consolidated pretrial proceedings.<br><br>Signed by Chief Judge, USDC Richard Seeborg on 10/2/23.<br><br>(JC) (Entered: 10/04/2023) |
| 10/04/2023 | 94 | TRANSFER ORDER re: pldg. ( 1 in MDL No. 3084) Transferring 13 action(s) to Judge Charles R. Breyer in the N.D. California.<br><br>Signed by Judge Karen K. Caldwell, Chair, PANEL ON MULTIDISTRICT LITIGATION, on 10/4/2023.<br><br>Associated Cases: MDL No. 3084, AZ/2:23-cv-00875, CAN/3:23-cv-01165, CAN/3:23-cv-01630, CAN/3:23-cv-02051, CAN/3:23-cv-02071, CAN/3:23-cv-02111, CAN/3:23-cv-02290, CAN/3:23-cv-03406, CAN/3:23-cv-03482, CAN/3:23-cv-03488, CO/1:23-cv-01734, CO/1:23-cv-01735, GAM/5:23-cv-00246, GAN/1:23-cv-02603, ILN/1:23-cv-02766, ILN/1:23-cv-02767, ILN/1:23-cv-03425, MA/1:23-cv-10745, MOW/2:23-cv-04133, NCE/5:23-cv-00317, TXN/3:23-cv-01519, TXS/3:23-cv-00216 (JC) (Entered: 10/04/2023) |

| 10/05/2023 | 95 | CONDITIONAL TRANSFER ORDER FILED TODAY (CTO-1) - 4 action(s) |
| | | Signed by Clerk of the Panel Tiffaney D. Pete on 10/5/2023. |
| | | Associated Cases: MDL No. 3084, DC/1:23-cv-02347, MA/1:23-cv-11859, MA/1:23-cv-11896, OHS/3:23-cv-00198 (JC) (Entered: 10/05/2023) |
| 10/05/2023 | 96 | ***TEXT ONLY NOTICE*** |
| | | **NOTICE OF FILING OF CTO AND PUBLICATION OF BRIEFING SCHEDULE (CTO-1)** *re: pldg. (15 in DC/1:23-cv-02347, 19 in MA/1:23-cv-11859, 12 in MA/1:23-cv-11896, 95 in MDL No. 3084, 17 in OHS/3:23-cv-00198)* |
| | | **BRIEFING SCHEDULE IS SET AS FOLLOWS:** **Oppositions due on or before 10/12/2023.** |
| | | Signed by Clerk of the Panel Tiffaney D. Pete on 10/5/2023. |
| | | **Associated Cases: MDL No. 3084, DC/1:23-cv-02347, MA/1:23-cv-11859, MA/1:23-cv-11896, OHS/3:23-cv-00198 (JC) (Entered: 10/05/2023)** |
| 10/06/2023 | 97 | OFFICIAL TRANSCRIPT of Hearing held on 9/28/2023 before the Panel at Lexington, KY. Court Reporter/Transcriber *Aalayah Purnell, Kentuckiana Court Reporters, P.O. Box 3983, Louisville, KY 40201, transcripts@kentuckianareporters.com.* Transcript may be viewed at the Panel's office or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |
| | | **Notice of Redaction due 10/13/2023.** **Redaction Request due 10/27/2023.** **Redacted Transcript Deadline set for 11/6/2023.** **Release of Transcript Restriction set for 1/4/2024.** |
| | | Signed by Clerk of the Panel Tiffaney D. Pete on 10/6/2023. |
| | | Associated Cases: MDL No. 3084, AZ/2:23-cv-00875, CAN/3:23-cv-01165, CAN/3:23-cv-01630, CAN/3:23-cv-02051, CAN/3:23-cv-02071, CAN/3:23-cv-02111, CAN/3:23-cv-02290, CAN/3:23-cv-03406, CAN/3:23-cv-03482, CAN/3:23-cv-03488, CO/1:23-cv-01734, CO/1:23-cv-01735, GAM/5:23-cv-00246, GAN/1:23-cv-02603, ILN/1:23-cv-02766, ILN/1:23-cv-02767, ILN/1:23-cv-03425, MA/1:23-cv-10745, MOW/2:23-cv-04133, NCE/5:23-cv-00317, TXN/3:23-cv-01519, TXS/3:23-cv-00216 (RH) (Entered: 10/06/2023) |
| 10/09/2023 | 98 | NOTICE OF POTENTIAL TAG-ALONG -- 1 Action(s) -- Filed by attorney Sarah R. London, Counsel for Plaintiff M.F.A. -- California Central District Court (2:23-cv-08115) (Attachments: # 1 Schedule of Actions, # 2 Proof of Service, # 3 Complaint CD Cal No. 2:23-cv-08115-AB-AS) (London, Sarah) Modified on 10/10/2023 (DLD). EDITED EVENT TYPE (Entered: 10/10/2023) |
| 10/12/2023 | 99 | CONDITIONAL TRANSFER ORDER FILED TODAY (CTO-2) - 1 action(s) |
| | | Signed by Clerk of the Panel Tiffaney D. Pete on 10/12/2023. |
| | | Associated Cases: MDL No. 3084, CAC/2:23-cv-08115 (JC) (Entered: 10/12/2023) |
| 10/12/2023 | 100 | ***TEXT ONLY NOTICE*** |
| | | **NOTICE OF FILING OF CTO AND PUBLICATION OF BRIEFING SCHEDULE (CTO-2)** *re: pldg. (1 in CAC/2:23-cv-08115, 99 in MDL No. 3084)* |
| | | **BRIEFING SCHEDULE IS SET AS FOLLOWS:** **Oppositions due on or before 10/19/2023.** |
| | | Signed by Clerk of the Panel Tiffaney D. Pete on 10/12/2023. |
| | | **Associated Cases: MDL No. 3084, CAC/2:23-cv-08115 (JC) (Entered: 10/12/2023)** |
| 10/13/2023 | 101 | CONDITIONAL TRANSFER ORDER FINALIZED (CTO-1) - 4 action(s) *re: pldg. (15 in DC/1:23-cv-02347, 19 in MA/1:23-cv-11859, 12 in MA/1:23-cv-11896, 95 in MDL No. 3084, 17 in OHS/3:23-cv-00198)* Inasmuch as no objection is pending at this time, the stay is lifted. |

| | | |
|---|---|---|
| | | Signed by Clerk of the Panel Tiffany D. Pete on 10/13/2023. |
| | | Associated Cases: MDL No. 3084, DC/1:23-cv-02347, MA/1:23-cv-11859, MA/1:23-cv-11896, OHS/3:23-cv-00198 (TF) (Entered: 10/13/2023) |
| 10/20/2023 | 102 | CONDITIONAL TRANSFER ORDER FINALIZED (CTO-2) - 1 action(s) *re: pldg. (1 in CAC/2:23-cv-08115, 99 in MDL No. 3084)* Inasmuch as no objection is pending at this time, the stay is lifted. |
| | | Signed by Clerk of the Panel Tiffany D. Pete on 10/20/2023. |
| | | Associated Cases: MDL No. 3084, CAC/2:23-cv-08115 (JC) (Entered: 10/20/2023) |
| 10/23/2023 | 103 | NOTICE OF POTENTIAL TAG-ALONG -- 1 Action(s) -- Filed by attorney Rachel Abrams, counsel for Plaintiffs Kathrine Hylin, Taylor Gavin, Cynthia Crawford, E.R., A.G., A.M., A.H.M., H.B., C.S., Jillian Sullivan, Elunda Murphy, N.R., S.W., Aundreya Rollo, D.P., Ashley Jones, S.D., H.D., K.O., Melanie Halstenberg, B.R., J.C., Heather Worzalla, E.E., Joshua Cormier -- Illinois Northern District Court (1:23-cv-14205) (Attachments: # 1 Schedule of Actions, # 2 Proof of Service, # 3 Exhibit A (Docket Sheet, Complaint - NDIL 1:23-cv-14205)) (Abrams, Rachel) Modified on 10/25/2023 (JC). ADDED PARTY TYPE (Entered: 10/23/2023) |
| 10/25/2023 | 104 | CERTIFICATE OF SERVICE (AMENDED) re: pldg. ( 103 in MDL No. 3084) Filed by Plaintiff L. M. -- Associated Cases: MDL No. 3084, ILN/1:23-cv-14205 (Abrams, Rachel) (Entered: 10/25/2023) |
| 10/27/2023 | 105 | CONDITIONAL TRANSFER ORDER FILED TODAY (CTO-3) - 1 action(s) |
| | | Signed by Clerk of the Panel Tiffany D. Pete on 10/27/2023. |
| | | Associated Cases: MDL No. 3084, ILN/1:23-cv-14205 (JC) (Entered: 10/27/2023) |
| 10/27/2023 | 106 | ***TEXT ONLY NOTICE*** |
| | | **NOTICE OF FILING OF CTO AND PUBLICATION OF BRIEFING SCHEDULE (CTO-3)** *re: pldg. (2 in ILN/1:23-cv-14205, 105 in MDL No. 3084)* |
| | | **BRIEFING SCHEDULE IS SET AS FOLLOWS:** **Oppositions due on or before 11/3/2023.** |
| | | **Signed by Clerk of the Panel Tiffany D. Pete on 10/27/2023.** |
| | | **Associated Cases: MDL No. 3084, ILN/1:23-cv-14205 (JC) (Entered: 10/27/2023)** |
| 10/30/2023 | | XYZ CASES ENTERED -- 5 related action(s) originating in the transferee district. JPML notified on 10/12/23 via NEF. -- |
| | | California Northern District Court (3:23-cv-05187,3:23-cv-05197,3:23-cv-05193,3:23-cv-05196,3:23-cv-05183) (JC) (Entered: 10/30/2023) |
| 10/30/2023 | | XYZ CASES ENTERED -- 3 related action(s) originating in the transferee district. JPML notified on 10/13/23 via NEF. -- |
| | | California Northern District Court (3:23-cv-05219,3:23-cv-05233,3:23-cv-05232) (JC) (Entered: 10/30/2023) |
| 10/31/2023 | 107 | NOTICE OF POTENTIAL TAG-ALONG -- 1 Action(s) -- Filed by attorney Marlene Goldenberg, counsel for Plaintiff Kayanna Ayles -- Ohio Southern District Court (3:23-cv-00327) (Attachments: # 1 Schedule of Actions, # 2 Service List, # 3 Complaint OHS 3:23-0327) (Goldenberg, Marlene) Modified on 10/31/2023 (JC). EDITED ATTACHMENT FILE NAME (Entered: 10/31/2023) |
| 10/31/2023 | | XYZ CASES ENTERED -- 3 related action(s) originating in the transferee district. JPML notified on 10/16/23 via NEF. -- |
| | | California Northern District Court (3:23-cv-05230,3:23-cv-05237,3:23-cv-05236) (JC) (Entered: 10/31/2023) |
| 10/31/2023 | 108 | **FILING WITHDRAWN SEE PLDG. 112** |
| | | MOTION - Filed by Benjamin T. Carroll on behalf of Plaintiff Jane Doe |

| | | |
|---|---|---|
| | | Associated Cases: MDL No. 3084, MA/1:23-cv-10745 (Carroll, Benjamin) Modified on 11/9/2023 (JC). ADDED NOTATION (Entered: 10/31/2023) |
| 11/06/2023 | 109 | CONDITIONAL TRANSFER ORDER FINALIZED (CTO-3) - 1 action(s) *re: pldg. (2 in ILN/1:23-cv-14205, 105 in MDL No. 3084)* Inasmuch as no objection is pending at this time, the stay is lifted. <br><br> Signed by Clerk of the Panel Tiffaney D. Pete on 11/6/2023. <br><br> Associated Cases: MDL No. 3084, ILN/1:23-cv-14205 (JC) (Entered: 11/06/2023) |
| 11/06/2023 | 110 | CONDITIONAL TRANSFER ORDER FILED TODAY (CTO-4) - 1 action(s) <br><br> Signed by Clerk of the Panel Tiffaney D. Pete on 11/6/2023. <br><br> Associated Cases: MDL No. 3084, OHS/3:23-cv-00327 (JC) (Entered: 11/06/2023) |
| 11/06/2023 | 111 | ***TEXT ONLY NOTICE*** <br><br> **NOTICE OF FILING OF CTO AND PUBLICATION OF BRIEFING SCHEDULE (CTO-4)** *re: pldg. ( 110 in MDL No. 3084, 1 in OHS/3:23-cv-00327)* <br><br> **BRIEFING SCHEDULE IS SET AS FOLLOWS:** <br> **Oppositions due on or before 11/13/2023.** <br><br> **Signed by Clerk of the Panel Tiffaney D. Pete on 11/6/2023.** <br><br> **Associated Cases: MDL No. 3084, OHS/3:23-cv-00327 (JC) (Entered: 11/06/2023)** |
| 11/07/2023 | 112 | WITHDRAWAL OF FILING re: pldg. (27 in MA/1:23-cv-10745, 108 in MDL No. 3084) Filed by Plaintiff Jane Doe <br> FILING WITHDRAWN FOR THE FOLLOWING REASON: **Filed in error**. <br><br> (Attachments: # 1 Proof of Service) <br> Associated Cases: MDL No. 3084, MA/1:23-cv-10745 <br> (Carroll, Benjamin) (Entered: 11/07/2023) |
| 11/08/2023 | | XYZ CASES ENTERED -- 12 related action(s) originating in the transferee district. JPML notified on 10/17/2023 via NEF. -- <br><br> California Northern District Court (3:23-cv-05286,3:23-cv-05282,3:23-cv-05292,3:23-cv-05303,3:23-cv-05319,3:23-cv-05324, 3:23-cv-05322,3:23-cv-05328,3:23-cv-05346,3:23-cv-05359,3:23-cv-05362,3:23-cv-05293) (Miller, Ajonee) (Entered: 11/08/2023) |
| 11/08/2023 | 113 | NOTICE OF POTENTIAL TAG-ALONG -- 1 Action(s) -- Filed by attorney Paula S. Bliss, Counsel for Plaintiff K.P. -- Maryland District Court (1:23-cv-02580) (Attachments: # 1 Schedule of Actions, # 2 Proof of Service, # 3 Complaint MD 1:23-2580) (Bliss, Paula) Modified on 11/9/2023 (JC). EDITED EVENT TYPE, ADDED PARTY NAME, EDITED ATTACHMENT FILE NAME (Entered: 11/08/2023) |
| 11/09/2023 | | XYZ CASES ENTERED -- 7 related action(s) originating in the transferee district. JPML notified on 10/23/2023 via NEF. -- <br><br> California Northern District Court (3:23-cv-05368,3:23-cv-05363,3:23-cv-05417,3:23-cv-05418,3:23-cv-05413,3:23-cv-05414, 3:23-cv-05377) (Miller, Ajonee) (Entered: 11/09/2023) |
| 11/09/2023 | | XYZ CASES ENTERED -- 18 related action(s) originating in the transferee district. JPML notified on 10/24/2023 via NEF. -- <br><br> California Northern District Court (3:23-cv-04972,3:23-cv-05433,3:23-cv-05424,3:23-cv-05370,3:23-cv-05415,3:23-cv-05387, 3:23-cv-05421,3:23-cv-04940,3:23-cv-05445,3:23-cv-05442,3:23-cv-05427, 3:23-cv-04939,3:23-cv-05409,3:23-cv-05449,3:23-cv-05503,3:23-cv-05526,3:23-cv-04772) (Miller, Ajonee) (Entered: 11/09/2023) |
| 11/09/2023 | 114 | CERTIFICATE OF SERVICE (AMENDED) - re:pldg. ( 113 in MDL No. 3084) Filed by Plaintiff K. P. -- Associated Cases: MDL No. 3084, MD/1:23-cv-02580 (Bliss, Paula) Modified on 11/9/2023 (JC). EDITED EVENT TYPE (Entered: 11/09/2023) |

CM/ECF for JPML (LIVE)

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 11/10/2023 13:42:59 | | |
| PACER Login: | pw0001MAO | Client Code: | 022221-00012-55092 |
| Description: | Docket Report | Search Criteria: | MDL No. 3084 |
| Billable Pages: | 19 | Cost: | 1.90 |

APP018

## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| *In re: Uber Passenger Sexual* | ) | |
| *Assault Litigation* | ) | MDL Docket No. _____ |
| | ) | |
| | ) | |

---

### MOTION OF PLAINTIFFS FOR TRANSFER OF ACTIONS TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

Plaintiffs A.G., Kathrine Hylin, Taylor Gavin, Cynthia Crawford, E.R., A.M., A.H.M., H.B., C.S., Jillian Sullivan, Elunda Murphy, N.R., S.W., and Aundreya Rollo (collectively "Movants")[1] respectfully move the Judicial Panel on Multidistrict Litigation ("Panel"), pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Panel, to transfer the actions listed in the attached Schedule of Actions and all subsequent tag-along actions to the United States District Court for the Northern District of California, for coordinated or consolidated proceedings before the Honorable Judge Charles R. Breyer, who currently presides over Plaintiff A.G.'s action[2], or before the Honorable Judge Araceli Martínez-Olguín, who presides over the first-filed case in this litigation, *Katherine Hylin v. Uber Technologies, Inc., et al.*, No. 3:23-cv-01630 (N.D. CA), as well as two additional cases, *Taylor Gavin, v. Uber Technologies, Inc., et al.*, No. 3:23-cv-02111 (N.D. CA), and *Jane Doe LSA v. Uber Technologies, Inc., et al.*, No. 3:23-cv-01165 (N.D. CA).

---

[1] Movants are the named plaintiffs in fourteen of the first cases filed in this matter, which are presently pending in the United States District Courts for the Northern District of Illinois, Northern District of California, Southern District of Texas, Northern District of Georgia, and Eastern District of North Carolina. *See* Schedule of Actions.

[2] *A.G. v. Uber Technologies, Inc., et al.*, No. 3:23-cv-02071 (N.D. CA).

Plaintiffs also contemporaneously submit their memorandum in support of this motion, incorporated herein by reference, setting forth the reasons why these cases should be transferred to the Northern District of California. For the reasons stated therein, Movants respectfully request that the Panel transfer the scheduled actions and any additional tag-along actions to the Northern District of California for coordinated or consolidated pretrial proceedings before the Honorable Charles R. Breyer or the Honorable Araceli Martínez-Olguín.

Dated: July14, 2023

Respectfully submitted,

*/s/ Rachel Abrams*
**Rachel Abrams, Esq.**
**PEIFFER WOLF CARR KANE**
**CONWAY & WISE, LLP**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: 415.766.3545
Facsimile: 415.402.0058
Email: rabrams@peifferwolf.com

*Counsel for Kathrine Hylin, Taylor Gavin, Cynthia Crawford, E.R., A.G., A.M., A.H.M., H.B., C.S., Jillian Sullivan, Elunda Murphy, N.R., S.W., Aundreya Rollo*

2

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| *In re: Uber Passenger Sexual Assault Litigation* | ) ) ) ) | MDL Docket No. _____ |

---

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
TRANSFER OF ACTIONS UNDER 28 U.S.C. § 1407 FOR
COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Under 28 U.S.C. § 1407 and Rule 6.2(e) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Plaintiffs A.G., Kathrine Hylin, Taylor Gavin, Cynthia Crawford, E.R., A.M., A.H.M., H.B., C.S., Jillian Sullivan, Elunda Murphy, N.R., S.W., Aundreya Rollo (collectively "Movants")[1] respectfully submit this memorandum of law in support of their petition for transfer and coordination for pretrial purposes of all actions identified in the Schedule of Actions (the "Actions")[2], as well as any cases subsequently filed involving similar facts or claims, to the United States District Court for the Northern District of California.

There are currently at least 22 Uber actions pending in 11 different judicial districts in the United States alleging similar wrongful conduct by Defendants Uber Technologies, Inc., and its wholly owned subsidiary, Rasier, LLC, that resulted in similar injuries. Given the nationwide scope of Defendants' transportation services (and the recent *Forum Non Conveniens* Order in the California Judicial Council Coordination Proceeding No. 5188 ("Uber JCCP")), it is likely that hundreds or

---

[1] Several Plaintiffs filed under pseudonyms to protect their anonymity.
[2] See Exhibit A, Schedule of Actions. The Complaints (without exhibits) in the Actions and their related docket sheets are attached as Exhibits A-1 through A-22.

Page **1** of **18**

thousands of additional actions will soon be filed in jurisdictions throughout the United States. Transfer for consolidation and coordination is proper because each of these actions and tag-along cases arise out of the same or similar nucleus of operative facts and alleged wrongful conduct and will involve substantially similar discovery as the parties work to resolve the same or similar questions of fact and law.

### BACKGROUND

Plaintiffs are rape and sexual assault survivors who were sexually assaulted by Uber drivers who were supposed to safely transport Plaintiffs to their destinations as passengers. Plaintiffs are aware of many such cases yet to be filed.

The cases against Uber are premised on the fact that Uber failed to adequately vet its drivers and failed to take appropriate safety precautions once it had notice that a subset of Uber drivers were sexual predators and were sexually assaulting Uber passengers on a widespread basis. The cases allege that Uber was aware of the problem but nevertheless failed to conduct appropriate background checks, failed to adequately train and supervise its drivers, failed to adequately respond to complaints about predator drivers, failed to adopt safety design changes in the Uber App, and failed to adopt standard safety measures such as video and audio surveillance.

Uber Technologies, Inc. is a worldwide app-based transportation company headquartered in San Francisco, California. Its transportation services are available throughout the entire United States. Rasier, LLC, is a wholly owned subsidiary of Uber. Uber and Raiser are the only defendants. Together, Uber and Rasier operate the Uber App, founded in 2009, that connects customers to an Uber

driver. Uber markets itself as a safe company that provides safe rides. But by 2014, Uber knew that its drivers were physically or sexually assaulting and raping female passengers. In 2014, Uber implemented a "Safe Rides Fee," representing that it would support background checks for drivers, among other safety enhancements to the App.[3] Uber collected those fees. Unlike other ride fees, Uber did not share the safety fee with its drivers.[4]

Worse, Uber did not use the safety fees to enhance safety for its passengers.[5] Instead, with profit its priority, Uber continued to hire drivers based on cursory background checks that put passengers in greater danger.[6] Uber also declined to implement any meaningful safety policies, such as installing video cameras in cars, allowing passengers to request a female driver, or training drivers on issues of sexual assault and harassment, to address the dangers female Uber riders face. As a result, Plaintiffs—and thousands of others—have suffered sexual harassment, assault, and rape at the hands of Uber drivers.

In 2019, Uber publicly acknowledged the sexual-assault crisis occurring in its company.[7] The 2019 report revealed that 5,981 sexual assaults occurred during Uber

---

[3] Uber, *What is the Safe Rides Fee*, (available at https://web.archive.org/web/20148420053019/http://support.uber.com/hc/en-us/articles/201950566) (last accessed July 13, 2023).

[4] Mike Isaac, SUPER PUMPED: THE BATTLE FOR UBER 136 (2019) ("The drivers, of course, got no share of the extra buck.").

[5] *Id.*

[6] *Id.* at 218.

[7] Uber, 2017–2018 US Safety Report (Dec. 5, 2019) (available at https://www.uber-assets.com/image/upload/v1575580686/Documents/Safety/UberUSSafetyReport_201718_FullReport.pdf?uclick_id=86493dbc-ce4e-4ecb-a3f1-e7515e4390d7) (last accessed July 13, 2023).

trips in 2017 and 2018.[8] Uber released another safety report in 2022 that revealed 3,824 sexual assaults during Uber trips in 2019 and 2020.[9] Female passengers continue to suffer harm at the hands of Uber and its drivers.

These cases against Uber have overlapping legal issues such as common carrier liability, vicarious liability, the scope of Uber's duty to its passengers, the scope of Uber's duty to supervise drivers (whom it characterizes as "contractors"), and the impact of its representations that it provides a "safe ride" home, as well as other legal issues common to the Uber sexual assault cases. In this context, judicial coordination will enable one judge to manage all of these federal cases more effectively and efficiently by, among other things, supervising case-specific and corporate discovery, establishing a bellwether trial process, and issuing consistent rulings across the board on the numerous common legal issues that must be addressed. On the other hand, the alternative — requiring piecemeal litigation of hundreds of trial cases in multiple courtrooms — will inevitably place an undue burden on the courts, the public, the litigants, and could result in a patchwork of inconsistent results.

## BACKGROUND OF THE UBER JCCP

On December 9, 2021, the Uber JCCP was established, and the Honorable Judge Ethan P. Schulman of the San Francisco Superior Court was assigned to be the presiding judge. Because Uber's principal place of business is in San Francisco,

---

[8]   *Id.*

[9]   Uber, US Safety Report 2019–2020 (June 30, 2022) (available at https://uber.app.box.com/s/vkx4zgwy6sxx2t2618520xt35rix022h?uclick_id=86493dbc-ce4e-4ecb-a3f1-e7515e4390d7) (last accessed July 13, 2023).

the JCCP included all California-filed cases, regardless of whether the Plaintiff resided or was injured by an Uber driver in California. On October 7, 2022, Uber moved to exclude all non-California residents from litigating in the JCCP on *Forum Non Conveniens* grounds. On January 23, 2023, Judge Schulman ruled in Uber's favor, excluding all non-California residents and California residents who were injured outside of the state, from seeking justice against Uber in California state court.[10] All non-California residents were given 180 days to refile their cases in other jurisdictions without time-barring consequences (which allows until August 27, 2023, to refile).[11] Subsequently, numerous Plaintiffs, like Movants, have sought recourse by filing their cases in federal district courts across the country.

<div align="center">ARGUMENT</div>

## A.   Transfer and coordination of the Actions is appropriate and necessary.

Multidistrict litigation is designed "to 'promote the just and efficient conduct' of 'civil actions involving one or more common questions of fact' that are pending in different districts." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1229 (9th Cir. 2006) (quoting 28 U.S.C. § 1407(a)). Transfer is appropriate where it will serve "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407.

---

[10] *See In re Uber Rideshare Litigation*, JCCP No. 5188, January 23, 2023, Order on Uber's FNC Motion.

[11] *See In re Uber Rideshare Litigation*, JCCP No. 5188, February 28, 2023, Order Re: Application of January 23, 2023, FNC Order.

Upon receiving a motion to transfer, the Panel "analyzes each group of cases in light of the statutory criteria and the primary purposes of the MDL process to determine whether transfer is appropriate." *In re PPA Prods. Liab. Litig.*, 460 F.3d at 1230. Four factors help determine whether transfer will facilitate the convenience of the parties and promote the just and efficient conduct of the transferred case: (1) elimination of duplicative discovery; (2) avoidance of conflicting rulings and schedules; (3) reduction of litigation costs; (4) conservation of the time and effort of the parties, attorneys, witnesses, and courts. Manual for Complex Litigation (Fourth), § 20.131, at 219. To that end, centralization is appropriate to eliminate duplicative discovery, prevent inconsistent rulings, and conserve the resources of the parties, their counsel, and the judiciary. *See, e.g.*, *In re Proven Networks, LLC, Pat. Litig.*, 492 F. Supp. 3d 1338, 1340 (J.P.M.L. 2020) (noting those factors in ordering consolidation).

Transfer is appropriate here because the Actions share common issues of fact and law and are in the early stages of litigation. To Plaintiffs' knowledge, Initial Case Management Conferences have yet to occur in any of the cases listed in the Schedule of Actions filed herewith. Further, there are motions filed in numerous cases, and stipulations to extend deadlines, including briefing schedules for proposed motions, that have been entered.[12] Uber has itself filed Declarations in Support of its motions to extend time for filings that acknowledge:

1. **Counsel for Plaintiff and Defendants are engaged in active litigation with regard to several matters**

---

[12] *See* Exhibit B, Case Briefing and Extensions Chart.

**recently filed in the Northern District of California and other United States District Courts throughout the country.**

2. Defendants intend to bring a Motion to Transfer Venue and a Motion to Dismiss in the instant matter. **To avoid burdening the Court with unnecessary motions, to promote judicial efficiency, and to provide for the orderly resolution of the case**, the parties agree that the Court's resolution of Defendants' Motion to Transfer Venue is a threshold issue that should be decided prior to Defendants' Motion to Dismiss. As a result, the parties agree that Defendants shall file a Motion to Transfer Venue on or before July 21, 2023. Additionally, the parties have sought to litigate the instant matter in good faith, including by way of agreeing to reasonable extensions of time where possible, **to ensure that no undue burden falls on the parties, their attorneys, or the Court.** (Emphasis added).[13]

Accordingly, consolidated proceedings will streamline discovery, avoid inconsistent pretrial rulings, and preserve judicial and party resources.

### 1. The Actions share common questions of fact and law that merit transfer and consolidation.

The threshold requirement of Section 1407 is that there be questions of fact and law common to the cases for which MDL treatment is sought. Commonalities in factual and legal questions need not be complete, nor even the majority, to merit transfer. *In re Katz Interactive Call Processing Pat. Litig.*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007). "[I]ndividualized factual issues" do not "negate the efficiencies to be

---

[13] *See* Declaration of Paul A. Alarcon in Support of *Amended* Stipulation Re: Motion to Transfer Briefing Schedule, Extension of Time for Defendants to Bring a Motion to Dismiss, and Continuance of Case Management Conference and Related Deadlines, filed in *Taylor Gavin. v. Uber Technologies, Inc., et al.*, Case No. 3:23-cv-02111-AMO.

gained by centralization." *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017).

The Actions here share sufficient common factual and legal questions. The claims in each of those actions arise from the same course of conduct by the defendants. Among the numerous common questions of fact are:

- Uber's knowledge that its drivers have been sexually harassing, assaulting, and raping its passengers;

- Uber's failure to adopt or improve its safety procedures and policies;

- Uber's failure to require sexual harassment or assault training for its drivers;

- Uber's failure to conduct adequate background checks before hiring its drivers and otherwise failing to ensure that its drivers were fit to drive vulnerable passengers;

- Uber's failure to implement safety features into its app;

- Uber's failure to address passengers' reports of sexual harassment, assault, and rape by Uber drivers;

- Uber's failure to terminate drivers who assaulted passengers or were unfit to perform their duties;

- Uber's marketing tactics and failure to warn passengers of the risks of being sexually assaulted, harassed, or otherwise attacked by an Uber driver;

- Uber's status as a common carrier; and

- Uber's false statements indicating that would provide safe rides to vulnerable passengers.

Given that these common issues exist in each related case, which Uber acknowledges in the Alarcon Declaration quoted above, MDL treatment is appropriate.

### 2.   Transfer will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the Actions.

Transfer and consolidation of similar actions is appropriate when it would enhance the convenience of the litigation and promote the just and efficient conduct of the actions to be coordinated. Here, pretrial coordination of the Actions will ease the burdens on the parties and the judicial system. All of the Actions are in their early stages. Defendants have filed motions to change venue and motions to dismiss in the majority of the Actions. To alleviate the parties' burden, stipulations to adjust briefing schedules for these motions are being requested as more and more cases are being filed. To the best of the undersigned's knowledge, no discovery has occurred in any of the Actions. The first action filed by Movants, *Hylin v. Uber Technologies, Inc., et al.* (Case No. 3:23-cv-01630), was filed in the Northern District of California, where Uber maintains its principal place of business, approximately three months ago. Now is the optimal time for coordination, for the convenience of the parties and witnesses and to ensure a just and efficient resolution of the Actions and similar cases yet to be filed. Consolidation by this Panel will avoid the waste of duplicative discovery and the risk of inconsistent rulings and will result in conservation of judicial and party resources. Taken collectively, these factors establish that the Actions are appropriate for coordination under 28 U.S.C. § 1407.

### a.   Transfer will eliminate duplicative discovery.

Pretrial transfer will reduce the burden and costs of discovery significantly for both the parties to the Actions and the judiciary. The pending actions share the same basic theory of liability and underlying factual allegations and injuries, such that all

cases will involve the same core discovery, fact witnesses, and general liability and causation experts. MDL treatment will enable a single court to establish a pretrial plan that will minimize the inconvenience and expenses of duplicative discovery, which is precisely the purpose of transfer and coordination under Section 1407.

Consolidation also will permit Plaintiffs' counsel to coordinate efforts and share the pretrial workload among the various Plaintiffs' counsel. Instead of different law firms pursuing different litigation strategies and engaging in duplicative discovery and motion practice, a coordinated team of attorneys can pursue the claims in one court, before one judge, preserving Plaintiffs' resources and allowing their attorneys to work together in common to further these cases. The Panel has previously endorsed this rationale, noting that "prudent counsel will combine their forces and apportion the workload in order to streamline the efforts of the parties and witnesses, their counsel and the judiciary, thereby effectuating an overall savings of case and a minimum of inconvenience to all concerned." *In re Baldwin-United Corp. Litig.*, 581 F. Supp. 739, 741 (J.P.M.L. 1984).

Pretrial centralization will also allow Defendants to concentrate their attention and discovery efforts in one federal forum, rather than numerous district courts throughout the country. As a result, Plaintiffs anticipate that Defendants will be able to move quickly and effectively through discovery, enhancing the overall efficiency of the litigation. *See In re Apple iPhone 3G Prod. Liab. Litig.*, 630 F. Supp. 2d 1382, 1383 (J.P.M.L. 2009) (noting efficiency obtained through MDL process). Rather than conducting general discovery in 22 different actions in at least 11

different district courts, written discovery and depositions of key witnesses can be coordinated and completed just once. This ability to streamline the work of discovery and coordinate efforts among counsel will serve the interests of justice.

Further, discovery has yet to begin in the California JCCP, as the court there only recently ruled on Uber's *Forum Non Conveniens* motion and its motions to dismiss and strike causes of action in Plaintiffs' Master Complaint. The next Case Management Conference in the JCCP is August 18, 2023, and there are currently no discovery orders, bellwether selection process, or trials set. Therefore, it would be impeccable timing for establishing an MDL now, as the opportunity remains to comprehensively coordinate discovery between the JCCP and an MDL, through liaison counsel appointed by both the JCCP and MDL, to facilitate cohesiveness between federal and state coordinated proceedings.

### b.    Transfer will avoid inconsistent pretrial rulings.

A single centralized and coordinated pretrial plan will also further fairness and efficiency by avoiding inconsistent pretrial rulings. *See In re Levaquin Prods. Liab. Litig.*, 560 F. Supp. 2d 1384, 1385 (J.P.M.L. 2008). There are already 22 related cases pending in 11 district courts involving multiple different Plaintiffs' counsel, with many more to come. As discussed above, numerous identical motions have been filed (or are anticipated to be filed), including several pending before different judges in the same district court. Inconsistent rulings are inevitable as these various courts set discovery and trial schedules and tackle individual motions. Transfer and consolidation will avoid this serious risk.

      **c.**    **Transfer will reduce litigation costs and save the resources of the parties, attorneys, witnesses, and courts.**

MDL treatment will enable a single court to establish a pretrial plan that will minimize the inconvenience and expenses of litigating numerous cases separately, which is precisely the purpose of transfer and coordination under Section 1407. Transferring the Actions for pretrial coordination will make this litigation far more efficient and convenient for all involved. One court overseeing these actions will allow the judiciary to conserve limited resources. If transfer is denied, however, the Actions and tag-along cases will proceed on independent tracks in at least 11 different courts, requiring duplicative discovery, including repeated depositions of the same corporate personnel and expert witnesses, risking inconsistent rulings and wasting resources.

**B.**    **The Northern District of California is the most suitable forum for this MDL.**

Should the Panel agree that transfer of the Actions is proper, it should centralize these cases in the United States District Court for the Northern District of California. Although there are numerous judges in that district who are qualified to handle this MDL, including several who have presided over past or current MDLs, the Honorable Charles R. Breyer is well-qualified and has presided over numerous MDLs, such as this one.

Once it is determined that centralization is appropriate, the Panel determines the most suitable forum to do so. Manual for Complex Litigation (Fourth), § 22.33, pp. 366–67. Factors to guide the selection of the most appropriate forum include: (1) the location of parties, witnesses, and documents; (2) the accessibility of the proposed transferee district to parties and witnesses; and (3) the respective caseloads

of the proposed transferee district courts. *See In re Corn Derivatives Antitrust Litig.*, 486 F. Supp. 929, 931–32 (J.P.M.L. 1980) (discussing factors); *see also* Manual for Complex Litigation (Fourth), § 20.131, pp. 220–21. A forum that satisfies these factors and that already has pending cases is favorable. *Id.* at § 22.33, pp. 366–67. The Panel also looks for a forum that "i) is not currently overtaxed with other multidistrict dockets, and ii) possesses the resources and expertise to be able to devote the time and effort to pretrial matters that this docket is likely to require." *In re Gator Corp. Software Trademark & Copyright Litig.*, 259 F. Supp. 2d 1378, 1380 (J.P.M.L. 2003).

The United States District Court for the Northern District of California is well-versed in multidistrict litigation and has many distinguished judges capable of managing this MDL. The Northern District of California is not overtaxed with other MDL cases. At the time of filing this motion, there are 17 active MDLs pending in the district spread among the 21 district judges.[14] Two of those MDLs (*In re: Roundup Products Liability Litigation* (MDL 2741) and *In re: Juul Labs, Inc., Marketing, Sales Practices, and Products Liability Litigation* (MDL 2913)) are mature with partial or full settlements having been executed in both. There is currently one additional potential tag-along action filed in the Northern District of California- *Jane Doe LSA 340 v. Uber Technologies, Inc., et al.*, (Case No. 3:23-cv-01165-AMO).

---

[14]    Active    MDLs    in    the    Northern    District    - file:///Users/rachel/Downloads/Pending_MDL_Dockets_By_District-June-15-2023.pdf (updated as of June 15, 2023).

In addition, the Northern District of California is adept at managing its docket and handling MDL litigation and is not overtaxed. In 2022, the district had 9,066 cases filed and terminated 7,823; it has 13,114 pending cases as of the end of last year.[15]

The Clerk's office is well-prepared to capably handle the administrative aspects of this matter upon consolidation given the experience of the district's jurists. Finally, the district is home to the greatest number of related cases with 9 pending cases at the time of this filing.[16]

Transferring the Actions to the Northern District of California would best serve the purposes of 28 U.S.C. § 1407. At this point, there is no single jurisdiction where the litigation is significantly further advanced than another. Given that fact, the Northern District of California is a suitable forum for the pretrial proceedings of the litigation.

In terms of convenience of the parties, the Northern District of California is the most appropriate forum. Defendants' headquarters are in San Francisco, California. The Uber JCCP is being litigated in the San Francisco Superior Court, just minutes from the United States District Court for the Northern District of California. As Defendants' homebase, the Northern District of California is a convenient forum for Defendants and their witnesses. The United States District

---

[15] Table C-1 U.S. District Courts Civil Cases Commenced, Terminated, and Pending by Jurisdiction During the 12-Month Period Ending December 31, 2022 (available at Table C-1—U.S. District Courts–Civil Statistical Tables For The Federal Judiciary (December 31, 2022) | United States Courts (uscourts.gov)) (last accessed July 13, 2023).
[16] See Exhibit A, Schedule of Actions

Court for the Northern District of California also has a strong, vested interest in regulating one of the largest companies in the state. Uber chose California as its home jurisdiction. California had over 200,000 Uber drivers on the road in 2020.[17] California is a leader in addressing sexual assault and most Californians find safety measures to protect individuals from sexual assault to be a high priority.[18]

The United States District Court for the Northern District of California is also easily accessible. Centered around the San Francisco Bay area, the Northern District of California is a convenient forum for all parties and witnesses. The Bay Area has multiple large airports and other convenient modes of transportation. *See In re Worldcom, Inc., Sec. & ERISA Litig.*, 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002) (noting the conveniences of a metropolitan area with major airline service, hotel, and office accommodations).

Offering convenience and accessibility, minimal docket congestion, and substantial experience with MDLs, consolidation of these actions to the United States District Court for the Northern District of California will serve all parties. Accordingly, the Northern District of California will uniquely serve the "just and efficient conduct of these actions." 28 U.S.C. § 1407(a).

---

[17] Alison Stein, *Analysis on Impacts of Driver Reclassification*, Uber Newsroom (May 28, 2020) https://medium.com/uber-under-the-hood/analysis-on-impacts-of-driver-reclassification-2f2639a7f902 (last accessed July 13, 2023).

[18] *See e.g.*, Samantha Solomon, *New California Law Expands Statute Of Limitations For Sexual Assault Survivors*, ABC10 News (December 20, 2018) California's new sexual assault law on statute of limitations, explained | abc10.com (last accessed July 13, 2023).

Page **15** of 18

**C.     The Honorable Judge Charles R. Breyer should preside over this consolidated litigation because of his distinguished experience in managing MDLs.**

The Honorable Judge Charles R. Breyer is eminently qualified to handle the complexity of this MDL. He is the presiding Judge in Plaintiff A.G.'s case.

The experience and knowledge of a particular judge is a third important factor that may be considered in determining the best transferee forum. *See, e.g., In re "Factor VIII or IX Concentrate Blood Prods." Prod. Liab. Litig.*, 853 F. Supp. 454, 455 (J.P.M.L. 1993).

Judge Breyer has presided over numerous complex litigations, including several MDLs. Judge Breyer is one of the most qualified and experienced MDL judges in the country, having presided over 12 MDLs during his prestigious judicial tenure. Judge Breyer has tremendous insight on multidistrict litigations, which will without doubt benefit the parties. He currently presides over two MDLs,[19] one of which is currently in settlement. Judge Breyer's docket allows for an MDL such as this one.

**D.     In the alternative, the Honorable Judge Araceli Martínez-Olguín should preside over this consolidated litigation because of her background and distinctive qualifications.**

The Honorable Judge Araceli Martínez-Olguín was assigned to the first currently active filed case, *Jane Doe LSA 340 v. Uber Technologies, Inc., et al.*, (Case No. 3:23-cv-01165-AMO), as well as subsequently filed cases by Movants, *Hylin v. Uber Technologies, Inc., et al.* (Case No. 3:23-cv-01630-AMO), and *Gavin v. Uber*

---

[19] *In Re: Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.* (MDL No. 2672) and *In Re: McKinsey & Co., Inc., Nat'l Prescription Opiate Consultant Litig.*( MDL No. 2996).

*Technologies, Inc., et al.* (Case No. 3:23-cv-02111-AMO). Judge Araceli Martínez-Olguín is well-suited to handle the complexity of an MDL and would bring a distinctive background to this complex litigation.

Judge Martínez-Olguín has worked for the National Immigration Law Center since 2018. Previously, she served as the managing attorney for the Immigrants' Rights Project, Community Legal Services in East Palo Alto, in East Palo Alto, California, from 2017 to 2018, and as an attorney for the U.S. Department of Education's Office of Civil Rights from 2016 to 2017. Judge Martínez Olguín also worked as a senior staff attorney, staff attorney, and Women's Rights Project Fellow for the American Civil Liberties Union in San Francisco and New York, from 2013 to 2015 and from 2006 to 2010, respectively. She was a staff attorney for Legal Aid at Work (formerly Legal Aid Society – Employment Law Center) from 2010 to 2013.[20] Judge Martínez Olguín's vast background and foundation would be ideal for an MDL such as this one.

In the alternative, one of the other numerous, well-qualified Judges in the Northern District of California should preside over this consolidated litigation.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Panel transfer the Actions to the Northern District of California for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407 before the Honorable

---

[20] chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://cdn.ca9.uscourts.gov/datastore/ce9/2023/Martinez_Olguin_CAN_Confirmed.pdf

Page **17** of **18**

Charles Breyer or the Honorable Judge Araceli Martínez-Olguín. In the alternative, the Panel should transfer the Actions to one of the other numerous, well-qualified judges in the Northern District of California.

Dated: July14, 2023          Respectfully submitted,

         */s/    Rachel Abrams*
         **Rachel Abrams, Esq.**
         **PEIFFER WOLF CARR KANE**
         **CONWAY & WISE, LLP**
         4 Embarcadero Center, Suite 1400
         San Francisco, CA 94111
         Telephone: 415.766.3545
         Facsimile: 415.402.0058
         Email: rabrams@peifferwolf.com

         *Counsel for Kathrine Hylin, Taylor Gavin, Cynthia Crawford, E.R., A.G., A.M., A.H.M., H.B., C.S., Jillian Sullivan, Elunda Murphy, N.R., S.W., Aundreya Rollo*

# EXHIBIT A-1

Query     Reports     Utilities     Help     Log Out

ADRMOP

**U.S. District Court**
**California Northern District (San Francisco)**
**CIVIL DOCKET FOR CASE #: 3:23-cv-01630-AMO**

Hylin v. Uber Technologies, Inc. et al                    Date Filed: 04/05/2023
Assigned to: Judge Araceli Martinez-Olguin              Jury Demand: Plaintiff
Cause: 28:1332 Diversity-Libel,Assault,Slander          Nature of Suit: 320 Assault Libel & Slander
                                                        Jurisdiction: Diversity

**Plaintiff**

**Katherine Hylin**                          represented by   **Adam Brett Wolf**
                                                            Peiffer Wolf Carr Kane & Conway, APLC
                                                            3435 Wilshire Blvd.
                                                            Suite 1400
                                                            Los Angeles, CA 90010
                                                            415-766-3545
                                                            Email: awolf@peifferwolf.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Angela J Nehmens**
                                                            Peiffer Wolf Carr Kane Conway & Wise LLP
                                                            4 Embarcadero Center
                                                            Suite 1400
                                                            94111
                                                            San Francisco, CA 94111
                                                            415-426-3000
                                                            Fax: 415-426-3001
                                                            Email: anehmens@peifferwolf.com
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Rachel Beth Abrams**
                                                            Peiffer Wolf Carr Kane Conway & Wise
                                                            4 Embarcadero Center
                                                            Suite 1400
                                                            San Francisco, CA 94111
                                                            415-426-5641
                                                            Email: rabrams@peifferwolf.com
                                                            *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Uber Technologies, Inc.**                  represented by   **Randall Scott Luskey**
                                                            Paul, Weiss, Rifkind, Wharton & Garrison LLP
                                                            535 Mission Street
                                                            24th Floor
                                                            San Francisco, CA 94105
                                                            (628) 432-5100
                                                            Email: rluskey@paulweiss.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Paul Augusto Alarcon**
                                                            Bowman and Brooke LLP
                                                            970 West 190th Street
                                                            Suite 700
                                                            Torrance, CA 90502
                                                            310-380-6595
                                                            Fax: 310-719-1019
                                                            Email: paul.alarcon@bowmanandbrooke.com
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Samuel Quinn Schleier**
                                                            Bowman and Brooke LLP
                                                            970 West 190th Street
                                                            Ste 700
                                                            Torrance, CA 90502

APP040

310-380-6569
Email: sam.schleier@bowmanandbrooke.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Raiser, LLC**                                                    represented by **Randall Scott Luskey**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul Augusto Alarcon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Quinn Schleier**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/05/2023 | 1 | COMPLAINT against Uber Technologies, Inc., Raiser, LLC (Filing fee $ 402, receipt number ACANDC-18142771). Filed by Katherine Hylin. (Attachments: # 1 Civil Cover Sheet)(Wolf, Adam) (Filed on 4/5/2023) Modified on 4/5/2023 (slh, COURT STAFF). (Entered: 04/05/2023) |
| 04/05/2023 | 2 | Certificate of Interested Entities by Katherine Hylin (Wolf, Adam) (Filed on 4/5/2023) (Entered: 04/05/2023) |
| 04/05/2023 | 3 | Proposed Summons. (Wolf, Adam) (Filed on 4/5/2023) (Entered: 04/05/2023) |
| 04/05/2023 | 4 | Proposed Summons. (Wolf, Adam) (Filed on 4/5/2023) (Entered: 04/05/2023) |
| 04/05/2023 | 5 | Case assigned to Magistrate Judge Kandis A. Westmore. Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E-Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening. Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. Consent/Declination due by 4/19/2023. (ark, COURT STAFF) (Filed on 4/5/2023) (Entered: 04/05/2023) |
| 04/05/2023 | 6 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 7/4/2023. Initial Case Management Conference set for 7/11/2023 atv01:30 PM in Oakland, Courtroom to be determined. (slh, COURT STAFF) (Filed on 4/5/2023) (Entered: 04/05/2023)** |
| 04/05/2023 | 7 | Summons Issued as to Uber Technologies, Inc.. (slh, COURT STAFF) (Filed on 4/5/2023) (Entered: 04/05/2023) |
| 04/05/2023 | 8 | Summons Issued as to Raiser, LLC. (slh, COURT STAFF) (Filed on 4/5/2023) (Entered: 04/05/2023) |
| 04/11/2023 | 9 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Katherine Hylin.. (Wolf, Adam) (Filed on 4/11/2023) (Entered: 04/11/2023) |
| 04/12/2023 | 10 | CLERK'S NOTICE OF IMPENDING REASSIGNMENT TO A U.S. DISTRICT COURT JUDGE: The Clerk of this Court will now randomly reassign this case to a District Judge because either (1) a party has not consented to the jurisdiction of a Magistrate Judge, or (2) time is of the essence in deciding a pending judicial action for which the necessary consents to Magistrate Judge jurisdiction have not been secured. You will be informed by separate notice of the district judge to whom this case is reassigned. ALL HEARING DATES PRESENTLY SCHEDULED BEFORE THE CURRENT MAGISTRATE JUDGE ARE VACATED AND SHOULD BE RE-NOTICED FOR HEARING BEFORE THE JUDGE TO WHOM THIS CASE IS REASSIGNED. *This is a text only docket entry; there is no document associated with this notice.* (wft, COURT STAFF) (Filed on 4/12/2023) (Entered: 04/12/2023) |
| 04/13/2023 | 11 | **ORDER REASSIGNING CASE. Case reassigned using a proportionate, random, and blind system pursuant to General Order No. 44 to District Judge Araceli Martinez-Olguin for all further proceedings. Magistrate Judge Kandis A. Westmore no longer assigned to case, Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order No. 65 and http://cand.uscourts.gov/cameras. Signed by The Clerk on 4/13/2023. (Attachments: # 1 Notice of Eligibility for Video Recording)(anj, COURT STAFF) (Filed on 4/13/2023) (Entered: 04/13/2023)** |
| 04/14/2023 | 12 | SUMMONS Returned Executed by Katherine Hylin. Uber Technologies, Inc. served on 4/12/2023, answer due 5/3/2023 re 7 Summons Issued, 1 Complaint, 6 Initial Case Management Scheduling Order with ADR Deadlines, 9 Consent/Declination to Proceed Before a US Magistrate Judge (Wolf, Adam) (Filed on 4/14/2023) Modified on 4/17/2023 (slh, COURT STAFF). (Entered: 04/14/2023) |
| 04/14/2023 | 13 | SUMMONS Returned Executed by Katherine Hylin. Raiser, LLC served on 4/12/2023, answer due 5/3/2023 re 1 Complaint, 8 Summons Issued, 6 Initial Case Management Scheduling Order with ADR Deadlines, 9 Consent/Declination to Proceed Before a US Magistrate Judge (Wolf, Adam) (Filed on 4/14/2023) Modified on 4/17/2023 (slh, COURT STAFF). (Entered: 04/14/2023) |
| 04/17/2023 | 14 | CLERK'S NOTICE ON REASSIGNMENT. You are noticed that the Court has scheduled an Initial Case Management Conference before Judge Araceli Martinez-Olguin upon reassignment. For a copy of Judge Martinez-Olguin's Standing Order and other information, please refer to the Court's website at www.cand.uscourts.gov. |

| | | |
|---|---|---|
| | | Case Management Statement due by 7/6/2023. Initial Case Management Conference set for 7/13/2023 at 10:00 AM in San Francisco, Courtroom 10, 19th Floor. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (jlg, COURT STAFF) (Filed on 4/17/2023) (Entered: 04/17/2023) |
| 05/02/2023 | 15 | STIPULATION *to Extend Time for Defendants to Respond to Complaint* filed by Raiser, LLC, Uber Technologies, Inc.. (Luskey, Randall) (Filed on 5/2/2023) (Entered: 05/02/2023) |
| 05/02/2023 | 16 | CORPORATE DISCLOSURE STATEMENT AND CERTIFICATE OF INTERESTED ENTITIES OR PERSONS filed by Raiser, LLC, Uber Technologies, Inc. identifying Corporate Parent Uber Technologies, Inc. for Raiser, LLC. (Luskey, Randall) (Filed on 5/2/2023) (Entered: 05/02/2023) |
| 05/08/2023 | 17 | ADMINISTRATIVE MOTION for Related Uber Actions requesting reassignment to the Honorable Araceli Martnez-Olgun , MOTION to Relate Case filed by Katherine Hylin. Responses due by 5/12/2023. (Attachments: # 1 Declaration Declaration Of Rachel Abrams In Support Of Plaintiff's Administrative Motion To Consider Whether Cases Are Related, # 2 Proposed Order Proposed Order Granting Plaintiff's Administrative Motion To Consider Whether Cases Should Be Related)(Abrams, Rachel) (Filed on 5/8/2023) (Entered: 05/08/2023) |
| 05/12/2023 | 18 | OPPOSITION/RESPONSE (re 17 ADMINISTRATIVE MOTION for Related Uber Actions requesting reassignment to the Honorable Araceli Martnez-Olgun *Motion to Relate Case* ) filed byRaiser, LLC, Uber Technologies, Inc.. (Attachments: # 1 Proposed Order) (Luskey, Randall) (Filed on 5/12/2023) (Entered: 05/12/2023) |
| 06/02/2023 | 19 | Clerk's Notice Not Relating Cases.<br><br>The Court has reviewed the motion and determined that Case Nos. 23-cv-02051 TLT, 23-cv-02071 CRB, and 23-cv-02111 AMO are not related to Case No. 22-cv-01630 AMO. (ads, COURT STAFF) (Filed on 6/2/2023) (Entered: 06/02/2023) |
| 06/05/2023 | 20 | MOTION to Change Venue *to the Central District of Illinois* filed by Raiser, LLC, Uber Technologies, Inc.. Motion Hearing set for 8/17/2023 02:00 PM in San Francisco, Courtroom 10, 19th Floor before Judge Araceli Martinez-Olguin. Responses due by 6/19/2023. Replies due by 6/26/2023. (Attachments: # 1 Declaration of Randall S. Luskey, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Declaration of Alejandra Vasquez, # 7 Exhibit A, # 8 Proposed Order)(Luskey, Randall) (Filed on 6/5/2023) (Entered: 06/05/2023) |
| 06/05/2023 | 21 | Request for Judicial Notice re 20 MOTION to Change Venue *to the Central District of Illinois* filed byRaiser, LLC, Uber Technologies, Inc.. (Related document(s) 20 ) (Luskey, Randall) (Filed on 6/5/2023) (Entered: 06/05/2023) |
| 06/05/2023 | 22 | NOTICE of Appearance by Paul Augusto Alarcon (Alarcon, Paul) (Filed on 6/5/2023) (Entered: 06/05/2023) |
| 06/05/2023 | 23 | First MOTION to Dismiss *Pursuant to Federal Rule of Civil Procedure 12(b)(6);* filed by Raiser, LLC, Uber Technologies, Inc.. Motion Hearing set for 8/31/2023 02:00 PM in San Francisco, Chambers before Judge Araceli Martinez-Olguin. Responses due by 6/19/2023. Replies due by 6/26/2023. (Attachments: # 1 Declaration of Paul Alarcon, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S, # 21 Exhibit T, # 22 Exhibit U, # 23 Exhibit V, # 24 Exhibit W, # 25 Exhibit X, # 26 Proposed Order)(Alarcon, Paul) (Filed on 6/5/2023) (Entered: 06/05/2023) |
| 06/05/2023 | 24 | Request for Judicial Notice re 23 First MOTION to Dismiss *Pursuant to Federal Rule of Civil Procedure 12(b)(6);* filed byRaiser, LLC, Uber Technologies, Inc.. (Related document(s) 23 ) (Alarcon, Paul) (Filed on 6/5/2023) (Entered: 06/05/2023) |
| 06/05/2023 | 25 | NOTICE of Appearance by Samuel Quinn Schleier (Schleier, Samuel) (Filed on 6/5/2023) (Entered: 06/05/2023) |
| 06/16/2023 | 26 | STIPULATION WITH PROPOSED ORDER *Re: Briefing Schedule on Defendants' Motion to Dismiss and Continuance of Case Management Conference and Related Deadlines* filed by Raiser, LLC, Uber Technologies, Inc.. (Alarcon, Paul) (Filed on 6/16/2023) (Entered: 06/16/2023) |
| 06/16/2023 | 27 | **Order by Judge Araceli Martinez-Olguin granting 26 Stipulation RE Briefing Schedule on Defendants' Motion to Dismiss and Continuance of Case Management Conference and Related Deadlines.**<br>**Oppositions due by 8/4/2023.**<br>**Replies due by 9/5/2023.**<br>**Motion to Transfer Venue Hearing set for 10/5/2023 at 02:00 PM in San Francisco, Courtroom 10, 19th Floor before Judge Araceli Martinez-Olguin.**<br>**Motion to Dismiss Hearing set for 10/19/2023 at 02:00 PM in San Francisco, Courtroom 10, 19th Floor before Judge Araceli Martinez-Olguin.**<br>**(ads, COURT STAFF) (Filed on 6/16/2023) (Entered: 06/16/2023)** |
| 07/07/2023 | 28 | Clerk's Notice Continuing Motion Hearings. 20 Motion to Change Venue and 23 Motion to Dismiss Hearings set for 11/2/2023 at 02:00 PM in San Francisco, Courtroom 10, 19th Floor before Judge Araceli Martinez-Olguin. *(This is a text-only entry generated by the court. There is no document associated with this entry.)*(ads, COURT STAFF) (Filed on 7/7/2023) (Entered: 07/07/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/14/2023 11:55:58 | | |
| **PACER Login:** | pwek2018 | **Client Code:** | uber jpml |
| **Description:** | Docket Report | **Search Criteria:** | 3:23-cv-01630-AMO |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

1  ADAM B. WOLF (Cal Bar No. 215914)
   RACHEL ABRAMS (Cal Bar No. 209316)
2  ANGELA J. NEHMENS (Cal Bar No. 309433)
   **Peiffer Wolf Carr Kane Conway & Wise, LLP**
3  4 Embarcadero Center, Suite 1400
   San Francisco, CA 94111
4  Telephone: 415.766.3545
   Facsimile: 415.402.0058
5  Email: awolf@peifferwolf.com
   Email: rabrams@peifferwolf.com
6  Email: anehmens@peifferwolf.com
7  *Counsel for Plaintiff*

8            **UNITED STATES DISTRICT COURT**
            **NORTHERN DISTRICT OF CALIFORNIA**
9             **SAN FRANCISCO DIVISION**

10

11  KATHERINE HYLIN, an individual,          ) Case No. _____
                                             )
12                                           ) **COMPLAINT FOR DAMAGES AND**
                                             ) **DEMAND FOR JURY TRIAL**
13         Plaintiff,                        )
                                             ) **1.   GENERAL NEGLIGENCE**
14      v.                                   )
                                             ) **2.   NEGLIGENT HIRING,**
15                                           )      **RETENTION, AND**
    UBER TECHNOLOGIES, INC., a               )      **SUPERVISION**
16  Delaware Corporation; RASIER, LLC, a     )
    Delaware Limited Liability Company; and  ) **3.   COMMON CARRIER**
17  DOES 1 through 50, Inclusive,            )      **NEGLIGENCE**
                                             )
18         Defendants.                       ) **4.   NEGLIGENT FAILURE TO**
                                             )      **WARN**
19                                           )
                                             ) **5.   INTENTIONAL**
20                                           )      **MISREPRESENTATION**
                                             )
21                                           ) **6.   NEGLIGENT**
                                             )      **MISREPRESENTATION**
22                                           )
                                             ) **7.   NEGLIGENT INFLICTION OF**
23                                           )      **EMOTIONAL DISTRESS**
                                             )
24                                           ) **8.   BREACH OF CONTRACT**
                                             )
25                                           ) **9.   STRICT PRODUCT LIABILITY**
                                             )      **– DESIGN**
26                                           )
                                             ) **10.  STRICT PRODUCT LIABILITY**
27                                           )      **– FAILURE TO WARN**

28

CASE NO. 23-1630                    PLAINTIFF'S ORIGINAL
                           1        COMPLAINT AND JURY DEMAND

## PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff, Katherine Hylin, by her undersigned counsel, makes the following Complaint against Defendants Uber Technologies, Inc., A Delaware Corporation, and Raiser, LLC ("Raiser"), (collectively, "Uber" or "Defendants"), alleging as follows:

### NATURE OF ACTION

1. Plaintiff was assaulted, battered, harassed, and/or otherwise attacked by an Uber driver with whom she had been paired through the Uber App. This case is about this attack as well as the toxic-male culture at Uber that caused this attack. A culture that started at the very top of Uber that prized growth above all else and in the process exploited, endangered, and hurt women and girls, including Plaintiff. This culture was put in place by Uber's officers and directors—including Travis Kalanick—with conscious disregard to the rights and safety of Uber passengers, particularly female Uber passengers.

2. Uber is a transportation company headquartered in San Francisco, California that, beginning in 2009, pioneered an app-based transportation system that has been implemented around the world, including across the entire United States and in this State.

3. As early as 2014 Uber became aware that Uber drivers were physically and/or sexually assaulting and raping female passengers. In the nine years since, sexual predators driving for Uber have continued to sexually assault, harass, kidnap, physically assault, rape, and/or other attack Uber's passengers. Complaints to Uber by female passengers who had been attacked by Uber drivers, combined with subsequent criminal investigations by law enforcement, clearly establish that Uber has been fully aware of these continuing attacks by sexual predators driving for Uber. Uber's response to these ongoing sexual assaults by Uber drivers has been slow and inadequate and has put the lives and well-being of its customers at grave risk.

4. While Uber has, in recent years, publicly acknowledged this sexual-assault crisis—including the publication of Uber's U.S. Safety Report, in December 2019— Uber has

CASE NO. 23-1630

2

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

failed to implement basic safety measures necessary to prevent these serious physical and/or sexual assaults, which continue to occur to this day.

5. As more fully set forth below, Plaintiff was assaulted, battered, harassed, and attacked by the Uber driver she was led to believe would give her a safe ride to her destination.

6. The Uber ride at issue was ordered by or for Plaintiff through the ride-sharing software application owned and controlled by Uber ("the Uber App").

7. At all relevant times Defendants Uber and Rasier (collectively "Uber") operated and controlled the Uber App.

8. The Uber driver, while in the course and scope of his employment for Uber and while otherwise working on behalf of Uber, assaulted, battered, harassed, and/or attacked Plaintiff as set forth below.

9. Plaintiff brings this civil action against Uber to recover damages for the injuries she suffered as a result of being assaulted, battered, harassed, and/or attacked by the Uber driver during an Uber ride.

10. Uber is a common carrier under this State's laws.

**PARTIES**

11. Plaintiff is over the age of 18 and is a resident of Illinois. The assault described below took place in the State of Illinois.

12. Defendant Uber Technologies, Inc. is a Delaware corporation with its corporate headquarters, principal office, and principal place of business at 1515 3rd Street, San Francisco, San Francisco County, California, 94158.

13. Defendant Rasier, LLC is a Delaware limited liability company. On information and belief, Rasier is a wholly owned subsidiary of Uber Technologies, Inc. Rasier maintains its corporate headquarters, principal office, and principal place of business at 1515 3rd St., San Francisco, California, 94158.

CASE NO. 23-1630

3

PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

14. Unless otherwise specified, this Complaint refers to Defendants Uber Technologies, Inc. and Rasier, LLC collectively as "Uber."

15. The true names and capacities, whether individual, plural, corporate, partnership, associate, or otherwise, of Does 1 through 50, inclusive, are unknown to Plaintiff who therefore sue said Defendants by such fictitious names. The full extent of the facts linking such fictitiously sued Defendants is unknown to Plaintiff. Plaintiff is informed and believe, and thereon allege, that each of the Defendants designated herein as a Doe was, and is, negligent, or in some other actionable manner, responsible for the events and happenings hereinafter referred to, and thereby negligently, or in some other actionable manner, legally caused the hereinafter described injuries and damages to Plaintiff. Plaintiff will hereafter seek leave of the Court to amend this Complaint to show the Defendants' true names and capacities after the same have been ascertained.

16. Plaintiff is informed and believes, and on that basis alleges, that at all relevant times, each Defendant was the agent, servant, licensee, employee, assistant, consultant, or alter ego, of each other Defendant, and was at all relevant times acting within the course and scope of said relationship when Plaintiff was injured.

17. Plaintiff is informed and believes that each Defendant, when acting as a principal, was negligent in the selection, hiring, supervision, or retention of each other Defendant as an agent, servant, employee, assistant, or consultant.

18. Plaintiff is further informed and believes, that at all relevant times, each Defendant, through its officers, directors, supervisors and managing agents, and each individual Defendant, had advance knowledge of the wrongful conduct, psychological profile, and behavior propensity of said agents, servants, licensees, employees, assistants, consultants, and alter egos, and allowed said wrongful conduct to occur and continue to occur, thus ratifying said wrongful conduct, and, after becoming aware of their wrongful conduct, each Defendant by and through its

CASE NO. 23-1630

4

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

officers, directors, supervisors, and managing agents, and each individual Defendant, authorized and ratified the wrongful conduct that injured Plaintiff.

19. Defendants are liable for the acts of each other through principles of *respondeat superior*, agency, ostensible agency, partnership, alter-ego, and other forms of vicarious liability.

20. The Uber driver who perpetrated the assault described herein ("Uber driver") was an agent, servant, and employee of Uber.

21. This Complaint refers to Defendant Uber Technologies, Inc., Defendant Rasier, LLC, and Does 1 through 50, inclusive, as Defendants.

## JURISDICTION AND VENUE

22. The Court has jurisdiction under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

23. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## DIVISIONAL ASSIGNMENT

24. Division is proper in this Court under Local Rules 3-2(c) and 3-5(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial division.

## RELEVANT FACTUAL BACKGROUND

### *Uber's Sexual-Assault Problem Started At The Top*

25. Uber is a transportation company. In 2010, one of its founders, Travis Kalanick, became its second chief executive officer and—at one time—its largest shareholder. Uber drivers and Uber split the fare Uber charges riders for the riders' trips.

26. In 2014, Uber started charging Uber passengers an extra $1 fee for each trip. Uber called this a "Safe Rides Fee." When Uber announced the "Safe Rides Fee," it told the public that

CASE NO. 23-1630

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

5

the "[f]ee supports our continued efforts to ensure the safest possible platform for Uber riders and drivers, including an industry-leading background check process, regular motor vehicle checks, driver safety education, development of safety features in the app, and insurance."[1]

27.     The "Safe Rides Fee" was not split with drivers.[2] It was pure revenue for Uber.

28.     Uber collected its "Safe Rides Fee" on hundreds of millions of rides and made hundreds of millions in revenue from the fee.[3] But it never earmarked the money for improving safety or spent it on safety.[4] Instead, it pocketed the money it told the world it was going to directly towards enhancing safety. As a former Uber employee said "[w]e boosted our margins saying our rides were safer."[5] It "was obscene."[6]

29.     Rider safety was never Uber's concern. Growth was. To increase growth, which required not only new riders but new drivers, Travis Kalanick and the executives at Uber made it as easy as possible for Uber drivers to sign up. They used a background-check system designed to get drivers approved as quickly and conveniently as possible.[7]

30.     Uber hired Hirease, Inc. to do its background checks.[8] Hirease brags that it can vet drivers within 36 hours.[9] To have such a short turnaround, Uber eschewed industry standards used by other taxi companies and livery services. For example, it abandoned fingerprinting—which

---

[1] Uber, *What is the Safe Rides Fee*, (available at https://web.archive.org/web/20148420053019/http://support.uber.com/hc/en-us/articles/201950566) (last accessed Mar. 31, 2023).

[2] Mike Isaac, SUPER PUMPED: THE BATTLE FOR UBER (2019) at 136 ("The drivers, of course, got no share of the extra buck.").

[3] *Id*.

[4] *Id*.

[5] *Id*.

[6] *Id*.

[7] *Id*. at 115 ("Uber made it as easy as possible for drivers to sign up.").

[8] Mike Isaac, *Uber's System for Screening Drivers Draws Scrutiny*, NEW YORK TIMES (Dec. 9, 2014) (available at https://www.nytimes.com/2014/12/10/technology/ubers-system-for-screening-drivers-comes-under-scrutiny.html?searchResultPosition=1) (last accessed Mar. 31, 2023)

[9] *Id*.

CASE NO. 23-1630

6

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

takes weeks—and running applicant drivers against private databases, such as FBI records.[10] These shortcuts led to growth for Uber. But they put people, including Plaintiff, in danger. Indeed, Uber was so fixated on growth that it began mailing cell phones to applicant drivers, so they could begin driving, before Uber's cursory and ineffective background check was even complete.[11]

31.     Travis Kalanick made the decision that Uber was not going to fingerprint its drivers and that it was not going to scrub applicant drivers against FBI records. Rather, the decision was made to use a fast and shallow background check process.

32.     Travis Kalanick also made the decision not to interview drivers or train drivers to ensure Uber's drivers understood their responsibilities and what was appropriate and inappropriate when interacting with passengers. Mr. Kalanick decided not to implement policies to protect passengers from sexual assault—policies such a zero-tolerance policy with respect to fraternizing or making sexual advances towards passengers, and most certainly with respect to engaging in sexual activity with or sexual touching of passengers.

33.     Mr. Kalanick had actual knowledge that these decisions would put passengers in greater danger. As such, he acted with conscious disregard for the rights and safety of female passengers, including Plaintiff.

34.     Travis Kalanick intentionally performed the act of hiring drivers without fingerprinting them, without running them through the FBI databases, and using fast and shallow background checks. When he took these actions, he knew or should have known that it was highly probable that harm would result. This quick-and-dirty approach represented a deliberate choice to gamble with passenger safety.

35.     When Uber's current Chief Executive Officer, Dara Khosrowshahi, assumed that role in August 2017, he continued the policy of hiring drivers without biometric fingerprinting to

---

[10] *Id.*
[11] Isaac, Super Pumped, at 218.

CASE NO. 23-1630                                    PLAINTIFF'S ORIGINAL
                          7                         COMPLAINT AND JURY DEMAND

be run through the FBI database. This was a very intentional and deliberate decision, evidenced by Uber's active lobbying and resistance against municipalities or regulatory bodies implementing any kind of biometric fingerprinting requirement for drivers.[12]

36.     Uber's greed and complete disregard for rider safety or the rule of law is breathtaking. Uber's policy is that it will not report any criminal activity it learns of to law-enforcement authorities.[13] That includes allegations of sexual assault.[14] Thus, Uber's policy is that if it learns from an Uber rider, such as Plaintiff, that she was sexually assaulted, Uber will not report this sexual assault to law enforcement.[15] Uber is proud of this policy and feels "very strongly" that it is not Uber's job to go to the to the police on behalf of customers when an Uber driver rapes an Uber passenger.[16]

37.     Current CEO Mr. Khosrowshahi has supported this non-reporting policy. When he took the action of intentionally embracing this policy, he knew or should have known that it was highly probable that harm would result. After all, drivers will feel less constrained to commit sexual assault if they know it is less likely that law enforcement will be informed.

38.     Uber's greed, parochial focus on growth, and misogyny has had tragic consequences. In December 2014, a 26-year-old finance worker hailed an Uber to take her home

---

[12] Ellen Huet, *Uber Publicly Resists Fingerprinting But Is Quietly Testing It On Some Drivers*, FORBES (Oct. 14, 2015) (available at https://www.forbes.com/sites/ellenhuet/2015/10/14/uber-publicly-resists-fingerprinting-its-drivers-but-is-quietly-testing-it-live-scan/?sh=2bed4ac4c086) (last accessed Mar. 31, 2023). Curt Devine, et al., *Thousands of criminals were cleared to be Uber drivers. Here's how rideshare companies fought stronger checks*, CNN (June 1, 2018) (available at https://www.cnn.com/2018/06/01/us/felons-driving-for-uber-invs/index.html) (last accessed Mar. 31, 2023); Meir Rinde, *Philly parking czar wants to know who's driving your Uber, says Pa. audit doesn't go far enough*, WHYY PBS (Apr. 4, 2019) (available at https://whyy.org/articles/philly-parking-czar-wants-to-know-whos-driving-your-uber-says-pa-audit-doesnt-go-far-enough/) (last accessed Mar. 31, 2023).

[13] Greg Bensinger, *Uber Says Safety is its First Priority. Employees Aren't so Sure*, WASHINGTON POST (Oct. 1, 2019) (available at https://www.washingtonpost.com/podcasts/post-reports/uber-says-safety-is-its-first-priority-employees-arent-so-sure/) (last accessed Mar. 31, 2023).

[14] *Id*.

[15] *Id*.

[16] *Id*.

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

from a work dinner near New Delhi, India.[17] When she fell asleep in the car, her Uber driver moved to the backseat and raped her.[18] The driver had been detained previously for rape.[19] The rape caused an international imbroglio and New Delhi temporarily banned Uber.[20] Uber dealt with the situation by attacking the victim.

39.    Eric Alexander was president of Uber in the Asia–Pacific region; he was Uber's "number three" and Kalanick's fixer.[21] He secured, possibly illegally, the New Delhi rape victim's medical records through a law firm.[22] The records contained the medical examination that doctors performed within hours of her rape.[23] Alexander shared these records with Mr. Kalanick and Uber's number two at the time, Emil Michael.[24] Many other Uber executives either saw the records or learned of them.[25] Mr. Kalanick latched on to the fact that the victim's hymen was still intact.[26] (This despite two people pointing out to him that the victim could have been anally raped.[27]) He began cultivating and sharing a bizarre conspiracy that the woman was not raped; the whole incident was a plot against Uber by Olga, Uber's major ride-sharing competitor in

---

[17] Ellen Barry and Suhasini Raj, *Uber Banned in India's Capital After Rape Accusation*, NEW YORK TIMES (Dec. 8, 2014) (available at https://www.nytimes.com/2014/12/09/world/asia/new-delhi-bans-uber-after-driver-is-accused-of-rape.html?_r=0&module=inline) (last accessed Mar. 31, 2023); Isaac, SUPER PUMPED, at 149.

[18] Isaac, SUPER PUMPED, at 149.

[19] Barry and Raj, *Uber Banned in India's Capital After Rape Accusation*.

[20] *Id.*

[21] Isaac, SUPER PUMPED, at 260.

[22] Kara Swisher and Johana Bhuiyan, *A Top Uber Executive, Who Obtained the Medical Records of a Customer Who was a Rape Victim, Has Been Fired*, VOX (June 7, 2017) (available at https://www.vox.com/2017/6/7/15754316/uber-executive-india-assault-rape-medical-records) (last accessed Mar. 31, 2023).

[23] Isaac, SUPER PUMPED, at 261.

[24] Swisher and Bhulyan, *A Top Uber Executive, Who Obtained the Medical Records of a Customer Who was a Rape Victim, Has Been Fired*.

[25] *Id.*

[26] Isaac, SUPER PUMPED, at 261.

[27] *Id.* at 262.

CASE NO. 23-1630

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

India.[28] No matter that the Uber driver had a history of sexual assault and had confessed the assault to police.[29]

40.     Mr. Kalanick and Uber's leadership and board were the fountainhead of Uber's culture of reckless growth, misogyny, and lawlessness.[30] When Uber customers accused Uber drivers of sexual assault—something that happened with increasing frequency as Uber grew, given its lax supervision and shoddy background checks—Mr. Kalanick would pace around Uber headquarters, not wondering about how to improve rider safety but repeating the bromide, legally correct but a bromide nonetheless, "innocent until proven guilty."[31] When law enforcement decided not to bring criminal charges against an Uber driver accused of sexual assault because it felt it did not have enough evidence for a criminal conviction, "a round of cheers would ring out across the fifth floor of Uber HQ."[32]

41.     At a cocktail and dinner party with journalists in New York City, Mr. Michael attacked journalists who criticized Uber.[33] He was particularly angry with Sarah Lacy who had, in a recent story, accused Uber of "sexism and misogyny" and had said she was going to delete her Uber App because she feared for her safety because of Uber's drivers.[34] Mr. Michael said that if any woman deleted her Uber App because of Ms. Lacy's story and was sexually assaulted, Ms. Lacy "should be held personally responsible."[35]

---

[28] *Id*. at 261; Swisher and Bhulyan, *A Top Uber Executive, Who Obtained the Medical Records of a Customer Who was a Rape Victim, Has Been Fired*.

[29] Barry and Raj, *Uber Banned in India's Capital After Rape Accusation*.

[30] Isaac, SUPER PUMPED, at 194 ("The tone of Uber's culture was being set from the top . . . The result was a workforce that largely reflected Kalanick.

[31] *Id*. at 167.

[32] *Id*.

[33] Ben Smith, *Uber Executive Suggest Digging Up Dirt On Journalists*, BUZZFEED (Nov. 17, 2014) (available at https://www.buzzfeednews.com/article/bensmith/uber-executive-suggests-digging-up-dirt-on-journalists) (last accessed Mar. 31, 2023).

[34] *Id*.

[35] *Id*; Isaac, SUPER PUMPED, at 129.

CASE NO. 23-1630

10

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

42.     The actions of Uber's executives and board members demonstrate Uber's contempt for women and myopic focus on profits. Uber only cares about growth. This culture permeates the entire company and endangers Uber's female riders. Sarah Fowler wrote an explosive blog post, describing how pervasive this culture was at Uber.[36] Ms. Fowler was hired by Uber as a site-reliability engineer in 2016.[37] On her first day on the job, post-training, her manager sent her a message over the Uber chat system.[38] He said that he "was in an open relationship . . . and his girlfriend was having an easy time finding new partners but he wasn't. He was trying to stay out of trouble at work, he said, but he couldn't help getting in trouble, because he was looking for women to have sex with."[39] Ms. Fowler felt it "was clear that he was trying to get [her] to have sex with him, and it was so clearly out of line that [she] immediately took screenshots of [the] chat messages and reported him to" Human Resources.[40] Uber Human Resources and "upper management" told her that "even though this was clearly sexual harassment and he was propositioning [her], it was this man's first offense, and that they wouldn't feel comfortable giving him anything other than a warning and a stern talking-to."[41] Upper management told her that her manager "was a high performer," so "they wouldn't feel comfortable punishing him for what was probably just an innocent mistake on his part."[42] Upper management told Ms. Fowler that she had two choices, join a new Uber team, or stay on her team, under the manager who propositioned her, but she "would have to understand that [the manager] would most likely give [her] a poor performance review when review time came around, and

---

[36] Susan Fowler, *Reflecting on One Very, Very Strange Year at Uber*, SUSAN J. FOWLER, (Feb. 19, 2017) (available at https://www.susanjfowler.com/blog/2017/2/19/reflecting-on-one-very-strange-year-at-uber) (last accessed Mar. 31, 2023).
[37] *Id*.
[38] *Id*.
[39] *Id*.
[40] *Id*.
[41] *Id*.
[42] *Id*.

there was nothing [Human Resources] could do about that."[43] She was told that by Human

Resources that if she chose to stick with the team she was on, that a poor review by her then

manger wouldn't be retaliation because she had "been given an option."[44] Because working under

a harassing manager was untenable to Ms. Fowler, she chose to switch teams.[45] She eventually

learned, by talking to other women employees at Uber, that many of them had similar sexual-

harassment stories and that the manager who sexually harassed her had sexually harassed others

before he sexually harassed her.[46] That is, she learned that Human Resources and upper

management had been mendacious with her. "Within a few months, [the harasser] was reported

once again for inappropriate behavior, and those who reported him were told it was still his 'first

offense.' The situation was escalated as far up the chain as it could be escalated, and still nothing

was done" by Uber.[47]

      43.    With the bad press Uber was getting because of the sexual assaults, Mr. Michael's

comments, and the Sarah Fowler affair, Uber realized it needed to appear that it was making

changes and trying to eradicate its toxic-male culture, so it held a company-wide meeting to

announce changes. At the meeting, Uber announced that it was going to increase its diversity and

sensitivity by adding a female board member. Board member David Bonderman chimed in that

the addition of a woman to the board meant "it's much likelier [there will] be more talking on the

board."[48]

---

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] Mike Isaac and Susan Chira, *David Bonderman Resigns From Uber Board After Sexist Remark*, NEW YORK TIMES (June 13, 2017) (available at https://www.nytimes.com/2017/06/13/technology/uber-sexual-harassment-huffington-bonderman.html?hp=&action=click&pgtype=Homepage&clickSource=story-heading&module=inline&region=top-news&WT.nav=top-news) (last accessed Mar. 31, 2023); Isaac, SUPER PUMPED.

CASE NO. 23-1630

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

44. Uber's "culture was poisoned from the very top."[49] Indeed, John William Gurley was a longtime board member of Uber and a close confidant of Mr. Kalanick. He sat on his hands and watched silently as Uber put in place a culture and policies that have hurt many innocent women, including Plaintiff.

45. In an attempt to buff its tarnished reputation, Uber also hired former Attorney General Eric Holder and his law firm, Covington & Burling LLP, to investigate Uber's culture and work-place environment.[50]

46. During his investigation, as detailed in the publicly released "Holder Report," Attorney General Holder uncovered "a winding, repetitive list of infractions that had occurred across hundreds of global offices, including sexual assault and physical violence."[51]

47. As Uber's sexual-assault and harassment problems publicly ballooned, it made pale and perfunctory attempts to act as though it is trying to confront them. In May 2018, Uber acknowledged the "deeply rooted problem" of sexual assault and proclaimed it was committed to solving the problem, stating that "we're making some important changes today."[52] Included in these "important changes" was Uber's promise to publish a "safety transparency report that will include data on sexual assaults . . . that occur on the Uber platform."[53] Uber explained its commitment to publishing such data because "transparency fosters accountability." Uber further explained that "sexual predators often look for a dark corner" and announced to the world that "we [Uber] need to turn the lights on."

---

[49] Isaac, SUPER PUMPED, at 280.

[50] Covington & Burling, LLP, *Covington Recommendations* (available at https://www.documentcloud.org/documents/3863793-Uber-Covington-Recommendations.html) (last accessed Mar. 31, 2023)

[51] Isaac, SUPER PUMPED, at 271.

[52] Troy West, *Turning the Lights On*, Uber Newsroom (May 15, 2018) (available at https://www.uber.com/newsroom/turning-the-lights-on/) (last accessed Mar. 31, 2023).

[53] *Id.*

CASE NO. 23-1630

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

13

48. Despite these promises, Uber persisted in darkness and did not release any data on sexual assaults for another year and a half.

49. When Uber finally released a report in December 2019, it was forced to acknowledge that there were 5,981 sexual assaults in the United States during Uber trips recorded in 2017 and 2018.[54]

50. Uber did not release a second safety report for more than two years.

51. On December 2, 2021, the California Public Utilities Commission approved a settlement agreement with Uber on reporting of data on sexual harassment and assault in which Uber agreed to pay $9 million and provide information on sexual assault and harassment to the CPUC on a going-forward basis.[55]

52. It was another six months after Uber agreed to provide these data to the CPUC before Uber publicly released another safety report per its commitment in May 2018. In July 2022, it released a report covering 2019 and 2020 (a year when its ridership was decimated by the pandemic) stating it received 3,824 sexual-assault reports for that time period.[56]

53. Uber's own data confirm that sexual assaults by Uber drivers continue to occur at an unacceptable rate.

---

[54] Uber, US Safety Report 2017–18 (available at https://www.uber-assets.com/image/upload/v1575580686/Documents/Safety/UberUSSafetyReport_201718_FullReport.pdf?uclick_id=f2f17920-a01a-4c4a-b1a2-abd1e253f24a) (last accessed Mar. 31, 2023).

[55] CPUC Press Release (Dec. 2, 2021) (available at https://www.cpuc.ca.gov/news-and-updates/all-news/cpuc-approves-9-million-settlement-with-uber) (last accessed Mar. 31, 2023); see also *Order Instituting Rulemaking on Regulations Relating to Passenger Carriers, Ridesharing, and New Online-Enabled Transportation Services* (available at) https://docs.cpuc.ca.gov/PublishedDocs/Published/G000/M427/K636/427636880.PDF ) (last accessed Mar. 31, 2023).

[56] Uber, US Safety Report 2019–20 (available at https://uber.app.box.com/s/vkx4zgwy6sxx2t2618520xt35rix022h?uclick_id=f2f17920-a01a-4c4a-b1a2-abd1e253f24a) (last accessed Mar. 31, 2023).

CASE NO. 23-1630

PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

54. Uber has not released any sexual-assault data for 2021 or 2022. Uber's decision to withhold that data prevents Uber passengers and the public from understanding the true rate at which such assaults continue to occur each day.

55. Uber became aware of its sexual-assault problem long before it released the Holder report. Uber's operations team "dealt with thousands of misconduct cases every year, including instances of sexual assault."[57]

56. Uber "had so lowered the bar to become a driver that people who might have been prevented from driving in the official taxi industry could easily join Uber."[58]

57. As described earlier, these decisions to lower the bar were made by Travis Kalanick and other officers, directors, and managing agents.

58. But it was not that Uber simply lowered the bar. It failed to take adequate steps to make its rides safe; it failed to provide everything necessary for safe transportation of its passengers. For example, Uber failed to install video cameras in the cars. Such a step would have chilled the wantonness of potential predators. It failed to provide an option in the Uber App that allowed female riders to select to be driven by female drivers. And it failed to adopt adequate training of its drivers on issues of sexual assault and sexual harassment. That is, it failed to provide adequately trained drivers. These policies to fail to make its rides safe were put in place by Mr. Kalanick and other officers, directors, and managing agents of Uber.

59. Mr. Kalanick's successor, Mr. Khosrowshahi, continued the policy of not requiring third-party-operated cameras in Uber vehicles.

60. Mr. Kalanick, Mr. Khosrowshahi, and other officers, directors, and managing agents of Uber knew that if they put cameras in cars, fewer sexual assaults would occur during Uber rides. They knew that if they provided an option that would allow female passengers to

---

[57] Isaac, SUPER PUMPED, at 166.
[58] Id. at 177.

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

choose to be driven by female drivers, fewer sexual assaults would occur during Uber rides. They knew that if they better trained their drivers in sexual-assault prevention, fewer sexual assaults would occur during Uber rides. They intentionally refused to put these safety policies in place with actual and constructive knowledge that declining to implement such policies made it highly probable that harm to female Uber passengers would result.

61.     Uber's response to the driver sexual assaults that were reported to the company also evidenced the conscious disregard of Uber executives, including Mr. Kalanick and Mr. Khosrowshahi. A 2019 Washington Post investigative piece revealed Uber maintained a three-strikes policy for its drivers.[59] Investigators hired by Uber to investigate the more serious passenger complaints about drivers—such as drug use, physical violence, and sexual assault—reported: "A driver would only be deactivated under three circumstances: 1) if it was the second or third reported offense; 2) if there is corroborative evidence like video or a police report; 3) if the driver admits to the assault."[60]

62.     Even with a three-strikes policy, Uber executives would make exceptions to keep dangerous drivers on the road. "For instance, a New York-area driver allegedly made three separate sexual advances on riders, said an investigator assigned to the case. After an executive overruled the investigator, the driver was allowed to continue working until a fourth incident, when a rider claimed he raped her."[61]

63.     As Uber became more popular, more people realized Uber had so lowered the bar that people with checkered backgrounds could drive for Uber. People also realized that Uber had

---

[59] Greg Bensinger, *When rides go wrong: How Uber's investigation unit works to limit the company's liability*, WASHINGTON POST (Sept. 26, 2019) (available at https://www.washingtonpost.com/technology/2019/09/25/ubers-investigations-unit-finds-what-went-wrong-rides-its-never-companys-fault/) (last accessed Mar. 31, 2023).
[60] *Id.*
[61] *Id.*

CASE NO. 23-1630

16

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

not provided everything necessary for safe rides, that is, everything that might make it more difficult to get away with sexual assaults, like video cameras in cars. In addition, they recognized Uber was at the same time marketing itself to women as a safe mode of transportation, including after drinking. Because of these factors, Uber became a magnet for sexual predators—men who knew that driving for Uber meant they would get to drive intoxicated women late at night. These men started sexually assaulting women at alarming rates, as the Holder Report shows. And, as stated earlier, Uber and its officers, directors, and managing agents—including Mr. Kalanick— had actual knowledge that these sexual assaults were going on, on the platform and women were being hurt. But they did nothing. They failed to start screening drivers better and failed to place video cameras in cars. They intentionally refused to implement these safety measures despite actual knowledge of the problem, and these officers, directors, and managing agents—including Mr. Kalanick—had actual or constructive knowledge that refusing to do so meant there was a high probability that more female passengers would be harmed, which—foreseeably—is what happened to Plaintiff.

## THE ATTACK ON PLAINTIFF

64.    This suit arises from the serious harm Plaintiff suffered as a result of the wrongful acts and omissions of Defendants.

65.    On March 9th, 2022, Plaintiff called an Uber to take her to meet with some friends in Springfield, Illinois.

66.    As they were leaving her neighborhood the driver asked Plaintiff to sit in the front seat and give him a high rating and tip.

67.    In order to avoid conflict, Plaintiff moved to the front seat and rated the Uber driver. The Uber driver then repeatedly told Plaintiff that she was "beautiful" and attempted to hold her hand. The Uber driver began talking about his vape shop and that he was very successful.

Rather than taking Plaintiff to her destination the driver insisted they go to his vape shop "Cloud 9 Vape and Tobacco."

68.     The Uber driver pulled into the parking lot of the vape shop and insisted they wait until the employee left so he could show Plaintiff around.  In the parking lot of the vape shop, the Uber driver touched Plaintiff's legs. Plaintiff declined all advances the Uber driver made and insisted he take her to her destination.

69.     The Uber driver eventually left the parking lot and drove Plaintiff to a secluded road nearby. At this location, the Uber driver penetrated Plaintiff with his fingers and then forced Plaintiff to perform oral sex.  The Uber driver told Plaintiff that he wanted to marry her and wanted Plaintiff to have his children. Plaintiff was afraid and thought if she jumped out, the Uber driver would hurt her. Plaintiff figured if she "played nice" the Uber driver would let her out of the vehicle.

70.     The Uber driver eventually let Plaintiff out of the vehicle, and Plaintiff called another Uber to take her home.

71.     Plaintiff reported the incident to Uber. Plaintiff no longer feels safe using Uber for transportation.

72.     As a result of the incident, Plaintiff has experienced flashbacks, panic attacks, and symptoms of depression. This unwanted and inappropriate behavior by the Uber driver humiliated, violated, and robbed Plaintiff of her dignity and personal safety.

73.     By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the safety of its passengers, including Plaintiff, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

74. The Uber driver who assaulted Plaintiff perpetrated the above-described assault, harassment, and/or attack in the course and scope of his employment with Uber and while under Uber's direction and control. These acts caused Plaintiff pain and suffering that persists to this day.

75. The Uber driver who assaulted Plaintiff was acting on behalf of, for the benefit of, at the direction of, and within the course and scope of employment with Uber and engagement by Uber. Uber provided the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below.

76. The Uber driver who assaulted Plaintiff was an agent or employee of Uber, which is a common carrier. His duties were directed at the comfort and protection of passengers in his vehicle, including Plaintiff.

77. Uber derived a monetary benefit from every ride assigned to said Uber driver through its Uber App, including Plaintiff's ride during which she was harassed, battered, and/or assaulted.

**Uber Misled Plaintiff And The Public Into Believing It Was Addressing The Deeply Rooted Issue Of Sexual Assault On Its Platform In Violation Of Its Statutory And Common-Law Duties.**

78. Uber is a transportation company. Its core business is providing transportation to the public at large through its network of drivers. It connects its drivers to the public through the Uber App. Anyone from the public may download the Uber App for free. Using the app, a customer may request a ride from one of Uber's drivers for a standardized charge unilaterally set by Uber. Uber directs its drivers to pick up the passengers and transport them to their destinations.

79. Uber provides transportation through a digital application made available to the general public for the purpose of transporting its users—the passengers—from place to place for

CASE NO. 23-1630

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

profit. Uber has widely offered its services to the general public and charges standard fees for its services through its application. Uber represents that it does not allow discrimination against passengers on the basis of race, color, national origin, religion, gender, gender identity, physical or mental disability, medical condition, marital status, age, or sexual orientation. Any member of the public can use Uber's services for transportation.

80.     Uber is a common carrier under California Civil Code §2168 and the common law.[62] Uber holds itself out to the public generally and indifferently to transport persons from place to place for profit. As a common carrier, Uber owes its passengers, including the Plaintiff named herein, a heightened duty of care. Uber has an affirmative duty to protect its passengers from assault by one of its employees or contractors and is liable for its employees' or agents' assaults, regardless of whether such acts were committed within the course and scope of employment for Uber.

81.     Given the heightened duty Uber has as a common carrier, to the extent it failed or refused to implement procedures, policies, and app functions that it knew or should have known would prevent assaults such as those suffered by Plaintiff, as Plaintiff has alleged, Uber is liable for the above-described tortious acts of its driver, which harmed Plaintiff.

82.     Further, the heightened duty Uber has as a common carrier a non-delegable duty. Under the common law, Uber has a non-delegable duty to safely transport its passengers from the place it picks them up to their destination. This duty cannot be delegated to Uber drivers. When an Uber driver assaults a passenger, Uber is liable for the driver's actions due to its non-delegable duty.

---

[62] *See, e.g., Doe v. Uber Techs., Inc.*, 184 F. Supp.3d 774, 787 (N.D. Cal. 2016) ("Plaintiff's allegations support the claim that Uber 'offers to the public to carry persons,' thereby bringing it within California's definition of common carrier for tort purposes.")

CASE NO. 23-1630                                    PLAINTIFF'S ORIGINAL
                                   20              COMPLAINT AND JURY DEMAND

83. Uber drivers are largely nonprofessional, untrained, and use their own vehicles. Uber employs and engages its drivers, including the driver who assaulted Plaintiff, in traditional at-will relationships, in which:

a. Uber has discretion to fire its drivers for any reason and at any time; that is, Uber maintains the right to discharge its drivers at will, and without cause;

b. Drivers are not charged a fee by Uber to apply to become employees;

c. At all times relevant, there was no agreement between Uber and the driver designating the driver as an independent contractor;

d. Drivers are not charged a fee to download the app or to receive notifications from Uber that customers want rides;

e. Fare prices for rides are set exclusively by Uber;

f. Drivers have no input on fares charged to consumers;

g. Drivers are not permitted to negotiate with consumers on fares charged;

h. Drivers do not know what riders are charged for a given ride;

i. Uber can and does modify charges to consumers; for example, if Uber determines that a driver has taken a circuitous route to a destination;

j. Uber takes a fee of every ride charged to a consumer;

k. Uber retains control over customer-contact information;

l. Uber controls its drivers' contacts with its consumer base and considers its consumer list to be proprietary information.

m. In some instances, Uber controls the hours a driver works;

n. Drivers are not permitted to answer passenger inquiries about booking future rides outside of the Uber App;

o. Driving for Uber is not a specialized skill;

CASE NO. 23-1630

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

p.      Uber's business model depends on having a large pool of non-professional drivers;

q.      Drivers must abide by a list of regulations to drive for Uber;

r.      Uber requires its drivers to pick up Uber customers on the correct side of the street;

s.      Uber forbids its drivers from talking on their cell phones while driving customers;

t.      Uber tracks drivers' speed and braking and sends drivers reports based on how many times the driver had to brake hard;

u.      Uber drivers are not allowed to ask Uber customers for their contact information;

v.      Drivers who reject ride requests risk discipline, including suspension or termination from the platform;

w.      Consumers give feedback on rides they have taken and rate drivers on a scale from one star to five stars. These ratings are used by Uber to discipline and terminate drivers; and

x.      Such other acts of control that discovery will show.

84.      Uber actively markets itself as a safe company that provides safe rides. Both before 2014 and after, Uber actively and aggressively marketed the supposed safety of its transportation services. These efforts continue to this day, and include email messages sent to every Uber customer, including Plaintiff.

85.      Over the years, Uber has launched marketing campaigns specifically marketing its transportation services to, among others, young women too intoxicated to drive.

86.      Uber represented to its customers, including Plaintiff, on its website all of the following:

a.      "How we help keep you safe—We're committed to helping you get where you want to go with confidence, whether it's building emergency features in the app or making it easy for you to check your ride."

CASE NO. 23-1630                          PLAINTIFF'S ORIGINAL
                                          COMPLAINT AND JURY DEMAND
                          22

b. "Ride with confidence—The Uber experience was built with safety in mind. Through incident prevention tools, insurance coverage, and technology that keeps you connected, we're dedicated to helping you move safely and focus on what matters most."

c. "Ride with confidence—Designing a safer ride—driver screenings—All potential drivers in the US must complete a screening before becoming an Uber driver-partner, and current drivers continue to be vetted for criminal offenses."

d. "Ride with confidence—Designing a safer ride—On every trip, you can tap a button for safety tools and get help whenever you need it."

e. "Ride with confidence—Designing a safer ride—An inclusive community—Through our joint efforts with cities and safety experts and by working together, we're helping to create safe journeys for everyone."

f. "Our commitment to safety—You deserve to be able to move safely. To look forward to the opportunities ahead. To be connected to people and places that matter most. Which is why we're focused on your safety, from setting new standards to developing technology with the goal of reducing incidents."

g. "How safety is built into your experience—Safety features in the app—Tap a button for emergency assistance. Share your trip details with loved ones. Our technology helps put peace of mind at your fingertips."

h. "How safety is built into your experience—An inclusive community—Millions of riders and drivers share a set of Community Guidelines, holding each other accountable to do the right thing."

i. "How safety is built into your experience—Coverage on every trip—We've put insurance from leading companies in place for every ride."

CASE NO. 23-1630

23

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

j.    "Building safer journeys for everyone—Rider safety—Uber driver-partners in the US go through a multi-point screening check for their driving and criminal history before they are authorized to take trips through the app. Every rider has access to safety features built into the app and a support team if you need them."

k.    "The future of safety—More than 200 Uber employees, from researchers and scientists to designers and engineers, are focused on building technology that puts safety at the heart of your experience."

l.    "Safe rides around the clock—Affordable, reliable transportation can help make roads safer. Need a late-night ride and can't drive yourself? Request a ride with Uber."

87.    Uber actively and publicly markets its transportation services to be safe and reliable services.

88.    Uber actively and publicly markets its transportation services to be safe and reliable during late-night hours.

89.    Uber has cultivated an image among its customers of safety and superiority to public transportation and traditional taxis. Because of aggressive marketing, most Uber customers are generally unaware of the real risks associated with Uber rides and continue to believe a ride with Uber is a safer and better alternative.

90.    In 2016, Uber agreed to pay $28.5 million to settle a class-action lawsuit over its fraudulent marketing of its security screening as "industry-leading."

91.    Riders, including Plaintiff, reasonably rely on Uber's representations and promises regarding safety and security measures. Riders, including Plaintiff, choose to ride with Uber as a result of this reliance.

CASE NO. 23-1630

24

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

92.     Uber markets its ride hailing service to female riders as a safer alternative to traditional taxis.

93.     On a "Women's Safety" page on its website, Uber advertised that it was "driving change for women's safety," specifically representing that "[s]exual assault and gender-based violence don't belong anywhere in our communities, which is why Uber is committed to help stop incidents before they happen" and touting its "safety features and education" and "transparency."[63] Through such representations, Uber encourages women like Plaintiff to trust its services to secure safe transportation.

94.     In 2015, Uber released a report with Mothers Against Drunk Driving "MADD" that states "The Uber App was created to ensure reliable access to safe rides." The report states that with Uber, intoxicated persons can find "a safe, reliable ride home" that is "always within reach."[64] The report further represents that "Uber is a better late[-]night option" and reports that "93% of people would recommend Uber to a friend if they have been drinking. Not only would people take Uber themselves—they would trust Uber to take their drunk friend home safely."[65]

95.     The safe image that Uber aggressively cultivates suggests to customers, including Plaintiff, that riding while intoxicated with Uber is safe. Uber does not inform riders, like Plaintiff, that hailing a ride after drinking puts riders in peril from the drivers themselves. By marketing heavily to young women who have been drinking, and promising safe rides, Uber puts riders in peril.

---

[63] Uber, Women's Safety (available at https://www.uber.com/us/en/safety/womens-safety/) (last accessed Mar. 31, 2023).
[64] Uber and MADD Report, "More Options. Shifting Mindsets. Driving Better Choices" (Jan. 2015) (available at http://newsroom.uber.com/wp-content/uploads/madd/uber_DUI_Report_WIP_12.12.pdf) (last accessed Mar. 31, 2023).
[65] *Id*. at 2 and 3.

CASE NO. 23-1630

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

96.     Uber knew its representations and promises about rider safety were false and misleading yet continued to allow riders to believe in the truth of these representations and promises and continued to profit from riders' reliance on those representations and promises.

97.     Unfortunately, an Uber driver sexually assaulting a passenger is not an isolated or rare occurrence. The safety report referenced above that Uber released in December 2019 showed there were thousands of sexual assaults during Uber rides in 2018 alone.[66] Tony West, Uber's Chief Legal Officer, said in response to that report, the "numbers are jarring and hard to digest."[67]

98.     Uber employs a vast network of drivers. But, at all relevant times, Uber provided its drivers with inadequate training regarding sexual assault, sexual relations, sexually inappropriate behavior, sensitivity, and customer relations.

99.     Uber has also provided inadequate background checks and screening of its drivers. Among other things, it does not fingerprint its drivers (unless forced to do so by state or local laws), it does not run the applicant drivers against all available public databases, and it does not do international background checks (despite its global presence).

100.    Uber lobbies state and local governments to limit what is required of Uber with respect to driver background checks. Uber also lobbies local government entities to continue allowing Uber to perform its own background checks of its driver applicants, rather than municipalities performing the more stringent and reliable screening they conduct for traditional taxi drivers.

101.    Uber has successfully persuaded lawmakers in several states to keep background-check requirements for its drivers limited.

---

[66] Kate Conger, *Uber says 3,045 sexual assaults were reported in U.S. rides last year*, NEW YORK TIMES (Dec. 5, 2019) (available at https://www.nytimes.com/2019/12/05/technology/uber-sexual-assaults-murders-deaths-safety.html) (last accessed Mar. 31, 2023).
[67] *Id.*

CASE NO. 23-1630

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

102.    As a direct result of Uber's lobbying efforts, those entities largely self-enforce hiring standards for their drivers. In cities where municipalities perform the screening, such as in Houston, Texas and Seattle Washington, hundreds of driver applicants Uber approved are ultimately rejected by the municipality.

103.    Even where authorized to do so, Uber generally does not perform driver background checks and instead outsources the checks to a third-party vendor that often limits the extent of its background check and that does not verify the information provided by the applicant is accurate or complete. The turnaround time for an Uber background check is often under 36 hours. The application process to become an Uber driver is simple, fast, and designed to allow the company to hire as many drivers as possible while incurring minimal associated costs. Uber fought for and implemented a less robust hiring process knowing it would be at the expense of passenger safety.

104.    Although Uber claims its drivers are not employees, Uber engages its drivers as part of its business and the Uber drivers are charged with the responsibility of safely transporting Uber passengers to their destination.

### DELAYED DISCOVERY AND FRAUDULENT CONCEALMENT

105.    The discovery rule applies to toll the running of the statute of limitations until Plaintiff knew, or through the exercise of reasonable care and diligence, should have known of the existence of her claim against Uber.

106.    Plaintiff was not aware of the foreseeability of the assault she endured because Uber intentionally concealed the fact that Uber drivers had been regularly physically and/or sexually assaulting women since at least 2014 and instead represented that Uber was a safe mode of transportation.

107.    A reasonable investigation by Plaintiff at the time of her assault would not have revealed the factual basis of her claims against Uber. This is because Uber, through marketing

and more, took actions to conceal that its drivers regularly and frequently assaulted women. This is also because Uber has publicly claimed that it does not control its drivers and that its drivers are not Uber employees. As such, despite reasonable diligence, Plaintiff was unable to discover Uber's negligent or wrongful conduct, which brought about or contributed to bringing about the assault she suffered.

108.    Furthermore, the running of any statute of limitations has been equitably tolled by reason of Uber's intentional representations and fraudulent concealment and conduct.

109.    Through its affirmative misrepresentations and omissions, Uber actively concealed from Plaintiff the true risks associated with using the Uber App and riding in an Uber, specifically, the risk of being assaulted, battered, harassed, and/or otherwise attacked.

110.    As a result of Uber's actions, Plaintiff was unaware, and could not reasonably know or have learned through reasonable diligence that Uber could be held liable for the risks its drivers posed and that those risks were the direct and proximate result of Uber's acts and omissions.

111.    Plaintiff did not learn of Uber's negligent or wrongful actions and omissions in bringing about the assault until after she saw advertisements for legal help.

112.    Furthermore, Uber is estopped from relying on any statute of limitations because of its concealment of the truth about its failure to adequately employ measures to ensure the safety of its passengers. Uber had a duty to disclose the true character, quality, and nature of its background checks and the incidence of Uber drivers sexually assaulting or otherwise attacking passengers, because this was non-public information over which Defendants had, and continue to have, exclusive control, and because Defendants knew this information was not available to Plaintiff, Uber passengers/customers, and/or the general public.

## CLAIM 1: GENERAL NEGLIGENCE

113.    Plaintiff incorporates all prior allegations.

CASE NO. 23-1630

28

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

114. By providing transportation to the general public using its application and network of drivers, Uber owed a duty to act with due and reasonable care towards the public and in particular its own passengers, including Plaintiff.

115. Uber has been on notice that its drivers have been sexually harassing, sexually assaulting, and raping its passengers since at least 2014. Uber was aware or should have been aware that some Uber drivers would continue to sexually assault, stalk, harass, kidnap, physically assault, rape, and/or otherwise attack their vulnerable Uber patrons and passengers.

116. Since learning of the sexual assaults perpetrated by its drivers, Uber never adapted or improved its safety procedures in any meaningful way.

117. Uber does not require video monitoring of its drivers that cannot be turned off, nor does it provide emergency notification to law-enforcement authorities when a driver drastically veers off course from the passenger's destination, abruptly cancels the ride, or ends the ride at the intended destination but GPS data indicates the passenger remains in the car for a significant period of time.

118. At all times relevant, Uber was well aware of the dangers its drivers posed, yet it still induced, and continues to induce, the public, including Plaintiff, to rely on Uber as a safe means of transportation. In doing so, Uber failed to warn passengers, including Plaintiff, of the possibility of being assaulted, battered, harassed, and/or otherwise attacked by an Uber driver.

119. At the time Plaintiff was assaulted, Uber did not require sexual harassment/assault training for its drivers, nor did it have any policies in place for immediate termination if a driver engages in sexual misconduct.

120. Uber does not cooperate with the police when a driver commits an illegal sexual attack on its passengers. Despite having the express right to disclose driver information at Uber's sole discretion, Uber requires that extensive standards be met before the company will even

consider law enforcement requests for information. Even after a report of sexual assault has been made, Uber generally requires a subpoena before it will release information. Uber's policy of noncooperation discourages police agencies from making recommendations to local prosecutors to file complaints against Uber drivers and provides Uber's predatory drivers with tacit assurance that their illegal attacks will not be detected by law enforcement.

121. When hiring new drivers, Uber does not verify driver identities with biometric background checks. Uber does not correct for false negatives created by its name-based screening procedures. Uber does not provide industry-standard background checks that would provide the most comprehensive means of screening applicant drivers. Uber does not invest in continuous monitoring of its drivers and is not immediately alerted when one of its drivers is implicated in criminal acts.

122. Uber does not have a consistent, reliable system for addressing passenger reports of sexual assault by its drivers and continues to let dangerous predators drive for and earn money for Uber.

123. For the above reasons and others, Uber breached its duty of reasonable care to Plaintiff.

124. As a legal and direct result of Uber's actions and omissions, Plaintiff was assaulted, battered, harassed, and/or otherwise attacked by an Uber driver, which humiliated, degraded, violated, and robbed Plaintiff of her dignity and personal safety. The assault on Plaintiff caused her to suffer psychological and physical harm from which she may never fully recover.

125. As a direct and proximate result of Defendants' general negligence, Plaintiff suffered economic and non-economic damages.

CASE NO. 23-1630

30

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

126. Plaintiff will seek actual and punitive damages based on Defendants' above-described actions, which evidence wanton and reckless disregard for the safety of passengers like Plaintiff.

## CLAIM 2: NEGLIGENT HIRING, RETENTION, AND SUPERVISION

127. Plaintiff incorporates all prior allegations.

128. Uber engaged and retained or otherwise employed the Uber driver who assaulted, harassed, and/or otherwise attacked Plaintiff as described above.

129. Uber did not interview, check the references of, provide training to, or advise the Uber driver of any anti-sexual assault policies when hiring him. Uber had no reasonable basis for believing Uber drivers in general were fit to drive vulnerable women around, particularly at night, and failed to use reasonable care in determining whether the driver in question was fit for the task. Uber should have known of the unfitness of the Uber driver involved in the assault on Plaintiff but failed to use reasonable care to discover his unfitness and incompetence.

130. Despite failing to reasonably endeavor to investigate the incompetence of Uber drivers, including the one who harmed Plaintiff, for transporting vulnerable and/or intoxicated women in a moving vehicle, Uber hired said driver to do exactly that.

131. Uber knew or should have known that assigning the task of transporting vulnerable passengers to an inadequately screened driver created an unreasonable risk of harm to Uber's passengers, including Plaintiff, particularly when Uber had been on notice of the string of sexual assaults committed by Uber's drivers.

132. Uber failed to employ measures to adequately supervise its drivers.

133. Uber failed to adequately record, investigate, and respond to passenger reports of unsafe conduct such as sexual harassment and sexual assault by Uber drivers.

134.    Uber was negligent in failing to terminate drivers it knew or reasonably should have known were a threat to passengers, including but not limited to Plaintiff and other vulnerable female passengers traveling alone.

135.    The Uber driver who assaulted Plaintiff was, and/or became, unfit to perform the work for which he was hired as he improperly and illegally took advantage of Plaintiff when she attempted to use the service for a safe ride to her destinations, which caused her psychological and/or physical harm.

136.    Because of the Uber driver's unfitness to perform the task of transporting Plaintiff, Plaintiff was assaulted, harassed, battered, and/or otherwise attacked, which humiliated, degraded, violated, and robbed Plaintiff of her dignity and personal safety.

137.    Uber's negligence in hiring, retaining, and or supervising Uber drivers, including the driver who harmed Plaintiff, caused Plaintiff to be assaulted, battered, harassed, and/or otherwise attacked by the Uber driver, which humiliated, degraded, violated, and robbed Plaintiff of her dignity and personal safety. The depraved attack on Plaintiff caused Plaintiff to suffer physical and/or psychological harm from which she may never fully recover.

138.    As a direct and proximate result of Defendants' negligent supervision, hiring, and retention of Uber drivers, including the driver who harmed Plaintiff, Plaintiff suffered economic and non-economic damages.

139.    Plaintiff will seek actual and punitive damages based on Defendants' above-described actions, which evidence wanton and reckless disregard for the safety of passengers like Plaintiff.

### CLAIM 3: COMMON-CARRIER NEGLIGENCE

140.    Plaintiff incorporates all prior allegations.

141.    At the time Plaintiff was sexually assaulted, Uber was a common carrier as it provided transportation to the general public.

CASE NO. 23-1630

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

142.    Uber provides transportation through a digital application made available to the general public for the purpose of transporting its users, the passengers, from place to place for profit. Uber has widely offered its services to the general public and charges standard fees for its services through its application. Uber represents that it does not allow discrimination against passengers on the basis of race, color, national origin, religion, gender, gender identity, physical or mental disability, medical condition, marital status, age, or sexual orientation. Any member of the public can use Uber's services for transportation.

143.    As a common carrier, Uber must carry its passengers, including Plaintiff, safely.

144.    Uber has a duty to employ the utmost degree of care and diligence that would be expected of a very cautious company. Uber has a duty to do all that human care, vigilance, and foresight reasonably can do under the circumstances to avoid harm to passengers, including Plaintiff.

145.    Uber must use reasonable skill to provide everything necessary for safe transportation, in view of the transportation used and the practical operation of the business.

146.    Despite complaints to Uber of physical and/or sexual assaults committed by Uber drivers and lawsuits against Uber for physical and/or sexual assault, to this day Uber has failed to implement safety precautions that would adequately address its assault problem.

147.    Uber does not provide a consistent and reliable way for passengers to report physical and/or sexual abuse.

148.    Uber does not warn passengers of the dangers of riding with Uber and fails to warn passengers of past complaints regarding Uber drivers.

149.    Uber does not have an effective program in place to deal with the sexual-predator crisis posed by some of its drivers.

CASE NO. 23-1630

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

150.     Uber knows its female passengers are in a uniquely vulnerable situation enclosed in a moving vehicle and that a subset of its drivers are sexual predators.

151.     Uber has not exercised reasonable care to protect its passengers from harassment and assault by Uber's drivers.

152.     Uber has not exercised the utmost degree of care in order to protect its passengers from the danger posed by sexual predators who drive for Uber. If Uber had used the highest degree of care, Uber could have prevented or dramatically reduced the likelihood of the physical and/or sexual assault of its passengers, including Plaintiff.

153.     Uber failed to safely transport Plaintiff.

154.     Uber failed to use the utmost care and vigilance to protect Plaintiff from its own driver who assaulted, harassed, and/or otherwise attacked Plaintiff while she was being transported by Uber.

155.     Uber failed to take reasonable precautions to protect its vulnerable female passengers, including Plaintiff, from the foreseeable and known risk of assault and/or harassment by its drivers. If Uber had used the highest degree of care, Uber could have prevented or reduced the likelihood of the sexual assault of its passengers, including Plaintiff.

156.     As a legal and proximate result of Uber's actions and omissions of Uber, Plaintiff was assaulted, battered, harassed, and/or otherwise attacked by the Uber driver, which humiliated, degraded, violated, and robbed Plaintiff of her dignity and personal safety. The depraved attack on Plaintiff caused Plaintiff to suffer physical and/or psychological harm from which she may never fully recover.

157.     As a direct and proximate result of Uber's negligence as a common carrier, Plaintiff suffered economic and non-economic damages.

158.     Plaintiff will seek actual and punitive damages based on Defendants' above-described actions, which evidence wanton and reckless disregard for the safety of passengers like Plaintiff.

### CLAIM 4: NEGLIGENT FAILURE TO WARN

159.     Plaintiff incorporates all prior allegations.

160.     Uber's conduct created a risk of physical or emotional harm to its passengers, including Plaintiff.

161.     In operating its business, Uber knew and had reason to know that its passengers were at risk of sexual assault and abuse by Uber's drivers since at least 2014. Since then, Uber has received frequent passenger complaints about driver misbehavior, has been notified of police investigations of drivers' criminal conduct while acting in their capacity as Uber drivers, and has been the subject of numerous civil suits alleging the sexual harassment and assault of Uber's passengers by Uber's drivers.

162.     Despite the knowledge of the danger its enterprise created, Uber prioritized profits over passenger safety and did not alert its passengers, including Plaintiff, to the risk of physical and/or sexual assault by Uber drivers. In fact, Uber continued to market itself as a service that provides "safe" rides, even to unaccompanied and/or intoxicated passengers, knowing sufficient measures had not been employed to keep passengers safe from being physically and/or sexually assaulted.

163.     Uber itself represented to its passengers that riding with Uber is safe, implying it is free of risk from physical and/or sexual assault.

164.     Uber did not warn that its criminal background checks of Uber drivers were limited, nor did it warn that it sometimes allows drivers to continue driving for Uber even after a passenger reports to Uber that she was physically and/or sexually assaulted.

165. Uber had reason to know that passengers would be unaware of the risk of physical and/or sexual assault by Uber drivers.

166. A warning to its passengers that they were at risk of physical and/or sexual assault by Uber drivers would have reduced the risk of harm to passengers, including Plaintiff, who could have arranged for alternative transportation or taken additional safety precautions and avoided the assaults they suffered at the hands of Uber drivers.

167. Plaintiff would not have ridden alone in an Uber had Uber provided an adequate warning regarding the risk of being assaulted, battered, harassed, and/or otherwise attacked by an Uber driver.

168. As a legal and proximate result of Uber's actions and omissions, Plaintiff was assaulted, harassed, and/or otherwise attacked by the Uber driver, which humiliated, degraded, violated, and robbed Plaintiff of her dignity and personal safety. The depraved attack on Plaintiff caused Plaintiff to suffer physical and/or psychological harm from which she may never fully recover.

169. As a direct and proximate result of Defendants' negligent failure to warn, Plaintiff suffered economic and non-economic damages.

170. Plaintiff will seek actual and punitive damages based on Defendants' above-described actions, which evidence wanton and reckless disregard for the safety of passengers like Plaintiff.

**CLAIM 5: INTENTIONAL MISREPRESENTATION**

171. Plaintiff incorporates all prior allegations.

172. At the time Plaintiff was assaulted, battered, harassed, and/or otherwise attacked, she had downloaded the Uber App and had an account with Uber.

173. Uber represented to Plaintiff and the general public that safety was Uber's top priority, and it was Uber's goal to make every ride safe, comfortable, and reliable. At the same

time, Uber already knew that a number of its drivers had preyed on vulnerable female passengers by sexually molesting, assaulting, harassing, and/or raping them.

174.    Uber made intentional misrepresentations of fact to all users of the Uber App, including Plaintiff, that were known by Uber to be false including the false statements Uber made, stating it would provide Plaintiff with a safe ride to her destination.

175.    These representations regarding safety were made to Uber customers, including Plaintiff, through periodic emails Uber sent to its customers, social-media advertisements, and Uber's own website and app. Plaintiff relied upon several advertisements and statements where Uber proclaimed it would provide a safe ride. Plaintiff read Uber's self-promoting statements regarding safety both before and after Plaintiff was assaulted, harassed, battered, and/or otherwise attacked by the Uber driver.

176.    Prioritizing profits over passenger safety, Uber made these intentional misrepresentations of material fact to induce women, including Plaintiff, to use Uber's services.

177.    Uber made these representations to Plaintiff and the general public despite knowing it had chosen not to take the measures necessary to provide a safe ride to her intended destination and, as a result, continued physical and/or sexual assault of its passengers by its drivers was a foreseeable occurrence.

178.    Uber made these representations to induce women, like Plaintiff, to use Uber's services and to derive profit from women like Plaintiff.

179.    In ordering and entering an Uber vehicle, Plaintiff reasonably relied on Uber's representations that it would get her safely to her destination.

180.    In trusting and relying on Uber's representations, Plaintiff was placed in a uniquely vulnerable position that was taken advantage of by the Uber driver who assaulted, harassed, and/or otherwise attacked Plaintiff.

CASE NO. 23-1630                                    PLAINTIFF'S ORIGINAL
                          37              COMPLAINT AND JURY DEMAND

181.    As a direct and proximate result of Uber's intentional misrepresentations, Plaintiff was assaulted, battered, harassed, and/or otherwise attacked by the Uber driver, which humiliated, degraded, violated, and robbed Plaintiff of her dignity and personal safety. The depraved attack on Plaintiff caused Plaintiff to suffer physical and/or psychological harm from which she may never fully recover.

182.    As a direct and proximate result of Uber's intentional misrepresentations, Plaintiff suffered economic and non-economic damages.

183.    Plaintiff will seek actual and punitive damages based on Defendants' above-described actions, which evidence wanton and reckless disregard for the safety of passengers like Plaintiff.

## CLAIM 6: NEGLIGENT MISREPRESENTATION

184.    Plaintiff incorporates all prior allegations.

185.    Uber represented to Plaintiff and the general public that safety is Uber's top priority, and that it is Uber's goal to make every ride safe, comfortable, and reliable. At the time of the assault alleged, Uber knew that a number of its drivers had previously preyed on vulnerable female passengers by sexually molesting, assaulting, harassing, and/or raping them.

186.    Uber continued to represent that its services were safe to further Uber's own pecuniary interests.

187.    In choosing to represent to its customers/users that its services were safe, Uber had a duty to provide correct and accurate information about the actual safety of its services.

188.    Uber knew or should have known that it could not provide the safe ride that it represented it could.

189.    Knowing of the incidence of sexual assault of its passengers by its drivers and knowing that Uber had not implemented adequate precautions, Uber had no reasonable grounds for believing that it could provide Plaintiff and other passengers a safe ride as represented.

CASE NO. 23-1630

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

190.     In getting into the Uber, Plaintiff reasonably relied on Uber's representations that it would get her safely to her intended destination.

191.     In trusting and relying on Uber's representations, Plaintiff was placed in a uniquely vulnerable position that was taken advantage of by an Uber employee, the Uber driver, who assaulted, battered, harassed, and/or otherwise attacked Plaintiff.

192.     As a direct and proximate result of Uber's conduct, Plaintiff was assaulted, harassed, battered, and/or otherwise attacked by the Uber driver, which humiliated, degraded, violated, and robbed her of her dignity and personal safety. The depraved attack on Plaintiff caused her to suffer physical and/or psychological harm from which she may never fully recover.

193.     As a direct and proximate result of Uber's negligent misrepresentations, Plaintiff suffered economic and non-economic damages.

194.     Plaintiff will seek actual and punitive damages based on Defendants' above-described actions, which evidence wanton and reckless disregard for the safety of passengers like Plaintiff.

**CLAIM 7: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

195.     Plaintiff incorporates all prior allegations.

196.     For several years before Plaintiff was assaulted by the Uber driver, Uber was fully aware that other female passengers had been assaulted by Uber drivers. Since at least 2014, Uber has received frequent passenger complaints about driver misconduct, has been notified of police investigations of the criminal conduct of drivers acting within their capacity as Uber drivers, and has been the subject of numerous civil suits alleging the sexual harassment and assault of Uber's passengers by Uber's drivers.

197.     Uber made a conscious decision not to implement procedures that would effectively screen its drivers and monitor its drivers to identify and terminate drivers who were sexual predators.

198.    Safety precautions such as enhanced background checks, biometric fingerprinting, job interviews, electronic monitoring systems, warnings to passengers of the dangers of being attacked by Uber drivers, and cooperation with law enforcement when a driver attacks a passenger would have cost Uber money and reputational damage. Because of this, Uber decided not to implement such precautions and instead continues to place its passengers at greater risk of assault and harassment by Uber's own drivers.

199.    Additional safety precautions that Uber chose not to make include but are not limited to: ongoing monitoring of Uber drivers through available technology including cameras and GPS; a zero-tolerance policy for drivers who deviate from expected behavior by leaving the vehicle with passengers, or by deviating substantially from the assigned route; a zero-tolerance program for sexual assault and guidelines mandating immediate termination; creating and instituting a system encouraging customer reporting; and adequate monitoring of customer complaints by well-trained and effective customer-service representatives. Uber chose not to implement such precautions, nor did it warn passengers of the risk of being physically and/or sexually assaulted given that these safety precautions had not been implemented.

200.    In failing to take these and other safety precautions designed to protect passengers from sexual predators driving for Uber, Uber breached its duty of reasonable care, negligently inflicting emotional harm upon Plaintiff, and acted recklessly and in conscious disregard of her safety.

201.    As a direct and proximate result of Uber's negligent infliction of emotional distress, Plaintiff suffered economic and non-economic damages.

202.    Plaintiff will seek actual and punitive damages based on Defendants' above-described actions, which evidence wanton and reckless disregard for the safety of passengers like Plaintiff.

CASE NO. 23-1630

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

40

**CLAIM 8: BREACH OF CONTRACT**

203.    Plaintiff incorporates all prior allegations.

204.    Plaintiff entered a contract with Uber. The essence of this commercial transaction was the payment of a fee to Uber in exchange for safe and reasonable transportation to Plaintiff's destination.

205.    As a result of the conduct, acts, and omissions set forth above, Uber breached its contract with Plaintiff, including breaching implied covenants inherent in such a contract.

206.    As a direct and proximate result of Uber's breach of contract, Plaintiff suffered economic and non-economic damages.

**CLAIM 9: STRICT PRODUCT LIABILITY BASED ON DESIGN DEFECT OF THE UBER APP AND FAILURE OF THE UBER APP TO MEET MINIMUM REASONABLE CONSUMER SAFETY EXPECTATIONS**

207.    Plaintiff incorporates all prior allegations.

208.    Uber manufactured and distributed the Uber App.

209.    The Uber App did not perform as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way, because the Uber App falsely led Plaintiff to form a reasonable minimum safety expectation that was not met.

210.    The Uber App did not include safety features such as a GPS tracking system that would alert Uber to the early termination of a ride, substantial deviation from the intended route, or a passenger continuing to travel in the Uber vehicle after the driver ended the ride in the app. It also did not include the automatic activation of the camera in drivers' smart phones when a ride is in progress. And it did not include automatic notification of law enforcement of suspicious circumstances that suggest a rider may be in danger.

211.    The Uber App also failed to communicate with Plaintiff a true expectation of the lack of safety in using Uber.

212. These flaws in the design of the Uber App, were a substantial factor in causing harm to the Plaintiff, which included being assaulted, battered, harassed, and/or otherwise attacked by the Uber driver, which humiliated, degraded, violated, and robbed Plaintiff of her dignity and personal safety. The depraved attack on Plaintiff caused Plaintiff to suffer physical and/or psychological harm from which she may never fully recover.

213. As a direct and proximate result of Uber's acts and omissions, Plaintiff suffered economic and non-economic damages.

214. Plaintiff will seek actual and punitive damages based on Defendants' above-described actions, which evidence wanton and reckless disregard for the safety of passengers like Plaintiff.

### CLAIM 10: STRICT PRODUCT LIABILITY - FAILURE TO WARN

215. Plaintiff incorporates all prior allegations.

216. Uber manufactured and distributed the Uber App.

217. The Uber App presented potential risks of introducing each driver to a passenger who, because of the nature of the ridesharing arrangement created and facilitated by the Uber App, could neither escape from the Uber driver's vehicle nor control the place where the driver would take the passenger, which could result in the sexual assault of that passenger; these are risks that were known or knowable at the time of manufacture and distribution of the Uber App.

218. The potential risks presented a substantial danger when the Uber App was used or misused in an intended or reasonably foreseeable way.

219. Ordinary consumers such as Plaintiffs would not have recognized the potential risks.

220. Defendant Uber failed to adequately warn consumers, including Plaintiffs, of these potential risks.

CASE NO. 23-1630

42

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

221.    Uber's failure to provide passengers, including Plaintiffs, with sufficient warnings regarding the risk of harm to which they were being exposed with each Uber ride was a substantial factor in causing the harm suffered by Plaintiffs, including being sexually assaulted, sexually battered, raped, falsely imprisoned, stalked, harassed, and/or otherwise attacked by an Uber driver which humiliated, degraded, violated, and robbed Plaintiffs of their dignity and personal safety. The depraved attack on Plaintiff caused Plaintiff to suffer physical and or psychological harm from which she may never fully recover.

222.    As a direct and proximate result of Uber's acts and omissions, Plaintiff suffered economic and non-economic damages.

223.    Plaintiff will seek actual and punitive damages based on Defendants' above-described actions, which evidence wanton and reckless disregard for the safety of passengers like Plaintiff.

### VICARIOUS LIABILITY FOR DRIVER'S TORTS

224.    Plaintiff incorporates all prior allegations.

225.    Uber is vicariously liable for the torts of its driver through the theories of *respondeat superior*, nondelegable duties, agency, and ostensible agency. Uber's liability for the acts of its driver is not contingent upon the classification of its driver as an employee.

226.    Under the doctrine of *respondeat superior*, Uber is responsible for the torts of its employees committed within the scope of employment. The modern rationale for the theory is that an employer who profits from an enterprise which, through the torts of his employees, causes harm to others should bear the costs of the injury instead of the innocent injured Plaintiff.

227.    Uber profits from transporting vulnerable passengers. Uber encourages female passengers to use its services. At the same time, Uber does not take reasonable steps to protect its passengers or warn them of the dangers of riding with Uber. Uber should bear the costs of injuries

that result from torts such as assault and harassment, rather than the victims of Uber's negligence, willful wrongdoing, and intentional omissions made at the expense of passenger safety.

228.    Uber drivers are employees and agents of Uber. Uber reserves the right to control the activities of Uber drivers. Uber controls the prices charged to customers, controls contact with the customer base, controls the ability of a driver to see where he will be driving before he accepts a ride, and reserves the right to terminate drivers with or without cause.

229.    The assault, harassment, and/or other attack Plaintiff suffered was perpetrated by the Uber driver within the scope of his employment and authority. The assault and/or harassment of intoxicated and unaccompanied women who have been placed in an improperly screened Uber driver's car with little to no supervision is incidental to and a foreseeable result of the act of transporting passengers.

230.    Uber may maintain that its drivers are contractors and not employees. Nevertheless, whether Uber drivers are characterized as contractors, employees, or agents, Uber has a non-delegable duty to transport its passengers safely.

231.    The doctrine of nondelegable duty recognizes that for public-policy reasons, certain duties cannot be delegated to a third party. It operates to ensure that when a harm occurs the injured party will be compensated by the party whose activity caused the harm and who may therefore properly be held liable for the acts of his agent, whether the agent was an employee or an independent contractor. The doctrine recognizes that an entity may not delegate its duties to a contractor to evade its own responsibilities. This is especially so when allowing delegation would incentivize the employers to hire incompetent contractors to further the employer's pecuniary interests.[68]

---

[68] *See e.g.*, *Barry v. Raskov* (Ct. App. 1991) 232 Cal. App. 3d 447, 454, where the court recognized that allowing a broker to delegate the liability for the fraudulent torts of its contractor property appraiser would incentivize the broker to hire potentially insolvent contractors, to the detriment of the public.

CASE NO. 23-1630                                     PLAINTIFF'S ORIGINAL
                              44                     COMPLAINT AND JURY DEMAND

232.     In advertising to passengers, including Plaintiff, that Uber provides them a safe ride to their destinations, and by profiting off women who use Uber for that very purpose but then are attacked, Uber has a duty to its passengers that cannot be delegated. To allow Uber to delegate the liability for the assaults committed by its drivers to anyone else would encourage Uber to continue to utilize the cheapest, fastest, and most haphazard safety procedures. Uber would be disincentivized from hiring only competent drivers, since the more drivers Uber has, the more money Uber makes.

233.     Further, Uber drivers act as agents of and operate as extensions of Uber. Uber drivers represent Uber's business and further Uber's pecuniary interests.

234.     Uber drivers display the Uber logo when interacting with passengers, and in many cases Uber drivers are the only people with whom Uber's passengers have direct contact. Uber drivers provide the service that Uber claims to provide—transportation.

235.     By allowing Uber drivers to represent Uber's business, Uber creates the impression that its drivers, including the Uber driver at issue here, were Uber's employees and/or agents.

236.     Plaintiff reasonably believed that the Uber driver was an employee or agent of Uber, and, relying on this belief, got in a vehicle with him in exchange for a fee and suffered harm as a result of her contact with the driver.

237.     For these reasons and others, Uber is vicariously liable for the tortious acts of its drivers, regardless of whether Uber's drivers are employees, agents, apparent agents, or contractors of Uber.

238.     As a direct and proximate result of the Uber driver's tortious conduct, Plaintiff was assaulted, battered, harassed, and/or otherwise attacked, which humiliated, degraded, violated, and robbed Plaintiff of her dignity and personal safety. The depraved attack on Plaintiff

caused Plaintiff to suffer physical and/or psychological harm from which she may never fully recover.

239.     As a direct and proximate result of Uber driver's tortious conduct for which Uber is legally liable, Plaintiff has suffered economic and general, non-economic damages according to proof.

240.     Plaintiff will seek actual and punitive damages based on Defendants' above-described actions, which evidence wanton and reckless disregard for the safety of passengers like Plaintiff.

### VICARIOUS LIABILITY FOR SEXUAL BATTERY

241.     Plaintiff incorporates all prior allegations.

242.     The Uber driver made harmful and offensive contact with the Plaintiff. Plaintiff did not consent to the contact. Plaintiff was harmed and offended by the Uber driver's contact. The Uber driver intentionally and recklessly committed acts that resulted in harmful contact with Plaintiff's person, and/or touching of Plaintiff in a sexual manner.

243.     As a result of the Uber driver's sexual battery of the Plaintiff, which occurred while in the course and scope of Uber driver's employment, Plaintiff was humiliated, degraded, violated, and robbed of her dignity and personal safety. The depraved attack on Plaintiff caused Plaintiff to suffer physical and/or psychological harm from which she may never fully recover.

244.     As a legal result of the sexual battery committed by the Uber driver, and Uber's liability and vicarious liability for the same, Plaintiff suffered economic and non-economic damages.

245.     Plaintiff will seek actual and punitive damages based on Defendants' above-described actions, which evidence wanton and reckless disregard for the safety of passengers like Plaintiff.

CASE NO. 23-1630

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

**PUNITIVE DAMAGES**

246.     Plaintiff incorporates all prior allegations.

247.     As stated above, Uber knew that it faced an ongoing problem of sexual predators driving for Uber and assaulting its passengers. As early as 2014 Uber knew that its drivers were physically and/or sexually assaulting female passengers. Since 2014, Uber has received frequent passenger complaints about driver physical and/or sexual misconduct, including physical and/or sexual assault and rape, it has been notified of police investigations of the criminal physical and/or sexual conduct of drivers acting within their capacity as Uber drivers, and it has been the subject of numerous civil suits and/or arbitrations alleging the sexual harassment and physical and/or sexual assault of Uber's passengers by Uber's drivers.

248.     Nevertheless, even though Uber was fully aware of its sexual predator problem it failed to take safety precautions to protect its passengers.

249.     Even after Uber was aware some Uber drivers were using driving for Uber as an opportunity to get unsuspecting women into their vehicles and to physically and/or sexually assault them, Uber and its executing officers made the conscious decision not to implement measures to thoroughly vet its drivers before and after hiring them.

250.     The decision not to implement more thorough and persistent background checks was driven by Uber executives desire for rapid expansion and increased profits, because the more drivers driving for Uber, the more money there was to be made.

251.     Prioritizing profits over safety, Uber and its executive officers also made the conscious decision not to warn its customers/users of the risk of being assaulted even after Uber and its leadership were fully aware of this risk.

252.     Safety precautions such as enhanced background checks; biometric fingerprinting; job interviews; electronic monitoring systems; ongoing monitoring of Uber drivers and rides through available technology including cameras and GPS; a zero-tolerance policy for drivers who

CASE NO. 23-1630

47

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

deviate from expected behavior by leaving the vehicle with passengers or by deviating substantially from the assigned route; a warning system for when a driver significantly deviates from the intended route or prematurely terminates a ride; a system for checking in with and verifying a passenger's safety when a driver prematurely terminates a ride or significantly deviates from the intended route; a zero-tolerance program for sexual assault and guidelines mandating immediate termination; a zero-tolerance policy for fraternizing with passengers; creating and instituting a system encouraging customer reporting; adequate monitoring of customer complaints by well-trained and effective customer-service representatives; warnings to passengers of the dangers of being attacked by Uber drivers; and cooperation with law enforcement when a driver attacks a passenger would have cost Uber money and reputational damage. Because of this, Uber, at the direction of its corporate officers, decided not to implement such precautions and instead has continued to place its passengers at greater risk of kidnapping, sexual assault, rape, and exploitation by Uber's own drivers.

253.    Prioritizing profits over passenger safety, Uber and its executive officers acted, and continue to act, recklessly and in knowing, conscious disregard of the safety of its passengers, including that of Plaintiff, and the public.

254.    As a direct and proximate result of the intentional, negligent, reckless, grossly negligent conduct of Uber, Plaintiff was assaulted, battered, harassed, and/or otherwise attacked by the Uber driver, which humiliated, degraded, violated, and robbed her of her dignity and personal safety.

255.    The depraved attack on Plaintiff caused Plaintiff to suffer serious emotional distress as well as physical and/or psychological harm from which she may never fully recover.

256.    As a result of Uber's misconduct as stated above, Plaintiff seeks punitive damages to punish Uber for its misconduct and to deter future misconduct.

CASE NO. 23-1630                                        PLAINTIFF'S ORIGINAL
                                    48                  COMPLAINT AND JURY DEMAND

**PRAYER FOR RELIEF**

Plaintiff prays for the following relief:

- Entry of judgment on each of her claims against Defendants jointly and severally;
- Past and future economic and non-economic damages including physical pain, mental anguish, anxiety, medical expenses, lost earnings or earning capacity;
- Punitive damages;
- Pre- and post-judgment interest;
- The costs and expenses of litigation;
- Attorneys' fees;
- Equitable relief; and
- Such other relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.


Dated: April 5, 2023                      Respectfully submitted,

                                          By: */s/ Adam B. Wolf*
                                          ADAM B. WOLF (Cal Bar No. 215914)
                                          RACHEL ABRAMS (Cal Bar No. 209316)
                                          ANGELA J. NEHMENS (Cal Bar No. 309433)
                                          **Peiffer Wolf Carr Kane Conway & Wise, LLP**
                                          4 Embarcadero Center, Suite 1400
                                          San Francisco, CA 94111
                                          Telephone: 415.766.3545
                                          Facsimile: 415.402.0058
                                          Email: awolf@peifferwolf.com
                                               rabrams@peifferwolf.com
                                               anehmans@peifferwolf.com

                                          *Counsel for Plaintiff*

**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: Uber Technologies, Inc.,<br>Passenger Sexual Assault Litigation | MDL Docket No. 3084 |

## UBER'S RESPONSE TO PLAINTIFFS' MOTION FOR TRANSFER OF ACTIONS UNDER 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................1

II.    FACTUAL BACKGROUND ...............................................................................3

   A. Uber's Business ...............................................................................................3

   B.  The California State Cases And Forum Non Conveniens Decision .......................4

   C.  The Federal Court Actions.................................................................................5

III.    ARGUMENT......................................................................................................5

   A.   Plaintiffs Contractually Agreed To Proceed Only On An Individual Basis...........6

   B.   Centralization Is Not Appropriate Under Section 1407 .........................................6

   1.   Individualized Issues Far Exceed Any Common Issues .....................................7

     a.   The Core Factual Issues Are Individualized .....................................................8

     b.   Supposedly "Overlapping Legal Issues" Do Not Justify Centralization........11

     c.   Different State Laws Require Different Factual Inquiries .............................12

     d.   Any Common Factual Questions Are Not Complex Or Numerous ..............15

   2.   Centralization Will Not Promote Convenience Or Efficiency............................16

     a.   Centralization Will Be Inconvenient ..............................................................16

     b.   Centralization Will Be Inefficient ..................................................................17

     c.   Informal Coordination Is Preferable To Centralization.................................18

   3.   Plaintiffs Fail To Show That The Northern District Of California Is The Most Suitable Forum ...................................................................................................19

IV.    CONCLUSION..................................................................................................20

APP093

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 21st Century Prods. Inc. "Thrilsphere" Contract Litig.*,
    448 F. Supp. 271 (J.P.M.L. 1978) ............................................................. 18

*In re Asbestos & Asbestos Insulation Material Prods. Liab. Litig.*,
    431 F. Supp. 906, 909 (J.P.M.L. 197 ......................................................... 9

*Ayala* v. *Antelope Valley Newspapers, Inc.*,
    59 Cal. 4th 522 (Cal. 2014) ....................................................................... 13

*In re: Baby Food Mktg., Sales Prac. & Prods. Liab. Litig.*,
    544 F. Supp. 3d 1375 (J.P.M.L. 2021) ............................................ 6, 18, 19

*In re Blair Corp. Chenille Robe Prods. Liab. Litig.*,
    703 F. Supp. 2d 1379 (J.P.M.L. 2010) ....................................................... 7

*Doe* v. *Uber Techs., Inc.*,
    551 F. Supp. 3d 341 (S.D.N.Y. 2021) ....................................................... 13

*Edwards* v. *Publishers Circulation Fulfillment, Inc.*,
    268 F.R.D. 181 (S.D.N.Y. 2010) .............................................................. 13

*In re Electrolux Dryer Products Liability Litig.*,
    978 F. Supp. 2d 1376 (J.P.M.L. 2013) ....................................................... 7

*In re Gadolinium-Based Contrast Agents Prods. Liab. Litig.*,
    341 F. Supp. 2d 1381 (J.P.M.L. 2018) ....................................................... 9

*In re Hotel Industry Sex Trafficking Litigation*,
    433 F. Supp. 3d 1353 (J.P.M.L. 2020) ....................................................... 7

*Huang* v. *The Bicycle Casino, Inc.*,
    4 Cal. App. 5th 329 (Cal. Ct. App. 2016) .................................................. 13

*In re Hyundai & Kia GDI Engine Mktg., Sales Practices, and Prods. Liab.
    Litig.*,
    412 F. Supp. 3d 1341 (J.P.M.L. 2019) ..................................................... 15

*In re Iowa Beef Packers*,
    309 F. Supp. 1259 (J.P.M.L. 1970) ...................................................... 6, 15

*Jackson* v. *Stancil*,
    253 N.C. 291 (N.C. 1960) .......................................................................... 13

2

*In re Medi-Cal Reimbursement Rate Reduction Litig.*,
    652 F. Supp. 2d 1378, 1378 (J.P.M.L. 200 ................................................................... 11

*In re Narconon Drug Rehab. Mktg., Sales Prac. & Prods. Liab. Litig.*,
    84 F. Supp. 3d 1367 (J.M.P.L. 2015) ........................................................................ 10

*In re Nutella Mktg. & Sales Prac. Litig.*,
    804 F. Supp. 2d 1374 (J.P.M.L. 2011) ...................................................................... 15

*In re Scotch Whiskey*,
    299 F. Supp. 543 (J.P.M.L. 1969) .............................................................................. 7

*In re SFPP, L.P., R.R. Prop. Rights Litig.*,
    121 F. Supp. 3d 1360, 1361 (J.P.M.L. 201 ............................................................... 11

*In re Skinnygirl Margarita Beverage Mktg. & Sales Prac. Litig.*,
    829 F. Supp. 2d 1380 (J.P.M.L. 2011) ................................................................ 10, 15

*In re Uber Techs., Inc., Wage & Hour Employment Practices*,
    158 F. Supp. 3d 1372 (J.P.M.L. 2016) .................................................... 12, 16, 17, 18

*In re Varsity Spirit Athlete Abuse Litigation*,
    2023 WL 3828645 (J.P.M.L. 2023) .................................................................. 8, 9, 19

**Statutes**

18 PA. CONS. STAT. § 5702 ................................................................................................ 14

28 U.S.C. § 1407..................................................................................................*passim*

TEX. OCC. CODE § 2402.114 (2017) ............................................................................... 13

MICH. COMP. LAWS § 257.2107(7)(1)(a) (2016) ........................................................... 14

GA. CODE ANN. § 40-5-39(e)(5) (2020) ........................................................................ 14

3

## I.   **INTRODUCTION**

Plaintiffs move for centralization of twenty-two[1] individual - - and highly individualized - - personal injury suits that are born out of third party criminal actions. The acts alleged by the plaintiffs include a wide range of conduct, from sexual comments to violent, criminal acts of sexual assault. This conduct, where it occurs, represents the worst of humanity and has no place on Uber's platform.

Plaintiffs' motion for centralization should be denied for two independent reasons. First, the plaintiffs contractually agreed in the Uber App Terms of Use agreement to proceed "on an individual basis only," and to not pursue any "coordinated [or] consolidated" action. Ex. J at 7. That alone should dispose of this motion in Uber's favor.

Second, these cases are ill-suited for centralization because they have little in common. Each involves different types of sexual misconduct allegedly committed by different drivers (none employed by Uber) against different plaintiffs, in different time periods and places, with different witnesses and under different circumstances. Plaintiffs' own counsel has stated that "the details and severity of the cases widely vary."[2] The core factual questions are thus unique to each case. To identify just some: Did the type of alleged misconduct involve offensive comments, non-consensual touching, physical violence, or some other heinous behavior?[3] Did the independent driver have any relevant history that was missed in a background check? Did the alleged incident occur inside the vehicle and

---

[1] In addition, Plaintiffs have filed notices of related actions for twenty-five cases. The total cases (including the noticed cases) involve incidents in twenty-two states (including the District of Columbia), and are pending in thirteen federal districts. These figures are based on filings as of August 18, 2023.

[2] *Uber Faces Mounting Sexual Assault, Harassment Lawsuits in San Francisco*, KRON4 (June 30, 2021), <https://tinyurl.com/59uauzjb>.

[3] The types of alleged misconduct span across the taxonomy established by experts for classifying incidents of sexual assault and misconduct. *See Helping Industries to Classify Reports of Sexual Harassment, Sexual Misconduct, and Sexual Assault*, National Sexual Violence Resource Center (2018), <https://tinyurl.com/2mhcn469>.

1

during a ride, or after the ride was over and the driver was not using the Uber App? What did the case-specific witnesses - - including the driver, any other passengers, law enforcement, treating professionals, and other third-parties - - observe? What kind of harm did the individual plaintiff allegedly suffer?

Even with respect to Uber, there is no common course of conduct and no common theory of causation. A central question will be what, if anything, could Uber have done to prevent the incident before it allegedly occurred - - *e.g.*, use different background checks or specific safety technologies like video cameras. That question depends on the unique circumstances of each case. The Uber App itself - - as well as certain safety features - - is visually and functionally different depending on the App version, location, time frame, and the user's smartphone device, and thus may be unique in each incident.

And that is before considering the different states' laws and regulations that will apply, depending on the place and time of the alleged incident. These cases involve incidents that allegedly took place in twenty-two different states - - none involves a California-resident plaintiff, because they cannot invoke diversity jurisdiction to sue in federal court. Accordingly, there is no common set of laws that apply across the cases.

As the San Francisco Superior Court recently found in the parallel state court cases: "Foreign states have a substantial interest in cases involving injuries that occur within their borders, and in the application of their laws to regulate the conduct of defendants alleged to be responsible for the injuries." Ex. 1 at 14. The court thus concluded that "non-California cases" should be "refiled in other states, such that the resulting verdicts may more accurately reflect the governing law . . . in the fora with the greatest interest in their resolution." *Id.* at 19. Nevertheless, a number of those plaintiffs have refiled their non-

2

California cases in, or seek to transfer their cases to, California federal court, including in an estimated 28 cases here - - *i.e.*, the majority of the cases that are implicated by this motion.[4] Just as they did before the San Francisco Superior Court, Plaintiffs "ignore or understate the importance of other states' tort and regulatory laws in setting the standards by which Uber's liability" will be determined. *Id.* at 15.

Apart from all that, there is no cohesion among the plaintiffs: some have cases pending in the San Francisco Superior Court; some have filed a still-pending appeal of the California court's dismissal on forum non conveniens grounds; some have sought dismissal from that appeal; several have sought to stay their district court actions (some of which have been denied), while others are actively litigating Uber's 12(b)(6) motions.

Much more needs to play out before the true nature and extent of this litigation will be clarified. Given the demonstrable lack of commonality, Uber submits that an MDL never will be necessary or appropriate. Accordingly, this motion should be denied.

## II.  **FACTUAL BACKGROUND**

### A.  **Uber's Business**

Uber is a transportation network company ("TNC") that uses its proprietary software to develop and maintain multi-sided, digital platforms. Through the Uber App, passengers in need of a ride can connect with independent drivers. TNCs like Uber are regulated on the state and local level through varying statutes and regulations, such as state-specific requirements for driver background checks. Uber's business operations and

---

[4] Uber's estimate is based on unique identifiers, including the plaintiff's name, initials, or Doe #s, in combination with factual allegations such as the date of incident.

3

decisions vary in accordance with local regulations, and regional teams responsible for those operations are generally led by a Regional General Manager. O'Connor Decl. ¶ 24.

Although Uber maintains one of its headquarters in California, it is a Delaware corporation with global operations. Uber's United States operations currently span thirty-seven offices across twenty different states. *Id.* ¶ 22. Uber's Centers of Excellence - - call centers that provide specialized support for critical incidents reported by users of the Uber App (like the various incidents alleged here) - - currently are located only outside California. *Id.* ¶ 23. Uber's executives and heads of various teams (whom Plaintiffs allege are relevant witnesses) are located in different regions all over the nation. *Id.* ¶ 25.

**B.  The California State Cases And Forum Non Conveniens Decision**

There was a previous attempt to centralize and coordinate cases against Uber from all over the country. That attempt was made in San Francisco Superior Court, and involved almost 1,500 cases alleging sexual misconduct by independent drivers. Although the California cases were ultimately coordinated, the Superior Court granted Uber's motion to dismiss all of the 1,000 or so non-California cases on forum non conveniens grounds.

The Superior Court found that the non-California cases should be litigated in the state-of-injury: "Foreign states have a substantial interest in cases involving injuries that occur within their borders, and in the application of their laws to regulate the conduct of defendants alleged to be responsible for the injuries," while "California courts have little or no interest in litigation involving injuries incurred outside of California by nonresidents." Ex. 1 at 14 (citation omitted). The Superior Court pointed to the "importance of other states' tort and regulatory law in setting the standards by which Uber's liability" will be determined, including the "key legal issues in these cases" - - *e.g.*, whether Uber is a common carrier or whether it adequately screened independent drivers. *Id.* at 15. The

4

court thus ordered the out-of-state plaintiffs to refile their individual actions in the courts of "other states" where venue is appropriate. *Id.* at 19. Those plaintiffs appealed the forum non conveniens decision; that appeal is still pending.

### C.  The Federal Court Actions

The federal actions here allege that the plaintiffs were sexually assaulted by independent drivers with whom they were connected through the Uber App, and that Uber is liable for the conduct of the drivers in individual incidents that occurred in twenty-two different states.[5]

The federal complaints are substantially similar to the California state court complaints: they allege claims for vicarious liability, negligence, fraud and misrepresentation, and products liability.[6] Indeed, the majority of the federal actions here are cases that originally were filed in - - *and are still pending in* - - the San Francisco Superior Court. Instructed to refile in home states, they now attempt to bring their cases to a centralized California federal court. Every plaintiff here resides outside of California. Uber is a citizen of California for the purposes of diversity jurisdiction, so *none* of these cases involve a California-resident plaintiff.

### III.  ARGUMENT

Plaintiffs' motion should be denied for two independent reasons: (1) the plaintiffs' contractual agreement with Uber prohibits centralization and coordination, and

---

[5] One of the recently filed actions that was the subject of a notice of related action, No. 23-cv-11991 (E.D. Mich.), alleges claims by a driver with respect to an alleged assault by a passenger. Dkt. 30. Plaintiff's counsel has now stated that the notice of tag-along into these proceedings was in error and will be withdrawn. Dkt. 60. The centralization proposed by Plaintiffs is inappropriate, including any suggestion that claims brought by drivers should be grouped in.

[6] The San Francisco Superior Court recently granted Uber's demurrer as to vicarious liability, fraud and misrepresentation, and products liability. *See* Ex. 3.

5

(2) individualized issues predominate over common ones, making centralization inconvenient, inefficient, and inappropriate under 28 U.S.C. § 1407.

### A.   Plaintiffs Contractually Agreed To Proceed Only On An Individual Basis

The Panel need not conduct any analysis under 28 U.S.C. § 1407 because this motion is barred by the plaintiffs' contractual agreement with Uber. Before any rider can use the Uber App, they must assent to Uber's Terms of Use, which establish a "contractual relationship" between Uber and each plaintiff. *E.g.*, Ex. J at 2. The Terms of Use provide that claims may be brought and litigated "on an individual basis only," not as a "collective, coordinated, consolidated, mass and/or representative action against Uber," and that "no action brought by you may be consolidated or joined in any fashion with any other proceeding." *Id.* at 7. Under those plain terms, Plaintiffs' motion - - which seeks to "coordinate[] or consolidate[] pretrial proceedings," Mot. at 1 - - is prohibited.

### B.   Centralization Is Not Appropriate Under Section 1407

A party moving for centralization bears the burden of showing that (1) the actions involve "common questions of fact" that are numerous and complex, (2) centralization would benefit "the convenience of the parties and witnesses," and (3) centralization would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407; *In re Iowa Beef Packers, Inc.*, 309 F. Supp. 1259, 1260 (J.P.M.L. 1970). "Centralization under Section 1407 should be the last solution after considered review of all other options." *In re: Baby Food Mktg., Sales Prac. & Prods. Liab. Litig.*, 544 F. Supp. 3d 1375, 1377 (J.P.M.L. 2021).

Plaintiffs have failed to meet that burden. These personal injury cases turn on highly individualized questions of fact that predominate over the few common questions.[7] Centralization will require one court to apply the different laws of multiple states-of-injury, and to manage disparate cases in which the vast majority of parties and witnesses are located out-of-state. As a result, centralization will be detrimental to both convenience and efficiency, and contravene the very objectives of Section 1407.[8]

**1. Individualized Issues Far Exceed Any Common Issues**

Centralization is appropriate only where the cases share "common questions of fact" that are "sufficiently complex and/or numerous to justify Section 1407 transfer." *In re Blair Corp. Chenille Robe Prods. Liab. Litig.*, 703 F. Supp. 2d 1379, 1380 (J.P.M.L. 2010). Because these cases and any common questions are not numerous, Plaintiffs must meet a heightened burden to show additional complexity. *In re Scotch Whiskey*, 299 F. Supp. 543, 544 (J.P.M.L. 1969).[9]

Although commonality of *all* factual questions is not required, the Panel frequently denies centralization where "individualized facts . . . will predominate over the common factual issues alleged by plaintiffs." *In re Electrolux Dryer Prods. Liab. Litig.*, 978 F. Supp. 2d 1376, 1377 (J.P.M.L. 2013). Here, individualized questions predominate. Indeed, Plaintiffs' counsel has acknowledged that these are "individual cases," and "the details and

---

[7] These types of personal injury cases have historically been filed in local venues (including federal courts where the incident occurred), and have proceeded efficiently as individualized cases without centralization. *See, e.g.*, *Doe* v. *Uber Techs.*, 20-cv-00922 (N.D. Cal.); *Doe* v. *Uber Techs.*, 20-cv-00370 (D. Md.)

[8] Indeed, Judge Martinez-Olguin of the Northern District of California has determined that several of these cases are not related cases under the applicable local rule. *See* Ex. 4.

[9] Plaintiffs speculate that there will be more cases now that the San Francisco Superior Court has granted Uber's forum non conveniens motion as to all non-California cases. Mot. at 1-2. But that decision is pending appeal, and the Panel has made clear that "the mere possibility of additional actions does not support centralization, even where thousands of actions are predicted." *In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353, 1356 (J.P.M.L. 2020).

7

severity of the cases widely vary." *See* n.2, *supra*. The San Francisco Superior Court also found that these are "individual sexual assault/misconduct cases," and specifically rejected the characterization that the cases are "corporate misconduct cases in which the individual Plaintiffs' claims are, in effect, merely illustrative of their larger claims." Ex. 1 at 11.

    a.   The Core Factual Issues Are Individualized

        i.  *Each Independent Driver's Alleged Conduct*

As the San Francisco Superior Court has explained, to "prevail in [these] cases," each plaintiff "must first prove that an assault took place." *Id.* (citation omitted). Doing so requires individualized factual inquiries about each particular incident, independent driver, and plaintiff. There is no dispute that sexual assault is a deeply personal crime and that each incident is unique to the victim.[10]

The Panel recently denied centralization of individual sexual abuse lawsuits under similar circumstances in *In re Varsity Spirit Athlete Abuse Litigation*, 2023 WL 3828645 (J.P.M.L. 2023). There, the plaintiffs were athletes who competed in various gyms affiliated with defendant Varsity, a cheerleading company, and alleged that they were sexually abused by coaches or other individuals at those gyms. The plaintiffs claimed that the company "represented[ed] Varsity-affiliated gyms and coaches as safe while perpetuating a culture of athlete abuse and frustrating efforts to report abuse," *id.* at *1 - - similar to the allegations here that Uber "put in place a culture and policies that have hurt

---

[10] Experts agree that "[e]very survivor's experience is unique and valid," and "a survivor's experience is uniquely shaped by their personal history, identity, context, culture, and community." *Seeing the Whole Survivor: Why It's Necessary to Talk About Identity for Survivors as Individuals and in Groups*, National Sexual Violence Resource Center (Feb. 25, 2019), <https://tinyurl.com/2wbrev26>; *Survivor Stories*, Rape, Abuse & Incest National Network, <https://tinyurl.com/2s459j48> ("No one survivor's experience is the same."); Sarah M. Greathouse et al., *A Review of the Literature on Sexual Assault Perpetrator Characteristics and Behaviors*, RAND (2015), <https://tinyurl.com/p63v3ds7>.

many innocent victims," Dkt. 1-4, ¶ 44. And like here, the *Varsity* plaintiffs sought centralization on the basis that there would supposedly be vast corporate discovery.

The Panel rejected that argument, explaining that "any efficiencies to be gained by centralization may be diminished by unique factual issues." *Varsity*, 2023 WL 3828645, at *1. Despite that the cases shared some "common factual questions regarding" the corporate defendant's alleged scheme in perpetuating a culture of abuse, the Panel found that those common questions would be "overwhelmed by unique factual issues" concerning the individual perpetrators - - *e.g.*, the coaches - - as well as the "particulars of the abuse alleged by each plaintiff." *Id.* "Discovery regarding each individual [perpetrator's] conduct and their relationship to and interactions with the common defendants will not overlap." *Id.*

So too here. Individualized factual questions will overwhelm the common issues, and there will be no overlapping discovery regarding the "particulars of the abuse alleged by each plaintiff," *id.*, which include a wide range of conduct from threatened assault to non-consensual kissing to sexual assault. There also will not be be overlapping discovery as to "highly plaintiff-specific questions of damages" - - each alleged incident and each survivor's experience and injuries are unique, subjective, and highly personal. *In re Linear Gadolinium-Based Contrast Agents Prods. Liab. Litig.*, 341 F. Supp. 2d 1381, 1382 (J.P.M.L. 2018).

### ii. Proving Causation

Factual questions about proximate causation are central to the plaintiffs' claims, and the Panel has long recognized that the "question of causation is an individual issue." *In re Asbestos & Asbestos Insulation Material Prods. Liab. Litig.*, 431 F. Supp. 906, 909 (J.P.M.L. 1977). For example, Plaintiffs allege that the third-party background checks used by Uber were inadequate. But that allegation is relevant only if the alleged inadequacy of

9

a particular background check *caused* an individual plaintiff's injury - - *i.e.*, if the specific driver had any pertinent flags in his background, and if a different background check would have identified those flags and prevented the particular plaintiff's injuries. There is no common answer to those questions; nor can there be overlapping discovery to investigate the background of each individual driver. That lack of commonality is even more apparent when considering that background check requirements, in addition to other laws and regulations governing Uber's conduct, vary depending on the state and the time period.

### iii.  The Claims Against The Independent Drivers

Uber intends to join - - as it has elsewhere - - the independent drivers as third-party defendants, and to raise driver-specific defenses of superseding cause and comparative fault (which, of course, are governed by different laws depending on the state-of-injury). The countless driver-specific inquiries - - *e.g.*, the driver's personal motivations, any prior incidents, and the driver's possible affiliation with other parties, like fleet operators - - are unique to each case. Plaintiffs' counsel's decision to forego claims against the alleged perpetrators of the assaults does not change the reality that unique factual issues concerning the drivers are critical to resolving the claims.

### iv.  Plaintiffs' Fraud And Misrepresentation Claims

Plaintiffs' misrepresentation claims "involve significant case-specific facts, such as the specific representations  .   .   .  made to each plaintiff," *In re Narconon Drug Rehab. Mktg., Sales Prac. & Prods. Liab. Litig.*, 84 F. Supp. 3d , 1367-68 (J.M.P.L. 2015), and each plaintiff's "state of mind or reliance" on the representation that she saw, *In re Skinnygirl Margarita Beverage Mktg. & Sales Prac. Litig.*, 829 F. Supp. 2d 1380, 1381 (J.P.M.L. 2011). Plaintiffs list *over a dozen* statements made over the course of nearly a

10

APP105

decade, but do not allege which plaintiff saw or heard which specific statement and how, if at all, each plaintiff relied on any statement to enter the particular vehicle.

As the San Francisco Superior Court found: "It is implausible, to state the obvious, that every one of those individual Plaintiffs actually saw and relied on each and every one of the statements." Ex. 3 at 14. Even more implausible is Plaintiffs' contention that "the impact of [Uber's] representations that it provides a 'safe ride' home," Mot. at 4, is a common issue - - *i.e.*, the plaintiffs all believed the same statements and made the decision to enter the vehicle based on those statements. Instead, questions about the "impact" of an alleged false statement - - whether the plaintiff saw the statement and relied on it - - is an exceedingly individualized issue that will require case-by-case discovery and evidence.

   b.  Supposedly "Overlapping Legal Issues" Do Not Justify Centralization

Plaintiffs do not address these individualized questions of fact. Rather, they contend that centralization is proper because "[t]hese cases against Uber have overlapping *legal* issues" - - including "common carrier liability, vicarious liability, the scope of Uber's duty to its passengers, the scope of Uber's duty to supervise drivers (whom it characterizes as 'contractors'), and the impact of its representations that it provides a 'safe ride' home, as well as other legal issues common" to the cases. Mot. at 4 (emphasis added).

But "seeking a uniform *legal* determination  .  .  .  generally is not a sufficient basis for centralization." *In re SFPP, L.P., R.R. Prop. Rights Litig.*, 121 F. Supp. 3d 1360, 1361 (J.P.M.L. 2015). While Section 1407 expressly requires "common questions of fact," it says nothing about common questions of law. Parties may not use the centralization process "merely to avoid two [or more] federal courts having to decide the same issue." *In re Medi-Cal Reimb. Rate Reduction Litig.*, 652 F. Supp. 2d 1378, 1378 (J.P.M.L. 2009).

<center>11</center>

c.   Different State Laws Require Different Factual Inquiries

Plaintiffs are also incorrect that the legal issues here are "overlapping." Mot. at 4. These cases allege incidents that took place in twenty-two different states. Those states' tort and regulatory laws set "the standards by which Uber's liability" will be determined, and courts in each state are situated to apply state-specific laws. Ex. 1 at 15.

The very issues that Plaintiffs contend are "overlapping" were already found by the San Francisco Superior Court to be the opposite - - they vary from state to state. The court explained: "As Plaintiffs acknowledge, key legal issues in these cases will include, among others, whether Uber is a 'common carrier,' whether it adequately screened drivers, and whether it owed Plaintiffs a duty to warn them about or implement other measures to protect them against assailants. It is likely that those issues will be determined under the laws of the states where the alleged incidents occurred, not under California law." *Id.*

For similar reasons, the Panel denied centralization in *In re Uber Technologies, Inc., Wage & Hour Employment Practices*, 158 F. Supp. 3d 1372, 1373 (J.P.M.L. 2016). There, the plaintiffs were drivers who claimed they were misclassified by Uber as independent contractors. The Panel concluded that those claims "rest on state-specific legal and factual inquiries that are not suitable for centralized pretrial proceedings." *Id.* As the Panel explained, the relevant legal standards "vary substantially from state to state and involve a broad range of factors which require consideration of distinct aspects" of the drivers' relationship with Uber. *Id.* Those individualized issues overwhelmed the limited common factual issues, such as Uber's "business practices concerning payment of gratuities and business expenses to drivers." *Id.*

12

*i.  Plaintiffs' Vicarious Liability Claims*

Plaintiffs contend that vicarious liability is an overlapping legal issue, but it is a prime example of variance in state-by-state legal standards that require different factual inquiries.[11] Indeed, the Panel has already determined that the dispositive threshold issue to the plaintiffs' vicarious liability claims - - whether drivers are employees or independent contractors - - is "not suitable for centralized pretrial proceedings." *Uber Wage & Hour*, 158 F. Supp. 3d at 1373. That issue is governed by widely disparate state laws. Some states have enacted statutes providing that drivers who use ride-share platforms are independent contractors "for all purposes," TEX. OCC. CODE § 2402.114 (West 2017), while other states employ varying common law tests that turn on different facts. *Compare, e.g.*, *Edwards* v. *Publishers Circulation Fulfillment, Inc.*, 268 F.R.D. 181, 184 (S.D.N.Y. 2010), *with Ayala* v. *Antelope Valley Newspapers, Inc.*, 327 P.3d 165, 169 (Cal. 2014). And different tests may apply even within the same jurisdiction, depending on whether the incident occurred before or after state statutes' effective dates.

*ii.  Plaintiffs' Common Carrier Allegations*

Likewise, Plaintiffs are wrong that "common carrier liability" is an "overlapping legal issue." Mot. at 4. The San Francisco Superior Court explained why it is not: states like Texas have "statutes and regulations that govern whether a TNC is a common carrier (it is not)." Ex. 1 at 14. Other jurisdictions apply state-specific multi-factor tests. *Compare*, *e.g., Huang* v. *The Bicycle Casino, Inc.*, 208 Cal. Rptr. 3d, 591, 598 (Cal. Ct. App. 2016), *with Jackson* v. *Stancil*, 116 S.E.2d 817, 824 (N.C. 1960). State laws also differ on whether

---

[11] As the Superior Court noted, there are numerous issues that are likely governed by varying state laws. Uber discusses a few illustrative, non-exhaustive examples, with a focus on the issues that Plaintiffs identified as "overlapping."  Mot. at 4.

13

common carrier status is relevant for certain claims - - for example, where state law "no longer holds common carriers to a heightened duty of care; the ordinary standard of negligence applies." *Doe* v. *Uber Techs., Inc.*, 551 F. Supp. 3d 341, 357 (S.D.N.Y. 2021).

### iii.  Plaintiffs' Negligence Allegations

State-specific laws also govern "the scope of Uber's duty" for negligence claims. Mot. at 4. As the San Francisco Superior Court observed, Plaintiffs claim that Uber breached a duty to, among other things, "adequately screen[] drivers," "install cameras in vehicles," and "warn [Plaintiffs] about or implement other measures to protect them against assailants." Ex. 1 at 15; *see also* Dkt. 1-4, ¶¶ 199-200.

Whether Uber has a duty to take those measures, and the contours of that duty, depend on the statutes, regulations, and laws of each state-of-injury. Even aside from the potential common carrier issues just discussed, the scope of duty is also tied to - - and in some jurisdictions, coextensive with - - state-specific laws governing TNCs, including different regulations as to "what criminal background checks [a TNC] must conduct." Ex.1 at 14. *See also, e.g.*, *Jones* v. *Awad*, 252 Cal. Rptr. 3d 596, 604 (Cal. Ct. App. 2019); GA. CODE ANN. § 40-5-39(e)(5) (2020); MICH. COMP. LAWS. § 257.2107(7)(1)(a) (2016). Varying state laws also govern any duty to implement other measures like in-vehicle cameras, especially because the legality of those measures may be questionable under certain states' consent-to-record laws. *See, e.g.*, 18 PA. CONS. STAT. § 5702 (1988).

### iv.  Plaintiffs' Fraud And Misrepresentation Claims

Fraud and misrepresentation claims are governed by "materially different" common law "in the fifty states." *Lewis Tree Serv., Inc.* v. *Lucent Techs.*, 211 F.R.D. 228, 236 (S.D.N.Y. 2002). The "elements of fraud vary greatly from state to state, with respect to elements including mitigation, causation, damages, reliance, and the duty to disclose."

14

*Id.* States also vary in whether they recognize certain theories of fraud, such as negligent misrepresentation. *See, e.g.*, *South County, Inc.* v. *First W. Loan Co.*, 871 S.W.2d 325, 326 (Ark. 1994).

### d. Any Common Factual Questions Are Not Complex Or Numerous

Questions justifying Section 1407 transfer must be (1) common, (2) factual, and (3) numerous or complex. Plaintiffs' motion includes a list of purportedly overlapping questions but, as established above, the majority of them are not common among the cases (*e.g.*, the "impact" of Uber's safety-related statements on each plaintiff), and not questions of fact at all (*e.g.*, whether Uber is vicariously liable). The few remaining questions - - even assuming that they are common questions of fact - - are certainly not numerous. *See* Mot. at 8. Nor are they complex, let alone "unusually complex" under Plaintiffs' heightened burden. *Iowa Beef*, 309 F. Supp. at 1260.

Plaintiffs do not even attempt to show that the questions here are complex. They are not. Plaintiffs contend that the cases share common questions about Uber's safety-related statements and "marketing tactics." Mot. at 8. But the Panel frequently denies centralization of misrepresentation actions on the basis that factual inquiries about a company's "marketing practices" and advertising statements are not sufficiently complex. *See, e.g.*, *Skinnygirl Margarita*, 829 F. Supp. 2d at 1381; *In re Nutella Mktg. & Sales Prac. Litig.*, 804 F. Supp. 2d 1374, 1375 (J.P.M.L. 2011). Plaintiffs also argue that there are common questions about Uber's "knowledge" of statistics and data regarding certain unrelated incidents. Mot. at 8. But Plaintiffs fail to explain why the relevant factual inquiries will be "so complex and the accompanying common discovery so time-consuming" to justify centralization. *Iowa Beef*, 309 F. Supp. at 1260.

15

**2.   Centralization Will Not Promote Convenience Or Efficiency**

Given that there is not a large number of cases here, Plaintiffs bear "a heavier burden to demonstrate that centralization is appropriate" to promote convenience and efficiency. *In re Hyundai & Kia GDI Engine Mktg., Sales Prac., and Prods. Liab. Litig.*, 412 F. Supp. 3d 1341, 1343 (J.P.M.L. 2019). Plaintiffs cannot meet that burden.

a.   Centralization Will Be Inconvenient

Centralization will be inconvenient for the parties - - the plaintiffs, Uber, and the independent drivers (whom Uber intends to join as third-party defendants) - - and witnesses to incidents that took place in twenty-two different states. Only one incident alleged here occurred in California, and that case involves a plaintiff resident in Washington State. All of the plaintiffs and, in all likelihood, the vast majority of independent drivers, reside outside of California, as do witnesses like fellow passengers, police officers, healthcare providers, employers, and any eyewitnesses. Bringing all these cases together to one court will be inconvenient for all. In contrast, litigating these cases in the respective states-of-injury would minimize the inconvenience of long-distance travel and associated expenses.

Plaintiffs argue that the Northern District of California is convenient because Uber's "headquarters are in San Francisco." Mot. at 14. But Uber's United States operations span thirty-seven offices across twenty different states, including many of the states-of-injury here. Uber's executives - - whom Plaintiffs allege to be relevant witnesses - - are located all over the nation, as are heads of various teams and regional leadership. And Uber's specialized call centers, which provide support for critical incidents reported by users, are located only outside California. The relevant documents concerning the alleged incidents - - cell phone records of the plaintiffs and independent drivers, healthcare records, law enforcement records - - are also located in the state-of-injury, not in San

16

Francisco.  These cases are thus similar to the cases in *Uber Wage & Hour*, where the Panel denied centralization, reasoning that convenience favored "keep[ing] the actions pending in the states where [driver] plaintiffs  .  .  .  worked and where relevant witnesses and documents are likely to be found." 158 F. Supp. 3d at 1373.

    b.  <u>Centralization Will Be Inefficient</u>

Centralizing these cases will require one judge to apply the laws of at least twenty-two states, and/or conduct as many choice-of-law analyses. As a result, centralization will increase complexity and be less efficient. That is precisely why the San Francisco Superior Court granted Uber's forum non conveniens motion, finding that the "adverse effect" of tasking one court with applying multiple states' laws "would be dramatically magnified" by the inclusion of additional out-of-state cases. Ex. 1 at 16. Not only do states-of-injury have a greater interest in "cases involving injuries that occur within their borders," but courts in those states are more familiar with state-specific laws and can more efficiently resolve disputes. *Id.* at 14. That is also why the Panel denied centralization in *Uber Wage & Hour*, concluding that centralization would not "further the just and efficient conduct of the litigation" where the cases involved "state-specific legal and factual inquiries." 158 F. Supp. 3d at 1373.

Plaintiffs contend that centralization will "further fairness and efficiency by avoiding inconsistent pretrial rulings," arguing that "numerous identical motions have been filed (or are anticipated to be filed)," for which "[i]nconsistent rulings" will be "inevitable." Mot. at 11. That is simply not true. The filed motions are not "identical" or even similar - - Uber moved to dismiss the entire complaint in some cases, but only a subset of claims in others. *Compare* Ex. 5, *with* Ex. 6. The motions are also not "identical" because they are based on entirely different laws. For example, one motion relies on an Illinois statute

17

providing that TNCs like Uber are not common carriers, and argued that the negligence claims should be dismissed on that basis. *See* Ex. 5 at 4. By contrast, others do not challenge the common carrier allegation at the pleading stage, but argue that certain claims (for example, vicarious liability) cannot be sustained even assuming common carrier status. *See* Ex. 6 at 8-9. The point is that no rule or principle guarantees identical results under different laws and different legal theories. If courts reach different rulings under different state laws, that makes the rulings different, not "inconsistent."

Plaintiffs incorrectly argue that these cases "involve the same core discovery" about the same "underlying factual allegations and injuries." Mot. at 10. As in *Varsity Spirit*, the core discovery will be about the particulars of the incident as to each plaintiff, which Plaintiffs' counsel has admitted "widely vary" with respect to "details and severity." *See* n.2, *supra.* Plaintiffs contend there will be common "fact witnesses, and general liability and causation experts," Mot. at 10 - - but provide no basis for that assertion and do not address the case-specific witnesses discussed above. And there will be no "general liability and causation experts" - - these are not toxic tort cases implicating "general causation."

Overwhelming case-specific inquiries are necessary in each case, and centralization will do little to save work or minimize duplicative discovery. Instead, centralization - - by tasking one judge with managing and adjudicating individual cases based on different parties, different tortfeasors, different facts, different evidence, and different laws - - will only serve to increase complexity and decrease efficiency.

c.   Informal Coordination Is Preferable To Centralization

"Centralization under Section 1407 should be the last solution after considered review of all other options." *Baby Food*, 544 F. Supp. 3d at 1377. Where it is possible,

18

informal or "voluntary coordination," is "preferable to centralization." *Uber Wage & Hour*, 158 F. Supp. 3d at 1373.

To the extent there is any risk for duplicative "corporate discovery," Mot. at 4, informal coordination can "minimize the possibility of duplicative discovery." *In re 21st Century Prods. Inc. "Thrilsphere" Cont. Litig.*, 448 F. Supp. 271, 273 (J.P.M.L. 1978). Informal coordination measures can be efficiently tailored to address the particular discovery issue, and unlike indiscriminate centralization, will avoid the concerns of inconvenience and inefficiency that led the San Francisco Superior Court to decline nationalizing these individual cases. Uber is willing to work to make discovery efficient for all parties and the various courts in the states where these incidents allegedly occurred.

Informal coordination is particularly achievable here, given the limited number of involved counsel and actions. Further, the "parties and the involved courts already have demonstrated they are willing to informally coordinate, as they implemented a staggered briefing schedule across the actions for motions to dismiss." *Varsity*, 2023 WL 3828645, at \*2. There is thus no reason to resort to the "last solution" of centralization. *Baby Food*, 544 F. Supp. 3d at 1377.

### 3.  Plaintiffs Fail To Show That The Northern District Of California Is The Most Suitable Forum

Even assuming that centralization is appropriate, there is no principled basis to select the transferee court proposed by Plaintiffs: the Northern District of California. That district actually makes the least sense because no plaintiff resides in California. Multiple cases involve incidents in states such as Texas and North Carolina. Forums in those states would thus be more convenient for a greater number of parties and witnesses. Counsel may

19

choose for tactical reasons to file out-of-state cases in the Northern District, but that does not make that district a suitable forum for the parties.[12]

There is nothing about the Northern District of California that renders it uniquely suited to oversee these diversity jurisdiction cases, which necessarily involve plaintiffs who reside *outside of California*. If the Panel grants centralization, it should consider the many capable judges - - for example, Judge James C. Dever of the Eastern District of North Carolina - - that have ably managed these pending cases in judicial districts across the country, and that have significantly lighter caseloads. No MDLs are currently pending in the Eastern District of North Carolina, in contrast to the seventeen MDLs centralized in the Northern District of California - - the highest number of any federal judicial district - - with cumulative active cases totaling well over 10,000.[13]

## IV.   **CONCLUSION**

For the foregoing reasons, the Panel should deny Plaintiffs' motion.

---

[12] For that reason, the San Francisco Superior Court granted Uber's forum non conveniens motion, holding that the substantial majority of cases filed in the California court (roughly 1,000 out of 1,500) involved non-California incidents and should have been filed in the states-of-injury. *See* Ex. 1.

[13]*MDL Statistics Report*, J.P.M.L. (Aug. 15, 2023) <https://tinyurl.com/ms8x9kkf>. One of the joining plaintiffs has suggested, without explanation, the District of Massachusetts as a venue. That district is distant from the vast majority of the plaintiffs, and the district already has been assigned five MDLs spanning in excess of 5,000 cases (nearly 1,000 of them active). *Id.*

20

DATED:  August 18, 2023           **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By:    */s/ Robert Atkins*
        **ROBERT ATKINS**
        1285 Avenue of the Americas
        New York, NY 10019
        ratkins@paulweiss.com
        Telephone: (212) 373-3183
        Facsimile: (212) 492-0183

        *Counsel for Defendant-Respondents*
        UBER TECHNOLOGIES, INC.
        and RASIER, LLC

21

**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation | MDL Docket No. 3084 |

**DECLARATION OF ROBERT ATKINS IN SUPPORT OF**
**UBER'S RESPONSE TO PLAINTIFFS' MOTION FOR TRANSFER**
**OF ACTIONS UNDER 28 U.S.C. § 1407 FOR COORDINATED**
**OR CONSOLIDATED PRETRIAL PROCEEDINGS**

I, Robert Atkins, declare as follows:

1.      I am an attorney at the law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP, attorneys of record for Defendants Uber Technologies, Inc. and Rasier, LLC (collectively, "Uber"). I am in good standing and a member of the Bar of the State of New York. I submit this declaration in support of Uber's Response to Plaintiffs' Motion for Transfer of Actions Under 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings. I know the following facts to be true of my own knowledge, except those matters stated to be based on information and belief, and if called to testify, I could competently do so.

2.      Attached as **Exhibit 1** is a true and correct copy of the Superior Court of California for the County of San Francisco's January 23, 2023, Order on Uber's Motions to Stay or Dismiss Based on Forum Non Conveniens.

3.      Attached as **Exhibit 2** is a true and correct copy of the Superior Court of California for the County of San Francisco's February 28, 2023, Order re Application of

Page 1 of 2

APP117

January 23, 2023, Order to All Cases in This Proceeding.

4.    Attached as **Exhibit 3** is a true and correct copy of the Superior Court of California for the County of San Francisco's June 22, 2023, Order on Uber's Demurrer to Plaintiffs' Master Long-Form Complaint.

5.    Attached as **Exhibit 4** is a true and correct copy of the Northern District of California's June 2, 2023, Related Case Order in *Hylin* v. *Uber Techs.*, 23-cv-01630-AMO (N.D. Cal. June 2, 2023).

6.    Attached as **Exhibit 5** is a true and correct copy of Uber's Motion to Dismiss and Strike in *C.S.* v. *Uber Techs.*, 23-cv-02766 (N.D. Ill. July 6, 2023).

**7.**    Attached as **Exhibit 6** is a true and correct copy of Uber's Motion to Dismiss in *Jane Doe LSA 340* v. *Uber Techs.*, 23-cv-01165 (N.D. Cal. June 12, 2023).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 18, 2023 in San Francisco, California.


                                                            */s/ Robert Atkins*
                                                            Robert Atkins


Page 2 of 2

# EXHIBIT 1

1

2

3

4

5

6

7

**F I L E D**

San Francisco County Superior Court

JAN 2 3 2023

CLERK OF THE COURT

BY: _____
                        Deputy Clerk

8                    SUPERIOR COURT OF CALIFORNIA

9                      COUNTY OF SAN FRANCISCO

10                          DEPARTMENT 304

11

| | |
|---|---|
| COORDINATION PROCEEDING SPECIAL TITLE [RULE 3.550] **IN RE UBER RIDESHARE CASES** | Case No. CJC-21-005188 JUDICIAL COUNCIL COORDINATION PROCEEDING NO. 5188 |
| <u>This Order Relates to:</u> *Jane Doe LSA 35 v. Uber Techs., Inc., et al.,* CGC-21-592274 *Jane Doe LSA WHBE 3 v. Uber Techs., Inc., et al.,* CGC-20-584649 | ORDER ON DEFENDANTS AND CROSS-COMPLAINANTS UBER TECHNOLOGIES, INC. AND RASIER LLC'S MOTIONS TO STAY OR DISMISS BASED ON *FORUM NON CONVENIENS* |

12

13

14

15

16

17

18

19

20

21

22

23          On January 4, 2023, the motions of Defendants Uber Technologies, Inc. and Rasier LLC to stay or

24   dismiss both of these actions based on *forum non conveniens* came on for hearing before the Court.

25   Having considered the pleadings and papers filed in the case, and the argument of counsel presented at

26   the hearing, both motions are hereby granted.

27

28                                        - 1 -

## PROCEDURAL AND FACTUAL BACKGROUND

These coordinated cases involve individual claims of sexual misconduct or assault against Defendants Uber Technologies, Inc. and Rasier, LLC (together, "Uber"). In general, the actions arise out of Plaintiffs' use of the Uber app to arrange trips resulting in alleged sexual misconduct or assault against Plaintiffs by their Uber driver. Plaintiffs in the actions allege that Uber failed to implement appropriate safety precautions to protect its passengers, such as adequate screening of drivers, adequate safety features of the application, and adequate training of drivers regarding sexual harassment and/or sexual assault. The actions assert a wide range of claims, including general negligence; negligent hiring, retention, and supervision; common carrier negligence; negligent failure to warn and failure to recall; vicarious liability for torts committed by Uber drivers, including sexual assault, sexual battery, and false imprisonment; intentional and negligent misrepresentation; negligent and intentional infliction of emotional distress; breach of contract; strict products liability for design defect and failure to warn; intentional concealment; negligence by misfeasance and nonfeasance; and fraud.

By an order dated December 9, 2021, the Court (Hon. Andrew Y.S. Cheng) granted the petition for coordination with respect to 86 cases originally filed in San Francisco, Sacramento, Santa Clara, Kern, and Los Angeles counties and ordered those actions stayed. Since that time, over 1,300 additional cases have been the subjects of add-on orders from this Court. While nearly all of the coordinated cases were filed in San Francisco County in the first instance, the vast majority of them—according to Uber, nearly three-quarters of those cases where the location of the alleged incident is known—involve incidents of sexual misconduct or assault that occurred outside California, in other states and even, apparently, in foreign countries.

At the initial case management conference held on March 4, 2022, the Court expressed the view that Uber's anticipated motions to stay or dismiss on *forum non conveniens* grounds represented a threshold matter that it should resolve in the first instance so that it might determine which cases would remain in the coordinated proceeding in California and which would be refiled in other states. Accordingly, the Court directed the parties to meet and confer regarding discovery necessary to bring and oppose *forum non conveniens* motions. On August 10, 2022, the Court issued a Case Management Order

-2-

*Uber Rideshare Cases JCCP 5188 Order on Defendants' Motions to Stay or Dismiss Based on Forum Non Conveniens*

1   setting a schedule for such discovery based on the parties' detailed agreement, which provided, among

2   other things, that each Plaintiff would fill out fact sheets and produce copies of their trip receipts and

3   Uber would respond to special interrogatories by producing data and/or written responses.

4        Uber now has filed motions to stay or dismiss based on *forum non conveniens* or, in the

5   alternative, to dismiss for failure to join an indispensable party.[1]  Those motions are directed at two

6   individual cases that fall into two principal categories of out-of-state cases: so-called "Category 1" cases,

7   where the alleged incident occurred outside California and both the plaintiff and the alleged assailant

8   reside outside California; and "Category 2" cases, where the alleged incident occurred outside California,

9   the alleged assailant resides outside California, and the plaintiff resided outside California at the time of

10   the alleged incident and subsequently moved to California.  (LSA Opening Brief, 7.)[2]  Certain pertinent

11   case-specific facts relating to each of the motions are summarized below, while others are addressed in

12   the Discussion section of this Order.[3]

13       **A.  Jane Doe LSA 35 (Category 1)**

14        Plaintiff Doe LSA 35 alleges that in November 2017, she arranged for a ride utilizing the Uber app

15   and was sexually assaulted by the Uber driver.  (Atkins Decl., Ex. 1 ¶ 23.)  It is undisputed that the

16   incident took place in Texas, where Plaintiff resided at the time and currently resides.  (Exs. 10, 12.)  In

17   response to discovery, Plaintiff identified her then-boyfriend as a witness likely to have discoverable

18   information, as well as a police officer and investigator and a health care provider from whom she sought

19   treatment, all in Texas.  (Exs. 10, 13; Levin Decl., Exs. B, C.)  It is undisputed that the Uber driver also is

20   a Texas resident.  (Exs. 11, 15, 16.)  He entered a no contest plea and was found guilty of a criminal

21   charge arising out of the incident.  (Levin Decl., Ex. D.)

22        Plaintiff filed her complaint in San Francisco Superior Court on June 16, 2021.  (Ex. 1.)  On July

23

---

24   [1] Because the Court believes that Uber's *forum non conveniens* motions are well-founded, it need not reach the alternative ground.

25   [2] Uber represents that "most of the cases" fall into Category 1, but that "several" of the out-of-state cases fall into Category 2.  (WHBE Opening Brief, 7.)  In appendices to its papers, Uber lists the cases that

26   discovery to date shows fall within each of the categories.  There appear to be 925 cases listed under Category 1 and 37 under Category 2.  Thus, Uber's motions potentially bear on the proper forum for more

27   than two-thirds of the over 1,400 coordinated cases.

28   [3] The Court has endeavored not to divulge any detailed information that any party has filed under seal.

- 3 -

1   2, 2021, Uber filed a cross-complaint against Roes 1-100 seeking equitable indemnity, contribution,

2   declaratory relief, and contractual indemnity for Plaintiff's alleged damages. By joint stipulation and

3   order filed July 30, 2021, the case was stayed pending a determination of Plaintiffs' coordination petition.

4       **B.  Jane Doe WHBE 3 (Category 2)**

5          Plaintiff Doe WHBE 3 alleges that in January 2020, she arranged for a ride utilizing the Uber app

6   and was sexually assaulted by the Uber driver. (Atkins Decl., Ex. 1 ¶ 3.) Although Plaintiff is currently a

7   California resident (*id.* ¶ 5), it is undisputed that the incident occurred in Hawaii, where she was then

8   residing and working. (Exs. 12-14; Cubberly Decl., Exs. D, E.) Likewise, the driver who allegedly

9   assaulted her, William Murray, is a Hawaii resident. (Ex. 15.) In the parties' forum-related discovery,

10   Plaintiff did not identify any witnesses likely to have discoverable information (Ex. 12), and she neither

11   reported the incident to law enforcement nor sought medical treatment in Hawaii. (Cubberly Decl., Ex.

12   E.)

13          Plaintiff filed her complaint in San Francisco Superior Court on June 8, 2020. By order filed

14   August 3, 2020, the Court denied Uber's motion to stay or dismiss based on *forum non conveniens* on the

15   grounds, among others, that where the plaintiff is a California resident, the plaintiff's choice of a forum

16   should rarely be disturbed, that Defendants had not shown that Plaintiff was not a California resident, and

17   that on the record then before the Court, Uber had not established the driver's residence or that any other

18   evidence or witnesses were located in Hawaii. After Uber filed a cross-complaint against the driver, Mr.

19   Murray, the Court granted his motion to quash service of summons for lack of personal jurisdiction,

20   finding among other things that Mr. Murray is a resident of Honolulu, Hawaii and that Plaintiff's claims

21   "do not arise out of or relate to Murray's contacts with the [California] forum." (July 26, 2021 Order, 2.)

22   While Uber later filed a renewed motion to stay or dismiss based on *forum non conveniens*, that motion

23   was taken off calendar when the order granting the petition for coordination and request for a stay was

24   granted. On September 14, 2021, Uber filed a complaint against Mr. Murray in Hawaii seeking

25   indemnity and declaratory relief arising out of the action.

26

27

28

## **LEGAL STANDARD**

"When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just." (Code Civ. Proc. § 410.30(a); see also *id.* § 418.10(a)(3).)  *Forum non conveniens* is "an equitable doctrine invoking the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action may be more appropriately and justly tried elsewhere." (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751.)[4]

In ruling on a motion based on *forum non conveniens*, the court engages in a two-step process. First, it decides whether the alternative forum is a suitable place for trial. (*National Football League v. Fireman's Fund Ins. Co.* (2013) 216 Cal.App.4th 902, 917.)  If it makes that finding the court next considers the private interests of the litigants and the interests of the public in retaining the action for trial in California. (*Id.*)

The private interest factors are those that make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process for attendance of unwilling witnesses. (*Stangvik*, 54 Cal.3d at 751; *National Football League*, 216 Cal.App.4th at 917.)  The residences of the plaintiff and defendant are also relevant.  If the plaintiff is a California resident, then the plaintiff's choice of forum is entitled to a presumption of convenience, and should rarely be disturbed unless the balance is strongly in favor of the defendant. (*Stangvik*, 54 Cal.3d at 754; *National Football League*, 216 Cal.App.4th at 917.)  If the plaintiff is not a California resident, however, the plaintiff's choice of forum is "entitled to due deference," but "not a strong presumption." (*Stangvik*, 54 Cal.3d at 754-755; *National Football League*, 216 Cal.App.4th at 929.)

The public interest factors include avoidance of overburdening local courts with congested

---

[4] Plaintiffs misplace their reliance on cases involving personal jurisdiction rather than *forum non conveniens*. (E.g., LSA Opposition, 20.)  "Obviously, the proposition that a court having jurisdiction must exercise it, is not universally true.  A principal reason for not exercising jurisdiction, recognized by state and federal courts, is that the forum is not convenient." (*Boaz v. Boyle & Co.* (1995) 40 Cal.App.4th 700, 706 (cleaned up).)

- 5 -

1   calendars, protecting the interests of potential jurors so that they are not called upon to decide cases in

2   which the local community has little concern, and weighing the competing interests of California and the

3   alternate jurisdiction in the litigation. (*Stangvik*, 54 Cal.3d at 751; *National Football League*, 216

4   Cal.App.4th at 917.) "Also of potential concern is the interest in trying the case in a forum familiar with

5   the applicable law, and the interest in avoiding unnecessary conflicts of laws." (*Fox Factory, Inc. v.*

6   *Superior Court* (2017) 11 Cal.App.5th 197, 204 (cleaned up).)

7       The moving defendant bears the burden of proof on a motion based on *forum non conveniens*.

8   (*Stangvik*, 54 Cal.3d at 918; *Fox Factory*, 11 Cal.App.5th at 204.)  The burden is not an insuperable one;

9   in particular, the defendant need not show that California is a "seriously inconvenient" forum. (See *Fox*

10  *Factory*, 11 Cal.App.5th at 204-207 [rejecting standard adopted in *Ford Motor Co. v. Insurance Co. of*

11  *North America* (1995) 35 Cal.App.4th 604]; *National Football League*, 216 Cal.App.4th at 930-931.)

12  "[T]he evidence before the court, which may include affidavits of the parties, discovery responses, and

13  the undisputed general knowledge of the nature of the action, need only be sufficient to give the court the

14  ability to soundly exercise its discretion regarding the applicability of the general considerations of the

15  *Stangvik* . . . factors to the question of forum non conveniens." (*Morris v. AGFA Corp.* (2006) 144

16  Cal.App.4th 1452, 1462.)  To overcome the defendant's showing, the plaintiff may not rely upon

17  unsupported allegations. (See *Hemmelgarn v. Boeing Co.* (1980) 106 Cal.App.3d 576, 589 ["If a court

18  were required to accept any allegation made by a plaintiff as true, the likelihood of the motion based on

19  forum non conveniens being granted in that case would be substantially reduced."].)

20       The initial determination of whether the alternative forum is suitable is nondiscretionary. (*Fox*

21  *Factory*, 11 Cal.App.5th at 204.)  Where the balancing of the public and private interest factors is

22  reached, the factors are applied flexibly. (*Stangvik*, 54 Cal.3d at 751; *Fox Factory*, 11 Cal.App.5th at

23  204.)  The trial court exercises its discretion in balancing the factors. (*Stangvik*, 54 Cal.3d at 751.)

24

25                **PERTINENT EVIDENCE AND AUTHORITY**

26       At the threshold, the Court is constrained to address what is and is not pertinent to its ruling on the

27  motions.  First, both parties rely on a wide variety of newspaper articles, television reports, academic

28                       - 6 -

articles, blog entries, websites, advocacy pieces, and other secondary authorities.  The Court may not take judicial notice of such materials for the truth of matters stated in them (and for the most part neither side has sought such notice in any event).  (E.g., *Voris v. Lampert* (2019) 7 Cal.5th 1141, 1147 fn. 5 [newspaper articles "are not proper authorities to establish the truth of the matters asserted therein"]; *Malek Media Group, LLC v. AXQG Corp.* (2020) 58 Cal.App.5th 817, 824-827 [declining to take judicial notice of "the existence of a contemporary social movement" or of press releases and other exhibits for the truth of their contents]; *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 194 [declining to take judicial notice of the truth of the contents of websites and blogs, including those of newspapers].)  While the Court acknowledges that the *forum non conveniens* inquiry is not governed by strict evidentiary standards (*Morris*, 144 Cal.App.4th at 1462), the Court has considered these materials primarily as they may bear on the general considerations it is required to weigh under *Stangvik*.[5]

Second, both parties extensively cite to multiple unpublished trial court rulings, including prior rulings by this and other state courts in both individual cases and coordinated proceedings.  While relevant federal decisional opinions generally may be considered by a state court, even if they are unpublished,[6] the same is not true of unpublished state trial court rulings, which (as Plaintiffs correctly acknowledge) have no precedential value.  (*Bolanos v. Superior Court* (2008) 169 Cal.App.4th 744, 761; see also, e.g., *Santa Ana Hospital Medical Center v. Belshe* (1997) 56 Cal.App.4th 819, 831.)  The Court considered these materials only to the degree that they may have persuasive value.  Both parties' requests for judicial notice of unpublished state trial court rulings are denied.[7]

---

[5] The parties have filed uncontested motions to seal certain materials.  The Court finds that the factors set forth in California Rule of Court 2.550(d) are satisfied, and grants those motions.

[6] "It does not violate the California Rules of Court to cite an unpublished federal opinion.  They may be persuasive, although not binding, authority." (*Western Heritage Ins. Co. v. Frances Todd, Inc.* (2019) 33 Cal.App.5th 976, 989 fn. 6.)

[7] The Court has taken notice of its own prior rulings, including the order granting coordination (LSA, Ex. A) and the jurisdictional ruling granting the driver's motion to quash for lack of personal jurisdiction in *Jane Doe WHBE 3*, which bears on the merits of Uber's arguments regarding the potential for conflicting rulings and whether the driver is an indispensable party.

- 7 -

**DISCUSSION**

I.   **THERE IS A SUITABLE ALTERNATIVE FORUM FOR EACH CASE.**

"An alternative forum is suitable if it has jurisdiction and the action in that forum will not be barred by the statute of limitations." (*Guimei v. Gen. Electric Co.* (2009) 172 Cal.App.4th 689, 696.) "'[I]t is sufficient that the action can be brought, although not necessarily won, in the alternative forum.'" (*Id.* at 696.) "It is well settled under California law that the moving parties satisfy their burden on the threshold suitability issue by stipulating to submit to the jurisdiction of the alternative forum and to waive any applicable statute of limitations." (*Hahn v. Diaz-Barba* (2011) 194 Cal.App.4th 1177, 1190.) Uber has offered to enter into just such a stipulation.  Plaintiffs do not dispute that there is a suitable forum for each of the cases affected by Uber's motions.  (See WHBE Opposition, 7 ["Ms. Doe doesn't deny that Hawaii is a suitable forum"].)

II.   **THE PRIVATE INTEREST FACTORS**

The private interests of the litigants include their residences and the location and availability of evidence and witnesses.  (*Stangvik*, 54 Cal.3d at 751, 754-757.)  The Court addresses each of the pertinent factors in turn.

   **A. The Parties' Residences**

Both Plaintiffs assert that a plaintiff's choice of forum is entitled to great deference.  As noted above, however, the presumption of convenience that attaches to a plaintiff's choice of forum applies only to California residents.  (*Stangvik*, 54 Cal.3d at 754-755; *National Football League*, 216 Cal.App.4th at 929.)  Thus, that Doe LSA 35, a Texas resident, chose to file suit in California "is not a substantial factor in favor of retaining jurisdiction here." (*Stangvik*, 54 Cal.3d at 755.)

Doe LHBE 3 stresses that in 2006, the Court of Appeal quoted *Ford Motor Co. v. Insurance Co. of North America* (1995) 35 Cal.App.4th 604 for the propositions that "[a] plaintiff's choice of forum is entitled to great weight even though the plaintiff is a nonresident" and that a plaintiff's choice of forum can be disturbed only "if the balance is strongly in favor of the defendant." (*Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452, 1464; LHBE Opposition, 1, 7.)  However, those propositions are no longer

- 8 -

correct statements of California law, if they ever were.[8]  As one court explained,

> [A] resident of one of our sister states who files suit in California is entitled to due deference under the circumstances presented, not a strong presumption, in favor of its choice of forum.  That deference is to be weighed and balanced by the trial court along with all the other pertinent factors, including the defendant's residence or principal place of business, and has no direct bearing on the moving defendant's burden of proof.  We therefore disagree with the contrary language in cases such as *Ford*, which assert that all U.S. citizen plaintiffs' choices of forum are entitled to great weight.

(*National Football League*, 216 Cal.App.3d at 929-930; see also *Fox Factory, Inc.*, 11 Cal.App.5th at 206 [agreeing with analysis in *National Football League* and rejecting the suggestion that "in every case great weight is required to overcome a nonresident plaintiff's forum choice"].)

Although Doe LHBE 3 currently is a California resident, she resided in Hawaii at the time of the alleged incident.  (Atkins Decl., Ex. 12 at 3.)  While her choice of forum is entitled to some deference in the analysis, California does not have a strong interest in assuring her a forum for the redress of grievances suffered in another state that provides her a suitable forum based on the happenstance that she later moved to California.  (See *Henderson v. Superior Court* (1978) 77 Cal.App.3d 583, 598 [the general rule that a court should stay rather than dismiss a case on forum non conveniens grounds if the plaintiff is a California resident is limited to "plaintiffs who were bona fide California residents at the time their causes of action arose."].)[9]

"Defendant's residence is also a factor to be considered in the balance of convenience.  If a corporation is the defendant, the state of its incorporation and the place where its principal place of business is located is presumptively a convenient forum."  (*Stangvik*, 54 Cal.3d at 755.)  However, "this presumption is not conclusive."  (*Id.* at 756.)  "A resident defendant may overcome the presumption of convenience by evidence that the alternate jurisdiction is a more convenient place for trial of the action."

---

[8] "Many cases hold that the plaintiff's choice of a forum should rarely be disturbed unless the balance is strongly in favor of the defendant.  But the reasons advanced for this frequently reiterated rule apply only to residents of the forum state . . . ."  (*Stangvik*, 54 Cal.3d at 754 (cleaned up).)

[9] Still less can a plaintiff who is a resident of a foreign country claim entitlement to any presumption in favor of her choice of a California forum.  (*Stangvik*, 54 Cal.3d at 755 ["Where, however, the plaintiff resides in a foreign country, . . . the plaintiff's choice of forum is much less reasonable and is not entitled to the same preference as a resident of the state where the action is filed."]; see also *David v. Medtronic, Inc.* (2015) 237 Cal.App.4th 734, 741, fn. 7; *Fox Factory*, 11 Cal.App.5th at 206.)  While Uber asserts that one of the coordinated cases arises from an incident that occurred in Paraguay, the record is unclear as to the residence of the plaintiff in that case.  One of Uber's exhibits shows that of the drivers' last known residences, three were in Paraguay, Bolivia, and Mexico.  (Atkins Decl., Ex. 11.)

- 9 -

1   (*Id.* (footnote omitted).)  Here, while Uber is incorporated in Delaware and has its principal place of

2   business in California, it shows that it has multiple regional offices in states around the country, as well as

3   call centers that provide specialized support for critical incidents reported by Uber App users.  (Gilmore

4   Decl. ¶¶ 4-5.)  Thus, while this presumption favors Plaintiffs, it is not especially strong, and may be

5   overcome by other evidence.

6   **B.   The Location Of Evidence And Witnesses**

7   As in *Stangvik*, the parties "disagree sharply" as to how the Court should assess and weigh in the

8   balance the location and availability of evidence and witnesses.  (54 Cal.3d at 756.)  Uber emphasizes that

9   in each case, the driver—the alleged perpetrator of the sexual assaults of which Plaintiffs complain—is a

10   resident of another state, and hence would not be subject to compulsory attendance to testify at trial in

11   California.  Uber also contends that other non-party witnesses, including friends identified by Plaintiffs,

12   police officers or other public safety personnel who may have responded to the incidents, and health care

13   providers and mental health professionals who may have treated Plaintiffs for their injuries, similarly may

14   not be subject to compulsory process.  Uber also stresses the importance of live testimony to the

15   presentation of the cases.  Plaintiffs, for their part, respond that the drivers' and other witnesses'

16   depositions could be taken, and that there are very few such third-party witnesses in the two exemplar

17   cases in any event.  Finally, Uber contends that any documentary evidence relating to the alleged

18   incidents is located in the states where they occurred.

19   For their part, Plaintiffs place a great deal of emphasis on the location of Uber's corporate

20   headquarters in California, where they contend that many witnesses and documents bearing on Uber's

21   alleged liability on various theories may be found.[10]  Uber, in response, points out that it is regulated by

22   states and localities, and conducts its own business operations on a state or regional basis, and that many

23   of the most pertinent witnesses it identified in its interrogatory responses are located outside California.[11]

24

25   [10] Plaintiffs assert that according to its discovery responses, Uber has at least 1,112 current California
employees and 1,748 former California employees who worked in subject matters relevant to this

26   litigation.  (WHBE Opposition, 4.)  As those numbers make clear, Plaintiffs define the "relevant" subject
matters so broadly as to render the analysis nearly meaningless.

27   [11] Uber shows that key corporate witnesses who are responsible for safety policies and programs reside
outside California, and that its operations and decision-making are spread across multiple offices in a

28   number of different states.  (Reply, 10-11; Gilmore Decl. ¶ 4.)

- 10 -

How the balance between these competing arguments is to be struck turns in large part on how the cases are characterized: as individual sexual assault/misconduct cases in which Plaintiffs claim Uber is vicariously liable due to its deficient safety practices, or as corporate misconduct cases in which the individual Plaintiffs' claims are, in effect, merely illustrative of their larger claims. The former view is far more persuasive to the Court since, as one federal court has pointed out, "to prevail in this case Doe must first prove that an assault took place." (*Doe v. Uber Technologies, Inc.* (N.D. Cal. May 31, 2017) 2017 WL 2352032, at *3; see also *id.* at *6 ["While some Uber party-witnesses may well reside in this District, their testimony will only be relevant at trial if Doe is able to prove her underlying battery and assault claims"] [granting motion to transfer venue of tort suit against Uber based upon alleged sexual assault perpetrated against plaintiff by Uber driver in Minnesota, where the majority of evidence and key third party witnesses are in Minnesota and Minnesota's local interest in deciding the controversy is substantially stronger than California's].) The Court need not definitively resolve who has the better of this debate in order to decide these motions. (See *Stangvik*, 54 Cal.3d at 757 ["Before deciding whether the private convenience of the parties weighs in favor of plaintiffs or defendants, we consider the interests of the California public in retaining the trial of the actions in this state."].)

## III.   THE PUBLIC INTEREST FACTORS WEIGH HEAVILY IN FAVOR OF TRANSFER.

In the Court's view, the public interest factors involved weigh heavily in favor of transfer, and warrant granting Uber's motions. Again, the Court addresses each of those factors in turn.

### A.  Avoiding Overburdening Local Courts With Congested Calendars

As the *Stangvik* Court recognized, "preventing court congestion resulting from the trial of foreign causes of action is an important factor in the forum non conveniens analysis." (*Stangvik*, 54 Cal.3d at 758.) California courts—and this Court in particular—are overburdened with litigation as a result of the backlog of cases stemming from the pandemic. Transferring these two cases—and many others like them—therefore would avoid overburdening congested California courts with foreign cases.

*Stangvik* and other cases are closely on point in this regard. In *Stangvik*, foreign plaintiffs filed suit in California against Shiley, a California corporation, for products liability arising out of alleged

- 11 -

*Uber Rideshare Cases* JCCP 5188 Order on Defendants' Motions to Stay or Dismiss
Based on *Forum Non Conveniens*

1   defects in heart valves received by plaintiffs' decedents.  Defendants asserted that the cases should be

2   tried in the countries in which the plaintiffs resided, the valves were sold, decedents received medical

3   care, alleged fraudulent misrepresentations were made, and evidence regarding the provision of health

4   care and other matters existed.  (*Id.* at 750.)  Plaintiffs countered that California was the more convenient

5   place of trial because the valves were designed, manufactured, tested and packaged in California.  (*Id.*)

6   On the question of burden, the court noted that foreign plaintiffs had filed 108 actions in California

7   against Shiley relating to the heart valves, and that, according to plaintiffs, about one million pages of

8   documents are relevant to their actions, and the testimony of hundreds of witnesses might be required.

9   (*Id.* at 758.)  Defendants stated that the number of cases filed against Shiley involving the heart valves had

10  increased to 235 by the time the briefs were filed.  (*Id.*)

11        The Court found that the public interest factors "clearly" favored defendants' position, observing,

12  "If we hold that the present cases may be tried in California, it will likely mean that the remaining 108

13  cases involving the Shiley valve will also be tried here.  The burden on the California courts of trying

14  these numerous complex actions is considerable."  (*Id.* at 763.)  Further, the Court rejected the argument

15  that transferring the foreign cases would undermine the deterrent effect on Shiley, a California-based

16  manufacturer: "California's interest in deterring future improper conduct by defendants would be amply

17  vindicated if the actions filed by California resident plaintiffs resulted in judgments in their favor."  (*Id.*)

18        Similarly, in *Hansen v. Owens-Corning Fiberglas Corp.* (1996) 51 Cal.App.4th 753, the court

19  affirmed an order staying two actions brought by California residents seeking to recover for personal

20  injuries and wrongful death allegedly caused by asbestos exposure.  Most of the decedent's and his wife's

21  asbestos exposure was alleged to have occurred in Montana, where the decedent had lived and worked.

22  The court held that the public interests weighed in favor of Montana, observing,

> California courts are already overburdened with asbestos litigation and have little or no interest in
23 litigation involving injuries incurred outside of California by non-residents.  It seems unduly
    burdensome for California residents to be expected to serve as jurors on a case having so little to
24 do with California.  The competing interests of California and Montana strongly weigh in favor of
    litigating this matter in Montana.
25

26  (*Id.* at 760; see also *Campbell v. Parker-Hannifin Corp.* (1999) 69 Cal.App.4th 1534, 1542 ["Trial of the

27  action here would contribute to court congestion, as there are 20 separate plaintiffs whose damages would

28

- 12 -

1  have to be considered."].)

2      Here, the number of cases pending in this Court far exceed the number of cases at issue in

3  *Stangvik*, *Hansen*, and *Campbell*.  The corresponding burden on this Court therefore would be

4  considerably greater.[12]  This factor therefore weighs heavily in favor of transfer.

5      Plaintiffs argue that granting the motions would impose burdens on other courts and judges around

6  the country where multiple cases presumably would be refiled, and that the Court should consider the

7  burden factor in light of the judicial system as a whole.  They point to language in the California Supreme

8  Court's decision in *Bristol-Myers Squibb Co. v. Superior Court* (2016) 1 Cal.5th 783, *rev'd* (2017) 137

9  S.Ct. 1773, a products liability action brought against a pharmaceutical manufacturer by both California

10  residents and nonresidents in which plaintiffs alleged they were injured by a prescription drug.  The

11  majority reasoned in part as follows:

12      [Defendant] argues that it would be a waste of California's judicial resources to provide a forum
    for the nonresident plaintiffs.  To be sure, a single court hearing the claims of hundreds of
13      plaintiffs is a significant burden on that court.  But the overall savings of time and effort to the
    judicial system, both in California and interstate, far outweigh the burdens placed on the
14      individual forum court.  The alternative the [defendant] proposes would result in the duplication of
    suits in numerous state or federal jurisdictions at substantial costs to both the judicial system and
15      to the parties, who would have to deal with disparate rulings on otherwise similar procedural and
16      substantive issues.

17  (*Id.* at 811-82.)  The quote is taken out of context, however, as the California Supreme Court there was

18  addressing factors bearing on a state's exercise of specific personal jurisdiction over a nonresident

19  defendant, and its holding in that regard was later reversed by the U.S. Supreme Court.[13]  As the Court

20  itself pointed out, *forum non conveniens* presents distinct issues.  (*Id.* at 809 & fn. 5.)  While this Court's

21  rulings may well have an indirect effect on the courts of other states, nothing in *Stangvik* or California law

22  mandates consideration of those effects in the *forum non conveniens* analysis.  Moreover, as discussed in

23

---

24  [12] Plaintiffs attempt to distinguish *Stangvik* on the ground that the actions in that case were not
coordinated before a single judge.  As discussed below, the Court does not believe that the pendency of a
25  coordination proceeding renders a *forum non conveniens* motion unavailable in actions included in that
proceeding.  As the California Supreme Court recognized in the language quoted below, the burden on the
26  Court of handling large numbers of cases brought by nonresidents is likely to be significant.
[13] Even in that different context, only Justice Sotomayor, who authored the sole dissent in that case,
27  placed any weight on the argument regarding the burden on other courts.  (See 137 S.Ct. at 1789
(dissenting op. of Sotomayor, J.).)

28

1  the next section, any additional burden on foreign states' courts is likely to be commensurate with their

2  interest in resolving cases brought by their own residents arising out of injuries they occurred in those

3  states.

### B. California's Interest Is Outweighed By That Of The States Where The Injuries Occurred

6      A second critical factor in the public interest balance relates to the competing interests of

California, on the one hand, and Texas and Hawaii, on the other.  Because the harms Plaintiffs allegedly

sustained occurred outside California, California's interest in providing Plaintiffs a forum is outweighed

by that of the states where their injuries occurred.  In general, California courts "have little or no interest

in litigation involving injuries incurred outside of California by nonresidents." (*Morris*, 144 Cal.App.4th

at 1467.)  "California courts have held that with respect to regulating or affecting conduct within its

borders, the place of the wrong has the predominant interest." (*Roman v. Liberty University, Inc.* (2008)

162 Cal.App.4th 670, 684 (cleaned up) [trial court properly granted forum non conveniens motion where,

among other things, plaintiff's injury and defendant's allegedly negligent conduct took place in Virginia;

"California courts have little interest in regulating conduct within Virginia's borders."]; see also *Hahn*,

194 Cal.App.4th at 1196 [courts consider the locus of "the effect, harm, and damages caused by

defendants' alleged conduct"]; *Boaz*, 40 Cal.App.4th at 713 ["All this having been said, the important

reason for affirming the forum non conveniens decision of the trial court is that the torts alleged in this

case have nothing to do with California.  They were not committed here; none of the affected appellants

received her injury in this state; and none resides here. . . .  We find no justification for California courts

and juries to bear the burden of this litigation."].)  Conversely, as Plaintiffs acknowledged at the hearing,

foreign states have a substantial interest in cases involving injuries that occur within their borders, and in

the application of their laws to regulate the conduct of defendants alleged to be responsible for those

injuries.

Here, just as in the closely analogous federal case cited above, this factor "strongly favors

transfer":

While California has some interest in seeing this case decided here, as Uber is headquartered in

- 14 -

1  San Francisco, Minnesota's interest is more substantial because the activities alleged to give rise
2  to Doe's suit occurred there. Doe's recovery in this action depends on proving the alleged sexual
   assault and battery, which will require testimony from Minnesota witnesses and evidence located
3  in Minnesota. Furthermore, Minnesota has a greater interest in protecting a Minnesota citizen
   against assault and battery than California does. Finally, while California undoubtedly has
4  significant interests in the conduct of corporations headquartered here, Minnesota has a
   comparable interest in the conduct of corporations operating in Minnesota.

5  (*Doe v. Uber Technologies, Inc.*, 2017 WL 2352032, at *8.)

6         **C. Applicable Law And The Interest In Avoiding Unnecessary Conflicts Of Laws**

7         Yet a third significant factor in the public interest balance is the interest in trying the case in a

8  forum familiar with the applicable law and the interest in avoiding unnecessary conflicts of laws. (*Fox*

9  *Factory,* 11 Cal.App.5th at 204.) Allowing Plaintiffs' cases to remain in California, although they will

10  likely be governed by the regulatory and tort laws of Texas and Hawaii, the states in which Plaintiffs were

11  allegedly injured, would undermine that interest.

12         Plaintiffs ignore or understate the importance of other states' tort and regulatory laws in setting

13  the standards by which Uber's liability for alleged sexual misconduct or sexual assaults by its drivers are

14  likely to be determined. As Plaintiffs acknowledge, key legal issues in these cases will include, among

15  others, whether Uber is a "common carrier" (LHBE Opposition, 15), whether it adequately screened

16  drivers, and whether it owed Plaintiffs a duty to warn them about or implement other measures to protect

17  them against assailants. It is likely that those issues will be determined under the laws of the states where

18  the alleged incidents occurred, not under California law. In particular, as Uber shows, it is regulated in

19  Texas as a Transportation Network Company (TNC) under Texas statutes and regulations that govern

20  whether a TNC is a common carrier (it is not) and what criminal background checks it must conduct

21  before hiring drivers, among other issues. (In Hawaii, in contrast, such state laws have only recently been

22  enacted.)

23         Moreover, Texas and Hawaii law rather than California law are likely to apply to some of the

24  novel questions of tort law posed by these cases such as, for instance, whether a TNC owes its passengers

25  a duty to install cameras in vehicles to safeguard their safety. Under California's governmental interest

26  analysis, "although the law of the place of the wrong is not necessarily the applicable law for all tort

27  actions, the situs of the injury remains a relevant consideration." (*Castro v. Budget Rent-A-Car System,*

28

- 15 -

1   *Inc.* (2007) 154 Cal.App.4th 1162, 1180.)  Where an incident and the plaintiff's injury occurred within

2   another state's borders, the other state has a presumptive interest in controlling the conduct of the

3   tortfeasor, absent some other compelling interest to be served by applying California law.  (*Id.* [applying

4   Alabama law in personal injury case involving car accident that took place in Alabama]; *Boaz,* 40

5   Cal.App.4th at 713 ["The circumstances of this case—including the site of the tortious acts and their

6   manifestation, and the lack of a significant California connection to those events—provide strong reasons

7   to believe that a California court would look to the substantive law of New York."].)  Thus, California has

8   no interest in applying its law "in a case where there are no California plaintiffs and no one sustained

9   injuries in California"; under those circumstances, "California's interest in applying its law is

10  hypothetical, since no actual harm occurred in California giving rise to an interest to deter conduct or

11  compensate victims." (*Chen v. Los Angeles Truck Centers, LLC* (2019) 42 Cal.App.5th 488, 493.)

12          It is also likely that foreign law would apply to the claims of Jane Doe WHBE 3, even though she

13  currently is a California resident.  In weighing California's interest in applying its own law against

14  another state's, "it is generally appropriate for a court to accord limited weight to California's interest in

15  providing a remedy for a current California resident when the conduct of the defendant from whom

16  recovery is sought occurred in another state, at a time when the plaintiff was present in (and, in the

17  present situation, a resident of) that other state, and where that other state has its own substantive law, that

18  differs from California law, governing the defendant's potential liability for the conduct that occurred

19  within that state." (*McCann v. Foster Wheeler LLC* (2010) 48 Cal.4th 68, 76.)

20          Accepting Plaintiffs' position could require the Court to apply Texas and Hawaii law in the two

21  cases that are the subject of the pending motions.  Moreover, that adverse effect would be dramatically

22  magnified, were the Court's ruling to be applied to hundreds of other cases arising out of alleged incidents

23  that occurred in some 50 jurisdictions across the United States.  Although the Court does not decide the

24  issue, "[i]t is sufficient to point out that the fact that a California court would have to untangle problems

25  in conflict of law is itself a basis to apply the doctrine of forum non conveniens." (*Id.* (cleaned up).)

26          **D.  The Public Interest Factors Control**

27          In the Court's view, these public interest factors overwhelmingly apply here in favor of granting

28  - 16 -

1  Uber's motions as to both cases.  Even where it is "probable that both parties will suffer some

2  disadvantage from trial in their home forums" because there are witnesses and documentary evidence in

3  both states, it is appropriate to grant a *forum non conveniens* motion where, as here, the public factors

4  "clearly favor" transfer.  (*Stangvik*, 54 Cal.3d at 757, 762-763.)  For example, in *Campbell*, an action

5  arising out of an airplane crash, virtually all of the evidence relating to damages was in a foreign

6  jurisdiction, and the evidence relating to the design and manufacture of the plane was in the United States.

7  "Thus, each side would suffer some disadvantage from trial in its home forum.  The public interest,

8  however, favors granting the motions."  (69 Cal.App.4th at 1542; see also *Century Indemnity Co. v. Bank*

9  *of America* (1997) 58 Cal.App.4th 408, 413-414 [although "[t]he proximity of evidence and witnesses

10  favors neither forum," trial court properly exercised discretion in staying action given "Hawaii's strong

11  public policy interest in interpreting the insurance policies and the lack of a strong countervailing

12  justification for proceeding . . . in California"].)  Because Texas and Hawaii's interests in deciding

13  Plaintiffs' cases are substantially stronger than California's, the public interest factors control.

14

15  **IV.   THE *FORUM NON CONVENIENS* ANALYSIS IS NOT NEGATED BY THE
        COORDINATION PROCEEDING.**

16       As noted above, at the very first case management conference in this case, the Court identified the

17  *forum non conveniens* issue as the critical threshold issue to be decided in the coordinated proceedings.

18  Nine months after the Court first adopted this approach, and after the parties have completed substantial

19  discovery on forum-related issues and extensively briefed these motions, Plaintiffs now invite the Court

20  to jettison the entire approach, arguing that the Court should deny or defer ruling on the motions and

21  instead develop a bellwether selection process in which forum considerations would be only one factor in

22  the selection of bellwether cases.  (LSA Opposition, 17-18.)  Plaintiffs argue, in essence, that the mere

23  existence of the coordination proceedings negates the need to conduct any convenient forum inquiry at

24  all.  Moreover, Plaintiffs now appear to back away from the basis for their own stipulation, embodied in

25  the Court's order, that the Court's ruling on these motions would serve as a basis for deciding how other

26  similar cases should be handled.  By the terms of that stipulation and order, following this Court's rulings

27  on the instant motions, "the parties shall meet and confer to discuss a process stipulating to or contesting

28

- 17 -

1   the applicability of the Court's ruling on the Forum Motions to the remainder of the cases within this

2   coordinated proceeding." (Aug. 10, 2022 Order, 4 ¶ 7.) Yet Plaintiffs now protest that each *forum non*

3   *conveniens* motion must be decided on an individualized basis, and that there is no authority for

4   "extrapolating" the Court's rulings in these two cases to any others included in the coordinated

5   proceeding. (LSA Opposition, 5, 8-9.) The Court could not disagree more.

6        First, there is no merit to Plaintiffs' position that the Court's approach is somehow inconsistent

7   with coordination or that inclusion of an individual case in a coordinated proceeding necessarily makes a

8   *forum non conveniens* motion unavailable. Contrary to Plaintiffs' argument, the Court's order setting

9   *forum non conveniens* as its first order of business was entirely consistent with the order granting

10  coordination, which stated that, among other issues, the doctrine's application to the coordinated cases

11  presents "identical threshold and central legal questions that should be decided by one judge." (Dec. 9,

12  2021 Order, 3.) Indeed, California case authority makes clear that forum motions are equally available in

13  cases included in coordination proceedings. (See, e.g., *Bristol-Myers Squibb Co.*, 1 Cal.5th at 789-790,

14  809 fn. 5 [stating that defendant in coordinated proceedings involving actions by 86 California residents

15  and 592 residents of 33 other states is "free to make such a showing [that the cost of litigating plaintiffs'

16  claims in San Francisco is excessive or unduly burdensome compared to other relevant forums] on a

17  motion asserting forum non conveniens"]; *Martinez v. Ford Motor Co.* (2010) 185 Cal.App.4th 9, 21

18  [reversing *forum non conveniens* order dismissing products liability action included in coordinated

19  proceeding against tire and car manufacturers on ground that motion was prejudicially untimely because

20  defendants took extensive discovery beyond the scope of that needed to establish the basis for the

21  motion].)

22        It is no answer to say, as Plaintiffs assert, that the convenience factors do not matter because few

23  of the cases will actually be tried after the Court selects bellwether cases. For one thing, there is no way

24  of knowing whether the two cases that are the subject of Uber's motions will be selected as bellwethers.

25  More importantly, the incremental burden on the Court of managing more than 1,400 cases rather than

26  "only" 400 or so will itself be substantial: it undoubtedly will necessitate more motion practice and case

27  management conferences, and may require the selection of a larger number of bellwethers. Plaintiffs cite

28

- 18 -

1    no authority—and there is none of which the Court is aware—which stands for the proposition that a

2    court should ignore the potential burden on congested local courts posed by the filing of numerous

3    foreign cases, the strength of the different states' interests in trying the cases, the potential applicability

4    of multiple states' laws, and the other *forum non conveniens* factors merely because a bellwether process

5    may be an available mechanism to manage the cases.

6           At the hearing, Plaintiffs for the first time proposed what they termed "a structural solution" to the

7    Court's concerns.  Under that proposal, Plaintiffs would stipulate to select only "California cases" (that

8    is, cases in which the plaintiff was a resident of California at the time of the incident, remains a

9    California resident, and the incident occurred in California) for the bellwether pool, unless Uber decided

10   to select other cases as its bellwether candidates.  Plaintiffs would further stipulate that all the non-

11   California cases would be stayed for all purposes during the pendency of the bellwether process, unless

12   the plaintiffs in those actions objected to a stay and wished to proceed in another forum.  Finally, in the

13   event the bellwether trials do not result in a resolution of all of the coordinated cases and the Court were

14   to remand individual cases to the counties where they were originally filed (Cal. R. Ct. 3.542), Plaintiffs

15   would agree that renewed *forum non conveniens* motions would not be untimely.  As Uber pointed out,

16   however, this novel proposal essentially begs the question of why the non-California cases were filed in

17   this forum in the first place.  Moreover, to the extent that the objective of bellwether trials is to yield

18   representative verdicts in order to facilitate a global resolution of multiple coordinated actions,[14] it seems

19   appropriate to the Court that non-California cases be refiled in other states, such that the resulting

20   verdicts may more accurately reflect the governing law and jury venires in the fora with the greatest

21   interest in their resolution.

22          Second, Plaintiffs' position that Uber is required to bring motions in each individual case subject

23   to transfer under the *forum non conveniens* doctrine obviously would be unworkable, given the unusually

24   large number of cases pending in this Court.  Nor does the Court agree that it lacks the authority to devise

25

26   _____
     [14] "The primary purpose of a 'bellwether' trial is to educate the parties and the court about the strengths
27   and weaknesses of the many underlying cases." (*Pacific Fertility Cases* (2022) 78 Cal.App.5th 568, 574
     fn.3, review granted, S. 275134 (Aug. 17, 2022), citing 4 Newberg on Class Actions (5th ed. 2021) §
28   11:13.)

- 19 -

*Uber Rideshare Cases* JCCP 5188 Order on Defendants' Motions to Stay or Dismiss
Based on *Forum Non Conveniens*

procedures to apply its rulings to groups or categories of cases, rather than merely issuing one-off rulings that would apply to a single case at a time. "The trial court has broad discretion to fashion suitable methods of practice in order to manage complex litigation. This includes requiring standard motions to minimize duplication where issues are similar, and the issuance of standard orders." (*Hernandez v. Superior Court* (2003) 112 Cal.App.4th 285, 295; see also, e.g., *Cohn v. Corinthian Colleges, Inc.* (2008) 169 Cal.App.4th 523, 531 ["judges must be permitted to bring management power to bear upon massive and complex litigation to prevent it from monopolizing the services of the court to the exclusion of other litigants. . . . [T]he trial court is given the discretion to be flexible with complex cases." (cleaned up)]; *First State Ins. Co. v. Superior Court* (2000) 79 Cal.App.4th 324, 333-336 [trial court presiding over complex insurance coverage dispute involving 25 insureds, over 40 insurers, and claims arising from numerous jurisdictions, had inherent authority to defer hearing summary judgment motions filed by parties until after it had decided myriad choice of law issues presented by case].)

Third, and most broadly, Plaintiffs' argument seems to assume that the purpose of the coordination procedure is, as Uber puts it, to "nationalize" cases that could otherwise be brought in states across the country, akin to a federal MDL. However, there is nothing in the coordination statutes or rules that suggests any intent on the part of the Legislature to transform California state courts into a national hub for tort litigation. Code of Civil Procedure section 404 authorizes a petition for coordination to the Judicial Council "[w]hen civil actions sharing a common question of fact or law are pending in different courts," referring to different California state courts, which of course are the only courts over which the Judicial Council has jurisdiction. (See also Cal. R. Ct. 3.521(a)(5) [coordination petition shall include title and case number of any other action known to the petitioner to be pending "in a court of this state" that shares a common question of fact or law with the included actions]; *McGhan Medical Corp. v. Superior Court* (1992) 11 Cal.App.4th 804, 807-811 [considering trial court's order denying coordination in light of the objectives and effects of the coordination procedure as they relate to "hundreds of cases on the docket of not only this court but of numerous other trial courts throughout the state"].)

- 20 -

1

## CONCLUSION

2       For the foregoing reasons, Defendant's motions to stay both actions are granted.  As previously

3   directed, the parties, consistent with their stipulation and the Court's order, shall meet and confer to

4   devise a process to stipulate to or contest the applicability of the Court's rulings on these motions to the

5   remainder of the cases within this coordinated proceeding, and shall be prepared to address those issues

6   at the next case management conference on February 21, 2023.  A joint case management conference

7   statement shall be filed at least five court days prior to the case management conference.

8

9       IT IS SO ORDERED.

10

11   Dated:  January 23, 2023

12                                                           Ethan P. Schulman
                                                            Judge of the Superior Court

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 21 -

## CERTIFICATE OF ELECTRONIC SERVICE
(CCP 1010.6(6) & CRC 2.251)

I, Ericka Larnauti, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On January 23, 2023, I electronically served the attached document via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Dated:  January 23, 2023

Mark Culkins, Interim Clerk

By: _____

Ericka Larnauti, Deputy Clerk

APP141

# EXHIBIT 2

ROBERT ATKINS (*Admitted Pro Hac Vice*)
   ratkins@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3183
Facsimile: (212) 492-0183

RANDALL S. LUSKEY (SBN: 240915)
   rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

*Attorneys for Defendants/Cross-Complainants,*
UBER TECHNOLOGIES, INC., RASIER, LLC
and RASIER-CA, LLC

**F I L E D**
San Francisco County Superior Court

FEB 2 8 2023

CLERK OF THE COURT
BY: _Claudia Brielli_
Deputy Clerk

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN FRANCISCO – UNLIMITED CIVIL JURISDICTION

| | |
|---|---|
| Coordination Proceeding | JUDICIAL COUNCIL COORDINATION PROCEEDING CASE NO. 5188 |
| *In Re: Uber Rideshare Cases* | |
| This Document Relates to: | CASE NO. CJC-21-005188 |
| ALL ACTIONS | *(Assigned to Hon. Ethan P. Schulman, Dept. 304)* |
| | [~~PROPOSED~~] ORDER RE: APPLICATION OF JANUARY 23, 2023 ORDER TO ALL CASES IN THIS PROCEEDING |

1

[~~PROPOSED~~] ORDER RE: APPLICATION OF JANUARY 23, 2023 ORDER
TO REMAINING CASES IN THIS PROCEEDING                    Case No. CJC-21-005188

# [PROPOSED] ORDER

**IT IS HEREBY ORDERED:**

1. This Order shall be binding on all Plaintiffs whose claims are currently coordinated into this coordinated proceeding.

2. The Order granting Uber's motions to stay or dismiss *Jane Doe LSA 35* v. *Uber Techs., Inc., et al.*, CGC-21-592274 and *Jane Doe WHBE 3* v. *Uber Techs., Inc. et al.*, CGC 20-584649 based on *forum non conveniens* (the "FNC Order") shall apply to all of the cases in this coordinated proceeding that arise from alleged incidents that occurred outside of California (the "Non-California Cases"). A list of the Non-California Cases is attached hereto as **Exhibit A**. The FNC Order will have full force and effect with respect to the plaintiffs in each of the Non-California Cases. Accordingly, each of the Non-California Cases is hereby stayed pursuant and subject to the terms of the FNC Order.

3. On the 30th day after a plaintiff re-files in an alternative forum, the stay set forth in the preceding paragraph shall convert to an order of dismissal with prejudice.

4. For any plaintiff who has re-filed in an alternative forum within 180 days of the date of entry of this Order, the time that accrued between the date of filing of the plaintiff's action in this Court and the date of re-filing in the alternative forum shall not be counted for purposes of the statute of limitations.

5. For any plaintiff who has re-filed in an alternative forum within 180 days of the date of entry of this Order, the statute of limitations that applies to the plaintiff's claims shall be *the longer of* (a) the statute of limitations that would apply had the action been litigated in California or (b) the statute of limitation that applies under the law of the alternative forum in which the case is re-filed.

6. Any Plaintiff who seeks an extension beyond the 180 days may do so by application to the Court with a showing of good cause and diligence prior to the expiration of the 180-day period.

7. With respect to any plaintiff who has not re-filed in an alternative forum within 180 days after the date of entry of this Order, or has not sought and obtained an extension for good

2

1  cause as set forth in paragraph six above, the stay set forth in the preceding paragraphs shall convert
2  to an order of dismissal with prejudice.  With respect to any Plaintiff who has sought an extension
3  for good cause prior to expiration of the 180-day period and such application has not been
4  adjudicated by the end of that period, the stay set forth in the preceding paragraphs shall convert to
5  an order of dismissal with prejudice upon denial of the application, or otherwise on such terms as
6  the Court orders in its resolution of the Plaintiff's application.

7      8.    For any plaintiff added to this coordinated proceeding subsequent to the date of entry
8  of this Order, in addition to complying with the aforementioned requirements set forth in Paragraph
9  2 of the August 10, 2022 Case Management Order, such plaintiff shall, within 30 days of that
10 plaintiff's action being added to this coordinated proceeding, serve on counsel for Uber a statement
11 identifying the state of her residence at the time of the alleged incident and the state in which the
12 alleged incident took place. [1]  Within 10 days thereafter, counsel for such plaintiff and counsel for
13 Uber shall meet and confer regarding the applicability of the FNC Order and this Order to the
14 plaintiff's case.  Within 10 days after that meet and confer, the plaintiff and Uber shall submit a
15 joint statement to the Court regarding the applicability of the Court Order and this Order to the
16 plaintiff's case.

17     9.    This Order in no way alters any plaintiff's right to appeal the FNC Order as such
18 right otherwise exists under California law.

19
20 **IT IS SO ORDERED.**

21
22 DATED: _Feb. 28, 2023_      _____
23                              THE HONORABLE ETHAN P. SCHULMAN
                                 JUDGE OF THE SUPERIOR COURT FOR THE
24                               COUNTY OF SAN FRANCISCO

25 _____
[1] There are a few cases that have already been added to this coordinated proceeding, but for which
26 Uber has not yet received sufficient information to determine whether those cases should be
   included in Exhibit A. Uber has identified those cases for Plaintiffs separately.  Once the necessary
27 information has been provided by Plaintiffs (as required by the August 10, 2022 Case Management
   Order), the parties shall meet and confer about those cases and submit a joint statement or
28 stipulation pursuant to the provisions of this paragraph.

3
[PROPOSED] ORDER RE: APPLICATION OF JANUARY 23, 2023 ORDER
TO REMAINING CASES IN THIS PROCEEDING                    Case No. CJC-21-005188

# EXHIBIT A

EXHIBIT A

**Updated List of Cases for Application of Order on Defendants and
Cross-Complainants Uber Technologies, Inc. and Rasier LLC's
Motions to Stay or Dismiss Based on *Forum Non Conveniens***

Case No. CJC-21-005188

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens* Category[3] |
|---|---|---|---|---|
| Jane Doe v. Uber Technologies, Inc. et al. | CGC-20-584649 | ADZ Law, LLP; Williams Hart & Boundas, LLP | Jane Doe | Category 2 |
| Jane Doe LSA 3, et al. v. Uber Technologies, Inc., et al. | CGC-21-591921 | Levin Simes Abrams, LLP | LSA 4 | Category 1 |
| Jane Doe LSA 3, et al. v. Uber Technologies, Inc., et al. | CGC-21-591921 | Levin Simes Abrams, LLP | LSA 5 | Category 1 |
| Jane Doe LSA 3, et al. v. Uber Technologies, Inc., et al. | CGC-21-591921 | Levin Simes Abrams, LLP | LSA 7 | Category 1 |
| Jane Doe LSA 3, et al. v. Uber Technologies, Inc., et al. | CGC-21-591921 | Levin Simes Abrams, LLP | LSA 9 | Category 1 |
| Jane Doe LSA 13 v. Uber Technologies, Inc., et al. | CGC-21-592190 | Levin Simes Abrams, LLP | LSA 13 | Category 1 |
| Jane Doe LSA 15 v. Uber Technologies, Inc., et al. | CGC-21-592189 | Levin Simes Abrams, LLP | LSA 15 | Category 1 |
| Jane Doe LSA 16 v. Uber Technologies, Inc., et al. | CGC-21-592187 | Levin Simes Abrams, LLP | LSA 16 | Category 1 |
| Jane Doe LSA 17 v. Uber Technologies, Inc., et al. | CGC-21-592188 | Levin Simes Abrams, LLP | LSA 17 | Category 1 |
| Jane Doe LSA 24 v. Uber Technologies, Inc., et al. | CGC-21-592224 | Levin Simes Abrams, LLP | LSA 24 | Category 1 |

[1]   Case numbers followed by a "*" signify cases not yet coordinated in the JCCP.

[2]   Based on the original Plaintiff forum fact sheets, WHBE 445 (CGC-22-597640) and WHBE 1410 (CGC-22-600282) would be included, but counsel for Plaintiffs has represented that corrected fact sheets will be submitted for these two cases resulting in their removal from this list.  Uber reserves all rights to revisit upon review of the two correct forum fact sheets.

[3]   Category designations followed by a "^" signify cases not included in prior *forum non conveniens* briefing or letter appendices.

1

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe LSA 25 v. Uber Technologies, Inc., et al. | CGC-21-592225 | Levin Simes Abrams, LLP | LSA 25 | Category 1 |
| Jane Doe LSA 33 v. Uber Technologies, Inc., et al. | CGC-21-592271 | Levin Simes Abrams, LLP | LSA 33 | Category 1 |
| Jane Doe LSA 34 v. Uber Technologies, Inc., et al. | CGC-21-592272 | Levin Simes Abrams, LLP | LSA 34 | Category 1 |
| Jane Doe LSA 35 v. Uber Technologies, Inc., et al. | CGC-21-592274 | Levin Simes Abrams, LLP | LSA 35 | Category 1 |
| Jane Doe LSA 37 v. Uber Technologies, Inc., et al. | CGC-21-592275 | Levin Simes Abrams, LLP | LSA 37 | Category 1 |
| Jane Doe LSA 43 v. Uber Technologies, Inc., et al. | CGC-21-592317 | Levin Simes Abrams, LLP | LSA 43 | Category 1 |
| Jane Doe LSA 44 v. Uber Technologies, Inc., et al. | CGC-21-592320 | Levin Simes Abrams, LLP | LSA 44 | Category 1 |
| Jane Doe LSA 45 v. Uber Technologies, Inc., et al. | CGC-21-592322 | Levin Simes Abrams, LLP | LSA 45 | Category 1 |
| Jane Doe LSA 46 v. Uber Technologies, Inc., et al. | CGC-21-592319 | Levin Simes Abrams, LLP | LSA 46 | Category 1 |
| Jane Doe LSA 47 v. Uber Technologies, Inc., et al. | CGC-21-592318 | Levin Simes Abrams, LLP | LSA 47 | Category 1 |
| Jane Doe LSA 48 v. Uber Technologies, Inc., et al. | CGC-21-592324 | Levin Simes Abrams, LLP | LSA 48 | Category 1 |
| Jane Doe LSA 53 v. Uber Technologies, Inc., et al. | CGC-21-592348 | Levin Simes Abrams, LLP | LSA 53 | Category 1 |
| Jane Doe LSA 54 v. Uber Technologies, Inc., et al. | CGC-21-592350 | Levin Simes Abrams, LLP | LSA 54 | Category 1 |
| Jane Doe LSA 55 v. Uber Technologies, Inc., et al. | CGC-21-592351 | Levin Simes Abrams, LLP | LSA 55 | Category 1 |
| Jane Doe LSA 56 v. Uber Technologies, Inc., et al. | CGC-21-592353 | Levin Simes Abrams, LLP | LSA 56 | Category 1 |
| Jane Doe LSA 57 v. Uber Technologies, Inc., et al. | CGC-21-592352 | Levin Simes Abrams, LLP | LSA 57 | Category 1 |
| Jane Doe LSA 59 v. Uber Technologies, Inc., et al. | CGC-21-592358 | Levin Simes Abrams, LLP | LSA 59 | Category 1 |
| Jane Doe LSA 60 v. Uber Technologies, Inc., et al. | CGC-21-592354 | Levin Simes Abrams, LLP | LSA 60 | Category 1 |
| Jane Doe LSA 62 v. Uber Technologies, Inc., et al. | CGC-21-592355 | Levin Simes Abrams, LLP | LSA 62 | Category 1 |
| Jane Doe LSA 63 v. Uber Technologies, Inc., et al. | CGC-21-592382 | Levin Simes Abrams, LLP | LSA 63 | Category 1 |
| Jane Doe LSA 64 v. Uber Technologies, Inc., et al. | CGC-21-592383 | Levin Simes Abrams, LLP | LSA 64 | Category 1 |

2

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | Forum Non Conveniens Category[3] |
|---|---|---|---|---|
| Jane Doe LSA 65 v. Uber Technologies, Inc., et al. | CGC-21-592385 | Levin Simes Abrams, LLP | LSA 65 | Category 2 |
| Jane Doe LSA 66 v. Uber Technologies, Inc., et al. | CGC-21-592386 | Levin Simes Abrams, LLP | LSA 66 | Category 1 |
| Jane Doe LSA 67 v. Uber Technologies, Inc., et al. | CGC-21-592387 | Levin Simes Abrams, LLP | LSA 67 | Category 1 |
| Jane Doe LSA 73 v. Uber Technologies, Inc., et al. | CGC-21-592421 | Levin Simes Abrams, LLP | LSA 73 | Category 1 |
| Jane Doe LSA 74 v. Uber Technologies, Inc., et al. | CGC-21-592422 | Levin Simes Abrams, LLP | LSA 74 | Category 1 |
| Jane Doe LSA 75 v. Uber Technologies, Inc., et al. | CGC-21-592425 | Levin Simes Abrams, LLP | LSA 75 | Category 1 |
| Jane Doe LSA 76 v. Uber Technologies, Inc., et al. | CGC-21-592424 | Levin Simes Abrams, LLP | LSA 76 | Category 1 |
| Jane Doe LSA 77 v. Uber Technologies, Inc., et al. | CGC-21-592426 | Levin Simes Abrams, LLP | LSA 77 | Category 1 |
| Jane Doe LSA 86, et al. v. Uber Technologies, Inc. et al. | CGC-21-592766 | Levin Simes Abrams, LLP | LSA 86 | Category 1 |
| Jane Doe LSA 86, et al. v. Uber Technologies, Inc. et al. | CGC-21-592766 | Levin Simes Abrams, LLP | LSA 87 | Category 1 |
| Jane Doe LSA 86, et al. v. Uber Technologies, Inc. et al. | CGC-21-592766 | Levin Simes Abrams, LLP | LSA 89 | Category 1 |
| Jane Doe LSA 86, et al. v. Uber Technologies, Inc. et al. | CGC-21-592766 | Levin Simes Abrams, LLP | LSA 90 | Category 1 |
| Jane Doe LSA 86, et al. v. Uber Technologies, Inc. et al. | CGC-21-592766 | Levin Simes Abrams, LLP | LSA 91 | Category 1 |
| Jane Doe LSA 86, et al. v. Uber Technologies, Inc. et al. | CGC-21-592766 | Levin Simes Abrams, LLP | LSA 92 | Category 1 |
| Jane Doe LSA 86, et al. v. Uber Technologies, Inc. et al. | CGC-21-592766 | Levin Simes Abrams, LLP | LSA 93 | Category 1 |
| Jane Doe LSA 86, et al. v. Uber Technologies, Inc. et al. | CGC-21-592766 | Levin Simes Abrams, LLP | LSA 94 | Category 1 |
| Jane Doe v. Uber Technologies, Inc. et al. | CGC-21-594086 | Downtown LA Law Group | Jane Doe | Category 1 |

3

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 100 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 101 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 102 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 103 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 104 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 106 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 107 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 108 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 109 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 110 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 111 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 112 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 113 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 114 | Category 1 |

4

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 95 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 97 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 98 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 99 | Category 1 |
| Jane Doe LSA 115 et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 117 | Category 2 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 119 | Category 1 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 120 | Category 1 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 121 | Category 1 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 122 | Category 1 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 123 | Category 1 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 124 | Category 1 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 125 | Category 1 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 126 | Category 1 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 128 | Category 1 |

5

APP151

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens* Category[3] |
|---|---|---|---|---|
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 129 | Category 1 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 130 | Category 1 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 131 | Category 1 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 132 | Category 1 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 134 | Category 1 |
| Jane Doe LSA 115 et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 135 | Category 2 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 136 | Category 1 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 137 | Category 1 |
| Jane Doe WHBE 12 v. Uber Technologies, Inc. et al. | CGC-21-594245 | Williams Hart & Boundas, LLP | WHBE 12 | Category 2 |
| Jane Doe LSA 138, et al. v. Uber Technologies, Inc. et al. | CGC-21-594835 | Levin Simes Abrams, LLP | LSA 139 | Category 1 |
| Jane Doe LSA 138, et al. v. Uber Technologies, Inc. et al. | CGC-21-594835 | Levin Simes Abrams, LLP | LSA 140 | Category 1 |
| Jane Doe LSA 138, et al. v. Uber Technologies, Inc. et al. | CGC-21-594835 | Levin Simes Abrams, LLP | LSA 141 | Category 1 |
| Jane Doe LSA 138, et al. v. Uber Technologies, Inc. et al. | CGC-21-594835 | Levin Simes Abrams, LLP | LSA 142 | Category 1 |
| Jane Doe LSA 138, et al. v. Uber Technologies, Inc. et al. | CGC-21-594835 | Levin Simes Abrams, LLP | LSA 144 | Category 1 |

6

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe LSA 146, et al. v. Uber Technologies, Inc. et al. | CGC-21-595506 | Levin Simes Abrams, LLP | LSA 146 | Category 1 |
| Jane Doe LSA 146, et al. v. Uber Technologies, Inc. et al. | CGC-21-595506 | Levin Simes Abrams, LLP | LSA 147 | Category 1 |
| Jane Doe LSA 146, et al. v. Uber Technologies, Inc. et al. | CGC-21-595506 | Levin Simes Abrams, LLP | LSA 148 | Category 1 |
| Jane Doe LSA 146, et al. v. Uber Technologies, Inc. et al. | CGC-21-595506 | Levin Simes Abrams, LLP | LSA 149 | Category 1 |
| Jane Doe LSA 146, et al. v. Uber Technologies, Inc. et al. | CGC-21-595506 | Levin Simes Abrams, LLP | LSA 150 | Category 1 |
| Jane Doe LSA 146, et al. v. Uber Technologies, Inc. et al. | CGC-21-595506 | Levin Simes Abrams, LLP | LSA 151 | Category 1 |
| Jane Doe LSA 146, et al. v. Uber Technologies, Inc. et al. | CGC-21-595506 | Levin Simes Abrams, LLP | LSA 152 | Category 1 |
| Jane Doe LSA 146, et al. v. Uber Technologies, Inc. et al. | CGC-21-595506 | Levin Simes Abrams, LLP | LSA 153 | Category 1 |
| Jane Doe LSA 146, et al. v. Uber Technologies, Inc. et al. | CGC-21-595506 | Levin Simes Abrams, LLP | LSA 154 | Category 1 |
| Jane Doe WHBE 34, et al vs. Uber Technologies, Inc. et al | CGC-21-595866 | Williams Hart & Boundas, LLP | WHBE 34 | Category 1 |
| Jane Doe WHBE 54, et al vs. Uber Technologies, Inc. et al | CGC-21-596078 | Williams Hart & Boundas, LLP | WHBE 56 | Category 1 |
| Jane Doe WHBE 54, et al vs. Uber Technologies, Inc. et al | CGC-21-596078 | Williams Hart & Boundas, LLP | WHBE 57 | Category 1 |
| Jane Doe WHBE 54, et al vs. Uber Technologies, Inc. et al | CGC-21-596078 | Williams Hart & Boundas, LLP | WHBE 58 | Category 1 |
| Jane Doe WHBE 54, et al vs. Uber Technologies, Inc. et al | CGC-21-596078 | Williams Hart & Boundas, LLP | WHBE 70 | Category 1 |

7

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 155 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 156 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 158 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 159 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 160 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 161 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 162 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 163 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 164 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 165 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 166 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 167 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 168 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 169 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 170 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 171 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 172 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 173 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 174 | Category 1 |
| Jane Doe LSA 176, et al. v. Uber Technologies, Inc., et al. | CGC-21-597216 | Levin Simes Abrams, LLP | LSA 176 | Category 1 |
| Jane Doe LSA 176, et al. v. Uber Technologies, Inc., et al. | CGC-21-597216 | Levin Simes Abrams, LLP | LSA 177 | Category 1 |
| Jane Doe LSA 176, et al. v. Uber Technologies, Inc., et al. | CGC-21-597216 | Levin Simes Abrams, LLP | LSA 179 | Category 1 |
| Jane Doe LSA 176, et al. v. Uber Technologies, Inc., et al. | CGC-21-597216 | Levin Simes Abrams, LLP | LSA 180 | Category 1 |
| Jane Doe LSA 176, et al. v. Uber Technologies, Inc., et al. | CGC-21-597216 | Levin Simes Abrams, LLP | LSA 181 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 175 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 176 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 178 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 179 | Category 1 |

9

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 180 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 181 | Category 1 |
| Jane Doe WHBE 175 et al. v. Uber Technologies, Inc. et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 182 | Category 2 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 187 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 188 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 189 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 190 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 191 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 192 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 193 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 194 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 195 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 196 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 197 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 198 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 199 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 200 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 201 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 202 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 203 | Category 1 |
| Jane Doe LSA 183, et al. v. Uber Technologies, Inc., et al. | CGC-22-597509 | Levin Simes Abrams, LLP | LSA 184 | Category 1 |
| Jane Doe LSA 183, et al. v. Uber Technologies, Inc., et al. | CGC-22-597509 | Levin Simes Abrams, LLP | LSA 185 | Category 1 |
| Jane Doe LSA 183, et al. v. Uber Technologies, Inc., et al. | CGC-22-597509 | Levin Simes Abrams, LLP | LSA 186 | Category 1 |
| Jane Doe LSA 183, et al. v. Uber Technologies, Inc., et al. | CGC-22-597509 | Levin Simes Abrams, LLP | LSA 187 | Category 1 |
| Jane Doe LSA 183, et al. v. Uber Technologies, Inc., et al. | CGC-22-597509 | Levin Simes Abrams, LLP | LSA 188 | Category 1 |
| Jane Doe LSA 183, et al. v. Uber Technologies, Inc., et al. | CGC-22-597509 | Levin Simes Abrams, LLP | LSA 189 | Category 1 |
| Jane Doe LSA 183, et al. v. Uber Technologies, Inc., et al. | CGC-22-597509 | Levin Simes Abrams, LLP | LSA 190 | Category 1 |
| Jane Doe LSA 183, et al. v. Uber Technologies, Inc., et al. | CGC-22-597509 | Levin Simes Abrams, LLP | LSA 191 | Category 1 |

11

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe LSA 183, et al. v. Uber Technologies, Inc., et al. | CGC-22-597509 | Levin Simes Abrams, LLP | LSA 192 | Category 1 |
| Jane Doe LSA 183, et al. v. Uber Technologies, Inc., et al. | CGC-22-597509 | Levin Simes Abrams, LLP | LSA 194 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 295 | Category 1 |
| Jane Doe WHBE 295 et al. v. Uber Technologies, Inc. et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 298 | Category 2 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 299 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 300 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 301 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 302 | Category 1 |
| Jane Doe WHBE 295 et al. v. Uber Technologies, Inc. et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 303 | Category 2 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 304 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 305 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 310 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 311 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 312 | Category 1 |

12

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | Forum Non Conveniens Category[3] |
|---|---|---|---|---|
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 313 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 317 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 318 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 319 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 321 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 322 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 324 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 326 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 329 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 331 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 333 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 334 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 335 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 336 | Category 1 |

13

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 337 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 338 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 339 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 340 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 341 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 342 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 345 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 346 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 347 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 348 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 349 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 350 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 352 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 353 | Category 1 |

14

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 358 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 359 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 360 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 361 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 363 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 366 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 367 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 368 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 369 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 371 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 372 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 373 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 374 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 375 | Category 1 |

15

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 380 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 381 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 382 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 383 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 392 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 393 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 396 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 397 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 398 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 399 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 400 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 401 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 402 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 403 | Category 1 |

16

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 404 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 405 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 406 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 407 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 409 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 410 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 411 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 412 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 413 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 414 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 423 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 424 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 425 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 426 | Category 1 |

17

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 427 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 428 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 429 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 431 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 432 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 433 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 434 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 435 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 436 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 437 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 438 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 439 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 441 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 442 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 443 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 444 | Category 1 |
| Jane Doe WHBE 445 et al. v. Uber Technologies, Inc. et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 451 | Category 2 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 454 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 458 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 459 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 460 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 461 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 462 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 464 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 465 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 466 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 467 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 468 | Category 1 |

19

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 469 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 470 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 471 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 473 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 474 | Category 1 |
| Jane Doe WHBE 475 et al. v. Uber Technologies, Inc. et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 477 | Category 2 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 484 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 485 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 486 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 487 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 488 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 489 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 490 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 491 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | Forum Non Conveniens Category[3] |
|---|---|---|---|---|
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 492 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 493 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 494 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 495 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 497 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 498 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 499 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 500 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 501 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 502 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 503 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 504 | Category 1 |
| Jane Doe LSA 197, et al. v. Uber Technologies, Inc., et al. | CGC-22-597919 | Levin Simes Abrams, LLP | LSA 197 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 505 | Category 1 |

21

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 505 et al. v. Uber Technologies, Inc. et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 506 | Category 2 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 507 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 508 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 510 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 511 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 513 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 514 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 515 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 516 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 517 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 518 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 519 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 520 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 521 | Category 1 |

22

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | Forum Non Conveniens Category[3] |
|---|---|---|---|---|
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 522 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 523 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 524 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 525 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 526 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 527 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 528 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 529 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 530 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 531 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 532 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 533 | Category 1 |
| Jane Doe DMA 1 v. Uber Technologies, Inc., et al. | CGC-22-598062 | Williams Hart & Boundas, LLP | DMA 1 | Category 1 |
| Jane Doe WHBE 590, et al. v. Uber Technologies, Inc., et al. | CGC-22-598198 | Williams Hart & Boundas, LLP | WHBE 597 | Category 1 |

23

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 590 et al. v. Uber Technologies, Inc. et al. | CGC-22-598198 | Williams Hart & Boundas, LLP | WHBE 598 | Category 2 |
| Jane Doe WHBE 590, et al. v. Uber Technologies, Inc., et al. | CGC-22-598198 | Williams Hart & Boundas, LLP | WHBE 599 | Category 1 |
| Jane Doe WHBE 590 et al. v. Uber Technologies, Inc. et al. | CGC-22-598198 | Williams Hart & Boundas, LLP | WHBE 600 | Category 2 |
| Jane Doe WHBE 590, et al. v. Uber Technologies, Inc., et al. | CGC-22-598198 | Williams Hart & Boundas, LLP | WHBE 601 | Category 1 |
| Jane Doe WHBE 590, et al. v. Uber Technologies, Inc., et al. | CGC-22-598198 | Williams Hart & Boundas, LLP | WHBE 602 | Category 1 |
| Jane Doe WHBE 590, et al. v. Uber Technologies, Inc., et al. | CGC-22-598198 | Williams Hart & Boundas, LLP | WHBE 603 | Category 1 |
| Jane Doe WHBE 590, et al. v. Uber Technologies, Inc., et al. | CGC-22-598198 | Williams Hart & Boundas, LLP | WHBE 604 | Category 1 |
| Jane Doe WHBE 590 et al. v. Uber Technologies, Inc. et al. | CGC-22-598198 | Williams Hart & Boundas, LLP | WHBE 605 | Category 2 |
| Jane Doe WHBE 590, et al. v. Uber Technologies, Inc., et al. | CGC-22-598198 | Williams Hart & Boundas, LLP | WHBE 615 | Category 1 |
| Jane Doe WHBE 590, et al. v. Uber Technologies, Inc., et al. | CGC-22-598198 | Williams Hart & Boundas, LLP | WHBE 619 | Category 1 |
| Jane Doe LSA 199, et al. v. Uber Technologies, Inc., et al. | CGC-22-598208 | Levin Simes Abrams, LLP | LSA 199 | Category 1 |
| Jane Doe LSA 199, et al. v. Uber Technologies, Inc., et al. | CGC-22-598208 | Levin Simes Abrams, LLP | LSA 200 | Category 1 |
| Jane Doe LSA 199, et al. v. Uber Technologies, Inc., et al. | CGC-22-598208 | Levin Simes Abrams, LLP | LSA 201 | Category 1 |
| Jane Doe LSA 199, et al. v. Uber Technologies, Inc., et al. | CGC-22-598208 | Levin Simes Abrams, LLP | LSA 202 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe LSA 199, et al. v. Uber Technologies, Inc., et al. | CGC-22-598208 | Levin Simes Abrams, LLP | LSA 203 | Category 1 |
| Jane Doe LSA 199, et al. v. Uber Technologies, Inc., et al. | CGC-22-598208 | Levin Simes Abrams, LLP | LSA 205 | Category 1 |
| Jane Doe LSA 199, et al. v. Uber Technologies, Inc., et al. | CGC-22-598208 | Levin Simes Abrams, LLP | LSA 206 | Category 1 |
| Jane Doe LSA 199, et al. v. Uber Technologies, Inc., et al. | CGC-22-598208 | Levin Simes Abrams, LLP | LSA 207 | Category 1 |
| Jane Doe LSA 199 et al. v. Uber Technologies, Inc. et al. | CGC-22-598208 | Levin Simes Abrams, LLP | LSA 208 | Category 2 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 621 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 622 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 623 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 624 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 625 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 628 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 630 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 631 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 632 | Category 1 |

25

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 633 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 634 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 636 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 637 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 638 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 639 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 640 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 643 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 644 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 645 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 646 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 647 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 648 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 649 | Category 1 |

26

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe WHBE 650 et al. v. Uber Technologies, Inc. et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 652 | Category 2 |
| Jane Doe WHBE 650 et al. v. Uber Technologies, Inc. et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 657 | Category 2 |
| Jane Doe WHBE 650 et al. v. Uber Technologies, Inc. et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 658 | Category 2 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 659 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 660 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 661 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 662 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 663 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 665 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 666 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 667 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 669 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 670 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 671 | Category 1 |

27

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | Forum Non Conveniens Category[3] |
|---|---|---|---|---|
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 672 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 673 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 674 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 676 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 677 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 678 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 679 | Category 1 |
| Jane Doe WHBE 680, et al. v. Uber Technologies, Inc., et al. | CGC-22-598263 | Williams Hart & Boundas, LLP | WHBE 680 | Category 1 |
| Jane Doe WHBE 680, et al. v. Uber Technologies, Inc., et al. | CGC-22-598263 | Williams Hart & Boundas, LLP | WHBE 681 | Category 1 |
| Jane Doe WHBE 680, et al. v. Uber Technologies, Inc., et al. | CGC-22-598263 | Williams Hart & Boundas, LLP | WHBE 682 | Category 1 |
| Jane Doe WHBE 680, et al. v. Uber Technologies, Inc., et al. | CGC-22-598263 | Williams Hart & Boundas, LLP | WHBE 683 | Category 1 |
| Jane Doe WHBE 680, et al. v. Uber Technologies, Inc., et al. | CGC-22-598263 | Williams Hart & Boundas, LLP | WHBE 685 | Category 1 |
| Jane Doe WHBE 680, et al. v. Uber Technologies, Inc., et al. | CGC-22-598263 | Williams Hart & Boundas, LLP | WHBE 686 | Category 1 |
| Jane Doe WHBE 680, et al. v. Uber Technologies, Inc., et al. | CGC-22-598263 | Williams Hart & Boundas, LLP | WHBE 689 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 680, et al. v. Uber Technologies, Inc., et al. | CGC-22-598263 | Williams Hart & Boundas, LLP | WHBE 695 | Category 1 |
| Jane Doe WHBE 680, et al. v. Uber Technologies, Inc., et al. | CGC-22-598263 | Williams Hart & Boundas, LLP | WHBE 696 | Category 1 |
| Jane Doe LSA 209, et al. v. Uber Technologies, Inc., et al. | CGC-22-598449 | Levin Simes Abrams, LLP | LSA 209 | Category 1 |
| Jane Doe LSA 209, et al. v. Uber Technologies, Inc., et al. | CGC-22-598449 | Levin Simes Abrams, LLP | LSA 211 | Category 1 |
| Jane Doe LSA 209, et al. v. Uber Technologies, Inc., et al. | CGC-22-598449 | Levin Simes Abrams, LLP | LSA 212 | Category 1 |
| Jane Doe LSA 209, et al. v. Uber Technologies, Inc., et al. | CGC-22-598449 | Levin Simes Abrams, LLP | LSA 214 | Category 1 |
| Jane Doe LSA 209, et al. v. Uber Technologies, Inc., et al. | CGC-22-598449 | Levin Simes Abrams, LLP | LSA 215 | Category 1 |
| Jane Doe LSA 209, et al. v. Uber Technologies, Inc., et al. | CGC-22-598449 | Levin Simes Abrams, LLP | LSA 216 | Category 1 |
| Jane Doe 209 et al. v. Uber Technologies, Inc. et al. | CGC-22-598449 | Levin Simes Abrams, LLP | LSA 217 | Category 2 |
| Jane Doe LSA 209, et al. v. Uber Technologies, Inc., et al. | CGC-22-598449 | Levin Simes Abrams, LLP | LSA 218 | Category 1 |
| Jane Doe WHBE 700, et al. v. Uber Technologies, Inc., et al. | CGC-22-598459 | Williams Hart & Boundas, LLP | WHBE 700 | Category 1 |
| Jane Doe WHBE 700 et al. v. Uber Technologies, Inc. et al. | CGC-22-598459 | Williams Hart & Boundas, LLP | WHBE 701 | Category 2 |
| Jane Doe WHBE 700, et al. v. Uber Technologies, Inc., et al. | CGC-22-598459 | Williams Hart & Boundas, LLP | WHBE 702 | Category 1 |
| Jane Doe WHBE 700, et al. v. Uber Technologies, Inc., et al. | CGC-22-598459 | Williams Hart & Boundas, LLP | WHBE 703 | Category 1 |

29

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 700, et al. v. Uber Technologies, Inc., et al. | CGC-22-598459 | Williams Hart & Boundas, LLP | WHBE 704 | Category 1 |
| Jane Doe WHBE 700, et al. v. Uber Technologies, Inc., et al. | CGC-22-598459 | Williams Hart & Boundas, LLP | WHBE 706 | Category 1 |
| Jane Doe WHBE 700, et al. v. Uber Technologies, Inc., et al. | CGC-22-598459 | Williams Hart & Boundas, LLP | WHBE 707 | Category 1 |
| Jane Doe WHBE 700, et al. v. Uber Technologies, Inc., et al. | CGC-22-598459 | Williams Hart & Boundas, LLP | WHBE 709 | Category 1 |
| Jane Doe WHBE 753, et al. v. Uber Technologies, Inc., et al. | CGC-22-598743 | Williams Hart & Boundas, LLP | WHBE 754 | Category 1 |
| Jane Doe WHBE 753, et al. v. Uber Technologies, Inc., et al. | CGC-22-598743 | Williams Hart & Boundas, LLP | WHBE 755 | Category 1 |
| Jane Doe WHBE 753, et al. v. Uber Technologies, Inc., et al. | CGC-22-598743 | Williams Hart & Boundas, LLP | WHBE 756 | Category 1 |
| Jane Doe WHBE 753, et al. v. Uber Technologies, Inc., et al. | CGC-22-598743 | Williams Hart & Boundas, LLP | WHBE 757 | Category 1 |
| Jane Doe WHBE 753, et al. v. Uber Technologies, Inc., et al. | CGC-22-598743 | Williams Hart & Boundas, LLP | WHBE 758 | Category 1 |
| Jane Doe WHBE 753, et al. v. Uber Technologies, Inc., et al. | CGC-22-598743 | Williams Hart & Boundas, LLP | WHBE 759 | Category 1 |
| Jane Doe WHBE 753, et al. v. Uber Technologies, Inc., et al. | CGC-22-598743 | Williams Hart & Boundas, LLP | WHBE 760 | Category 1 |
| Jane Doe WHBE 753, et al. v. Uber Technologies, Inc., et al. | CGC-22-598743 | Williams Hart & Boundas, LLP | WHBE 761 | Category 1 |
| Jane Doe WHBE 753, et al. v. Uber Technologies, Inc., et al. | CGC-22-598743 | Williams Hart & Boundas, LLP | WHBE 762 | Category 1 |
| Jane Doe SSS 1, et al. v. Uber Technologies, Inc., et al. | CGC-22-598771 | Slater Slater Schulman, LLP | SSS 1 | Category 1 |

30

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 823 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 824 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 825 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 826 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 827 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 828 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 829 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 830 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 831 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 832 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 833 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 834 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 835 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 838 | Category 1 |

31

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | Forum Non Conveniens Category[3] |
|---|---|---|---|---|
| Jane Doe WHBE 823 et al. v. Uber Technologies, Inc. et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 839 | Category 2 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 840 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 844 | Category 1 |
| Jane Doe WHBE 823 et al. v. Uber Technologies, Inc. et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 846 | Category 2 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 852 | Category 1 |
| Jane Doe WHBE 853, et al. v. Uber Technologies, Inc., et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 854 | Category 1 |
| Jane Doe WHBE 853, et al. v. Uber Technologies, Inc., et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 855 | Category 1 |
| Jane Doe WHBE 853, et al. v. Uber Technologies, Inc., et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 856 | Category 1 |
| Jane Doe WHBE 853, et al. v. Uber Technologies, Inc., et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 857 | Category 1 |
| Jane Doe WHBE 853, et al. v. Uber Technologies, Inc., et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 858 | Category 1 |
| Jane Doe WHBE 853, et al. v. Uber Technologies, Inc., et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 859 | Category 1 |
| Jane Doe WHBE 853, et al. v. Uber Technologies, Inc., et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 860 | Category 1 |
| Jane Doe WHBE 853, et al. v. Uber Technologies, Inc., et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 862 | Category 1 |
| Jane Doe WHBE 853, et al. v. Uber Technologies, Inc., et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 863 | Category 1 |

APP181

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens* Category[3] |
|---|---|---|---|---|
| Jane Doe WHBE 853 et al. v. Uber Technologies, Inc. et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 865 | Category 2 |
| Jane Doe WHBE 853, et al. v. Uber Technologies, Inc., et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 867 | Category 1 |
| Jane Doe WHBE 853, et al. v. Uber Technologies, Inc., et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 868 | Category 1 |
| Jane Doe WHBE 853, et al. v. Uber Technologies, Inc., et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 870 | Category 1 |
| Jane Doe WHBE 853, et al. v. Uber Technologies, Inc., et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 871 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 219 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 220 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 221 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 224 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 225 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 226 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 227 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 228 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 230 | Category 1 |

33

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 231 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 232 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 233 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 234 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 237 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 238 | Category 1 |
| Jane Doe (B.B.) v. Uber Technologies, Inc., et al. | CGC-22-598954 | Simon Greenstone Panatier, PC | Jane Doe B.B. | Category 1 |
| Jane Doe (K.S.) v. Uber Technologies, Inc., et al. | CGC-22-599000 | Simon Greenstone Panatier, PC | Jane Doe K.S. | Category 1 |
| Jane Doe (R.C.) v. Uber Technologies, Inc., et al. | CGC-22-598996 | Simon Greenstone Panatier, PC | Jane Doe R.S. | Category 1 |
| Jane Doe (R.H.) v. Uber Technologies, Inc., et al. | CGC-22-598997 | Simon Greenstone Panatier, PC | Jane Doe R.H. | Category 1 |
| Jane Doe WHBE 873, et al. v. Uber Technologies, Inc., et al. | CGC-22-599117 | Williams Hart & Boundas, LLP | WHBE 873 | Category 1 |
| Jane Doe WHBE 873, et al. v. Uber Technologies, Inc., et al. | CGC-22-599117 | Williams Hart & Boundas, LLP | WHBE 876 | Category 1 |
| Jane Doe WHBE 873, et al. v. Uber Technologies, Inc., et al. | CGC-22-599117 | Williams Hart & Boundas, LLP | WHBE 882 | Category 1 |
| Jane Doe WHBE 873, et al. v. Uber Technologies, Inc., et al. | CGC-22-599117 | Williams Hart & Boundas, LLP | WHBE 884 | Category 1 |

34

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe WHBE 873, et al. v. Uber Technologies, Inc., et al. | CGC-22-599117 | Williams Hart & Boundas, LLP | WHBE 885 | Category 1 |
| Jane Doe WHBE 873, et al. v. Uber Technologies, Inc., et al. | CGC-22-599117 | Williams Hart & Boundas, LLP | WHBE 886 | Category 1 |
| Jane Doe WHBE 873, et al. v. Uber Technologies, Inc., et al. | CGC-22-599117 | Williams Hart & Boundas, LLP | WHBE 888 | Category 1 |
| Jane Doe WHBE 873, et al. v. Uber Technologies, Inc., et al. | CGC-22-599117 | Williams Hart & Boundas, LLP | WHBE 890 | Category 1 |
| Jane Doe WHBE 873, et al. v. Uber Technologies, Inc., et al. | CGC-22-599117 | Williams Hart & Boundas, LLP | WHBE 891 | Category 1 |
| Jane Doe WHBE 873, et al. v. Uber Technologies, Inc., et al. | CGC-22-599117 | Williams Hart & Boundas, LLP | WHBE 892 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 923 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 924 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 927 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 928 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 931 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 932 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 934 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 935 | Category 1 |

35

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 936 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 941 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 942 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 943 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 944 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 946 | Category 1 |
| Jane Doe WHBE 923 et al. v. Uber Technologies, Inc. et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 948 | Category 2 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 949 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 950 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 951 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 952 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 973 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 974 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 976 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 977 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 978 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 979 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 980 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 981 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 982 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 983 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 984 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 986 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 987 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 988 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 991 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 992 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 994 | Category 1 |

37

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 995 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 998 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 999 | Category 1 |
| Jane Doe v. Uber Technologies, Inc., et al. | CGC-22-599424 | Peiffer Wolf Carr Kane Conway & Wise, LLP | Jane Doe | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1001 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1002 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1003 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1004 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1006 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1007 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1009 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1010 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1011 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1013 | Category 1 |

38

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1016 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1017 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1018 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1021 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1022 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1023 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1024 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1026 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1027 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1029 | Category 1 |
| Megan Parish, et al. v. Uber Technologies, Inc., et al. | CGC-22-599623 | Estey & Bomberger, LLP | EB 2 | Category 1 |
| Megan Parish, et al. v. Uber Technologies, Inc., et al. | CGC-22-599623 | Estey & Bomberger, LLP | EB 3 | Category 1 |
| Megan Parish, et al. v. Uber Technologies, Inc., et al. | CGC-22-599623 | Estey & Bomberger, LLP | EB 4 | Category 1 |
| Megan Parish, et al. v. Uber Technologies, Inc., et al. | CGC-22-599623 | Estey & Bomberger, LLP | EB 5 | Category 1 |

39

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe EB 6, et al. v. Uber Technologies, Inc., et al. | CGC-22-599620 | Estey & Bomberger, LLP | EB 7 | Category 1 |
| Megan Parish, et al. v. Uber Technologies, Inc., et al. | CGC-22-599623 | Estey & Bomberger, LLP | Megan Parish | Category 1 |
| Megan Parish, et al. v. Uber Technologies, Inc., et al. | CGC-22-599623 | Estey & Bomberger, LLP | Rebecca Rhodes | Category 1 |
| Jane Doe EB 8, et al. v. Uber Technologies, Inc., et al. | CGC-22-599656 | Estey & Bomberger, LLP | EB 8 | Category 1 |
| Jane Doe EB 10, et al. v. Uber Technologies, Inc., et al. | CGC-22-599659 | Estey & Bomberger, LLP | EB 10 | Category 1 |
| Jane Doe SSS 3, et al. v. Uber Technologies, Inc., et al. | CGC-22-599708 | Slater Slater Schulman, LLP | SSS 11 | Category 1 |
| Jane Doe SSS 3, et al. v. Uber Technologies, Inc., et al. | CGC-22-599708 | Slater Slater Schulman, LLP | SSS 5 | Category 1 |
| Jane Doe SSS 3, et al. v. Uber Technologies, Inc., et al. | CGC-22-599708 | Slater Slater Schulman, LLP | SSS 6 | Category 1 |
| Jane Doe SSS 3, et al. v. Uber Technologies, Inc., et al. | CGC-22-599708 | Slater Slater Schulman, LLP | SSS 7 | Category 1 |
| Jane Doe SSS 3, et al. v. Uber Technologies, Inc., et al. | CGC-22-599708 | Slater Slater Schulman, LLP | SSS 8 | Category 1 |
| Jane Doe SSS 3, et al. v. Uber Technologies, Inc., et al. | CGC-22-599708 | Slater Slater Schulman, LLP | SSS 9 | Category 1 |
| Jane Doe SSS 3, et al. v. Uber Technologies, Inc., et al. | CGC-22-599708 | Slater Slater Schulman, LLP | SSS 12 | Category 1 |
| Jane Doe SSS 3, et al. v. Uber Technologies, Inc., et al. | CGC-22-599708 | Slater Slater Schulman, LLP | SSS 13 | Category 1 |
| Cristina Chirino, et al. v. Uber Technologies, Inc., et al. | CGC-22-599756 | Estey & Bomberger, LLP | Cristina Chirino | Category 1 |

40

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Cristina Chirino, et al. v. Uber Technologies, Inc., et al. | CGC-22-599756 | Estey & Bomberger, LLP | EB 12 | Category 1 |
| Cristina Chirino, et al. v. Uber Technologies, Inc., et al. | CGC-22-599756 | Estey & Bomberger, LLP | EB 13 | Category 1 |
| Cristina Chirino, et al. v. Uber Technologies, Inc., et al. | CGC-22-599756 | Estey & Bomberger, LLP | EB 16 | Category 1 |
| Cristina Chirino, et al. v. Uber Technologies, Inc., et al. | CGC-22-599756 | Estey & Bomberger, LLP | EB 17 | Category 1 |
| Cristina Chirino, et al. v. Uber Technologies, Inc., et al. | CGC-22-599756 | Estey & Bomberger, LLP | EB 18 | Category 1 |
| Cristina Chirino, et al. v. Uber Technologies, Inc., et al. | CGC-22-599756 | Estey & Bomberger, LLP | EB 19 | Category 1 |
| Cristina Chirino, et al. v. Uber Technologies, Inc., et al. | CGC-22-599756 | Estey & Bomberger, LLP | EB 20 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1030 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1031 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1032 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1033 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1036 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1037 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1038 | Category 1 |

41

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | Forum Non Conveniens Category[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1041 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1042 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1043 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1044 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1045 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1046 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1048 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1049 | Category 1 |
| Jane Doe WHBE 1030 et al. v. Uber Technologies, Inc. et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1050 | Category 2 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1051 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1054 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1056 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1057 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1120 | Category 1 |

42

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1122 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1123 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1124 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1125 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1127 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1128 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1129 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1131 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1132 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1134 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1135 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1136 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1138 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1140 | Category 1 |

43

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1141 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1142 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1143 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1144 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1147 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1148 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 239 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 240 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 241 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 243 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 244 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 245 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 247 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 248 | Category 1 |

44

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 249 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 250 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 251 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 252 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 253 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 254 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 255 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 256 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 257 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 258 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1260 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1262 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1263 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1264 | Category 1 |

45

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1269 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1270 | Category 1 |
| Jane Doe WHBE 1260 et al. v. Uber Technologies, Inc. et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1271 | Category 2 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1272 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1273 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1274 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1275 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1277 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1278 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1279 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1280 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1285 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1286 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1287 | Category 1 |

46

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens* Category[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1288 | Category 1 |
| Jane Doe v. Uber Technologies, Inc. et al. | CGC-22-600079 | Downtown LA Law Group | Jane Doe | Category 2 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1290 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1291 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1292 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1293 | Category 1 |
| Jane Doe WHBE 1290 et al. v. Uber Technologies, Inc. et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1294 | Category 2 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1295 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1298 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1299 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1300 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1301 | Category 1 |
| Jane Doe WHBE 1290 et al. v. Uber Technologies, Inc. et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1304 | Category 2 |
| Jane Doe WHBE 1290 et al. v. Uber Technologies, Inc. et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1306 | Category 2 |

47

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1307 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1308 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1309 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1310 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1311 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1312 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1313 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1314 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1317 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1318 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1319 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1322 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1324 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1325 | Category 1 |

48

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1329 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1330 | Category 1 |
| Jane Doe WHBE 1320 et al. v. Uber Technologies, Inc. et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1331 | Category 2 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1332 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1333 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1334 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1335 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1336 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1338 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1339 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1341 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1342 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1344 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1345 | Category 1 |

49

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1346 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1347 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1348 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1349 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1380 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1381 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1382 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1384 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1386 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1387 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1388 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1389 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1392 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1394 | Category 1 |

50

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1395 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1396 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1398 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1399 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1400 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1401 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1402 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1405 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1406 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1407 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1408 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1409 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1393 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1397 | Category 1 |

51

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Rebekah Sprous, et al. v. Uber Technologies, Inc., et al. | CGC-22-600226 | Estey & Bomberger, LLP | EB 22 | Category 1 |
| Rebekah Sprous, et al. v. Uber Technologies, Inc., et al. | CGC-22-600226 | Estey & Bomberger, LLP | EB 24 | Category 1 |
| Rebekah Sprous, et al. v. Uber Technologies, Inc., et al. | CGC-22-600226 | Estey & Bomberger, LLP | Rebekah Sprous | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1411 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1412 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1413 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1414 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1416 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1420 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1421 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1422 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1423 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1424 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1425 | Category 1 |

52

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1426 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1427 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1428 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1429 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1431 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1432 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1433 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1435 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1436 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1437 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1438 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1439 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1440 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1443 | Category 1 |

53

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1444 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1445 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1446 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1447 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1448 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1449 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1450 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1452 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1453 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1454 | Category 1 |
| Jane Doe WHBE 1440 et al. v. Uber Technologies, Inc. et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1455 | Category 2 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1457 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1458 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1460 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1461 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1462 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1463 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1464 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1467 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1468 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1469 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1470 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1471 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1472 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1473 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1474 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1475 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1476 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe WHBE 1470 et al. v. Uber Technologies, Inc. et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1477 | Category 2 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1478 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1479 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1480 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1481 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1483 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1484 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1485 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1486 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1487 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1488 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1489 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1490 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1491 | Category 1 |

56

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1492 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1495 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1496 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1497 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1499 | Category 1 |
| Angela Malato, et al. v. Uber Technologies, Inc., et al. | CGC-22-600524 | Estey & Bomberger, LLP | EB 27 | Category 1 |
| Angela Malato, et al. v. Uber Technologies, Inc., et al. | CGC-22-600524 | Estey & Bomberger, LLP | EB 28 | Category 1 |
| Angela Malato, et al. v. Uber Technologies, Inc., et al. | CGC-22-600524 | Estey & Bomberger, LLP | EB 29 | Category 1 |
| Angela Malato, et al. v. Uber Technologies, Inc., et al. | CGC-22-600524 | Estey & Bomberger, LLP | EB 30 | Category 1 |
| Angela Malato, et al. v. Uber Technologies, Inc., et al. | CGC-22-600524 | Estey & Bomberger, LLP | EB 33 | Category 1 |
| Angela Malato, et al. v. Uber Technologies, Inc., et al. | CGC-22-600524 | Estey & Bomberger, LLP | EB 34 | Category 1 |
| Angela Malato, et al. v. Uber Technologies, Inc., et al. | CGC-22-600524 | Estey & Bomberger, LLP | EB 35 | Category 1 |
| Angela Malato, et al. v. Uber Technologies, Inc., et al. | CGC-22-600524 | Estey & Bomberger, LLP | Aaliyah Seifullah | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 259 | Category 1 |

57

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 260 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 264 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 265 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 266 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 267 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 268 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 269 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 270 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 271 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 272 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 273 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 274 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 275 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 276 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 277 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 278 | Category 1 |
| Jane Doe SSS 14, et al. v. Uber Technologies, Inc., et al. | CGC-22-600694 | Slater Slater Schulman, LLP | SSS 16 | Category 1 |
| Jane Doe SSS 14, et al. v. Uber Technologies, Inc., et al. | CGC-22-600694 | Slater Slater Schulman, LLP | SSS 17 | Category 1 |
| Jane Doe SSS 14, et al. v. Uber Technologies, Inc., et al. | CGC-22-600694 | Slater Slater Schulman, LLP | SSS 18 | Category 1 |
| Jane Doe SSS 19, et al. v. Uber Technologies, Inc., et al. | CGC-22-600697 | Slater Slater Schulman, LLP | SSS 20 | Category 1 |
| Jane Doe SSS 19, et al. v. Uber Technologies, Inc., et al. | CGC-22-600697 | Slater Slater Schulman, LLP | SSS 21 | Category 1 |
| Jane Doe SSS 19, et al. v. Uber Technologies, Inc., et al. | CGC-22-600697 | Slater Slater Schulman, LLP | SSS 22 | Category 1 |
| Jane Doe SSS 19, et al. v. Uber Technologies, Inc., et al. | CGC-22-600697 | Slater Slater Schulman, LLP | SSS 23 | Category 1 |
| Jane Doe SSS 24, et al. v. Uber Technologies, Inc., et al. | CGC-22-601017 | Slater Slater Schulman, LLP | SSS 25 | Category 1 |
| Jane Doe SSS 24, et al. v. Uber Technologies, Inc., et al. | CGC-22-601017 | Slater Slater Schulman, LLP | SSS 26 | Category 1 |
| Jane Doe SSS 24, et al. v. Uber Technologies, Inc., et al. | CGC-22-601017 | Slater Slater Schulman, LLP | SSS 28 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 279 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 281 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens* Category[3] |
|---|---|---|---|---|
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 282 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 283 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 284 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 285 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 286 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 287 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 288 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 289 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 290 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 291 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 293 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 295 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 296 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 297 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 298 | Category 1 |
| Jane Doe SSS 29, et al. v. Uber Technologies, Inc., et al. | CGC-22-601570 | Slater Slater Schulman, LLP | SSS 31 | Category 1 |
| Jane Doe SSS 29, et al. v. Uber Technologies, Inc., et al. | CGC-22-601570 | Slater Slater Schulman, LLP | SSS 32 | Category 1 |
| Jane Doe SSS 29, et al. v. Uber Technologies, Inc., et al. | CGC-22-601570 | Slater Slater Schulman, LLP | SSS 33 | Category 1 |
| Jane Doe WHBE 1590, et al. v. Uber Technologies, Inc., et al. | CGC-22-601660 | Williams Hart & Boundas, LLP | WHBE 1590 | Category 1 |
| Jane Doe WHBE 1590, et al. v. Uber Technologies, Inc., et al. | CGC-22-601660 | Williams Hart & Boundas, LLP | WHBE 1591 | Category 1 |
| Jane Doe SSS 34, et al. v. Uber Technologies, Inc., et al. | CGC-22-601781 | Slater Slater Schulman, LLP | SSS 35 | Category 1 |
| Jane Doe SSS 34, et al. v. Uber Technologies, Inc., et al. | CGC-22-601781 | Slater Slater Schulman, LLP | SSS 36 | Category 1 |
| Jane Doe SSS 34, et al. v. Uber Technologies, Inc., et al. | CGC-22-601781 | Slater Slater Schulman, LLP | SSS 37 | Category 1 |
| Jane Doe SSS 34, et al. v. Uber Technologies, Inc., et al. | CGC-22-601781 | Slater Slater Schulman, LLP | SSS 38 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | John Doe LSA 1 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 300 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 301 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 302 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 303 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 304 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 305 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 306 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 307 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 308 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 311 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 312 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 314 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 315 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 317 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 318 | Category 1 |
| Jane Does CL 2 through 6, et al. v. Uber Technologies, Inc., et al. | CGC-22-602147 | Cutter Law, PC | CL 3 | Category 1 |
| Jane Does CL 2 through 6, et al. v. Uber Technologies, Inc., et al. | CGC-22-602147 | Cutter Law, PC | CL 4 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Does CL 2 through 6, et al. v. Uber Technologies, Inc., et al. | CGC-22-602147 | Cutter Law, PC | CL 5 | Category 1 |
| Jane Does CL 2 through 6, et al. v. Uber Technologies, Inc., et al. | CGC-22-602147 | Cutter Law, PC | CL 6 | Category 1 |
| Jane Does CL 2 through 6, et al. v. Uber Technologies, Inc., et al. | CGC-22-602147 | Cutter Law, PC | John Doe CL 1 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1531 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1532 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1535 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1538 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1539 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1540 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1542 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1543 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1544 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1545 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1546 | Category 1 |

63

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1548 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1549 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1550 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1551 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1552 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1553 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1554 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1555 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1556 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1557 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1593 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1594 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1595 | Category 1 |
| Jane Doe WHBE 1596 et al. v. Uber Technologies, Inc. et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1596 | Category 2 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1597 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1598 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1600 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1601 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1602 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1603 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1604 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1605 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1606 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1607 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1608 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1609 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1610 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1611 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1613 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1614 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1615 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1616 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1617 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1618 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1619 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1620 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1621 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1622 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1623 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1624 | Category 1 |
| Jane Doe SSS 39, et al. v. Uber Technologies, Inc., et al. | CGC-22-602746 | Slater Slater Schulman, LLP | SSS 40 | Category 1 |
| Jane Doe SSS 39, et al. v. Uber Technologies, Inc., et al. | CGC-22-602746 | Slater Slater Schulman, LLP | SSS 41 | Category 1 |

66

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens* Category[3] |
|---|---|---|---|---|
| Jane Doe SSS 39, et al. v. Uber Technologies, Inc., et al. | CGC-22-602746 | Slater Slater Schulman, LLP | SSS 42 | Category 1 |
| Jane Doe SSS 39, et al. v. Uber Technologies, Inc., et al. | CGC-22-602746 | Slater Slater Schulman, LLP | SSS 43 | Category 1 |
| Jane Doe WHBE 1655 v. Uber Technologies, Inc., et al. | CGC-22-603187 | Williams Hart & Boundas, LLP | WHBE 1655 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 319 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 320 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 321 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 322 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 324 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 325 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 326 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 327 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 329 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 330 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 331 | Category 1 |

67

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 332 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 333 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 334 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 335 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 336 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 337 | Category 1 |
| Jane Doe LSA 319 et al. v. Uber Technologies, Inc. et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 338 | Category 2 |
| Jane Doe SSS 44, et al. v. Uber Technologies, Inc., et al. | CGC-22-603373 | Slater Slater Schulman, LLP | SSS 45 | Category 1 |
| Jane Doe SSS 44, et al. v. Uber Technologies, Inc., et al. | CGC-22-603373 | Slater Slater Schulman, LLP | SSS 46 | Category 1 |
| Jane Doe SSS 44, et al. v. Uber Technologies, Inc., et al. | CGC-22-603373 | Slater Slater Schulman, LLP | SSS 47 | Category 1 |
| Jane Doe SSS 44, et al. v. Uber Technologies, Inc., et al. | CGC-22-603373 | Slater Slater Schulman, LLP | SSS 48 | Category 1 |
| Jane Does CL 7 through 17 v. Uber Technologies, Inc., et al. | CGC-22-603650* | Cutter Law, PC | CL 9 | Category 1 |
| Jane Does CL 7 through 17 v. Uber Technologies, Inc., et al. | CGC-22-603650* | Cutter Law, PC | CL 10 | Category 1 |
| Jane Does CL 7 through 17 v. Uber Technologies, Inc., et al. | CGC-22-603650* | Cutter Law, PC | CL 11 | Category 1 |

68

APP217

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Does CL 7 through 17 v. Uber Technologies, Inc., et al. | CGC-22-603650* | Cutter Law, PC | CL 12 | Category 1 |
| Jane Does CL 7 through 17 v. Uber Technologies, Inc., et al. | CGC-22-603650* | Cutter Law, PC | CL 13 | Category 1 |
| Jane Does CL 7 through 17 v. Uber Technologies, Inc., et al. | CGC-22-603650* | Cutter Law, PC | CL 14 | Category 1 |
| Jane Does CL 7 through 17 v. Uber Technologies, Inc., et al. | CGC-22-603650* | Cutter Law, PC | CL 15 | Category 1 |
| Jane Does CL 7 through 17 v. Uber Technologies, Inc., et al. | CGC-22-603650* | Cutter Law, PC | CL 16 | Category 1 |
| Jane Does CL 7 through 17 v. Uber Technologies, Inc., et al. | CGC-22-603650* | Cutter Law, PC | CL 17 | Category 1 |
| Jane Doe SSS 49, et al. v. Uber Technologies, Inc., et al. | CGC-22-603716 | Slater Slater Schulman, LLP | SSS 52 | Category 1 |
| Jane Doe SSS 49, et al. v. Uber Technologies, Inc., et al. | CGC-22-603716 | Slater Slater Schulman, LLP | SSS 53 | Category 1 |
| Jane Doe SSS 49, et al. v. Uber Technologies, Inc., et al. | CGC-22-603716 | Slater Slater Schulman, LLP | SSS 54 | Category 1 |
| Jane Doe SSS 49, et al. v. Uber Technologies, Inc., et al. | CGC-22-603716 | Slater Slater Schulman, LLP | SSS 55 | Category 1 |
| Jane Doe SSS 49, et al. v. Uber Technologies, Inc., et al. | CGC-22-603716 | Slater Slater Schulman, LLP | SSS 56 | Category 1 |
| Jane Doe SSS 49, et al. v. Uber Technologies, Inc., et al. | CGC-22-603716 | Slater Slater Schulman, LLP | SSS 57 | Category 1 |
| Jane Doe SSS 49, et al. v. Uber Technologies, Inc., et al. | CGC-22-603716 | Slater Slater Schulman, LLP | SSS 58 | Category 1 |
| Jane Doe SSS 49, et al. v. Uber Technologies, Inc., et al. | CGC-22-603716 | Slater Slater Schulman, LLP | SSS 59 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe SSS 49, et al. v. Uber Technologies, Inc., et al. | CGC-22-603716 | Slater Slater Schulman, LLP | SSS 60 | Category 1 |
| Jane Doe PW002 v. Uber Technologies, Inc., et al. | CGC-22-604119* | Peiffer Wolf Carr Kane Conway & Wise, LLP | PW002 | Category 1 |
| Jane Doe PW004 v. Uber Technologies, Inc., et al. | CGC-22-604040* | Peiffer Wolf Carr Kane Conway & Wise, LLP | PW004 | Category 2 |
| Jane Doe PW003 v. Uber Technologies, Inc., et al. | CGC-23-604222* | Peiffer Wolf Carr Kane Conway & Wise, LLP | PW003 | Category 1 |
| Jane Doe PW005 v. Uber Technologies, Inc., et al. | CGC-23-604282* | Peiffer Wolf Carr Kane Conway & Wise, LLP | PW005 | Category 1 |
| Jane Doe v. Uber Technologies, Inc., et al. | CGC-23-603835* | Downtown LA Law Group | Jane Doe | Category 1 |
| Jane Does CL 18 through 21 v. Uber Technologies, Inc., et al. | CGC-23-604296* | Cutter Law, PC | CL 19 | Category 1^ |
| Jane Does CL 18 through 21 v. Uber Technologies, Inc., et al. | CGC-23-604296* | Cutter Law, PC | CL 20 | Category 1^ |
| Jane Does CL 18 through 21 v. Uber Technologies, Inc., et al. | CGC-23-604296* | Cutter Law, PC | CL 21 | Category 1^ |
| Jane Doe LSA 176, et al. v. Uber Technologies, Inc., et al. | CGC-21-597216 | Levin Simes Abrams, LLP | LSA 182 | Category 2^ |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 408 | Category 1^ |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 430 | Category 1^ |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1053 | Category 1^ |

70

## CERTIFICATE OF ELECTRONIC SERVICE
### (CCP 1010.6(6) & CRC 2.260(g))

I, Felicia Green, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On February 28, 2023, I electronically served ORDER RE: APPLICATION OF JANUARY 23, 2023 ORDER TO ALL CASES IN THIS PROCEEDING via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Dated:  **FEB 28 2023**

Mark Culkins, Interim Chief Executive Officer of the Court

By: _____

Felicia Green, Deputy Clerk

# EXHIBIT 3

1

2

3

4

5

6

7

8 SUPERIOR COURT OF CALIFORNIA

9 COUNTY OF SAN FRANCISCO

10 DEPARTMENT 304

11

12 COORDINATION PROCEEDING
SPECIAL TITLE [RULE 3.550]

13

14

15 IN RE UBER RIDESHARE CASES

16

17

18

Case No. CJC-21-005188
JUDICIAL COUNCIL COORDINATION
PROCEEDING NO. 5188

ORDER ON DEFENDANTS UBER
TECHNOLOGIES, INC. AND RASIER, LLC'S
DEMURRER TO PLAINTIFFS' MASTER
LONG-FORM COMPLAINT

19

20 Defendants Uber Technologies, Inc. and Rasier, LLC's Demurrer to Plaintiffs' Master Long-Form

21 Complaint came on for hearing on June 15, 2023.  Having considered the papers and pleadings on file in

22 the action, and the arguments of counsel presented at the hearing, the Court hereby sustains Uber's

23 demurrer as to Plaintiffs' vicarious liability claims (sixth through tenth causes of action), fraud and

24 misrepresentation claims (third, fourth, thirteenth, and sixteenth causes of action), and strict products

25 liability claims (fourteenth and fifteenth causes of action) without leave to amend.  The Court sustains

26 Uber's demurrer as to the negligent infliction of emotional distress claim (fifth cause of action) with

27 leave to amend.

28

- 1 -

## **BACKGROUND**

By order dated December 9, 2021, the Court (Hon. Andrew Y.S. Cheng) granted the petition for coordination with respect to 86 cases originally filed in San Francisco, Sacramento, Santa Clara, Kern, and Los Angeles counties. Since that time, over 1,200 additional cases were the subjects of add-on orders from this Court. On January 23, 2023, the Court granted Uber's Motions to Stay or Dismiss Based on *Forum Non Conveniens*. Over 360 California cases remain in this JCCP. (Opening Brief, 13 fn. 1.)

On March 7, 2023, Plaintiffs filed a Master Long-Form Complaint ("Complaint" or "Compl.") against Defendants Uber Technologies, Inc. and Rasier, LLC (together, "Uber"). Plaintiffs allege sixteen causes of action: (1) general negligence; (2) common carrier negligence; (3) negligent misrepresentation; (4) intentional misrepresentation; (5) negligent infliction of emotional distress ("NIED"); (6) intentional infliction of emotional distress ("IIED"); (7) vicarious liability/liability for the torts of Uber drivers; (8) vicarious liability for sexual assault; (9) vicarious liability for sexual battery; (10) vicarious liability for false imprisonment; (11) negligence by misfeasance; (12) negligence by nonfeasance; (13) intentional concealment; (14) strict product liability – design defect; (15) strict product liability – failure to warn; and (16) fraud. (Compl. ¶¶ 164-348.) Plaintiffs generally allege as follows.

Plaintiffs "are individuals who were raped, sexually assaulted, sexually battered, sexually harassed, falsely imprisoned, kidnapped, physically assaulted, and/or otherwise assaulted and/or harassed by their Uber driver." (*Id.* ¶ 6.) Uber is a transportation company that uses its app ("Uber App") to "connect riders looking for transportation to independent transportation providers…looking for rides." (*Id.* ¶¶ 1, 21-22.) Uber "drivers are largely nonprofessional, untrained individuals who use their own vehicles." (*Id.* ¶ 44.)

As early as 2014, Uber became aware that its drivers were engaging in sexual misconduct or sexual assault against its passengers. (*Id.* ¶¶ 3, 166; see *id.* ¶¶ 27, 244.) Uber has "publicly acknowledged this sexual assault crisis." (*Id.* ¶ 4; see *id.* ¶¶ 29, 121, 147, 149; see, e.g., *id.* ¶ 122 [approximately 250 reported sexual assaults per month in 2017 and 2018].) However, Uber "has actively chosen not to report instances of sexual assault that occur on the UBER App to the authorities" or other

-2-

1  ridesharing companies. (*Id.* ¶¶ 84-86, 88, 134.) In addition, Uber does not proactively cooperate with

2  law enforcement investigating cases passenger victims report to the police or participate in transportation

3  network company ("TNC") safety hearings. (*Id.* ¶¶ 89-94, 116-120, 172.) Moreover, after a victim

4  reports a sexual assault, Uber often erases the victim's complaint and disables the victim's account,

5  which precludes the victim from accessing pertinent information such as the driver's name, driver's

6  photo, make and model of the vehicle, ride time, ride distance, and route. (*Id.* ¶¶ 94-95, 100, 102.)

7  　　　Despite marketing itself as a safe and better alternative to other transportation methods, Uber

8  continues to hire drivers without conducting adequate background checks and screening procedures,

9  allows culpable drivers to keep driving for Uber, and fails to adopt and implement reasonable monitoring

10  and investigation procedures to protect passengers. (*Id.* ¶¶ 4, 24-25, 28, 30-31, 112-114, 131-133, 152-

11  153, 157, 167-169, 171, 173-180, 195-196, 198, 204, 221-226, 232-238, 245-247, 262, 267, 295, 301,

12  316, 332-333; see, e.g., *id.* ¶¶ 33-43, 66-83, 130 [Uber Safe Rides Fee was a revenue source rather than a

13  fund for implementing background checks, vehicle checks, driver safety education, development of

14  safety features, and insurance], 329-330; but see *id.* ¶ 111 [the Uber App now includes an emergency

15  button that allows a passenger to call 911].) Due to Uber's failure to implement changes, passengers

16  continue to be victims of sexual assaults. (*Id.* ¶¶ 28, 127.)

17  　　　Uber now demurs to the third through tenth and thirteenth through sixteenth causes of action,

18  which fall into four categories of claims: vicarious liability (fifth through tenth causes of action), fraud

19  and misrepresentation (third, fourth, thirteenth, and sixteenth causes of action), NIED (fifth cause of

20  action), and strict products liability (fourteenth and fifteenth causes of action). (Demurrer, 2-4; Opening

21  Brief, 14.) Plaintiffs oppose the demurrer.[1]

22  　　　　　　　　　　　　　　　**LEGAL STANDARD**

23  　　　A demurrer lies where "the pleading does not state facts sufficient to constitute a cause of action."

24  (Code Civ. Proc., § 430.10(e).) A demurrer admits "all material facts properly pleaded, but not

---

25  [1] Plaintiffs' Request for Judicial Notice of state trial court rulings is denied. Written trial court rulings

26  have no precedential value. (*Bolanos v. Superior Court* (2008) 169 Cal.App.4th 744, 761 [denying
      request for judicial notice]; see also, e.g., *Santa Ana Hospital Medical Center v. Belshe* (1997) 56

27  Cal.App.4th 819, 831.) Uber's extensive reliance on such rulings throughout its briefing is misplaced for
      the same reason.

28  　　　　　　　　　　　　　　　　　　- 3 -

contentions, deductions, or conclusions of fact or law." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)
The complaint is given a reasonable interpretation, reading it as a whole and its parts in their context.
(*Id.*)  The Court accepts as true, and liberally construes, all properly pleaded allegations of material fact,
as well as those facts which may be implied or reasonably inferred from those allegations; its sole
consideration is whether the plaintiff's complaint is sufficient to state a cause of action under any legal
theory.  (*O'Grady v. Merchant Exchange Prods., Inc.* (2019) 41 Cal.App.5th 771, 776-777.)

## **DISCUSSION**

### I.  **Uber Cannot Be Held Vicariously Liable For The Tortious Acts Of Its Drivers.**

Plaintiffs seek to hold Uber vicariously liable for IIED, sexual assault, sexual battery, and false
imprisonment.  (Compl. ¶¶ 250-292.)  Uber contends that, as a matter of law, it cannot be held vicariously
liable for the alleged sexual assaults committed by its drivers because such conduct falls outside the scope
of employment.  (Demurrer, 2; Opening Brief, 14-19.)[2]  The Court agrees.

"California deems employers to be vicariously liable for the torts committed by their employees
if, but only if, *the employee is acting within the scope of employment*."  (*Musgrove v. Silver* (2022) 82
Cal.App.5th 694, 707 (emphasis in original).)  "Under certain circumstances, the employer may be subject
to this form of vicarious liability even for an employee's willful, malicious, and criminal conduct."
(*Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 491.)  "The nexus required for respondeat
superior liability—that the tort be engendered by or arise from the work—is to be distinguished from 'but
for' causation.  That the employment brought the tortfeasor and victim together in time and place is not
enough."  (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 298.)  That is, "the
incident leading to injury must be an outgrowth of the employment; the risk of tortious injury must be
inherent in the working environment or typical of or broadly incidental to the enterprise the employer has
undertaken."  (*Id.* (cleaned up).)

California courts use two tests to regarding the "scope of employment under the respondeat

---

[2] For purposes of the demurrer, Uber accepts Plaintiffs' allegations regarding Uber drivers' status as
employees.  (Demurrer, 2; but see Reply, 10 fn. 1 ["As the demurrer made clear, the independent drivers
are not Uber employees in any event."].)

- 4 -

superior doctrine." (*Marez v. Lyft, Inc.* (2020) 48 Cal.App.5th 569, 577.)  Under the first test, "the employer is liable if the activities that caused the employee to become an instrument of danger to others were undertaken with the employer's permission and were of some benefit to the employer, or in the absence of proof of benefit, the activities constituted a customary incident of employment." (*Id.*, quoting *Moreno v. Visser Ranch, Inc.* (2018) 30 Cal.App.5th 568, 577.)  Under the second test, "an employee's conduct is within the scope of his or her employment if (1) the act performed was either required or incident to his duties or (2) the employer's misconduct could be reasonably foreseen by the employer in any event." (*Marez*, 48 Cal.App.5th at 577, quoting *Halliburton Energy Services, Inc. v. Dept. of Transportation* (2013) 220 Cal.App.4th 87, 94.)  "Whether an employee was acting within the scope of employment is a question of fact, unless 'the facts are undisputed and no conflicting inferences are possible.'" (*Doe v. Uber Technologies, Inc.* (N.D. Cal. 2016) 184 F.Supp.3d 774, 784, quoting *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 213.)

Uber asserts *Lisa M.* is directly on point because "[i]f a hospital cannot be vicariously liable for a sexual assault carried out by an employee who was permitted to perform physical examinations on vulnerable patients alone in a confined space, then Uber certainly cannot be vicariously liable for a sexual assault carried out by an independent driver whose 'job' was providing rides to users of the Uber App." (Opening Brief, 17; see *id.* at 16.)  In *Lisa M.*, the plaintiff, a nineteen-year-old pregnant woman, was injured in a fall at a movie theater and sought medical treatment. (*Lisa M.*, 12 Cal.4th at 294.)  The plaintiff underwent an ultrasound imaging examination during which the ultrasound technician molested the plaintiff. (*Id.* at 295.)  Thereafter, the plaintiff filed suit against the ultrasound technician and the hospital for professional negligence, battery, IIED, and NIED. (*Id.* at 296.)  The Court found the "injurious events were causally related to Tripoli's employment as an ultrasound technician in the sense they would not have occurred had he not been so employed.  Tripoli's employment as an ultrasound technician provided the opportunity for him to meet plaintiff and to be alone with her in circumstances making the assault possible." (*Id.* at 299.)  However, the Court found:

> a sexual tort will not be considered engendered by the employment unless its motivating emotions were fairly attributable to work-related events or conditions.  Here the opposite was true: a technician simply took advantage of solitude with a naive patient to commit an assault for reasons

-5-

unrelated to his work.  Tripoli's job was to perform a diagnostic examination and record the results.  The task provided no occasion for a work-related dispute or any other work-related emotional involvement with the patient.  The technician's decision to engage in conscious exploitation of the patient did not *arise out* of the performance of the examination, although the circumstances of the examination made it possible.

(*Id.* at 301 (emphasis in original).)  The Court concluded that the "flaw in plaintiff's case for Hospital's respondeat superior liability is not so much that Tripoli's actions were personally motivated, but that those personal motivations were not generated by or an outgrowth of workplace responsibilities, conditions or events."  (*Id.* at 301-302.)  "Although the routine examination Tripoli was authorized to conduct involved physical contact with Lisa M., Tripoli's assault on plaintiff did not originate with, and was not a generally foreseeable consequence of, that contact."  (*Id.* at 303.)  The same reasoning applies here.

Plaintiffs generally allege Uber drivers engaged in sexual misconduct within the scope of their employment.  (Compl. ¶¶ 11, 251, 257, 261, 264, 277, 284, 290.)  Plaintiffs also allege "[t]he sexual assault and/or rape of intoxicated and unaccompanied women who have been placed in an improperly screened UBER driver's car with little to no supervision is incidental to and a foreseeable result of the act of transporting passengers."  (*Id.* ¶ 264; see, e.g., *id.* ¶¶ 121-127 [5,981 sexual assaults in 2017 and 2018].)  However, these allegations are insufficient as a matter of law.  Plaintiffs do not allege Uber drivers were not acting solely for personal gratification or that the sexual assaults were engendered by their alleged employment.  Rather, being in close proximity to passengers, in a confined environment, "brought the tortfeasor and victim together in time and place," which is insufficient to impose vicarious liability on Uber.  (*Lisa M.*, 12 Cal.4th at 298.)

California appellate courts routinely find sexual assaults are beyond the scope of employment, and hence employers may not be held vicariously liable for such misconduct.  (*John Y. v. Chaparral Treatment Center, Inc.* (2002) 101 Cal.App.4th 565, 575; see, e.g., *Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992; *Roe v. Hesperia Unified School Dist.* (2022) 85 Cal.App.5th 13, 25; *John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438; *Doe 1 v. City of Murrieta* (2002) 102 Cal.App.4th 899; *Maria D. v. Westec Residential Sec., Inc.* (2000) 85 Cal.App.4th 125; *Debbie Reynolds Prof. Rehearsal Studios v. Superior Court* (1994) 25 Cal.App.4th 222; *Kimberly M. v. Los Angeles Unified*

- 6 -

1   *School Dist.* (1989) 215 Cal.App.3d 545; *Jeffrey E. v. Central Baptist Church* (1988) 197 Cal.App.3d

2   718; *Rita M. v. Roman Catholic Archbishop* (1986) 187 Cal.App.3d 1453; *Alma W. v. Oakland Unified*

3   *School Dist.* (1981) 123 Cal.App.3d 133.)

> In those decisions, vicarious liability was rejected as a matter of law because it could not be
> demonstrated that the various acts of sexual misconduct arose from the conduct of the respective
> enterprises. In particular, the acts had been undertaken solely for the employees' personal
> gratification and had no purpose connected to the employment. Moreover, the acts had not been
> engendered by events or conditions relating to any employment duties or tasks; nor had they been
> necessary to the employees' comfort, convenience, health, or welfare while at work.

8   (*Farmers Ins. Group*, 11 Cal.4th at 1007.)

9   The sole exception is *Mary M.*, where the Court found that when "a police officer on duty misuses

10  his official authority by raping a woman whom he has detained, the public entity that employs him can be

11  held vicariously liable." (*Mary M.*, 54 Cal.3d at 221.) Plaintiffs contend that this case is similar to *Mary*

12  *M.* because "Uber drivers abused their position of power to benefit [off] of Plaintiffs' vulnerabilities."

13  (Opposition, 17.) However, as Uber points out, *Mary M.*'s holding is limited to sexual assaults by on-

14  duty police officers, as the Supreme Court itself has expressly recognized. (See, e.g., *Farmers Ins.*

15  *Group*, 11 Cal.4th at 1006-1007 ["except where sexual misconduct by on-duty police officers against

16  members of the public is involved, the employer is not vicariously liable to the third party for such

17  misconduct."]; *Lisa M.*, 12 Cal.4th at 204 ["We expressly limited our holding [in *Mary M.* to] the unique

18  authority vested in police officers. Employees who do not have this authority and who commit sexual

19  assaults may be acting outside the scope of their employment as a matter of law."]; *Z.V. v. County of*

20  *Riverside* (2015) 238 Cal.App.4th 889, 891 ["there is considerable doubt that *Mary M.* has any

21  applicability beyond the narrow context of an arrest performed by a uniformed, armed police officer in the

22  normal course of that officer's duties."]; *M.P. v. City of Sacramento* (2009) 177 Cal.App.4th 121, 124

23  [*Mary M.*'s holding "is, at best, limited to such [sex crime] acts by an on-duty police officer and does not

24  extend to any other form of employment, including firefighting."].)

25  In the interest of completeness, the Court notes that it has identified one other appellate decision

26  (which neither party cited) that applies these principles, although it does not advance Plaintiffs' position

27  here. In *Samantha B. v. Aurora Vista Del Mar, LLC* (2022) 77 Cal.App.5th 85, the court reversed the trial

28

- 7 -

1  court's order granting an acute psychiatric hospital's motion for nonsuit on causes of action asserted by

2  former patients alleging the hospital bore vicarious liability for sexual assaults on them committed by a

3  mental health worker.  While the court recognized the general rule that "an employer is not liable under

4  the doctrine of respondeat superior for sexual assaults committed by an employee," it found that there was

5  sufficient evidence for a jury to conclude the mental health worker was acting within the scope of his

6  employment under the narrow exception recognized in *Lisa M.*: "a sexual tort will be considered to be

7  within the scope of employment if 'its motivating emotions were fairly attributable to work-related events

8  or conditions.'" (*Id.* at 107-108, quoting *Lisa M.*, 12 Cal.4th at 301.)  The court's conclusion was

9  informed by the unique relationship between mental health workers and psychiatric patients:

> The duties of a mental health worker include helping patients with daily living activities.  The workers are personally involved with the patients over an extended period of time.  The patients are vulnerable; they may suffer from impaired judgment or other cognitive impairments.  Sexual exploitation of the patients by employees is a foreseeable hazard arising from the circumstances of the job.  That hazard was exponentially increased by [the hospital's] policies, including allowing male workers 20 minutes alone with patients and providing inadequate training on worker-patient boundaries.

(*Id.* at 108.)  The court observed that in *Lisa M.*, the ultrasound technician's interaction with the victim

was "brief" and his duties were "technical," and the circumstances of employment therefore were "highly

unlikely to engender a personal relationship that might result in sexual exploitation." (*Id.*)  In contrast, it

observed, the mental health worker "becomes sexually involved with a patient as a result of mishandling

the feelings predictably created by the therapeutic relationship." (*Id.*, quoting *Lisa M.*, 12 Cal.4th at

303.)[3]  Thus, *Samantha B.* recognizes a narrow exception to the general rule precluding vicarious liability

for sexual torts, one that plainly does not apply here: Uber's drivers are not therapists or mental health

workers, their interactions with their passengers typically are brief and technical and do not involve

physical contact, and any sexual assaults they may engage in are not fairly attributable to work-related

events or conditions.

---

[3] As an alternative ground for its holding, the court found that there was substantial evidence from which a jury could have determined that the hospital ratified the worker's act by failing to investigate his actions because it was on notice that his reputation among other employees was so bad that he had earned the nickname "Rapey Juan." (*Id.* at 109.)  Plaintiffs make no claim here that Uber ratified its drivers' alleged intentional torts.

- 8 -

1    Plaintiffs argue the number of sexual assaults that have occurred and Uber's knowledge of the

2    sexual assaults render sexual assault a predictable outcome. (Opposition, 15-16.) However, "in

3    determining whether a risk is unusual or startling for respondeat superior purposes, the inquiry should be

4    whether the risk was one that may fairly be regarded as typical of or broadly incidental *to the enterprise*

5    *undertaken by the employer*. Thus, it is not enough that a risk be neither unusual nor startling as a general

6    matter; rather, the risk must be evaluated in the context of the employer's particular enterprise." (*Farmers*

7    *Ins. Group*, 11 Cal.4th at 1009 (cleaned up); see also, e.g., *id.* at 1010 ["applying the same type of

8    approach in other contexts, we would be forced to conclude, in direct conflict with *John R.*, *supra*, 48

9    Cal.3d 438, and numerous other California and out-of-state decisions, that sexual molestation by teachers

10   and clergy is an inherent risk of schools and religious institutions simply because of the frequency with

11   which such misconduct is claimed."].)  Plaintiffs' allegations are insufficient to establish sexual assault is

12   "typical of or broadly incidental" to ridesharing services.

13   Plaintiffs' reliance on *Doe v. Uber Technologies, Inc.* (N.D. Cal. 2016) 184 F.Supp.3d 774, is

14   unpersuasive. (See Opposition, 18.) In *Doe*, the plaintiffs brought a similar action against Uber for

15   sexual assaults by Uber drivers alleging claims for battery, assault, false imprisonment, and IIED under a

16   theory of respondeat superior.  (*Id.* at 779-780.)  Uber moved to dismiss, arguing "it cannot be vicariously

17   liable because, it claims, sexual assault falls outside the scope of an employee's duties." (*Id.* at 781.)  The

18   court could not determine "that as a matter of law sexual assault by Uber driver is always outside the

19   scope of employment, if the drivers are in fact ultimately found to be employees.  The California Supreme

20   Court has left this question open." (*Id.* at 785.)  However, after *Doe*, California voters approved

21   Proposition 22, the Protect App-Based Drivers and Services Act, which classifies app-based drivers as

22   independent contractors rather than employees.  (See *Castellanos v. State of California* (2023) 89

23   Cal.App.5th 131, 142-145; Bus. & Prof. Code §§ 7448-7467.)  Therefore, *Doe* is not directly applicable to

24   the instant action.  In any event, other federal court decisions have criticized its holding and have reached

25   a different conclusion.  (E.g., *Doe v. Uber Technologies, Inc.* (N.D. Cal. Nov. 22, 2019) 2019 WL

26   6251189, *5 ["This Court respectfully disagrees that such a holding can be squared with *Lisa M.* and the

27   test it applies to sexual assault by employees on third parties."]; see also *Doe v. Uber Technologies, Inc.*

28

- 9 -

1  (N.D. Cal. May 1, 2020) 2020 WL 2097699, *2 [granting Uber's motion to dismiss false imprisonment,

2  assault, and battery claims, following *Lisa M.*]; *Doe v. Uber Technologies, Inc.* (D.Md. June 9, 2021)

3  2021 WL 2382837, *4 [same, applying Maryland law]; *Murray v. Uber Technologies, Inc.* (D.Mass.

4  2020) 486 F.Supp.3d 468, 477 [same, applying Massachusetts law: "as a matter of law, sexual assault

5  necessarily falls outside the scope of employment"].)

6        Uber's potential status as a common carrier does not alter the vicarious liability analysis.  "Both

7  California and federal cases consistently hold that, under California law, a common carrier relationship

8  exists and a corresponding 'heightened standard of care applies to a passenger while in transit' with a

9  common carrier . . ., and, under certain circumstances, for brief windows of time immediately before

10  and/or after the passenger is in transit with the carrier."  (*Jane Doe No. 1 v. Uber Technologies, Inc.*

11  (2022) 79 Cal.App.5th 410, 420-421, quoting *Churchman v. Bay Area Rapid Transit Dist.* (2019) 39

12  Cal.App.5th 246, 250-251 (cleaned up); see also *Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 216

13  [common carrier-passenger relationship is a special relationship that gives rise to an affirmative duty to

14  protect]; *Gomez v. Superior Court* (2005) 35 Cal.4th 1125, 1128 [common carriers are subject to a

15  heightened duty of care].)  A common carrier is "[e]very one who offers to the public to carry persons,

16  property, or messages, excepting only telegraphic messages, is a common carrier of whatever he thus

17  offers to carry."  (Civ. Code § 2168.)  The Public Utilities Code also defines common carrier as:

18      . . . every person and corporation providing transportation for compensation to or for the public or
any portion thereof, except as otherwise provided in this part.  "Common carrier" includes: . . .

19  Every railroad corporation; street railroad corporation; dispatch, sleeping car, dining car, drawing-
room car, freight, freight line, refrigerator, oil, stock, fruit, car-loaning, car-renting, car-loading,

20  and every other car corporation or person operating for compensation within this state.

21  (Pub. Util. Code § 211(a).)

22        Plaintiffs sufficiently allege Uber, as a ride-sharing company, is a common carrier because it

23  provides transportation to the public (anyone can download the app and order a ride) in exchange for

24  compensation.  (Compl. ¶¶ 19-21, 190-191; see also *id.* ¶¶ 294-300; see, e.g., *Doe*, 2019 WL 6251189, at

25  *6 ["Uber's status as an app-based transportation network does not preclude it as a matter of law from

26  being held liable as a common carrier"]; *Doe*, 184 F.Supp.3d at 787 ["Plaintiffs have alleged sufficient

27

28

- 10 -

1   facts to plausibly claim that Uber is a common carrier."].)[4]

2       Plaintiffs point to *Berger v. Southern Pac. Co.* (1956) 144 Cal.App.2d 1, a 1956 appellate decision

3   that long predates *Lisa M.* and the body of cases discussed above, asserting that because Uber is a

4   common carrier, "the scope of employment of the driver is immaterial to whether Uber can be held liable

5   for these torts." (Opposition, 11; see also *id.* at 12 [same].) As Plaintiffs acknowledged at the hearing,

6   however, they do not rely upon *Berger* to establish that Uber is vicariously liable for torts committed by

7   its drivers, but rather for the distinct proposition that as a common carrier, it owed them a duty of care to

8   prevent their injuries.[5]  In *Berger*, the court found that a common carrier

9       is liable for acts of assault and battery upon the part of its employees resulting in injury to those it
10      has agreed to transport upon its facilities.  This liability extends not only to cases where the assault
        was in the line of the employee's duty, but also to those instances where the act was merely that of
11      an individual and entirely disconnected with the performance of the agent's duties, as where the
        conductor of a train kisses a female passenger against her will. ... The liability of a common
12      carrier for an assault by one of its employees on a passenger is not dependent on the question as to
        whether the employee was acting within the scope of his authority or in the line of his duty, but is
13      based upon its broad duty as a common carrier to protect its passengers from assault.

14  (*Berger*, 144 Cal.App.2d at 7; see also *Lisa M.*, 12 Cal.4th at 306 ["Although, as we have concluded,

15  [employee's] criminal acts were not engendered by or broadly incidental to his work so as to render

16  Hospital vicariously liable, Hospital's duty of due care to its patient obliged it to take all measures

17  dictated by ordinary prudence to protect against even such unusual sources of injury."].)[6]  Because Uber

18  has not demurred to Plaintiffs' common carrier negligence cause of action, whether the Complaint states a

19  cause of action for breach of a common carrier's duty to its passengers is not an issue currently before the

20  Court.

21      Thus, *Berger* does not support Plaintiffs' contention that a common carrier may be held

22

23  [4] Uber does not challenge Plaintiffs' second cause of action for common carrier negligence or Plaintiffs'
    eleventh and twelfth causes of action for negligence by misfeasance and negligence by nonfeasance,
24  respectively, which are premised on Uber's alleged common carrier status.
    [5] In a later case, the California Supreme Court cited *Berger* in connection with a claim alleging "a breach
25  of the common law duty of an employer to exercise due care in the employment and supervision of an
    employee who inflicted intentional harm on her." (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 745.)
26  [6] Similarly, *Lopez v. Southern California Rapid Transit Dist.* (1985) 40 Cal.3d 780 involved a negligence
    action in which the Court found that the defendant transit district owed a duty to protect passengers
27  aboard its buses from assaults by fellow passengers.  The district was the sole defendant, and the opinion
    did not address any issue of vicarious liability.
28                 - 11 -

1    vicariously liable for intentional sexual torts of its employees or agents committed *outside* the scope of

2    their employment, nor does it constitute "binding precedent" on that subject. (Opposition, 11-12.)

3    Accordingly, Uber's demurrer to Plaintiffs' vicarious liability claims is sustained without leave to amend.

4    **II.**      **Plaintiffs Do Not Allege Sufficient Facts To State Fraud And Misrepresentation Claims.**

5        Plaintiffs seek to state four causes of action based on fraud and misrepresentation: (1) negligent

6    misrepresentation (third cause of action); (2) intentional misrepresentation (fourth cause of action); (3)

7    intentional concealment (thirteenth cause of action); and (4) fraud (sixteenth cause of action). Uber

8    argues Plaintiffs fail to plead their fraud and misrepresentation claims with particularity. (Opening Brief,

9    22.)[7] The Court agrees.

10       "The essential elements of . . . intentional misrepresentation are: (a) misrepresentation (false

11    representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to

12    defraud, i.e., to induce reliance; (d) actual and justifiable reliance; and (e) resulting damage." (*Berry v.*

13    *Frazier* (2023) 90 Cal.App.5th 1258, 307 Cal.Rptr.3d 778, 789.) The elements of fraud are the same,

14    except only justifiable reliance must be alleged rather than actual and justifiable reliance. (*Amiodarone*

15    *Cases* (2022) 84 Cal.App.5th 1091, 1109.) In addition, the elements of negligent misrepresentation are

16    the same, except no scienter or intent to defraud is required. (*Nissan Motor Acceptance Cases* (2021) 63

17    Cal.App.5th 793, 823.) The elements of intentional concealment are: "(1) the defendant must have

18    concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact

19    to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent

20    to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as

21    he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or

22    suppression of the fact, the plaintiff must have sustained damage." (*RSB Vineyards, LLC v. Orsi* (2017)

23

---

24    [7] Uber also argues the sixteenth cause of action for fraud alleges the same facts and theory of liability as
the intentional misrepresentation cause of action, therefore, it should be dismissed as duplicative.

25    (Opening Brief, 22.) The Court disagrees. Although similar, the two causes of action are not the same.
(Compare Compl. ¶¶ 232-234 [Uber made false representations regarding safety of app, rides, and

26    experience as well as properly screened driver backgrounds] with *id.* ¶¶ 329-330 [Uber made false
representations that it was taking steps to ensure its rides were safe and reliable (e.g., the Safe Rides Fee),

27    it properly screened drivers using background checks that were "often more rigorous" than the taxi
industry, and held itself out as safe for young women].)

28    - 12 -

1   15 Cal.App.5th 1089, 1096-1097, quoting *Bank of America Corp. v. Superior Court* (2011) 198

2   Cal.App.4th 862, 870.)

3        Fraud must be pled with particularity, which "necessitates pleading *facts* which show how, when,

4   where, to whom, and by what means the false representations were made." (*State ex rel. Edelweiss Fund,*

5   *LLC v. JPMorgan Chase & Company* (2023) 90 Cal.App.5th 1119, 307 Cal.Rptr.3d 750, 766, quoting

6   *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645 (internal quotations omitted).)  General and

7   conclusory allegations are insufficient. (*Amiodarone Cases*, 84 Cal.App.5th at 1109.)

8        **A.    Plaintiffs Do Not Sufficiently Plead Reliance**

9        Uber contends reliance is "highly individualized and specific to each Plaintiff," therefore,

10   generally alleging reliance is insufficient. (Opening Brief, 23-25.)  The Court agrees.

11        "To allege actual reliance on misrepresentations with the required specificity for a fraud count, the

12   plaintiff must plead that he believed the representations to be true … and that in reliance thereon (or

13   induced thereby) he entered into a transaction." (*Chapman v. Skype, Inc.* (2013) 220 Cal.App.4th 217,

14   231-232, quoting *Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1063 (cleaned up); see *Small v. Fritz*

15   *Companies, Inc.* (2003) 30 Cal.4th 167, 184 [negligent misrepresentation must also be pled with

16   specificity]; *Hoffman v. 162 North Wolfe LLC* (2014) 228 Cal.App.4th 1178, 1193 ["A plaintiff

17   establishes [actual] reliance when the misrepresentation or nondisclosure was an immediate cause of the

18   plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or

19   nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other

20   transaction." (cleaned up)].)  The plaintiff must show that the reliance was reasonable by showing that (1)

21   the matter was material in the sense that a reasonable person would find it important in determining how

22   he or she would act and (2) it was reasonable for the plaintiff to have relied on the misrepresentation. (*Id.*

23   at 1194.)

24        Plaintiffs allege that by "getting into the UBER, Plaintiffs reasonably relied on UBER's

25   representations that it would get them safely to their intended destination." (Compl. ¶ 226; see *id.* ¶ 238.)

26   Plaintiffs also allege that by "trusting and relying on Uber's representations, Plaintiffs were placed in a

27   uniquely vulnerable position that was taken advantage of by an UBER[] employee, an UBER driver." (*Id.*

28

- 13 -

¶ 227; see *id.* ¶ 239.)  Plaintiffs further allege they "actually and reasonably relied on the representations made by Defendant UBER when they agreed to utilize UBER's services after being informed that UBER stringently screened its drivers and took measures to ensure it provided passengers safe transport." (*Id.* ¶ 237; see *id.* ¶¶ 331-333.)  As to fraud in particular, Plaintiffs allege they "were justified in relying on Defendants' misstatements [because] UBER took advantage of information asymmetries.  That is, UBER was in a much better position than Plaintiffs to know whether UBER was adequately training, screening, and supervising drivers and what steps it had taken and was taking to make UBER rides safe." (*Id.* ¶ 334.)

These allegations are insufficient to plead reliance for all 362 individual Plaintiffs.  (See Opening Brief, 23-25; Reply, 22-24.)  It is implausible, to state the obvious, that every one of those individual Plaintiffs actually saw and relied on each and every one of the statements and other representations alleged in the Complaint.[8]  Plaintiffs do not identify the specific representations each Plaintiff relied upon and when those representations were made.  The purpose of the long-form complaint is to set forth the causes of action as applied "to each plaintiff within the JCCP . . . except to the extent that a particular plaintiff has pled otherwise in a Short-Form Complaint." (Apr. 14, 2022 Joint Case Management Statement, 6-7.)  However, by filing a long-form complaint that applies to all Plaintiffs, Plaintiffs are not relieved of their obligation to plead fraud claims with particularity.  (See, e.g., *Murphy v. BDO Seidman* (2003) 113 Cal.App.4th 687, 690, 698 ["Although the complaint is long, with numerous allegations, dozens of paragraphs, and more than 100 plaintiffs," the plaintiffs sufficiently alleged reliance].)  Therefore, to allege fraud and misrepresentation claims, Plaintiffs must plead with particularity, as required, to place Uber on notice of "certain definite charges which can be intelligently met" and "to enable the court to determine whether, on the facts pleaded, there is any foundation, prima facie at least, for the charge of fraud." (*Tenet Healthsystem Desert, Inc. v. Blue Cross of California* (2016) 245 Cal.App.4th 821, 838, quoting *Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216-217 (cleaned up).)  The short-form complaints serve the purpose of providing the

---

[8] Plaintiffs' reliance on *Morgan v. AT&T Wireless Services, Inc.* (2009) 177 Cal.App.4th 1235 (Opposition, 20), a class action, is misplaced.

- 14 -

1  specific factual allegations as to each individual Plaintiff.[9]

2  **B.    Plaintiffs Inadequately Plead False Statements By Uber**

3  Uber argues Plaintiffs do not "allege with specificity the how, when, where, and to which specific

4  plaintiff any specific misrepresentation was made." (Opening Brief, 25.)  Uber contends Plaintiffs allege

5  "a laundry list of allegedly false statements, none of which is connected to any specific plaintiff." (*Id.*)

6  Again, the Court agrees.  Plaintiffs allege that beginning in 2014, Uber engaged in an active and

7  aggressive marketing campaign regarding the safety of its services.  (Compl. ¶ 66.)  Plaintiffs allege that

8  this marketing campaign, which continues to this day, includes "email messages sent to every UBER

9  customer, including Plaintiffs." (*Id.*)  Plaintiffs' allegations set forth specific statements regarding safety

10  made by Uber "to its customers, including Plaintiffs, on its website." (*Id.* ¶ 67.)  However, as a threshold

11  matter, Plaintiffs do not plead that all Plaintiffs saw the purported misrepresentations either by email or on

12  Uber's website.  In addition, "when a plaintiff asserts fraud against a corporation, the plaintiff must

13  'allege the names of the persons who made the allegedly fraudulent representations, their authority to

14  speak, to whom they spoke, what they said or wrote, and when it was said or written.'" (*Cansino v. Bank*

15  *of America* (2014) 224 Cal.App.4th 1462, 1469, quoting *Tarmann v. State Farm Mut. Auto. Ins. Co.*

16  (1991) 2 Cal.App.4th 153, 157.)  No such allegations are pled in the Complaint.

17  Accordingly, Uber's demurrer as to Plaintiffs' fraud and misrepresentation claims is sustained

18  without leave to amend.  Should any individual Plaintiffs seek to plead fraud and misrepresentation

19  claims, those Plaintiffs are granted 30 days leave to amend the short-form complaints with the

20  particularity required by California law, and Uber is granted 30 days to respond to those amended short-

21  form complaints.

22

23

24  [9] Uber raises the issue of the class action settlement in *McKnight v. Uber Techs., Inc.*, No. 4:14-cv-05615
25  (N.D. Cal. June 1, 2017), as it relates to misrepresentations.  (Opening Brief, 26 fn. 12.)  Uber states that
   it cannot determine which plaintiffs are in the *McKnight* class based on the operative pleading here.  In
26  particular, the Long-Form Complaint does not include the date Plaintiffs began using the Uber App and
   the date of the alleged incident.  This information should be readily available in Plaintiffs' short-form
   complaints such that Uber can determine whether a plaintiff is included in the *McKnight* class.  The Court
27  declines to order Plaintiffs to plead facts as to each individual Plaintiffs' initial date of using the Uber
   App and date of the alleged incident in the long-form complaint.

28

- 15 -

**III.    NIED**

Uber contends, and Plaintiffs concede, California does not recognize a separate tort for negligent infliction of emotional distress because it is simply the tort of negligence.  (Opening Brief, 31; Opposition, 24.)  The Court agrees.  (*Downey v. City of Riverside* (2023) 90 Cal.App.5th 1033, 307 Cal.Rptr.3d 666, 673 ["The negligent causing of emotional distress is not an independent tort, but the tort of negligence."].)  Uber asserts that because the fifth cause of action for NIED is duplicative of and subsumed by the negligence claims, it should be dismissed.  (*Id.*)  Plaintiffs oppose dismissal, denying that the allegations regarding the NIED claim are duplicative.  (Opposition, 24.)  However, Plaintiffs request leave to amend to consolidate Plaintiffs' negligence allegations.  (*Id.*)

The Court declines to sustain Uber's demurrer on the ground the NIED claim is duplicative of Plaintiffs' other negligence claims.  Although similar, they are not identical.  Uber's demurrer is sustained with leave to amend to allow Plaintiffs to consolidate the negligence allegations.

**IV.    Plaintiffs Cannot State A Cause Of Action For Strict Products Liability.**

Uber asserts Plaintiffs' strict products liability claims fail as a matter of law because Plaintiffs do not plead facts to establish that the Uber App is a "product."  (Opening Brief, 32-36.)  Rather, Uber argues Plaintiffs plead the Uber App provides a service.  (*Id.*)

"'Products liability' refers to tort liability imposed on 'those who supply goods or products for the use of others to purchasers, users, and bystanders for losses of various kinds resulting from so-called defects in those products.'"  (*Sharufa v. Festival Fun Parks, LLC* (2020) 49 Cal.App.5th 493, 502, quoting *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 478.)  "However, products liability does not reach a party who is delivering a service to the consumer rather than supplying the product at issue."  (*Sharufa*, 49 Cal.App.5th at 502; see *Jimenez v. Superior Court* (2002) 29 Cal.4th 473, 453; *Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 640; *Hennigan v. White* (2011) 199 Cal.App.4th 395, 403.)  Therefore, "[a]s a condition precedent to maintaining a strict products liability claim, a plaintiff must show the transaction in which she obtained the product was one in which the transaction's primary objective was to acquire ownership or use of a product, and not one where the primary objective was to obtain a service."  (*Hennigan*, 199 Cal.App.4th at 403; *Brooks v. Eugene Burger Management*

- 16 -

1    *Corp.* (1989) 215 Cal.App.3d 1611, 1625 [plaintiffs "must show that the object or instrumentality

2    claimed to be defective was in fact a 'product' as defined or contemplated by the Restatement of Torts,

3    legislation or case law."].)  "Although the primary objective inquiry turns on the particular facts of each

4    case, determining whether something is properly considered a 'product' is a gatekeeping function that

5    controls the availability of a products liability cause of action.  It is therefore a question of law for the

6    court." (*Sharufa*, 49 Cal.App.5th at 502; see *Brooks*, 215 Cal.App.3d at 1626.)

7        "A 'product' is broadly defined to include any 'tangible personal property distributed

8    commercially for use or consumption." (*Johnson v. United States Steel Corp.* (2015) 240 Cal.App.4th

9    22, 31, quoting Rest.3d Torts, Products Liability § 19(a).)  There are two exceptions where intangible

10   property is considered a product for purposes of strict liability.  (Rest.3d Torts, Products Liability § 19

11   cmt. d.)  The first type of intangible property is information in media such as books, maps, and

12   navigational charts. (*Id.*)  The second type is the transmission of intangible forces such as electricity and

13   x-rays. (*Id.*)  These intangible properties are considered products when their use and distribution are

14   similar to the use and distribution of tangible personal property. (*Id.*)

15       Here, Plaintiffs allege Uber "designs, manufactures, produces and/or distributes a smart phone

16   application" (the Uber App), which is "available to anyone to download onto a smart phone" at no cost.

17   (Compl. ¶ 21; see *id.* ¶¶ 314, 321.)  Plaintiffs also allege the Uber App "is a product designed, patented,

18   and/or distributed by UBER in San Francisco, California.  It is a product, designed and intended to

19   'connect riders looking for transportation to independent transportation providers…looking for riders.'"

20   (*Id.* ¶ 22.)

21       Based on the face of the Complaint, the Uber App is intangible property.  Plaintiffs argue the Uber

22   App is tangible property because it fits the Black's Law Dictionary definition of "capable of being

23   touched and seen." (Opposition, 28; *Tangible*, Black's Law Dictionary (11th ed. 2019).)  However, this

24   argument is unpersuasive.  It is not the app that is being touched and seen, it is the phone.  Indeed, the

25   Uber App itself is software that is not capable of being touched and seen and, therefore, is intangible.

26   (See, e.g., *Lucent Technologies, Inc. v. Board of Equalization* (2015) 241 Cal.App.4th 19, 42 ["the fact

27   that placing a computer program on storage media physically alters that media does not thereby

28

- 17 -

1   transmogrify the software itself into tangible personal property; the media is tangible, the software is

2   not."].)

3          Even assuming the Uber App is a product, when a transaction involves both a service and a

4   product, courts will look to the defendant's dominant role in the transaction, as well as the primary

5   objective or essence of the transaction. (*Murphy v. E.R. Squibb and Sons, Inc.* (1985) 40 Cal.3d 672, 677;

6   *Hernandezcueva v. E.F. Brady Co. Inc.* (2015) 243 Cal.App.4th 249, 259.)  First, if Uber is considered to

7   be a TNC, it is defined by the California Legislature as "providing prearranged transportation services."

8   (Pub. Util. Code § 5431; see also *Uber Technologies Pricing Cases* (2020) 46 Cal.App.5th 963, 968,

9   citing *Goncharov v. Uber Technologies, Inc.* (2018) 19 Cal.App.5th 1157, 1161 ["Uber provides

10  transportation services to the public for a fee by connecting consumers to its 'partner drivers' through the

11  use of a GPS-enabled smartphone application"].)  Uber's dominant role in creating and providing the app

12  is to provide transportation services.  Second, Plaintiffs allege the Uber App's primary purpose or

13  objective is "to connect riders looking for transportation to independent transportation providers . . .

14  looking for riders." (Compl. ¶ 22.)  Further, the Uber App is free for all users, and it is responsible for

15  tracking the rides and processing payments.  (*Id.*)

16         Therefore, a customer's primary objective when downloading and using the Uber App is to

17  request a ride in a car and get paired with a driver who is dispatched to pick up and drive the customer to

18  their destination in exchange for a fee.  (*Id.* ¶ 21.)  Customers do not purchase the App, nor is it in any

19  meaningful sense the object of their transaction with Uber, but merely the mechanism by which that

20  object—securing a ride to their destination—is accomplished.  The Uber App is no more a "product" for

21  these purposes than is a telephone that a customer uses to call a taxi.  The Uber App is incidental to the

22  transportation service provided. (See, e.g., *Murphy*, 40 Cal.3d at 679 [holding a pharmacist's dominant

23  role is selling prescription drugs and his service of giving advice is a subsidiary role]; *Ferrari v. Grand

24  Canyon Dories* (1995) 32 Cal.App.4th 248, 258 [holding defendants who sponsored and conducted a

25  rafting trip were not liable for injuries to the plaintiff because the primary objective of the transaction was

26  providing a service of transportation down a river rather than providing the raft as a product].)  It is

27  essentially a means of obtaining a service, not a product in and of itself.  (See, e.g., *Jane Doe No. 1*, 79

28                                              - 18 -

Cal.App.5th at 419 ["As to the strict liability cause of action, the [trial] court concluded the Uber app was not a product, and thus a products liability theory of recovery was not legally viable."]; *Hennigan*, 199 Cal.App.4th at 403 [finding the plaintiff's primary objective in patronizing the defendant's salon was to obtain a service, affixing permanent makeup to her eyebrows and eyelids, not to purchase a bottle of pigment to apply to her face]; *Ziencik v. Snap, Inc.* (C.D. Cal. Feb. 3, 2023), 2023 WL 2638314, *4 [finding plaintiffs' products liability claims failed because non-tangible objects such as the Snapchat app cannot be a "product" for purposes of strict products liability as "Snapchat is more like a service than a product."]; *Jackson v. Airbnb, Inc.* (C.D. Cal. Nov. 4, 2022) ___ F.Supp.3d ___, 2022 WL 16752071, *9-*10 ["Airbnb is a platform that connects users; it is more akin to a service than to a product."].)

## **CONCLUSION**

For the foregoing reasons, the Court sustains Uber's demurrer as to Plaintiffs' vicarious liability claims (sixth through tenth causes of action), fraud and misrepresentation claims (third, fourth, thirteenth, and sixteenth causes of action), and strict products liability claims (fourteenth and fifteenth causes of action) without leave to amend. The Court sustains Uber's demurrer as to the negligent infliction of emotional distress claim (fifth cause of action) with leave to amend. Plaintiffs are granted 30 days leave to amend. Individual Plaintiffs who have filed short-form complaints are granted 30 days leave to amend those complaints to plead claims for fraud and misrepresentation, and Uber shall have 30 days to respond to such amended short-form complaints.

IT IS SO ORDERED.

Dated: June 22, 2023

Ethan P. Schulman
Judge of the Superior Court

- 19 -

| In Re Uber Rideshare Cases | Case No: CJC-21-005188 |
|---|---|

### CERTIFICATE OF ELECTRONIC SERVICE
(CCP §1010.6 & CRC §2.251)

I, R. Michael Diles, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am over the age of 18 years, employed in the City and County of San Francisco, California and am not a party to the within action.

On June 22, 2023, I electronically served the attached **Order on Defendants Uber Technologies, Inc. and Rasier, LLC's Demurrer to Plaintiffs' Master Long-Form Complaint.** via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Dated: June 22, 2023

Brandon E. Riley, Clerk of the Court

By: _____

R. Michael Diles, Deputy Clerk

APP241

# EXHIBIT 4

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### RELATED CASE ORDER

A Motion for Administrative Relief to Consider Whether Cases Should be Related or a *Sua Sponte* Judicial Referral for Purpose of Determining Relationship (Civil L.R. 3-12) has been filed. The time for filing an opposition or statement of support has passed. As the judge assigned to case

23-cv-01630-AMO  *Hylin v. Uber Technologies, Inc.*

I find that the more recently filed case(s) that I have initialed below are related to the case assigned to me, and such case(s) shall be reassigned to me. Any cases listed below that are not related to the case assigned to me are referred to the judge assigned to the next-earliest filed case for a related case determination.

| Case | Title | Related | Not Related |
|------|-------|---------|-------------|
| 3:23-cv-02051-TLT | E.R. v. Uber Technologies, Inc., et al. | | AMO |
| 3:23-cv-02071-CRB | A.G. v. Uber Technologies, Inc. et al | | AMO |
| 3:23-cv-02111-AMO | Taylor Gavin v. v. Uber Technologies, Inc., et al. | | AMO |

### ORDER

The parties are instructed that all future filings in any reassigned case are to bear the initials of the newly assigned judge immediately after the case number. Any case management conference in any reassigned case will be rescheduled by the Court. The parties shall adjust the dates for the conference, disclosures and report required by FRCivP 16 and 26 accordingly. Unless otherwise ordered, any dates for hearing noticed motions are vacated and must be re-noticed by the moving party before the newly assigned judge; any deadlines set by the ADR Local Rules remain in effect; and any deadlines established in a case management order continue to govern, except dates for appearance in court, which will be rescheduled by the newly assigned judge.

Dated: June __, 2023

By: _____
ARACELI MARTÍNEZ-OLGUÍN
United States District Judge

1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA


### CLERK'S NOTICE


The court has reviewed the motion and determined that no cases are related, and no reassignments shall occur.


Dated: June 2, 2023

By: _____

Alexis Solorzano, Deputy Clerk

2

# EXHIBIT 5

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| C.S., an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-02766 |
| | ) | Hon. John Robert Blakely |
| UBER TECHNOLOGIES, INC., a | ) | Magistrate Jeffrey I. Cummings |
| Delaware Corporation; RASIER, LLC, | ) | |
| A Delaware Limited Liability Company; | ) | |
| and DOES 1 through 50, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION TO DISMISS AND STRIKE**

NOW COMES Defendants Uber Technologies, Inc. and Rasier, LLC (jointly, "Uber"), by and through their attorneys, and pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f), move to dismiss Plaintiff C.S.'s ("Plaintiff") Complaint and strike the request for punitive damages on the ground that all of the causes of action asserted therein are barred by the statute of limitations and fail to state claims upon which relief can be granted, and Plaintiff cannot recover punitive damages as a matter of law. In support of said motion, Uber states as follows:

**I.      FACTUAL & PROCEDURAL BACKGROUND**

1.      Uber is a technology company that uses its proprietary technology to develop and maintain digital multisided marketplace platforms, including the Rides platform which connects riders with independent drivers and facilitates more than 15 million daily connections. Unfortunately, these connections are not insulated from societal issues, including sexual assault.

2.      Plaintiff alleges that after using the Uber App to arrange for a particular ride, she was sexually assaulted by an independent driver on July 8, 2018. *See* Complaint ("Compl.") ¶¶

64-65. If these claims can be substantiated, the assailant should be held responsible. But the claims against Uber cannot be sustained as they are barred by the statute of limitations and, alternatively, fail to state a claim. Accordingly, Uber's Motion to Dismiss should be granted.

## II.    THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6)

3.    A defendant may move to dismiss a claim for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive [such] a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible only if the plaintiff alleges enough facts that permit a reasonable inference of liability on the part of the defendant. *Ashcroft*, 556 U.S. at 678.

### A.    Plaintiff's Claims are Barred by the Statute of Limitations

4.    Plaintiff's claims are time barred. Because this action arises from an alleged sexual assault, a two-year statute of limitations applies to all of Plaintiff's claims. *See Pavlik v. Kornhaber*, 761 N.E.2d 175, 189 (Ill. App. Ct. 2001) (quoting *Armstrong v. Guigler*, 673 N.E.2d 290, 293 (Ill. 1996), and citing 735 Ill. Comp. Stat. Ann. 5/13-202). Plaintiff pleads an injury resulting from an alleged assault on July 8, 2018. *See* Compl. ¶ 64. Since Plaintiff did not file her Complaint until nearly five years later, on May 2, 2023, her claims are time barred.

5.    The Complaint asserts the statute of limitations was tolled until after Plaintiff "saw advertisements for legal help" based on the discovery rule or because of Uber's alleged fraudulent concealment. Compl. ¶¶ 97-104. Setting aside the lack of factual allegations to support either doctrine, neither apply here because Plaintiff's allegations affirmatively demonstrate that she was on, at the very least, inquiry notice of her claims as of the date of the alleged assault.

6.    First, under the discovery rule, "a party's cause of action accrues when the party

[579BB-104/1764392/1]                    2

knows or reasonably should know of an injury and that the injury was wrongfully caused." *Clay v. Kuhl*, 727 N.E.2d 217, 220 (Ill. 2000). Where an "injury is caused by a 'sudden traumatic event,' . . . the cause of action accrues, and the statute of limitations begins to run[] *on the date the injury occurs*." *Golla v. Gen. Motors Corp.*, 657 N.E.2d 894, 899 (Ill. 1995) (collecting cases) (emphasis added). A sexual assault is a sudden traumatic event that puts a plaintiff on inquiry notice for the purposes of the discovery rule, *Clay v. Kuhl*, 696 N.E.2d 1245, 1250 (Ill. App. Ct. 1998), regardless of whether the plaintiff knows the full extent of their injuries, *Golla*, 657 N.E.2d at 899-900, or knows of a "*specific* defendant's negligent conduct." *Castello v. Kalis*, 816 N.E.2d 782, 789 (Ill. App. Ct. 2004) (emphasis in original). Because Plaintiff's claims are premised on a sudden traumatic event, the discovery rule cannot save her untimely Complaint regardless of her conclusory assertion that she was unaware of the basis of her claims against Uber until later. *Scheinblum v. Schain Banks Kenny & Schwartz, Ltd.*, 200 N.E.3d 818, 826 (Ill. App. Ct. 2021) ("'[I]t does not matter whether the plaintiff knows or suspects who the wrongdoer actually is'") (quoting *Shrock v. Ungaretti & Harris Ltd.*, 143 N.E.3d 904, 911 (Ill. App. Ct. 2019)).

7.      Second, although fraudulent concealment may toll the statute of limitations in some circumstances, *see Clay*, 727 N.E.2d at 223, the doctrine does not save Plaintiff's time-barred claims here because the doctrine is "applicable only where the concealment of a cause of action consisted of affirmative acts or representations [by the defendant] *that prevent the discovery of the cause of action*." *Lowe v. Ford Motor Co.*, 730 N.E.2d 58, 61 (Ill. App. Ct. 2000) (emphasis in original). Because Plaintiff's Complaint is premised on a "sudden traumatic event," she had notice of—and thus "discovered"—her cause of action on the date of the alleged assault, *Golla*, 657 N.E.2d at 899, and any alleged affirmative acts or representations by Uber could not, as a matter of law, have prevented her discovery of her cause of action. *Lowe*, 730 N.E.2d at 61; *see also Tate*

*v. Beverly Chrysler Plymouth*, 538 N.E.2d 663, 667 (Ill. App. Ct. 1989).

8.     Neither the discovery rule nor the fraudulent concealment doctrine toll the limitations period for claims arising from an alleged sexual assault. *See, e.g.*, *Parks v. Kownacki*, 737 N.E.2d 287, 294-95 (Ill. 2000); *Presberry v. McMasters*, 173 N.E.3d 1010, 1020 (Ill. App. Ct. 2021); *Doe v. Hastert*, 133 N.E.3d 1249, 1260 (Ill. App. Ct. 2019); *Horn v. Goodman*, 60 N.E.3d 922, 928-29 (Ill. App. Ct. 2016). Thus, Plaintiff's claims are barred by the statute of limitations.

**B.     Plaintiff's Negligence Claims Fail to State a Claim**

i.     <u>General Negligence</u>

9.     "Absent a special relationship, there can be no affirmative duty imposed on one for the benefit of another to warn or protect against the criminal conduct of a third party." *Bogenberger v. Pi Kappa Alpha Corp., Inc.*, 104 N.E.3d 1110, 1121 (Ill. 2018); *see also Hills v. Bridgeview Little League Ass'n*, 745 N.E.2d 1166, 1178 (Ill. 2000) ("[O]ne has no affirmative duty to control the conduct of another to prevent a criminal attack on a third party."). Illinois recognizes only "four [special] relationships that give rise to an affirmative duty to aid or protect another against an unreasonable risk of physical harm: [1] common carrier and passenger, [2] innkeeper and guest, [3] custodian and ward, and [4] possessor of land who holds it open to the public and member of the public who enters in response to the possessor's invitation." *Bogenberger*, 104 N.E.3d at 1121.

10.     None of these relationships are implicated here. *See Doe v. Lyft, Inc.*, 176 N.E.3d 863, 871 (Ill. App. Ct. 2020) (transportation network companies ("TNCs") are ***not*** common carriers) (citing 625 Ill. Comp. Stat. Ann. 57/25(e)). Because Uber had no duty to protect Plaintiff from the alleged assailant's criminal assault, her claim for general negligence must be dismissed.

ii.     <u>Negligent Failure to Warn</u>

11.     Plaintiff's negligent failure-to-warn claim is duplicative of her general negligence

claim, which alleges that Uber negligently failed to warn. *See* Compl. ¶ 110. Duplicative claims are not permitted and should be dismissed. *Fed. Deposit Ins. Corp. for Valley Bank v. Crowe Horwath LLP*, No. 17 CV 04384, 2018 WL 1508485, at *6 (N.D. Ill. Mar. 27, 2018) ("*Fed Deposit Ins.*"). Regardless, this claim fails for the same reasons as the general negligence claim—Uber had no duty "to warn or protect" Plaintiff. *Bogenberger*, 104 N.E.3d at 1121. Illinois only recognizes duties to warn in circumstances not present here. *See MacDonald v. Hinton*, 836 N.E.2d 893, 899 (Ill. App. Ct. 2005) (duty of principal to warn its agent of unreasonable risks); *Sandoval v. City of Chicago*, 830 N.E.2d 722, 727 (Ill. App. Ct. 2005) (land owners duty to warn of or protect from certain dangers); *Sollami v. Eaton*, 772 N.E.2d 215, 219 (Ill. 2002) (duty to warn of dangers from use of product).[1] Accordingly, the negligent failure-to-warn claim must be dismissed.

### iii. Negligent Infliction of Emotional Distress

12. Negligent infliction of emotional distress ("NIED") is not a freestanding claim but a form of recoverable damages dependent on establishing the elements of negligence. *See Cochran v. Securitas Sec. Servs. USA, Inc.*, 93 N.E.3d 493, 501-02 (Ill. 2017). Plaintiff's claim for emotional distress is therefore part of her general negligence claim, *compare* Compl. ¶¶ 105-118 *with* Compl. ¶¶ 168-175, and as a duplicative claim and should be dismissed. *Fed. Deposit Ins.*, 2018 WL 1508485, at *6. And again, this claim fails for the same reasons as the general negligence claim— Uber had no duty to Plaintiff under these circumstances. *Bogenberger*, 104 N.E.3d at 1121; *see also Parks*, 737 N.E.2d at 297 (an alleged employer does not owe a duty of care not to negligently cause emotional distress in relation to its handling of sexual assaults by its alleged employees).

### iv. Negligent Hiring, Retention, and Supervision

13. Plaintiff also fails to state a claim for negligent hiring, retention, and supervision.

---

[1] As discussed below, Plaintiff's product liability claims fail to state a claim.

Assuming *arguendo* that Uber hired, retained, or supervised the accused driver (which Uber denies), the Complaint is devoid of any allegations regarding the accused driver other than the conclusory allegation that he "was, and/or became unfit" because he assaulted Plaintiff. Compl. ¶ 127. That the assault allegedly occurred does not alone support a negligent hiring, retention, and supervision claim. *Cf. Escobar v. Madsen Const. Co.*, 589 N.E.2d 638, 640 (Ill. App. Ct. 1992) (evidence of orneriness, drug use, and a single complaint of a threat with a gun did not make shooting "a foreseeable consequence of hiring and supervising [employee]."). Because the Complaint lacks factual allegations that (1) Uber knew or should have known the accused driver was prone to commit sexual assaults, or (2) Uber's alleged negligence proximately caused the assault, this claim must be dismissed. *See Van Horne v. Muller,* 705 N.E.2d 898, 905-06 (Ill. 1998).

### C. Plaintiff's Intentional Misrepresentation Claim Fails to State a Claim

14. Plaintiff's intentional misrepresentation claim is subject to Rule 9(b)'s heightened pleading standard, which requires parties to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Under Rule 9(b), Plaintiff "must describe the who, what, when, where, and how of the fraud—the first paragraph of any newspaper story." *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (cleaned up). The elements of intentional misrepresentation are: (1) misrepresentation of fact, (2) knowledge of falsity, (3) intent to induce reliance, (4) reliance, and (5) resulting damage. *Doe v. Dilling*, 888 N.E.2d 24, 35 (Ill. 2008) ("*Dilling*"). While the Complaint alleges purported misstatements by Uber, it does not allege whether: (a) Plaintiff saw any specific statement, (b) where or when she saw it, or (c) how she actually and justifiably relied on it. Rather, the Complaint makes only generic allegations.

#### i. The Complaint Fails to Adequately Allege Reliance

15. Plaintiff must plead justifiable reliance. *See Soules v. Gen. Motors Corp.*, 402

N.E.2d 599, 601 (Ill. 1980). That is, Plaintiff must allege facts showing she actually relied on the alleged misrepresentation and was justified in doing so. *See Dilling*, 888 N.E.2d at 351; *Simmons v. Campion*, 991 N.E.2d 924, 932 (Ill. App. Ct. 2013). Reliance is highly individualized and specific to a plaintiff. *Metro. Cap. Bank & Tr. v. Feiner*, 179 N.E.3d 847, 857 (Ill. App. Ct. 2020).

16.     Here, the Complaint's wholly conclusory assertion of reliance is insufficient. *See* Compl. ¶ 163. While it lists alleged misrepresentations by Uber—most undated—it does not allege facts establishing that Plaintiff was aware of them, much less that she relied on them. *See Biesterfeld v. Ariosa Diagnostics, Inc.*, No. 1:21-CV-03085, 2022 WL 972281, at *4 (N.D. Ill. Mar. 31, 2022). If Plaintiff cannot state when or where she saw misleading statements, or offer specific attribution, she cannot establish that she actually relied on them. Indeed, the Complaint is unclear regarding whether Plaintiff even used the App. *See* Compl. ¶ 6 ("The Uber ride at issue was ordered by *or for* Plaintiff . . . .") (emphasis added). If she did not, any alleged statements by Uber could not possibly have been the cause of her injuries.

17.     The Complaint likewise fails to allege facts showing *justifiable* reliance. *Metro. Cap. Bank & Tr.*, 179 N.E.3d at 856-57. Because the Complaint fails to allege the specific representations or omissions that Plaintiff allegedly relied on, it is impossible to determine whether any alleged reliance was justifiable. *See Ingram v. Hagen*, No. 14-CV-0792-MJR-PMF, 2015 WL 12939161, at *2 (S.D. Ill. Nov. 19, 2015). The Complaint includes generic assertions of justifiable reliance, stating that "[i]n getting into the Uber, Plaintiff reasonably relied on Uber's representations that it would get her safely to her intended destination." Compl. ¶ 163. But, again, this type of conclusory assertion is insufficient. Plaintiff's failure to "identify the specific representations" she "relied upon and when those representations were made" is fatal to her fraud claim. *See* Declaration of George M. Velcich ("Velcich Decl."), ¶ 7, Ex. E; RJN, ¶ 5 [*In re Uber*

*Rideshare Cases*, No. CJC-21-005188, Proc. No. 5188, at 16-18 (Cal. Super. Ct. S.F. Cnty. June 22, 2023) (sustaining demurrer of substantially similar fraud claims in coordinated proceeding)].[2]

ii.     The Allegations of False Statements are Deficient

a.     *The Complaint Fails to Plead Falsity*

18.     "To adequately plead fraud based on a misrepresentation, [a plaintiff] must allege that (1) [the defendant] made a false statement of material fact, (2) knew of or believed in the statement's falsity . . . ." *SADA 2400 Ogden, LLC v. 2400 Ogden Ave. - 10041667 LLC*, No. 20 C 4224, 2021 WL 795011, at *6 (N.D. Ill. Mar. 2, 2021). Here, the Complaint includes alleged representations, but does not plead that those statements are false or how they are false. *See* Compl. ¶ 78. For example, the Complaint alleges Uber made representations about "incident prevention tools" and "safety features built into the app," but does not allege that such tools or safety features do not exist. *Id.* at ¶¶ 78(b), (j). So too with Uber's alleged representations about background checks. Nowhere does the Complaint allege that Uber does not use background checks to vet drivers. *Bracken Data, Inc. v. Guel*, No. 22-CV-273, 2022 WL 3999810, at *13 (N.D. Ill. Sept. 1, 2022). The Complaint simply does not plead falsity with specificity (or even at all).

b.     *Opinion and Puffery are Non-Actionable*

19.     A "false representation must be one of an existing or past fact, and not a mere promise to do some act in the future." *Polivka v. Worth Dairy, Inc.*, 328 N.E.2d 350, 354 (Ill. App. Ct. 1974)). Statements of opinions are not actionable. *Avery v. State Farm Mut. Auto. Ins. Co.*, 835

---

[2] Numerous courts have found similar allegations against Uber insufficient to state a claim for fraud. *See* Velcich Decl., ¶ 3, Ex. A; Request for Judicial Notice ("RJN"), ¶ 1 [*Estate of Stella Yeh v. Uber Techs., Inc.,* CGC-20-584408, at 4 (Cal. Super. Ct. S.F. Cnty. Aug. 6, 2021)]; Velcich Decl., at ¶ 4, Ex. B; RJN, ¶ 2 [*Minzer v. Barga,* No. 151979/2019, at 7, 2020 WL 2621710 at *3-4 (N.Y. Super. Ct. N.Y. Cnty. May 22, 2020)]; Velcich Decl., at ¶ 5, Ex. C; RJN, ¶ 3 [*Rodriguez v. Uber Techs., Inc.*, No. 2020-CA-1823 (Fla. Cir. Ct. Osceola Cnty. Aug. 9, 2021)]; Velcich Decl., ¶ 6, Ex. D; RJN, ¶ 4 [*Jane Doe v. Uber Techs., Inc.*, No. 801980/2022, at 2 (N.Y. Super. Ct. Erie Cnty. Nov. 9, 2022)].

N.E.2d 801, 846 (Ill. 2005). Nor are statements or predictions about future events. *Sinclair v. Sullivan Chevrolet Co.*, 202 N.E.2d 516, 518 (Ill. 1964).

20.     The Complaint alleges non-actionable statements by Uber, including: "How we help keep you safe – We're committed to helping you get where you want to go with confidence," "Through our joint efforts with cities and safety experts and by working together, we're helping to create safe journeys for everyone," and "You deserve to be able to move safely. To look forward to the opportunities ahead. To be connected to people and places that matter most." Compl. ¶ 78(a), (e), (f). Those statements do not concern past or existing facts. *Polivka*, 328 N.E.2d at 354. They describe opinions and future goals. They use aspirational terms—for example, "committed to," "helping to," "working toward"—that are not subject to falsification. *See XYZ Two Way Radio Serv., Inc. v. Uber Techs., Inc.*, 214 F. Supp. 3d 179, 184 (E.D.N.Y. 2016) ("Many of the statements are couched in aspirational terms – 'committed to,' 'aim to,' 'believe deeply' – that cannot be proven true or false."). And they refer to "safety" in general terms, without promising a specific standard of safety or guaranteeing safety. *See Pickens v. Mercedes-Benz USA, LLC*, No. 20 C 3470, 2021 WL 5050289, at *4 (N.D. Ill. Nov. 1, 2021) (citing *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 926 (Ill. 2007); *see also Am. Honda Motor Co. v. Milburn*, 668 S.W.3d 6, 33 (Tex. App.—Dallas Nov. 24, 2021) (holding that safety-related "statements in Uber marketing materials . . . involve mere opinion or puffery"), review granted (June 2, 2023). Plaintiff's intentional misrepresentation claim based on these statements must be dismissed.

###     D.     Plaintiff's Negligent Misrepresentation Claim Fails

21.     "Even under Rule 8's more relaxed pleading standard," Plaintiff's negligent misrepresentation claims "do not pass muster." *Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 591 (7th Cir. 2017). The elements of a negligent misrepresentation claim are essentially

identical to those of an intentional misrepresentation claim, except that for a negligent misrepresentation the "defendant need not know that the statement is false." *See Dilling,* 888 N.E.2d at 35, 45. Accordingly, Plaintiff's negligent misrepresentation claim must be dismissed for substantially the same reasons that her intentional misrepresentation claim fails. That is, the Complaint offers only a conclusory assertion of justifiable reliance. *Metro. Cap. Bank & Tr.*, 179 N.E.3d at 857. Further, the Complaint does not allege that any representations by Uber were false, and instead alleges only non-actionable statements by Uber as the basis of the misrepresentation claims. *Polivka*, 328 N.E.2d at 354; *Avery*, 835 N.E.2d at 846.

**E.** **Plaintiff's Breach of Contract Claim Fails to State a Claim**

22.     While the parties entered a contract (Uber's Terms of Use), Plaintiff's three-paragraph claim for breach of contract fails to allege how Uber breached that contract. *See* Compl. ¶¶ 176-179. The Complaint does not even identify the Terms of Use or what specific term Uber allegedly breached. Such threadbare allegations are insufficient. *See Bandurin v. Aeroflot Russian Airlines*, No. 19 CV 255, 2020 WL 362781, at *11 (N.D. Ill. Jan. 22, 2020).

**F.** **Plaintiff's Strict Product Liability Claims Fail to State a Claim**

        i.     <u>The Uber App is Not a Product</u>

23.     Plaintiff's strict product liability claims must be dismissed because the Uber App is not a "product." The Complaint itself alleges the App provides *services*. *See, e.g.*, Compl. ¶¶ 74, 76-77, 79-80, 84-85, 127. A "product" is "tangible personal property distributed commercially for use or consumption." Restatement (Third) of Torts: Prod. Liab. § 19 (West Grp., March 2023 Update). "Services, even when provided commercially, are not products[.]" *Id*. "[M]ost software does not fall within the purview of product liability law under this definition." Raymond T. Nimmer, Law of Comput. Tech. § 12:23.30 (West Grp., Feb. 2023 Update); *see also* Michael D.

Scott, *Scott on Info. Tech. Law*, § 15.08 n.105 (CCH, 3rd ed. 2022-2 Supp.) (discussing lack of courts applying Third Restatement to software defects); Michael L. Rustad & Thomas H. Koenig, *The Tort of Negligent Enablement of Cyberspace*, 20 Berkeley Tech. L.J. 1553, 1577 (2005) ("[I]t seems unlikely that the courts adopting the Restatement will be receptive to stretching product liability concepts to software, digital information, and other intangibles.").

24.     TNCs provide a service. *See* 625 Ill. Comp. Stat. Ann. 57/5 (TNC "means an entity operating in this State that uses a digital network or software application *service* to connect passengers to transportation network company *services* provided by transportation network company drivers") (emphasis added); 625 Ill. Comp. Stat. Ann. 57/15, 57/20, 57/25, 57/30.

25.     Tellingly, no Illinois court has held that the Uber App is a "product," whereas courts in sister jurisdictions have consistently held that the Uber App is ***not*** a product. For example, in ruling on a complaint containing substantially the same allegations and claims in a coordinated proceeding involving hundreds of plaintiffs, the San Francisco County Superior Court recently held that the plaintiffs failed to allege facts establishing that the Uber App is a product. Velcich Decl., ¶ 7, Ex. E; RJN, ¶ 5 [*In re Uber Rideshare Cases*, No. CJC-21-005188, Proc. No. 5188, at 16-18 (Cal. Super. Ct. S.F. Cnty. June 22, 2023)].[3] The court noted that the Uber App does not fit into either of the Restatement's categories of intangible products. *Id.* And in rejecting the plaintiffs' argument that the App was capable of being touched and seen, observed that it is the phone itself—not the App—that can be touched or seen. *Id.* Similarly, the Los Angeles County Superior Court recently relied on the Restatement's definition of a "product" to hold that the "Uber

---

[3] Plaintiff is one of the plaintiffs in this Judicial Council Coordinated Proceeding ("JCCP"), in which she asserts identical claims based on the same alleged assault. The JCCP court recently granted Uber's motion to dismiss based on *forum non conveniens*, and the court entered orders providing for dismissal of plaintiff's case. While pursuing this litigation, Plaintiff is also simultaneously appealing the JCCP court's *forum non conveniens* orders, resulting in an automatic stay of those orders pending resolution of the appeal.

[579BB-104/1764392/1]                    11

App is not a product." Velcich Decl., ¶ 8, Ex. F; RJN, ¶ 6 [*Jane Doe No. 1 v. Uber Techs., Inc.*, No. 19STCV11874, at 11-13 (Cal. Super Ct. L.A. Cnty. Nov. 30, 2020)].[4]

26.     Moreover, federal courts have reached the same result in relation to similar platforms. For example, in *Jackson v. Airbnb, Inc.*, CV 22-3084 DSF, 2022 WL 16752071, at *10 (C.D. Cal. Nov. 4, 2022), the plaintiffs brought a negligent design claim against defendant Airbnb, alleging "that the service or platform was negligently designed." The court dismissed the plaintiff's product liability claim because "Airbnb is a 'marketplace' and not a product." *Id*. at *9. In comparing Airbnb to "products" as defined in the Restatement (Third) of Torts, Product Liability, the court held that "Airbnb is a platform that connects users; it is more akin to a service than a product." *Id*. (citing *Jane Doe No. 1 v. Uber Techs., Inc.,* 79 Cal. App. 5th 410, 419 (2022)).

27.     "[S]trict product liability does not extend to services." *Milford v. Com. Carriers, Inc.*, 210 F. Supp. 2d 987, 990 (N.D. Ill. 2002) (collecting cases). Thus, even if the Uber App were a product (it is not), Plaintiff must establish her transaction with Uber was for purchasing the App rather than obtaining a service. *Brandt v. Bos. Sci. Corp.*, 792 N.E.2d 296, 302 (Ill. 2003); *see also Babcock v. Nudelman*, 12 N.E.2d 635, 637 (Ill. 1937). "[A] customer's primary objective when downloading and using the Uber App is to request a ride in a car and get paired with a driver who is dispatched to pick up and drive the customer to their destination in exchange for a fee." Velcich

---

[4] Other courts have similarly concluded the Uber App is not a product, often in reliance on the common law principals articulated in the Restatement. *See, e.g.*, Velcich Decl., ¶ 9, Ex. G; RJN, ¶ 7 [*Ramos v. Uber Tech. Inc.*, No. 22STCV33007, at 3 (Cal. Super. Ct. L.A. Cnty. June 1, 2023)]; Velcich Decl., ¶ 10, Ex. H; RJN, ¶ 8 [*Lopez v. Uber Techs., Inc.,* No. 21CV376012 at 8 (Cal. Super. Ct. Santa Clara Cnty. Dec. 7, 2021)]; Velcich Decl., ¶ 11, Ex. I; RJN, ¶ 9 [*Polanco v. Lyft, Inc.*, No. 30-2019-01065850 at 1 (Cal. Super. Ct. Orange Cnty. May 13, 2021)]; Velcich Decl., ¶ 12, Ex. J; RJN, ¶ 10 [*Toral v. Bazzi,* No. 20STCV02030, at 5-6 (Cal. Super. Ct. L.A. Cnty. Apr. 14, 2021)]; Velcich Decl., ¶ 13, Ex. K; RJN, ¶ 11 [*Luna v. Uber Techs., Inc.,* No. 22STCV10806, at 4 (Cal. Super. Ct. L.A. Cnty. Sept. 27, 2022)]; Velcich Decl., ¶ 14, Ex. L; RJN, ¶ 12 [*Shannon v. Uber Techs., Inc.*, No. 21STCV42029, at 4 (Cal. Super. Ct. L.A. Cnty. Apr. 15, 2022)]; Velcich Decl., ¶ 15, Ex. M; RJN, ¶ 13 [*Flores v. Uber Techs., Inc.*, No. 19STCV24988, at 3-6 (Super. Ct. L.A. County Mar. 22, 2022)]; Velcich Decl., ¶ 16, Ex. N; RJN, ¶ 14 [*Norman v. Uber Techs., Inc.*, No. 21STCV35632, at 4-5 (Super. Ct. L.A. County Mar. 8, 2022)]; Velcich Decl., ¶ 17, Ex. O; RJN, ¶ 15 [*Baumgartner v. Uber Techs., Inc.,* No. 21-2-15753-6 (Wash. Super. Ct. King Cnty. Mar. 9, 2022)].

Decl., ¶ 7, Ex. E; RJN, ¶ 5 [*In re Uber Rideshare Cases*, Proc. No. 5188 at 18]. "Customers do not purchase the App, nor is it in any meaningful sense the object of their transaction with Uber, but merely the mechanism by which that object-securing a ride to their destination-is accomplished." *Id.* "The Uber App is incidental to the transportation service provided." *Id.*; *see also* Velcich Decl., ¶ 8, Ex. F; RJN ¶ 6 [*Jane Doe No. 1*, No. 19STCV11874 at 12-13 (holding that "the Uber App was used to gain a service: a ride. Plaintiffs were not acquiring ownership in the car they reserved or going to use the car. They were being driven from one location to another by the person who owned the car. That is a service.")]; *see also Jackson*, 2022 WL 16752071, at *10; Velcich Decl., ¶ 10, Ex. H; RJN ¶ 8 [*Lopez*, No. 21CV376012 at 8]; Velcich Decl., ¶ 11, Ex. I; RJN ¶ 9 [*Polanco*, No. 30-2019-01065850 at 2]. This rationale applies here, especially given Plaintiff alleges that Uber provides a service. *See, e.g.*, Compl. ¶¶ 74, 76-77, 79-80, 84-85, 127.

<div style="text-align:center">ii.     <u>The Complaint Fails to Adequately Allege Causation</u></div>

28.     A plaintiff must plead facts that the defect was a legal cause of her alleged injury. *See Cassidy v. China Vitamins, LLC*, 89 N.E.3d 944, 949 (Ill. App. Ct. 2017) (*citing Mikolajczyk v. Ford Motor Co.*, 901 N.E.2d 329, 345 (Ill. 2008)). Plaintiff alleges the Uber App lacked a "GPS tracking system that would alert UBER" to certain events during a ride, "automatic activation of the camera in drivers' smart phones when a ride is in progress," or "automatic notification of law enforcement of suspicious circumstances that suggest a rider may be in danger." Compl. ¶ 183. Yet she offers no allegation regarding how these features would have prevented the assault.

29.     Plaintiff has failed to plead facts that, but for the design of the Uber App, the assault would not have happened. *Berke v. Manilow*, 63 N.E.3d 194, 203-04 (Ill. App. Ct. 2016). Instead, her injuries stemmed from the actions of a driver who allegedly made an independent decision to commit a heinous assault. *Id.* at ¶ 70 (alleging "the Uber driver" assaulted Plaintiff). Plaintiff has

therefore failed to plead causation. *See, e.g.*, *Modisette v. Apple Inc.*, 30 Cal. App. 5th 136, 154 (2018) (alleged defect was not the proximate cause of Plaintiffs' injuries; rather, the driver caused the injuries "when he crashed into their car" after diverting his attention to use the app); Velcich Decl., ¶ 18, Ex. P; RJN, ¶ 16 [*Garcia v. Peninsula Int'l, Inc., et al.*, No. 19-CIV-06086 (Cal. Super. Ct. San Mateo Cnty. June 14, 2021) (dismissing product liability claim based on alleged distraction due to use of Uber App because the App was not the proximate cause of plaintiff's injury).

### G. Plaintiff's Vicarious Liability Allegations Fail as a Matter of Law

30. The Complaint contains various allegations under the headings "Vicarious Liability for Driver's Torts" and "Vicarious Liability for Sexual Battery[.]" See Compl. ¶¶ 197-218. Setting aside that these allegations are not independent claims and the accused driver was not Uber's employee or agent, Uber cannot be vicariously liable for the driver's alleged assault. "[A] principal or employer is generally subject to vicarious liability for the tortious conduct of its agent or employee only if the conduct 'fell within the scope of the agency or employment.'" *Doe v. Lyft, Inc.*, 176 N.E.3d at 870 (quoting *Wilson v. Edward Hosp.*, 981 N.E.2d 971, 978 (Ill. 2012)). "**[A]n act of sexual assault, '*by its very nature*, precludes the conclusion that it was committed within the scope of employment**.'" *Doe v. Lyft, Inc.*, 176 N.E.3d at 870 (emphasis added) (quoting *Doe ex rel. Doe v. Lawrence Hall Youth Servs.*, 966 N.E.2d 52, 61 (Ill. App. Ct. 2012), and collecting cases). Moreover, TNCs are ***not*** common carriers. *Id.* at 871 (citing 625 Ill. Comp. Stat. Ann. 57/25(e)). Thus, Uber is not subject to "principles of vicarious liability applicable to common carriers." *Id.* at 870-74. Consequently, Plaintiff's vicarious liability allegations must be dismissed.[5]

---

[5] Courts elsewhere have dismissed vicarious liability claims against Uber based on similar claims. *See, e.g.*, *Phillips v. Uber Techs., Inc.*, 2017 WL 2782036, *5-7 (S.D.N.Y. June 14, 2017); *Mazaheri v. Doe*, 2014 WL 2155049, *2 (W.D. Okla. May 22, 2014); Velcich Decl., ¶ 7, Ex. E; RJN, ¶ 5 [*In re Uber Rideshare Cases*, Proc. No. 5188 at 4-12]; Velcich Decl., ¶ 19, Ex. Q; RJN, ¶ 17 [*Jane Doe v. Uber Techs, Inc.*, No. 19STCV35444 (Cal. Super. Ct. L.A. Cnty. Jan. 29, 2021)]; Velcich Decl., ¶ 4, Ex. B; RJN, ¶ 2 [*Minzer v. Barga*, 2020 WL 2621710, at *2 (N.Y. Super. Ct. N.Y. Cnty. May 22, 2020)]; Velcich Decl., ¶ 20, Ex. N;

[579BB-104/1764392/1]                    14

### H. Plaintiff's Request for Punitive Damages Should be Stricken

31.     Plaintiff's request for punitive damages should be stricken. *See Wilson v. Perez*, No. 22-CV-03609, 2023 WL 3020710, at *2 (N.D. Ill. Apr. 20, 2023). Punitive damages are recoverable in limited situations, such as where the defendant acted with fraud, malice, oppression, or a wanton disregard for others. *See Loitz v. Remington Arms Co.*, 563 N.E.2d 397, 402 (Ill. 1990).

32.     Here, Plaintiff fails to allege facts establishing the conditions for imposing punitive damages against Uber. And because her misrepresentation claims must be dismissed, they cannot support a claim for punitive damages. Moreover, she does not allege that an officer, director, or managing agent of Uber ordered, participated in, or ratified the accused driver's alleged assault, which is fatal to her claim for punitive damages. *See Tolle v. Interstate Sys. Truck Lines, Inc.*, 356 N.E.2d 625, 627 (Ill. App. Ct. 1976) (Illinois has adopted the "corporate complicity" rule). And a defendant's conduct warranting punitive damages must have caused the plaintiff's injuries. *See Philip Morris USA v. Williams*, 549 U.S. 346, 355 (2007). Here, the Complaint's many inflammatory allegations have nothing to do with Plaintiff's assault. *See, e.g.*, Compl. ¶¶ 37-40.

### III.    CONCLUSION

33.     For these reasons, Uber's motion should be granted without leave to amend. *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015).

Respectfully Submitted,

SUDEKUM, CASSIDY & SHULRUFF, CHTD

By:     /s/: *George M. Velcich*
        George M. Velcich (ARDC #3127772)
        Attorneys for Defendants

---

RJN, ¶ 14 [*Echevarria v. Uber Techs., Inc.*, No. 2021-002103-CA-01, at 1 (Fla. Cir. Ct. Miami-Dade Cnty. Apr. 21, 2021)]; Velcich Decl., ¶ 21, Ex. S; RJN, ¶ 19 [*Owens v. Uber Techs., Inc.*, No. 20-13942, at 1 (Pa. Ct. C.P. Berks Cnty. Mar. 11, 2021)]; Velcich Decl., ¶ 22, Ex. T; RJN, ¶ 20 [*Coughlin v. Uber Techs., Inc.*, No. 03083, at 1 (Pa. Ct. C.P. Phila. Cnty. June 12, 2020)]; Velcich Decl., ¶ 23, Ex. U; RJN, ¶ 21 [*Robinson v. Uber USA, LLC*, No. 2022CP4000496, at 2-6 (S.C. Ct. C.P. Rich. Cnty. Nov. 30, 2022)].

# EXHIBIT 6

1  **BOWMAN AND BROOKE LLP**
   Paul A. Alarcon (SBN: 275036)
2       paul.alarcon@bowmanandbrooke.com
   Samuel Q. Schleier (SBN: 312449)
3       sam.schleier@bowmanandbrooke.com
   Colton F. Parks (SBN: 322491)
4       colton.parks@bowmanandbrooke.com
   970 West 190th Street, Suite 700
5  Torrance, California 90502
   Tel No.:     (310) 768-3068
6  Fax No.:     (310) 719-1019

7  Attorneys for Defendants
   Uber Technologies, Inc, Rasier, LLC, and Rasier-CA, LLC
8

9                **UNITED STATES DISTRICT COURT**

10    **NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO COURTHOUSE**

11

12 | JANE DOE LSA 340, an individual,         | Case No.: 3:23-cv-01165-AMO
   |
13 |              Plaintiff,                   | **UBER TECHNOLOGIES INC., RASIER,**
   |                                           | **LLC, AND RASIER-CA, LLC'S NOTICE OF**
14 | v.                                        | **MOTION AND MOTION TO DISMISS**
   |                                           | **PLAINTIFF JANE DOE LSA 340'S**
15 | UBER TECHNOLOGIES, INC., a Delaware       | **COMPLAINT PURSUANT TO FEDERAL**
   | Corporation; RASIER, LLC, a Delaware      | **RULE OF CIVIL PROCEDURE 12(b)(6);**
16 | Limited Liability Company; RASIER-CA, LLC,| **MEMORANDUM OF POINTS AND**
   | a Delaware Limited Liability Company; and | **AUTHORITIES**
17 | DOES 1 through 50 Inclusive               |
   |                                           | [*Filed concurrently with Declaration of Paul A.*
18 |              Defendants.                   | *Alarcon; Request for Judicial Notice; and*
   |                                           | *Proposed Order*]
19 |                                           |
   |                                           | **Hearing Information:**
20 |                                           | Date:        August 31 2023
   |                                           | Time:        2:00 p.m.
21 |                                           | Courtroom:   10 (19th Floor)
22 |                                           |
   |                                           | Complaint Filed:   March 15, 2023
23 |                                           | Trial Date:        None
24 |

25 / / /

26 / / /

27 / / /

28 / / /

                                    1

Uber Technologies Inc.'s Notice of Motion and          *Jane Doe LSA 340 v. Uber Technologies, Inc.*
Motion to Dismiss                                                         *3:23-cv-01165-AMO*

APP262

1   **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2   **NOTICE IS HEREBY GIVEN** that on August 31, 2023 at 2:00 p.m., or as soon thereafter as

3   the matter can be heard, before the Honorable Araceli Martinez-Olguin in Courtroom No. 10 on the 19th

4   Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue,

5   San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC

6   (collectively, "Uber") will, and hereby do, move this Court for an order dismissing portions of the

7   Complaint brought by Plaintiff Jane Doe LSA 340 ("Plaintiff") in this action.

8   This Motion to Dismiss and Strike is based on the following grounds:

9   1.   Plaintiff's third through tenth causes of action and request for punitive damages fail to

10  state claims upon which relief can be granted. Fed. R. Ci*v*. P. 12(b)(6).

11  This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the

12  concurrently filed Declaration of Paul A. Alarcon, the concurrently filed Request for Judicial Notice, the

13  concurrently filed Proposed Order, all evidence, pleadings, and papers filed herewith, the entire file in

14  this action, any Reply that may be filed in support of this Motion, and any other arguments or evidence

15  that may be presented to the Court at or before the time of the hearing.

16

17  Dated: June 12, 2023                                  **BOWMAN AND BROOKE LLP**

18

19

20                                                        By: */s/ Paul Alarcon*
21                                                            Paul Alarcon (SBN: 275036)
                                                            Samuel Q. Schleier (SBN: 312449)
22                                                          Colton F. Parks (SBN: 322491)
                                                            970 West 190th Street, Suite 700
23                                                          Torrance, California 90502
                                                            Tel: (310) 380-6595
24                                                          Attorneys for Uber Technologies, Inc.,
                                                            Rasier, LLC, and Rasier-CA, LLC
25

26

27

28

2

---

Uber Technologies Inc.'s Notice of Motion and          *Jane Doe LSA 340 v. Uber Technologies, Inc.*
Motion to Dismiss                                       *3:23-cv-01165-AMO*

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 3

II.     THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12 ............................ 4

        A.      The Claims for Vicarious Liability Fail as a Matter of Law ............................................. 4

                1.      The Alleged Assault was Outside the Scope of Any Alleged Employment ........... 4

                2.      Alleging Common Carrier Status Does Not Support Vicarious Liability .............. 8

        B.      Plaintiff's Fraud Based Claims Fail to Satisfy Rule 9(b) .................. 10

                1.      The Complaint Fails to Adequately Allege Reliance ........................................... 11

                2.      The Allegations of False Statements are Deficient ............................................. 13

                        i.      The Complaint Fails to Plead Falsity ............................................................. 14

                        ii.     Opinion and Puffery are Non-Actionable ...................................................... 15

        C.      The Claim for Negligent Infliction of Emotional Distress is Duplicative ....................... 16

        D.      The Complaint's Strict Product Liability Claims Fail as a Matter of Law ...................... 17

                1.      The Uber App is Not a Product ........................................................................... 17

                2.      The Complaint Fails to Adequately Allege a Defect .......................................... 21

                3.      The Complaint Fails to Adequately Allege Causation ....................................... 22

        E.      Plaintiff's Request for Punitive Damages Should be Dismissed ..................................... 24

        F.      Amendment Would Be Futile ........................................................................................... 25

III.    CONCLUSION .................................................................................................. 25

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Other Authorities**

*Ahern v. Apple, Inc.*,
  411 F. Supp. 3d 541 (N.D. Cal. 2019) ........................................................ 14, 15

*Alma W. v. Oakland Unified Sch. Dist.*,
  123 Cal. App. 3d 133 (1981) ......................................................................... 5, 6

*Am. Honda Motor Co. v. Milburn*,
  --- S.W.3d ----, 2021 WL 5504887 (Tex. App.—Dallas Nov. 24, 2021) ......................................... 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................ 4

*Avakian v. Wells Fargo Bank, N.A.*,
  827 F. App'x 765 (9th Cir. 2020) ..................................................................... 15

*Barker v. Lull Eng'g Co.*,
  20 Cal. 3d 413 (1978) ...................................................................................... 21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................... 4, 24

*Brooks v. Eugene Burger Mgmt. Corp.*,
  215 Cal. App. 3d 1611 (1989) ............................................................. 17, 18, 22

*Cadlo v. Owens-Illinois, Inc.*,
  125 Cal. App. 4th 513 (2004) ..................................................................... 12, 13

*California Spine & Neurosurgery Inst. v. Aetna Life Ins. Co.*,
  No. CV 18-6829-DMG (KSX), 2019 WL 1878355 (C.D. Cal. Mar. 7, 2019)................................. 24

*Cansino v. Bank of Am.*,
  224 Cal. App. 4th 1462 (2014) ........................................................................ 15

*Castellanos v. State of California*,
  89 Cal. App. 5th 131 (2023) .............................................................................. 5

*Cervantes v. Countrywide Home Loans, Inc.*,
  656 F.3d 1034 (9th Cir. 2011) ................................................................................. 25

*Chapman v. Skype Inc.*,
  220 Cal. App. 4th 217 (2013) ................................................................................ 11

*Consumer Advocs. v. Echostar Satellite Corp.*,
  113 Cal. App. 4th 1351 (2003) .............................................................................. 16

*Crisanto v. Cnty. of Tulare*,
  No. 115-cv-01527-LJO-BAM, 2015 WL 7188165 (E.D. Cal. Nov. 16, 2015) ................................ 25

*Daly v. General Motors Corp.*,
  20 Cal. 3d 725 (1978) .......................................................................................... 22

*Davis v. Inmar, Inc.*,
  No. 21-CV-03779 SBA, 2022 WL 3722122 (N.D. Cal. Aug. 29, 2022) ......................................... 13

*Debbie Reynolds Prof. Rehearsal Studios v. Super. Ct.*,
  25 Cal. App. 4th 222 (1994) ............................................................................... 5, 7

*Doe v. Lyft, Inc.*,
  176 N.E.3d 863 (Ill. App. Ct. 2020) ........................................................................ 8

*Doe v. Uber Techs., Inc.*,
  551 F. Supp. 3d 341 (S.D.N.Y. 2021) ....................................................................... 8

*Doe v. Uber Techs., Inc.*,
  No. 19-CV-03310-JSC, 2020 WL 2097599 (N.D. Cal. May 1, 2020) ........................................ 7, 8

*Farmers Ins. Grp. v. Cnty. of Santa Clara*,
  11 Cal. 4th 992 (1995) .................................................................................... 4, 5, 9

*Ferrari v. Grand Canyon Dories*,
  32 Cal. App. 4th 248 (1995) ................................................................................ 20

*Gentry v. eBay, Inc.*,
  99 Cal. App. 4th 816 (2002) ................................................................................ 15

*Gomez v. Super. Ct.*,
  35 Cal. 4th 1125 (2005) ..................................................................................... 9

*Hauter v. Zogarts,*
 14 Cal. 3d (1975) .................................................................................................. 16

*Hennigan v. White,*
 199 Cal. App. 4th 395 (2011) ............................................................................. 20

*Hoffman v. 162 N. Wolfe LLC,*
 228 Cal. App. 4th 1178 (2014) ........................................................................... 13

*In re Gilead Scis. Sec. Litig.,*
 536 F.3d 1049 (9th Cir. 2008) ............................................................................ 24

*In re GlenFed, Inc. Sec. Litig.,*
 42 F. 3d 1541 (9th Cir. 1994) ............................................................................. 15

*Jackson v. Airbnb, Inc.,*
 --- F. Supp. 3rd ----, 2022 WL 16752071 (C.D. Cal. Nov. 4, 2022) ............. 20, 21

*Jane Doe 1 v. City of Murrieta,*
 102 Cal. App. 4th 899 (2002) ............................................................................... 5

*Jane Doe No. 1 v. Uber Techs., Inc.,*
 79 Cal. App. 5th 410 (2022) ........................................................................... 18, 20

*Jane Doe v. Uber Techs., Inc.,*
 No. 19-cv-03310-JSC, 2019 WL 6251189 (N.D. Cal. Nov. 22, 2019) ............. 7, 9

*Jeffrey Scott E. v. Cent. Baptist Church,*
 197 Cal. App. 3d 718 (1988) ................................................................................ 5

*John R. v. Oakland Unified Sch. Dist.,*
 48 Cal. 3d 438 (1989) ................................................................................... 5, 6, 9

*John Y. v. Chaparral Treatment Ctr., Inc.,*
 101 Cal. App. 4th 565 (2002) ............................................................................... 5

*Karlen v. Uber Techs.,*
 2020 WL 3704195 (D. Conn. Aug. 27, 2022) ...................................................... 7

*Kimberly M. v. Los Angeles Unified Sch. Dist.,*
 215 Cal. App. 3d 545 (1989) ................................................................................ 5

iii

*Klein v. Children's Hosp. Med. Ctr. of N. Cal.*,
    46 Cal. App. 4th 889 (1996) ........................................................................ 16

*Kurns v. R.R. Friction Prods. Corp.*,
    565 U.S. 625 (2012).................................................................................... 22

*Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*,
    12 Cal. 4th 291 (1995) ........................................................................ passim

*Lopez v. S. Cal. Rapid Transit Dist.*,
    40 Cal. 3d 780 (1985) ............................................................................ 9, 10

*Lucas v. City of Visalia*,
    726 F. Supp. 2d 1149 (E.D. Cal. 2010) ...................................................... 22

*Maria D. v. Westec Residential Sec., Inc.*,
    85 Cal. App. 4th 125 (2000) ..................................................................... 5, 9

*Marolda v. Symantec Corp.*,
    672 F. Supp. 2d 992 (N.D. Cal. 2009) ........................................................ 14

*Mazaheri v. Doe*,
    2014 WL 2155049 (W.D. Okla. May 22, 2014)............................................ 7

*McKinney v. Google, Inc.*,
    No. 5:10-CV-01177 EJD, 2011 WL 3862120 (N.D. Cal. Aug. 30, 2011) ....... 12

*Mendiondo v. Centinela Hosp. Med.* Ctr.,
    521 F.3d 1097 (9th Cir. 2008) ................................................................ 4, 24

*Mewawalla v. Middleman*,
    601 F. Supp. 3d 574 (N.D. Cal. 2022) ........................................................ 10

*Miller v. Schmitz*,
    No. 1:12-cv-00137-LJO, 2012 WL 1609193 (E.D. Cal. May 8, 2012)........... 24

*Modisette v. Apple Inc.*,
    30 Cal. App. 5th 136 (2018) ...................................................................... 23

*Murphy v. E.R. Squibb & Sons, Inc.*,
    40 Cal. 3d 672 (1985)........................................................................... 20, 21

iv

*O'Neil v. Crane Co.,*
   53 Cal. 4th 335 (2012) ................................................................................. 22, 23

*Palmer v. Apple Inc.,*
   No. 5:15-CV-05808-RMW, 2016 WL 1535087 (N.D. Cal. Apr. 15, 2016) .................................... 15

*Pena v. Sita World Travel, Inc.,*
   88 Cal. App. 3d 642 (1978) ......................................................................... 20

*Philip Morris USA v. Williams,*
   549 U.S. 346 (2007)................................................................................. 25

*Philipson & Simon v. Gulsvig,*
   154 Cal. App. 4th 347 (2007) ....................................................................... 13

*Phillips v. Uber Techs., Inc.,*
   2017 WL 2782036 (S.D.N.Y. June 14, 2017) ........................................................... 7

*Pierson v. Sharp Mem'l Hosp., Inc.,*
   216 Cal. App. 3d 340 (1989) ....................................................................... 20

*Redmond v. United States,*
   No. 22-CV-01107-TSH, 2022 WL 3137925 (N.D. Cal. June 13, 2022)......................................... 14

*Rhynes v. Stryker Corp.,*
   No. 10-5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011)................................................ 25

*Rita M. v. Roman Catholic Archbishop,*
   187 Cal. App. 3d 1453 (1986) ........................................................................ 5

*Saller v. Crown Cork & Seal Co.,*
   187 Cal. App. 4th 1220 (2010) ...................................................................... 21

*Shin v. ICON Found.,*
   No. 20-cv-07363-WHO, 2021 WL 1893117 (N.D. Cal. May 11, 2021)........................................... 24

*Small v. Fritz Companies, Inc.,*
   30 Cal. 4th 167 (2003) .......................................................................... 11, 12

*Smith v. LG Elecs. U.S.A., Inc.,* No. C,
   13-4361 PJH, 2014 WL 989742 (N.D. Cal. Mar. 11, 2014) ................................................. 16

v

**Table of Authorities**
   *Jane Doe LSA 340 v. Uber Technologies, Inc.*
   3:23-cv-01165-AMO

APP269

*Soule v. GM Corp.*,
  8 Cal. 4th 548 (1994) ................................................................................................ 17

*State Dept. of State Hosps. v. Super. Ct.*,
  61 Cal. 4th 339 (2015) .............................................................................................. 23

*Sumpter v. Matteson*,
  158 Cal. App. 4th 928 (2008) ................................................................................... 25

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) .................................................................................... 11

*Taiwan Semiconductor Mfg. Co. v. Tela Innovations, Inc.*,
  No. 14-CV-00362-BLF, 2014 WL 3705350 (N.D. Cal. July 24, 2014) ................... 25

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
  2 Cal. App. 4th 153 (1991) ....................................................................................... 13

*Teed v. Chen*,
  No. 22-CV-02862-CRB, 2023 WL 2277104 (N.D. Cal. Feb. 28, 2023) .................. 10

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ............................................................................ 11, 13

*Victoria v. Super. Ct.*,
  40 Cal. 3d 734 (1985) ............................................................................................... 10

*Viner v. Sweet*,
  30 Cal. 4th 1232 (2003) ............................................................................................ 23

*White v. Soc. Sec. Admin.*,
  111 F. Supp. 3d 1041 (N.D. Cal. 2015) .................................................................... 16

*Whittlestone, Inc. v. Handi-Craft Co.*,
  618 F.3d 970 (9th Cir. 2010) .................................................................................... 24

*Wilhelm v. Pray, Price, William & Russell*,
  186 Cal. App. 3d 1324 (1986) ............................................................................ 12, 13

*Winn v. McCulloch Corp.*,
  60 Cal. App. 3d 663 (1976) ...................................................................................... 14

vi

*XYZ Two Way Radio Serv., Inc. v. Uber Techs., Inc.*,
    214 F. Supp. 3d 179 (E.D.N.Y. 2016) ........................................................ 15, 16

**Statutes**

Cal. Civ. Code § 3294(a) ............................................................................... 24

Cal. Code Civ. Proc. § 2100 ....................................................................... 8, 10

Cal. Pub. Util. Code § 5431(c) ........................................................................ 18

**Rules**

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 4

Fed. R. Civ. P. 9(b) .......................................................................................... 11

**Other Authorities**

5 Witkin Cal. Proc. § 721(b) (6th Ed. 2023) .................................................. 14

Michael D. Scott, *Scott on Info. Tech. Law*, § 15.08 n.105 (CCH, 3rd ed. 2022-2 Supp.)..................... 17

Raymond T. Nimmer, Law of Comput. Tech. § 12:23.30 (West Grp., Feb. 2023 Update) ................... 17

Restatement (Third) of Torts: Prod. Liab. § 19 (West Grp., March 2023 Update) ................................. 17

*The Tort of Negligent Enablement of Cyberspace*, 20 Berkeley Tech. L.J. 1553 (2005)........................ 17

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Uber is an international company with dozens of offices all over the United States. It is a technology company that uses its proprietary technology to develop and maintain digital multisided marketplace platforms. Some specific examples of platforms that Uber has developed include the Rides platform (connecting riders with independent drivers) and the Eats platform (merchants, delivery people, and eaters). On a daily basis, via the Rides platform, Uber's technology facilitates more than 15 million connections around the world. Unfortunately, these connections are not insulated from societal issues that span the globe. Sexual assault is one such issue.

The Complaint alleges that after using the Uber App to arrange for a particular ride, Plaintiff Jane Doe LSA 340 ("Plaintiff") was sexually assaulted by an independent driver. *See* Complaint ("Compl.") at p. 35 (¶ 156).[1] If these claims can be substantiated, the assailant should be held responsible for his heinous and intolerable crimes. But as to Uber, many of the causes of action cannot be sustained as they fail to state a claim as to Uber or satisfy the applicable federal pleading standards.

Specifically, this Motion should be granted with respect to four sets of claims: vicarious liability (Counts 6-8); intentional and negligent misrepresentation (Counts 3-4); negligent infliction of emotional distress (Count 5); and products liability (Counts 9-10). The reasons are straightforward. **Vicarious Liability**: Uber cannot be vicariously liable for the intentional torts and criminal acts of an independent driver who is not its employee and, even if he were, acted way outside the scope of his job. **Fraud**: Plaintiff's fraud claims are non-starters because none of the elements are pled with specificity. **Negligent Infliction of Emotional Distress**: There is no separate cause of action for negligent infliction of emotional distress. **Product Liability**: There can be no product liability claims because the Uber App is not a product and because the Complaint fails to allege a "defect" that caused Plaintiff's injuries. **Punitive Damages:** Plaintiff's Complaint is bereft of any factual allegations establishing any basis for punitive damages. Consequently, this Motion should be granted.

---

[1] The paragraphs in the Complaint are not sequentially numbered throughout the entire document, but repeatedly start over again or repeat earlier paragraph numbers already used. *See* Compl. at pp. 2, 3, 5, 25, 42, 44, 48, and 50. Accordingly, for ease of reference, citations to the Complaint in this Motion will refer first to the page number and then the paragraph number of the cited material in substantially the following form: "Compl. at p. # (¶ #)."

3

1    II.    **THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12**

2         A defendant may move to dismiss a claim for failure to state a claim upon which relief can be

3    granted. Fed. R. Civ. P. 12(b)(6). "To survive [such] a motion to dismiss, a complaint must contain

4    sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

5    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

6    (2007)). A claim is plausible only if the plaintiff alleges enough facts that permit a reasonable inference

7    of liability on the part of the defendant. *Ashcroft*, 556 U.S. at 678. Dismissal of a claim or a complaint is

8    appropriate where the allegations lack "a cognizable legal theory or sufficient facts to support a

9    cognizable legal theory." *Mendiondo v. Centinela Hosp. Med.* Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

10        Here, Plaintiff's third through tenth causes of action fails to state claims upon which relief can be

11   granted. Fed. R. Civ. P. 12(b)(6).

12        A.    **The Claims for Vicarious Liability Fail as a Matter of Law**

13        The sixth through eighth causes of action must be dismissed because Uber cannot, as a matter of

14   law, be vicariously liable for the independent driver's alleged assault. *See* Compl. at pp. 44-48 (¶¶ 220-

15   247). Even if there was an employer-employee relationship between Uber and the independent driver—

16   which there is not—the driver's alleged tortious and criminal conduct is far outside the scope of any

17   purported employment with Uber. *See Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291,

18   296-99 (1995).[2] "[V]icarious liability is deemed inappropriate where the misconduct does not arise from

19   the conduct of the employer's enterprise but instead . . . is the result of personal compulsion[.]" *Farmers*

20   *Ins. Grp. v. Cnty. of Santa Clara*, 11 Cal. 4th 992, 1006 (1995).

21        1.    **The Alleged Assault was Outside the Scope of Any Alleged Employment**

22        An employer cannot be held vicariously liable for torts committed by an employee unless the

23   conduct falls within the scope of employment—that is, is part of the employer's business and part of the

24   employee's job responsibilities. *Lisa M.*, 12 Cal. 4th at 296-97. Here, the vicarious liability claims

25   cannot proceed because the only plausible conclusion from the facts alleged in the Complaint is that the

26

27

28   [2] Plaintiff is a resident of Washington, but the alleged incident occurred in California. For the purposes of this Motion only, Uber assumes that California law applies to Plaintiff's claims.

4

driver's deplorable behavior (if proven) is not within the scope of any alleged employment. *Id.* at 299.[3]

In the last 30 years, California courts at every level have routinely disposed of vicarious liability claims against employers based on sexual assaults allegedly committed by their employees, as those assaults were not committed within the scope of employment.[4] Most of those dismissals were at the pleading stage and most were granted without leave to amend. And virtually all involved unspeakable sexual crimes by assailants in positions of dominance over vulnerable victims—for example, a school janitor raping an 11-year-old girl (*Alma W.*), priests raping and impregnating a 16-year-old girl (*Rita M.*), a police officer sexually abusing 16-year-old girls (*Doe 1*), and a teacher molesting a 14-year-old boy (*John R.*). The allegations in this case are of a piece with these, and many other, dismissed cases.

The tragedy of the above acts of sexual violence is the reason why the vicarious liability claims could not be sustained: where "the employee *substantially deviates from the employment duties for personal purposes*," the employer "will not be held liable for an employee's malicious or tortious conduct." *Farmers*, 11 Cal. 4th at 1004-05 (emphasis added). That "the employment brought tortfeasor and victim together in time and place"—like drivers and riders using the Uber App—is not enough to sustain a vicarious liability claim. *Lisa M.*, 12 Cal. 4th at 298. The scope of employment is not based on physical proximity, but on the assailant's job responsibilities.

That is the controlling principle in sexual misconduct cases, as in any vicarious liability case. In *Farmers*, a deputy's sexual harassment of trainees "had no purpose connected to the employment" because it *was not related to his own job duties*; it was "motivated for strictly personal reasons unrelated to the guarding of inmates or the performance of any other duty of a deputy sheriff." 11 Cal. 4th at 1007. In *Alma W.*, a school janitor who raped an 11-year-old was motivated by "*an independent, self-serving pursuit wholly unrelated to his custodial duties.*" 123 Cal. App. 3d at 141 (emphasis added). There was no vicarious liability because "sexual molestation *is in no way related to*" the worker's duties of

---

[3] The California Court of Appeal's recent upholding of the constitutionality of Proposition 22 solidifies drivers' status as independent contractors, not employees. *See Castellanos v. State of California*, 89 Cal. App. 5th 131, 143 (2023).

[4] *See, e.g.*, *Alma W. v. Oakland Unified Sch. Dist.*, 123 Cal. App. 3d 133 (1981); *John R. v. Oakland Unified Sch. Dist.*, 48 Cal. 3d 438 (1989); *Rita M. v. Roman Catholic Archbishop*, 187 Cal. App. 3d 1453 (1986); *Jeffrey Scott E. v. Cent. Baptist Church*, 197 Cal. App. 3d 718 (1988); *Kimberly M. v. Los Angeles Unified Sch. Dist.*, 215 Cal. App. 3d 545 (1989); *Debbie Reynolds Prof. Rehearsal Studios v. Super. Ct.*, 25 Cal. App. 4th 222 (1994); *Farmers*, 11 Cal. 4th 992; *Lisa M.*, 12 Cal. 4th 291; *Maria D. v. Westec Residential Sec., Inc.*, 85 Cal. App. 4th 125, 146 (2000); *Jane Doe 1 v. City of Murrieta*, 102 Cal. App. 4th 899 (2002); *John Y. v. Chaparral Treatment Ctr., Inc.*, 101 Cal. App. 4th 565, 576 (2002).

5

**Memorandum of Points and Authorities**                 *Jane Doe LSA 340 v. Uber Technologies, Inc.*
                                                          *3:23-cv-01165-AMO*

1   "mopping floors, cleaning rooms, or any of the other tasks that are required of a school custodian." *Id*. at

2   140 (emphasis added). And in *John R.*, a teacher's sexual abuse of a student was "simply too attenuated"

3   to the teacher's "instructional duties," so the school could not be vicariously liable for his misconduct.

4   48 Cal. 3d at 452. In the same way, a driver's alleged sexual assault of a rider is "in no way related to"

5   driving a rider from point A to point B. *Alma W.*, 123 Cal. App. 3d at 140.

6   The leading California Supreme Court case in this area of law, *Lisa M.*, is directly on point.

7   There, a pregnant patient was sexually assaulted by a hospital technician performing an ultrasound

8   examination in the defendant-hospital's ultrasound room. 12 Cal. 4th at 294-96. The Supreme Court

9   held, *as a matter of law*, that no vicarious liability could be imposed on the hospital because the

10  "technician simply took advantage of solitude with a naive patient to commit an assault for reasons

11  unrelated to his work." *Id*. at 301. That was the law even though, by working in a confined hospital

12  room alone with a patient, the technician was put in the position to commit the assault. The same, in

13  effect, is alleged here: the driver allegedly took advantage of his proximity to Plaintiff to commit assault

14  for reasons having nothing whatsoever to do with the job of driving Plaintiff. *See* Compl. at p. 35 (¶

15  156). As the Supreme Court held, that the "circumstances of the examination made [the assault]

16  possible" was not legally sufficient to impose vicarious liability: the technician's "motivating emotions

17  were not causally attributable to his employment." *Lisa M.*, 12 Cal. 4th at 301.

18  "Looking at the matter with [the] slightly different focus" of foreseeability "leads to the same

19  conclusion." *Id*. at 299, 301-03. The foreseeability question is whether the conduct alleged was an

20  ordinary part of the job—that is, that the sexual assault was "sure to occur in the conduct of the

21  employer's enterprise." *Id*. at 299. "The [foreseeability] question is not one of statistical frequency, but

22  of a relationship between the nature of the work involved and the type of tort committed." *Id*. at 302.

23  That the nature of work involves "solitude" and "access" to the plaintiff does not make a sexual assault

24  foreseeable—even in cases where the employee is authorized to physically touch a vulnerable plaintiff.

25  *Id*. at 303. Accordingly, the Supreme Court held that the technician's sexual assault in *Lisa M.* was "not

26  foreseeable from the nature of the work he was employed to perform" because he—like the driver in this

27  case—merely exploited the situation "to engage in conduct unrelated to his duties." *Id*. at 302-03.

28  If a hospital cannot be vicariously liable for a sexual assault carried out by an employee who was

6

---

**Memorandum of Points and Authorities**     *Jane Doe LSA 340 v. Uber Technologies, Inc.*
3:23-cv-01165-AMO

permitted to perform physical examinations on vulnerable patients alone in a confined space, then Uber certainly cannot be vicariously liable for a sexual assault carried out by an independent driver whose "job" was providing rides to users of the Uber App. According to the Complaint itself, the role of the drivers is merely "to pick up the customer and drive them to their destination." Compl. at p. 5 (¶ 3). Sexual assault, battery, and other intentional sexual torts motivated by "personal compulsion" are not alleged—nor could be alleged—to be part of that job description. Here, the driver allegedly engaged in "wrongful conduct [that] was so divorced from his duties and his work that, *as a matter of law*, it was outside the scope of his employment." *Debbie Reynolds*, 25 Cal. App. 4th at 227 (emphasis added).

That is why courts applying California law have dismissed similar vicarious liability claims against Uber.[5] In *Jane Doe v. Uber Techs., Inc.*, No. 19-cv-03310-JSC, 2019 WL 6251189 (N.D. Cal. Nov. 22, 2019), a plaintiff allegedly was attacked by a driver and claimed that Uber was vicariously liable for assault, battery, false imprisonment, and negligence. Applying *Lisa M.*, the court dismissed the vicarious liability claims at the pleading stage, holding that even "drawing all reasonable inferences in plaintiff's favor," the complaint failed to plausibly allege a claim because the driver's motivations for the alleged assault "were not an outgrowth of his workplace responsibilities, conditions or events." *Id.* at *4. The court found the vicarious liability claims to be even more legally infirm than those in *Lisa M.* because "the work duties" of a driver driving the plaintiff to her destination "do not involve any physical contact whatsoever," and the sexual "assault was the independent product of the assailant's aberrant decision to engage in conduct unrelated to his duties." *Id.* at *5.

---

[5] *See* Declaration of Paul A. Alarcon ("Alarcon Decl."), ¶ 3, Ex. A; RJN, ¶ 1 [*Jane Doe v. Uber Techs., Inc.*, No. 20STCV12243 (Cal. Super. Ct. L.A. Cnty. July 20 & 21, 2020)]; Alarcon Decl., ¶ 4, Ex. B; RJN, ¶ 2 [*Burmakova v. Uber Techs, Inc.*, No. 20STCV33948 (Cal. Super. Ct. L.A. Cnty. Oct. 22, 2021)]; Alarcon Decl., ¶ 5, Ex. C; RJN, ¶ 3 [*Jane Doe v. Uber Techs, Inc.*, No. 19STCV35444 (Cal. Super. Ct. L.A. Cnty. Jan. 29, 2021)]; Alarcon Decl., ¶ 6, Ex. D; RJN, ¶ 4 [*Flynn v. Bagumyan*, No. BC69997 (Cal. Super. Ct. L.A. Cnty. Oct. 25, 2018)]; Alarcon Decl., ¶ 7, Ex. E; RJN, ¶ 5 [*Cho v. McEwan*, No. BC697693 (Cal. Super. Ct. L.A. Cnty. Mar. 18, 2021)]; *see also Doe v. Uber Techs., Inc.*, No. 19-CV-03310-JSC, 2020 WL 2097599, at *1-2 (N.D. Cal. May 1, 2020); *Jane Doe v. Uber Techs., Inc.*, No. 19-cv-03310-JSC, 2019 WL 6251189, at *3-5 (N.D. Cal. Nov. 22, 2019). Courts elsewhere also have granted motions to dismiss vicarious liability claims against Uber based on alleged assaults by drivers. *See, e.g.*, *Phillips v. Uber Techs., Inc.*, 2017 WL 2782036, *5-7 (S.D.N.Y. June 14, 2017); *Karlen v. Uber Techs.*, 2020 WL 3704195, at *3-5 (D. Conn. Aug. 27, 2022); *Mazaheri v. Doe*, 2014 WL 2155049, *2 (W.D. Okla. May 22, 2014); Alarcon Decl., ¶ 8, Ex. F; RJN, ¶ 6 [*Minzer v. Barga*, 2020 WL 2621710, at *2 (N.Y. Sup. Ct. N.Y. Cnty. May 22, 2020)]; Alarcon Decl., ¶ 9, Ex. G; RJN, ¶ 7 [*Echevarria v. Uber Techs., Inc.*, No. 2021-002103-CA-01, at 1 (Fla. Cir. Ct. Miami-Dade Cnty. Apr. 21, 2021)]; Alarcon Decl., ¶ 10, Ex. H; RJN, ¶ 8 [*Owens v. Uber Techs., Inc.*, No. 20-13942, at 1 (Pa. Ct. C.P. Berks Cnty. Mar. 11, 2021)]; Alarcon Decl., ¶ 11, Ex. I; RJN, ¶ 9 [*Coughlin v. Uber Techs., Inc.*, No. 03083, at 1 (Pa. Ct. C.P. Philadelphia Cnty. June 12, 2020)]; Alarcon Decl., ¶ 12, Ex. J; RJN, ¶ 10 [*Robinson v. Uber USA, LLC*, No. 2022CP4000496, at 2-6 (S.C. Ct. C.P. Richmond Cnty. Nov. 30, 2022)].

7

---

Although she was granted leave to amend, the plaintiff simply could not offer allegations that would state a claim against Uber on a vicarious liability theory. *Doe*, 2020 WL 2097599, at *1-2. The plaintiff's argument "that the tort here was foreseeable because it is closely related to the nature of Uber's business and it arose directly out of the opportunities created by Uber's business operations" was foreclosed by *Lisa M.*'s ruling that a sexual tort cannot be considered engendered by the employee's job unless the motivating emotions were attributable to work-related events or conditions. *Id.* at *2 (citing *Lisa M.*, 12 Cal. 4th at 301). Following *Lisa M.*, the court further held that the allegation of a high rate of complaints of sexual assault by those using the Driver "does not support a reasonable inference that any such assault arises out of the business." *Id.* Rather, Uber at best only set the stage for the driver's misconduct, which simply does not provide a basis to impose vicarious liability for a sexual tort under California law. *Id.* (citing *Lisa M.*, 12 Cal. 4th at 306). The same reasoning requires dismissal here.

### 2.  Alleging Common Carrier Status Does Not Support Vicarious Liability

Plaintiff alleges that the scope of employment standard does not control here because Uber allegedly is a "common carrier." Uber is a technology company, not a common carrier, but it does not matter for this Motion: common carrier claims are negligence based, not some form of strict liability for the intentional torts committed by employees *outside the scope of their employment*.[6] To hold otherwise would contradict the decades of vicarious liability law discussed above. Moreover, it would nullify the statutory and judicial standards that govern common carriers.

Common carrier liability is based on a breach of a duty of care—that is, negligence. A heightened duty to be sure. But a breach of a duty of care nonetheless which, if proven, may result in direct liability for the carrier. Under the common carrier statute in California, "[a] carrier of persons for reward must use the *utmost care and diligence* for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a *reasonable degree of skill*." Cal. Code Civ. Proc. § 2100 (emphasis added). Thus, even if Uber was a common carrier (which it is not), the Supreme Court has

---

[6] Courts in other jurisdictions have rejected the argument that Uber and other transportation network companies are common carriers. *See Doe v. Lyft, Inc.*, 176 N.E.3d 863, 870-74 (Ill. App. Ct. 2020); *Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d 341, 353-61 (S.D.N.Y. 2021); Alarcon Decl., ¶ 13, Ex. K; RJN, ¶ 11 [*Porcasi v. Uber Techs., Inc.*, No. 719530/2020 (N.Y. Sup. Ct. Queens Cnty. Aug. 25, 2021)]; Alarcon Decl., ¶ 14, Ex. L; RJN, ¶ 12 [*Nyrkkanen v. Uber Techs., Inc.*, No. 200901485 (Utah Dist. Ct. Salt Lake Cnty. Aug. 9, 2022)]; Alarcon Decl., ¶ 15, Ex. M; RJN, ¶ 13 [*Strand v. Uber Techs., Inc.*, No. 19-CI-004701 (Ky. Cir. Ct. Jefferson Cnty. Nov. 29, 2022)].

---

*Jane Doe LSA 340 v. Uber Technologies, Inc.*
                                                                        *3:23-cv-01165-AMO*

1   held that such carriers "are not, however, insurers of their passengers' safety." *Lopez v. S. Cal. Rapid*
2   *Transit Dist.*, 40 Cal. 3d 780, 785 (1985); *see Gomez v. Supe. Ct.*, 35 Cal. 4th 1125, 1130 (2005).

3   Plaintiff's theory of common carrier vicarious liability would do indirectly what the law does not
4   permit directly: turn Uber into an insurer of rider safety absent a breach of duty and, in Plaintiff's words,
5   "regardless of whether [the drivers' torts] were committed within the course and scope of employment."
6   Compl. at p. 13 (¶ 43). The California common carrier statute does not provide, and the California
7   Supreme Court has never held, that common carriers can be strictly-vicariously liable for the tortious
8   conduct of employees regardless of the scope of employment. That is because the doctrinal basis of
9   vicarious liability, respondeat superior, is predicated on employee conduct that is within the scope of
10  employment. *See, e.g.*, *Maria D.*, 85 Cal. App. 4th 125 at 134. Plaintiff could try to prove that Uber is
11  *directly* liable for breaching the applicable duty of care (and if they establish common carrier, apply a
12  heightened duty of care to that analysis), but she cannot pursue a claim of vicarious liability absent (1) a
13  breach of duty and (2) a showing that the drivers acted within the scope of employment. *See* Alarcon
14  Decl., ¶ 16, Ex. N; RJN, ¶ 14 [*Jane Doe v. Uber Techs., Inc.*, No. 20STCV48919 (Cal. Super. Ct. L.A.
15  Cnty. June 16, 2021), at 4-6]. This is illustrated by the Complaint itself, which includes a separate cause
16  of action for common carrier negligence. *See* Compl. at pp. 39-41 (¶¶ 192-209). At most, the question of
17  whether Uber is a common carrier is a question of whether a heightened duty of care applies; it does not
18  create strict liability as an "insurer[] of their passengers' safety." *Lopez*, 40 Cal. 3d at 785.[7]

19  The 65-year-old decision of *Berger v. Southern Pacific Co.*, 144 Cal. App. 2d (1956), does not,
20  as Plaintiff likely will contend, save her vicarious liability claims. In the six-plus decades since it was
21  decided, *Berger* has never been cited by a single appellate court for the proposition that common carriers
22  are vicariously liable for the tortious conduct of employees outside the scope of their employment. That
23  is not surprising, as *Berger* makes no mention of vicarious liability or respondeat superior.

---

[7] The California Supreme Court has expressly avoided conflating vicarious liability with strict liability. *See Lisa M.*, 12 Cal.
4th at 302 ("To hold medical care providers strictly liable for deliberate sexual assaults by every employee whose duties
include examining or touching patients' otherwise private areas would be virtually to remove scope of employment as a
limitation on providers' vicarious liability."); *Farmers*, 11 Cal. 4th at 1004 ("[T]he law is clear that an employer is not
strictly liable for all actions of its employees during working hours."); *John R.*, 48 Cal. 3d at 451 ("Applying the doctrine of
respondeat superior to impose, in effect, strict liability in this context would be far too likely to deter districts from
encouraging, or even authorizing, extracurricular and/or one-on-one contacts between teachers and students or to induce
districts to impose such rigorous controls on activities of this nature that the educational process would be negatively
affected.").

9

To read *Berger* as creating an unexpressed and never-repeated exception to the principles of vicarious liability and respondeat superior would vitiate (1) the long-established rule that employers cannot be liable for their employees' torts unless they are within the scope of employment; (2) the California Supreme Court's repeated holding that common carriers are not insurers; and (3) the standard created by California Code of Civil Procedure section 2100 and the case law that common carriers are liable only for breaches of their duty of care.[8]

In a sexual assault case against Uber, one California court already has rejected reading *Berger* as holding that common carriers are vicariously liable for the tortious conduct of employees outside the scope of their employment. *See* Alarcon Decl., ¶ 16, Ex. N; RJN, ¶ 14 [*Jane Doe*, No. 20STCV48919, at 4-6]. The court held that to adopt the interpretation of *Berger* advanced by the plaintiff there "would absorb the rule of vicarious liability set forth in *Lisa M.* and other authorities." *Id*. at 6. Berger is relevant only to claims involving a common carrier's alleged negligence in "fail[ing] to take certain steps to protect its passengers." *Id*. at 5-6.[9] The court correctly concluded, therefore, that "the common carrier doctrine is not a vicarious liability doctrine [that] can support claims against Uber" for the alleged torts of its independent drivers. *Id*. at 6.

## B. Plaintiff's Fraud Based Claims Fail to Satisfy Rule 9(b)

Plaintiff asserts two fraud-based causes of action: Count Three – Negligent Misrepresentation and Count Four – Intentional Misrepresentation. Both claims are subject to Rule 9(b). *See Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 600 (N.D. Cal. 2022) ("Plaintiff has failed to state his misrepresentation and negligent misrepresentation claims with sufficient particularity because the complaint does not identify what false representations were made by each defendant."); *see also Teed v.*

---

[8] A pair of California Supreme Court cases decided three decades after *Berger* make clear that *Berger* stands for the proposition that common carrier liability is a form of direct liability for a common carrier's breach of its duty of care, not a species of strict or vicarious liability. *See Victoria v. Super. Ct.*, 40 Cal. 3d 734, 745 (1985); *Lopez*, 40 Cal. 3d at 785.

[9] Although Uber does not ask that it be resolved by way of this Motion, the allegation that Uber is a common carrier should not go unanswered. Uber is not a common carrier: that is, "one who offers to the public to carry persons, property, or messages, excepting only telegraphic messages." Code Civ. Proc. § 2168. The Uber App is available only to individual registered users who sign up privately for an account by inputting personal and financial information and agreeing to Uber's contractual terms and conditions. Uber can deactivate user accounts of riders at any time. The App can be used only for connecting independent drivers to independent riders. Riders and drivers may cancel suggested pairings freely until they find a match that suits their needs. Riders are never guaranteed transport because of the flexibility drivers have to reject rides at will, and its terms and conditions make this apparent. Uber does not own the vehicles used by any of the drivers who are in business for themselves, and any trip arranged with the App is not on a fixed route. Other courts, in assessing this issue, have found in Uber's favor. *See supra* note 6.

10

*Chen*, No. 22-CV-02862-CRB, 2023 WL 2277104, at *5 (N.D. Cal. Feb. 28, 2023).

Here, Plaintiff's fraud-based causes of action do not meet Rule 9(b)'s heightened pleading standard, which requires parties to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Under Rule 9(b), fraud must be plead with "specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). A motion to dismiss a fraud-based claim under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim, and dismissals under the two rules are treated in the same manner. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

The elements of intentional and negligent misrepresentation largely overlap: For an intentional misrepresentation claim, those elements are: (1) misrepresentation of fact, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage. *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 230-31 (2013). Negligent misrepresentation differs only in that it "does not require scienter or intent to defraud." *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173 (2003).

Here, the Complaint does not allege that any fraudulent activity was directed at Plaintiff. Nor does it allege whether Plaintiff: (a) saw which specific statement, (b) where or when she saw it specifically, or (c) how she actually and justifiably relied on any specific statement, or (d) how she was damaged as a result of that reliance. Vague and general misrepresentation claims are the antithesis of what the law requires to be pled. The Complaint makes only generic allegations on behalf of Plaintiff, such as "Uber represented to Plaintiff that it was true that the Uber App was safe to use and that Plaintiff would be safely taking Uber rides with drivers whose backgrounds had been properly screened by Uber, and that Uber would provide a safe experience." Compl. at p. 42 (¶ 222).

If Plaintiff cannot state when or where she saw supposedly misleading statements, or offer specific attribution, she cannot establish that she actually relied on them. Such general pleading is insufficient to satisfy the heightened standard for fraud. *See Vess*, 317 F. 3d at 1106 ("Averments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged.").

### 1.    The Complaint Fails to Adequately Allege Reliance

Plaintiff must plead facts specific to her supporting both actual reliance and justifiable reliance.

11

---

1   *See Wilhelm v. Pray, Price, William & Russell*, 186 Cal. App. 3d 1324, 1332 (1986). The Complaint

2   does not try to meet that pleading requirement. Under California law, a "plaintiff must allege actions, as

3   distinguished from unspoken and unrecorded thoughts and decisions, that would indicate that the

4   plaintiff actually relied on the misrepresentations." *Small v. Fritz Cos. Inc.*, 30 Cal. 4th 167, 184 (2003).

5   Actual reliance requires that the plaintiff saw or heard the purported misrepresentation, and that the

6   alleged misrepresentation "is an immediate cause of the plaintiff's conduct . . . [and] absent such

7   representation, the plaintiff would not, in all reasonable probability, have entered into the transaction"

8   that led to the injury. *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004).

9     Reliance is thus highly individualized and specific to Plaintiff. The "'mere assertion of 'reliance'

10  is insufficient.'" *McKinney v. Google, Inc.*, No. 5:10-CV-01177 EJD, 2011 WL 3862120, at *5 (N.D.

11  Cal. Aug. 30, 2011) (quoting *Cadlo*, 125 Cal. App. 4th at 519). Here, the Complaint offers only a mere

12  assertion of reliance that is unsupported by any specific factual allegation. *See* Compl. at p. 43 (¶ 227)

13  ("Plaintiff actually and reasonably relied on the representations made by Defendant Uber . . ."). The

14  Complaint's mere assertion of reliance by Plaintiff is insufficient. For the misrepresentation claims to

15  survive, the Complaint must allege specific facts, based on Plaintiff's individual experiences, supporting

16  that she saw or heard specific representations by Uber, and that those specific representations induced

17  her to arrange a ride through the Uber App. Indeed, the Complaint is unclear regarding whether Plaintiff

18  actually even used the Uber App. *Compare* Compl. at p. 43 (¶ 228) ("In getting into the Uber *ordered*

19  *for* Plaintiff. . .") (emphasis added); *with* Compl. at p. 35 (¶ 156) ("Plaintiff Jane Doe LSA 340 ordered

20  an Uber . . . ."). If she did not, she cannot plead reliance on Uber's statements, nor could such statements

21  possibly have been the "immediate cause" of her injuries.

22    The misrepresentation claims in the Complaint read like an editorial, not a cognizable pleading.

23  Plaintiff offers only a boilerplate conclusory allegation of reliance. Compl. at p. 43 (¶ 227). And while

24  Plaintiff lists multiple alleged representations by Uber—most of them undated—she does not allege

25  facts indicating whether she was aware of which specific representations, and whether she then "went

26  out and [entered an Uber ride]" after becoming so aware. *Cadlo*, 125 Cal. App. 4th 513.

27    The Complaint likewise fails to allege facts showing justifiable reliance—that is, that "(1) the

28  matter was material in the sense that a reasonable person would find it important in determining how he

<div align="center">12</div>

---

**Memorandum of Points and Authorities**       *Jane Doe LSA 340 v. Uber Technologies, Inc.*
                                  3:23-cv-01165-AMO

or she would act; and (2) it was reasonable for the plaintiff to have relied on the misrepresentation." *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1194 (2014) (citations omitted); *see Wilhelm*, 186 Cal. App. 3d at 1332; *Philipson & Simon v. Gulsvig*, 154 Cal. App. 4th 347, 363 (2007). Again, no specific facts establishing these elements are pled. Because the Complaint fails to allege the specific representations that Plaintiff allegedly relied on, it is impossible to determine whether any representation would be "material" to a reasonable person. The Complaint includes only generic assertions of justifiable reliance, stating that "[i]n getting into the Uber," Plaintiff reasonably relied on Uber's representations "that it would get them safely to their intended destination." Compl. at pp. 41-42 (¶ 216).[10] This type of conclusory assertion is insufficient and warrants dismissal. *See Cadlo*, 125 Cal. App. 4th at 519.

### 2. The Allegations of False Statements are Deficient

The Complaint also must allege "'the who, what, when, where, and how' of the misconduct charged.'" *Vess*, 317 F. 3d at 1106. As with reliance, the Complaint fails to allege with specificity the how, when, where, to whom, and by what method any specific misrepresentation was made. That pleading defect is especially problematic here because the Complaint alleges a laundry list of allegedly false statements, none of which is connected to Plaintiff and subject incident. The Complaint never alleges when, where, or by what means Plaintiff saw or heard each specific misrepresentation. That alone is fatal to her misrepresentation claims. *Davis v. Inmar, Inc.*, No. 21-CV-03779 SBA, 2022 WL 3722122, at *6 (N.D. Cal. Aug. 29, 2022) ("[A] complaint must allege the name of the person who made the fraudulent statement, their authority to speak, to whom they spoke, what was said or written, and when the communication occurred.") (citing, *inter alia, Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157-58 (1991)).[11]

In *Estate of Stella Yeh v. Uber Techs., Inc.*, CGC-20-584408, at 4 (Cal. Super. Ct. S.F. Cnty.

---

[10] Uber does not own any vehicles operated by independent drivers.

[11] *See also* Alarcon Decl., ¶ 8, Ex. F; RJN, ¶ 6 [*Minzer v. Barga*, No. 151979/2019, at 7, 2020 WL 2621710 at *3-4 (N.Y. Sup. Ct. N.Y. Cnty. May 22, 2020) (dismissing the plaintiff's claims for fraudulent and negligent misrepresentations because the plaintiff could not establish a causal nexus between Uber's alleged misrepresentations regarding passenger safety and the plaintiff's injuries)]; Alarcon Decl., ¶ 17, Ex. O; RJN, ¶ 15 [*Rodriguez v. Uber Techs., Inc.*, No. 2020-CA-1823 (Fla. Cir. Ct. Osceola Cnty. Aug. 9, 2021) (granting Uber's motion to dismiss Plaintiff's claim of fraud and misrepresentation)]; Alarcon Decl., ¶ 18, Ex. P; RJN, ¶ 16 [*Jane Doe v. Uber Techs., Inc.*, No. 801980/2022, at 2 (N.Y. Sup. Ct. Erie Cnty. Nov. 9, 2022) (granting Uber's motion to dismiss as to, *inter alia*, plaintiff's claims that Uber made material misrepresentations to riders regarding the safety of its services)].

13

Aug. 6, 2021), the court found that the plaintiff's failure to identify the "specific representations the [passenger] purportedly read or heard, when or where she read or heard them," and "which misrepresentations she purportedly relied upon" was fatal to her claims. *See* Alarcon Decl., ¶ 19, Ex. Q; RJN, ¶ 17. The same is true here. But the pleading failure here is even worse. Many of the alleged misrepresentations are not even actionable because they are not statements of fact, are expressions of opinion, or are aspirational or otherwise non-verifiable. *See, e.g.*, Compl. at p. 6 (¶ 7) ("[W]orking toward a world where a safe ride is always within reach and where drunk-driving is a thing of the past."). There can be no claim based on alleged misrepresentations that are not actionable: since there is no way to know from the Complaint which alleged misrepresentation Plaintiff saw, her misrepresentation claims must be dismissed.

### i.  *The Complaint Fails to Plead Falsity*

Further, "[t]he falsity of the representation must also be alleged with particularity." *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1001 (N.D. Cal. 2009); *Winn v. McCulloch Corp.*, 60 Cal. App. 3d 663, 670 (1976); *see also Redmond v. United States*, No. 22-CV-01107-TSH, 2022 WL 3137925, at *4 (N.D. Cal. June 13, 2022) ("The Final Complaint's fraud allegations fail to sufficiently plead, with particularity . . . Defendant's knowledge of falsity. . ."). "The preferred method of pleading falsity is to set forth the true facts, so that the legal conclusion of falsity will inevitably be drawn from the recital in the complaint of the representation made, followed by the averment of the contrasting truth." 5 Witkin Cal. Proc. § 721(b) (6th Ed. 2023).

The Complaint here includes a list of alleged misrepresentations, but without pleading—much less pleading with specificity—that those statements are false or how they are false. Not only does the Complaint fail to "set forth the true facts," it does not even allege that the representations are untrue. *Id.* The Complaint alleges, for example, that Uber made representations about the existence of "incident prevention tools" and "safety features built into the app," but does not allege that such tools do not exist, that Uber does not use them, or that safety features are not built into the App. Compl. at pp. 13-14 (¶ 49(b), (j)). So too with Uber's alleged representations about background checks. Nowhere does the Complaint allege that Uber does not use background checks to vet drivers, or otherwise "plead 'what is false or misleading'" about those background check statements. *Ahern v. Apple, Inc.*, 411 F. Supp. 3d

14

541, 559 (N.D. Cal. 2019) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F. 3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as recognized in Avakian v. Wells Fargo Bank, N.A.*, 827 F. App'x 765, 766 (9th Cir. 2020).

The Complaint alleges several representations without alleging that they are false, what makes them false, or setting forth the true facts. Examples include: "Every rider has access to safety features built into the app and a support team if you need them" and "How safety is built into your experience – An inclusive community – Millions of riders and drivers share a set of Community Guidelines, holding each other accountable to do the right thing." Compl. at pp. 13-14 (¶ 49(j), (h)). Plaintiff does not allege what is false about those statements. Thus, any misrepresentation claims based on representations that are not alleged to be false must be dismissed. *See Palmer v. Apple Inc.*, No. 5:15-CV-05808-RMW, 2016 WL 1535087, at *5 (N.D. Cal. Apr. 15, 2016).

## ii. *Opinion and Puffery are Non-Actionable*

The Complaint also alleges statements that are not falsifiable, and thus are not actionable. Alleged false statements must "pertain to past or existing material facts," *Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1469 (2014), and must be "amenable to general verification or falsification," *Ahern*, 411 F. Supp. 3d at 557. Statements of opinion "are not grounds for a misrepresentation cause of action." *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 835 (2002). Nor are "[s]tatements or predictions regarding future events." *Cansino*, 224 Cal. App. 4th at 626.

The Complaint alleges numerous such non-actionable statements by Uber, including: "[W]orking toward a world where a safe ride is always within reach and where drunk-driving is a thing of the past," "How we help keep you safe – We're committed to helping you get where you want to go with confidence," and "Through our joint efforts with cities and safety experts and by working together, we're helping to create safe journeys for everyone." Compl. at p. 6 (¶ 7), pp. 13-14 (¶ 49(a), (e)). Those statements do not concern "past or existing material facts." *Cansino*, 224 Cal. App. 4th at 1469. They describe non-actionable opinions and future goals. They use aspirational terms—for example, "committed to," "helping to," "working toward"—that are not subject to verification or falsification. *See Ahern*, 411 F. Supp. 3d at 557 (holding that representation that "everything is designed to work just the way you expect it to" is not subject to verification or falsification); *XYZ Two Way Radio Serv., Inc. v.*

15

1     *Uber Techs., Inc.*, 214 F. Supp. 3d 179, 184 (E.D.N.Y. 2016) ("Many of the statements are couched in

2     aspirational terms – 'committed to,' 'aim to,' 'believe deeply' – that cannot be proven true or false.").

3     And they refer to "safety" in vague and general terms, without promising any specific standard of safety

4     or guaranteeing absolute safety. *See Consumer Advocs. v. Echostar Satellite Corp.*, 113 Cal. App. 4th

5     1351, 1356 (2003) (representations are not actionable where they do not use a "term[] defined by the . . .

6     industry," or falsely "represent a specific quantifiable standard" had been met); *Smith v. LG Elecs.*

7     *U.S.A., Inc.*, No. C 13-4361 PJH, 2014 WL 989742, at *5 (N.D. Cal. Mar. 11, 2014) ("Vague statements

8     regarding reliability, dependability, and safety are not actionable express warranties."); *cf. Hauter v.*

9     *Zogarts*, 14 Cal. 3d at 104, 111-12 (1975) (holding that a company's promise that a golf ball is

10    "completely safe, that the ball will not hit the player . . . factually describes an important characteristic

11    of the product").[12] Plaintiff's fraud-based claims should be dismissed to the extent the claims are based

12    on non-actionable statements.

13         **C.**     **The Claim for Negligent Infliction of Emotional Distress is Duplicative**

14         California does not recognize a separate tort of negligent infliction of emotional distress

15    ("NIED"). Instead, NIED is regarded by California courts simply as the tort of negligence, and the

16    question of whether a plaintiff can recover damages for alleged NIED is dependent on establishing the

17    same elements as the claim for negligence. *See Klein v. Children's Hosp. Med. Ctr. of N. Cal.*, 46 Cal.

18    App. 4th 889, 894 (1996). Accordingly, any claim for emotional distress must be brought as part of the

19    negligence claims, which are based on the same factual circumstances and seek the same potential

20    recovery. *Compare* Compl. at pp. 36-39 (¶¶ 162-191), *with* Compl. at pp. 43-44 (¶¶ 233-239). Because

21    Count Five for NIED is duplicative of and subsumed by the negligence claims, it should be dismissed as

22    a matter of law. *See White v. Soc. Sec. Admin.*, 111 F. Supp. 3d 1041, 1054 (N.D. Cal. 2015) (dismissing

23    NIED claim "as duplicative of Plaintiffs' negligence claim"); Alarcon Decl., ¶ 6, Ex. D; RJN, ¶ 4 [*Flynn*

24    *v. Bagumyan*, No. BC69997 (Cal. Super. Ct. L.A. Cnty. Oct. 25, 2018) (sustaining demurrer as to NIED

25    claim against Uber because it was "duplicative" of the general negligence claim against Uber and it

26

27    _____

     [12] For this reason, courts have held that Uber marketing materials relating to safety—many of them involving the same statements alleged here—are non-actionable for fraud claims. The Texas Court of Appeals has held, for example, that safety-

28    related "statements in Uber marketing materials . . . involve mere opinion or puffery." *Am. Honda Motor Co. v. Milburn*, --- S.W.3d ----, 2021 WL 5504887, at *18 (Tex. App.—Dallas Nov. 24, 2021), *review granted* (June 2, 2023).

**Memorandum of Points and Authorities**            *Jane Doe LSA 340 v. Uber Technologies, Inc.*
                                                               *3:23-cv-01165-AMO*

1   "adds nothing to the complaint by way of fact or theory of recovery")].

2          **D.      The Complaint's Strict Product Liability Claims Fail as a Matter of Law**

3          Plaintiff's strict product liability claims fail as a matter of law because the Complaint fails to

4   meet the threshold requirement of pleading facts to establish that the Uber App is a "product." To the

5   contrary, the Complaint itself contends that the Uber App provides a service of connecting riders with

6   drivers. See, e.g., Compl. at p. 39 (¶ 194). And even if the Uber App were a product, this Motion must

7   be granted because the Complaint fails to identify a "defect" or adequately allege causation.

8                  **1.      The Uber App is Not a Product**

9          A manufacturer, distributor, or retailer of a ***product*** can be strictly liable in tort if a defect in the

10  product causes injury while the product is being used in a reasonably foreseeable way. *Soule v. GM*

11  *Corp.*, 8 Cal. 4th 548, 560 (1994) (internal citations omitted). Establishing that a "product" is at issue is

12  "a condition precedent to successfully maintain the action." *Brooks v. Eugene Burger Mgmt. Corp.*, 215

13  Cal. App. 3d 1611, 1626 (1989). Plaintiff must "show that the object or instrumentality claimed to be

14  defective was in fact a 'product' as defined or contemplated by the Restatement of Torts, legislation or

15  case law." *Id*. Notably, "[w]hether or not the subject object or instrumentality is a 'product' is a question

16  of law for the trial court" to decide. *Id*.

17         Here, the Complaint fails to allege that the Uber App is a "product" or "tangible personal

18  property distributed commercially for use or consumption." Restatement (Third) of Torts: Prod. Liab. §

19  19 (West Grp., March 2023 Update). Under the Restatement, "[s]ervices, even when provided

20  commercially, are not products[.]" *Id*. Given that most software is designed to provide a service, "the

21  proper answer holds that most software does not fall within the purview of product liability law under

22  this definition." Raymond T. Nimmer, Law of Comput. Tech. § 12:23.30 (West Grp., Feb. 2023

23  Update); *see also* Michael D. Scott, *Scott on Info. Tech. Law*, § 15.08 n.105 (CCH, 3rd ed. 2022-2

24  Supp.) (discussing lack of courts applying Third Restatement to software defects); Michael L. Rustad &

25  Thomas H. Koenig, *The Tort of Negligent Enablement of Cyberspace*, 20 Berkeley Tech. L.J. 1553,

26  1577 (2005) ("[I]t seems unlikely that the courts adopting the Restatement will be receptive to stretching

27  product liability concepts to software, digital information, and other intangibles.").

28         The California Legislature, for its part, explicitly recognizes Uber as a service as well. The

                                                    17

Legislature defines Transportation Network Companies ("TNCs"), of which Uber is one, as entities that "provide[] prearranged transportation *services* for compensation using an online-enabled application or platform to connect passengers with drivers using a personal vehicle." Cal. Pub. Util. Code § 5431(c) (emphasis added). And in establishing the regulatory framework for TNCs, the Legislature repeatedly describes TNCs as providing a service.[13]

Consistent with this understanding, no court assessing product liability claims under California law has held that the Uber App is a "product." To the contrary, courts across the state have consistently held that the Uber App is not a product. For example, the Los Angeles Superior Court held that the "Uber App is not a product." Alarcon Decl., ¶ 20, Ex. R; RJN, ¶ 18 [*Jane Doe No. 1 v. Uber Techs., Inc.*, No. 19STCV11874, at 11-13 (Cal. Super Ct. L.A. Cnty. Nov. 30, 2020), *aff'd on other grounds, Jane Doe No. 1 v. Uber Techs., Inc.*, 79 Cal. App. 5th 410 (2022)]. The court noted that, "There is no legislation or case law to support plaintiffs' position [that the Uber App is a product]." *Id*. at 12. Thus, the court turned to the Restatement of Torts, based on the guidance from the California Court of Appeal. *Id*. (citing *Brooks*, 215 Cal. App. 3d at 1626 (holding that the plaintiff must show that a "product" is at issue based on "the Restatement of Torts, legislation or case law")). Citing the Restatement, the court found that a "product" is typically "tangible personal property distributed commercially for use or consumption," that "[s]ervices, even when provided commercially, are not products," and that "[o]ther items, such as real property and electricity, are products when" they are "sufficiently analogous" to "tangible personal property[.]" *Id*. The court ruled that the Uber App does not fit these definitions of a product because it is not tangible, and is not akin to real property or electricity. *Id*.

Every California court that has tackled this issue likewise has rejected as a matter of law product liability claims against Uber premised on the theory that the Uber App is a product. *See* Alarcon Decl., ¶ 31, Ex. CC; RJN, ¶ 29 [*Ramos v. Uber Tech. Inc.*, No. 22STCV33007, at 3 (Cal. Super. Ct. L.A. Cnty. June 1, 2023) (analyzing the Restatement's definition of "product" and concluding "the distribution and

---

[13] *See, e.g., id.* at § 5440(a) ("The commission has initiated regulation of transportation network companies as a new category of charter-party carriers and continues to develop appropriate regulations for this new *service*.") (emphasis added); *id.* at § 5440(c) ("It is the intent of the Legislature that the commission initiate regulation of charter-party carriers in accordance with Section 5440.5 to ensure that transportation network company *services* do not discriminate against persons with disabilities[.]") (emphasis added); *id.* at § 5440(d) ("Technology application-based ride hailing services, such as those *services* provided by transportation network companies (TNC), have impacted the lives of many people by reducing transportation barriers that limited access to jobs, health care, and society.") (emphasis added).

18

use of the App is not "sufficiently analogous to the distribution and use of the tangible personal property") (cleaned up)]; Alarcon Decl., ¶ 21, Ex. S; RJN, ¶ 19 [*Lopez v. Uber Techs., Inc.,* No. 21CV376012 at 8 (Cal. Super. Ct. Santa Clara Cnty. Dec. 7, 2021) (sustaining demurrer to plaintiff's product liability-design defect claim as a matter of law because the "the primary objective of the Uber App is to facilitate and provide a service[,]" "[t]he use of the Uber App is incidental to the transportation service provided[,]" and the App "is merely a service rather than a product.")]; Alarcon Decl., ¶ 22, Ex. T; RJN, ¶ 20 [*Polanco v. Lyft, Inc.*, No. 30-2019-01065850 at 1 (Cal. Super. Ct. Orange Cnty. May 13, 2021) ("the Uber App does not fit within the definition of a 'product' since it is not a 'tangible good' or 'physical object.")]; Alarcon Decl., ¶ 23, Ex. U; RJN, ¶ 21 [*Toral v. Bazzi,* No. 20STCV02030, at 5-6 (Cal. Super. Ct. L.A. Cnty. Apr. 14, 2021) (sustaining Uber's demurrer to a complaint that alleged a "negligent design of systems," contending that the Uber App caused the driver to divert his attention away from the road because, because "the complaint fails to plead the Uber App is a product" and that "[o]ffering services . . . is not a product.")]; Alarcon Decl., ¶ 24, Ex. V; RJN, ¶ 22 [*Luna v. Uber Techs., Inc.,* No. 22STCV10806, at 4 (Cal. Super. Ct. L.A. Cnty. Sept. 27, 2022) (granting Uber's demurrer as to Plaintiff's products liability claim without leave to amend, finding the Uber App was not a product as a matter of law)]; Alarcon Decl., ¶ 25, Ex. W; RJN, ¶ 23 [*Shannon v. Uber Techs., Inc.*, No. 21STCV42029, at 4 (Cal. Super. Ct. L.A. Cnty. Apr. 15, 2022) (granting Uber's demurrer without leave to amend, finding as a matter of law the App is not a "product" but rather is a service and "the service aspect of the parties' transaction predominates, and the use of the Uber App . . . was merely incidental to the provision of Defendants' service.")]; Alarcon Decl., ¶ 26, Ex. X; RJN, ¶ 24 [*Flores v. Uber Techs., Inc.*, No. 19STCV24988, at 3-6 (Super. Ct. L.A. County Mar. 22, 2022) (finding as a matter of law that the Uber App is not a "product" for the purposes of product liability, but rather a service)]; Alarcon Decl., ¶ 27, Ex. Y; RJN, ¶ 25 [*Norman v. Uber Techs., Inc.*, No. 21STCV35632, at 4-5 (Super. Ct. L.A. County Mar. 8, 2022) (finding Uber could not be subject to strict products liability because its primary focus is to provide a service and not the distribution of the Uber App)].[14]

Moreover, courts applying California law have reached the same result in relation to similar

---

[14] *See also* Alarcon Decl., ¶ 29, Ex. AA; RJN, ¶ 27 [*Baumgartner v. Uber Techs., Inc.,* No. 21-2-15753-6 (Wash. Super. Ct. King Cnty. Mar. 9, 2022) (granting Uber's motion to dismiss Plaintiff's product liability claim because the App is a smartphone application intrinsic to the service provided by Uber, which is to connect riders and independent drivers)]

19

platforms. For example, in *Jackson v. Airbnb, Inc.*, --- F. Supp. 3rd ----, 2022 WL 16752071, at *10 (C.D. Cal. Nov. 4, 2022), plaintiffs brought a negligent design claim against defendant Airbnb, alleging "that the service or platform was negligently designed." The court dismissed the plaintiff's product liability claim after agreeing with Airbnb that "Airbnb is a 'marketplace' and not a product." *Id.* at *9. Contrasting Airbnb to "products" as defined in the Restatement (Third) of Torts, Product Liability, the court held that "Airbnb is a platform that connects users; it is more akin to a service than a product." *Id.* (citing *Jane Doe No. 1 v. Uber Technologies, Inc.,* 79 Cal. App. 5th 410, 419 (2022)).[15]

Courts have "not extended the doctrine of strict liability to transactions whose primary objective is obtaining services." *Ferrari v. Grand Canyon Dories*, 32 Cal. App. 4th 248, 258-59 (1995) (declining to impose liability on a raft trip company because defendants "provided a service") (citation omitted). To establish a claim for strict product liability, Plaintiff must plead and prove that "the transaction in which [Plaintiff] obtained the product was one in which the transaction's primary objective was to acquire ownership or use of a product, and *not one where the primary objective was to obtain a service*." *Hennigan v. White*, 199 Cal. App. 4th 395, 403 (2011) (emphasis added). Put another way, Plaintiff's strict liability claims fail because "[t]he essence of the transaction" between Uber and Plaintiff was not to provide a product, but a service—that is, matching independent drivers with riders. *Murphy v. E.R. Squibb & Sons, Inc.*, 40 Cal. 3d 672, 677 (1985) (citation omitted); *see also Pierson v. Sharp Mem'l Hosp., Inc.*, 216 Cal. App. 3d 340, 344 (1989) (applying liability only where the "essence of the transaction . . . relates to the article sold") (citation omitted); *Pena v. Sita World Travel, Inc.*, 88 Cal. App. 3d 642, 644-45 (1978) (in rejecting attempt to travel agencies strictly liable for injuries sustained during bus accident during a prepaid tour of Mexico, observing "Defendant travel agencies in selecting and coordinating transportation, accommodations, and meals for prospective travelers were clearly performing a service, and the fact that these arrangements were presented in the form of a 'package tour' does not change the nature of defendants' activities.").

Based on similar allegations as those alleged here, one court applying California law has held that "the Uber App was used to gain a service: a ride. Plaintiffs were not acquiring ownership in the car

---

[15] *See also* Alarcon Decl., ¶ 28, Ex. Z; RJN, ¶ 26 [*Jacobs v. Meta Platforms, Inc.*, No. 22CV005233, 2023 WL 2655586, at *4 (Cal. Super. Ct. Alameda Cnty. Mar. 10, 2023) ("as a social media platform that connects its users, Facebook is more akin to a service than a product")].

20

they reserved or going to use the car. They were being driven from one location to another by the person who owned the car. That is a service." Alarcon Decl., ¶ 20, Ex. R; RJN ¶ 18 [*Jane Doe No. 1*, No. 19STCV11874 at 12-13]; *see also Jackson*, 2022 WL 16752071, at *10 ("Airbnb is a platform that connects users; it is more akin to a service than a product."); Alarcon Decl., ¶ 31, Ex. CC; RJN, ¶ 29 [*Ramos*, No. 22STCV33007, at 2-5 (dismissing strict products liability cause of action because, inter alia, "[d]ownloading the [Uber] App is not akin to distributing personal property; instead, any interface with the App is incidental to Uber's service - rideshares")]; Alarcon Decl., ¶ 21, Ex. S; RJN ¶ 19 [*Lopez*, No. 21CV376012 at 8 (rejecting plaintiff's argument that Uber App is a product because "the primary objective of the Uber App is to facilitate and provide a service")]; Alarcon Decl., ¶ 22, Ex. T; RJN ¶ 20 [*Polanco*, No. 30-2019-01065850 at 2 (Alarcon Decl. Ex. 7) ("[T]he predominate purpose of the Uber App is the service of matching drivers with passengers[.]")]. The same rationale applies here and requires dismissal of Plaintiff's product liability claims, especially considering the Complaint alleges that the App provides a service. *See, e.g.*, Compl. at p. 13 (¶ 48), p. 39 (¶ 194).

The primary objective of Plaintiff's transaction(s) with Uber was to obtain the use of Uber's "services," not to compensate Uber for the purchase of the Uber App, which is free to download. *See Murphy*, 40 Cal. 3d at 677 (describing a sale as the "essence of the transaction" where the seller is paid for the product "and that alone") (citation omitted). Because the essence of Plaintiff's transaction(s) was to utilize a service, not to purchase a product, her strict product liability causes of action fail.

### 2. The Complaint Fails to Adequately Allege a Defect

Even if the Uber App were a product, Plaintiff's strict product liability claims fail because the Complaint does not sufficiently allege a defect. Under California law, a design defective may be established under two tests: "(1) the consumer expectations test, which asks whether the product performed as safely as an ordinary consumer would expect when used in an intended and reasonably foreseeable manner; or (2) the risk/benefit test, which asks whether the benefits of the challenged design outweigh the risk of danger inherent in the design." *Saller v. Crown Cork & Seal Co.*, 187 Cal. App. 4th 1220, 1231-32 (2010); *see also Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 435 (1978).

Here, the Complaint offers no factual allegations establishing that the design of the Uber App itself failed to perform safely or caused Plaintiff's injuries. To illustrate the point: Plaintiff does not

21

argue that the App failed to function as intended by the design of its software code—that is, for riders to connect with drivers. The Complaint does not allege, for instance, the App had a glitch or bug that impaired its functionality, or that the App froze or crashed due to some flaw in the design of the software. There is, in short, no allegation that the App itself did not function as expected or had an inherent and dangerous design flaw. Likewise, the Complaint does not allege that the design of the App itself, such as its coding sequences, is dangerous when used and therefore requires warnings.[16]

Rather, the Complaint alleges a rider is at risk of sexual assault because a rider cannot escape from the vehicle driver or control the place where the driver takes the rider. Compl. at p. 49 (¶ 229). These risks have nothing to do with the design of the App. In *Brooks*, 215 Cal. App. 3d 1611, the California Court of Appeal rejected a theory of product liability akin to Plaintiff's theory here. There, the plaintiff tried to convert a negligence theory into one for strict product liability even though there was no allegation of a defect in a product. The court declined to recognize the plaintiff's product liability claim, in part, because the plaintiff "merely designate[d] his fourth cause of action 'Products Liability' but found his argument in support thereof upon the theory of 'Premises Liability,'" which the plaintiff separately alleged, just as Plaintiff here separately alleges negligence. *Id.* at 1627. And the failure of the defendant to install fencing around a "complex of apartment dwellings, playground equipment and grounds" was not a cognizable product liability claim. *Id.*

In sum, repackaging and relabeling a negligence claim as product liability does not suffice to state a product liability claim. Likewise, making the "bare allegation" that the Uber App "suffered from a 'design defect'" is no more than "an insufficient legal conclusion." *Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1155 (E.D. Cal. 2010). And product liability cannot be used as a catch-all law to "impose absolute liability" on Uber, *O'Neil v. Crane Co.*, 53 Cal. 4th 335, 363 (2012) (citation omitted), or make Uber "the insurer of [] safety," *Daly v. General Motors Corp.*, 20 Cal. 3d 725, 733 (1978), absent an allegation that the App itself is defective in design and performance.

### 3. The Complaint Fails to Adequately Allege Causation

Finally, the Complaint does not plausibly allege causation with respect to the product liability

---

[16] A failure-to-warn claim must allege "that the product itself is unlawfully dangerous unless accompanied by sufficient warnings or instructions." *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 635 (2012).

22

claims. Under California law, a plaintiff must plead facts sufficient to show that the alleged defect was a legal cause of her alleged injury. *See O'Neil v. Crane Co.*, 53 Cal. 4th 335, 349 (2012); *State Dept. of State Hosps. v. Super. Ct.*, 61 Cal. 4th 339, 352 (2015). A plaintiff must first plead "cause in fact," sometimes referred to as "'but-for' causation." *State Hosps.*, 61 Cal. 4th at 352. To establish but-for causation, the plaintiff must plead and prove that it is "more likely than not that the conduct of the defendant was a cause in fact of [plaintiff's harm]." *See Viner v. Sweet*, 30 Cal. 4th 1232, 1243 (2003) (citation omitted); *Modisette v. Apple Inc.*, 30 Cal. App. 5th 136, 153 (2018). The second aspect of proximate cause "focuses on public policy considerations" that "limit an actor's responsibility for the consequences of his conduct." *State Hosps.*, 61 Cal. 4th at 353 (citation omitted).

Plaintiff must allege facts as to how her particular injury would not have occurred but for the alleged defect. With respect to the design defect claim, the Complaint does not even attempt to allege facts establishing a causal connection between any specific "defect" and Plaintiff's alleged injuries. For example, the Complaint alleges that the Uber App lacked a "GPS tracking system that would alert UBER" to certain events during a ride, or "automatic activation of the camera in drivers' smart phones when a ride is in progress." Compl. at pp. 48-49 (¶ 223). Yet not a single fact is alleged linking the alleged absence of those features to the alleged assault. *See* Compl. at p. 35 (¶ 156-161).

Accordingly, Plaintiff has not, and cannot, plead facts sufficient to show that any defect in the Uber App, or any conduct by Uber, caused her physical harm on an individualized basis. Instead, it is undisputed for purposes of this Motion that Plaintiff's alleged injuries stemmed from the actions of a driver who made an independent decision to commit a heinous sexual assault. *Id*. at ¶ 156 (alleging "the Uber driver" assaulted Plaintiff). Plaintiff has therefore failed to plead a claim for product liability based on design defect or failure to warn. *See, e.g., Modisette*, 30 Cal. App. 5th at 154 (holding plaintiffs could not recover on strict product liability claims against defendant Apple where the alleged defect was not the proximate cause of their injuries; rather, the driver caused the injuries "when he crashed into their car" after diverting his attention to use the FaceTime app).[17]

---

[17] *See also* Alarcon Decl., ¶ 30, Ex. BB; RJN, ¶ 28 [*Garcia v. Peninsula Int'l, Inc., et al.*, No. 19-CIV-06086 (Cal. Super. Ct. San Mateo Cnty. June 14, 2021) (citing *Modisette* and sustaining Uber's demurrer as to product liability because Plaintiff's allegations that the defendant-driver was "driving distracted due to use of an Uber App" did not constitute "a cause of action as there is no proximate cause of Plaintiff's injury from the Uber App itself.")].

23

---

**Memorandum of Points and Authorities**                    *Jane Doe LSA 340 v. Uber Technologies, Inc.*
                                                                        *3:23-cv-01165-AMO*

The Complaint also fails to plausibly allege proximate causation as to the strict product liability failure-to-warn claim. Plaintiff does not adequately plead that a warning would have prevented her alleged assault. For instance, there is no allegation that Plaintiff (1) had the Uber App on her phone and (2) used the App *herself* to order the ride at issue. The Complaint thus fails to allege that Plaintiff would have seen any warning issued through the App or otherwise directed to App users. Indeed, the Complaint is unclear regarding whether Plaintiff even used the App. *Compare* Compl. at p. 43 (¶ 228); *with* Compl. at p. 35 (¶ 156). Absent well-pled allegations that a warning would have been seen, let alone heeded, by Plaintiff, the Complaint's failure-to-warn claim fails.

### E. Plaintiff's Request for Punitive Damages Should be Dismissed

Plaintiff's request for punitive damages can—and should—be dismissed. *See Miller v. Schmitz*, No. 1:12-cv-00137-LJO, 2012 WL 1609193, at *12 (E.D. Cal. May 8, 2012) (recognizing a Rule 12(b)(6) motion as "an appropriate avenue for challenging a request for punitive damages.") (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010). California allows recovery of punitive damages only in limited situations. *Shin v. ICON Found.*, No. 20-cv-07363-WHO, 2021 WL 1893117, at *14 (N.D. Cal. May 11, 2021) ("In order to sustain a claim for punitive damages, a plaintiff must allege that the defendant has acted with 'oppression, fraud, or malice.'") (quoting *California Spine & Neurosurgery Inst. v. Aetna Life Ins. Co.*, No. CV 18-6829-DMG (KSX), 2019 WL 1878355, at *2 (C.D. Cal. Mar. 7, 2019) (quoting Cal. Civ. Code § 3294(a)).

Here, the Complaint lacks factual allegations establishing the conditions for imposing punitive damages against Uber. *Twombly*, 550 U.S. at 555. Rather, Plaintiff's allegations are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences" that the court need not accept as true. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). And because Plaintiff's misrepresentation claims must be dismissed, they cannot support a claim for punitive damages. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (dismissal can be warranted based on *either* a lack of a cognizable legal theory *or* the absence of factual support for a cognizable legal theory).

Moreover, Plaintiff's Complaint does not allege any facts establishing that an officer, director, or managing agent of Uber ordered, participated in, or ratified the accused driver's alleged assault of

24

1   Plaintiff, or was reckless in purportedly employing him,[18] which is fatal to her claim for punitive

2   damages. *See Taiwan Semiconductor Mfg. Co. v. Tela Innovations, Inc.*, No. 14-CV-00362-BLF, 2014

3   WL 3705350, at *6 (N.D. Cal. July 24, 2014) ("Under California punitive damages law, a company

4   simply cannot commit willful and malicious conduct—only an individual can. Plaintiff's failure, then, to

5   include the names or titles of any individual actor is a fatal defect in its pleading of willful and malicious

6   conduct.") (internal quotation marks omitted); *see also Rhynes v. Stryker Corp.*, No. 10-5619 SC, 2011

7   WL 2149095, at *6 (N.D. Cal. May 31, 2011) ("threadbare recitals of statutory elements are insufficient

8   to withstand a motion to dismiss" a claim for punitive damages).

9        Finally, an award of punitive damages is only permissible where the defendant's conduct

10  warranting punitive damages caused the plaintiff's injuries. *See Philip Morris USA v. Williams*, 549 U.S.

11  346, 355 (2007) ("a jury may not . . . use a punitive damages verdict to punish a defendant directly on

12  account of harms it is alleged to have visited on nonparties"); *Sumpter v. Matteson*, 158 Cal. App. 4th

13  928, 935, 4 (2008). Here, the Complaint is bereft of any factual allegations establishing that Uber's

14  purported misconduct had any causal connection to Plaintiff's alleged injuries. Many allegations are

15  inflammatory, but have nothing to do with Plaintiff's alleged assault. *See, e.g.*, Compl. at pp. 25-35 (¶¶

16  110-155). Therefore, Plaintiff's request for punitive damages must be dismissed. *See Crisanto v. Cnty.

17  of Tulare*, No. 115-cv-01527-LJO-BAM, 2015 WL 7188165, at *6-7 (E.D. Cal. Nov. 16, 2015)

18  (dismissing request for punitive damages where plaintiff "pleaded no facts" to support such relief).

19       **F.**    **Amendment Would Be Futile**

20       Because Plaintiff cannot allege facts beyond those asserted because no such facts exist,

21  amendment would be futile, and amendment should not be allowed. *See Cervantes v. Countrywide

22  Home Loans, Inc.*, 656 F.3d 1034, 1043 (9th Cir. 2011) (dismissal without leave to amend proper where

23  "leave to amend would be futile because the plaintiffs cannot state a plausible basis for relief").

24  **III.**   **CONCLUSION**

25       For the foregoing reasons, Uber's Motion should be granted without leave to amend.

26  ///

27  ///

28

---

[18] As discussed above, Uber denies that it employed the accused driver, but that issue need not be resolved at this stage.

**Memorandum of Points and Authorities**       *Jane Doe LSA 340 v. Uber Technologies, Inc.*
*3:23-cv-01165-AMO*

Dated: June 12, 2023

**BOWMAN AND BROOKE LLP**

By: *_/s/ Paul Alarcon_*
    Paul Alarcon (SBN: 275036)
    Samuel Q. Schleier (SBN: 312449)
    Colton F. Parks (SBN: 322491)
    970 West 190th Street, Suite 700
    Torrance, California 90502
    Tel: (310) 380-6595
    Attorneys for Uber Technologies, Inc.,
    Rasier, LLC, and Rasier-CA, LLC

**Memorandum of Points and Authorities**          *Jane Doe LSA 340 v. Uber Technologies, Inc.*
          *3:23-cv-01165-AMO*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2023, I electronically transmitted the foregoing **UBER TECHNOLOGIES INC., RASIER, LLC, AND RASIER-CA, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF JANE DOE LSA 340'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES** to the Clerk's Office using the CM/ECF System for filing thereby transmitting a Notice of *Electronic* Filing to all CM/ECF registrants such as the following:

William A. Levin, Esq.
Laurel L. Simes, Esq
LEVIN SIMES LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
wlevin@levinsimes.com
llsimes@levinsimes.com


_____ */s/ Louisa Beck* _____

**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: Uber Technologies, Inc.,<br>Passenger Sexual Assault Litigation | MDL Docket No. 3084 |

**DECLARATION OF ALEJANDRA O'CONNOR IN SUPPORT**
**OF UBER'S RESPONSE TO PLAINTIFFS' MOTION FOR TRANSFER**
**OF ACTIONS UNDER 28 U.S.C.   1407 FOR COORDINATED**
**OR CONSOLIDATED PRETRIAL PROCEEDINGS**

I, ALEJANDRA O'CONNOR, hereby declare and state:

1.      I am over 18 years of age, of sound mind, and capable of making this declaration. I have personal knowledge of the facts stated herein and could testify competently thereto if called as a witness.

2.      I am employed as a Lead Paralegal of Safety and Insurance for Uber Technologies, Inc. ("Uber"). I have been employed by Uber since December 2016.

3.      As part of my job at Uber, I am familiar with certain information regarding Uber's Terms of Use, Uber's App features including its safety features, and Uber's employees and offices - - as described in this declaration.

**Uber's App Features and Safety Technology**

4.      Uber is a technology company that connects riders to independent, third-party drivers through an innovative technology platform accessed through a software application available on smartphones. Uber does not perform any transportation services itself, but rather offers the Uber App as a tool to facilitate those services to occur upon request. The App is

Page 1 of 4

available to riders and independent drivers in markets across the United States.

5.     Uber's safety technologies have changed over time and by location. Uber also creates and introduces new safety features and programs. Many of Uber's technologies and programs have had different launch dates in different locations. Uber's continuously evolving safety features include: the in-app "Safety Toolkit," the GPS-based "RideCheck," Uber's incident response and investigation system, the in-app Text-to-911 feature, and the Uber Survivor Resources Hotline and Fund in partnership with RAINN. For example, the Safety Toolkit was first launched in April of 2018, and the Ride Verification (PIN) feature was first launched in December 2019. While the 911 integration feature was launched originally in April 2018, it was launched only in certain locations. In March 2019, the feature was launched throughout the United States and in some international markets, and in September 2019, the feature was expanded to include text message support in select US cities. It could not be rolled out in a unified way as local 911 entities needed to be able to support the technology feature on their end.

6.     The Uber App itself varies depending on the version of the App, the time frame that the App was used, and the user's smartphone device.

**Uber's Terms of Use**

7.     Before any user can create an account and request a ride with an independent driver on the Uber App, the user must assent to Uber's Terms of Use, which govern a rider's use of the Uber App. A user account cannot be created, and the App cannot be used to request a ride, unless the user has agreed to the Terms of Use. The Terms of Use establish a "contractual relationship" between Uber and each rider.

8.      Attached as Exhibit A is a copy of Uber's Terms of Use dated November 21, 2016.

9.      Attached as Exhibit B is a copy of Uber's Terms of Use dated March 23, 2017.

10.     Attached as Exhibit C is a copy of Uber's Terms of Use dated December 13. 2017.

11.     Attached as Exhibit D is a copy of Uber's Terms of Use dated November 12, 2019.

12.     Attached as Exhibit E is a copy of Uber's Terms of Use dated March 17, 2020.

13.     Attached as Exhibit F is a copy of Uber's Terms of Use dated July 15, 2020.

14.     Attached as Exhibit G is a copy of Uber's Terms of Use dated January 18, 2021.

15.     Attached as Exhibit H is a copy of Uber's Terms of Use dated April 14, 2021.

16.     Attached as Exhibit I is a copy of Uber's Terms of Use dated July 12, 2021.

17.     Attached as Exhibit J is a copy of Uber's Terms of Use dated December 16, 2021.

18.     Attached as Exhibit K is a copy of Uber's Terms of Use dated April 4, 2022.

19.     Attached as Exhibit L is a copy of Uber's Terms of Use dated August 16, 2022.

20.     Attached as Exhibit M is a copy of Uber's Terms of Use dated January 17, 2023.

21.     Attached as Exhibit N is a copy of Uber's Terms of Use dated June 14, 2023.

**Uber's Employees and Offices**

22.      Uber currently has 37 offices in the United States across 20 different states.

23.      Uber's Centers of Excellence are support centers that provide specialized support for critical incidents reported by Uber App users. All of Uber's Centers of Excellence are located outside of California.

24.      Uber's business practices not only vary from market-to-market, but also over time in a particular market, particularly as its footprint in a given market expands. In response to various city- or market-specific factors, Regional General Managers have discretion to hire additional personnel to assist in running the business. The job titles, duties, and quantity of these individuals may change over time, again, in response to growth or various city- or market-specific factors. As a result, the organizational footprint of Uber in any given city or market is subject to a significant degree of variation, both as compared to other cities or markets and as compared to other points in Uber's development.

25.      Uber's employee witnesses with knowledge of the specific conduct that may be pertinent to the specific and individualized facts of any given case are located in disparate geographic regions throughout the country, depending in part on where the incident allegedly occurred.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 18, 2023, in Chicago, Illinois.


*Alejandra O'Connor*
ALEJANDRA O'CONNOR

# EXHIBIT A

# Legal | Uber

**U.S. Terms of Use**

Effective: November 21, 2016

**1. Contractual Relationship**

These Terms of Use ("Terms") govern your access or use, from within the United States and its territories and possessions, of the applications, websites, content, products, and services (the "Services," as more fully defined below in Section 3) made available in the United States and its territories and possessions by Uber USA, LLC and its parents, subsidiaries, representatives, affiliates, officers and directors (collectively, "Uber"). PLEASE READ THESE TERMS CAREFULLY, AS THEY CONSTITUTE A LEGAL AGREEMENT BETWEEN YOU AND UBER. In these Terms, the words "including" and "include" mean "including, but not limited to."

By accessing or using the Services, you confirm your agreement to be bound by these Terms. If you do not agree to these Terms, you may not access or use the Services. These Terms expressly supersede prior agreements or arrangements with you. Uber may immediately terminate these Terms or any Services with respect to you, or generally cease offering or deny access to the Services or any portion thereof, at any time for any reason.

**IMPORTANT: PLEASE REVIEW THE ARBITRATION AGREEMENT SET FORTH BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH UBER ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION. BY ENTERING THIS AGREEMENT, YOU EXPRESSLY ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND ALL OF THE TERMS OF THIS AGREEMENT AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT DECISION.**

Supplemental terms may apply to certain Services, such as policies for a particular event, program, activity or promotion, and such supplemental terms will be disclosed to you in separate region-specific disclosures (e.g., a particular city webpage on Uber.com) or in connection with the applicable Service(s). Supplemental terms are in addition to, and shall be deemed a part of, the Terms for the purposes of the applicable Service(s). Supplemental terms shall prevail over these Terms in the event of a conflict with respect to the applicable Services.

Uber may amend the Terms from time to time. Amendments will be effective upon Uber's posting of such updated Terms at this location or in the amended policies or supplemental terms on the applicable Service(s). Your continued access or use of the Services after such posting confirms your consent to be bound by the Terms, as amended. If Uber changes these Terms after the date you first agreed to the Terms (or to any subsequent changes to these Terms), you may reject any such change by providing Uber written notice of such rejection within 30 days of the date such change became effective, as indicated in the "Effective" date above. This written notice must be provided either (a) by mail or hand delivery to our registered agent for service of process, c/o Uber USA, LLC (the name and current contact information for the registered agent in each state are available online here), or (b) by email from the email address associated with your Account to: change-dr@uber.com. In order to be effective, the notice must include your full name and clearly indicate your intent to reject changes to these Terms. By rejecting changes, you are agreeing that you will continue to be bound by the provisions of these Terms as of the date you first agreed to the Terms (or to any subsequent changes to these Terms).

Uber's collection and use of personal information in connection with the Services is described in Uber's Privacy Statements located at www.uber.com/legal/privacy.

## 2. Arbitration Agreement

**By agreeing to the Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration, as set forth in this Arbitration Agreement. This will preclude you from bringing any class, collective, or representative action against Uber, and also preclude you from participating in or recovering relief under any current or future class, collective, consolidated, or representative action brought against Uber by someone else.**

**Agreement to Binding Arbitration Between You and Uber.**

You and Uber agree that any dispute, claim or controversy arising out of or relating to (a) these Terms or the existence, breach, termination, enforcement, interpretation or validity thereof, or (b) your access to or use of the Services at any time, whether before or after the date you agreed to the Terms, will be settled by binding arbitration between you and Uber, and not in a court of law.

You acknowledge and agree that you and Uber are each waiving the right to a trial by jury or to participate as a plaintiff or class member in any purported class action or representative proceeding. Unless both you and Uber otherwise agree in writing, any arbitration will be conducted only on an individual basis and not in a class, collective, consolidated, or representative proceeding. However, you and Uber each retain the right to bring an individual action in small claims court and the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights.

**Rules and Governing Law.**

The arbitration will be administered by the American Arbitration Association ("AAA") in accordance with the AAA's Consumer Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the "AAA Rules") then in effect, except as modified by this Arbitration Agreement. The AAA Rules are available at www.adr.org/arb_med or by calling the AAA at 1-800-778-7879.

The parties agree that the arbitrator ("Arbitrator"), and not any federal, state, or local court or agency, shall have exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including any claim that all or any part of this Arbitration Agreement is void or voidable. The Arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether the Terms are unconscionable or illusory and any defense to arbitration, including waiver, delay, laches, or estoppel.

Notwithstanding any choice of law or other provision in the Terms, the parties agree and acknowledge that this Arbitration Agreement evidences a transaction involving interstate commerce and that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), will govern its interpretation and enforcement and proceedings pursuant thereto. It is the intent of the parties that the FAA and AAA Rules shall preempt all state laws to the fullest extent permitted by law. If the FAA and AAA Rules are found to not apply to any issue that arises under this Arbitration Agreement or the enforcement thereof, then that issue shall be resolved under the laws of the state of California.

**Process.**

A party who desires to initiate arbitration must provide the other party with a written Demand for Arbitration as specified in the AAA Rules. (The AAA provides a form Demand for Arbitration - Consumer Arbitration Rules at www.adr.org or by calling the AAA at 1-800-778-7879). The Arbitrator will be either (1) a retired judge or (2) an attorney specifically licensed to practice law in the state of California and will be selected by the parties from the AAA's roster of consumer dispute arbitrators. If the parties are unable to agree upon an Arbitrator within seven (7) days of delivery of the Demand for Arbitration, then the AAA will appoint the Arbitrator in accordance with the AAA Rules.

**Location and Procedure.**

Unless you and Uber otherwise agree, the arbitration will be conducted in the county where you reside. If your claim does not exceed $10,000, then the arbitration will be conducted solely on the basis of documents you and Uber submit to the Arbitrator, unless you request a hearing or the Arbitrator determines that a hearing is necessary. If your claim exceeds $10,000, your right to a hearing will be determined by the AAA Rules. Subject to the AAA Rules, the Arbitrator will have the discretion to direct a reasonable exchange of information by the parties, consistent with the expedited nature of the arbitration.

**Arbitrator's Decision.**

The Arbitrator will render an award within the time frame specified in the AAA Rules. Judgment on the arbitration award may be entered in any court having competent jurisdiction to do so. The Arbitrator may award declaratory or injunctive relief only in favor of the claimant and only to the extent necessary to provide relief warranted by the claimant's individual claim. An Arbitrator's decision shall be final and binding on all parties. An Arbitrator's decision and judgment thereon shall have no precedential or collateral estoppel effect. If you prevail in arbitration you will be entitled to an award of attorneys' fees and expenses, to the extent provided under applicable law. Uber will not seek, and hereby waives all rights Uber may have under applicable law to recover, attorneys' fees and expenses if Uber prevails in arbitration.

**Fees.**

Your responsibility to pay any AAA filing, administrative and arbitrator fees will be solely as set forth in the AAA Rules. However, if your claim for damages does not exceed $75,000, Uber will pay all such fees, unless the Arbitrator finds that either the substance of your claim or the relief sought in your Demand for Arbitration was frivolous or was brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)).

**Changes.**

Notwithstanding the provisions in Section I above, regarding consent to be bound by amendments to these Terms, if Uber changes this Arbitration Agreement after the date you first agreed to the Terms (or to any subsequent changes to the Terms), you may reject any such change by providing Uber written notice of such rejection within 30 days of the date such change became effective, as indicated in the "Effective" date above. This written notice must be provided either (a) by mail or hand delivery to our registered agent for service of process, c/o Uber USA, LLC (the name and current contact information for the registered agent in each state are available online here), or (b) by email from the email address associated with your Account to: change-dr@uber.com. In order to be

effective, the notice must include your full name and clearly indicate your intent to reject changes to this Arbitration Agreement. By rejecting changes, you are agreeing that you will arbitrate any dispute between you and Uber in accordance with the provisions of this Arbitration Agreement as of the date you first agreed to the Terms (or to any subsequent changes to the Terms).

**Severability and Survival.**

If any portion of this Arbitration Agreement is found to be unenforceable or unlawful for any reason, (1) the unenforceable or unlawful provision shall be severed from these Terms; (2) severance of the unenforceable or unlawful provision shall have no impact whatsoever on the remainder of the Arbitration Agreement or the parties' ability to compel arbitration of any remaining claims on an individual basis pursuant to the Arbitration Agreement; and (3) to the extent that any claims must therefore proceed on a class, collective, consolidated, or representative basis, such claims must be litigated in a civil court of competent jurisdiction and not in arbitration, and the parties agree that litigation of those claims shall be stayed pending the outcome of any individual claims in arbitration.

## 3. The Services

The Services comprise mobile applications and related services (each, an "Application"), which enable users to arrange and schedule transportation, logistics and/or delivery services and/or to purchase certain goods, including with third party providers of such services and goods under agreement with Uber or certain of Uber's affiliates ("Third Party Providers"). In certain instances the Services may also include an option to receive transportation, logistics and/or delivery services for an upfront price, subject to acceptance by the respective Third Party Providers. Unless otherwise agreed by Uber in a separate written agreement with you, the Services are made available solely for your personal, noncommercial use. YOU ACKNOWLEDGE THAT YOUR ABILITY TO OBTAIN TRANSPORTATION, LOGISTICS AND/OR DELIVERY SERVICES THROUGH THE USE OF THE SERVICES DOES NOT ESTABLISH UBER AS A PROVIDER OF TRANSPORTATION, LOGISTICS OR DELIVERY SERVICES OR AS A TRANSPORTATION CARRIER.

**License.**

Subject to your compliance with these Terms, Uber grants you a limited, non-exclusive, non-sublicensable, revocable, non-transferable license to: (i) access and use the Applications on your personal device solely in connection with your use of the Services; and (ii) access and use any content, information and related materials that may be made available through the Services, in each case solely for your personal, noncommercial use. Any rights not expressly granted herein are reserved by Uber and Uber's licensors.

**Restrictions.**

You may not: (i) remove any copyright, trademark or other proprietary notices from any portion of the Services; (ii) reproduce, modify, prepare derivative works based upon, distribute, license, lease, sell, resell, transfer, publicly display, publicly perform, transmit, stream, broadcast or otherwise exploit the Services except as expressly permitted by Uber; (iii) decompile, reverse engineer or disassemble the Services except as may be permitted by applicable law; (iv) link to, mirror or frame any portion of the Services; (v) cause or launch any programs or scripts for the purpose of scraping, indexing, surveying, or otherwise data mining any portion of the Services or unduly burdening or hindering the operation and/or functionality of any aspect of the Services; or (vi) attempt to gain unauthorized access to or impair any aspect of the Services or its related systems or networks.

**Provision of the Services.**

You acknowledge that portions of the Services may be made available under Uber's various brands or request options associated with transportation or logistics, including the transportation request brands currently referred to as "Uber," "uberX," "uberXL," "UberBLACK," "UberSELECT," "UberSUV" and "UberLUX" and the logistics request products currently referred to as "UberRUSH," and "UberEATS." You also acknowledge that the Services may be made available under such brands or request options by or in connection with: (i) certain of Uber's subsidiaries and affiliates; or (ii) independent Third Party Providers, including Transportation Network Company drivers, Transportation Charter Permit holders or holders of similar transportation permits, authorizations or licenses.

**Third Party Services and Content.**

The Services may be made available or accessed in connection with third party services and content (including advertising) that Uber does not control. You acknowledge that different terms of use and privacy policies may apply to your use of such third party services and content. Uber does not endorse such third party services and content and in no event shall Uber be responsible or liable for any products or services of such third party providers. Additionally, Apple Inc., Google, Inc., Microsoft Corporation or BlackBerry Limited will be a third-party beneficiary to this contract if you access the Services using Applications developed for Apple iOS, Android, Microsoft Windows, or Blackberry-powered mobile devices, respectively. These third party beneficiaries are not parties to this contract and are not responsible for the provision or support of the Services in any manner. Your access to the Services using these devices is subject to terms set forth in the applicable third party beneficiary's terms of service.

**Ownership.**

The Services and all rights therein are and shall remain Uber's property or the property of Uber's licensors. Neither these Terms nor your use of the Services convey or grant to you any rights: (i) in or related to the Services except for the limited license granted above; or (ii) to use or reference in any manner Uber's company names, logos, product and service names, trademarks or services marks or those of Uber's licensors.

## 4. Access and Use of the Services

**User Accounts.**

In order to use most aspects of the Services, you must register for and maintain an active personal user Services account ("Account"). You must be at least 18 years of age, or the age of legal majority in your jurisdiction (if different than 18), to obtain an Account. Account registration requires you to submit to Uber certain personal information, such as your name, address, mobile phone number and age, as well as at least one valid payment method supported by Uber. You agree to maintain accurate, complete, and up-to-date information in your Account. Your failure to maintain accurate, complete, and up-to-date Account information, including having an invalid or expired payment method on file, may result in your inability to access or use the Services. You are responsible for all activity that occurs under your Account, and you agree to maintain the security and secrecy of your Account username and password at all times. Unless otherwise permitted by Uber in writing, you may only possess one Account.

**User Requirements and Conduct.**

The Service is not available for use by persons under the age of 18. You may not authorize third parties to use

your Account, and you may not allow persons under the age of 18 to receive transportation or logistics services from Third Party Providers unless they are accompanied by you. You may not assign or otherwise transfer your Account to any other person or entity. You agree to comply with all applicable laws when accessing or using the Services, and you may only access or use the Services for lawful purposes (e.g., no transport of unlawful or hazardous materials). You may not in your access or use of the Services cause nuisance, annoyance, inconvenience, or property damage, whether to the Third Party Provider or any other party. In certain instances you may be asked to provide proof of identity to access or use the Services, and you agree that you may be denied access to or use of the Services if you refuse to provide proof of identity.

**Text Messaging and Telephone Calls.**

You agree that Uber may contact you by telephone or text messages (including by an automatic telephone dialing system) at any of the phone numbers provided by you or on your behalf in connection with an Uber account, including for marketing purposes. You understand that you are not required to provide this consent as a condition of purchasing any property, goods or services. You also understand that you may opt out of receiving text messages from Uber at any time, either by texting the word "STOP" to 89203 using the mobile device that is receiving the messages, or by contacting help.uber.com. If you do not choose to opt out, Uber may contact you as outlined in its User Privacy Statement, located at www.uber.com/legal/privacy.

**Referrals and Promotional Codes.**

Uber may, in its sole discretion, create referral and/or promotional codes ("Promo Codes") that may be redeemed for discounts on future Services and/or a Third Party Provider's services, or other features or benefits related to the Services and/or a Third Party Provider's services, subject to any additional terms that Uber establishes. You agree that Promo Codes: (i) must be used for the intended audience and purpose, and in a lawful manner; (ii) may not be duplicated, sold or transferred in any manner, or made available to the general public (whether posted to a public form or otherwise), unless expressly permitted by Uber; (iii) may be disabled by Uber at any time for any reason without liability to Uber; (iv) may only be used pursuant to the specific terms that Uber establishes for such Promo Code; (v) are not valid for cash; and (vi) may expire prior to your use. Uber reserves the right to withhold or deduct credits or other features or benefits obtained through the use of the referral system or Promo Codes by you or any other user in the event that Uber determines or believes that the use of the referral system or use or redemption of the Promo Code was in error, fraudulent, illegal, or otherwise in violation of Uber's Terms.

**User Provided Content.**

Uber may, in Uber's sole discretion, permit you from time to time to submit, upload, publish or otherwise make available to Uber through the Services textual, audio, and/or visual content and information, including commentary and feedback related to the Services, initiation of support requests, and submission of entries for competitions and promotions ("User Content"). Any User Content provided by you remains your property. However, by providing User Content to Uber, you grant Uber a worldwide, perpetual, irrevocable, transferable, royalty-free license, with the right to sublicense, to use, copy, modify, create derivative works of, distribute, publicly display, publicly perform, and otherwise exploit in any manner such User Content in all formats and distribution channels now known or hereafter devised (including in connection with the Services and Uber's business and on third-party sites and services), without further notice to or consent from you, and without the requirement of payment to you or any other person or entity.

APP307

You represent and warrant that: (i) you either are the sole and exclusive owner of all User Content or you have all rights, licenses, consents and releases necessary to grant Uber the license to the User Content as set forth above; and (ii) neither the User Content, nor your submission, uploading, publishing or otherwise making available of such User Content, nor Uber's use of the User Content as permitted herein will infringe, misappropriate or violate a third party's intellectual property or proprietary rights, or rights of publicity or privacy, or result in the violation of any applicable law or regulation.

You agree to not provide User Content that is defamatory, libelous, hateful, violent, obscene, pornographic, unlawful, or otherwise offensive, as determined by Uber in its sole discretion, whether or not such material may be protected by law. Uber may, but shall not be obligated to, review, monitor, or remove User Content, at Uber's sole discretion and at any time and for any reason, without notice to you.

**Network Access and Devices.**

You are responsible for obtaining the data network access necessary to use the Services. Your mobile network's data and messaging rates and fees may apply if you access or use the Services from your device. You are responsible for acquiring and updating compatible hardware or devices necessary to access and use the Services and Applications and any updates thereto. Uber does not guarantee that the Services, or any portion thereof, will function on any particular hardware or devices. In addition, the Services may be subject to malfunctions and delays inherent in the use of the Internet and electronic communications.

## 5. Payment

You understand that use of the Services may result in charges to you for the services or goods you receive ("Charges"). Uber will receive and/or enable your payment of the applicable Charges for services or goods obtained through your use of the Services. Charges will be inclusive of applicable taxes where required by law. Charges may include other applicable fees, tolls, and/or surcharges including a booking fee, municipal tolls, airport surcharges or processing fees for split payments. Please visit www.uber.com/cities for further information on your particular location.

All Charges and payments will be enabled by Uber using the preferred payment method designated in your Account, after which you will receive a receipt by email. If your primary Account payment method is determined to be expired, invalid or otherwise not able to be charged, you agree that Uber may use a secondary payment method in your Account, if available. Charges paid by you are final and non-refundable, unless otherwise determined by Uber.

As between you and Uber, Uber reserves the right to establish, remove and/or revise Charges for any or all services or goods obtained through the use of the Services at any time in Uber's sole discretion. Further, you acknowledge and agree that Charges applicable in certain geographical areas may increase substantially during times of high demand. Uber will use reasonable efforts to inform you of Charges that may apply, provided that you will be responsible for Charges incurred under your Account regardless of your awareness of such Charges or the amounts thereof. Uber may from time to time provide certain users with promotional offers and discounts that may result in different amounts charged for the same or similar services or goods obtained through the use of the Services, and you agree that such promotional offers and discounts, unless also made available to you, shall have no bearing on your use of the Services or the Charges applied to you. You may elect to cancel your request for

Services at any time prior to the commencement of such Services, in which case you may be charged a cancellation fee on a Third Party Provider's behalf. After you have received services or goods obtained through the Service, you will have the opportunity to rate your experience and leave additional feedback. Uber may use the proceeds of any Charges for any purpose, subject to any payment obligations it has agreed to with any Third Party Providers or other third parties.

In certain cases, with respect to Third Party Providers, Charges you incur will be owed directly to Third Party Providers, and Uber will collect payment of those charges from you, on the Third Party Provider's behalf as their limited payment collection agent, and payment of the Charges shall be considered the same as payment made directly by you to the Third Party Provider. In such cases, you retain the right to request lower Charges from a Third Party Provider for services or goods received by you from such Third Party Provider at the time you receive such services or goods, and Charges you incur will be owed to the Third Party Provider. Uber will respond accordingly to any request from a Third Party Provider to modify the Charges for a particular service or good. This payment structure is intended to fully compensate a Third Party Provider, if applicable, for the services or goods obtained in connection with your use of the Services. In all other cases, Charges you incur will be owed and paid directly to Uber or its affiliates, where Uber is solely liable for any obligations to Third Party Providers. In such cases, you retain the right to request lower Charges from Uber for services or goods received by you from a Third Party Provider at the time you receive such services or goods, and Uber will respond accordingly to any request from you to modify the Charges for a particular service or good. Except with respect to taxicab transportation services requested through the Application, Uber does not designate any portion of your payment as a tip or gratuity to a Third Party Provider. Any representation by Uber (on Uber's website, in the Application, or in Uber's marketing materials) to the effect that tipping is "voluntary," "not required," and/or "included" in the payments you make for services or goods provided is not intended to suggest that Uber provides any additional amounts, beyond those described above, to a Third Party Provider you may use. You understand and agree that, while you are free to provide additional payment as a gratuity to any Third Party Provider who provides you with services or goods obtained through the Service, you are under no obligation to do so. Gratuities are voluntary.

**Repair or Cleaning Fees.**

You shall be responsible for the cost of repair for damage to, or necessary cleaning of, vehicles and property resulting from use of the Services under your Account in excess of normal "wear and tear" damages and necessary cleaning ("Repair or Cleaning"). In the event that a Repair or Cleaning request is verified by Uber in Uber's reasonable discretion, Uber reserves the right to facilitate payment for the reasonable cost of such Repair or Cleaning using your payment method designated in your Account. Such amounts will be transferred by Uber to a Third Party Provider, if applicable, and are non-refundable.

**6. Disclaimers; Limitation of Liability; Indemnity.**

**DISCLAIMER.**

THE SERVICES ARE PROVIDED "AS IS" AND "AS AVAILABLE." UBER DISCLAIMS ALL REPRESENTATIONS AND WARRANTIES, EXPRESS, IMPLIED, OR STATUTORY, NOT EXPRESSLY SET OUT IN THESE TERMS, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. IN ADDITION, UBER MAKES NO REPRESENTATION, WARRANTY, OR GUARANTEE REGARDING THE RELIABILITY, TIMELINESS, QUALITY, SUITABILITY, OR AVAILABILITY OF

THE SERVICES OR ANY SERVICES OR GOODS REQUESTED THROUGH THE USE OF THE SERVICES, OR THAT THE SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE. UBER DOES NOT GUARANTEE THE QUALITY, SUITABILITY, SAFETY OR ABILITY OF THIRD PARTY PROVIDERS. YOU AGREE THAT THE ENTIRE RISK ARISING OUT OF YOUR USE OF THE SERVICES, AND ANY SERVICE OR GOOD REQUESTED IN CONNECTION THEREWITH, REMAINS SOLELY WITH YOU, TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW.

**LIMITATION OF LIABILITY.**

UBER SHALL NOT BE LIABLE FOR INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, PUNITIVE, OR CONSEQUENTIAL DAMAGES, INCLUDING LOST PROFITS, LOST DATA, PERSONAL INJURY, OR PROPERTY DAMAGE RELATED TO, IN CONNECTION WITH, OR OTHERWISE RESULTING FROM ANY USE OF THE SERVICES, REGARDLESS OF THE NEGLIGENCE (EITHER ACTIVE, AFFIRMATIVE, SOLE, OR CONCURRENT) OF UBER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

UBER SHALL NOT BE LIABLE FOR ANY DAMAGES, LIABILITY OR LOSSES ARISING OUT OF: (i) YOUR USE OF OR RELIANCE ON THE SERVICES OR YOUR INABILITY TO ACCESS OR USE THE SERVICES; OR (ii) ANY TRANSACTION OR RELATIONSHIP BETWEEN YOU AND ANY THIRD PARTY PROVIDER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. UBER SHALL NOT BE LIABLE FOR DELAY OR FAILURE IN PERFORMANCE RESULTING FROM CAUSES BEYOND UBER'S REASONABLE CONTROL. YOU ACKNOWLEDGE THAT THIRD PARTY PROVIDERS PROVIDING TRANSPORTATION SERVICES REQUESTED THROUGH SOME REQUEST PRODUCTS MAY OFFER RIDESHARING OR PEER-TO-PEER TRANSPORTATION SERVICES AND MAY NOT BE PROFESSIONALLY LICENSED OR PERMITTED.

THE SERVICES MAY BE USED BY YOU TO REQUEST AND SCHEDULE TRANSPORTATION, GOODS, OR LOGISTICS SERVICES WITH THIRD PARTY PROVIDERS, BUT YOU AGREE THAT UBER HAS NO RESPONSIBILITY OR LIABILITY TO YOU RELATED TO ANY TRANSPORTATION, GOODS OR LOGISTICS SERVICES PROVIDED TO YOU BY THIRD PARTY PROVIDERS OTHER THAN AS EXPRESSLY SET FORTH IN THESE TERMS.

THE LIMITATIONS AND DISCLAIMER IN THIS SECTION DO NOT PURPORT TO LIMIT LIABILITY OR ALTER YOUR RIGHTS AS A CONSUMER THAT CANNOT BE EXCLUDED UNDER APPLICABLE LAW. BECAUSE SOME STATES OR JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF OR THE LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, IN SUCH STATES OR JURISDICTIONS, UBER'S LIABILITY SHALL BE LIMITED TO THE EXTENT PERMITTED BY LAW. THIS PROVISION SHALL HAVE NO EFFECT ON UBER'S CHOICE OF LAW PROVISION SET FORTH BELOW.

**Indemnity.**

You agree to indemnify and hold Uber and its affiliates and their officers, directors, employees, and agents harmless from any and all claims, demands, losses, liabilities, and expenses (including attorneys' fees), arising out of or in connection with: (i) your use of the Services or services or goods obtained through your use of the Services; (ii) your breach or violation of any of these Terms; (iii) Uber's use of your User Content; or (iv) your violation of the rights of any third party, including Third Party Providers.

**7. Other Provisions**

**Choice of Law.**

These Terms are governed by and construed in accordance with the laws of the State of California, U.S.A., without giving effect to any conflict of law principles, except as may be otherwise provided in the Arbitration Agreement above or in supplemental terms applicable to your region. However, the choice of law provision regarding the interpretation of these Terms is not intended to create any other substantive right to non-Californians to assert claims under California law whether that be by statute, common law, or otherwise. These provisions, and except as otherwise provided in Section 2 of these Terms, are only intended to specify the use of California law to interpret these Terms and the forum for disputes asserting a breach of these Terms, and these provisions shall not be interpreted as generally extending California law to you if you do not otherwise reside in California. The foregoing choice of law and forum selection provisions do not apply to the arbitration clause in Section 2 or to any arbitrable disputes as defined therein. Instead, as described in Section 2, the Federal Arbitration Act shall apply to any such disputes.

**Claims of Copyright Infringement.**

Claims of copyright infringement should be sent to Uber's designated agent. Please visit Uber's web page at https://www.uber.com/legal/intellectual-property/copyright/global for the designated address and additional information.

**Notice.**

Uber may give notice by means of a general notice on the Services, electronic mail to your email address in your Account, telephone or text message to any phone number provided in connection with your account, or by written communication sent by first class mail or pre-paid post to any address connected with your Account. Such notice shall be deemed to have been given upon the expiration of 48 hours after mailing or posting (if sent by first class mail or pre-paid post) or 12 hours after sending (if sent by email or telephone). You may give notice to Uber, with such notice deemed given when received by Uber, at any time by first class mail or pre-paid post to our registered agent for service of process, c/o Uber USA, LLC. The name and current contact information for the registered agent in each state are available online here.

**General.**

You may not assign these Terms without Uber's prior written approval. Uber may assign these Terms without your consent to: (i) a subsidiary or affiliate; (ii) an acquirer of Uber's equity, business or assets; or (iii) a successor by merger. Any purported assignment in violation of this section shall be void. No joint venture, partnership, employment, or agency relationship exists between you, Uber or any Third Party Provider as a result of this Agreement or use of the Services. If any provision of these Terms is held to be invalid or unenforceable, such provision shall be struck and the remaining provisions shall be enforced to the fullest extent under law. Uber's failure to enforce any right or provision in these Terms shall not constitute a waiver of such right or provision unless acknowledged and agreed to by Uber in writing. This provision shall not affect the Severability and Survivability section of the Arbitration Agreement of these Terms.

# EXHIBIT B

Legal
U.S. Terms of Use

Effective: March 23, 2017

1. Contractual Relationship

These Terms of Use ("Terms") govern your access or use, from within the United States and its territories and possessions, of the applications, websites, content, products, and services (the "Services," as more fully defined below in Section 3) made available in the United States and its territories and possessions by Uber USA, LLC and its parents, subsidiaries, representatives, affiliates, officers and directors (collectively, "Uber"). PLEASE READ THESE TERMS CAREFULLY, AS THEY CONSTITUTE A LEGAL AGREEMENT BETWEEN YOU AND UBER. In these Terms, the words "including" and "include" mean "including, but not limited to."

By accessing or using the Services, you confirm your agreement to be bound by these Terms. If you do not agree to these Terms, you may not access or use the Services. These Terms expressly supersede prior agreements or arrangements with you. Uber may immediately terminate these Terms or any Services with respect to you, or generally cease offering or deny access to the Services or any portion thereof, at any time for any reason.

**IMPORTANT: PLEASE REVIEW THE ARBITRATION AGREEMENT SET FORTH BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH UBER ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION. BY ENTERING THIS AGREEMENT, YOU EXPRESSLY ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND ALL OF THE TERMS OF THIS AGREEMENT AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT DECISION.**

Supplemental terms may apply to certain Services, such as policies for a particular event, program, activity or promotion, and such supplemental terms will be disclosed to you in separate region-specific disclosures (e.g., a particular city webpage on Uber.com) or in connection with the applicable Service(s). Supplemental terms are in addition to, and shall be deemed a part of, the Terms for the purposes of the applicable Service(s). Supplemental terms shall prevail over these Terms in the event of a conflict with respect to the applicable Services.

Uber may amend the Terms from time to time. Amendments will be effective upon Uber's posting of such updated Terms at this location or in the amended policies or supplemental terms on the applicable Service(s). Your continued access or use of the Services after such posting confirms your consent to be bound by the Terms, as amended. If Uber changes these Terms after the date you first agreed to the Terms (or to any subsequent changes to these Terms), you may reject any such change by providing Uber written notice of such rejection within 30 days of the date such change became effective, as indicated in the "Effective" date above. This written notice must be provided either (a) by mail or hand delivery to our registered agent for service of process, c/o Uber USA, LLC (the name and current contact information for the registered agent

in each state are available online here), or (b) by email from the email address associated with your Account to: change-dr@uber.com. In order to be effective, the notice must include your full name and clearly indicate your intent to reject changes to these Terms. By rejecting changes, you are agreeing that you will continue to be bound by the provisions of these Terms as of the date you first agreed to the Terms (or to any subsequent changes to these Terms).

Uber's collection and use of personal information in connection with the Services is described in Uber's Privacy Statements located at www.uber.com/legal/privacy.

2. Arbitration Agreement

**By agreeing to the Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration, as set forth in this Arbitration Agreement. This will preclude you from bringing any class, collective, or representative action against Uber, and also preclude you from participating in or recovering relief under any current or future class, collective, consolidated, or representative action brought against Uber by someone else.**

Agreement to Binding Arbitration Between You and Uber.

You and Uber agree that any dispute, claim or controversy arising out of or relating to (a) these Terms or the existence, breach, termination, enforcement, interpretation or validity thereof, or (b) your access to or use of the Services at any time, whether before or after the date you agreed to the Terms, will be settled by binding arbitration between you and Uber, and not in a court of law.

You acknowledge and agree that you and Uber are each waiving the right to a trial by jury or to participate as a plaintiff or class member in any purported class action or representative proceeding. Unless both you and Uber otherwise agree in writing, any arbitration will be conducted only on an individual basis and not in a class, collective, consolidated, or representative proceeding. However, you and Uber each retain the right to bring an individual action in small claims court and the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights.

Rules and Governing Law.

The arbitration will be administered by the American Arbitration Association ("AAA") in accordance with the AAA's Consumer Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the "AAA Rules") then in effect, except as modified by this Arbitration Agreement. The AAA Rules are available at www.adr.org/arb_med or by calling the AAA at 1-800-778-7879.

The parties agree that the arbitrator ("Arbitrator"), and not any federal, state, or local court or agency, shall have exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including any claim that all or any part of this Arbitration Agreement is void or voidable. The Arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether

the Terms are unconscionable or illusory and any defense to arbitration, including waiver, delay, laches, or estoppel.

Notwithstanding any choice of law or other provision in the Terms, the parties agree and acknowledge that this Arbitration Agreement evidences a transaction involving interstate commerce and that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), will govern its interpretation and enforcement and proceedings pursuant thereto. It is the intent of the parties that the FAA and AAA Rules shall preempt all state laws to the fullest extent permitted by law. If the FAA and AAA Rules are found to not apply to any issue that arises under this Arbitration Agreement or the enforcement thereof, then that issue shall be resolved under the laws of the state of California.

Process.

A party who desires to initiate arbitration must provide the other party with a written Demand for Arbitration as specified in the AAA Rules. (The AAA provides a form Demand for Arbitration - Consumer Arbitration Rules at www.adr.org or by calling the AAA at 1-800-778-7879). The Arbitrator will be either (1) a retired judge or (2) an attorney specifically licensed to practice law in the state of California and will be selected by the parties from the AAA's roster of consumer dispute arbitrators. If the parties are unable to agree upon an Arbitrator within seven (7) days of delivery of the Demand for Arbitration, then the AAA will appoint the Arbitrator in accordance with the AAA Rules.

Location and Procedure.

Unless you and Uber otherwise agree, the arbitration will be conducted in the county where you reside. If your claim does not exceed $10,000, then the arbitration will be conducted solely on the basis of documents you and Uber submit to the Arbitrator, unless you request a hearing or the Arbitrator determines that a hearing is necessary. If your claim exceeds $10,000, your right to a hearing will be determined by the AAA Rules. Subject to the AAA Rules, the Arbitrator will have the discretion to direct a reasonable exchange of information by the parties, consistent with the expedited nature of the arbitration.

Arbitrator's Decision.

The Arbitrator will render an award within the time frame specified in the AAA Rules. Judgment on the arbitration award may be entered in any court having competent jurisdiction to do so. The Arbitrator may award declaratory or injunctive relief only in favor of the claimant and only to the extent necessary to provide relief warranted by the claimant's individual claim. An Arbitrator's decision shall be final and binding on all parties. An Arbitrator's decision and judgment thereon shall have no precedential or collateral estoppel effect. If you prevail in arbitration you will be entitled to an award of attorneys' fees and expenses, to the extent provided under applicable law. Uber will not seek, and hereby waives all rights Uber may have under applicable law to recover, attorneys' fees and expenses if Uber prevails in arbitration.

Fees.

Your responsibility to pay any AAA filing, administrative and arbitrator fees will be solely as set forth in the AAA Rules. However, if your claim for damages does not exceed $75,000, Uber will pay all such fees, unless the Arbitrator finds that either the substance of your claim or the relief sought in your Demand for Arbitration was frivolous or was brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)).

Changes.

Notwithstanding the provisions in Section I above, regarding consent to be bound by amendments to these Terms, if Uber changes this Arbitration Agreement after the date you first agreed to the Terms (or to any subsequent changes to the Terms), you may reject any such change by providing Uber written notice of such rejection within 30 days of the date such change became effective, as indicated in the "Effective" date above. This written notice must be provided either (a) by mail or hand delivery to our registered agent for service of process, c/o Uber USA, LLC (the name and current contact information for the registered agent in each state are available online here), or (b) by email from the email address associated with your Account to: change-dr@uber.com. In order to be effective, the notice must include your full name and clearly indicate your intent to reject changes to this Arbitration Agreement. By rejecting changes, you are agreeing that you will arbitrate any dispute between you and Uber in accordance with the provisions of this Arbitration Agreement as of the date you first agreed to the Terms (or to any subsequent changes to the Terms).

Severability and Survival.

If any portion of this Arbitration Agreement is found to be unenforceable or unlawful for any reason, (1) the unenforceable or unlawful provision shall be severed from these Terms; (2) severance of the unenforceable or unlawful provision shall have no impact whatsoever on the remainder of the Arbitration Agreement or the parties' ability to compel arbitration of any remaining claims on an individual basis pursuant to the Arbitration Agreement; and (3) to the extent that any claims must therefore proceed on a class, collective, consolidated, or representative basis, such claims must be litigated in a civil court of competent jurisdiction and not in arbitration, and the parties agree that litigation of those claims shall be stayed pending the outcome of any individual claims in arbitration.

## 3. The Services

The Services comprise mobile applications and related services (each, an "Application"), which enable users to arrange and schedule transportation, logistics and/or delivery services and/or to purchase certain goods, including with third party providers of such services and goods under agreement with Uber or certain of Uber's affiliates ("Third Party Providers"). In certain instances the Services may also include an option to receive transportation, logistics and/or delivery services for an upfront price, subject to acceptance by the respective Third Party Providers. Unless otherwise agreed by Uber in a separate written agreement with you, the Services are made available solely for your personal, noncommercial use. YOU ACKNOWLEDGE THAT YOUR ABILITY TO OBTAIN TRANSPORTATION, LOGISTICS AND/OR DELIVERY SERVICES THROUGH THE USE OF THE SERVICES DOES NOT ESTABLISH UBER AS A PROVIDER OF TRANSPORTATION, LOGISTICS OR DELIVERY SERVICES OR AS A TRANSPORTATION CARRIER.

License.

Subject to your compliance with these Terms, Uber grants you a limited, non-exclusive, non-sublicensable, revocable, non-transferable license to: (i) access and use the Applications on your personal device solely in connection with your use of the Services; and (ii) access and use any content, information and related materials that may be made available through the Services, in each case solely for your personal, noncommercial use. Any rights not expressly granted herein are reserved by Uber and Uber's licensors.

Restrictions.

You may not: (i) remove any copyright, trademark or other proprietary notices from any portion of the Services; (ii) reproduce, modify, prepare derivative works based upon, distribute, license, lease, sell, resell, transfer, publicly display, publicly perform, transmit, stream, broadcast or otherwise exploit the Services except as expressly permitted by Uber; (iii) decompile, reverse engineer or disassemble the Services except as may be permitted by applicable law; (iv) link to, mirror or frame any portion of the Services; (v) cause or launch any programs or scripts for the purpose of scraping, indexing, surveying, or otherwise data mining any portion of the Services or unduly burdening or hindering the operation and/or functionality of any aspect of the Services; or (vi) attempt to gain unauthorized access to or impair any aspect of the Services or its related systems or networks.

Provision of the Services.

You acknowledge that portions of the Services may be made available under Uber's various brands or request options associated with transportation or logistics, including the transportation request brands currently referred to as "Uber," "uberX," "uberXL," "UberBLACK," "UberSELECT," "UberSUV" and "UberLUX" and the logistics request products currently referred to as "UberRUSH," and "UberEATS." You also acknowledge that the Services may be made available under such brands or request options by or in connection with: (i) certain of Uber's subsidiaries and affiliates; or (ii) independent Third Party Providers, including Transportation Network Company drivers, Transportation Charter Permit holders or holders of similar transportation permits, authorizations or licenses.

Third Party Services and Content.

The Services may be made available or accessed in connection with third party services and content (including advertising) that Uber does not control. You acknowledge that different terms of use and privacy policies may apply to your use of such third party services and content. Uber does not endorse such third party services and content and in no event shall Uber be responsible or liable for any products or services of such third party providers. Additionally, Apple Inc., Google, Inc., Microsoft Corporation or BlackBerry Limited will be a third-party beneficiary to this contract if you access the Services using Applications developed for Apple iOS, Android, Microsoft Windows, or Blackberry-powered mobile devices, respectively. These third party beneficiaries are not parties to this contract and are not responsible for the provision or support of the Services in any manner. Your access to the Services using these devices is subject to terms set forth in the applicable third party beneficiary's terms of service.

Ownership.

The Services and all rights therein are and shall remain Uber's property or the property of Uber's licensors. Neither these Terms nor your use of the Services convey or grant to you any rights: (i) in or related to the Services except for the limited license granted above; or (ii) to use or reference in any manner Uber's company names, logos, product and service names, trademarks or services marks or those of Uber's licensors.

## 4. Access and Use of the Services

User Accounts.

In order to use most aspects of the Services, you must register for and maintain an active personal user Services account ("Account"). You must be at least 18 years of age, or the age of legal majority in your jurisdiction (if different than 18), to obtain an Account, unless a specific Service permits otherwise. Account registration requires you to submit to Uber certain personal information, such as your name, address, mobile phone number and age, as well as at least one valid payment method supported by Uber. You agree to maintain accurate, complete, and up-to-date information in your Account. Your failure to maintain accurate, complete, and up-to-date Account information, including having an invalid or expired payment method on file, may result in your inability to access or use the Services. You are responsible for all activity that occurs under your Account, and you agree to maintain the security and secrecy of your Account username and password at all times. Unless otherwise permitted by Uber in writing, you may only possess one Account.

User Requirements and Conduct.

The Service is not available for use by persons under the age of 18. You may not authorize third parties to use your Account, and you may not allow persons under the age of 18 to receive transportation or logistics services from Third Party Providers unless they are accompanied by you. You may not assign or otherwise transfer your Account to any other person or entity. You agree to comply with all applicable laws when accessing or using the Services, and you may only access or use the Services for lawful purposes (e.g., no transport of unlawful or hazardous materials). You may not in your access or use of the Services cause nuisance, annoyance, inconvenience, or property damage, whether to the Third Party Provider or any other party. In certain instances you may be asked to provide proof of identity to access or use the Services, and you agree that you may be denied access to or use of the Services if you refuse to provide proof of identity.

Text Messaging and Telephone Calls.

You agree that Uber may contact you by telephone or text messages (including by an automatic telephone dialing system) at any of the phone numbers provided by you or on your behalf in connection with an Uber account, including for marketing purposes. You understand that you are not required to provide this consent as a condition of purchasing any property, goods or services. You also understand that you may opt out of receiving text messages from Uber at any time, either by texting the word "STOP" to 89203 using the mobile device that is receiving the

messages, or by contacting help.uber.com. If you do not choose to opt out, Uber may contact you as outlined in its User Privacy Statement, located at www.uber.com/legal/privacy.

Referrals and Promotional Codes.

Uber may, in its sole discretion, create referral and/or promotional codes ("Promo Codes") that may be redeemed for discounts on future Services and/or a Third Party Provider's services, or other features or benefits related to the Services and/or a Third Party Provider's services, subject to any additional terms that Uber establishes. You agree that Promo Codes: (i) must be used for the intended audience and purpose, and in a lawful manner; (ii) may not be duplicated, sold or transferred in any manner, or made available to the general public (whether posted to a public form or otherwise), unless expressly permitted by Uber; (iii) may be disabled by Uber at any time for any reason without liability to Uber; (iv) may only be used pursuant to the specific terms that Uber establishes for such Promo Code; (v) are not valid for cash; and (vi) may expire prior to your use. Uber reserves the right to withhold or deduct credits or other features or benefits obtained through the use of the referral system or Promo Codes by you or any other user in the event that Uber determines or believes that the use of the referral system or use or redemption of the Promo Code was in error, fraudulent, illegal, or otherwise in violation of Uber's Terms.

User Provided Content.

Uber may, in Uber's sole discretion, permit you from time to time to submit, upload, publish or otherwise make available to Uber through the Services textual, audio, and/or visual content and information, including commentary and feedback related to the Services, initiation of support requests, and submission of entries for competitions and promotions ("User Content"). Any User Content provided by you remains your property. However, by providing User Content to Uber, you grant Uber a worldwide, perpetual, irrevocable, transferable, royalty-free license, with the right to sublicense, to use, copy, modify, create derivative works of, distribute, publicly display, publicly perform, and otherwise exploit in any manner such User Content in all formats and distribution channels now known or hereafter devised (including in connection with the Services and Uber's business and on third-party sites and services), without further notice to or consent from you, and without the requirement of payment to you or any other person or entity.

You represent and warrant that: (i) you either are the sole and exclusive owner of all User Content or you have all rights, licenses, consents and releases necessary to grant Uber the license to the User Content as set forth above; and (ii) neither the User Content, nor your submission, uploading, publishing or otherwise making available of such User Content, nor Uber's use of the User Content as permitted herein will infringe, misappropriate or violate a third party's intellectual property or proprietary rights, or rights of publicity or privacy, or result in the violation of any applicable law or regulation.

You agree to not provide User Content that is defamatory, libelous, hateful, violent, obscene, pornographic, unlawful, or otherwise offensive, as determined by Uber in its sole discretion, whether or not such material may be protected by law. Uber may, but shall not be obligated to, review, monitor, or remove User Content, at Uber's sole discretion and at any time and for any reason, without notice to you.

Network Access and Devices.

You are responsible for obtaining the data network access necessary to use the Services. Your mobile network's data and messaging rates and fees may apply if you access or use the Services from your device. You are responsible for acquiring and updating compatible hardware or devices necessary to access and use the Services and Applications and any updates thereto. Uber does not guarantee that the Services, or any portion thereof, will function on any particular hardware or devices. In addition, the Services may be subject to malfunctions and delays inherent in the use of the Internet and electronic communications.

5. Payment

You understand that use of the Services may result in charges to you for the services or goods you receive ("Charges"). Uber will receive and/or enable your payment of the applicable Charges for services or goods obtained through your use of the Services. Charges will be inclusive of applicable taxes where required by law. Charges may include other applicable fees, tolls, and/or surcharges including a booking fee, municipal tolls, airport surcharges or processing fees for split payments. Please visit www.uber.com/cities for further information on your particular location.

All Charges and payments will be enabled by Uber using the preferred payment method designated in your Account, after which you will receive a receipt by email. If your primary Account payment method is determined to be expired, invalid or otherwise not able to be charged, you agree that Uber may use a secondary payment method in your Account, if available. Charges paid by you are final and non-refundable, unless otherwise determined by Uber.

As between you and Uber, Uber reserves the right to establish, remove and/or revise Charges for any or all services or goods obtained through the use of the Services at any time in Uber's sole discretion. Further, you acknowledge and agree that Charges applicable in certain geographical areas may increase substantially during times of high demand. Uber will use reasonable efforts to inform you of Charges that may apply, provided that you will be responsible for Charges incurred under your Account regardless of your awareness of such Charges or the amounts thereof. Uber may from time to time provide certain users with promotional offers and discounts that may result in different amounts charged for the same or similar services or goods obtained through the use of the Services, and you agree that such promotional offers and discounts, unless also made available to you, shall have no bearing on your use of the Services or the Charges applied to you. You may elect to cancel your request for Services at any time prior to the commencement of such Services, in which case you may be charged a cancellation fee on a Third Party Provider's behalf. After you have received services or goods obtained through the Service, you will have the opportunity to rate your experience and leave additional feedback. Uber may use the proceeds of any Charges for any purpose, subject to any payment obligations it has agreed to with any Third Party Providers or other third parties.

In certain cases, with respect to Third Party Providers, Charges you incur will be owed directly to Third Party Providers, and Uber will collect payment of those charges from you, on the Third Party Provider's behalf as their limited payment collection agent, and payment of the Charges shall be considered the same as payment made directly by you to the Third Party Provider. In such cases, you retain the right to request lower Charges from a Third Party Provider for services

or goods received by you from such Third Party Provider at the time you receive such services or goods, and Charges you incur will be owed to the Third Party Provider. Uber will respond accordingly to any request from a Third Party Provider to modify the Charges for a particular service or good. This payment structure is intended to fully compensate a Third Party Provider, if applicable, for the services or goods obtained in connection with your use of the Services. In all other cases, Charges you incur will be owed and paid directly to Uber or its affiliates, where Uber is solely liable for any obligations to Third Party Providers. In such cases, you retain the right to request lower Charges from Uber for services or goods received by you from a Third Party Provider at the time you receive such services or goods, and Uber will respond accordingly to any request from you to modify the Charges for a particular service or good. Except with respect to taxicab transportation services requested through the Application, Uber does not designate any portion of your payment as a tip or gratuity to a Third Party Provider. Any representation by Uber (on Uber's website, in the Application, or in Uber's marketing materials) to the effect that tipping is "voluntary," "not required," and/or "included" in the payments you make for services or goods provided is not intended to suggest that Uber provides any additional amounts, beyond those described above, to a Third Party Provider you may use. You understand and agree that, while you are free to provide additional payment as a gratuity to any Third Party Provider who provides you with services or goods obtained through the Service, you are under no obligation to do so. Gratuities are voluntary.

Repair or Cleaning Fees.

You shall be responsible for the cost of repair for damage to, or necessary cleaning of, vehicles and property resulting from use of the Services under your Account in excess of normal "wear and tear" damages and necessary cleaning ("Repair or Cleaning"). In the event that a Repair or Cleaning request is verified by Uber in Uber's reasonable discretion, Uber reserves the right to facilitate payment for the reasonable cost of such Repair or Cleaning using your payment method designated in your Account. Such amounts will be transferred by Uber to a Third Party Provider, if applicable, and are non-refundable.

6. Disclaimers; Limitation of Liability; Indemnity.

DISCLAIMER.

THE SERVICES ARE PROVIDED "AS IS" AND "AS AVAILABLE." UBER DISCLAIMS ALL REPRESENTATIONS AND WARRANTIES, EXPRESS, IMPLIED, OR STATUTORY, NOT EXPRESSLY SET OUT IN THESE TERMS, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. IN ADDITION, UBER MAKES NO REPRESENTATION, WARRANTY, OR GUARANTEE REGARDING THE RELIABILITY, TIMELINESS, QUALITY, SUITABILITY, OR AVAILABILITY OF THE SERVICES OR ANY SERVICES OR GOODS REQUESTED THROUGH THE USE OF THE SERVICES, OR THAT THE SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE. UBER DOES NOT GUARANTEE THE QUALITY, SUITABILITY, SAFETY OR ABILITY OF THIRD PARTY PROVIDERS. YOU AGREE THAT THE ENTIRE RISK ARISING OUT OF YOUR USE OF THE SERVICES, AND ANY SERVICE OR GOOD REQUESTED IN CONNECTION

THEREWITH, REMAINS SOLELY WITH YOU, TO THE MAXIMUM EXTENT
PERMITTED UNDER APPLICABLE LAW.

LIMITATION OF LIABILITY.

UBER SHALL NOT BE LIABLE FOR INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY,
PUNITIVE, OR CONSEQUENTIAL DAMAGES, INCLUDING LOST PROFITS, LOST
DATA, PERSONAL INJURY, OR PROPERTY DAMAGE RELATED TO, IN CONNECTION
WITH, OR OTHERWISE RESULTING FROM ANY USE OF THE SERVICES,
REGARDLESS OF THE NEGLIGENCE (EITHER ACTIVE, AFFIRMATIVE, SOLE, OR
CONCURRENT) OF UBER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY
OF SUCH DAMAGES.

UBER SHALL NOT BE LIABLE FOR ANY DAMAGES, LIABILITY OR LOSSES ARISING
OUT OF: (i) YOUR USE OF OR RELIANCE ON THE SERVICES OR YOUR INABILITY
TO ACCESS OR USE THE SERVICES; OR (ii) ANY TRANSACTION OR RELATIONSHIP
BETWEEN YOU AND ANY THIRD PARTY PROVIDER, EVEN IF UBER HAS BEEN
ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. UBER SHALL NOT BE LIABLE
FOR DELAY OR FAILURE IN PERFORMANCE RESULTING FROM CAUSES BEYOND
UBER'S REASONABLE CONTROL. YOU ACKNOWLEDGE THAT THIRD PARTY
PROVIDERS PROVIDING TRANSPORTATION SERVICES REQUESTED THROUGH
SOME REQUEST PRODUCTS MAY OFFER RIDESHARING OR PEER-TO-PEER
TRANSPORTATION SERVICES AND MAY NOT BE PROFESSIONALLY LICENSED OR
PERMITTED.

THE SERVICES MAY BE USED BY YOU TO REQUEST AND SCHEDULE
TRANSPORTATION, GOODS, OR LOGISTICS SERVICES WITH THIRD PARTY
PROVIDERS, BUT YOU AGREE THAT UBER HAS NO RESPONSIBILITY OR LIABILITY
TO YOU RELATED TO ANY TRANSPORTATION, GOODS OR LOGISTICS SERVICES
PROVIDED TO YOU BY THIRD PARTY PROVIDERS OTHER THAN AS EXPRESSLY
SET FORTH IN THESE TERMS.

THE LIMITATIONS AND DISCLAIMER IN THIS SECTION DO NOT PURPORT TO
LIMIT LIABILITY OR ALTER YOUR RIGHTS AS A CONSUMER THAT CANNOT BE
EXCLUDED UNDER APPLICABLE LAW. BECAUSE SOME STATES OR
JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF OR THE LIMITATION OF
LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, IN SUCH STATES OR
JURISDICTIONS, UBER'S LIABILITY SHALL BE LIMITED TO THE EXTENT
PERMITTED BY LAW. THIS PROVISION SHALL HAVE NO EFFECT ON UBER'S
CHOICE OF LAW PROVISION SET FORTH BELOW.

Indemnity.

You agree to indemnify and hold Uber and its affiliates and their officers, directors, employees,
and agents harmless from any and all claims, demands, losses, liabilities, and expenses
(including attorneys' fees), arising out of or in connection with: (i) your use of the Services or
services or goods obtained through your use of the Services; (ii) your breach or violation of any

of these Terms; (iii) Uber's use of your User Content; or (iv) your violation of the rights of any third party, including Third Party Providers.

7. Other Provisions

Choice of Law.

These Terms are governed by and construed in accordance with the laws of the State of California, U.S.A., without giving effect to any conflict of law principles, except as may be otherwise provided in the Arbitration Agreement above or in supplemental terms applicable to your region. However, the choice of law provision regarding the interpretation of these Terms is not intended to create any other substantive right to non-Californians to assert claims under California law whether that be by statute, common law, or otherwise. These provisions, and except as otherwise provided in Section 2 of these Terms, are only intended to specify the use of California law to interpret these Terms and the forum for disputes asserting a breach of these Terms, and these provisions shall not be interpreted as generally extending California law to you if you do not otherwise reside in California. The foregoing choice of law and forum selection provisions do not apply to the arbitration clause in Section 2 or to any arbitrable disputes as defined therein. Instead, as described in Section 2, the Federal Arbitration Act shall apply to any such disputes.

Claims of Copyright Infringement.

Claims of copyright infringement should be sent to Uber's designated agent. Please visit Uber's web page at https://www.uber.com/legal/intellectual-property/copyright/global for the designated address and additional information.

Notice.

Uber may give notice by means of a general notice on the Services, electronic mail to your email address in your Account, telephone or text message to any phone number provided in connection with your account, or by written communication sent by first class mail or pre-paid post to any address connected with your Account. Such notice shall be deemed to have been given upon the expiration of 48 hours after mailing or posting (if sent by first class mail or pre-paid post) or 12 hours after sending (if sent by email or telephone). You may give notice to Uber, with such notice deemed given when received by Uber, at any time by first class mail or pre-paid post to our registered agent for service of process, c/o Uber USA, LLC. The name and current contact information for the registered agent in each state are available online here.

General.

You may not assign these Terms without Uber's prior written approval. Uber may assign these Terms without your consent to: (i) a subsidiary or affiliate; (ii) an acquirer of Uber's equity, business or assets; or (iii) a successor by merger. Any purported assignment in violation of this section shall be void. No joint venture, partnership, employment, or agency relationship exists between you, Uber or any Third Party Provider as a result of this Agreement or use of the Services. If any provision of these Terms is held to be invalid or unenforceable, such provision shall be struck and the remaining provisions shall be enforced to the fullest extent under law.

Uber's failure to enforce any right or provision in these Terms shall not constitute a waiver of such right or provision unless acknowledged and agreed to by Uber in writing. This provision shall not affect the Severability and Survivability section of the Arbitration Agreement of these Terms.

# EXHIBIT C

Legal
U.S. Terms of Use

Effective: December 13, 2017

## 1. Contractual Relationship

These Terms of Use ("Terms") govern your access or use, from within the United States and its territories and possessions, of the applications, websites, content, products, and services (the "Services," as more fully defined below in Section 3) made available in the United States and its territories and possessions by Uber USA, LLC and its parents, subsidiaries, representatives, affiliates, officers and directors (collectively, "Uber"). PLEASE READ THESE TERMS CAREFULLY, AS THEY CONSTITUTE A LEGAL AGREEMENT BETWEEN YOU AND UBER. In these Terms, the words "including" and "include" mean "including, but not limited to."

By accessing or using the Services, you confirm your agreement to be bound by these Terms. If you do not agree to these Terms, you may not access or use the Services. These Terms expressly supersede prior agreements or arrangements with you. Uber may immediately terminate these Terms or any Services with respect to you, or generally cease offering or deny access to the Services or any portion thereof, at any time for any reason.

**IMPORTANT: PLEASE REVIEW THE ARBITRATION AGREEMENT SET FORTH BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH UBER ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION. BY ENTERING THIS AGREEMENT, YOU EXPRESSLY ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND ALL OF THE TERMS OF THIS AGREEMENT AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT DECISION.**

Supplemental terms may apply to certain Services, such as policies for a particular event, program, activity or promotion, and such supplemental terms will be disclosed to you in separate region-specific disclosures (e.g., a particular city webpage on Uber.com) or in connection with the applicable Service(s). Supplemental terms are in addition to, and shall be deemed a part of, the Terms for the purposes of the applicable Service(s). Supplemental terms shall prevail over these Terms in the event of a conflict with respect to the applicable Services.

Uber may amend the Terms from time to time. Amendments will be effective upon Uber's posting of such updated Terms at this location or in the amended policies or supplemental terms on the applicable Service(s). Your continued access or use of the Services after such posting confirms your consent to be bound by the Terms, as amended. If Uber changes these Terms after the date you first agreed to the Terms (or to any subsequent changes to these Terms), you may reject any such change by providing Uber written notice of such rejection within 30 days of the date such change became effective, as indicated in the "Effective" date above. This written notice must be provided either (a) by mail or hand delivery to our registered agent for service of process, c/o Uber USA, LLC (the name and current contact information for the registered agent in each state are available online here), or (b) by email from the email address associated with your Account to: change-dr@uber.com. In order to be effective, the notice must include your full name and clearly indicate your intent to reject changes to these Terms. By rejecting changes, you are agreeing that you will continue to be bound by the provisions of these Terms as of the date you first agreed to the Terms (or to any subsequent changes to these Terms).

Uber's collection and use of personal information in connection with the Services is described in Uber's Privacy Statements located at www.uber.com/legal/privacy.

## 2. Arbitration Agreement

**By agreeing to the Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration, as set forth in this Arbitration Agreement. This will preclude you from bringing any class, collective, or representative action against Uber, and also preclude you from participating in or recovering relief under any current or future class, collective, consolidated, or representative action brought against Uber by someone else.**

Agreement to Binding Arbitration Between You and Uber.

You and Uber agree that any dispute, claim or controversy arising out of or relating to (a) these Terms or the existence, breach, termination, enforcement, interpretation or validity thereof, or (b) your access to or use of the Services at any time, whether before or after the date you agreed to the Terms, will be settled by binding arbitration between you and Uber, and not in a court of law.

You acknowledge and agree that you and Uber are each waiving the right to a trial by jury or to participate as a plaintiff or class member in any purported class action or representative proceeding. Unless both you and Uber otherwise agree in writing, any arbitration will be conducted only on an individual basis and not in a class, collective, consolidated, or representative proceeding. However, you and Uber each retain the right to bring an individual action in small claims court and the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights.

Rules and Governing Law.

The arbitration will be administered by the American Arbitration Association ("AAA") in accordance with the AAA's Consumer Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the "AAA Rules") then in effect, except as modified by this Arbitration Agreement. The AAA Rules are available at www.adr.org/arb_med or by calling the AAA at 1-800-778-7879.

The parties agree that the arbitrator ("Arbitrator"), and not any federal, state, or local court or agency, shall have exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including any claim that all or any part of this Arbitration Agreement is void or voidable. The Arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether the Terms are unconscionable or illusory and any defense to arbitration, including waiver, delay, laches, or estoppel.

Notwithstanding any choice of law or other provision in the Terms, the parties agree and acknowledge that this Arbitration Agreement evidences a transaction involving interstate commerce and that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), will govern its interpretation and enforcement and proceedings pursuant thereto. It is the intent of the parties that the FAA and AAA Rules shall preempt all state laws to the fullest extent permitted by law. If the FAA and AAA Rules are found to not apply to any issue that arises under this Arbitration Agreement or the enforcement thereof, then that issue shall be resolved under the laws of the state of California.

Process.

A party who desires to initiate arbitration must provide the other party with a written Demand for Arbitration as specified in the AAA Rules. (The AAA provides a form Demand for Arbitration - Consumer Arbitration Rules at www.adr.org or by calling the AAA at 1-800-778-7879). The Arbitrator will be either (1) a retired judge or (2) an attorney specifically licensed to practice law in the state of California and will be selected by the parties from the AAA's roster of consumer dispute arbitrators. If the parties are unable to agree upon an Arbitrator within seven (7) days of delivery of the Demand for Arbitration, then the AAA will appoint the Arbitrator in accordance with the AAA Rules.

Location and Procedure.

Unless you and Uber otherwise agree, the arbitration will be conducted in the county where you reside. If your claim does not exceed $10,000, then the arbitration will be conducted solely on the basis of documents you and Uber submit to the Arbitrator, unless you request a hearing or the Arbitrator determines that a hearing is necessary. If your claim exceeds $10,000, your right to a hearing will be determined by the AAA Rules. Subject to the AAA Rules, the Arbitrator will have the discretion to direct a reasonable exchange of information by the parties, consistent with the expedited nature of the arbitration.

Arbitrator's Decision.

The Arbitrator will render an award within the time frame specified in the AAA Rules. Judgment on the arbitration award may be entered in any court having competent jurisdiction to do so. The Arbitrator may award declaratory or injunctive relief only in favor of the claimant and only to the extent necessary to provide relief warranted by the claimant's individual claim. An Arbitrator's decision shall be final and binding on all parties. An Arbitrator's decision and judgment thereon shall have no precedential or collateral estoppel effect. If you prevail in arbitration you will be entitled to an award of attorneys' fees and expenses, to the extent provided under applicable law. Uber will not seek, and hereby waives all rights Uber may have under applicable law to recover, attorneys' fees and expenses if Uber prevails in arbitration.

Fees.

Your responsibility to pay any AAA filing, administrative and arbitrator fees will be solely as set forth in the AAA Rules. However, if your claim for damages does not exceed $75,000, Uber will pay all such fees, unless the Arbitrator finds that either the substance of your claim or the relief sought in your Demand for Arbitration was frivolous or was brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)).

Changes.

Notwithstanding the provisions in Section I above, regarding consent to be bound by amendments to these Terms, if Uber changes this Arbitration Agreement after the date you first agreed to the Terms (or to any subsequent changes to the Terms), you may reject any such change by providing Uber written notice of such rejection within 30 days of the date such change became effective, as indicated in the "Effective" date above. This written notice must be provided either (a) by mail or hand delivery to our registered agent for service of process, c/o Uber USA, LLC (the name and current contact information for the registered agent in each state are available online here), or (b) by email from the email address associated with your Account to: change-dr@uber.com. In order to be effective, the notice must include your full name and clearly indicate your intent to reject changes to this Arbitration Agreement. By rejecting changes, you are agreeing that you will arbitrate any

dispute between you and Uber in accordance with the provisions of this Arbitration Agreement as of the date you first agreed to the Terms (or to any subsequent changes to the Terms).

Severability and Survival.

If any portion of this Arbitration Agreement is found to be unenforceable or unlawful for any reason, (1) the unenforceable or unlawful provision shall be severed from these Terms; (2) severance of the unenforceable or unlawful provision shall have no impact whatsoever on the remainder of the Arbitration Agreement or the parties' ability to compel arbitration of any remaining claims on an individual basis pursuant to the Arbitration Agreement; and (3) to the extent that any claims must therefore proceed on a class, collective, consolidated, or representative basis, such claims must be litigated in a civil court of competent jurisdiction and not in arbitration, and the parties agree that litigation of those claims shall be stayed pending the outcome of any individual claims in arbitration.

## 3. The Services

The Services comprise mobile applications and related services (each, an "Application"), which enable users to arrange and schedule transportation, logistics and/or delivery services and/or to purchase certain goods, including with third party providers of such services and goods under agreement with Uber or certain of Uber's affiliates ("Third Party Providers"). In certain instances the Services may also include an option to receive transportation, logistics and/or delivery services for an upfront price, subject to acceptance by the respective Third Party Providers. Unless otherwise agreed by Uber in a separate written agreement with you, the Services are made available solely for your personal, noncommercial use. YOU ACKNOWLEDGE THAT YOUR ABILITY TO OBTAIN TRANSPORTATION, LOGISTICS AND/OR DELIVERY SERVICES THROUGH THE USE OF THE SERVICES DOES NOT ESTABLISH UBER AS A PROVIDER OF TRANSPORTATION, LOGISTICS OR DELIVERY SERVICES OR AS A TRANSPORTATION CARRIER.

License.

Subject to your compliance with these Terms, Uber grants you a limited, non-exclusive, non-sublicensable, revocable, non-transferable license to: (i) access and use the Applications on your personal device solely in connection with your use of the Services; and (ii) access and use any content, information and related materials that may be made available through the Services, in each case solely for your personal, noncommercial use. Any rights not expressly granted herein are reserved by Uber and Uber's licensors.

Restrictions.

You may not: (i) remove any copyright, trademark or other proprietary notices from any portion of the Services; (ii) reproduce, modify, prepare derivative works based upon, distribute, license, lease, sell, resell, transfer, publicly display, publicly perform, transmit, stream, broadcast or otherwise exploit the Services except as expressly permitted by Uber; (iii) decompile, reverse engineer or disassemble the Services except as may be permitted by applicable law; (iv) link to, mirror or frame any portion of the Services; (v) cause or launch any programs or scripts for the purpose of scraping, indexing, surveying, or otherwise data mining any portion of the Services or unduly burdening or hindering the operation and/or functionality of any aspect of the Services; or (vi) attempt to gain unauthorized access to or impair any aspect of the Services or its related systems or networks.

Provision of the Services.

You acknowledge that portions of the Services may be made available under Uber's various brands or request options associated with transportation or logistics, including the transportation request brands currently referred to as "Uber," "uberX," "uberXL," "UberBLACK," "UberSELECT," "UberSUV" and "UberLUX" and the logistics request products currently referred to as "UberRUSH," and "UberEATS." You also acknowledge that the Services may be made available under such brands or request options by or in connection with: (i) certain of Uber's subsidiaries and affiliates; or (ii) independent Third Party Providers, including Transportation Network Company drivers, Transportation Charter Permit holders or holders of similar transportation permits, authorizations or licenses.

Third Party Services and Content.

The Services may be made available or accessed in connection with third party services and content (including advertising) that Uber does not control. You acknowledge that different terms of use and privacy policies may apply to your use of such third party services and content. Uber does not endorse such third party services and content and in no event shall Uber be responsible or liable for any products or services of such third party providers. Additionally, Apple Inc., Google, Inc., Microsoft Corporation or BlackBerry Limited will be a third-party beneficiary to this contract if you access the Services using Applications developed for Apple iOS, Android, Microsoft Windows, or Blackberry-powered mobile devices, respectively. These third party beneficiaries are not parties to this contract and are not responsible for the provision or support of the Services in any manner. Your access to the Services using these devices is subject to terms set forth in the applicable third party beneficiary's terms of service.

Ownership.

The Services and all rights therein are and shall remain Uber's property or the property of Uber's licensors. Neither these Terms nor your use of the Services convey or grant to you any rights: (i) in or related to the Services except for the limited license granted above; or (ii) to use or reference in any manner Uber's company names, logos, product and service names, trademarks or services marks or those of Uber's licensors.

## 4. Access and Use of the Services

User Accounts.

In order to use most aspects of the Services, you must register for and maintain an active personal user Services account ("Account"). You must be at least 18 years of age, or the age of legal majority in your jurisdiction (if different than 18), to obtain an Account, unless a specific Service permits otherwise. Account registration requires you to submit to Uber certain personal information, such as your name, address, mobile phone number and age, as well as at least one valid payment method supported by Uber. You agree to maintain accurate, complete, and up-to-date information in your Account. Your failure to maintain accurate, complete, and up-to-date Account information, including having an invalid or expired payment method on file, may result in your inability to access or use the Services. You are responsible for all activity that occurs under your Account, and you agree to maintain the security and secrecy of your Account username and password at all times. Unless otherwise permitted by Uber in writing, you may only possess one Account.

User Requirements and Conduct.

The Service is not available for use by persons under the age of 18. You may not authorize third parties to use your Account, and you may not allow persons under the age of 18 to receive

transportation or logistics services from Third Party Providers unless they are accompanied by you. You may not assign or otherwise transfer your Account to any other person or entity. You agree to comply with all applicable laws when accessing or using the Services, and you may only access or use the Services for lawful purposes (e.g., no transport of unlawful or hazardous materials). You may not in your access or use of the Services cause nuisance, annoyance, inconvenience, or property damage, whether to the Third Party Provider or any other party. In certain instances you may be asked to provide proof of identity or other method of identity verification to access or use the Services, and you agree that you may be denied access to or use of the Services if you refuse to provide proof of identity or other method of identity verification.

Text Messaging and Telephone Calls.

You agree that Uber may contact you by telephone or text messages (including by an automatic telephone dialing system) at any of the phone numbers provided by you or on your behalf in connection with an Uber account, including for marketing purposes. You understand that you are not required to provide this consent as a condition of purchasing any property, goods or services. You also understand that you may opt out of receiving text messages from Uber at any time, either by texting the word "STOP" to 89203 using the mobile device that is receiving the messages, or by contacting help.uber.com. If you do not choose to opt out, Uber may contact you as outlined in its User Privacy Statement, located at www.uber.com/legal/privacy.

Referrals and Promotional Codes.

Uber may, in its sole discretion, create referral and/or promotional codes ("Promo Codes") that may be redeemed for discounts on future Services and/or a Third Party Provider's services, or other features or benefits related to the Services and/or a Third Party Provider's services, subject to any additional terms that Uber establishes. You agree that Promo Codes: (i) must be used for the intended audience and purpose, and in a lawful manner; (ii) may not be duplicated, sold or transferred in any manner, or made available to the general public (whether posted to a public form or otherwise), unless expressly permitted by Uber; (iii) may be disabled by Uber at any time for any reason without liability to Uber; (iv) may only be used pursuant to the specific terms that Uber establishes for such Promo Code; (v) are not valid for cash; and (vi) may expire prior to your use. Uber reserves the right to withhold or deduct credits or other features or benefits obtained through the use of the referral system or Promo Codes by you or any other user in the event that Uber determines or believes that the use of the referral system or use or redemption of the Promo Code was in error, fraudulent, illegal, or otherwise in violation of Uber's Terms.

User Provided Content.

Uber may, in Uber's sole discretion, permit you from time to time to submit, upload, publish or otherwise make available to Uber through the Services textual, audio, and/or visual content and information, including commentary and feedback related to the Services, initiation of support requests, and submission of entries for competitions and promotions ("User Content"). Any User Content provided by you remains your property. However, by providing User Content to Uber, you grant Uber a worldwide, perpetual, irrevocable, transferable, royalty-free license, with the right to sublicense, to use, copy, modify, create derivative works of, distribute, publicly display, publicly perform, and otherwise exploit in any manner such User Content in all formats and distribution channels now known or hereafter devised (including in connection with the Services and Uber's business and on third-party sites and services), without further notice to or consent from you, and without the requirement of payment to you or any other person or entity.

You represent and warrant that: (i) you either are the sole and exclusive owner of all User Content or you have all rights, licenses, consents and releases necessary to grant Uber the license to the User Content as set forth above; and (ii) neither the User Content, nor your submission, uploading, publishing or otherwise making available of such User Content, nor Uber's use of the User Content as permitted herein will infringe, misappropriate or violate a third party's intellectual property or proprietary rights, or rights of publicity or privacy, or result in the violation of any applicable law or regulation.

You agree to not provide User Content that is defamatory, libelous, hateful, violent, obscene, pornographic, unlawful, or otherwise offensive, as determined by Uber in its sole discretion, whether or not such material may be protected by law. Uber may, but shall not be obligated to, review, monitor, or remove User Content, at Uber's sole discretion and at any time and for any reason, without notice to you.

Network Access and Devices.

You are responsible for obtaining the data network access necessary to use the Services. Your mobile network's data and messaging rates and fees may apply if you access or use the Services from your device. You are responsible for acquiring and updating compatible hardware or devices necessary to access and use the Services and Applications and any updates thereto. Uber does not guarantee that the Services, or any portion thereof, will function on any particular hardware or devices. In addition, the Services may be subject to malfunctions and delays inherent in the use of the Internet and electronic communications.

## 5. Payment

You understand that use of the Services may result in charges to you for the services or goods you receive ("Charges"). Uber will receive and/or enable your payment of the applicable Charges for services or goods obtained through your use of the Services. Charges will be inclusive of applicable taxes where required by law. Charges may include other applicable fees, tolls, and/or surcharges including a booking fee, municipal tolls, airport surcharges or processing fees for split payments. Please visit www.uber.com/cities for further information on your particular location.

All Charges and payments will be enabled by Uber using the preferred payment method designated in your Account, after which you will receive a receipt by email. If your primary Account payment method is determined to be expired, invalid or otherwise not able to be charged, you agree that Uber may use a secondary payment method in your Account, if available. Charges paid by you are final and non-refundable, unless otherwise determined by Uber.

As between you and Uber, Uber reserves the right to establish, remove and/or revise Charges for any or all services or goods obtained through the use of the Services at any time in Uber's sole discretion. Further, you acknowledge and agree that Charges applicable in certain geographical areas may increase substantially during times of high demand. Uber will use reasonable efforts to inform you of Charges that may apply, provided that you will be responsible for Charges incurred under your Account regardless of your awareness of such Charges or the amounts thereof. Uber may from time to time provide certain users with promotional offers and discounts that may result in different amounts charged for the same or similar services or goods obtained through the use of the Services, and you agree that such promotional offers and discounts, unless also made available to you, shall have no bearing on your use of the Services or the Charges applied to you. You may elect to cancel your request for Services at any time prior to the commencement of such Services, in which case you may be charged a cancellation fee on a Third Party Provider's behalf. After you

have received services or goods obtained through the Service, you will have the opportunity to rate your experience and leave additional feedback. Uber may use the proceeds of any Charges for any purpose, subject to any payment obligations it has agreed to with any Third Party Providers or other third parties.

In certain cases, with respect to Third Party Providers, Charges you incur will be owed directly to Third Party Providers, and Uber will collect payment of those charges from you, on the Third Party Provider's behalf as their limited payment collection agent, and payment of the Charges shall be considered the same as payment made directly by you to the Third Party Provider. In such cases, you retain the right to request lower Charges from a Third Party Provider for services or goods received by you from such Third Party Provider at the time you receive such services or goods, and Charges you incur will be owed to the Third Party Provider. Uber will respond accordingly to any request from a Third Party Provider to modify the Charges for a particular service or good. This payment structure is intended to fully compensate a Third Party Provider, if applicable, for the services or goods obtained in connection with your use of the Services. In all other cases, Charges you incur will be owed and paid directly to Uber or its affiliates, where Uber is solely liable for any obligations to Third Party Providers. In such cases, you retain the right to request lower Charges from Uber for services or goods received by you from a Third Party Provider at the time you receive such services or goods, and Uber will respond accordingly to any request from you to modify the Charges for a particular service or good. Except with respect to taxicab transportation services requested through the Application, Uber does not designate any portion of your payment as a tip or gratuity to a Third Party Provider. Any representation by Uber (on Uber's website, in the Application, or in Uber's marketing materials) to the effect that tipping is "voluntary," "not required," and/or "included" in the payments you make for services or goods provided is not intended to suggest that Uber provides any additional amounts, beyond those described above, to a Third Party Provider you may use. You understand and agree that, while you are free to provide additional payment as a gratuity to any Third Party Provider who provides you with services or goods obtained through the Service, you are under no obligation to do so. Gratuities are voluntary.

Repair, Cleaning or Lost and Found Fees.

You shall be responsible for the cost of repair for damage to, or necessary cleaning of, vehicles and property resulting from use of the Services under your Account in excess of normal "wear and tear" damages and necessary cleaning ("Repair or Cleaning"). In the event that a Repair or Cleaning request is verified by Uber in Uber's reasonable discretion, Uber reserves the right to facilitate payment for the reasonable cost of such Repair or Cleaning using your payment method designated in your Account. Such amounts, as well as those pertaining to lost and found goods, will be transferred by Uber to a Third Party Provider, if applicable, and are non-refundable.

The amounts related to repair, cleaning or lost & found fees applicable in Puerto Rico may be found at https://www.uber.com/es-US/blog/puerto-rico/puerto-rico-terminos-y-condiciones/ and may be updated from time to time solely by Uber.

6. Disclaimers; Limitation of Liability; Indemnity.

DISCLAIMER.

THE SERVICES ARE PROVIDED "AS IS" AND "AS AVAILABLE." UBER DISCLAIMS ALL REPRESENTATIONS AND WARRANTIES, EXPRESS, IMPLIED, OR STATUTORY, NOT EXPRESSLY SET OUT IN THESE TERMS, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. IN

ADDITION, UBER MAKES NO REPRESENTATION, WARRANTY, OR GUARANTEE REGARDING THE RELIABILITY, TIMELINESS, QUALITY, SUITABILITY, OR AVAILABILITY OF THE SERVICES OR ANY SERVICES OR GOODS REQUESTED THROUGH THE USE OF THE SERVICES, OR THAT THE SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE. UBER DOES NOT GUARANTEE THE QUALITY, SUITABILITY, SAFETY OR ABILITY OF THIRD PARTY PROVIDERS. YOU AGREE THAT THE ENTIRE RISK ARISING OUT OF YOUR USE OF THE SERVICES, AND ANY SERVICE OR GOOD REQUESTED IN CONNECTION THEREWITH, REMAINS SOLELY WITH YOU, TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW.

LIMITATION OF LIABILITY.

UBER SHALL NOT BE LIABLE FOR INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, PUNITIVE, OR CONSEQUENTIAL DAMAGES, INCLUDING LOST PROFITS, LOST DATA, PERSONAL INJURY, OR PROPERTY DAMAGE RELATED TO, IN CONNECTION WITH, OR OTHERWISE RESULTING FROM ANY USE OF THE SERVICES, REGARDLESS OF THE NEGLIGENCE (EITHER ACTIVE, AFFIRMATIVE, SOLE, OR CONCURRENT) OF UBER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

UBER SHALL NOT BE LIABLE FOR ANY DAMAGES, LIABILITY OR LOSSES ARISING OUT OF: (i) YOUR USE OF OR RELIANCE ON THE SERVICES OR YOUR INABILITY TO ACCESS OR USE THE SERVICES; OR (ii) ANY TRANSACTION OR RELATIONSHIP BETWEEN YOU AND ANY THIRD PARTY PROVIDER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. UBER SHALL NOT BE LIABLE FOR DELAY OR FAILURE IN PERFORMANCE RESULTING FROM CAUSES BEYOND UBER'S REASONABLE CONTROL. YOU ACKNOWLEDGE THAT THIRD PARTY PROVIDERS PROVIDING TRANSPORTATION SERVICES REQUESTED THROUGH SOME REQUEST PRODUCTS MAY OFFER RIDESHARING OR PEER-TO-PEER TRANSPORTATION SERVICES AND MAY NOT BE PROFESSIONALLY LICENSED OR PERMITTED.

THE SERVICES MAY BE USED BY YOU TO REQUEST AND SCHEDULE TRANSPORTATION, GOODS, OR LOGISTICS SERVICES WITH THIRD PARTY PROVIDERS, BUT YOU AGREE THAT UBER HAS NO RESPONSIBILITY OR LIABILITY TO YOU RELATED TO ANY TRANSPORTATION, GOODS OR LOGISTICS SERVICES PROVIDED TO YOU BY THIRD PARTY PROVIDERS OTHER THAN AS EXPRESSLY SET FORTH IN THESE TERMS.

THE LIMITATIONS AND DISCLAIMER IN THIS SECTION DO NOT PURPORT TO LIMIT LIABILITY OR ALTER YOUR RIGHTS AS A CONSUMER THAT CANNOT BE EXCLUDED UNDER APPLICABLE LAW. BECAUSE SOME STATES OR JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF OR THE LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, IN SUCH STATES OR JURISDICTIONS, UBER'S LIABILITY SHALL BE LIMITED TO THE EXTENT PERMITTED BY LAW. THIS PROVISION SHALL HAVE NO EFFECT ON UBER'S CHOICE OF LAW PROVISION SET FORTH BELOW.

Indemnity.

You agree to indemnify and hold Uber and its affiliates and their officers, directors, employees, and agents harmless from any and all claims, demands, losses, liabilities, and expenses (including attorneys' fees), arising out of or in connection with: (i) your use of the Services or services or goods obtained through your use of the Services; (ii) your breach or violation of any of these Terms; (iii) Uber's use of your User Content; or (iv) your violation of the rights of any third party, including Third Party Providers.

7. Other Provisions

Choice of Law.

These Terms are governed by and construed in accordance with the laws of the State of California, U.S.A., without giving effect to any conflict of law principles, except as may be otherwise provided in the Arbitration Agreement above or in supplemental terms applicable to your region. However, the choice of law provision regarding the interpretation of these Terms is not intended to create any other substantive right to non-Californians to assert claims under California law whether that be by statute, common law, or otherwise. These provisions, and except as otherwise provided in Section 2 of these Terms, are only intended to specify the use of California law to interpret these Terms and the forum for disputes asserting a breach of these Terms, and these provisions shall not be interpreted as generally extending California law to you if you do not otherwise reside in California. The foregoing choice of law and forum selection provisions do not apply to the arbitration clause in Section 2 or to any arbitrable disputes as defined therein. Instead, as described in Section 2, the Federal Arbitration Act shall apply to any such disputes.

Claims of Copyright Infringement.

Claims of copyright infringement should be sent to Uber's designated agent. Please visit Uber's web page at https://www.uber.com/legal/intellectual-property/copyright/global for the designated address and additional information.

Notice.

Uber may give notice by means of a general notice on the Services, electronic mail to your email address in your Account, telephone or text message to any phone number provided in connection with your account, or by written communication sent by first class mail or pre-paid post to any address connected with your Account. Such notice shall be deemed to have been given upon the expiration of 48 hours after mailing or posting (if sent by first class mail or pre-paid post) or 12 hours after sending (if sent by email or telephone). You may give notice to Uber, with such notice deemed given when received by Uber, at any time by first class mail or pre-paid post to our registered agent for service of process, c/o Uber USA, LLC. The name and current contact information for the registered agent in each state are available online here.

General.

You may not assign these Terms without Uber's prior written approval. Uber may assign these Terms without your consent to: (i) a subsidiary or affiliate; (ii) an acquirer of Uber's equity, business or assets; or (iii) a successor by merger. Any purported assignment in violation of this section shall be void. No joint venture, partnership, employment, or agency relationship exists between you, Uber or any Third Party Provider as a result of this Agreement or use of the Services. If any provision of these Terms is held to be invalid or unenforceable, such provision shall be struck and the remaining provisions shall be enforced to the fullest extent under law. Uber's failure to enforce any right or provision in these Terms shall not constitute a waiver of such right or provision unless acknowledged and agreed to by Uber in writing. This provision shall not affect the Severability and Survivability section of the Arbitration Agreement of these Terms.

# EXHIBIT D

Uber   Drive   Ride   Business   More                    Log in    Sign up

United States          ▾

Legal

# U.S. Terms of Use

Effective: November 12, 2019

**1. Contractual Relationship**

These Terms of Use ("Terms") govern your access or use, from within the United States and
its territories and possessions, of the applications, websites, content, products, and services
(the "Services," as more fully defined below in Section 3) made available in the United States
and its territories and possessions by Uber USA, LLC and its parents, subsidiaries,
representatives, affiliates, officers and directors (collectively, "Uber"). PLEASE READ THESE
TERMS CAREFULLY, AS THEY CONSTITUTE A LEGAL AGREEMENT BETWEEN YOU AND
UBER. In these Terms, the words "including" and "include" mean "including, but not limited
to."

By accessing or using the Services, you confirm your agreement to be bound by these
Terms. If you do not agree to these Terms, you may not access or use the Services. These
Terms expressly supersede prior agreements or arrangements with you. Uber may
immediately terminate these Terms or any Services with respect to you, or generally cease
offering or deny access to the Services or any portion thereof, at any time for any reason.

**IMPORTANT: PLEASE REVIEW THE ARBITRATION AGREEMENT SET FORTH BELOW
CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH UBER ON AN
INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION. BY ENTERING THIS
AGREEMENT, YOU EXPRESSLY ACKNOWLEDGE THAT YOU HAVE READ AND
UNDERSTAND ALL OF THE TERMS OF THIS AGREEMENT AND HAVE TAKEN TIME TO
CONSIDER THE CONSEQUENCES OF THIS IMPORTANT DECISION.**

Supplemental terms may apply to certain Services, such as policies for a particular event,
program, activity or promotion, and such supplemental terms will be disclosed to you in
separate region-specific disclosures (e.g., a particular city webpage on Uber.com) or in
connection with the applicable Service(s). Supplemental terms are in addition to, and shall
be deemed a part of, the Terms for the purposes of the applicable Service(s). Supplemental
terms shall prevail over these Terms in the event of a conflict with respect to the applicable
Services.

Uber may amend the Terms from time to time. Amendments will be effective upon Uber's
posting of such updated Terms at this location or in the amended policies or supplemental
terms on the applicable Service(s). Your continued access or use of the Services after such
posting confirms your consent to be bound by the Terms, as amended. If Uber changes
these Terms after the date you first agreed to the Terms (or to any subsequent changes to
these Terms), you may reject any such change by providing Uber written notice of such
rejection within 30 days of the date such change became effective, as indicated in the
"Effective" date above. This written notice must be provided either (a) by mail or hand
delivery to our registered agent for service of process, c/o Uber USA, LLC (the name and
current contact information for the registered agent in each state are available online here),
or (b) by email from the email address associated with your Account to, change-
dra@uber.com. In order to be effective, the notice must include your full name and clearly
indicate your intent to reject changes to these Terms. By rejecting changes, you are
agreeing that you will continue to be bound by the provisions of these Terms as of the date
you first agreed to the Terms (or to any subsequent changes to these Terms).

Uber's collection and use of personal information in connection with the Services is
described in Uber's Privacy Statements located at www.uber.com/legal/privacy

**2. Arbitration Agreement**

**By agreeing to the Terms, you agree that you are required to resolve any claim that you
may have against Uber on an individual basis in arbitration, as set forth in this
Arbitration Agreement. This will preclude you from bringing any class, collective, or
representative action against Uber, and also preclude you from participating in or
recovering relief under any current or future class, collective, consolidated, or
representative action brought against Uber by someone else.**

**Agreement to Binding Arbitration Between You and Uber.**

You and Uber agree that any dispute, claim or controversy arising out of or relating to (a)
these Terms or the existence, breach, termination, enforcement, interpretation or validity
thereof, or (b) your access to or use of the Services at any time, whether before or after the
date you agreed to the Terms, will be settled by binding arbitration between you and Uber,
and not in a court of law. Notwithstanding the foregoing, where you allege claims of sexual
assault or sexual harassment occurring in connection with your use of the Services, you may
elect to bring those claims in a court of competent jurisdiction instead of arbitration. Uber

Terms

Privacy                        ▾

Uber for Business              ▾

Clean Air Program              ▾

Commercial                     ▾

Community Guidelines

Data Requests                  ▾

Deactivation Policy

Device App Permissions         ▾

Guarantees                     ▾

Intellectual Property          ▾

Payments                       ▾

Policies                       ▾

Promotions                     ▾

Referral Program Rules

Rewards Programs               ▾

Safety and Security            ▾

Subscriptions                  ▾

Uber Eats                      ▾

Uber Elevate                   ▾

Uber Hero                      ▾

Uber Health

Other

agrees to non-confidential arbitration to resolve your individual discrimination or sexual harassment claim but in so doing does not waive the enforceability of this Arbitration Agreement as to any other provision (including, but not limited to, the waivers provided in the following paragraph, which will continue to apply in court and arbitration), controversy, claim or dispute.

You acknowledge and agree that you and Uber are each waiving the right to a trial by jury or to participate as a plaintiff or class member in any purported class action or representative proceeding. Unless both you and Uber otherwise agree in writing, any arbitration will be conducted only on an individual basis and not in a class, collective, consolidated, or representative proceeding. However, you and Uber each retain the right to bring an individual action in small claims court and the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights.

**Rules and Governing Law.**

The arbitration will be administered by the American Arbitration Association ("AAA") in accordance with the AAA's Consumer Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the "AAA Rules") then in effect, except as modified by this Arbitration Agreement. The AAA Rules are available at www.adr.org or by calling the AAA at 1-800-778-7879.

The parties agree that the arbitrator ("Arbitrator"), and not any federal, state, or local court or agency, shall have exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including any claim that all or any part of this Arbitration Agreement is void or voidable. The Arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether the Terms are unconscionable or illusory and any defense to arbitration, including waiver, delay, laches, or estoppel.

Notwithstanding any choice of law or other provision in the Terms, the parties agree and acknowledge that this Arbitration Agreement evidences a transaction involving interstate commerce and that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), will govern its interpretation and enforcement and proceedings pursuant thereto. It is the intent of the parties that the FAA and AAA Rules shall preempt all state laws to the fullest extent permitted by law. If the FAA and AAA Rules are found to not apply to any issue that arises under this Arbitration Agreement or the enforcement thereof, then that issue shall be resolved under the laws of the state of California.

**Process.**

A party who desires to initiate arbitration must provide the other party with a written Demand for Arbitration as specified in the AAA Rules. (The AAA provides a form Demand for Arbitration - Consumer Arbitration Rules at www.adr.org or by calling the AAA at 1-800-778-7879.) The Arbitrator will be either (1) a retired judge or (2) an attorney specifically licensed to practice law in the state of California and will be selected by the parties from the AAA's roster of consumer dispute arbitrators. If the parties are unable to agree upon an Arbitrator within seven (7) days of delivery of the Demand for Arbitration, then the AAA will appoint the Arbitrator in accordance with the AAA Rules.

**Location and Procedure.**

Unless you and Uber otherwise agree, the arbitration will be conducted in the county where you reside. If your claim does not exceed $10,000, then the arbitration will be conducted solely on the basis of documents you and Uber submit to the Arbitrator, unless you request a hearing or the Arbitrator determines that a hearing is necessary. If your claim exceeds $10,000, your right to a hearing will be determined by the AAA Rules. Subject to the AAA Rules, the Arbitrator will have the discretion to direct a reasonable exchange of information by the parties, consistent with the expedited nature of the arbitration.

**Arbitrator's Decision.**

The Arbitrator will render an award within the time frame specified in the AAA Rules. Judgment on the arbitration award may be entered in any court having competent jurisdiction to do so. The Arbitrator may award declaratory or injunctive relief only in favor of the claimant and only to the extent necessary to provide relief warranted by the claimant's individual claim. An Arbitrator's decision shall be final and binding on all parties. An Arbitrator's decision and judgment thereon shall have no precedential or collateral estoppel effect. If you prevail in arbitration you will be entitled to an award of attorneys' fees and expenses, to the extent provided under applicable law. Uber will not seek, and hereby waives all rights Uber may have under applicable law to recover attorneys' fees and expenses if Uber prevails in arbitration.

**Fees.**

Your responsibility to pay any AAA filing, administrative and arbitrator fees will be solely as set forth in the AAA Rules. However, if your claim for damages does not exceed $75,000, Uber will pay all such fees, unless the Arbitrator finds that either the substance of your claim or the relief sought in your Demand for Arbitration was frivolous or was brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)).

**Changes.**

Notwithstanding the provisions of section above regarding consent to be bound by amendments to these Terms, if Uber changes this Arbitration Agreement after the date you first agreed to the Terms (or to any subsequent changes to the Terms), you may reject any such change by providing Uber written notice of such rejection within 30 days of the date such change became effective, as indicated in the "Effective" date above. This written notice must be provided either (a) by mail or hand delivery to our registered agent for service of process, c/o Uber USA, LLC (the name and current contact information for the registered agent in each state are available online here), or (b) by email from the email address associated with your Account to: change-dr@uber.com. In order to be effective, the notice must include your full name and clearly indicate your intent to reject changes to this Arbitration Agreement. By rejecting changes, you are agreeing that you will arbitrate any dispute between you and Uber in accordance with the provisions of this Arbitration Agreement as of the date you first agreed to the Terms (or to any subsequent changes to the Terms).

**Severability and Survival.**

If any portion of this Arbitration Agreement is found to be unenforceable or unlawful for any reason, (1) the unenforceable or unlawful provision shall be severed from these Terms; (2) severance of the unenforceable or unlawful provision shall have no impact whatsoever on the remainder of the Arbitration Agreement or the parties' ability to compel arbitration of any remaining claims on an individual basis pursuant to the Arbitration Agreement; and (3) to the extent that any claims must therefore proceed on a class, collective, consolidated, or representative basis, such claims must be litigated in a civil court of competent jurisdiction and not in arbitration, and the parties agree that litigation of those claims shall be stayed pending the outcome of any individual claims in arbitration.

**3. The Services**

The Services comprise mobile applications and related services (each, an "Application"), which enable users to arrange and schedule transportation, logistics and/or delivery services and/or to purchase certain goods, including with third party providers of such services and goods under agreement with Uber or certain of Uber's affiliates ("Third Party Providers"). In certain instances the Services may also include an option to receive transportation, logistics and/or delivery services for an upfront price, subject to acceptance by the respective Third Party Providers. Unless otherwise agreed by Uber in a separate written agreement with you, the Services are made available solely for your personal, noncommercial use. YOU ACKNOWLEDGE THAT YOUR ABILITY TO OBTAIN TRANSPORTATION, LOGISTICS AND/OR DELIVERY SERVICES THROUGH THE USE OF THE SERVICES DOES NOT ESTABLISH UBER AS A PROVIDER OF TRANSPORTATION, LOGISTICS OR DELIVERY SERVICES OR AS A TRANSPORTATION CARRIER.

**License.**

Subject to your compliance with these Terms, Uber grants you a limited, non-exclusive, non-sublicensable, revocable, non-transferable license to: (i) access and use the Applications on your personal device solely in connection with your use of the Services; and (ii) access and use any content, information and related materials that may be made available through the Services, in each case solely for your personal, noncommercial use. Any rights not expressly granted herein are reserved by Uber and Uber's licensors.

**Restrictions.**

You may not: (i) remove any copyright, trademark or other proprietary notices from any portion of the Services; (ii) reproduce, modify, prepare derivative works based upon, distribute, license, lease, sell, resell, transfer, publicly display, publicly perform, transmit, stream, broadcast or otherwise exploit the Services except as expressly permitted by Uber; (iii) decompile, reverse engineer or disassemble the Services except as may be permitted by applicable law; (iv) link to, mirror or frame any portion of the Services; (v) cause or launch any programs or scripts for the purpose of scraping, indexing, surveying, or otherwise data mining any portion of the Services or unduly burdening or hindering the operation and/or functionality of any aspect of the Services; or (vi) attempt to gain unauthorized access to or impair any aspect of the Services or its related systems or networks.

**Provision of the Services.**

You acknowledge that portions of the Services may be made available under Uber's various brands or request options associated with transportation or logistics, including the transportation request brands currently referred to as "Uber," "uberX," "uberXL," "UberBLACK," "UberSELECT," "UberSUV" and "UberLUX" and the logistics request products currently referred to as "UberRUSH," and "UberEATS." You also acknowledge that the Services may be made available under such brands or request options by or in connection with: (i) certain of Uber's subsidiaries and affiliates; or (ii) independent Third Party Providers, including Transportation Network Company drivers, Transportation Charter Permit holders or holders of similar transportation permits, authorizations or licenses.

**Third Party Services and Content.**

The Services may be made available or accessed in connection with third party services and content (including advertising) that Uber does not control. You acknowledge that different terms of use and privacy policies may apply to your use of such third party services and content. Uber does not endorse such third party services and content and in no event shall Uber be responsible or liable for any products or services of such third party providers. Additionally, Apple Inc., Google, Inc., Microsoft Corporation or BlackBerry Limited will be a third-party beneficiary to this contract if you access the Services using Applications

developed for Apple iOS, Android, Microsoft Windows, or Blackberry-powered mobile devices, respectively. These third party beneficiaries are not parties to this contract and are not responsible for the provision or support of the Services in any manner. Your access to the Services using these devices is subject to terms set forth in the applicable third party beneficiary's terms of service.

**Ownership.**

The Services and all rights therein are and shall remain Uber's property or the property of Uber's licensors. Neither these Terms nor your use of the Services convey or grant to you any rights: (i) in or related to the Services except for the limited license granted above; or (ii) to use or reference in any manner Uber's company names, logos, product and service names, trademarks or services marks or those of Uber's licensors.

**4. Access and Use of the Services**

**User Accounts.**

In order to use most aspects of the Services, you must register for and maintain an active personal user Services account ("Account"). You must be at least 18 years of age, or the age of legal majority in your jurisdiction (if different than 18), to obtain an Account, unless a specific Service permits otherwise. Account registration requires you to submit to Uber certain personal information, such as your name, address, mobile phone number and age, as well as at least one valid payment method supported by Uber. You agree to maintain accurate, complete, and up-to-date information in your Account. Your failure to maintain accurate, complete, and up-to-date Account information, including having an invalid or expired payment method on file, may result in your inability to access or use the Services. You are responsible for all activity that occurs under your Account, and you agree to maintain the security and secrecy of your Account username and password at all times. Unless otherwise permitted by Uber in writing, you may only possess one Account.

**User Requirements and Conduct.**

The Service is not available for use by persons under the age of 18. You may not authorize third parties to use your Account, and you may not allow persons under the age of 18 to receive transportation or logistics services from Third Party Providers unless they are accompanied by you. You may not assign or otherwise transfer your Account to any other person or entity. You agree to comply with all applicable laws when accessing or using the Services, and you may only access or use the Services for lawful purposes (e.g., no transport of unlawful or hazardous materials). You may not in your access or use of the Services cause nuisance, annoyance, inconvenience, or property damage, whether to the Third Party Provider or any other party. In certain instances you may be asked to provide proof of identity or other method of identity verification to access or use the Services, and you agree that you may be denied access to or use of the Services if you refuse to provide proof of identity or other method of identity verification.

**Text Messaging and Telephone Calls.**

You agree that Uber may contact you by telephone or text messages (including by an automatic telephone dialing system) at any of the phone numbers provided by you or on your behalf in connection with an Uber account, including for marketing purposes. You understand that you are not required to provide this consent as a condition of purchasing any property, goods or services. You also understand that you may opt out of receiving text messages from Uber at any time, either by texting the word "STOP" to 89203 using the mobile device that is receiving the messages, or by contacting help.uber.com. If you do not choose to opt out, Uber may contact you as outlined in its User Privacy Statement, located at www.uber.com/legal/privacy.

**User Provided Content.**

Uber may, in Uber's sole discretion, permit you from time to time to submit, upload, publish or otherwise make available to Uber through the Services textual, audio, and/or visual content and information, including commentary and feedback related to the Services, initiation of support requests, and submission of entries for competitions and promotions ("User Content"). Any User Content provided by you remains your property. However, by providing User Content to Uber, you grant Uber a worldwide, perpetual, irrevocable, transferable, royalty-free license, with the right to sublicense, to use, copy, modify, create derivative works of, distribute, publicly display, publicly perform, and otherwise exploit in any manner such User Content in all formats and distribution channels now known or hereafter devised (including in connection with the Services and Uber's business and on third-party sites and services), without further notice to or consent from you, and without the requirement of payment to you or any other person or entity.

You represent and warrant that: (i) you either are the sole and exclusive owner of all User Content or you have all rights, licenses, consents and releases necessary to grant Uber the license to the User Content as set forth above; and (ii) neither the User Content, nor your submission, uploading, publishing or otherwise making available of such User Content, nor Uber's use of the User Content as permitted herein will infringe, misappropriate or violate a third party's intellectual property or proprietary rights, or rights of publicity or privacy, or result in the violation of any applicable law or regulation.

You agree to not provide User Content that is defamatory, libelous, hateful, violent, obscene, pornographic, unlawful, or otherwise offensive, as determined by Uber in its sole discretion, whether or not such material may be protected by law. Uber may, but shall not be obligated to, review, monitor, or remove User Content, at Uber's sole discretion and at any time and for

any reason, without notice to you.

**Network Access and Devices.**

You are responsible for obtaining the data network access necessary to use the Services. Your mobile network's data and messaging rates and fees may apply if you access or use the Services from your device. You are responsible for acquiring and updating compatible hardware or devices necessary to access and use the Services and Applications and any updates thereto. Uber does not guarantee that the Services, or any portion thereof, will function on any particular hardware or devices. In addition, the Services may be subject to malfunctions and delays inherent in the use of the Internet and electronic communications.

**5. Payment**

You understand that use of the Services may result in charges to you for the services or goods you receive ("Charges"). Uber will receive and/or enable your payment of the applicable Charges for services or goods obtained through your use of the Services. Charges will be inclusive of applicable taxes where required by law. Charges may include other applicable fees, tolls, and/or surcharges including a booking fee, municipal tolls, airport surcharges or processing fees for split payments. Please visit www.uber.com/cities for further information on your particular location

All Charges and payments will be enabled by Uber using the preferred payment method designated in your Account, after which you will receive a receipt by email. If your primary Account payment method is determined to be expired, invalid or otherwise not able to be charged, you agree that Uber may use a secondary payment method in your Account, if available. Charges paid by you are final and non-refundable, unless otherwise determined by Uber.

As between you and Uber, Uber reserves the right to establish, remove and/or revise Charges for any or all services or goods obtained through the use of the Services at any time in Uber's sole discretion. Further, you acknowledge and agree that Charges applicable in certain geographical areas may increase substantially during times of high demand. Uber will use reasonable efforts to inform you of Charges that may apply, provided that you will be responsible for Charges incurred under your Account regardless of your awareness of such Charges or the amounts thereof. Uber may from time to time provide certain users with promotional offers and discounts that may result in different amounts charged for the same or similar services or goods obtained through the use of the Services, and you agree that such promotional offers and discounts, unless also made available to you, shall have no bearing on your use of the Services or the Charges applied to you. You may elect to cancel your request for Services at any time prior to the commencement of such Services, in which case you may be charged a cancellation fee on a Third Party Provider's behalf. After you have received services or goods obtained through the Service, you will have the opportunity to rate your experience and leave additional feedback. Uber may use the proceeds of any Charges for any purpose, subject to any payment obligations it has agreed to with any Third Party Providers or other third parties.

In certain cases, with respect to Third Party Providers, Charges you incur will be owed directly to Third Party Providers, and Uber will collect payment of those charges from you, on the Third Party Provider's behalf as their limited payment collection agent, and payment of the Charges shall be considered the same as payment made directly by you to the Third Party Provider. In such cases, you retain the right to request lower Charges from a Third Party Provider for services or goods received by you from such Third Party Provider at the time you receive such services or goods, and Charges you incur will be owed to the Third Party Provider. Uber will respond accordingly to any request from a Third Party Provider to modify the Charges for a particular service or good. This payment structure is intended to fully compensate a Third Party Provider, if applicable, for the services or goods obtained in connection with your use of the Services. In all other cases, Charges you incur will be owed and paid directly to Uber or its affiliates, where Uber is solely liable for any obligations to Third Party Providers. In such cases, you retain the right to request lower Charges from Uber for services or goods received by you from a Third Party Provider at the time you receive such services or goods, and Uber will respond accordingly to any request from you to modify the Charges for a particular service or good. Except with respect to taxicab transportation services requested through the Application, Uber does not designate any portion of your payment as a tip or gratuity to a Third Party Provider. Any representation by Uber (on Uber's website, in the Application, or in Uber's marketing materials) to the effect that tipping is "voluntary," "not required," and/or "included" in the payments you make for services or goods provided is not intended to suggest that Uber provides any additional amounts, beyond those described above, to a Third Party Provider you may use. You understand and agree that, while you are free to provide additional payment as a gratuity to any Third Party Provider who provides you with services or goods obtained through the Service, you are under no obligation to do so. Gratuities are voluntary.

**Repair, Cleaning or Lost and Found Fees.**

You shall be responsible for the cost of repair for damage to, or necessary cleaning of, vehicles and property resulting from use of the Services under your Account in excess of normal "wear and tear" damages and necessary cleaning ("Repair or Cleaning"). In the event that a Repair or Cleaning request is verified by Uber in Uber's reasonable discretion, Uber reserves the right to facilitate payment for the reasonable cost of such Repair or Cleaning using your payment method designated in your Account. Such amounts, as well as those pertaining to lost and found goods, will be transferred by Uber to a Third Party Provider, if applicable, and are non-refundable.

The amounts related to repair, cleaning or lost & found fees applicable in Puerto Rico may be found at https://www.uber.com/es-US/blog/puerto-rico/puerto-rico-terminos-y-condiciones/ and may be updated from time to time solely by Uber.

## 6. Disclaimers; Limitation of Liability; Indemnity.

### DISCLAIMER.

THE SERVICES ARE PROVIDED "AS IS" AND "AS AVAILABLE." UBER DISCLAIMS ALL REPRESENTATIONS AND WARRANTIES, EXPRESS, IMPLIED, OR STATUTORY, NOT EXPRESSLY SET OUT IN THESE TERMS, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. IN ADDITION, UBER MAKES NO REPRESENTATION, WARRANTY, OR GUARANTEE REGARDING THE RELIABILITY, TIMELINESS, QUALITY, SUITABILITY, OR AVAILABILITY OF THE SERVICES OR ANY SERVICES OR GOODS REQUESTED THROUGH THE USE OF THE SERVICES, OR THAT THE SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE. UBER DOES NOT GUARANTEE THE QUALITY, SUITABILITY, SAFETY OR ABILITY OF THIRD PARTY PROVIDERS. YOU AGREE THAT THE ENTIRE RISK ARISING OUT OF YOUR USE OF THE SERVICES, AND ANY SERVICE OR GOOD REQUESTED IN CONNECTION THEREWITH, REMAINS SOLELY WITH YOU, TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW.

### LIMITATION OF LIABILITY.

UBER SHALL NOT BE LIABLE FOR INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, PUNITIVE, OR CONSEQUENTIAL DAMAGES, INCLUDING LOST PROFITS, LOST DATA, PERSONAL INJURY, OR PROPERTY DAMAGE RELATED TO, IN CONNECTION WITH, OR OTHERWISE RESULTING FROM ANY USE OF THE SERVICES, REGARDLESS OF THE NEGLIGENCE (EITHER ACTIVE, AFFIRMATIVE, SOLE, OR CONCURRENT) OF UBER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

UBER SHALL NOT BE LIABLE FOR ANY DAMAGES, LIABILITY OR LOSSES ARISING OUT OF: (i) YOUR USE OF OR RELIANCE ON THE SERVICES OR YOUR INABILITY TO ACCESS OR USE THE SERVICES; OR (ii) ANY TRANSACTION OR RELATIONSHIP BETWEEN YOU AND ANY THIRD PARTY PROVIDER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. UBER SHALL NOT BE LIABLE FOR DELAY OR FAILURE IN PERFORMANCE RESULTING FROM CAUSES BEYOND UBER'S REASONABLE CONTROL. YOU ACKNOWLEDGE THAT THIRD PARTY PROVIDERS PROVIDING TRANSPORTATION SERVICES REQUESTED THROUGH SOME REQUEST PRODUCTS MAY OFFER RIDESHARING OR PEER-TO-PEER TRANSPORTATION SERVICES AND MAY NOT BE PROFESSIONALLY LICENSED OR PERMITTED.

THE SERVICES MAY BE USED BY YOU TO REQUEST AND SCHEDULE TRANSPORTATION, GOODS, OR LOGISTICS SERVICES WITH THIRD PARTY PROVIDERS, BUT YOU AGREE THAT UBER HAS NO RESPONSIBILITY OR LIABILITY TO YOU RELATED TO ANY TRANSPORTATION, GOODS OR LOGISTICS SERVICES PROVIDED TO YOU BY THIRD PARTY PROVIDERS OTHER THAN AS EXPRESSLY SET FORTH IN THESE TERMS.

THE LIMITATIONS AND DISCLAIMER IN THIS SECTION DO NOT PURPORT TO LIMIT LIABILITY OR ALTER YOUR RIGHTS AS A CONSUMER THAT CANNOT BE EXCLUDED UNDER APPLICABLE LAW. BECAUSE SOME STATES OR JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF OR THE LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, IN SUCH STATES OR JURISDICTIONS, UBER'S LIABILITY SHALL BE LIMITED TO THE EXTENT PERMITTED BY LAW. THIS PROVISION SHALL HAVE NO EFFECT ON UBER'S CHOICE OF LAW PROVISION SET FORTH BELOW.

### Indemnity.

You agree to indemnify and hold Uber and its affiliates and their officers, directors, employees, and agents harmless from any and all claims, demands, losses, liabilities, and expenses (including attorneys' fees), arising out of or in connection with: (i) your use of the Services or services or goods obtained through your use of the Services; (ii) your breach or violation of any of these Terms; (iii) Uber's use of your User Content; or (iv) your violation of the rights of any third party, including Third Party Providers.

## 7. Other Provisions

### Choice of Law.

These Terms are governed by and construed in accordance with the laws of the State of California, U.S.A., without giving effect to any conflict of law principles, except as may be otherwise provided in the Arbitration Agreement above or in supplemental terms applicable to your region. However, the choice of law provision regarding the interpretation of these Terms is not intended to create any other substantive right to non-Californians to assert claims under California law whether that be by statute, common law, or otherwise. These provisions, and except as otherwise provided in Section 2 of these Terms, are only intended to specify the use of California law to interpret these Terms and the forum for disputes asserting a breach of these Terms, and these provisions shall not be interpreted as generally extending California law to you if you do not otherwise reside in California. The foregoing choice of law and forum selection provisions do not apply to the arbitration clause in Section 2 or to any arbitrable disputes as defined therein. Instead, as described in Section 2, the Federal Arbitration Act shall apply to any such disputes.

### Claims of Copyright Infringement.

Claims of copyright infringement should be sent to Uber's designated agent. Please visit

**Notice.**

Uber may give notice by means of a general notice on the Services, electronic mail to your
email address in your Account, telephone or text message to any phone number provided in
connection with your account, or by written communication sent by first class mail or pre-
paid post to any address connected with your Account. Such notice shall be deemed to have
been given upon the expiration of 48 hours after mailing or posting (if sent by first class mail
or pre-paid post) or 12 hours after sending (if sent by email or telephone). You may give
notice to Uber, with such notice deemed given when received by Uber, at any time by first
class mail or pre-paid post to our registered agent for service of process, c/o Uber USA, LLC.
The name and current contact information for the registered agent in each state are
available online here.

**General.**

You may not assign these Terms without Uber's prior written approval. Uber may assign
these Terms without your consent to: (i) a subsidiary or affiliate; (ii) an acquirer of Uber's
equity, business or assets; or (iii) a successor by merger. Any proposed assignment in
violation of this section shall be void. No joint venture, partnership, employment, or agency
relationship exists between you, Uber or any Third Party Provider as a result of this
Agreement or use of the Services. If any provision of these Terms is held to be invalid or
unenforceable, such provision shall be struck and the remaining provisions shall be enforced
to the fullest extent under law. Uber's failure to enforce any right or provision in these Terms
shall not constitute a waiver of such right or provision unless acknowledged and agreed to
by Uber in writing. This provision shall not affect the Severability and Survivability section of
the Arbitration Agreement of these Terms.

## We're here to help

Support is just a few taps away. You can also get your questions
answered by using our help section.

Get help >

Uber

✕ English

◎ San Francisco Bay Area
Seeing information for this city

**About Us**

Newsroom

Blog

Uber API

Gift Cards

**Uber offerings**

Uber Eats

Uber for Business

Uber Freight

Uber Health



# EXHIBIT E

Uber    Company ⌄    Safety    Help    COVID-19 resources         ⊕ EN    ⚏ Products    ⚇ Log in    Sign up

Select jurisdiction:

United States ▾

Language:

English

Last modified: 3/17/2020

# U.S. Terms of Use
## 1. Contractual Relationship

These Terms of Use ("Terms") govern your access or use, from within the United States and its territories and possessions, of the applications, websites, content, products, and services (the "Services," as more fully defined below in Section 3) made available in the United States and its territories and possessions by Uber USA, LLC and its parents, subsidiaries, representatives, affiliates, officers and directors (collectively, "Uber"). PLEASE READ THESE TERMS CAREFULLY, AS THEY CONSTITUTE A LEGAL AGREEMENT BETWEEN YOU AND UBER. In these Terms, the words "including" and "include" mean "including, but not limited to."

By accessing or using the Services, you confirm your agreement to be bound by these Terms. If you do not agree to these Terms, you may not access or use the Services. These Terms expressly supersede prior agreements or arrangements with you. Uber may immediately terminate these Terms or any Services with respect to you, or generally cease offering or deny access to the Services or any portion thereof, at any time for any reason.

IMPORTANT: PLEASE REVIEW THE ARBITRATION AGREEMENT SET FORTH BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH UBER ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION. BY ENTERING THIS AGREEMENT, YOU EXPRESSLY ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND ALL OF THE TERMS OF THIS AGREEMENT AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT DECISION.

Supplemental terms may apply to certain Services, such as policies for a particular event, program, activity or promotion, and such supplemental terms will be disclosed to you in separate region-specific disclosures (e.g., a particular city webpage on Uber.com) or in connection with the applicable Service(s). Supplemental terms are in addition to, and shall be deemed a part of, the Terms for the purposes of the applicable Service(s). Supplemental terms shall prevail over these Terms in the event of a conflict with respect to the applicable Services.

Uber may amend the Terms from time to time. Amendments will be effective upon Uber's posting of such updated Terms at this location or in the amended policies or supplemental terms on the applicable Service(s). Your continued access or use of the Services after such posting confirms your consent to be bound by the Terms, as amended. If Uber changes these Terms after the date you first agreed to the Terms (or to any subsequent changes to these Terms), you may reject any such change by providing Uber written notice of such rejection within 30 days of the date such change became effective, as indicated in the "Effective" date above. This written notice must be provided either (a) by mail or hand delivery to our registered agent for service of process, c/o Uber USA, LLC (the name and current contact information for the registered agent in each state are available online here), or (b) by email from the email address associated with your Account to: change-dr@uber.com. In order to be effective, the notice must include your full name and clearly indicate your intent to reject changes to these Terms. By rejecting changes, you are agreeing that you will continue to be bound by the provisions of these Terms as of the date you first agreed to the Terms (or to any subsequent changes to these Terms).

Uber's collection and use of personal information in connection with the Services is described in Uber's Privacy Statements located at https://www.uber.com/privacy/notice.

## 2. Arbitration Agreement

By agreeing to the Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration, as set forth in this Arbitration Agreement. This will preclude you from bringing any class, collective, or representative action against Uber, and also preclude you from participating in or recovering relief under any current or future class, collective, consolidated, or representative action brought against Uber by someone else.

Agreement to Binding Arbitration Between You and Uber.

You and Uber agree that any dispute, claim or controversy arising out of or relating to (a) these Terms or the existence, breach, termination, enforcement, interpretation or validity thereof, or (b) your access to or use of the Services at any time, whether before or after the date you agreed to the Terms, will be settled by binding arbitration between you and Uber, and not in a court of law. Notwithstanding the foregoing, where you allege claims of sexual assault or sexual harassment occurring in connection with your use of the Services, you may elect to bring those claims in a court of competent jurisdiction instead of arbitration. Uber agrees to honor your election of forum with respect to your individual sexual assault or sexual harassment claim but in so doing does not waive the enforceability of this Arbitration Agreement as to any other provision (including, but not limited to, the waivers provided in the following paragraph, which will continue to apply in court and arbitration), controversy, claim or dispute.

You acknowledge and agree that you and Uber are each waiving the right to a trial by jury or to participate as a plaintiff or class member in any purported class action or representative proceeding. Unless both you and Uber otherwise agree in writing, any arbitration will be conducted only on an individual basis and not in a class, collective, consolidated, or representative proceeding. However, you and Uber each retain the right to bring an individual action in small claims court and the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights.

Rules and Governing Law.

The arbitration will be administered by the American Arbitration Association ("AAA") in accordance with the AAA's Consumer Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the "AAA Rules") then in effect, except as modified by this Arbitration Agreement. The AAA Rules are available at www.adr.org or by calling the AAA at 1-800-778-7879.

APP346

The parties agree that the arbitrator ("Arbitrator"), and not any federal, state, or local court or agency, shall have exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including any claim that all or any part of this Arbitration Agreement is void or voidable. The Arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether the Terms are unconscionable or illusory and any defense to arbitration, including waiver, delay, laches, or estoppel.

Notwithstanding any choice of law or other provision in the Terms, the parties agree and acknowledge that this Arbitration Agreement evidences a transaction involving interstate commerce and that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), will govern its interpretation and enforcement and proceedings pursuant thereto. It is the intent of the parties that the FAA and AAA Rules shall preempt all state laws to the fullest extent permitted by law. If the FAA and AAA Rules are found to not apply to any issue that arises under this Arbitration Agreement or the enforcement thereof, then that issue shall be resolved under the laws of the state of California.

**Process.**

A party who desires to initiate arbitration must provide the other party with a written Demand for Arbitration as specified in the AAA Rules. (The AAA provides a form Demand for Arbitration - Consumer Arbitration Rules at www.adr.org or by calling the AAA at 1-800-778-7879). The Arbitrator will be either (1) a retired judge or (2) an attorney specifically licensed to practice law in the state of California and will be selected by the parties from the AAA's roster of consumer dispute arbitrators. If the parties are unable to agree upon an Arbitrator within seven (7) days of delivery of the Demand for Arbitration, then the AAA will appoint the Arbitrator in accordance with the AAA Rules.

**Location and Procedure.**

Unless you and Uber otherwise agree, the arbitration will be conducted in the county where you reside. If your claim does not exceed $10,000, then the arbitration will be conducted solely on the basis of documents you and Uber submit to the Arbitrator, unless you request a hearing or the Arbitrator determines that a hearing is necessary. If your claim exceeds $10,000, your right to a hearing will be determined by the AAA Rules. Subject to the AAA Rules, the Arbitrator will have the discretion to direct a reasonable exchange of information by the parties, consistent with the expedited nature of the arbitration.

**Arbitrator's Decision.**

The Arbitrator will render an award within the time frame specified in the AAA Rules. Judgment on the arbitration award may be entered in any court having competent jurisdiction to do so. The Arbitrator may award declaratory or injunctive relief only in favor of the claimant and only to the extent necessary to provide relief warranted by the claimant's individual claim. An Arbitrator's decision shall be final and binding on all parties. An Arbitrator's decision and judgment thereon shall have no precedential or collateral estoppel effect. If you prevail in arbitration you will be entitled to an award of attorneys' fees and expenses, to the extent provided under applicable law. Uber will not seek, and hereby waives all rights Uber may have under applicable law to recover attorneys' fees and expenses if Uber prevails in arbitration.

**Fees.**

Your responsibility to pay any AAA filing, administrative and arbitrator fees will be solely as set forth in the AAA Rules. However, if your claim for damages does not exceed $75,000, Uber will pay all such fees, unless the Arbitrator finds that either the substance of your claim or the relief sought in your Demand for Arbitration was frivolous or was brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)).

**Changes.**

Notwithstanding the provisions in Section I above, regarding consent to be bound by amendments to these Terms, if Uber changes this Arbitration Agreement after the date you first agreed to the Terms (or to any subsequent changes to the Terms), you may reject any such change by providing Uber written notice of such rejection within 30 days of the date such change became effective, as indicated in the "Effective" date above. This written notice must be provided either (a) by mail or hand delivery to our registered agent for service of process, c/o Uber USA, LLC (the name and current contact information for the registered agent in each state are available online here), or (b) by email from the email address associated with your Account to: change-dr@uber.com. In order to be effective, the notice must include your full name and clearly indicate your intent to reject changes to this Arbitration Agreement. By rejecting changes, you are agreeing that you will arbitrate any dispute between you and Uber in accordance with the provisions of this Arbitration Agreement as of the date you first agreed to the Terms (or to any subsequent changes to the Terms).

**Severability and Survival.**

If any portion of this Arbitration Agreement is found to be unenforceable or unlawful for any reason, (1) the unenforceable or unlawful provision shall be severed from these Terms; (2) severance of the unenforceable or unlawful provision shall have no impact whatsoever on the remainder of the Arbitration Agreement or the parties' ability to compel arbitration of any remaining claims on an individual basis pursuant to the Arbitration Agreement; and (3) to the extent that any claims must therefore proceed on a class, collective, consolidated, or representative basis, such claims must be litigated in a civil court of competent jurisdiction and not in arbitration, and the parties agree that litigation of those claims shall be stayed pending the outcome of any individual claims in arbitration.

# 3. The Services

The Services comprise mobile applications and related services (each, an "Application"), which enable users to arrange and schedule transportation, logistics and/or delivery services and/or to purchase certain goods, including with third party providers of such services and goods under agreement with Uber or certain of Uber's affiliates ("Third Party Providers"). In certain instances the Services may also include an option to receive transportation, logistics and/or delivery services for an upfront price, subject to acceptance by the respective Third Party Providers. Unless otherwise agreed by Uber in a separate written agreement with you, the Services are made available solely for your personal, noncommercial use. YOU ACKNOWLEDGE THAT YOUR ABILITY TO OBTAIN TRANSPORTATION, LOGISTICS AND/OR DELIVERY SERVICES THROUGH THE USE OF THE SERVICES DOES NOT ESTABLISH UBER AS A PROVIDER OF TRANSPORTATION, LOGISTICS OR DELIVERY SERVICES OR AS A TRANSPORTATION CARRIER.

**License.**

Subject to your compliance with these Terms, Uber grants you a limited, non-exclusive, non-sublicensable, revocable, non-transferable license to: (i) access and use the Applications on your personal device solely in connection with your use of the Services; and (ii) access and use any content, information and related materials that may be made available through the Services, in each case solely for your personal, noncommercial use. Any rights not expressly granted herein are reserved by Uber and Uber's licensors.

**Restrictions.**

You may not: (i) remove any copyright, trademark or other proprietary notices from any portion of the Services; (ii) reproduce, modify, prepare derivative works based upon, distribute, license, lease, sell, resell, transfer, publicly display, publicly perform, transmit, stream, broadcast or otherwise exploit the Services except as expressly permitted by Uber; (iii) decompile, reverse engineer or disassemble the Services except as may be permitted by applicable law; (iv) link to, mirror or frame any portion of the Services; (v) cause or launch any programs or scripts for the purpose of scraping, indexing, surveying, or

otherwise data mining any portion of the Services or unduly burdening or hindering the operation and/or functionality of any aspect of the Services; or (vi) attempt to gain unauthorized access to or impair any aspect of the Services or its related systems or networks.

**Provision of the Services.**

You acknowledge that portions of the Services may be made available under Uber's various brands or request options associated with transportation or logistics, including the transportation request brands currently referred to as "Uber," "uberX," "uberXL," "UberBLACK," "UberSELECT," "UberSUV" and "UberLUX" and the logistics request products currently referred to as "UberRUSH," and "UberEATS." You also acknowledge that the Services may be made available under such brands or request options by or in connection with: (i) certain of Uber's subsidiaries and affiliates; or (ii) independent Third Party Providers, including Transportation Network Company drivers, Transportation Charter Permit holders or holders of similar transportation permits, authorizations or licenses.

**Third Party Services and Content.**

The Services may be made available or accessed in connection with third party services and content (including advertising) that Uber does not control. You acknowledge that different terms of use and privacy policies may apply to your use of such third party services and content. Uber does not endorse such third party services and content and in no event shall Uber be responsible or liable for any products or services of such third party providers. Additionally, Apple Inc., Google, Inc., Microsoft Corporation or BlackBerry Limited will be a third-party beneficiary to this contract if you access the Services using Applications developed for Apple iOS, Android, Microsoft Windows, or Blackberry-powered mobile devices, respectively. These third party beneficiaries are not parties to this contract and are not responsible for the provision or support of the Services in any manner. Your access to the Services using these devices is subject to terms set forth in the applicable third party beneficiary's terms of service.

**Ownership.**

The Services and all rights therein are and shall remain Uber's property or the property of Uber's licensors. Neither these Terms nor your use of the Services convey or grant to you any rights: (i) in or related to the Services except for the limited license granted above; or (ii) to use or reference in any manner Uber's company names, logos, product and service names, trademarks or services marks or those of Uber's licensors.

## 4. Access and Use of the Services

**User Accounts.**

In order to use most aspects of the Services, you must register for and maintain an active personal user Services account ("Account"). You must be at least 18 years of age, or the age of legal majority in your jurisdiction (if different than 18), to obtain an Account, unless a specific Service permits otherwise. Account registration requires you to submit to Uber certain personal information, such as your name, address, mobile phone number and age, as well as at least one valid payment method supported by Uber. You agree to maintain accurate, complete, and up-to-date information in your Account. Your failure to maintain accurate, complete, and up-to-date Account information, including having an invalid or expired payment method on file, may result in your inability to access or use the Services. You are responsible for all activity that occurs under your Account, and you agree to maintain the security and secrecy of your Account username and password at all times. Unless otherwise permitted by Uber in writing, you may only possess one Account.

**User Requirements and Conduct.**

The Service is not available for use by persons under the age of 18. You may not authorize third parties to use your Account, and you may not allow persons under the age of 18 to receive transportation or logistics services from Third Party Providers unless they are accompanied by you. You may not assign or otherwise transfer your Account to any other person or entity. You agree to comply with all applicable laws when accessing or using the Services, and you may only access or use the Services for lawful purposes (e.g., no transport of unlawful or hazardous materials). You may not in your access or use of the Services cause nuisance, annoyance, inconvenience, or property damage, whether to the Third Party Provider or any other party. In certain instances you may be asked to provide proof of identity or other method of identity verification to access or use the Services, and you agree that you may be denied access to or use of the Services if you refuse to provide proof of identity or other method of identity verification.

**Text Messaging and Telephone Calls.**

You agree that Uber may contact you by telephone or text messages (including by an automatic telephone dialing system) at any of the phone numbers provided by you or on your behalf in connection with an Uber account, including for marketing purposes. You understand that you are not required to provide this consent as a condition of purchasing any property, goods or services. You also understand that you may opt out of receiving text messages from Uber at any time, either by texting the word "STOP" to 89203 using the mobile device that is receiving the messages, or by contacting help.uber.com. If you do not choose to opt out, Uber may contact you as outlined in its User Privacy Statement, located at https://www.uber.com/privacy/notice.

**User Provided Content.**

Uber may, in Uber's sole discretion, permit you from time to time to submit, upload, publish or otherwise make available to Uber through the Services textual, audio, and/or visual content and information, including commentary and feedback related to the Services, initiation of support requests, and submission of entries for competitions and promotions ("User Content"). Any User Content provided by you remains your property. However, by providing User Content to Uber, you grant Uber a worldwide, perpetual, irrevocable, transferable, royalty-free license, with the right to sublicense, to use, copy, modify, create derivative works of, distribute, publicly display, publicly perform, and otherwise exploit in any manner such User Content in all formats and distribution channels now known or hereafter devised (including in connection with the Services and Uber's business and on third-party sites and services), without further notice to or consent from you, and without the requirement of payment to you or any other person or entity.

You represent and warrant that: (i) you either are the sole and exclusive owner of all User Content or you have all rights, licenses, consents and releases necessary to grant Uber the license to the User Content as set forth above; and (ii) neither the User Content, nor your submission, uploading, publishing or otherwise making available of such User Content, nor Uber's use of the User Content as permitted herein will infringe, misappropriate or violate a third party's intellectual property or proprietary rights, or rights of publicity or privacy, or result in the violation of any applicable law or regulation.

You agree to not provide User Content that is defamatory, libelous, hateful, violent, obscene, pornographic, unlawful, or otherwise offensive, as determined by Uber in its sole discretion, whether or not such material may be protected by law. Uber may, but shall not be obligated to, review, monitor, or remove User Content, at Uber's sole discretion and at any time and for any reason, without notice to you.

**Network Access and Devices.**

You are responsible for obtaining the data network access necessary to use the Services. Your mobile network's data and messaging rates and fees may apply if you access or use the Services from your device. You are responsible for acquiring and updating compatible hardware or devices necessary to access and use the Services and Applications and any updates thereto. Uber does not guarantee that the Services, or any portion thereof, will function on any particular hardware or devices. In addition, the Services may be subject to malfunctions and delays inherent in the use of the Internet and electronic communications.

## 5. Payment

You understand that use of the Services may result in charges to you for the services or goods you receive ("Charges"). Uber will receive and/or enable your payment of the applicable Charges for services or goods obtained through your use of the Services. Charges will be inclusive of applicable taxes where required by law. Charges may include other applicable fees, tolls, and/or surcharges including a booking fee, municipal tolls, airport surcharges or processing fees for split payments. Please visit www.uber.com/cities for further information on your particular location.

All Charges and payments will be enabled by Uber using the preferred payment method designated in your Account, after which you will receive a receipt by email. If your primary Account payment method is determined to be expired, invalid or otherwise not able to be charged, you agree that Uber may use a secondary payment method in your Account, if available. Charges paid by you are final and non-refundable, unless otherwise determined by Uber.

As between you and Uber, Uber reserves the right to establish, remove and/or revise Charges for any or all services or goods obtained through the use of the Services at any time in Uber's sole discretion. Further, you acknowledge and agree that Charges applicable in certain geographical areas may increase substantially during times of high demand. Uber will use reasonable efforts to inform you of Charges that may apply, provided that you will be responsible for Charges incurred under your Account regardless of your awareness of such Charges or the amounts thereof. Uber may from time to time provide certain users with promotional offers and discounts that may result in different amounts charged for the same or similar services or goods obtained through the use of the Services, and you agree that such promotional offers and discounts, unless also made available to you, shall have no bearing on your use of the Services or the Charges applied to you. You may elect to cancel your request for Services at any time prior to the commencement of such Services, in which case you may be charged a cancellation fee on a Third Party Provider's behalf. After you have received services or goods obtained through the Service, you will have the opportunity to rate your experience and leave additional feedback. Uber may use the proceeds of any Charges for any purpose, subject to any payment obligations it has agreed to with any Third Party Providers or other third parties.

In certain cases, with respect to Third Party Providers, Charges you incur will be owed directly to Third Party Providers, and Uber will collect payment of those charges from you, on the Third Party Provider's behalf as their limited payment collection agent, and payment of the Charges shall be considered the same as payment made directly by you to the Third Party Provider. In such cases, you retain the right to request lower Charges from a Third Party Provider for services or goods received by you from such Third Party Provider at the time you receive such services or goods, and Charges you incur will be owed to the Third Party Provider. Uber will respond accordingly to any request from a Third Party Provider to modify the Charges for a particular service or good. This payment structure is intended to fully compensate a Third Party Provider, if applicable, for the services or goods obtained in connection with your use of the Services. In all other cases, Charges you incur will be owed and paid directly to Uber or its affiliates, where Uber is solely liable for any obligations to Third Party Providers. In such cases, you retain the right to request lower Charges from Uber for services or goods received by you from a Third Party Provider at the time you receive such services or goods, and Uber will respond accordingly to any request from you to modify the Charges for a particular service or good. Except with respect to taxicab transportation services requested through the Application, Uber does not designate any portion of your payment as a tip or gratuity to a Third Party Provider. Any representation by Uber (on Uber's website, in the Application, or in Uber's marketing materials) to the effect that tipping is "voluntary," "not required," and/or "included" in the payments you make for services or goods provided is not intended to suggest that Uber provides any additional amounts, beyond those described above, to a Third Party Provider you may use. You understand and agree that, while you are free to provide additional payment as a gratuity to any Third Party Provider who provides you with services or goods obtained through the Service, you are under no obligation to do so. Gratuities are voluntary.

**Repair, Cleaning or Lost and Found Fees.**

You shall be responsible for the cost of repair for damage to, or necessary cleaning of, vehicles and property resulting from use of the Services under your Account in excess of normal "wear and tear" damages and necessary cleaning ("Repair or Cleaning"). In the event that a Repair or Cleaning request is verified by Uber in Uber's reasonable discretion, Uber reserves the right to facilitate payment for the reasonable cost of such Repair or Cleaning using your payment method designated in your Account. Such amounts, as well as those pertaining to lost and found goods, will be transferred by Uber to a Third Party Provider, if applicable, and are non-refundable.

The amounts related to repair, cleaning or lost & found fees applicable in Puerto Rico may be found at https://www.uber.com/es-US/blog/puerto-rico/puerto-rico-terminos-y-condiciones/ and may be updated from time to time solely by Uber.

# 6. Disclaimers; Limitation of Liability; Indemnity.

**DISCLAIMER.**

THE SERVICES ARE PROVIDED "AS IS" AND "AS AVAILABLE." UBER DISCLAIMS ALL REPRESENTATIONS AND WARRANTIES, EXPRESS, IMPLIED, OR STATUTORY, NOT EXPRESSLY SET OUT IN THESE TERMS, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. IN ADDITION, UBER MAKES NO REPRESENTATION, WARRANTY, OR GUARANTEE REGARDING THE RELIABILITY, TIMELINESS, QUALITY, SUITABILITY, OR AVAILABILITY OF THE SERVICES OR ANY SERVICES OR GOODS REQUESTED THROUGH THE USE OF THE SERVICES, OR THAT THE SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE. UBER DOES NOT GUARANTEE THE QUALITY, SUITABILITY, SAFETY OR ABILITY OF THIRD PARTY PROVIDERS. YOU AGREE THAT THE ENTIRE RISK ARISING OUT OF YOUR USE OF THE SERVICES, AND ANY SERVICE OR GOOD REQUESTED IN CONNECTION THEREWITH, REMAINS SOLELY WITH YOU, TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW.

**LIMITATION OF LIABILITY.**

UBER SHALL NOT BE LIABLE FOR INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, PUNITIVE, OR CONSEQUENTIAL DAMAGES, INCLUDING LOST PROFITS, LOST DATA, PERSONAL INJURY, OR PROPERTY DAMAGE RELATED TO, IN CONNECTION WITH, OR OTHERWISE RESULTING FROM ANY USE OF THE SERVICES, REGARDLESS OF THE NEGLIGENCE (EITHER ACTIVE, AFFIRMATIVE, SOLE, OR CONCURRENT) OF UBER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

UBER SHALL NOT BE LIABLE FOR ANY DAMAGES, LIABILITY OR LOSSES ARISING OUT OF: (i) YOUR USE OF OR RELIANCE ON THE SERVICES OR YOUR INABILITY TO ACCESS OR USE THE SERVICES; OR (ii) ANY TRANSACTION OR RELATIONSHIP BETWEEN YOU AND ANY THIRD PARTY PROVIDER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. UBER SHALL NOT BE LIABLE FOR DELAY OR FAILURE IN PERFORMANCE RESULTING FROM CAUSES BEYOND UBER'S REASONABLE CONTROL. YOU ACKNOWLEDGE THAT THIRD PARTY PROVIDERS PROVIDING TRANSPORTATION SERVICES REQUESTED THROUGH SOME REQUEST PRODUCTS MAY OFFER RIDESHARING OR PEER-TO-PEER TRANSPORTATION SERVICES AND MAY NOT BE PROFESSIONALLY LICENSED OR PERMITTED.

THE SERVICES MAY BE USED BY YOU TO REQUEST AND SCHEDULE TRANSPORTATION, GOODS, OR LOGISTICS SERVICES WITH THIRD PARTY PROVIDERS, BUT YOU AGREE THAT UBER HAS NO RESPONSIBILITY OR LIABILITY TO YOU RELATED TO ANY TRANSPORTATION, GOODS OR LOGISTICS SERVICES PROVIDED TO YOU BY THIRD PARTY PROVIDERS OTHER THAN AS EXPRESSLY SET FORTH IN THESE TERMS.

THE LIMITATIONS AND DISCLAIMER IN THIS SECTION DO NOT PURPORT TO LIMIT LIABILITY OR ALTER YOUR RIGHTS AS A CONSUMER THAT CANNOT BE EXCLUDED UNDER APPLICABLE LAW. BECAUSE SOME STATES OR JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF OR THE LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, IN SUCH STATES OR JURISDICTIONS, UBER'S LIABILITY SHALL BE LIMITED TO THE EXTENT PERMITTED BY LAW. THIS PROVISION SHALL HAVE NO EFFECT ON UBER'S CHOICE OF LAW PROVISION SET FORTH BELOW.

**Indemnity.**

You agree to indemnify and hold Uber and its affiliates and their officers, directors, employees, and agents harmless from any and all claims, demands, losses, liabilities, and expenses (including attorneys' fees), arising out of or in connection with: (i) your use of the Services or services or goods obtained through your use of the Services; (ii) your breach or violation of any of these Terms; (iii) Uber's use of your User Content; or (iv) your violation of the rights of any third party, including Third Party Providers.

# 7. Other Provisions

### Choice of Law.

These Terms are governed by and construed in accordance with the laws of the State of California, U.S.A., without giving effect to any conflict of law principles, except as may be otherwise provided in the Arbitration Agreement above or in supplemental terms applicable to your region. However, the choice of law provision regarding the interpretation of these Terms is not intended to create any other substantive right to non-Californians to assert claims under California law whether that be by statute, common law, or otherwise. These provisions, and except as otherwise provided in Section 2 of these Terms, are only intended to specify the use of California law to interpret these Terms and the forum for disputes asserting a breach of these Terms, and these provisions shall not be interpreted as generally extending California law to you if you do not otherwise reside in California. The foregoing choice of law and forum selection provisions do not apply to the arbitration clause in Section 2 or to any arbitrable disputes as defined therein. Instead, as described in Section 2, the Federal Arbitration Act shall apply to any such disputes.

### Claims of Copyright Infringement.

Claims of copyright infringement should be sent to Uber's designated agent. Please visit Uber's web page at https://www.uber.com/legal/intellectual-property/copyright/global for the designated address and additional information.

### Notice.

Uber may give notice by means of a general notice on the Services, electronic mail to your email address in your Account, telephone or text message to any phone number provided in connection with your account, or by written communication sent by first class mail or pre-paid post to any address connected with your Account. Such notice shall be deemed to have been given upon the expiration of 48 hours after mailing or posting (if sent by first class mail or pre-paid post) or 12 hours after sending (if sent by email or telephone). You may give notice to Uber, with such notice deemed given when received by Uber, at any time by first class mail or pre-paid post to our registered agent for service of process, c/o Uber USA, LLC. The name and current contact information for the registered agent in each state are available online here.

### General.

You may not assign these Terms without Uber's prior written approval. Uber may assign these Terms without your consent to: (i) a subsidiary or affiliate; (ii) an acquirer of Uber's equity, business or assets; or (iii) a successor by merger. Any purported assignment in violation of this section shall be void. No joint venture, partnership, employment, or agency relationship exists between you, Uber or any Third Party Provider as a result of this Agreement or use of the Services. If any provision of these Terms is held to be invalid or unenforceable, such provision shall be struck and the remaining provisions shall be enforced to the fullest extent under law. Uber's failure to enforce any right or provision in these Terms shall not constitute a waiver of such right or provision unless acknowledged and agreed to by Uber in writing. This provision shall not affect the Severability and Survivability section of the Arbitration Agreement of these Terms.

## Return to Legal Hub     →



Do not sell my info (California)

Uber

Visit Help Center

**Company**
About us
Newsroom
Investors
Blog
Careers

**Products**
Ride
Drive
Eat
Uber for Business
Uber Freight

**Global citizenship**
Safety
Diversity
Transparency

**Innovation**
ATG
AI
Elevate

English (International)    San Francisco Bay Area

GET IT ON Google Play    Download on the App Store

© 2020 Uber Technologies Inc.

Privacy   Accessibility   Terms

# EXHIBIT F

Select jurisdiction:    Language:

United States ▾    English

Last modified: 7/15/2020

# U.S. Terms of Use
## 1. Contractual Relationship

These Terms of Use ("Terms") govern your access or use, from within the United States and its territories and possessions, of the applications, websites, content, products, and services (the "Services," as more fully defined below in Section 3) made available in the United States and its territories and possessions by Uber USA, LLC and its parents, subsidiaries, representatives, affiliates, officers and directors (collectively, "Uber"). PLEASE READ THESE TERMS CAREFULLY, AS THEY CONSTITUTE A LEGAL AGREEMENT BETWEEN YOU AND UBER. In these Terms, the words "including" and "include" mean "including, but not limited to."

By accessing or using the Services, you confirm your agreement to be bound by these Terms. If you do not agree to these Terms, you may not access or use the Services. These Terms expressly supersede prior agreements or arrangements with you. Uber may immediately terminate these Terms or any Services with respect to you, or generally cease offering or deny access to the Services or any portion thereof, at any time for any reason.

IMPORTANT: PLEASE REVIEW THE ARBITRATION AGREEMENT SET FORTH BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH UBER ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION. BY ENTERING THIS AGREEMENT, YOU EXPRESSLY ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND ALL OF THE TERMS OF THIS AGREEMENT AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT DECISION.

Supplemental terms may apply to certain Services, such as policies for a particular event, program, activity or promotion, and such supplemental terms will be disclosed to you in separate region-specific disclosures (e.g., a particular city webpage on Uber.com) or in connection with the applicable Service(s). Supplemental terms are in addition to, and shall be deemed a part of, the Terms for the purposes of the applicable Service(s). Supplemental terms shall prevail over these Terms in the event of a conflict with respect to the applicable Services.

Uber may amend the Terms from time to time. Amendments will be effective upon Uber's posting of such updated Terms at this location or in the amended policies or supplemental terms on the applicable Service(s). Your continued access or use of the Services after such posting confirms your consent to be bound by the Terms, as amended. If Uber changes these Terms after the date you first agreed to the Terms (or to any subsequent changes to these Terms), you may reject any such change by providing Uber written notice of such rejection within 30 days of the date such change became effective, as indicated in the "Effective" date above. This written notice must be provided either (a) by mail or hand delivery to our registered agent for service of process, c/o Uber USA, LLC (the name and current contact information for the registered agent in each state are available online here), or (b) by email from the email address associated with your Account to: change-dr@uber.com. In order to be effective, the notice must include your full name and clearly indicate your intent to reject changes to these Terms. By rejecting changes, you are agreeing that you will continue to be bound by the provisions of these Terms as of the date you first agreed to the Terms (or to any subsequent changes to these Terms).

Uber's collection and use of personal information in connection with the Services is described in Uber's Privacy Statements located at https://www.uber.com/privacy/notice.

## 2. Arbitration Agreement

By agreeing to the Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration, as Case MDL No. 3084   Document 65-2   Filed 08/18/23   Page 58 of 234 set forth in this Arbitration Agreement. This will preclude you from bringing any class, collective, or representative action against Uber, and also preclude you from participating in or recovering relief under any current or future class, collective, consolidated, or representative action brought against Uber by someone else.

**Agreement to Binding Arbitration Between You and Uber.**

You and Uber agree that any dispute, claim or controversy arising out of or relating to (a) these Terms or the existence, breach, termination, enforcement, interpretation or validity thereof, or (b) your access to or use of the Services at any time, whether before or after the date you agreed to the Terms, will be settled by binding arbitration between you and Uber, and not in a court of law. Notwithstanding the foregoing, where you allege claims of sexual assault or sexual harassment occurring in connection with your use of the Services, you may elect to bring those claims in a court of competent jurisdiction instead of arbitration. Uber agrees to honor your election of forum with respect to your individual sexual assault or sexual harassment claim but in so doing does not waive the enforceability of this Arbitration Agreement as to any other provision (including, but not limited to, the waivers provided in the following paragraph, which will continue to apply in court and arbitration), controversy, claim or dispute.

You acknowledge and agree that you and Uber are each waiving the right to a trial by jury or to participate as a plaintiff or class member in any purported class action or representative proceeding. Unless both you and Uber otherwise agree in writing, any arbitration will be conducted only on an individual basis and not in a class, collective, consolidated, or representative proceeding. However, you and Uber each retain the right to bring an individual action in small claims court and the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights.

**Rules and Governing Law.**

The arbitration will be administered by the American Arbitration Association ("AAA") in accordance with the AAA's Consumer Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the "AAA Rules") then in effect, except as modified by this Arbitration Agreement. The AAA Rules are available at www.adr.org or by calling the AAA at 1-800-778-7879.

The parties agree that the arbitrator ("Arbitrator"), and not any federal, state, or local court or agency, shall have exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including any claim that all or any part of this Arbitration Agreement is void or voidable. The Arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether the Terms are unconscionable or illusory and any defense to arbitration, including waiver, delay, laches, or estoppel.

Notwithstanding any choice of law or other provision in the Terms, the parties agree and acknowledge that this Arbitration Agreement evidences a transaction involving interstate commerce and that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), will govern its interpretation and enforcement and proceedings pursuant thereto. It is the intent of the parties that the FAA and AAA Rules shall preempt all state laws to the fullest extent permitted by law. If the FAA and AAA Rules are found to not apply to any issue that arises under this Arbitration Agreement or the enforcement thereof, then that issue shall be resolved under the laws of the state of California.

**Process.**

A party who desires to initiate arbitration must provide the other party with a written Demand for Arbitration as specified in the AAA Rules. (The AAA provides a form Demand for Arbitration - Consumer Arbitration Rules at www.adr.org or by calling the AAA at 1-800-778-7879). The Arbitrator will be either (1) a retired judge or (2) an attorney specifically licensed to practice law in the state of California and will be selected by the parties from the AAA's roster of consumer dispute arbitrators. If the parties are unable to agree upon an Arbitrator within seven (7) days of delivery of the Demand for Arbitration, then the AAA will appoint the Arbitrator in accordance with the AAA Rules.

**Location and Procedure.**

Unless you and Uber otherwise agree, the arbitration will be conducted in the county where you reside. If your claim does not exceed $10,000, then the arbitration will be conducted solely on the basis of documents you and Uber submit to the Arbitrator, unless you request a hearing or the Arbitrator determines that a hearing is necessary. If your claim exceeds $10,000, your right to

a hearing will be determined by the AAA Rules. Subject to the AAA Rules, the Arbitrator will have the discretion to direct a reasonable exchange of information by the parties, consistent with the expedited nature of the arbitration.

**Arbitrator's Decision.**

The Arbitrator will render an award within the time frame specified in the AAA Rules. Judgment on the arbitration award may be entered in any court having competent jurisdiction to do so. The Arbitrator may award declaratory or injunctive relief only in favor of the claimant and only to the extent necessary to provide relief warranted by the claimant's individual claim. An Arbitrator's decision shall be final and binding on all parties. An Arbitrator's decision and judgment thereon shall have no precedential or collateral estoppel effect. If you prevail in arbitration you will be entitled to an award of attorneys' fees and expenses, to the extent provided under applicable law. Uber will not seek, and hereby waives all rights Uber may have under applicable law to recover attorneys' fees and expenses if Uber prevails in arbitration.

**Fees.**

Your responsibility to pay any AAA filing, administrative and arbitrator fees will be solely as set forth in the AAA Rules. However, if your claim for damages does not exceed $75,000, Uber will pay all such fees, unless the Arbitrator finds that either the substance of your claim or the relief sought in your Demand for Arbitration was frivolous or was brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)).

**Changes.**

Notwithstanding the provisions in Section I above, regarding consent to be bound by amendments to these Terms, if Uber changes this Arbitration Agreement after the date you first agreed to the Terms (or to any subsequent changes to the Terms), you may reject any such change by providing Uber written notice of such rejection within 30 days of the date such change became effective, as indicated in the "Effective" date above. This written notice must be provided either (a) by mail or hand delivery to our registered agent for service of process, c/o Uber USA, LLC (the name and current contact information for the registered agent in each state are available online here), or (b) by email from the email address associated with your Account to: change-dr@uber.com. In order to be effective, the notice must include your full name and clearly indicate your intent to reject changes to this Arbitration Agreement. By rejecting changes, you are agreeing that you will arbitrate any dispute between you and Uber in accordance with the provisions of this Arbitration Agreement as of the date you first agreed to the Terms (or to any subsequent changes to the Terms).

**Severability and Survival.**

If any portion of this Arbitration Agreement is found to be unenforceable or unlawful for any reason, (1) the unenforceable or unlawful provision shall be severed from these Terms; (2) severance of the unenforceable or unlawful provision shall have no impact whatsoever on the remainder of the Arbitration Agreement or the parties' ability to compel arbitration of any remaining claims on an individual basis pursuant to the Arbitration Agreement; and (3) to the extent that any claims must therefore proceed on a class, collective, consolidated, or representative basis, such claims must be litigated in a civil court of competent jurisdiction and not in arbitration, and the parties agree that litigation of those claims shall be stayed pending the outcome of any individual claims in arbitration.

# 3. The Services

The Services comprise mobile applications and related services (each, an "Application"), which enable users to arrange and schedule transportation, logistics and/or delivery services and/or to purchase certain goods, including with third party providers of such services and goods under agreement with Uber or certain of Uber's affiliates ("Third Party Providers"). In certain instances the Services may also include an option to receive transportation, logistics and/or delivery services for an upfront price, subject to acceptance by the respective Third Party Providers. Unless otherwise agreed by Uber in a separate written agreement with you, the Services are made available solely for your personal, noncommercial use. YOU ACKNOWLEDGE THAT YOUR ABILITY TO OBTAIN TRANSPORTATION, LOGISTICS AND/OR DELIVERY SERVICES THROUGH THE USE OF THE SERVICES DOES NOT ESTABLISH UBER AS A PROVIDER OF TRANSPORTATION, LOGISTICS OR DELIVERY SERVICES OR AS A TRANSPORTATION CARRIER.

**License.**

Case MDL No. 3084    Document 65-2    Filed 08/18/23    Page 60 of 234

Subject to your compliance with these Terms, Uber grants you a limited, non-exclusive, non-sublicensable, revocable, non-transferable license to: (i) access and use the Applications on your personal device solely in connection with your use of the Services; and (ii) access and use any content, information and related materials that may be made available through the Services, in each case solely for your personal, noncommercial use. Any rights not expressly granted herein are reserved by Uber and Uber's licensors.

**Restrictions.**

You may not: (i) remove any copyright, trademark or other proprietary notices from any portion of the Services; (ii) reproduce, modify, prepare derivative works based upon, distribute, license, lease, sell, resell, transfer, publicly display, publicly perform, transmit, stream, broadcast or otherwise exploit the Services except as expressly permitted by Uber; (iii) decompile, reverse engineer or disassemble the Services except as may be permitted by applicable law; (iv) link to, mirror or frame any portion of the Services; (v) cause or launch any programs or scripts for the purpose of scraping, indexing, surveying, or otherwise data mining any portion of the Services or unduly burdening or hindering the operation and/or functionality of any aspect of the Services; or (vi) attempt to gain unauthorized access to or impair any aspect of the Services or its related systems or networks.

**Provision of the Services.**

You acknowledge that portions of the Services may be made available under Uber's various brands or request options associated with transportation or logistics, including the transportation request brands currently referred to as "Uber," "uberX," "uberXL," "UberBLACK," "UberSELECT," "UberSUV" and "UberLUX" and the logistics request products currently referred to as "UberRUSH," and "UberEATS." You also acknowledge that the Services may be made available under such brands or request options by or in connection with: (i) certain of Uber's subsidiaries and affiliates; or (ii) independent Third Party Providers, including Transportation Network Company drivers, Transportation Charter Permit holders or holders of similar transportation permits, authorizations or licenses.

**Third Party Services and Content.**

The Services may be made available or accessed in connection with third party services and content (including advertising) that Uber does not control. You acknowledge that different terms of use and privacy policies may apply to your use of such third party services and content. Uber does not endorse such third party services and content and in no event shall Uber be responsible or liable for any products or services of such third party providers. Additionally, Apple Inc., Google, Inc., Microsoft Corporation or BlackBerry Limited will be a third-party beneficiary to this contract if you access the Services using Applications developed for Apple iOS, Android, Microsoft Windows, or Blackberry-powered mobile devices, respectively. These third party beneficiaries are not parties to this contract and are not responsible for the provision or support of the Services in any manner. Your access to the Services using these devices is subject to terms set forth in the applicable third party beneficiary's terms of service.

**Ownership.**

The Services and all rights therein are and shall remain Uber's property or the property of Uber's licensors. Neither these Terms nor your use of the Services convey or grant to you any rights: (i) in or related to the Services except for the limited license granted above; or (ii) to use or reference in any manner Uber's company names, logos, product and service names, trademarks or services marks or those of Uber's licensors.

# 4. Access and Use of the Services

**User Accounts.**

In order to use most aspects of the Services, you must register for and maintain an active personal user Services account ("Account"). You must be at least 18 years of age, or the age of legal majority in your jurisdiction (if different than 18), to obtain an Account, unless a specific Service permits otherwise. Account registration requires you to submit to Uber certain personal information, such as your name, address, mobile phone number and age, as well as at least one valid payment method supported by Uber. You agree to maintain accurate, complete, and up-to-date information in your Account. Your failure to maintain accurate, complete, and up-to-date Account information, including having an invalid or expired payment method on file, may result in your inability to access or use the Services. You are responsible for all activity that occurs under your Account, and you agree to maintain the security and secrecy of your Account username and password at all times. Unless otherwise permitted by Uber in writing, you may only possess one Account.

**User Requirements and Conduct.**

The Service is not available for use by persons under the age of 18. You may not authorize third parties to use your Account, and you may not allow persons under the age of 18 to receive transportation or logistics services from Third Party Providers unless they are accompanied by you. You may not assign or otherwise transfer your Account to any other person or entity. You agree to comply with all applicable laws when accessing or using the Services, and you may only access or use the Services for lawful purposes (e.g., no transport of unlawful or hazardous materials). You may not in your access or use of the Services cause nuisance, annoyance, inconvenience, or property damage, whether to the Third Party Provider or any other party. If you fail to comply with these Terms (including policies and supplemental terms), you may be denied access to or use of the Services and Uber may charge you a cancellation fee for a transaction that could not be completed because of your failure to comply with these Terms. In certain instances you may be asked to provide proof of identity or other method of identity verification to access or use the Services, and you agree that you may be denied access to or use of the Services if you refuse to provide proof of identity or other method of identity verification.

**Text Messaging and Telephone Calls.**

You agree that Uber may contact you by telephone or text messages (including by an automatic telephone dialing system) at any of the phone numbers provided by you or on your behalf in connection with an Uber account, including for marketing purposes. You understand that you are not required to provide this consent as a condition of purchasing any property, goods or services. You also understand that you may opt out of receiving text messages from Uber at any time, either by texting the word "STOP" to 89203 using the mobile device that is receiving the messages, or by contacting help.uber.com. If you do not choose to opt out, Uber may contact you as outlined in its User Privacy Statement, located at https://www.uber.com/privacy/notice.

**User Provided Content.**

Uber may, in Uber's sole discretion, permit you from time to time to submit, upload, publish or otherwise make available to Uber through the Services textual, audio, and/or visual content and information, including commentary and feedback related to the Services, initiation of support requests, and submission of entries for competitions and promotions ("User Content"). Any User Content provided by you remains your property. However, by providing User Content to Uber, you grant Uber a worldwide, perpetual, irrevocable, transferable, royalty-free license, with the right to sublicense, to use, copy, modify, create derivative works of, distribute, publicly display, publicly perform, and otherwise exploit in any manner such User Content in all formats and distribution channels now known or hereafter devised (including in connection with the Services and Uber's business and on third-party sites and services), without further notice to or consent from you, and without the requirement of payment to you or any other person or entity.

You represent and warrant that: (i) you either are the sole and exclusive owner of all User Content or you have all rights, licenses, consents and releases necessary to grant Uber the license to the User Content as set forth above; and (ii) neither the User Content, nor your submission, uploading, publishing or otherwise making available of such User Content, nor Uber's use of the User Content as permitted herein will infringe, misappropriate or violate a third party's intellectual property or proprietary rights, or rights of publicity or privacy, or result in the violation of any applicable law or regulation.

You agree to not provide User Content that is defamatory, libelous, hateful, violent, obscene, pornographic, unlawful, or otherwise offensive, as determined by Uber in its sole discretion, whether or not such material may be protected by law. Uber may, but shall not be obligated to, review, monitor, or remove User Content, at Uber's sole discretion and at any time and for any reason, without notice to you.

**Network Access and Devices.**

You are responsible for obtaining the data network access necessary to use the Services. Your mobile network's data and messaging rates and fees may apply if you access or use the Services from your device. You are responsible for acquiring and updating compatible hardware or devices necessary to access and use the Services and Applications and any updates thereto. Uber does not guarantee that the Services, or any portion thereof, will function on any particular hardware or devices. In addition, the Services may be subject to malfunctions and delays inherent in the use of the Internet and electronic communications.

# 5. Payment

You understand that use of the Services may result in charges to you for the services or goods you receive ("Charges"). Uber will receive and/or enable your payment of the applicable Charges for services or goods obtained through your use of the Services. Charges will be inclusive of applicable taxes where required by law. Charges may include other applicable fees, tolls, and/or surcharges including a booking fee, municipal tolls, airport surcharges or processing fees for split payments. Please visit www.uber.com/cities for further information on your particular location.

All Charges and payments will be enabled by Uber using the preferred payment method designated in your Account, after which you will receive a receipt by email. If your primary Account payment method is determined to be expired, invalid or otherwise not able to be charged, you agree that Uber may use a secondary payment method in your Account, if available. Charges paid by you are final and non-refundable, unless otherwise determined by Uber.

As between you and Uber, Uber reserves the right to establish, remove and/or revise Charges for any or all services or goods obtained through the use of the Services at any time in Uber's sole discretion. Further, you acknowledge and agree that Charges applicable in certain geographical areas may increase substantially during times of high demand. Uber will use reasonable efforts to inform you of Charges that may apply, provided that you will be responsible for Charges incurred under your Account regardless of your awareness of such Charges or the amounts thereof. Uber may from time to time provide certain users with promotional offers and discounts that may result in different amounts charged for the same or similar services or goods obtained through the use of the Services, and you agree that such promotional offers and discounts, unless also made available to you, shall have no bearing on your use of the Services or the Charges applied to you. You may elect to cancel your request for Services at any time prior to the commencement of such Services, in which case you may be charged a cancellation fee on a Third Party Provider's behalf. After you have received services or goods obtained through the Service, you will have the opportunity to rate your experience and leave additional feedback. Uber may use the proceeds of any Charges for any purpose, subject to any payment obligations it has agreed to with any Third Party Providers or other third parties.

In certain cases, with respect to Third Party Providers, Charges you incur will be owed directly to Third Party Providers, and Uber will collect payment of those charges from you, on the Third Party Provider's behalf as their limited payment collection agent, and payment of the Charges shall be considered the same as payment made directly by you to the Third Party Provider. In such cases, you retain the right to request lower Charges from a Third Party Provider for services or goods received by you from such Third Party Provider at the time you receive such services or goods, and Charges you incur will be owed to the Third Party Provider. Uber will respond accordingly to any request from a Third Party Provider to modify the Charges for a particular service or good. This payment structure is intended to fully compensate a Third Party Provider, if applicable, for the services or goods obtained in connection with your use of the Services. In all other cases, Charges you incur will be owed and paid directly to Uber or its affiliates, where Uber is solely liable for any obligations to Third Party Providers. In such cases, you retain the right to request lower Charges from Uber for services or goods received by you from a Third Party Provider at the time you receive such services or goods, and Uber will respond accordingly to any request from you to modify the Charges for a particular service or good. Except with respect to taxicab transportation services requested through the Application, Uber does not designate any portion of your payment as a tip or gratuity to a Third Party Provider. Any representation by Uber (on Uber's website, in the Application, or in Uber's marketing materials) to the effect that tipping is "voluntary," "not required," and/or "included" in the payments you make for services or goods provided is not intended to suggest that Uber provides any additional amounts, beyond those described above, to a Third Party Provider you may use. You understand and agree that, while you are free to provide additional payment as a gratuity to any Third Party Provider who provides you with services or goods obtained through the Service, you are under no obligation to do so. Gratuities are voluntary.

**Repair, Cleaning or Lost and Found Fees.**

You shall be responsible for the cost of repair for damage to, or necessary cleaning of, vehicles and property resulting from use of the Services under your Account in excess of normal "wear and tear" damages and necessary cleaning ("Repair or Cleaning"). In the event that a Repair or Cleaning request is verified by Uber in Uber's reasonable discretion, Uber reserves the right to facilitate payment for the reasonable cost of such Repair or Cleaning using your payment method designated in your Account. Such amounts, as well as those pertaining to lost and found goods, will be transferred by Uber to a Third Party Provider, if applicable, and are non-refundable.

The amounts related to repair, cleaning or lost & found fees applicable in Puerto Rico may be found at https://www.uber.com/es-US/blog/puerto-rico/puerto-rico-terminos-y-condiciones/ and may be updated from time to time solely by Uber.

APP358

# 6. Disclaimers; Limitation of Liability; Indemnity.

**DISCLAIMER.**

THE SERVICES ARE PROVIDED "AS IS" AND "AS AVAILABLE." UBER DISCLAIMS ALL REPRESENTATIONS AND WARRANTIES, EXPRESS, IMPLIED, OR STATUTORY, NOT EXPRESSLY SET OUT IN THESE TERMS, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. IN ADDITION, UBER MAKES NO REPRESENTATION, WARRANTY, OR GUARANTEE REGARDING THE RELIABILITY, TIMELINESS, QUALITY, SUITABILITY, OR AVAILABILITY OF THE SERVICES OR ANY SERVICES OR GOODS REQUESTED THROUGH THE USE OF THE SERVICES, OR THAT THE SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE. UBER DOES NOT GUARANTEE THE QUALITY, SUITABILITY, SAFETY OR ABILITY OF THIRD PARTY PROVIDERS. YOU AGREE THAT THE ENTIRE RISK ARISING OUT OF YOUR USE OF THE SERVICES, AND ANY SERVICE OR GOOD REQUESTED IN CONNECTION THEREWITH, REMAINS SOLELY WITH YOU, TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW.

**LIMITATION OF LIABILITY.**

UBER SHALL NOT BE LIABLE FOR INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, PUNITIVE, OR CONSEQUENTIAL DAMAGES, INCLUDING LOST PROFITS, LOST DATA, PERSONAL INJURY, OR PROPERTY DAMAGE RELATED TO, IN CONNECTION WITH, OR OTHERWISE RESULTING FROM ANY USE OF THE SERVICES, REGARDLESS OF THE NEGLIGENCE (EITHER ACTIVE, AFFIRMATIVE, SOLE, OR CONCURRENT) OF UBER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

UBER SHALL NOT BE LIABLE FOR ANY DAMAGES, LIABILITY OR LOSSES ARISING OUT OF: (i) YOUR USE OF OR RELIANCE ON THE SERVICES OR YOUR INABILITY TO ACCESS OR USE THE SERVICES; OR (ii) ANY TRANSACTION OR RELATIONSHIP BETWEEN YOU AND ANY THIRD PARTY PROVIDER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. UBER SHALL NOT BE LIABLE FOR DELAY OR FAILURE IN PERFORMANCE RESULTING FROM CAUSES BEYOND UBER'S REASONABLE CONTROL. YOU ACKNOWLEDGE THAT THIRD PARTY PROVIDERS PROVIDING TRANSPORTATION SERVICES REQUESTED THROUGH SOME REQUEST PRODUCTS MAY OFFER RIDESHARING OR PEER-TO-PEER TRANSPORTATION SERVICES AND MAY NOT BE PROFESSIONALLY LICENSED OR PERMITTED.

THE SERVICES MAY BE USED BY YOU TO REQUEST AND SCHEDULE TRANSPORTATION, GOODS, OR LOGISTICS SERVICES WITH THIRD PARTY PROVIDERS, BUT YOU AGREE THAT UBER HAS NO RESPONSIBILITY OR LIABILITY TO YOU RELATED TO ANY TRANSPORTATION, GOODS OR LOGISTICS SERVICES PROVIDED TO YOU BY THIRD PARTY PROVIDERS OTHER THAN AS EXPRESSLY SET FORTH IN THESE TERMS.

THE LIMITATIONS AND DISCLAIMER IN THIS SECTION DO NOT PURPORT TO LIMIT LIABILITY OR ALTER YOUR RIGHTS AS A CONSUMER THAT CANNOT BE EXCLUDED UNDER APPLICABLE LAW. BECAUSE SOME STATES OR JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF OR THE LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, IN SUCH STATES OR JURISDICTIONS, UBER'S LIABILITY SHALL BE LIMITED TO THE EXTENT PERMITTED BY LAW. THIS PROVISION SHALL HAVE NO EFFECT ON UBER'S CHOICE OF LAW PROVISION SET FORTH BELOW.

**Indemnity.**

You agree to indemnify and hold Uber and its affiliates and their officers, directors, employees, and agents harmless from any and all claims, demands, losses, liabilities, and expenses (including attorneys' fees), arising out of or in connection with: (i) your use of the Services or services or goods obtained through your use of the Services; (ii) your breach or violation of any of these Terms; (iii) Uber's use of your User Content; or (iv) your violation of the rights of any third party, including Third Party Providers.

# 7. Other Provisions

**Choice of Law.**

These Terms are governed by and construed in accordance with the laws of the State of California, U.S.A., without giving effect to any conflict of law principles, except as may be otherwise provided in the Arbitration Agreement above or in supplemental terms applicable to your region. However, the choice of law provision regarding the interpretation of these Terms is not intended to create any other substantive right to non-Californians to assert claims under California law whether that be by statute, common law, or otherwise. These provisions, and except as otherwise provided in Section 2 of these Terms, are only intended to specify the use of California law to interpret these Terms and the forum for disputes asserting a breach of these Terms, and these provisions

shall not be interpreted as generally extending California law to you if you do not otherwise reside in California. The foregoing choice of law and forum selection provisions do not apply to the arbitration clause in Section 2 or to any arbitrable disputes as defined therein. Instead, as described in Section 2, the Federal Arbitration Act shall apply to any such disputes.

**Claims of Copyright Infringement.**

Claims of copyright infringement should be sent to Uber's designated agent. Please visit Uber's web page at https://www.uber.com/legal/intellectual-property/copyright/global for the designated address and additional information.

**Notice.**

Uber may give notice by means of a general notice on the Services, electronic mail to your email address in your Account, telephone or text message to any phone number provided in connection with your account, or by written communication sent by first class mail or pre-paid post to any address connected with your Account. Such notice shall be deemed to have been given upon the expiration of 48 hours after mailing or posting (if sent by first class mail or pre-paid post) or 12 hours after sending (if sent by email or telephone). You may give notice to Uber, with such notice deemed given when received by Uber, at any time by first class mail or pre-paid post to our registered agent for service of process, c/o Uber USA, LLC. The name and current contact information for the registered agent in each state are available online here.

**General.**

You may not assign these Terms without Uber's prior written approval. Uber may assign these Terms without your consent to: (i) a subsidiary or affiliate; (ii) an acquirer of Uber's equity, business or assets; or (iii) a successor by merger. Any purported assignment in violation of this section shall be void. No joint venture, partnership, employment, or agency relationship exists between you, Uber or any Third Party Provider as a result of this Agreement or use of the Services. If any provision of these Terms is held to be invalid or unenforceable, such provision shall be struck and the remaining provisions shall be enforced to the fullest extent under law. Uber's failure to enforce any right or provision in these Terms shall not constitute a waiver of such right or provision unless acknowledged and agreed to by Uber in writing. This provision shall not affect the Severability and Survivability section of the Arbitration Agreement of these Terms.

# Return to Legal Hub→

Uber

Visit Help Center

Do not sell my info (California)

## Company

About us

Newsroom

Investors

Blog

Careers

Products

Ride

Drive

Eat

Uber for Business

Uber Freight

Global citizenship

Safety

Diversity and Inclusion

Innovation

Advanced Technologies Group

AI

Elevate

English

San Francisco Bay Area

© 2020 Uber Technologies Inc.

Privacy          Accessibility          Terms

APP361

# EXHIBIT G

Last modified: 1/18/2021

# U.S. Terms of Use
## 1. Contractual Relationship

These Terms of Use ("Terms") govern your access or use, from within the United States and its territories and possessions, of the multi-sided digital marketplace platform ("Uber Marketplace Platform") and any related content or services (collectively, the "Services," as more fully defined below in Section 3) made available in the United States and its territories and possessions by Uber Technologies, Inc. and its subsidiaries, representatives, affiliates, officers and directors (collectively, "Uber"). PLEASE READ THESE TERMS CAREFULLY, AS THEY CONSTITUTE A LEGAL AGREEMENT BETWEEN YOU AND UBER. In these Terms, the words "including" and "include" mean "including, but not limited to."

By accessing or using the Services, you confirm your agreement to be bound by these Terms. If you do not agree to these Terms, you may not access or use the Services. These Terms expressly supersede prior agreements or arrangements with you regarding the use of the Services.

Notwithstanding the foregoing, these Terms do not supersede or otherwise impact the enforceability of any agreements you may have with Uber or its subsidiaries regarding driving, delivering and/or providing transportation and/or delivery services (e.g., the Platform Access Agreement, the Technology Services Agreement and/or any similar agreements). To the extent (but only to the extent) any agreement you may have with Uber regarding driving, delivering and/or providing transportation and/or delivery services conflicts with these Terms, those agreements (and not these Terms) will prevail.

Uber may immediately terminate these Terms or any Services with respect to you, or generally cease offering or deny access to the Services or any portion thereof, at any time for any reason.

IMPORTANT: PLEASE BE ADVISED THAT THIS AGREEMENT CONTAINS PROVISIONS THAT GOVERN HOW CLAIMS BETWEEN YOU AND UBER CAN BE BROUGHT, INCLUDING THE ARBITRATION AGREEMENT (SEE SECTION 2 BELOW). PLEASE REVIEW THE ARBITRATION AGREEMENT BELOW CAREFULLY, AS IT REQUIRES YOU TO RESOLVE ALL DISPUTES WITH UBER ON AN INDIVIDUAL BASIS AND, WITH LIMITED EXCEPTIONS, THROUGH FINAL AND BINDING ARBITRATION (AS DESCRIBED IN SECTION 2 BELOW). BY ENTERING INTO THIS AGREEMENT, YOU EXPRESSLY ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND ALL OF THE TERMS OF THIS AGREEMENT AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT DECISION.

Supplemental terms may apply to certain options or offers available through the Services, such as policies for a particular ride or logistics option (e.g., Uber Connect), event, program, activity, or promotion. Such supplemental terms will be disclosed to you in connection with the applicable option or offer. Supplemental terms are in addition to, and shall be deemed a part of, the Terms for the purposes of the applicable option or offer. Supplemental terms shall prevail over these Terms in the event of a conflict with respect to the applicable option or offer.

Uber may make changes to these Terms from time to time. If Uber makes changes, it will provide you with notice of such changes, such as by sending an email, providing a notice through the Services, or updating the date at the top of these Terms. Unless Uber says otherwise in its notice, the amended Terms will be effective immediately and your continued access to and use of the Services after Uber provides such notice will confirm your acceptance of the changes. If you do not agree to the amended Terms, you must stop accessing and using the Services.

Uber's collection and use of personal information in connection with the Services is described in Uber's Privacy Notice located at https://www.uber.com/privacy/notice.

# 2. Arbitration Agreement

By agreeing to the Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration as set forth in this Arbitration Agreement. This will preclude you from bringing any class, collective, or representative action against Uber, and also preclude you from participating in or recovering relief under any current or future class, collective, consolidated, or representative action brought against Uber by someone else. For the avoidance of doubt, this precludes you from bringing or participating in any kind of any class, collective, coordinated, consolidated, representative or other kind of group, multi-plaintiff or joint action against Uber.

## (a) Agreement to Binding Arbitration Between You and Uber.

Except as expressly provided below in Section 2(b), you and Uber agree that any dispute, claim or controversy in any way arising out of or relating to (i) these Terms and prior versions of these Terms, or the existence, breach, termination, enforcement, interpretation, scope, waiver, or validity thereof, (ii) your access to or use of the Services at any time, (iii) incidents or accidents resulting in personal injury that you allege occurred in connection with your use of the Services, whether the dispute, claim or controversy occurred or accrued before or after the date you agreed to the Terms, or (iv) your relationship with Uber, will be settled by binding arbitration between you and Uber, and not in a court of law. This Agreement survives after your relationship with Uber ends.

You acknowledge and agree that you and Uber are each waiving the right to a trial by jury or to bring or to participate as a plaintiff or class member in any class, purported class, collective, coordinated, consolidated, or representative proceeding.

This Arbitration Agreement shall be binding upon, and shall include any claims brought by or against any third-parties, including but not limited to your spouses, heirs, third-party beneficiaries and assigns, where their underlying claims are in relation to your use of the Services. To the extent that any third-party beneficiary to this agreement brings claims against the Parties; those claims shall also be subject to this Arbitration Agreement.

## (b) Exceptions to Arbitration

Notwithstanding the foregoing, this Arbitration Agreement shall not require arbitration of the following claims: (i) individual claims brought in small claims court so long as the matter remains in such court and advances only on an individual (non-class, non-representative) basis; (ii) individual claims of sexual assault or sexual harassment occurring in connection with your use of the Services; and/or (iii) injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights.

Such claims may be brought and litigated in a court of competent jurisdiction by you on an individual basis only. On an individual basis means that you cannot bring such claims as a class, coordinated, consolidated, collective, or representative action against Uber. For the avoidance of doubt, this precludes you from bringing claims as or participating in any kind of any class, collective, coordinated, consolidated, representative or other kind of group, multi-plaintiff or joint action against Uber and no action brought by you may be consolidated or joined in any fashion with any other proceeding. Where your claims are brought and litigated to completion on such an individual basis in a court of competent jurisdiction, Uber agrees to honor your election.

The parties' agreement not to require arbitration in these limited instances does not waive the enforceability of this Arbitration Agreement as to any other provision (including, but not limited to, the waivers provided for in Section 2(a), which will continue to apply in court as well as in arbitration), or the enforceability of this Agreement as to any other controversy, claim or dispute.

## (c) Rules and Governing Law.

The arbitration will be administered by the American Arbitration Association ("AAA") in accordance with the AAA's Consumer Arbitration Rules (the "AAA Rules") then in effect, except as modified by this Arbitration Agreement. The AAA Rules are available at www.adr.org or by calling the AAA at 1-800-778-7879.

The parties agree that the arbitrator ("Arbitrator"), and not any federal, state, or local court or agency, shall have exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including any claim that all or any part of this Arbitration Agreement is void or voidable. The Arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether the Terms are applicable, unconscionable or illusory and any defense to arbitration, including waiver, delay, laches, or estoppel. If there is a dispute about whether this Arbitration Agreement can be enforced or applies to a dispute, you and Uber agree that the arbitrator will decide that issue.

Notwithstanding any choice of law or other provision in the Terms, the parties agree and acknowledge that this Arbitration Agreement evidences a transaction involving interstate commerce and that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), will govern its interpretation and enforcement and proceedings pursuant thereto. It is the intent of the parties to be bound by the provisions of the FAA for all purposes, including, but not limited to, interpretation, implementation, enforcement, and administration of this Arbitration Agreement, and that the FAA and AAA Rules shall preempt all state laws to the fullest extent permitted by law. If the FAA and AAA Rules are found to not apply to any issue regarding the interpretation or enforcement of this Arbitration Agreement, then that issue shall be resolved under the laws of the state where you reside when you accept these Terms.

Any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to the Terms, shall be governed by and construed in accordance with the laws of the state in which the incident or accident occurred.

## (d) Process.

Pre-Arbitration Dispute Resolution and Notification. Prior to initiating an arbitration, you and Uber each agree to notify the other party in writing of any dispute and to attempt to negotiate an informal resolution. Notice of the dispute must include the party's name, preferred contact information, a brief description of the dispute, and the relief sought. Notice to Uber must be sent to Uber Technologies, Inc., Attn: Legal Department, 1515 3rd Street, San Francisco, CA 94158. Neither party shall initiate arbitration until 30 days after the notice is sent. Engaging in this pre-arbitration dispute resolution and notification process is a requirement that must be fulfilled before commencing arbitration. The statute of limitations and any filing fee deadlines shall be tolled while the parties engage in the informal resolution process required by this paragraph.

Initiating Arbitration. In order to initiate arbitration, a party must provide the other party with a written Demand for Arbitration and file the Demand with AAA as specified in the AAA Rules. (The AAA provides a form Demand for Arbitration - Consumer Arbitration Rules at www.adr.org or by calling the AAA at 1-800-778-7879). A party initiating an arbitration against Uber must send the written Demand for Arbitration to Uber Technologies, Inc., LLC, Attn: Legal Department, 1515 3rd

Street, San Francisco, CA 94158, or serve the Demand on Uber's registered agent for service of process, c/o Uber Technologies, Inc. (the name and current contact information for the registered agent in each state are available online here). The Arbitrator will be either (1) a retired judge or (2) an attorney licensed to practice law in the state where the arbitration is conducted. The Arbitrator will be selected by the parties from the AAA's National Roster of Arbitrators. If the parties are unable to agree upon an Arbitrator after a good faith meet and confer effort, then the AAA will appoint the Arbitrator in accordance with the AAA Rules.

### (e) Location and Procedure.

Unless you and Uber otherwise agree, the arbitration will be conducted in the county where you reside. If your claim does not exceed $10,000, then the arbitration will be conducted solely on the basis of documents you and Uber submit to the Arbitrator, unless you request a hearing or the Arbitrator determines that a hearing is necessary. If your claim exceeds $10,000, your right to a hearing will be determined by the AAA Rules. Subject to the AAA Rules, the Arbitrator will have the discretion to direct a reasonable exchange of information by the parties, consistent with the expedited nature of the arbitration.

### (f) Arbitrator's Decision.

The Arbitrator will render an award within the time frame specified in the AAA Rules. Judgment on the arbitration award may be entered in any court having competent jurisdiction to do so. The Arbitrator may award declaratory or injunctive relief only in favor of the claimant and only to the extent necessary to provide relief warranted by the claimant's individual claim. An Arbitrator's decision shall be final and binding on all parties. An Arbitrator's decision and judgment thereon shall have no precedential or collateral estoppel effect. If you prevail in arbitration you may seek an award of attorneys' fees and expenses to the extent permitted under applicable law. Uber will not seek, and hereby waives all rights Uber may have under applicable law to recover attorneys' fees and expenses if Uber prevails in arbitration.

### (g) Fees.

Your responsibility to pay any AAA filing, administrative and arbitrator fees will be solely as set forth in the AAA Rules.

### (h) Severability and Survival.

If any portion of this Arbitration Agreement is found to be unenforceable or unlawful for any reason, (1) the unenforceable or unlawful provision shall be severed from these Terms; (2) severance of the unenforceable or unlawful provision shall have no impact whatsoever on the remainder of the Arbitration Agreement or the parties' ability to compel arbitration of any remaining claims on an individual basis pursuant to the Arbitration Agreement; and (3) to the extent that any claims must therefore proceed on a class, collective, consolidated, or representative basis, such claims must be litigated in a civil court of competent jurisdiction and not in arbitration, and the parties agree that litigation of those claims shall be stayed pending the outcome of any individual claims in arbitration.

## 3. The Marketplace Platform & Services

Uber operates a multi-sided digital marketplace platform that is offered in a number of forms, including mobile and/or web based applications ("Applications"). Among other things, the Uber Marketplace Platform enables you to receive: (i) services rendered by Uber that facilitate your connection to independent third party providers, including drivers and restaurants ("Third Party Providers"), for the purchase of services or goods, such as transportation, logistics and/or delivery services from those Third Party Providers; and (ii) any related content or services, including

payment processing and customer support. The Uber Marketplace Platform and the Uber content or services described in this Section are collectively referred to as "the Services". Unless otherwise agreed by Uber in a separate written agreement with you, the Services are made available solely for your personal, noncommercial use.

YOU ACKNOWLEDGE THAT YOUR ABILITY TO OBTAIN TRANSPORTATION, LOGISTICS AND/OR DELIVERY SERVICES FROM THIRD PARTY PROVIDERS THROUGH THE USE OF THE UBER MARKETPLACE PLATFORM AND SERVICES DOES NOT ESTABLISH UBER AS A PROVIDER OF TRANSPORTATION, LOGISTICS OR DELIVERY SERVICES OR AS A TRANSPORTATION OR PROPERTY CARRIER. UBER IS NOT A COMMON OR MOTOR CARRIER, DOES NOT TRANSPORT YOU, AND USE OF THE UBER MARKETPLACE PLATFORM IS ONLY OPEN TO REGISTERED USERS OF THE UBER MARKETPLACE PLATFORM AND NOT TO THE GENERAL PUBLIC.

YOU ACKNOWLEDGE THAT INDEPENDENT THIRD PARTY PROVIDERS, INCLUDING DRIVERS ARE NOT ACTUAL AGENTS, APPARENT AGENTS, OSTENSIBLE AGENTS, OR EMPLOYEES OF UBER IN ANY WAY.

YOU ALSO ACKNOWLEDGE THAT ANY SAFETY RELATED EFFORT, FEATURE, PROCESS, POLICY, STANDARD OR OTHER EFFORT UNDERTAKEN BY UBER, IN THE INTEREST OF PUBLIC SAFETY (WHETHER REQUIRED BY APPLICABLE REGULATIONS OR NOT), IS NOT AN INDICIA OF AN EMPLOYMENT, ACTUAL AGENCY, APPARENT AGENCY, OR OSTENSIBLE AGENCY RELATIONSHIP WITH AN INDEPENDENT THIRD PARTY DRIVER.

## License.

Subject to your compliance with these Terms, Uber grants you a limited, non-exclusive, non-sublicensable, revocable, non-transferable license to: (i) access and use the Applications on your personal device solely in connection with your use of the Services; and (ii) access and use any content, information and related materials that may be made available through the Services, in each case solely for your personal, noncommercial use. Any rights not expressly granted herein are reserved by Uber and Uber's licensors.

## Restrictions.

You may not: (i) remove any copyright, trademark or other proprietary notices from any portion of the Services; (ii) reproduce, modify, prepare derivative works based upon, distribute, license, lease, sell, resell, transfer, publicly display, publicly perform, transmit, stream, broadcast or otherwise exploit the Services except as expressly permitted by Uber; (iii) decompile, reverse engineer or disassemble the Services except as may be permitted by applicable law; (iv) link to, mirror or frame any portion of the Services; (v) cause or launch any programs or scripts for the purpose of unduly burdening or hindering the operation and/or functionality of any aspect of the Services; or (vi) attempt to gain unauthorized access to or impair any aspect of the Services or its related systems or networks.

## Third Party Services and Content.

The Services may be made available or accessed in connection with third party services and content (including advertising) that Uber does not control. Once you click on a link to third party services or content, you will be subject to the terms and conditions and privacy policy of that website, destination, or third party service provider. Uber will not warn you that you have left the Services or that you are subject to the terms and conditions (including privacy policies) of another website, destination, or third party service provider. You use all links in third party websites and advertisements at your own risk as these are not part of the Services and are not controlled by Uber. You acknowledge that different terms of use and privacy policies may apply to your use of

such third party services and content. Uber does not endorse such third party services and content and in no event shall Uber be responsible or liable for any products or services of such third party providers.

## App Stores.

You acknowledge and agree that the availability of the Applications may be dependent on the third party from which you received the Application's license, e.g., the Apple iPhone or Android app stores ("App Store"). You acknowledge and agree that this Agreement is between you and Uber and not with the App Store and that Uber is responsible for the provision of Services as described in this Agreement. However, if you downloaded the Application from the Apple App Store, Apple and its subsidiaries are third-party beneficiaries of this Agreement. Upon your acceptance of this Agreement, Apple shall have the right (and will be deemed to have accepted the right) to enforce this Agreement against you as a third-party beneficiary thereof. This Agreement incorporates by reference Apple's Licensed Application End User License Agreement, for purposes of which, you are "the end-user." In the event of a conflict in the terms of the Licensed Application End User License Agreement and this Agreement, the terms of this Agreement will control.

## Ownership.

The Services and all rights therein are and shall remain Uber's property or the property of Uber's licensors. Neither these Terms nor your use of the Services convey or grant to you any rights in or related to the Services except for the limited license granted above.

You agree that you will not use Uber's trademarks, service marks, or trade dress or any similar names, marks, or trade dress ("Uber's Marks"), aside from use incidental to your use of the Services, without express, written permission from Uber. This prohibition on using Uber's Marks includes, but is not limited to, use in domain names, websites, and social media accounts.

# 4. Access and Use of the Services

## User Accounts.

In order to use most aspects of the Services, you must register for and maintain an active personal user Services account ("Account"). You must be at least 18 years of age, or the age of legal majority in your jurisdiction (if different than 18), to obtain an Account, unless a specific Service permits otherwise. You cannot register for or maintain an Account if you have previously been banned from accessing or using the Services. Account registration requires you to submit to Uber certain personal information, such as your name, address, mobile phone number and age, as well as at least one valid payment method supported by Uber. For more information regarding Uber's use of your personal information, please see our Privacy Notice currently available at https://privacy.uber.com/policy/. You agree to maintain accurate, complete, and up-to-date information in your Account, including a valid phone number, address and payment method. Your failure to comply with these Terms (including policies and supplemental terms) including, without limitation, your failure to maintain accurate, complete, and up-to-date Account information, including having an invalid or expired payment method on file, may result in your inability to access or use the Services. You are responsible for all activity that occurs under your Account, and you agree to maintain the security and secrecy of your Account username and password at all times. Unless otherwise permitted by Uber in writing, you may only possess one Account.

## User Requirements and Conduct.

You agree to abide by the Uber Community Guidelines, available here. Failure to comply with the Community Guidelines or any violation of these terms may result in the permanent loss of access to

the Services.

The Services are not available for use by persons under the age of 18. You may not authorize third parties to use your Account, and you may not allow persons under the age of 18 to receive transportation, delivery or logistics services from Third Party Providers unless they are accompanied by you. You may not assign or otherwise transfer your Account to any other person or entity. You agree to comply with all applicable laws when accessing or using the Services, and you may only access or use the Services for lawful purposes (e.g., no transport of unlawful or hazardous materials). You may not in your access or use of the Services cause nuisance, annoyance, inconvenience, or property damage, whether to the Third Party Provider or any other party. If you request a ride option with a car seat, you acknowledge and agree that neither Uber nor the Third Party Provider is responsible for the safety of a child restraint/car seat that may be available in the Third Party Providers' Vehicle. You acknowledge and agree that it is your obligation to ensure that the car seat is installed correctly and that the child is properly secured in the seat. If you request a ride option where a driver agrees to provide you with assistance outside of the vehicle (e.g., Uber Assist), you acknowledge and agree that neither Uber nor the Third Party Provider is responsible for any injury or incident that may arise out of the assistance provided by the Third Party Provider. In certain instances you may be asked to provide proof of age, identity or other method of identity verification to access or use the Services, and you agree that you may be denied access to or use of the Services if you refuse to provide proof of age, identity or other method of identity verification.

Subject to the discretion of a Third Party Provider, you may be allowed to bring a small animal, such as a dog or cat, on a ride requested through the Uber Marketplace Platform. For such trips, you are responsible for properly securing the animal with a leash, harness, crate / carrier, or through other means. You are also responsible for ensuring that the animal does not cause damage or a mess in the Third Party Provider's vehicle. You may be subject to a Charge for Repair or Cleaning under Section 5 for any damage or mess caused by an animal that is transported during a ride requested under your Account. Please note, in accordance with Uber's policies on service animals and assistive devices, service animals are generally permitted to accompany riders without extra charge, regardless of whether it is a Pet Friendly Trip.

## Text Messaging and Telephone Calls.

You agree that Uber Technologies, Inc., and its subsidiaries, representatives, affiliates, officers and directors, may contact you by telephone or text messages (including by an automatic telephone dialing system and/or with an artificial or pre-recorded voice) at any of the phone numbers provided by you or on your behalf in connection with an Uber account, including for marketing purposes. You understand that you are not required to provide this consent as a condition of purchasing any property, goods or services. You also understand that you may opt out of receiving text messages from Uber at any time, either by replying "STOP", texting the word "STOP" to 89203 using the mobile device that is receiving the messages, or by contacting help.uber.com. If you do not choose to opt out, Uber may contact you as outlined in its User Privacy Notice, located at https://www.uber.com/privacy/notice.

You agree that Uber may contact you using any of the phone numbers you provided in connection with an Uber account (including via text or voice-recorded message) or your email address in the case of suspected fraud or unlawful activity.

## User Provided Content.

Uber may, in Uber's sole discretion, permit you from time to time to submit, upload, publish or otherwise make available to Uber through the Services textual, audio, and/or visual content and information, and submission of entries for competitions and promotions ("User Content"). Any User Content provided by you remains your property. However, by providing User Content to Uber, you

grant Uber a worldwide, perpetual, irrevocable, transferable, royalty-free license, with the right to sublicense, to use, copy, modify, create derivative works of, distribute, publicly display, publicly perform, and otherwise exploit in any manner such User Content in all formats and distribution channels now known or hereafter devised (including in connection with the Services and Uber's business and on third party sites and services), without further notice to or consent from you, and without the requirement of payment to you or any other person or entity.

You represent and warrant that: (i) you either are the sole and exclusive owner of all User Content or you have all rights, licenses, consents and releases necessary to grant Uber the license to the User Content as set forth above; and (ii) neither the User Content, nor your submission, uploading, publishing or otherwise making available of such User Content, nor Uber's use of the User Content as permitted herein will infringe, misappropriate or violate a third party's intellectual property or proprietary rights, or rights of publicity or privacy, or result in the violation of any applicable law or regulation.

You agree to not provide User Content that is defamatory, libelous, hateful, violent, obscene, pornographic, unlawful, or otherwise offensive, as determined by Uber in its sole discretion, whether or not such material may be protected by law. Uber may, but shall not be obligated to, review, monitor, and remove User Content, at Uber's sole discretion and at any time and for any reason, without notice to you.

## User Feedback.

As Uber respects your rights to your ideas, please do not submit any confidential ideas, information, or suggestions in any form to Uber or any of its affiliates. For any ideas, information, or suggestions you do submit, regardless of what your communication regarding your submissions says, you understand that your submissions are voluntary and the following terms shall apply to your submissions: (i) your submissions and their contents will automatically become the property of Uber, without any compensation to you; (ii) Uber has no obligation to review your submissions; (iii) Uber may implement and distribute any portion of your submissions and their contents for any purpose in any way, without any compensation to you; and (iv) Uber has no obligation to keep your submissions confidential.

## Network Access and Devices.

You are responsible for obtaining the data network access necessary to use the Services. Your mobile network's data and messaging rates and fees may apply if you access or use the Services from your device. You are responsible for acquiring and updating compatible hardware or devices necessary to access and use the Services and Applications and any updates thereto. Uber does not guarantee that the Services, or any portion thereof, will function on any particular hardware or devices. In addition, the Services may be subject to malfunctions and delays inherent in the use of the Internet and electronic communications.

# 5. Payment

You understand that use of the Services may result in charges to you for the services or goods you receive ("Charges"). Uber will enable your payment of the applicable Charges for services or goods obtained through your use of the Services. Charges will include applicable taxes where required by law. Charges may include other applicable fees, product return fees, cancellation fees, estimated or actual tolls, and/or surcharges. Further, you acknowledge and agree that Charges applicable in certain geographical areas may increase substantially during times of high demand or due to other marketplace factors.

All Charges and payments will be enabled by Uber using the preferred payment method designated in your Account, after which you will receive a receipt. If your primary Account payment method is determined to be expired, invalid or otherwise not able to be charged, you agree that Uber may use a secondary payment method in your Account, if available. Charges paid by you are final and non-refundable, unless otherwise determined by Uber.

As between you and Uber, Uber reserves the right to establish or adjust Charges for any or all services or goods obtained through the use of the Services at any time. Uber will use reasonable efforts to inform you of Charges that may apply, provided that you will be responsible for Charges incurred under your Account regardless of your awareness of such Charges or the amounts thereof. Certain users may from time to time receive promotional offers and discounts that may result in different amounts charged for the same or similar services or goods obtained through the use of the Services, and you agree that such promotional offers and discounts, unless also made available to you, shall have no bearing on your use of the Services or the Charges applied to you. Promotional offers and discounts are subject to change or withdrawal at any time and without notice. You may elect to cancel your request for Services at any time prior to the commencement of such Services, in which case you may be charged a cancellation fee on a Third Party Provider's behalf.

With respect to Third Party Providers, Charges you incur will be owed directly to Third Party Providers, and Uber will collect payment of those charges from you, on the Third Party Provider's behalf as their limited payment collection agent, and payment of the Charges shall be considered the same as payment made directly by you to the Third Party Provider. In such cases, you retain the right to request lower Charges from a Third Party Provider for services or goods received by you from such Third Party Provider at the time you receive such services or goods, and Charges you incur will be owed to the Third Party Provider. Uber will consider in good faith any request from a Third Party Provider to modify the Charges for a particular service or good. This payment structure is intended to fully compensate a Third Party Provider, if applicable, for the services or goods obtained in connection with your use of the Services. Except for amounts provided by you through the Application as part of the "tip" feature, Uber does not designate any portion of your payment as a tip or gratuity to a Third Party Provider. You understand and agree that, while you are free to provide additional payment as a gratuity to any Third Party Provider who provides you with services or goods obtained through the Service, you are under no obligation to do so. There also may be certain Charges you incur that will be owed and paid directly to Uber or its affiliates. For the avoidance of doubt, Uber does not charge a fee for a user to access the Uber Marketplace Platform, but retains the right to charge users a fee or any other Charge for accessing Services made available through the Marketplace Platform. Even if not indicated on the Uber Marketplace Platform, you understand that the prices for product or menu items displayed through the Services may differ from the prices offered or published by Third Party Providers for the same product or menu items and/or from prices available at other third party websites/mobile applications. Prices for product or menu items displayed through the Services may not be the lowest prices at which the product or menu items are sold.

If you think a correction should be made to any Charge you incurred, you must let Uber know in writing within 30 days after the Charge took place or Uber will have no further responsibility and you waive your right to later dispute the amounts charged.

## Damage, Cleaning, Lost and Found, and Violation of Terms.

Uber may charge you a fee if, during your use of the Services, you have caused damage to a vehicle or property that requires repair or cleaning ("Repair" or "Cleaning"). The amount of such fee shall be determined, in Uber's sole discretion, based on the type of damage and the severity. Uber reserves the right to verify or otherwise require documentation of damages prior to processing a fee. In the event that a Repair or Cleaning request is verified by Uber in Uber's reasonable discretion, Uber reserves the right to facilitate payment for the reasonable cost of such Repair or

Cleaning using your payment method designated in your Account. Such amounts, as well as those pertaining to lost and found goods, will be transferred by Uber to a Third Party Provider, if applicable, and are non-refundable.

Additionally, if you fail to comply with these Terms you may be responsible for Charges, including without limitation, for transactions that could not be completed properly, arising out of or in connection with your failure to comply with these Terms.

# 6. Disclaimers; Limitation of Liability; Indemnity.

## Disclaimer.

THE SERVICES ARE PROVIDED "AS IS" AND "AS AVAILABLE." UBER DISCLAIMS ALL REPRESENTATIONS AND WARRANTIES, EXPRESS, IMPLIED, OR STATUTORY, NOT EXPRESSLY SET OUT IN THESE TERMS, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. IN ADDITION, UBER MAKES NO REPRESENTATION, WARRANTY, OR GUARANTEE REGARDING THE RELIABILITY, TIMELINESS, QUALITY, SUITABILITY, OR AVAILABILITY OF THE SERVICES OR ANY SERVICES OR GOODS REQUESTED THROUGH THE USE OF THE SERVICES, OR THAT THE SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE.

UBER DOES NOT GUARANTEE THE QUALITY, SUITABILITY, SAFETY OR ABILITY OF THIRD PARTY PROVIDERS. YOU AGREE THAT THE ENTIRE RISK ARISING OUT OF YOUR USE OF THE SERVICES, AND ANY SERVICE OR GOOD REQUESTED IN CONNECTION THEREWITH, REMAINS SOLELY WITH YOU, TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW.

UBER DOES NOT CONTROL, MANAGE OR DIRECT ANY THIRD PARTY PROVIDERS INCLUDING DRIVERS. THIRD PARTY PROVIDERS ARE NOT ACTUAL AGENTS, APPARENT AGENTS, OSTENSIBLE AGENTS, OR EMPLOYEES OF UBER.

UBER DOES NOT CONTROL, ENDORSE OR TAKE RESPONSIBILITY FOR ANY USER CONTENT OR THIRD PARTY CONTENT AVAILABLE ON OR LINKED TO BY THE SERVICES. UBER CANNOT AND DOES NOT REPRESENT OR WARRANT THAT THE SERVICES OR SERVERS ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS.

## Limitation of Liability.

UBER SHALL NOT BE LIABLE FOR INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, PUNITIVE, OR CONSEQUENTIAL DAMAGES, INCLUDING LOST PROFITS, LOST DATA, PERSONAL INJURY, OR PROPERTY DAMAGE RELATED TO, IN CONNECTION WITH, OR OTHERWISE RESULTING FROM ANY USE OF THE SERVICES, REGARDLESS OF THE NEGLIGENCE (EITHER ACTIVE, AFFIRMATIVE, SOLE, OR CONCURRENT) OF UBER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

UBER SHALL NOT BE LIABLE FOR ANY DAMAGES, LIABILITY OR LOSSES ARISING OUT OF: (i) YOUR USE OF OR RELIANCE ON THE SERVICES OR YOUR INABILITY TO ACCESS OR USE THE SERVICES; OR (ii) ANY TRANSACTION OR RELATIONSHIP BETWEEN YOU AND ANY THIRD PARTY PROVIDER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. UBER SHALL NOT BE LIABLE FOR DELAY OR FAILURE IN PERFORMANCE RESULTING FROM CAUSES BEYOND UBER'S REASONABLE CONTROL. YOU ACKNOWLEDGE THAT THIRD PARTY PROVIDERS PROVIDING TRANSPORTATION SERVICES REQUESTED THROUGH SOME UBER SERVICES MAY OFFER RIDESHARING OR PEER-TO-PEER TRANSPORTATION SERVICES AND MAY NOT BE PROFESSIONALLY LICENSED OR PERMITTED. YOU ACKNOWLEDGE THAT THIRD PARTY

PROVIDERS ARE NOT OSTENSIBLE AGENTS, APPARENT AGENTS, ACTUAL AGENTS, OR EMPLOYEES OF UBER.

THE SERVICES MAY BE USED BY YOU TO REQUEST AND SCHEDULE TRANSPORTATION, GOODS, OR LOGISTICS SERVICES WITH THIRD PARTY PROVIDERS, BUT YOU AGREE THAT UBER HAS NO RESPONSIBILITY OR LIABILITY TO YOU RELATED TO ANY TRANSPORTATION, GOODS OR LOGISTICS SERVICES PROVIDED TO YOU BY THIRD PARTY PROVIDERS OTHER THAN AS EXPRESSLY SET FORTH IN THESE TERMS.

UBER SHALL NOT BE LIABLE FOR ANY DAMAGES, LIABILITY OR LOSSES ARISING OUT OF LACK OF OR IMPROPER INSTALLATION OR USE OF CHILD RESTRAINT SYSTEMS FOR GUESTS ON RIDES REQUESTED THROUGH THE SERVICES FOR WHOM A CHILD RESTRAINT SYSTEM IS LEGALLY REQUIRED.

THE LIMITATIONS AND DISCLAIMERS IN THIS SECTION DO NOT PURPORT TO LIMIT LIABILITY OR ALTER YOUR RIGHTS AS A CONSUMER THAT CANNOT BE EXCLUDED UNDER APPLICABLE LAW. BECAUSE SOME STATES OR JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF OR THE LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, IN SUCH STATES OR JURISDICTIONS, UBER'S LIABILITY SHALL BE LIMITED TO THE EXTENT PERMITTED BY LAW. THIS PROVISION SHALL HAVE NO EFFECT ON UBER'S CHOICE OF LAW PROVISION SET FORTH BELOW.

## Indemnity.

You agree to indemnify and hold Uber and its affiliates and their officers, directors, employees, and agents harmless from and against any and all actions, claims, demands, losses, liabilities, costs, damages, and expenses (including attorneys' fees), arising out of or in connection with: (i) your use of the Services or services or goods obtained through your use of the Services; (ii) your breach or violation of any of these Terms; (iii) Uber's use of your User Content; or (iv) your violation of the rights of any third party, including Third Party Providers.

# 7. Other Provisions

## Choice of Law.

These Terms shall be governed by and construed in accordance with the laws of the State of California, U.S.A., without regard to the choice or conflict of law principles of any jurisdiction, except as may be otherwise provided in the Arbitration Agreement in Section 2 above or in supplemental terms applicable to your region. This Choice of Law provision applies only to the interpretation of these Terms and is not intended to create any other substantive right to non-Californians to assert claims under California law or bring claims in California courts whether that be by statute, common law, or otherwise. These provisions, and except as otherwise provided in Section 2 of these Terms, are only intended to specify the use of California law to interpret these Terms, and these provisions shall not be interpreted as generally extending California law to you if you do not otherwise reside in California.

Any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to the Terms, shall be governed by and construed in accordance with the laws of the state in which the incident or accident occurred.

## Choice of Forum.

Any dispute, claim or controversy arising out of or relating to these Terms or the existence, breach, termination, enforcement, interpretation or validity thereof, shall be brought exclusively in the state and federal courts of California, notwithstanding that other courts may have jurisdiction over the parties and subject matter, except as may be otherwise provided by the Arbitration Agreement above or in supplemental terms applicable to your region.

Notwithstanding the foregoing, any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to the Terms, shall be brought exclusively in the state and federal courts in the State in which the incident or accident occurred, notwithstanding that other courts may have jurisdiction over the parties and subject matter, and except as may be otherwise provided in the Arbitration Agreement above or in supplemental terms applicable to your region, to the extent permitted by law.

The foregoing Choice of Law and Choice of Forum provisions do not apply to the Arbitration Agreement in Section 2, and we refer you to Section 2 for the applicable provisions for such disputes.

## Claims of Copyright Infringement.

Claims of copyright infringement should be sent to Uber's designated agent. Please visit Uber's web page at https://www.uber.com/legal/intellectual-property/copyright/global for the designated address and additional information.

## Notice.

Uber may give notice by means of a general notice on or through the Services, electronic mail to the email address associated with your Account, telephone or text message to any phone number provided in connection with your account, or by written communication sent by first class mail or pre-paid post to any address connected with your Account. Such notice shall be deemed to have been given upon the expiration of 48 hours after mailing or posting (if sent by first class mail or pre-paid post) or at the time of sending (if sent by email, telephone, or on or through the Services). You may give notice to Uber, with such notice deemed given when received by Uber, at any time by first class mail or pre-paid post to our registered agent for service of process, c/o Uber Technologies, Inc.. The name and current contact information for the registered agent in each state are available online at https://www.wolterskluwer.com/en/solutions/ct-corporation/sop-locations. If another provision of these Terms addresses any specific notice (for example, notice of updates to these Terms, or notice of a dispute or arbitration demand), those specific notice provisions shall prevail to the extent there is any conflict or inconsistency between those provisions and this notice provision.

## General.

You may not assign these Terms without Uber's prior written approval. Uber may assign these Terms without your consent to: (i) a subsidiary or affiliate; (ii) an acquirer of Uber's equity, business or assets; or (iii) a successor by merger. Any purported assignment by you in violation of this section shall be void. No joint venture, partnership, employment, or agency relationship exists between you, Uber or any Third Party Provider as a result of this Agreement or use of the Services. If any provision of these Terms is held to be invalid or unenforceable, such provision shall be struck and the remaining provisions shall be enforced to the fullest extent under law. Uber's failure to enforce any right or provision in these Terms shall not constitute a waiver of such right or provision unless acknowledged and agreed to by Uber in writing. This provision shall not affect the Severability and Survivability section of the Arbitration Agreement of these Terms.

# EXHIBIT H

Last modified: 4/14/2021

# U.S. Terms of Use

## 1. Contractual Relationship

These Terms of Use ("Terms") govern your access or use, from within the United States and its territories and possessions, of the multi-sided digital marketplace platform ("Uber Marketplace Platform") and any related content or services (collectively, the "Services," as more fully defined below in Section 3) made available in the United States and its territories and possessions by Uber Technologies, Inc. and its subsidiaries, representatives, affiliates, officers and directors (collectively, "Uber"). PLEASE READ THESE TERMS CAREFULLY, AS THEY CONSTITUTE A LEGAL AGREEMENT BETWEEN YOU AND UBER. In these Terms, the words "including" and "include" mean "including, but not limited to."

By accessing or using the Services, you confirm your agreement to be bound by these Terms. If you do not agree to these Terms, you may not access or use the Services. These Terms expressly supersede prior agreements or arrangements with you regarding the use of the Services.

Notwithstanding the foregoing, these Terms do not supersede or otherwise impact the enforceability of any agreements you may have with Uber or its subsidiaries regarding driving, delivering and/or providing transportation and/or delivery services (e.g., the Platform Access Agreement, the Technology Services Agreement and/or any similar agreements). To the extent (but only to the extent) any agreement you may have with Uber regarding driving, delivering and/or providing transportation and/or delivery services conflicts with these Terms, those agreements (and not these Terms) will prevail.

Uber may immediately terminate these Terms or any Services with respect to you, or generally cease offering or deny access to the Services or any portion thereof, at any time for any reason.

IMPORTANT: PLEASE BE ADVISED THAT THIS AGREEMENT CONTAINS PROVISIONS THAT GOVERN HOW CLAIMS BETWEEN YOU AND UBER CAN BE BROUGHT, INCLUDING THE ARBITRATION AGREEMENT (SEE SECTION 2 BELOW). PLEASE REVIEW THE ARBITRATION AGREEMENT BELOW CAREFULLY, AS IT REQUIRES YOU TO RESOLVE ALL DISPUTES WITH UBER ON AN INDIVIDUAL BASIS AND, WITH LIMITED EXCEPTIONS, THROUGH FINAL AND BINDING ARBITRATION (AS DESCRIBED IN SECTION 2 BELOW). BY ENTERING INTO THIS AGREEMENT, YOU EXPRESSLY ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND ALL OF THE TERMS OF THIS AGREEMENT AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT DECISION.

Supplemental terms may apply to certain options or offers available through the Services, such as policies for a particular ride or logistics option (e.g., Uber Connect), event, program, activity, or promotion. Such supplemental terms will be disclosed to you in connection with the applicable option or offer. Supplemental terms are in addition to, and shall be deemed a part of, the Terms for the purposes of the applicable option or offer. Supplemental terms shall prevail over these Terms in the event of a conflict with respect to the applicable option or offer.

Uber may make changes to these Terms from time to time. If Uber makes changes, it will provide you with notice of such changes, such as by sending an email, providing a notice through the Services, or updating the date at the top of these Terms. Unless Uber says otherwise in its notice, the amended Terms will be effective immediately and your continued access to and use of the Services after Uber provides such notice will confirm your acceptance of the changes. If you do not agree to the amended Terms, you must stop accessing and using the Services.

Uber's collection and use of personal information in connection with the Services is described in Uber's Privacy Notice located at https://www.uber.com/privacy/notice.

# 2. Arbitration Agreement

By agreeing to the Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration as set forth in this Arbitration Agreement. This will preclude you from bringing any class, collective, or representative action against Uber, and also preclude you from participating in or recovering relief under any current or future class, collective, consolidated, or representative action brought against Uber by someone else. For the avoidance of doubt, this precludes you from bringing or participating in any kind of any class, collective, coordinated, consolidated, representative or other kind of group, multi-plaintiff or joint action against Uber.

## (a) Agreement to Binding Arbitration Between You and Uber.

Except as expressly provided below in Section 2(b), you and Uber agree that any dispute, claim or controversy in any way arising out of or relating to (i) these Terms and prior versions of these Terms, or the existence, breach, termination, enforcement, interpretation, scope, waiver, or validity thereof, (ii) your access to or use of the Services at any time, (iii) incidents or accidents resulting in personal injury that you allege occurred in connection with your use of the Services, whether the dispute, claim or controversy occurred or accrued before or after the date you agreed to the Terms, or (iv) your relationship with Uber, will be settled by binding arbitration between you and Uber, and not in a court of law. This Agreement survives after your relationship with Uber ends.

You acknowledge and agree that you and Uber are each waiving the right to a trial by jury or to bring or to participate as a plaintiff or class member in any class, purported class, collective, coordinated, consolidated, or representative proceeding.

This Arbitration Agreement shall be binding upon, and shall include any claims brought by or against any third-parties, including but not limited to your spouses, heirs, third-party beneficiaries and assigns, where their underlying claims are in relation to your use of the Services. To the extent that any third-party beneficiary to this agreement brings claims against the Parties; those claims shall also be subject to this Arbitration Agreement.

## (b) Exceptions to Arbitration

Notwithstanding the foregoing, this Arbitration Agreement shall not require arbitration of the following claims: (i) individual claims brought in small claims court so long as the matter remains in such court and advances only on an individual (non-class, non-representative) basis; (ii) individual claims of sexual assault or sexual harassment occurring in connection with your use of the Services; and/or (iii) injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights.

Such claims may be brought and litigated in a court of competent jurisdiction by you on an individual basis only. On an individual basis means that you cannot bring such claims as a class, coordinated, consolidated, collective, or representative action against Uber. For the avoidance of doubt, this precludes you from bringing claims as or participating in any kind of any class, collective, coordinated, consolidated, representative or other kind of group, multi-plaintiff or joint action against Uber and no action brought by you may be consolidated or joined in any fashion with any other proceeding. Where your claims are brought and litigated to completion on such an individual basis in a court of competent jurisdiction, Uber agrees to honor your election.

The parties' agreement not to require arbitration in these limited instances does not waive the enforceability of this Arbitration Agreement as to any other provision (including, but not limited to, the waivers provided for in Section 2(a), which will continue to apply in court as well as in arbitration), or the enforceability of this Agreement as to any other controversy, claim or dispute.

## (c) Rules and Governing Law.

The arbitration will be administered by the American Arbitration Association ("AAA") in accordance with the AAA's Consumer Arbitration Rules (the "AAA Rules") then in effect, except as modified by this Arbitration Agreement. The AAA Rules are available at www.adr.org or by calling the AAA at 1-800-778-7879.

The parties agree that the arbitrator ("Arbitrator"), and not any federal, state, or local court or agency, shall have exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including any claim that all or any part of this Arbitration Agreement is void or voidable. The Arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether the Terms are applicable, unconscionable or illusory and any defense to arbitration, including waiver, delay, laches, or estoppel. If there is a dispute about whether this Arbitration Agreement can be enforced or applies to a dispute, you and Uber agree that the arbitrator will decide that issue.

Notwithstanding any choice of law or other provision in the Terms, the parties agree and acknowledge that this Arbitration Agreement evidences a transaction involving interstate commerce and that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), will govern its interpretation and enforcement and proceedings pursuant thereto. It is the intent of the parties to be bound by the provisions of the FAA for all purposes, including, but not limited to, interpretation, implementation, enforcement, and administration of this Arbitration Agreement, and that the FAA and AAA Rules shall preempt all state laws to the fullest extent permitted by law. If the FAA and AAA Rules are found to not apply to any issue regarding the interpretation or enforcement of this Arbitration Agreement, then that issue shall be resolved under the laws of the state where you reside when you accept these Terms.

Any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to the Terms, shall be governed by and construed in accordance with the laws of the state in which the incident or accident occurred.

## (d) Process.

Pre-Arbitration Dispute Resolution and Notification. Prior to initiating an arbitration, you and Uber each agree to notify the other party in writing of any dispute and to attempt to negotiate an informal resolution. Notice of the dispute must include the party's name, preferred contact information, a brief description of the dispute, and the relief sought. Notice to Uber must be sent to Uber Technologies, Inc., Attn: Legal Department, 1515 3rd Street, San Francisco, CA 94158. Neither party shall initiate arbitration until 30 days after the notice is sent. Engaging in this pre-arbitration dispute resolution and notification process is a requirement that must be fulfilled before commencing arbitration. The statute of limitations and any filing fee deadlines shall be tolled while the parties engage in the informal resolution process required by this paragraph.

Initiating Arbitration. In order to initiate arbitration, a party must provide the other party with a written Demand for Arbitration and file the Demand with AAA as specified in the AAA Rules. (The AAA provides a form Demand for Arbitration - Consumer Arbitration Rules at www.adr.org or by calling the AAA at 1-800-778-7879). A party initiating an arbitration against Uber must send the written Demand for Arbitration to Uber Technologies, Inc., LLC, Attn: Legal Department, 1515 3rd

Street, San Francisco, CA 94158, or serve the Demand on Uber's registered agent for service of process, c/o Uber Technologies, Inc. (the name and current contact information for the registered agent in each state are available online here). The Arbitrator will be either (1) a retired judge or (2) an attorney licensed to practice law in the state where the arbitration is conducted. The Arbitrator will be selected by the parties from the AAA's National Roster of Arbitrators. If the parties are unable to agree upon an Arbitrator after a good faith meet and confer effort, then the AAA will appoint the Arbitrator in accordance with the AAA Rules.

## (e) Location and Procedure.

Unless you and Uber otherwise agree, the arbitration will be conducted in the county where you reside. If your claim does not exceed $10,000, then the arbitration will be conducted solely on the basis of documents you and Uber submit to the Arbitrator, unless you request a hearing or the Arbitrator determines that a hearing is necessary. If your claim exceeds $10,000, your right to a hearing will be determined by the AAA Rules. Subject to the AAA Rules, the Arbitrator will have the discretion to direct a reasonable exchange of information by the parties, consistent with the expedited nature of the arbitration.

## (f) Arbitrator's Decision.

The Arbitrator will render an award within the time frame specified in the AAA Rules. Judgment on the arbitration award may be entered in any court having competent jurisdiction to do so. The Arbitrator may award declaratory or injunctive relief only in favor of the claimant and only to the extent necessary to provide relief warranted by the claimant's individual claim. An Arbitrator's decision shall be final and binding on all parties. An Arbitrator's decision and judgment thereon shall have no precedential or collateral estoppel effect. If you prevail in arbitration you may seek an award of attorneys' fees and expenses to the extent permitted under applicable law. Uber will not seek, and hereby waives all rights Uber may have under applicable law to recover attorneys' fees and expenses if Uber prevails in arbitration.

## (g) Fees.

Your responsibility to pay any AAA filing, administrative and arbitrator fees will be solely as set forth in the AAA Rules.

## (h) Severability and Survival.

If any portion of this Arbitration Agreement is found to be unenforceable or unlawful for any reason, (1) the unenforceable or unlawful provision shall be severed from these Terms; (2) severance of the unenforceable or unlawful provision shall have no impact whatsoever on the remainder of the Arbitration Agreement or the parties' ability to compel arbitration of any remaining claims on an individual basis pursuant to the Arbitration Agreement; and (3) to the extent that any claims must therefore proceed on a class, collective, consolidated, or representative basis, such claims must be litigated in a civil court of competent jurisdiction and not in arbitration, and the parties agree that litigation of those claims shall be stayed pending the outcome of any individual claims in arbitration.

# 3. The Marketplace Platform & Services

Uber operates a multi-sided digital marketplace platform that is offered in a number of forms, including mobile and/or web based applications ("Applications"). Among other things, the Uber Marketplace Platform enables you to receive: (i) services rendered by Uber that facilitate your connection to independent third party providers, including drivers and restaurants ("Third Party Providers"), for the purchase of services or goods, such as transportation, logistics and/or delivery services from those Third Party Providers; and (ii) any related content or services, including

payment processing and customer support. The Uber Marketplace Platform and the Uber content or services described in this Section are collectively referred to as "the Services". Unless otherwise agreed by Uber in a separate written agreement with you, the Services are made available solely for your personal, noncommercial use.

YOU ACKNOWLEDGE THAT YOUR ABILITY TO OBTAIN TRANSPORTATION, LOGISTICS AND/OR DELIVERY SERVICES FROM THIRD PARTY PROVIDERS THROUGH THE USE OF THE UBER MARKETPLACE PLATFORM AND SERVICES DOES NOT ESTABLISH UBER AS A PROVIDER OF TRANSPORTATION, LOGISTICS OR DELIVERY SERVICES OR AS A TRANSPORTATION OR PROPERTY CARRIER. UBER IS NOT A COMMON OR MOTOR CARRIER, DOES NOT TRANSPORT YOU, AND USE OF THE UBER MARKETPLACE PLATFORM IS ONLY OPEN TO REGISTERED USERS OF THE UBER MARKETPLACE PLATFORM AND NOT TO THE GENERAL PUBLIC.

YOU ACKNOWLEDGE THAT INDEPENDENT THIRD PARTY PROVIDERS, INCLUDING DRIVERS ARE NOT ACTUAL AGENTS, APPARENT AGENTS, OSTENSIBLE AGENTS, OR EMPLOYEES OF UBER IN ANY WAY.

YOU ALSO ACKNOWLEDGE THAT ANY SAFETY RELATED EFFORT, FEATURE, PROCESS, POLICY, STANDARD OR OTHER EFFORT UNDERTAKEN BY UBER, IN THE INTEREST OF PUBLIC SAFETY (WHETHER REQUIRED BY APPLICABLE REGULATIONS OR NOT), IS NOT AN INDICIA OF AN EMPLOYMENT, ACTUAL AGENCY, APPARENT AGENCY, OR OSTENSIBLE AGENCY RELATIONSHIP WITH AN INDEPENDENT THIRD PARTY DRIVER.

## License.

Subject to your compliance with these Terms, Uber grants you a limited, non-exclusive, non-sublicensable, revocable, non-transferable license to: (i) access and use the Applications on your personal device solely in connection with your use of the Services; and (ii) access and use any content, information and related materials that may be made available through the Services, in each case solely for your personal, noncommercial use. Any rights not expressly granted herein are reserved by Uber and Uber's licensors.

## Restrictions.

You may not: (i) remove any copyright, trademark or other proprietary notices from any portion of the Services; (ii) reproduce, modify, prepare derivative works based upon, distribute, license, lease, sell, resell, transfer, publicly display, publicly perform, transmit, stream, broadcast or otherwise exploit the Services except as expressly permitted by Uber; (iii) decompile, reverse engineer or disassemble the Services except as may be permitted by applicable law; (iv) link to, mirror or frame any portion of the Services; (v) cause or launch any programs or scripts for the purpose of unduly burdening or hindering the operation and/or functionality of any aspect of the Services; or (vi) attempt to gain unauthorized access to or impair any aspect of the Services or its related systems or networks.

## Third Party Services and Content.

The Services may be made available or accessed in connection with third party services and content (including advertising) that Uber does not control. Once you click on a link to third party services or content, you will be subject to the terms and conditions and privacy policy of that website, destination, or third party service provider. Uber will not warn you that you have left the Services or that you are subject to the terms and conditions (including privacy policies) of another website, destination, or third party service provider. You use all links in third party websites and advertisements at your own risk as these are not part of the Services and are not controlled by Uber. You acknowledge that different terms of use and privacy policies may apply to your use of

such third party services and content. Uber does not endorse such third party services and content and in no event shall Uber be responsible or liable for any products or services of such third party providers.

### App Stores.

You acknowledge and agree that the availability of the Applications may be dependent on the third party from which you received the Application's license, e.g., the Apple iPhone or Android app stores ("App Store"). You acknowledge and agree that this Agreement is between you and Uber and not with the App Store and that Uber is responsible for the provision of Services as described in this Agreement. However, if you downloaded the Application from the Apple App Store, Apple and its subsidiaries are third-party beneficiaries of this Agreement. Upon your acceptance of this Agreement, Apple shall have the right (and will be deemed to have accepted the right) to enforce this Agreement against you as a third-party beneficiary thereof. This Agreement incorporates by reference Apple's Licensed Application End User License Agreement, for purposes of which, you are "the end-user." In the event of a conflict in the terms of the Licensed Application End User License Agreement and this Agreement, the terms of this Agreement will control.

### Ownership.

The Services and all rights therein are and shall remain Uber's property or the property of Uber's licensors. Neither these Terms nor your use of the Services convey or grant to you any rights in or related to the Services except for the limited license granted above.

You agree that you will not use Uber's trademarks, service marks, or trade dress or any similar names, marks, or trade dress ("Uber's Marks"), aside from use incidental to your use of the Services, without express, written permission from Uber. This prohibition on using Uber's Marks includes, but is not limited to, use in domain names, websites, and social media accounts.

## 4. Access and Use of the Services

### User Accounts.

In order to use most aspects of the Services, you must register for and maintain an active personal user Services account ("Account"). You must be at least 18 years of age, or the age of legal majority in your jurisdiction (if different than 18), to obtain an Account, unless a specific Service permits otherwise. You cannot register for or maintain an Account if you have previously been banned from accessing or using the Services. Account registration requires you to submit to Uber certain personal information, such as your name, address, mobile phone number and age, as well as at least one valid payment method supported by Uber. For more information regarding Uber's use of your personal information, please see our Privacy Notice currently available at https://privacy.uber.com/policy/. You agree to maintain accurate, complete, and up-to-date information in your Account, including a valid phone number, address and payment method. Your failure to comply with these Terms (including policies and supplemental terms) including, without limitation, your failure to maintain accurate, complete, and up-to-date Account information, including having an invalid or expired payment method on file, may result in your inability to access or use the Services. You are responsible for all activity that occurs under your Account, and you agree to maintain the security and secrecy of your Account username and password at all times. Unless otherwise permitted by Uber in writing, you may only possess one Account.

### User Requirements and Conduct.

You agree to abide by the Uber Community Guidelines, available here. Failure to comply with the Community Guidelines or any violation of these terms may result in the permanent loss of access to

the Services.

The Services are not available for use by persons under the age of 18. You may not authorize third parties to use your Account, and you may not allow persons under the age of 18 to receive transportation, delivery or logistics services from Third Party Providers unless they are accompanied by you. You may not assign or otherwise transfer your Account to any other person or entity. You agree to comply with all applicable laws when accessing or using the Services, and you may only access or use the Services for lawful purposes (e.g., no transport of unlawful or hazardous materials). You may not in your access or use of the Services cause nuisance, annoyance, inconvenience, or property damage, whether to the Third Party Provider or any other party. If you request a ride option with a car seat, you acknowledge and agree that neither Uber nor the Third Party Provider is responsible for the safety of a child restraint/car seat that may be available in the Third Party Providers' Vehicle. You acknowledge and agree that it is your obligation to ensure that the car seat is installed correctly and that the child is properly secured in the seat. If you request a ride option where a driver agrees to provide you with assistance outside of the vehicle (e.g., Uber Assist), you acknowledge and agree that neither Uber nor the Third Party Provider is responsible for any injury or incident that may arise out of the assistance provided by the Third Party Provider. In certain instances you may be asked to provide proof of age, identity or other method of identity verification to access or use the Services, and you agree that you may be denied access to or use of the Services if you refuse to provide proof of age, identity or other method of identity verification.

Subject to the discretion of a Third Party Provider, you may be allowed to bring a small animal, such as a dog or cat, on a ride requested through the Uber Marketplace Platform. For such trips, you are responsible for properly securing the animal with a leash, harness, crate / carrier, or through other means. You are also responsible for ensuring that the animal does not cause damage or a mess in the Third Party Provider's vehicle. You may be subject to a Charge for Repair or Cleaning under Section 5 for any damage or mess caused by an animal that is transported during a ride requested under your Account. Please note, in accordance with Uber's policies on service animals and assistive devices, service animals are generally permitted to accompany riders without extra charge, regardless of whether it is a Pet Friendly Trip.

## Text Messaging and Telephone Calls.

You agree that Uber Technologies, Inc., and its subsidiaries, representatives, affiliates, officers and directors, may contact you by telephone or text messages (including by an automatic telephone dialing system and/or with an artificial or pre-recorded voice) at any of the phone numbers provided by you or on your behalf in connection with an Uber account, including for marketing purposes. You understand that you are not required to provide this consent as a condition of purchasing any property, goods or services. You also understand that you may opt out of receiving text messages from Uber at any time, either by replying "STOP", texting the word "STOP" to 89203 using the mobile device that is receiving the messages, or by contacting help.uber.com. If you do not choose to opt out, Uber may contact you as outlined in its User Privacy Notice, located at https://www.uber.com/privacy/notice.

You agree that Uber may contact you using any of the phone numbers you provided in connection with an Uber account (including via text or voice-recorded message) or your email address in the case of suspected fraud or unlawful activity.

## User Provided Content.

Uber may, in Uber's sole discretion, permit you from time to time to submit, upload, publish or otherwise make available to Uber through the Services textual, audio, and/or visual content and information, and submission of entries for competitions and promotions ("User Content"). Any User Content provided by you remains your property. However, by providing User Content to Uber, you

grant Uber a worldwide, perpetual, irrevocable, transferable, royalty-free license, with the right to sublicense, to use, copy, modify, create derivative works of, distribute, publicly display, publicly perform, and otherwise exploit in any manner such User Content in all formats and distribution channels now known or hereafter devised (including in connection with the Services and Uber's business and on third party sites and services), without further notice to or consent from you, and without the requirement of payment to you or any other person or entity.

You represent and warrant that: (i) you either are the sole and exclusive owner of all User Content or you have all rights, licenses, consents and releases necessary to grant Uber the license to the User Content as set forth above; and (ii) neither the User Content, nor your submission, uploading, publishing or otherwise making available of such User Content, nor Uber's use of the User Content as permitted herein will infringe, misappropriate or violate a third party's intellectual property or proprietary rights, or rights of publicity or privacy, or result in the violation of any applicable law or regulation.

You agree to not provide User Content that is defamatory, libelous, hateful, violent, obscene, pornographic, unlawful, or otherwise offensive, as determined by Uber in its sole discretion, whether or not such material may be protected by law. Uber may, but shall not be obligated to, review, monitor, and remove User Content, at Uber's sole discretion and at any time and for any reason, without notice to you.

## User Feedback.

As Uber respects your rights to your ideas, please do not submit any confidential ideas, information, or suggestions in any form to Uber or any of its affiliates. For any ideas, information, or suggestions you do submit, regardless of what your communication regarding your submissions says, you understand that your submissions are voluntary and the following terms shall apply to your submissions: (i) your submissions and their contents will automatically become the property of Uber, without any compensation to you; (ii) Uber has no obligation to review your submissions; (iii) Uber may implement and distribute any portion of your submissions and their contents for any purpose in any way, without any compensation to you; and (iv) Uber has no obligation to keep your submissions confidential.

## Network Access and Devices.

You are responsible for obtaining the data network access necessary to use the Services. Your mobile network's data and messaging rates and fees may apply if you access or use the Services from your device. You are responsible for acquiring and updating compatible hardware or devices necessary to access and use the Services and Applications and any updates thereto. Uber does not guarantee that the Services, or any portion thereof, will function on any particular hardware or devices. In addition, the Services may be subject to malfunctions and delays inherent in the use of the Internet and electronic communications.

# 5. Payment

You understand that use of the Services may result in charges to you for the services or goods you receive ("Charges"). Uber will enable your payment of the applicable Charges for services or goods obtained through your use of the Services. Charges will include applicable taxes where required by law. Charges may include other applicable fees, product return fees, cancellation fees, estimated or actual tolls, and/or surcharges. Further, you acknowledge and agree that Charges applicable in certain geographical areas may increase substantially during times of high demand or due to other marketplace factors.

All Charges and payments will be enabled by Uber using the preferred payment method designated in your Account, after which you will receive a receipt. If your primary Account payment method is determined to be expired, invalid or otherwise not able to be charged, you agree that Uber may use a secondary payment method in your Account, if available. Charges paid by you are final and non-refundable, unless otherwise determined by Uber.

As between you and Uber, Uber reserves the right to establish or adjust Charges for any or all services or goods obtained through the use of the Services at any time. Uber will use reasonable efforts to inform you of Charges that may apply, provided that you will be responsible for Charges incurred under your Account regardless of your awareness of such Charges or the amounts thereof. Certain users may from time to time receive promotional offers and discounts that may result in different amounts charged for the same or similar services or goods obtained through the use of the Services, and you agree that such promotional offers and discounts, unless also made available to you, shall have no bearing on your use of the Services or the Charges applied to you. Promotional offers and discounts are subject to change or withdrawal at any time and without notice. You may elect to cancel your request for Services at any time prior to the commencement of such Services, in which case you may be charged a cancellation fee on a Third Party Provider's behalf.

With respect to Third Party Providers, Charges you incur will be owed directly to Third Party Providers, and Uber will collect payment of those charges from you, on the Third Party Provider's behalf as their limited payment collection agent, and payment of the Charges shall be considered the same as payment made directly by you to the Third Party Provider. In such cases, you retain the right to request lower Charges from a Third Party Provider for services or goods received by you from such Third Party Provider at the time you receive such services or goods, and Charges you incur will be owed to the Third Party Provider. Uber will consider in good faith any request from a Third Party Provider to modify the Charges for a particular service or good. This payment structure is intended to fully compensate a Third Party Provider, if applicable, for the services or goods obtained in connection with your use of the Services. Except for amounts provided by you through the Application as part of the "tip" feature, Uber does not designate any portion of your payment as a tip or gratuity to a Third Party Provider. You understand and agree that, while you are free to provide additional payment as a gratuity to any Third Party Provider who provides you with services or goods obtained through the Service, you are under no obligation to do so. There also may be certain Charges you incur that will be owed and paid directly to Uber or its affiliates. For the avoidance of doubt, Uber does not charge a fee for a user to access the Uber Marketplace Platform, but retains the right to charge users a fee or any other Charge for accessing Services made available through the Marketplace Platform. Even if not indicated on the Uber Marketplace Platform, you understand that the prices for product or menu items displayed through the Services may differ from the prices offered or published by Third Party Providers for the same product or menu items and/or from prices available at other third party websites/mobile applications. Prices for product or menu items displayed through the Services may not be the lowest prices at which the product or menu items are sold.

If you think a correction should be made to any Charge you incurred, you must let Uber know in writing within 30 days after the Charge took place or Uber will have no further responsibility and you waive your right to later dispute the amounts charged.

## Damage, Cleaning, Lost and Found, and Violation of Terms.

Uber may charge you a fee if, during your use of the Services, you have caused damage to a vehicle or property that requires repair or cleaning ("Repair" or "Cleaning"). The amount of such fee shall be determined, in Uber's sole discretion, based on the type of damage and the severity. Uber reserves the right to verify or otherwise require documentation of damages prior to processing a fee. In the event that a Repair or Cleaning request is verified by Uber in Uber's reasonable discretion, Uber reserves the right to facilitate payment for the reasonable cost of such Repair or Cleaning using your

payment method designated in your Account. Such amounts, as well as those pertaining to lost and found goods, will be transferred by Uber to a Third Party Provider, if applicable, and are non-refundable.

Additionally, if you fail to comply with these Terms you may be responsible for Charges, including without limitation, for transactions that could not be completed properly, arising out of or in connection with your failure to comply with these Terms.

# 6. Disclaimers; Limitation of Liability; Indemnity.

## Disclaimer.

THE SERVICES ARE PROVIDED "AS IS" AND "AS AVAILABLE." UBER DISCLAIMS ALL REPRESENTATIONS AND WARRANTIES, EXPRESS, IMPLIED, OR STATUTORY, NOT EXPRESSLY SET OUT IN THESE TERMS, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. IN ADDITION, UBER MAKES NO REPRESENTATION, WARRANTY, OR GUARANTEE REGARDING THE RELIABILITY, TIMELINESS, QUALITY, SUITABILITY, OR AVAILABILITY OF THE SERVICES OR ANY SERVICES OR GOODS REQUESTED THROUGH THE USE OF THE SERVICES, OR THAT THE SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE.

UBER DOES NOT GUARANTEE THE QUALITY, SUITABILITY, SAFETY OR ABILITY OF THIRD PARTY PROVIDERS. YOU AGREE THAT THE ENTIRE RISK ARISING OUT OF YOUR USE OF THE SERVICES, AND ANY SERVICE OR GOOD REQUESTED IN CONNECTION THEREWITH, REMAINS SOLELY WITH YOU, TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW.

UBER DOES NOT CONTROL, MANAGE OR DIRECT ANY THIRD PARTY PROVIDERS INCLUDING DRIVERS. THIRD PARTY PROVIDERS ARE NOT ACTUAL AGENTS, APPARENT AGENTS, OSTENSIBLE AGENTS, OR EMPLOYEES OF UBER.

UBER DOES NOT CONTROL, ENDORSE OR TAKE RESPONSIBILITY FOR ANY USER CONTENT OR THIRD PARTY CONTENT AVAILABLE ON OR LINKED TO BY THE SERVICES. UBER CANNOT AND DOES NOT REPRESENT OR WARRANT THAT THE SERVICES OR SERVERS ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS.

## Limitation of Liability.

UBER SHALL NOT BE LIABLE FOR INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, PUNITIVE, OR CONSEQUENTIAL DAMAGES, INCLUDING LOST PROFITS, LOST DATA, PERSONAL INJURY, OR PROPERTY DAMAGE RELATED TO, IN CONNECTION WITH, OR OTHERWISE RESULTING FROM ANY USE OF THE SERVICES, REGARDLESS OF THE NEGLIGENCE (EITHER ACTIVE, AFFIRMATIVE, SOLE, OR CONCURRENT) OF UBER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

UBER SHALL NOT BE LIABLE FOR ANY DAMAGES, LIABILITY OR LOSSES ARISING OUT OF: (i) YOUR USE OF OR RELIANCE ON THE SERVICES OR YOUR INABILITY TO ACCESS OR USE THE SERVICES; OR (ii) ANY TRANSACTION OR RELATIONSHIP BETWEEN YOU AND ANY THIRD PARTY PROVIDER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. UBER SHALL NOT BE LIABLE FOR DELAY OR FAILURE IN PERFORMANCE RESULTING FROM CAUSES BEYOND UBER'S REASONABLE CONTROL. YOU ACKNOWLEDGE THAT THIRD PARTY PROVIDERS PROVIDING TRANSPORTATION SERVICES REQUESTED THROUGH SOME UBER SERVICES MAY OFFER RIDESHARING OR PEER-TO-PEER TRANSPORTATION SERVICES AND MAY NOT BE PROFESSIONALLY LICENSED OR PERMITTED. YOU ACKNOWLEDGE THAT THIRD PARTY

PROVIDERS ARE NOT OSTENSIBLE AGENTS, APPARENT AGENTS, ACTUAL AGENTS, OR EMPLOYEES OF UBER.

THE SERVICES MAY BE USED BY YOU TO REQUEST AND SCHEDULE TRANSPORTATION, GOODS, OR LOGISTICS SERVICES WITH THIRD PARTY PROVIDERS, BUT YOU AGREE THAT UBER HAS NO RESPONSIBILITY OR LIABILITY TO YOU RELATED TO ANY TRANSPORTATION, GOODS OR LOGISTICS SERVICES PROVIDED TO YOU BY THIRD PARTY PROVIDERS OTHER THAN AS EXPRESSLY SET FORTH IN THESE TERMS.

UBER SHALL NOT BE LIABLE FOR ANY DAMAGES, LIABILITY OR LOSSES ARISING OUT OF LACK OF OR IMPROPER INSTALLATION OR USE OF CHILD RESTRAINT SYSTEMS FOR GUESTS ON RIDES REQUESTED THROUGH THE SERVICES FOR WHOM A CHILD RESTRAINT SYSTEM IS LEGALLY REQUIRED.

THE LIMITATIONS AND DISCLAIMERS IN THIS SECTION DO NOT PURPORT TO LIMIT LIABILITY OR ALTER YOUR RIGHTS AS A CONSUMER THAT CANNOT BE EXCLUDED UNDER APPLICABLE LAW. BECAUSE SOME STATES OR JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF OR THE LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, IN SUCH STATES OR JURISDICTIONS, UBER'S LIABILITY SHALL BE LIMITED TO THE EXTENT PERMITTED BY LAW. THIS PROVISION SHALL HAVE NO EFFECT ON UBER'S CHOICE OF LAW PROVISION SET FORTH BELOW.

Indemnity.

You agree to indemnify and hold Uber and its affiliates and their officers, directors, employees, and agents harmless from and against any and all actions, claims, demands, losses, liabilities, costs, damages, and expenses (including attorneys' fees), arising out of or in connection with: (i) your use of the Services or services or goods obtained through your use of the Services; (ii) your breach or violation of any of these Terms; (iii) Uber's use of your User Content; or (iv) your violation of the rights of any third party, including Third Party Providers.

# 7. Other Provisions

## Choice of Law.

These Terms shall be governed by and construed in accordance with the laws of the State of California, U.S.A., without regard to the choice or conflict of law principles of any jurisdiction, except as may be otherwise provided in the Arbitration Agreement in Section 2 above or in supplemental terms applicable to your region. This Choice of Law provision applies only to the interpretation of these Terms and is not intended to create any other substantive right to non-Californians to assert claims under California law or bring claims in California courts whether that be by statute, common law, or otherwise. These provisions, and except as otherwise provided in Section 2 of these Terms, are only intended to specify the use of California law to interpret these Terms, and these provisions shall not be interpreted as generally extending California law to you if you do not otherwise reside in California.

Any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to the Terms, shall be governed by and construed in accordance with the laws of the state in which the incident or accident occurred.

## Choice of Forum.

Any dispute, claim or controversy arising out of or relating to these Terms or the existence, breach, termination, enforcement, interpretation or validity thereof, shall be brought exclusively in the state and federal courts of California, notwithstanding that other courts may have jurisdiction over the parties and subject matter, except as may be otherwise provided by the Arbitration Agreement above or in supplemental terms applicable to your region.

Notwithstanding the foregoing, any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to the Terms, shall be brought exclusively in the state and federal courts in the State in which the incident or accident occurred, notwithstanding that other courts may have jurisdiction over the parties and subject matter, and except as may be otherwise provided in the Arbitration Agreement above or in supplemental terms applicable to your region, to the extent permitted by law.

The foregoing Choice of Law and Choice of Forum provisions do not apply to the Arbitration Agreement in Section 2, and we refer you to Section 2 for the applicable provisions for such disputes.

## Claims of Copyright Infringement.

Claims of copyright infringement should be sent to Uber's designated agent. Please visit Uber's web page at https://www.uber.com/legal/intellectual-property/copyright/global for the designated address and additional information.

## Notice.

Uber may give notice by means of a general notice on or through the Services, electronic mail to the email address associated with your Account, telephone or text message to any phone number provided in connection with your account, or by written communication sent by first class mail or pre-paid post to any address connected with your Account. Such notice shall be deemed to have been given upon the expiration of 48 hours after mailing or posting (if sent by first class mail or pre-paid post) or at the time of sending (if sent by email, telephone, or on or through the Services). You may give notice to Uber, with such notice deemed given when received by Uber, at any time by first class mail or pre-paid post to our registered agent for service of process, c/o Uber Technologies, Inc.. The name and current contact information for the registered agent in each state are available online at https://www.wolterskluwer.com/en/solutions/ct-corporation/sop-locations. If another provision of these Terms addresses any specific notice (for example, notice of updates to these Terms, or notice of a dispute or arbitration demand), those specific notice provisions shall prevail to the extent there is any conflict or inconsistency between those provisions and this notice provision.

## General.

You may not assign these Terms without Uber's prior written approval. Uber may assign these Terms without your consent to: (i) a subsidiary or affiliate; (ii) an acquirer of Uber's equity, business or assets; or (iii) a successor by merger. Any purported assignment by you in violation of this section shall be void. No joint venture, partnership, employment, or agency relationship exists between you, Uber or any Third Party Provider as a result of this Agreement or use of the Services. If any provision of these Terms is held to be invalid or unenforceable, such provision shall be struck and the remaining provisions shall be enforced to the fullest extent under law. Uber's failure to enforce any right or provision in these Terms shall not constitute a waiver of such right or provision unless acknowledged and agreed to by Uber in writing. This provision shall not affect the Severability and Survivability section of the Arbitration Agreement of these Terms.

# EXHIBIT I

Last modified: 7/12/2021

# U.S. Terms of Use

## 1. Contractual Relationship

These Terms of Use ("Terms") govern your access or use, from within the United States and its territories and possessions, of the multi-sided digital marketplace platform ("Uber Marketplace Platform") and any related content or services (collectively, the "Services," as more fully defined below in Section 3) made available in the United States and its territories and possessions by Uber Technologies, Inc. and its subsidiaries, representatives, affiliates, officers and directors (collectively, "Uber"). PLEASE READ THESE TERMS CAREFULLY, AS THEY CONSTITUTE A LEGAL AGREEMENT BETWEEN YOU AND UBER. In these Terms, the words "including" and "include" mean "including, but not limited to."

By accessing or using the Services, you confirm your agreement to be bound by these Terms. If you do not agree to these Terms, you may not access or use the Services. These Terms expressly supersede prior agreements or arrangements with you regarding the use of the Services.

Notwithstanding the foregoing, these Terms do not supersede or otherwise impact the enforceability of any agreements you may have with Uber or its subsidiaries regarding driving, delivering and/or providing transportation and/or delivery services (e.g., the Platform Access Agreement, the Technology Services Agreement and/or any similar agreements). To the extent (but only to the extent) any agreement you may have with Uber regarding driving, delivering and/or providing transportation and/or delivery services conflicts with these Terms, those agreements (and not these Terms) will prevail.

Uber may immediately terminate these Terms or any Services with respect to you, or generally cease offering or deny access to the Services or any portion thereof, at any time for any reason.

IMPORTANT: PLEASE BE ADVISED THAT THIS AGREEMENT CONTAINS PROVISIONS THAT GOVERN HOW CLAIMS BETWEEN YOU AND UBER CAN BE BROUGHT, INCLUDING THE ARBITRATION AGREEMENT (SEE SECTION 2 BELOW). PLEASE REVIEW THE ARBITRATION AGREEMENT BELOW CAREFULLY, AS IT REQUIRES YOU TO RESOLVE ALL DISPUTES WITH UBER ON AN INDIVIDUAL BASIS AND, WITH LIMITED EXCEPTIONS, THROUGH FINAL AND BINDING ARBITRATION (AS DESCRIBED IN SECTION 2 BELOW). BY ENTERING INTO THIS AGREEMENT, YOU EXPRESSLY ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND ALL OF THE TERMS OF THIS AGREEMENT AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT DECISION.

Supplemental terms may apply to certain options or offers available through the Services, such as policies for a particular ride or logistics option (e.g., Uber Connect), event, program, activity, or promotion. Such supplemental terms will be disclosed to you in connection with the applicable option or offer. Supplemental terms are in addition to, and shall be deemed a part of, the Terms for the purposes of the applicable option or offer. Supplemental terms shall prevail over these Terms in the event of a conflict with respect to the applicable option or offer.

Uber may make changes to these Terms from time to time. If Uber makes changes, it will provide you with notice of such changes, such as by sending an email, providing a notice through the Services, or updating the date at the top of these Terms. Unless Uber says otherwise in its notice, the amended Terms will be effective immediately and your continued access to and use of the Services after Uber provides such notice will confirm your acceptance of the changes. If you do not agree to the amended Terms, you must stop accessing and using the Services.

Uber's collection and use of personal information in connection with the Services is described in Uber's Privacy Notice located at https://www.uber.com/privacy/notice.

## 2. Arbitration Agreement

By agreeing to the Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration as set forth in this Arbitration Agreement. This will preclude you from bringing any class, collective, or representative action against Uber, and also preclude you from participating in or recovering relief under any current or future class, collective, consolidated, or representative action brought against Uber by someone else. For the avoidance of doubt, this precludes you from bringing or participating in any kind of any class, collective, coordinated, consolidated, representative or other kind of group, multi-plaintiff or joint action against Uber.

### (a) Agreement to Binding Arbitration Between You and Uber.

Except as expressly provided below in Section 2(b), you and Uber agree that any dispute, claim or controversy in any way arising out of or relating to (i) these Terms and prior versions of these Terms, or the existence, breach, termination, enforcement, interpretation, scope, waiver, or validity thereof, (ii) your access to or use of the Services at any time, (iii) incidents or accidents resulting in personal injury that you allege occurred in connection with your use of the Services, whether the dispute, claim or controversy occurred or accrued before or after the date you agreed to the Terms, or (iv) your relationship with Uber, will be settled by binding arbitration between you and Uber, and not in a court of law. This Agreement survives after your relationship with Uber ends.

You acknowledge and agree that you and Uber are each waiving the right to a trial by jury or to bring or to participate as a plaintiff or class member in any class, purported class, collective,

coordinated, consolidated, or representative proceeding.

This Arbitration Agreement shall be binding upon, and shall include any claims brought by or against any third-parties, including but not limited to your spouses, heirs, third-party beneficiaries and assigns, where their underlying claims are in relation to your use of the Services. To the extent that any third-party beneficiary to this agreement brings claims against the Parties; those claims shall also be subject to this Arbitration Agreement.

## (b) Exceptions to Arbitration

Notwithstanding the foregoing, this Arbitration Agreement shall not require arbitration of the following claims: (i) individual claims brought in small claims court so long as the matter remains in such court and advances only on an individual (non-class, non-representative) basis; (ii) individual claims of sexual assault or sexual harassment occurring in connection with your use of the Services; and/or (iii) injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights.

Such claims may be brought and litigated in a court of competent jurisdiction by you on an individual basis only. On an individual basis means that you cannot bring such claims as a class, coordinated, consolidated, collective, or representative action against Uber. For the avoidance of doubt, this precludes you from bringing claims as or participating in any kind of any class, collective, coordinated, consolidated, representative or other kind of group, multi-plaintiff or joint action against Uber and no action brought by you may be consolidated or joined in any fashion with any other proceeding. Where your claims are brought and litigated to completion on such an individual basis in a court of competent jurisdiction, Uber agrees to honor your election.

The parties' agreement not to require arbitration in these limited instances does not waive the enforceability of this Arbitration Agreement as to any other provision (including, but not limited to, the waivers provided for in Section 2(a), which will continue to apply in court as well as in arbitration), or the enforceability of this Agreement as to any other controversy, claim or dispute.

## (c) Rules and Governing Law.

The arbitration will be administered by the American Arbitration Association ("AAA") in accordance with the AAA's Consumer Arbitration Rules (the "AAA Rules") then in effect, except as modified by this Arbitration Agreement. The AAA Rules are available at www.adr.org or by calling the AAA at 1-800-778-7879.

The parties agree that the arbitrator ("Arbitrator"), and not any federal, state, or local court or agency, shall have exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including any claim that

all or any part of this Arbitration Agreement is void or voidable. The Arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether the Terms are applicable, unconscionable or illusory and any defense to arbitration, including waiver, delay, laches, or estoppel. If there is a dispute about whether this Arbitration Agreement can be enforced or applies to a dispute, you and Uber agree that the arbitrator will decide that issue.

Notwithstanding any choice of law or other provision in the Terms, the parties agree and acknowledge that this Arbitration Agreement evidences a transaction involving interstate commerce and that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), will govern its interpretation and enforcement and proceedings pursuant thereto. It is the intent of the parties to be bound by the provisions of the FAA for all purposes, including, but not limited to, interpretation, implementation, enforcement, and administration of this Arbitration Agreement, and that the FAA and AAA Rules shall preempt all state laws to the fullest extent permitted by law. If the FAA and AAA Rules are found to not apply to any issue regarding the interpretation or enforcement of this Arbitration Agreement, then that issue shall be resolved under the laws of the state where you reside when you accept these Terms.

Any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to the Terms, shall be governed by and construed in accordance with the laws of the state in which the incident or accident occurred.

## (d) Process.

Pre-Arbitration Dispute Resolution and Notification. Prior to initiating an arbitration, you and Uber each agree to notify the other party in writing of any dispute and to attempt to negotiate an informal resolution. Notice of the dispute must include the party's name, preferred contact information, a brief description of the dispute, and the relief sought. Notice to Uber must be sent to Uber Technologies, Inc., Attn: Legal Department, 1515 3rd Street, San Francisco, CA 94158. Neither party shall initiate arbitration until 30 days after the notice is sent. Engaging in this pre-arbitration dispute resolution and notification process is a requirement that must be fulfilled before commencing arbitration. The statute of limitations and any filing fee deadlines shall be tolled while the parties engage in the informal resolution process required by this paragraph.

Initiating Arbitration. In order to initiate arbitration, a party must provide the other party with a written Demand for Arbitration and file the Demand with AAA as specified in the AAA Rules. (The AAA provides a form Demand for Arbitration - Consumer Arbitration Rules at www.adr.org or by calling the AAA at 1-800-778-7879). A party initiating an arbitration against Uber must send the written Demand for Arbitration to Uber Technologies, Inc., LLC, Attn: Legal Department, 1515 3rd Street, San Francisco, CA 94158, or serve the Demand on

Uber's registered agent for service of process, c/o Uber Technologies, Inc. (the name and current contact information for the registered agent in each state are available online here). The Arbitrator will be either (1) a retired judge or (2) an attorney licensed to practice law in the state where the arbitration is conducted. The Arbitrator will be selected by the parties from the AAA's National Roster of Arbitrators. If the parties are unable to agree upon an Arbitrator after a good faith meet and confer effort, then the AAA will appoint the Arbitrator in accordance with the AAA Rules.

## (e) Location and Procedure.

Unless you and Uber otherwise agree, the arbitration will be conducted in the county where you reside. If your claim does not exceed $10,000, then the arbitration will be conducted solely on the basis of documents you and Uber submit to the Arbitrator, unless you request a hearing or the Arbitrator determines that a hearing is necessary. If your claim exceeds $10,000, your right to a hearing will be determined by the AAA Rules. Subject to the AAA Rules, the Arbitrator will have the discretion to direct a reasonable exchange of information by the parties, consistent with the expedited nature of the arbitration.

## (f) Arbitrator's Decision.

The Arbitrator will render an award within the time frame specified in the AAA Rules. Judgment on the arbitration award may be entered in any court having competent jurisdiction to do so. The Arbitrator may award declaratory or injunctive relief only in favor of the claimant and only to the extent necessary to provide relief warranted by the claimant's individual claim. An Arbitrator's decision shall be final and binding on all parties. An Arbitrator's decision and judgment thereon shall have no precedential or collateral estoppel effect. If you prevail in arbitration you may seek an award of attorneys' fees and expenses to the extent permitted under applicable law. Uber will not seek, and hereby waives all rights Uber may have under applicable law to recover attorneys' fees and expenses if Uber prevails in arbitration.

## (g) Fees.

Your responsibility to pay any AAA filing, administrative and arbitrator fees will be solely as set forth in the AAA Rules.

## (h) Severability and Survival.

If any portion of this Arbitration Agreement is found to be unenforceable or unlawful for any reason, (1) the unenforceable or unlawful provision shall be severed from these Terms; (2) severance of the unenforceable or unlawful provision shall have no impact whatsoever on the remainder of the Arbitration Agreement or the parties' ability to compel arbitration of any remaining claims on an individual basis pursuant to the Arbitration Agreement; and (3) to the extent that any claims must therefore proceed on a class, collective, consolidated, or representative basis, such claims must be litigated in a civil court of competent jurisdiction and

not in arbitration, and the parties agree that litigation of those claims shall be stayed pending the outcome of any individual claims in arbitration.

# 3. The Marketplace Platform & Services

Uber operates a multi-sided digital marketplace platform that is offered in a number of forms, including mobile and/or web based applications ("Applications"). Among other things, the Uber Marketplace Platform enables you to receive: (i) services rendered by Uber that facilitate your connection to independent third party providers, including drivers and restaurants ("Third Party Providers"), for the purchase of services or goods, such as transportation, logistics and/or delivery services from those Third Party Providers; and (ii) any related content or services, including payment processing and customer support. The Uber Marketplace Platform and the Uber content or services described in this Section are collectively referred to as "the Services". Unless otherwise agreed by Uber in a separate written agreement with you, the Services are made available solely for your personal, noncommercial use.

YOU ACKNOWLEDGE THAT YOUR ABILITY TO OBTAIN TRANSPORTATION, LOGISTICS AND/OR DELIVERY SERVICES FROM THIRD PARTY PROVIDERS THROUGH THE USE OF THE UBER MARKETPLACE PLATFORM AND SERVICES DOES NOT ESTABLISH UBER AS A PROVIDER OF TRANSPORTATION, LOGISTICS OR DELIVERY SERVICES OR AS A TRANSPORTATION OR PROPERTY CARRIER. UBER IS NOT A COMMON OR MOTOR CARRIER, DOES NOT TRANSPORT YOU, AND USE OF THE UBER MARKETPLACE PLATFORM IS ONLY OPEN TO REGISTERED USERS OF THE UBER MARKETPLACE PLATFORM AND NOT TO THE GENERAL PUBLIC.

YOU ACKNOWLEDGE THAT INDEPENDENT THIRD PARTY PROVIDERS, INCLUDING DRIVERS ARE NOT ACTUAL AGENTS, APPARENT AGENTS, OSTENSIBLE AGENTS, OR EMPLOYEES OF UBER IN ANY WAY.

YOU ALSO ACKNOWLEDGE THAT ANY SAFETY RELATED EFFORT, FEATURE, PROCESS, POLICY, STANDARD OR OTHER EFFORT UNDERTAKEN BY UBER, IN THE INTEREST OF PUBLIC SAFETY (WHETHER REQUIRED BY APPLICABLE REGULATIONS OR NOT), IS NOT AN INDICIA OF AN EMPLOYMENT, ACTUAL AGENCY, APPARENT AGENCY, OR OSTENSIBLE AGENCY RELATIONSHIP WITH AN INDEPENDENT THIRD PARTY DRIVER.

License.

Subject to your compliance with these Terms, Uber grants you a limited, non-exclusive, non-sublicensable, revocable, non-transferable license to: (i) access and use the Applications on your personal device solely in connection with your use of the Services; and (ii) access and use any content, information and related materials that may be made available through the Services, in each case solely for your personal, noncommercial use. Any rights not expressly granted herein are reserved by Uber and Uber's licensors.

Restrictions.

You may not: (i) remove any copyright, trademark or other proprietary notices from any portion of the Services; (ii) reproduce, modify, prepare derivative works based upon, distribute, license, lease, sell, resell, transfer, publicly display, publicly perform, transmit, stream, broadcast or otherwise exploit the Services except as expressly permitted by Uber; (iii) decompile, reverse engineer or disassemble the Services except as may be permitted by applicable law; (iv) link to, mirror or frame any portion of the Services; (v) cause or launch any programs or scripts for the purpose of unduly burdening or hindering the operation and/or functionality of any aspect of the Services; or (vi) attempt to gain unauthorized access to or impair any aspect of the Services or its related systems or networks.

## Third Party Services and Content.

The Services may be made available or accessed in connection with third party services and content (including advertising) that Uber does not control. Once you click on a link to third party services or content, you will be subject to the terms and conditions and privacy policy of that website, destination, or third party service provider. Uber will not warn you that you have left the Services or that you are subject to the terms and conditions (including privacy policies) of another website, destination, or third party service provider. You use all links in third party websites and advertisements at your own risk as these are not part of the Services and are not controlled by Uber. You acknowledge that different terms of use and privacy policies may apply to your use of such third party services and content. Uber does not endorse such third party services and content and in no event shall Uber be responsible or liable for any products or services of such third party providers.

## App Stores.

You acknowledge and agree that the availability of the Applications may be dependent on the third party from which you received the Application's license, e.g., the Apple iPhone or Android app stores ("App Store"). You acknowledge and agree that this Agreement is between you and Uber and not with the App Store and that Uber is responsible for the provision of Services as described in this Agreement. However, if you downloaded the Application from the Apple App Store, Apple and its subsidiaries are third-party beneficiaries of this Agreement. Upon your acceptance of this Agreement, Apple shall have the right (and will be deemed to have accepted the right) to enforce this Agreement against you as a third-party beneficiary thereof. This Agreement incorporates by reference Apple's Licensed Application End User License Agreement, for purposes of which, you are "the end-user." In the event of a conflict in the terms of the Licensed Application End User License Agreement and this Agreement, the terms of this Agreement will control.

## Ownership.

The Services and all rights therein are and shall remain Uber's property or the property of Uber's licensors. Neither these Terms nor your use of the Services convey or grant to you any rights in or related to the Services except for the limited license granted above.

You agree that you will not use Uber's trademarks, service marks, or trade dress or any similar names, marks, or trade dress ("Uber's Marks"), aside from use incidental to your use of the Services, without express, written permission from Uber. This prohibition on using Uber's Marks includes, but is not limited to, use in domain names, websites, and social media accounts.

# 4. Access and Use of the Services

## User Accounts.

In order to use most aspects of the Services, you must register for and maintain an active personal user Services account ("Account"). You must be at least 18 years of age, or the age of legal majority in your jurisdiction (if different than 18), to obtain an Account, unless a specific Service permits otherwise. You cannot register for or maintain an Account if you have previously been banned from accessing or using the Services. Account registration requires you to submit to Uber certain personal information, such as your name, address, mobile phone number and age, as well as at least one valid payment method supported by Uber. For more information regarding Uber's use of your personal information, please see our Privacy Notice currently available at https://privacy.uber.com/policy/. You agree to maintain accurate, complete, and up-to-date information in your Account, including a valid phone number, address and payment method. Your failure to comply with these Terms (including policies and supplemental terms) including, without limitation, your failure to maintain accurate, complete, and up-to-date Account information, including having an invalid or expired payment method on file, may result in your inability to access or use the Services. You are responsible for all activity that occurs under your Account, and you agree to maintain the security and secrecy of your Account username and password at all times. Unless otherwise permitted by Uber in writing, you may only possess one Account.

## User Requirements and Conduct.

You agree to abide by the Uber Community Guidelines, available here. Failure to comply with the Community Guidelines or any violation of these terms may result in the permanent loss of access to the Services.

The Services are not available for use by persons under the age of 18. You may not authorize third parties to use your Account, and you may not allow persons under the age of 18 to receive transportation, delivery or logistics services from Third Party Providers unless they are accompanied by you. You may not assign or otherwise transfer your Account to any other person or entity. You agree to comply with all applicable laws when accessing or using the Services, and you may only access or use the Services for lawful purposes (e.g., no transport of

unlawful or hazardous materials). You may not in your access or use of the Services cause nuisance, annoyance, inconvenience, or property damage, whether to the Third Party Provider or any other party. If you request a ride option with a car seat, you acknowledge and agree that neither Uber nor the Third Party Provider is responsible for the safety of a child restraint/car seat that may be available in the Third Party Providers' Vehicle. You acknowledge and agree that it is your obligation to ensure that the car seat is installed correctly and that the child is properly secured in the seat. If you request a ride option where a driver agrees to provide you with assistance outside of the vehicle (e.g., Uber Assist), you acknowledge and agree that neither Uber nor the Third Party Provider is responsible for any injury or incident that may arise out of the assistance provided by the Third Party Provider. In certain instances you may be asked to provide proof of age, identity or other method of identity verification to access or use the Services, and you agree that you may be denied access to or use of the Services if you refuse to provide proof of age, identity or other method of identity verification.

Subject to the discretion of a Third Party Provider, you may be allowed to bring a small animal, such as a dog or cat, on a ride requested through the Uber Marketplace Platform. For such trips, you are responsible for properly securing the animal with a leash, harness, crate / carrier, or through other means. You are also responsible for ensuring that the animal does not cause damage or a mess in the Third Party Provider's vehicle. You may be subject to a Charge for Repair or Cleaning under Section 5 for any damage or mess caused by an animal that is transported during a ride requested under your Account. Please note, in accordance with Uber's policies on service animals and assistive devices, service animals are generally permitted to accompany riders without extra charge, regardless of whether it is a Pet Friendly Trip.

## Text Messaging and Telephone Calls.

You agree that Uber Technologies, Inc., and its subsidiaries, representatives, affiliates, officers and directors, may contact you by telephone or text messages (including by an automatic telephone dialing system and/or with an artificial or pre-recorded voice) at any of the phone numbers provided by you or on your behalf in connection with an Uber account, including for marketing purposes. You understand that you are not required to provide this consent as a condition of purchasing any property, goods or services. You also understand that you may opt out of receiving text messages from Uber at any time, either by replying "STOP", texting the word "STOP" to 89203 using the mobile device that is receiving the messages, or by contacting help.uber.com. If you do not choose to opt out, Uber may contact you as outlined in its User Privacy Notice, located at https://www.uber.com/privacy/notice.

You agree that Uber may contact you using any of the phone numbers you provided in connection with an Uber account (including via text or voice-recorded message) or your email address in the case of suspected fraud or unlawful activity.

## User Provided Content.

Uber may, in Uber's sole discretion, permit you from time to time to submit, upload, publish or otherwise make available to Uber through the Services textual, audio, and/or visual content and information, and submission of entries for competitions and promotions ("User Content"). Any User Content provided by you remains your property. However, by providing User Content to Uber, you grant Uber a worldwide, perpetual, irrevocable, transferable, royalty-free license, with the right to sublicense, to use, copy, modify, create derivative works of, distribute, publicly display, publicly perform, and otherwise exploit in any manner such User Content in all formats and distribution channels now known or hereafter devised (including in connection with the Services and Uber's business and on third party sites and services), without further notice to or consent from you, and without the requirement of payment to you or any other person or entity.

You represent and warrant that: (i) you either are the sole and exclusive owner of all User Content or you have all rights, licenses, consents and releases necessary to grant Uber the license to the User Content as set forth above; and (ii) neither the User Content, nor your submission, uploading, publishing or otherwise making available of such User Content, nor Uber's use of the User Content as permitted herein will infringe, misappropriate or violate a third party's intellectual property or proprietary rights, or rights of publicity or privacy, or result in the violation of any applicable law or regulation.

You agree to not provide User Content that is defamatory, libelous, hateful, violent, obscene, pornographic, unlawful, or otherwise offensive, as determined by Uber in its sole discretion, whether or not such material may be protected by law. Uber may, but shall not be obligated to, review, monitor, and remove User Content, at Uber's sole discretion and at any time and for any reason, without notice to you.

## User Feedback.

As Uber respects your rights to your ideas, please do not submit any confidential ideas, information, or suggestions in any form to Uber or any of its affiliates. For any ideas, information, or suggestions you do submit, regardless of what your communication regarding your submissions says, you understand that your submissions are voluntary and the following terms shall apply to your submissions: (i) your submissions and their contents will automatically become the property of Uber, without any compensation to you; (ii) Uber has no obligation to review your submissions; (iii) Uber may implement and distribute any portion of your submissions and their contents for any purpose in any way, without any compensation to you; and (iv) Uber has no obligation to keep your submissions confidential.

## Network Access and Devices.

You are responsible for obtaining the data network access necessary to use the Services. Your mobile network's data and messaging rates and fees may apply if you access or use the Services from your device. You are responsible for acquiring and updating compatible hardware or devices necessary to access and use the Services and Applications and any updates thereto.

Uber does not guarantee that the Services, or any portion thereof, will function on any particular hardware or devices. In addition, the Services may be subject to malfunctions and delays inherent in the use of the Internet and electronic communications.

# 5. Payment

You understand that use of the Services may result in charges to you for the services or goods you receive ("Charges"). Uber will enable your payment of the applicable Charges for services or goods obtained through your use of the Services. Charges will include applicable taxes where required by law. Charges may include other applicable fees, product return fees, cancellation fees, estimated or actual tolls, and/or surcharges. Further, you acknowledge and agree that Charges applicable in certain geographical areas may increase substantially during times of high demand or due to other marketplace factors.

All Charges and payments will be enabled by Uber using the preferred payment method designated in your Account, after which you will receive a receipt. If your primary Account payment method is determined to be expired, invalid or otherwise not able to be charged, you agree that Uber may use a secondary payment method in your Account, if available. Charges paid by you are final and non-refundable, unless otherwise determined by Uber.

As between you and Uber, Uber reserves the right to establish or adjust Charges for any or all services or goods obtained through the use of the Services at any time. Uber will use reasonable efforts to inform you of Charges that may apply, provided that you will be responsible for Charges incurred under your Account regardless of your awareness of such Charges or the amounts thereof. Certain users may from time to time receive promotional offers and discounts that may result in different amounts charged for the same or similar services or goods obtained through the use of the Services, and you agree that such promotional offers and discounts, unless also made available to you, shall have no bearing on your use of the Services or the Charges applied to you. Promotional offers and discounts are subject to change or withdrawal at any time and without notice. You may elect to cancel your request for Services at any time prior to the commencement of such Services, in which case you may be charged a cancellation fee on a Third Party Provider's behalf.

With respect to Third Party Providers, Charges you incur will be owed directly to Third Party Providers, and Uber will collect payment of those charges from you, on the Third Party Provider's behalf as their limited payment collection agent, and payment of the Charges shall be considered the same as payment made directly by you to the Third Party Provider. In such cases, you retain the right to request lower Charges from a Third Party Provider for services or goods received by you from such Third Party Provider at the time you receive such services or goods, and Charges you incur will be owed to the Third Party Provider. Uber will consider in good faith any request from a Third Party Provider to modify the Charges for a particular service or good. This payment structure is intended to fully compensate a Third Party Provider,

if applicable, for the services or goods obtained in connection with your use of the Services. Except for amounts provided by you through the Application as part of the "tip" feature, Uber does not designate any portion of your payment as a tip or gratuity to a Third Party Provider. You understand and agree that, while you are free to provide additional payment as a gratuity to any Third Party Provider who provides you with services or goods obtained through the Service, you are under no obligation to do so. There also may be certain Charges you incur that will be owed and paid directly to Uber or its affiliates. For the avoidance of doubt, Uber does not charge a fee for a user to access the Uber Marketplace Platform, but retains the right to charge users a fee or any other Charge for accessing Services made available through the Marketplace Platform. Even if not indicated on the Uber Marketplace Platform, you understand that the prices for product or menu items displayed through the Services may differ from the prices offered or published by Third Party Providers for the same product or menu items and/or from prices available at other third party websites/mobile applications. Prices for product or menu items displayed through the Services may not be the lowest prices at which the product or menu items are sold.

If you think a correction should be made to any Charge you incurred, you must let Uber know in writing within 30 days after the Charge took place or Uber will have no further responsibility and you waive your right to later dispute the amounts charged.

### Damage, Cleaning, Lost and Found, and Violation of Terms.

Uber may charge you a fee if, during your use of the Services, you have caused damage to a vehicle or property that requires repair or cleaning ("Repair" or "Cleaning"). The amount of such fee shall be determined, in Uber's sole discretion, based on the type of damage and the severity. Uber reserves the right to verify or otherwise require documentation of damages prior to processing a fee. In the event that a Repair or Cleaning request is verified by Uber in Uber's reasonable discretion, Uber reserves the right to facilitate payment for the reasonable cost of such Repair or Cleaning using your payment method designated in your Account. Such amounts, as well as those pertaining to lost and found goods, will be transferred by Uber to a Third Party Provider, if applicable, and are non-refundable.

Additionally, if you fail to comply with these Terms you may be responsible for Charges, including without limitation, for transactions that could not be completed properly, arising out of or in connection with your failure to comply with these Terms.

## 6. Disclaimers; Limitation of Liability; Indemnity.

### Disclaimer.

THE SERVICES ARE PROVIDED "AS IS" AND "AS AVAILABLE." UBER DISCLAIMS ALL REPRESENTATIONS AND WARRANTIES, EXPRESS, IMPLIED, OR STATUTORY, NOT EXPRESSLY SET OUT IN THESE TERMS, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY,

FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. IN ADDITION, UBER MAKES NO REPRESENTATION, WARRANTY, OR GUARANTEE REGARDING THE RELIABILITY, TIMELINESS, QUALITY, SUITABILITY, OR AVAILABILITY OF THE SERVICES OR ANY SERVICES OR GOODS REQUESTED THROUGH THE USE OF THE SERVICES, OR THAT THE SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE.

UBER DOES NOT GUARANTEE THE QUALITY, SUITABILITY, SAFETY OR ABILITY OF THIRD PARTY PROVIDERS. YOU AGREE THAT THE ENTIRE RISK ARISING OUT OF YOUR USE OF THE SERVICES, AND ANY SERVICE OR GOOD REQUESTED IN CONNECTION THEREWITH, REMAINS SOLELY WITH YOU, TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW.

UBER DOES NOT CONTROL, MANAGE OR DIRECT ANY THIRD PARTY PROVIDERS INCLUDING DRIVERS. THIRD PARTY PROVIDERS ARE NOT ACTUAL AGENTS, APPARENT AGENTS, OSTENSIBLE AGENTS, OR EMPLOYEES OF UBER.

UBER DOES NOT CONTROL, ENDORSE OR TAKE RESPONSIBILITY FOR ANY USER CONTENT OR THIRD PARTY CONTENT AVAILABLE ON OR LINKED TO BY THE SERVICES. UBER CANNOT AND DOES NOT REPRESENT OR WARRANT THAT THE SERVICES OR SERVERS ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS.

## Limitation of Liability.

UBER SHALL NOT BE LIABLE FOR INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, PUNITIVE, OR CONSEQUENTIAL DAMAGES, INCLUDING LOST PROFITS, LOST DATA, PERSONAL INJURY, OR PROPERTY DAMAGE RELATED TO, IN CONNECTION WITH, OR OTHERWISE RESULTING FROM ANY USE OF THE SERVICES, REGARDLESS OF THE NEGLIGENCE (EITHER ACTIVE, AFFIRMATIVE, SOLE, OR CONCURRENT) OF UBER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

UBER SHALL NOT BE LIABLE FOR ANY DAMAGES, LIABILITY OR LOSSES ARISING OUT OF: (i) YOUR USE OF OR RELIANCE ON THE SERVICES OR YOUR INABILITY TO ACCESS OR USE THE SERVICES; OR (ii) ANY TRANSACTION OR RELATIONSHIP BETWEEN YOU AND ANY THIRD PARTY PROVIDER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. UBER SHALL NOT BE LIABLE FOR DELAY OR FAILURE IN PERFORMANCE RESULTING FROM CAUSES BEYOND UBER'S REASONABLE CONTROL. YOU ACKNOWLEDGE THAT THIRD PARTY PROVIDERS PROVIDING TRANSPORTATION SERVICES REQUESTED THROUGH SOME UBER SERVICES MAY OFFER RIDESHARING OR PEER-TO-PEER TRANSPORTATION SERVICES AND MAY NOT BE PROFESSIONALLY LICENSED OR PERMITTED. YOU ACKNOWLEDGE THAT THIRD PARTY PROVIDERS ARE NOT OSTENSIBLE AGENTS, APPARENT AGENTS, ACTUAL AGENTS, OR EMPLOYEES OF UBER.

THE SERVICES MAY BE USED BY YOU TO REQUEST AND SCHEDULE TRANSPORTATION, GOODS, OR LOGISTICS SERVICES WITH THIRD PARTY PROVIDERS, BUT YOU AGREE THAT UBER HAS NO RESPONSIBILITY OR LIABILITY TO YOU RELATED TO ANY TRANSPORTATION, GOODS OR LOGISTICS SERVICES PROVIDED TO YOU BY THIRD PARTY PROVIDERS OTHER THAN AS EXPRESSLY SET FORTH IN THESE TERMS.

UBER SHALL NOT BE LIABLE FOR ANY DAMAGES, LIABILITY OR LOSSES ARISING OUT OF LACK OF OR IMPROPER INSTALLATION OR USE OF CHILD RESTRAINT SYSTEMS FOR GUESTS ON RIDES REQUESTED THROUGH THE SERVICES FOR WHOM A CHILD RESTRAINT SYSTEM IS LEGALLY REQUIRED.

THE LIMITATIONS AND DISCLAIMERS IN THIS SECTION DO NOT PURPORT TO LIMIT LIABILITY OR ALTER YOUR RIGHTS AS A CONSUMER THAT CANNOT BE EXCLUDED UNDER APPLICABLE LAW. BECAUSE SOME STATES OR JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF OR THE LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, IN SUCH STATES OR JURISDICTIONS, UBER'S LIABILITY SHALL BE LIMITED TO THE EXTENT PERMITTED BY LAW. THIS PROVISION SHALL HAVE NO EFFECT ON UBER'S CHOICE OF LAW PROVISION SET FORTH BELOW.

### Indemnity.

You agree to indemnify and hold Uber and its affiliates and their officers, directors, employees, and agents harmless from and against any and all actions, claims, demands, losses, liabilities, costs, damages, and expenses (including attorneys' fees), arising out of or in connection with: (i) your use of the Services or services or goods obtained through your use of the Services; (ii) your breach or violation of any of these Terms; (iii) Uber's use of your User Content; or (iv) your violation of the rights of any third party, including Third Party Providers.

# 7. Other Provisions

### Choice of Law.

These Terms shall be governed by and construed in accordance with the laws of the State of California, U.S.A., without regard to the choice or conflict of law principles of any jurisdiction, except as may be otherwise provided in the Arbitration Agreement in Section 2 above or in supplemental terms applicable to your region. This Choice of Law provision applies only to the interpretation of these Terms and is not intended to create any other substantive right to non-Californians to assert claims under California law or bring claims in California courts whether that be by statute, common law, or otherwise. These provisions, and except as otherwise provided in Section 2 of these Terms, are only intended to specify the use of California law to interpret these Terms, and these provisions shall not be interpreted as generally extending California law to you if you do not otherwise reside in California.

Any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to the Terms, shall be governed by and construed in accordance with the laws of the state in which the incident or accident occurred.

## Choice of Forum.

Any dispute, claim or controversy arising out of or relating to these Terms or the existence, breach, termination, enforcement, interpretation or validity thereof, shall be brought exclusively in the state and federal courts of California, notwithstanding that other courts may have jurisdiction over the parties and subject matter, except as may be otherwise provided by the Arbitration Agreement above or in supplemental terms applicable to your region.

Notwithstanding the foregoing, any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to the Terms, shall be brought exclusively in the state and federal courts in the State in which the incident or accident occurred, notwithstanding that other courts may have jurisdiction over the parties and subject matter, and except as may be otherwise provided in the Arbitration Agreement above or in supplemental terms applicable to your region, to the extent permitted by law.

The foregoing Choice of Law and Choice of Forum provisions do not apply to the Arbitration Agreement in Section 2, and we refer you to Section 2 for the applicable provisions for such disputes.

## Claims of Copyright or Trademark Infringement.

Any claim of copyright infringement should be sent to Uber's Designated Copyright Agent. Please visit https://www.uber.com/legal/en/document/?name=report-copyright-infringement&country=united-states&lang=en for instructions and the Agent's contact information.

For instructions on how to submit a claim of trademark infringement, please visit https://www.uber.com/legal/en/document/?name=report-trademark-infringement&country=united-states&lang=en.

## Notice.

Uber may give notice by means of a general notice on or through the Services, electronic mail to the email address associated with your Account, telephone or text message to any phone number provided in connection with your account, or by written communication sent by first class mail or pre-paid post to any address connected with your Account. Such notice shall be

deemed to have been given upon the expiration of 48 hours after mailing or posting (if sent by first class mail or pre-paid post) or at the time of sending (if sent by email, telephone, or on or through the Services). You may give notice to Uber, with such notice deemed given when received by Uber, at any time by first class mail or pre-paid post to our registered agent for service of process, c/o Uber Technologies, Inc.. The name and current contact information for the registered agent in each state are available online at https://www.wolterskluwer.com/en/solutions/ct-corporation/sop-locations. If another provision of these Terms addresses any specific notice (for example, notice of updates to these Terms, or notice of a dispute or arbitration demand), those specific notice provisions shall prevail to the extent there is any conflict or inconsistency between those provisions and this notice provision.

## General.

You may not assign these Terms without Uber's prior written approval. Uber may assign these Terms without your consent to: (i) a subsidiary or affiliate; (ii) an acquirer of Uber's equity, business or assets; or (iii) a successor by merger. Any purported assignment by you in violation of this section shall be void. No joint venture, partnership, employment, or agency relationship exists between you, Uber or any Third Party Provider as a result of this Agreement or use of the Services. If any provision of these Terms is held to be invalid or unenforceable, such provision shall be struck and the remaining provisions shall be enforced to the fullest extent under law. Uber's failure to enforce any right or provision in these Terms shall not constitute a waiver of such right or provision unless acknowledged and agreed to by Uber in writing. This provision shall not affect the Severability and Survivability section of the Arbitration Agreement of these Terms.

# EXHIBIT J

EFFECTIVE DATE 2021-12-16 UBER TERMS

Uber                                                                    Sign up

Select jurisdiction:     Language:

United States ▾          English

Last modified: 12/16/2021

# U.S. Terms of Use

## 1. Contractual Relationship

Uber provides a personalized multipurpose digital marketplace platform ("Uber Marketplace Platform") that enables you to conveniently find, request, or receive transportation, logistics and/or delivery services from third-party providers that meet your needs and interests. These Terms of Use ("Terms") govern your access or use, from within the United States and its territories and possessions, of the Uber Marketplace Platform and any related content or services (collectively, the "Services," as more fully defined below in Section 3) made available in the United States and its territories and possessions by Uber Technologies, Inc. and its subsidiaries, representatives, affiliates, officers and directors (collectively, "Uber"). PLEASE READ THESE TERMS CAREFULLY, AS THEY CONSTITUTE A LEGAL AGREEMENT BETWEEN YOU AND UBER. In these Terms, the words "including" and "include" mean "including, but not limited to."

By accessing or using the Services, you confirm your agreement to be bound by these Terms. If you do not agree to these Terms, you may not access or use the Services. These Terms expressly supersede prior agreements or arrangements with you regarding the use of the Services.

Notwithstanding the foregoing, these Terms do not supersede or otherwise impact the enforceability of any agreements you may have with Uber or its subsidiaries regarding driving, delivering and/or providing transportation and/or delivery services (e.g., the Platform Access Agreement, the Technology Services Agreement and/or any similar agreements). To the extent (but only to the extent) any agreement you may have with Uber regarding driving, delivering and/or providing transportation and/or delivery services conflicts with these Terms, those agreements (and not these Terms) will prevail with respect to any disputes arising from you driving, delivering and/or providing transportation and/or delivery services.

Uber may immediately terminate these Terms or any Services with respect to you, or generally cease offering or deny access to the Services or any portion thereof, at any time for any reason.

IMPORTANT: PLEASE BE ADVISED THAT THIS AGREEMENT CONTAINS PROVISIONS THAT GOVERN HOW CLAIMS BETWEEN YOU AND UBER CAN BE BROUGHT, INCLUDING THE ARBITRATION AGREEMENT (SEE SECTION 2 BELOW). PLEASE REVIEW THE ARBITRATION AGREEMENT BELOW CAREFULLY, AS IT REQUIRES YOU TO RESOLVE ALL DISPUTES WITH UBER ON AN INDIVIDUAL BASIS AND, WITH LIMITED EXCEPTIONS, THROUGH FINAL AND BINDING ARBITRATION (AS DESCRIBED IN

SECTION 2 BELOW). BY ENTERING INTO THIS AGREEMENT, YOU EXPRESSLY ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND ALL OF THE TERMS OF THIS AGREEMENT AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT DECISION.

Supplemental terms may apply to certain options or offers available through the Services, such as policies for a particular ride or logistics option (e.g., Uber Connect), event, program, activity, or promotion. Such supplemental terms will be disclosed to you in connection with the applicable option or offer. Supplemental terms are in addition to, and shall be deemed a part of, the Terms for the purposes of the applicable option or offer. Supplemental terms shall prevail over these Terms in the event of a conflict with respect to the applicable option or offer.

Uber may make changes to these Terms from time to time. If Uber makes changes, it will provide you with notice of such changes, such as by sending an email, providing a notice through the Services, or updating the date at the top of these Terms. Unless Uber says otherwise in its notice, the amended Terms will be effective immediately and your continued access to and use of the Services after Uber provides such notice will confirm your acceptance of the changes. If you do not agree to the amended Terms, you must stop accessing and using the Services.

Uber's collection and use of personal information in connection with the Services is described in Uber's Privacy Notice located at https://www.uber.com/privacy/notice.

# 2. Arbitration Agreement

By agreeing to the Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration as set forth in this Arbitration Agreement, and not as a class, collective, coordinated, consolidated, mass and/or representative action. This Arbitration Agreement will preclude you from bringing any class, collective, coordinated, consolidated, mass and/or representative action against Uber, and also preclude you from participating in or recovering relief in any current or future class, collective, coordinated, consolidated, mass and/or representative action brought against Uber by someone else—except as provided below in Section 2(a)(3)(c). Thus, the parties agree that the Arbitrator shall not conduct any form of class, collective, coordinated, consolidated, mass and/or representative arbitration, nor join, coordinate, or consolidate claims of multiple individuals against Uber in a single proceeding—except as provided below in Section 2(a)(3) (c). For the avoidance of doubt, except as provided below in Section 2(a)(3)(c), this Arbitration Agreement precludes you from bringing or participating in any kind of class, collective, coordinated, consolidated, mass and/or representative or other kind of group, multi-plaintiff or joint action against Uber, other than participating in a classwide, collective, coordinated, consolidated, mass and/or representative settlement of claims.

## (a) Agreement to Binding Arbitration Between You and Uber.

(1) <u>Covered Disputes</u>: Except as expressly provided below in Section 2(b), you and Uber agree that any dispute, claim, or controversy in any way arising out of or relating to (i) these Terms and prior versions of these Terms, or the existence, breach, termination, enforcement, interpretation, scope, waiver, or validity thereof; (ii) your access to or use of the Services at any time; (iii) incidents or accidents resulting in personal injury to you or anyone else that you allege occurred in connection with your use of the Services (including, but not limited to, your use of the Uber Marketplace Platform or the driver version of the Uber App), regardless whether the dispute, claim, or controversy occurred or accrued

before or after the date you agreed to the Terms, and regardless whether you allege that the personal injury was experienced by you or anyone else; and (iv) your relationship with Uber, will be settled by binding individual arbitration between you and Uber, and not in a court of law. This Arbitration Agreement survives after your relationship with Uber ends.

(2) <u>Class Action Waiver</u>: You acknowledge and agree that any and all disputes, claims, or controversies between the parties shall be resolved only in individual arbitration. The parties expressly waive the right to have any dispute, claim, or controversy brought, heard, administered, resolved, or arbitrated as a class, collective, coordinated, consolidated, and/or representative action, and neither an arbitrator nor an arbitration provider shall have any authority to hear, arbitrate, or administer any class, collective, coordinated, consolidated, and/or representative action, or to award relief to anyone but the individual in arbitration. The parties also expressly waive the right to seek, recover, or obtain any non-individual relief. Notwithstanding anything else in this agreement, this Class Action Waiver does not prevent you or Uber from participating in a classwide, collective, and/or representative settlement of claims.

The parties further agree that if for any reason a claim does not proceed in arbitration, this Class Action Waiver shall remain in effect, and a court may not preside over any action joining, coordinating, or consolidating the claims of multiple individuals against Uber in a single proceeding, except that this Class Action Waiver shall not prevent you or Uber from participating in a classwide, collective, and/or representative settlement of claims. If there is a final judicial determination that any portion of this Class Action Waiver is unenforceable or unlawful for any reason, (i) any class, collective, coordinated, consolidated, and/or representative claims subject to the unenforceable or unlawful portion(s) shall proceed in a court of competent jurisdiction; (ii) the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration; (iii) the unenforceable or unlawful portion(s) shall be severed from this Arbitration Agreement; and (iv) severance of the unenforceable or unlawful portion(s) shall have no impact whatsoever on the enforceability, applicability, or validity of the Arbitration Agreement or the arbitrability of any remaining claims asserted by you or Uber.

(3) <u>Mass Actions:</u>

a. <u>Mass Action Waiver</u>: You acknowledge and agree that any and all disputes, claims, or controversies between the parties shall be resolved only in individual arbitration. The parties expressly waive the right to have any dispute, claim, or controversy brought, heard, administered, resolved, or arbitrated as a mass action, and neither an arbitrator nor an arbitration provider shall have any authority to hear, arbitrate, or administer any mass action or to award relief to anyone but the individual in arbitration—except as provided below in Section 2(a)(3)(c). The parties also expressly waive the right to seek, recover, or obtain any non-individual relief. The parties agree that the definition of a "Mass Action" includes, but is not limited to, instances in which you or Uber are represented by a law firm or collection of law firms that has filed 50 or more arbitration demands of a substantially similar nature against the other party within 180 days of the arbitration demand filed on your or Uber's behalf, and the law firm or collection of law firms seeks to simultaneously or collectively administer and/or arbitrate all the arbitration demands in the aggregate. Notwithstanding anything else in this agreement, this Mass Action Waiver does not prevent you or Uber from participating in a mass settlement of claims.

b. <u>Dispute Procedure</u>: Notwithstanding any provision to the contrary in the applicable arbitration provider's rules, the arbitrator shall be empowered to determine whether the party bringing any claim

has filed a Mass Action in violation of the Mass Action Waiver. Either party shall raise with the arbitrator or arbitration provider such a dispute within 15 days of its arising. If such a dispute arises before an arbitrator has been appointed, the parties agree that (i) a panel of three arbitrators shall be appointed to resolve only disputes concerning whether the party bringing any claim has filed a Mass Action in violation of the Mass Action Waiver. Each party shall select one arbitrator from the arbitration provider's roster to serve as a neutral arbitrator, and these arbitrators shall appoint a third neutral arbitrator. If the parties' arbitrators cannot agree on a third arbitrator, the arbitration provider will select the third arbitrator; (ii) Uber shall pay any administrative fees or costs incidental to the appointment of Arbitrators under this provision, as well as any fees or costs that would not be incurred in a court proceeding, such as payment of the fees of the arbitrators, as well as room rental; (iii) the arbitrators shall issue a written decision with findings of fact and conclusions of law; and (iv) any further arbitration proceedings or assessment of arbitration-related fees shall be stayed pending the arbitrators' resolution of the parties' dispute. If the arbitrator or panel of arbitrators determines that you have violated the Mass Action Waiver, the parties shall have the opportunity to opt out of arbitration within 30 days of the arbitrator's or panel of arbitrator's decision. You may opt out of arbitration by providing written notice of your intention to opt out to the arbitration provider and to Uber Technologies, Inc., Attn: Legal Department, 1515 3rd Street, San Francisco, CA 94158 via USPS Priority Mail or hand delivery. This written notice must be signed by you, and not any attorney, agent, or other representative of yours. Uber may opt out of arbitration by sending written notice of its intention to opt out to the arbitration provider and to you or your attorney, agent, or representative if you are represented. For the avoidance of doubt, the ability to opt out of arbitration described in this Section 2(a)(3)(b) only applies if the arbitrator or panel of arbitrators determines that you have violated the Mass Action Waiver. If the parties proceed with arbitration, the parties agree that arbitrations will be batched as provided in Section 2(a)(3)(c) below.

c. Batching:

i. To increase efficiency of resolution in the event a Mass Action is filed and neither party exercises its right to opt out of arbitration pursuant to Section 2(a)(3)(b) above, the following procedure shall apply. At the request of either party, an arbitrator shall be selected according to the applicable arbitration provider's rules to act as a special master ("Special Master") to resolve threshold disputes regarding the propriety of some or all the arbitration demands submitted in the Mass Action ("Mass Arbitration Demands"). These threshold disputes may include, but are not limited to:

1. Any dispute regarding filing fees owed with respect to the Mass Arbitration Demands, including whether claimants have submitted valid fee waivers;

2. Any dispute regarding whether the applicable arbitration provider has complied with the Arbitration Agreement with respect to processing and administering the Mass Arbitration Demands;

3. Any dispute regarding whether the Mass Arbitration Demands meet the requirements set forth in Section 2(d) below;

4. Whether claimants are barred from proceeding with their claims based on a prior settlement agreement, violation of these Terms, or expiration of the statute of limitations;

5. Any dispute relating to representation of the same claimant by multiple law firms;

6. Any dispute regarding whether the Mass Arbitration Demands were filed with the correct arbitration provider;

7. Any dispute regarding discovery common to all claims; and

8. Any disputes regarding legal or factual issues common to all claims.

Any such request shall be made within 15 days following the expiration of the opt-out period described in Section 2(a)(3)(b), and may be made by providing written notice to the arbitration provider. Upon the request of either party to appoint a Special Master to resolve the foregoing issues, the applicable arbitration provider shall refrain from further processing any of the Mass Arbitration Demands to which a dispute has been raised. No further payment for filing fees, administrative costs, or arbitrator fees shall be deemed due with respect to any of the Mass Arbitration Demands as to which a dispute has been raised until after the dispute(s) has/have been resolved by the Special Master. Uber shall be responsible for the applicable arbitration provider's and Special Master's fees and costs related to the proceedings before the Special Master.

A Special Master appointed pursuant to this procedure shall have no authority to consolidate cases.

ii. After proceedings before the Special Master have concluded, to the extent any of the Mass Arbitration Demands are permitted to proceed, the parties shall group the Mass Arbitration Demands into batches of no more than 100 demands per batch by state of residence, and then alphabetically by last name (plus, to the extent there are less than 100 arbitration demands left over after the batching described above, a final batch consisting of the remaining demands), and shall inform the arbitration provider of the batches and their compositions within 14 days of the conclusion of proceedings before the Special Master. The arbitration provider shall treat each batch of claims as one case, with each case having one demand for arbitration, one appointed arbitrator, and one set of administrative documents and administrative and filing fees per batch. The parties shall randomly assign sequential numbers to each batch, and only one batch shall proceed to arbitration at a time in the order of the random sequential numbers. A separate arbitrator will be appointed to, and administrative and filing fees assessed for, each batch as the batch proceeds to arbitration. You agree to cooperate in good faith with Uber and the arbitration provider to implement such a batch approach to resolution and fees. Nothing in this provision shall be construed as limiting the right to object that the filing or presentation of multiple arbitration demands by or with the assistance of the same law firm or organization violates any term of this Agreement.

iii. If any Mass Arbitration Demands were originally processed as individual arbitration demands before this batching procedure was commenced, further proceedings, including the assessment of further arbitration filing or administration fees to either party shall be governed by the procedures set forth in this Section 2(a)(3).

(4) <u>Delegation Clause</u>: Only an arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement, including without limitation any claim that all or any part of this Arbitration Agreement is void or voidable. An arbitrator shall also have exclusive authority to resolve all threshold arbitrability issues, including issues relating to whether the Terms are applicable, unconscionable, or illusory and any defense to arbitration, including without limitation waiver, delay, laches, or estoppel. However, only a court of competent jurisdiction, and not an arbitrator, shall have the exclusive authority to resolve any and all disputes

arising out of or relating to the Class Action Waiver and Mass Action Waiver, including, but not limited to, any claim that all or part of the Class Action Waiver and/or Mass Action Waiver is unenforceable, unconscionable, illegal, void, or voidable—except that, as stated and pursuant to the procedures provided in Section 2(a)(3)(b), an arbitrator or panel of arbitrators shall have authority to determine whether the party bringing any claim has violated the Mass Action Waiver.

(5) <u>Application to Third Parties</u>: This Arbitration Agreement shall be binding upon, and shall include any claims brought by or against any third parties, including but not limited to your spouses, heirs, third-party beneficiaries and assigns, where their underlying claims arise out of or relate to your use of the Services. To the extent that any third-party beneficiary to this agreement brings claims against the Parties, those claims shall also be subject to this Arbitration Agreement.

## (b) Exceptions to Arbitration.

Notwithstanding the foregoing, this Arbitration Agreement shall not require arbitration of the following claims: (i) individual claims brought in small claims court so long as the matter remains in such court and advances only on an individual basis; (ii) individual claims of sexual assault or sexual harassment occurring in connection with your use of the Services; and/or (iii) injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation, or violation of a party's copyrights, trademarks, trade secrets, patents, or other intellectual property rights.

Such claims may be brought and litigated in a court of competent jurisdiction by you on an individual basis only. On an individual basis means that you cannot bring such claims as a class, collective, coordinated, consolidated, mass and/or representative action against Uber. For the avoidance of doubt, this precludes you from bringing claims as or participating in any kind of any class, collective, coordinated, consolidated, mass and/or representative or other kind of group, multi-plaintiff or joint action against Uber and no action brought by you may be consolidated or joined in any fashion with any other proceeding. Where your claims are brought and litigated to completion on such an individual basis in a court of competent jurisdiction, Uber agrees to honor your election.

The parties' agreement not to require arbitration in these limited instances does not waive the enforceability of this Arbitration Agreement as to any other provision (including, but not limited to, the waivers provided for in Section 2(a), which will continue to apply in court as well as in arbitration), or the enforceability of this Arbitration Agreement as to any other controversy, claim, or dispute.

## (c) Rules and Governing Law.

For disputes arising in California, the arbitration will be administered by ADR Services, Inc. ("ADR") in accordance with ADR's Arbitration Rules (the "ADR Rules") in effect at the time that the claim is brought, unless the parties agree otherwise in writing. The ADR Rules are available at www.adrservices.com or by searching for "ADR Arbitration Rules" using a service such as www.google.com or www.bing.com. The arbitration shall be heard by one arbitrator (the "Arbitrator") selected in accordance with the ADR Rules.

For disputes arising outside of California (or for disputes arising in California only if ADR cannot or will not administer the arbitration), the parties shall be required to meet and confer to select a neutral arbitration provider. Such an arbitration provider shall have operations in the state in which the dispute arises. If the parties are unable to mutually agree upon an arbitration provider, then either

party may invoke 9 U.S.C. § 5 to request that a court of competent jurisdiction appoint an arbitration provider with operations in the state in which the dispute arises. Any arbitration provider appointed by a court under 9 U.S.C. § 5 shall conduct arbitration solely on an individualized basis as set forth in this Section 2. Once the parties mutually agree upon a neutral arbitration provider, or an arbitrator provider is appointed under 9 U.S.C. § 5, the ensuing arbitration shall commence pursuant to the rules of the designated arbitration provider, except as designated herein. Once an arbitration provider is agreed upon or appointed, an Arbitrator shall be appointed. The Arbitrator will be either (1) a retired judge or (2) an attorney licensed to practice law in the state where the arbitration is conducted with experience in the law underlying the dispute. The Arbitrator will be selected by the parties from the applicable arbitration provider's roster of arbitrators. If the parties are unable to agree upon an Arbitrator after a good faith meet and confer effort, then the applicable arbitration provider will appoint the Arbitrator in accordance with its rules.

Notwithstanding any choice of law or other provision in these Terms, the parties agree and acknowledge that this Arbitration Agreement evidences a transaction involving interstate commerce and that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), will govern its interpretation and enforcement and proceedings pursuant thereto. It is the intent of the parties to be bound by the provisions of the FAA for all purposes, including, but not limited to, interpretation, implementation, enforcement, and administration of this Arbitration Agreement, and that the FAA and the applicable arbitration provider's rules shall preempt all state laws to the fullest extent permitted by law. If the FAA and applicable arbitration provider's rules are found to not apply to any issue regarding the interpretation or enforcement of this Arbitration Agreement, then that issue shall be resolved under the laws of the state where you reside when you accept these Terms.

Any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to the Terms, shall be governed by and construed in accordance with the laws of the state in which the incident or accident occurred.

## (d) Process.

Pre-Arbitration Dispute Resolution and Notification. The parties agree that good-faith informal efforts to resolve disputes often can result in a prompt, low-cost, and mutually beneficial outcome. The parties therefore agree that, before either party demands arbitration against the other, we will personally meet and confer, via telephone or videoconference, in a good-faith effort to resolve informally any claim covered by this Arbitration Agreement. Multiple individuals initiating claims cannot participate in the same informal telephonic dispute resolution conference. If you are represented by counsel, your counsel may participate in the conference, but you shall also fully participate in the conference. The party initiating the claim must give notice to the other party in writing of their intent to initiate an informal dispute resolution conference, which shall occur within 60 days after the other party receives such notice, unless an extension is mutually agreed upon by the parties. To notify Uber that you intend to initiate an informal dispute resolution conference, write to Uber Technologies, Inc., Attn: Legal Department, 1515 3rd Street, San Francisco, CA 94158, providing your name, the telephone number(s) associated with your Uber account (if any), the email address(es) associated with your Uber account, and a description of your claim. Engaging in an informal dispute resolution conference is a condition precedent that must be fulfilled before commencing arbitration, and the Arbitrator shall dismiss any arbitration demand filed before

completion of an informal dispute resolution conference. The statute of limitations and any filing fee deadlines shall be tolled while the parties engage in the informal dispute resolution process required by this paragraph.

Initiating Arbitration. In order to initiate arbitration following the conclusion of the informal dispute resolution process required by this Section, a party must provide the other party with a written demand for arbitration and file the demand with the applicable arbitration provider, as determined by Section 2(c). A party initiating an arbitration against Uber must send the written demand for arbitration to Uber Technologies, Inc., LLC, Attn: Legal Department, 1515 3rd Street, San Francisco, CA 94158, or serve the Demand on Uber's registered agent for service of process, c/o Uber Technologies, Inc. (the name and current contact information for the registered agent in each state are available online here). Additionally, a party initiating arbitration against Uber must send an electronic version of the demand for arbitration to the Arbitration Provider, and must send an electronic version of the as-filed demand to filed-arbitration-demands@uber.com.

By signing the demand for arbitration, counsel certifies to the best of counsel's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that (i) the demand for arbitration is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of dispute resolution; (ii) the claims and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; and (iii) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Arbitrator shall be authorized to afford any relief or impose any sanctions available under Federal Rule of Civil Procedure 11 or any applicable state law for either party's violation of this requirement.

### (e) Location.

Unless you and Uber otherwise agree, the arbitration will be conducted in the county where you reside. Your right to a hearing will be determined by the applicable arbitration provider's rules. Subject to the applicable arbitration provider's rules, the Arbitrator will have the discretion to direct a reasonable exchange of information by the parties, consistent with the expedited nature of the arbitration.

### (f) Offers of Judgment.

At least 10 days before the date set for the arbitration hearing, any party may serve an offer in writing upon the other party to allow judgment on specified terms. If the offer is accepted, the offer with proof of acceptance shall be submitted to the arbitrator, who shall enter judgment accordingly. If the offer is not accepted prior to the arbitration hearing or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the arbitration. If an offer made by one party is not accepted by the other party, and the other party fails to obtain a more favorable award, the other party shall not recover their post-offer costs and shall pay the offering party's costs from the time of the offer.

### (g) Arbitrator's Decision.

The Arbitrator will render an award within the time frame specified in the applicable arbitration provider's rules. Judgment on the arbitration award may be entered in any court of competent

jurisdiction. The Arbitrator may award declaratory or injunctive relief only in favor of the claimant and only to the extent necessary to provide relief warranted by the claimant's individual claim. An Arbitrator's decision shall be final and binding on all parties.

The Arbitrator is not bound by decisions reached in separate arbitrations, and the Arbitrator's decision shall be binding only upon the parties to the arbitration that are the subject of the decision.

The Arbitrator shall award reasonable costs incurred in the arbitration to the prevailing party in accordance with the law(s) of the state in which arbitration is held.

## (h) Fees.

With the exception of the provisions governing payment of arbitration costs set forth above, your responsibility to pay any filing, administrative, and arbitrator fees will be solely as set forth in the applicable arbitration provider's rules and shall be up to the amount you would be required to pay if you filed a claim in court.

If you have a gross monthly income of less than 300% of the federal poverty guidelines, you are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. If you believe that you meet the requirements to obtain a fee waiver, and your demand for arbitration arises outside of California, then you may request a fee waiver only by submitting to the arbitration provider AO 240, Application to Proceed in District Court Without Prepaying Fees or Costs (found here), or a declaration under oath containing all the information required by AO 240; if your demand for arbitration arises in California, then you must submit a declaration under oath providing your monthly income and the number of persons in your household.

Any and all disputes regarding a party's obligation to pay any arbitration fees or costs that arise after an arbitrator is appointed shall be determined solely by the arbitrator. If such a dispute arises before an arbitrator has been appointed, and if no Special Master has been requested by either party pursuant to section 2(a)(3)(c)(i) of these Terms, the parties agree that (i) the due date for any disputed fees shall be stayed pending resolution of the parties' dispute, (ii) a panel of three arbitrators shall be appointed to resolve the parties' dispute concerning a party's obligation to pay fees or costs of arbitration, (iii) the panel of arbitrators shall be appointed by each party selecting one arbitrator from the arbitration provider's roster to serve as neutral arbitrators, and these arbitrators shall appoint a third neutral arbitrator. If the parties' arbitrators cannot agree on a third arbitrator, the arbitration administrator will select the third arbitrator, (iv) Uber shall pay any administrative fees or costs incidental to the appointment of a panel of arbitrators under this provision, as well as any fees or costs that would not be incurred in a court proceeding, such as payment of the fees of the arbitrator(s), as well as room rental, and (v) the arbitrator(s) shall issue a written decision with findings of fact and conclusions of law. If two or more fee disputes between a claimant and Uber arise at or around the same time, the disputes may be consolidated for resolution by a single arbitrator or panel of arbitrators either at the agreement of the parties or the election of the party common to all such disputes.

## (i) Severability and Survival.

If any portion of this Arbitration Agreement is found to be unenforceable or unlawful for any reason, (i) the unenforceable or unlawful provision shall be severed from these Terms; (ii) severance of the unenforceable or unlawful provision shall have no impact whatsoever on the remainder of the

Arbitration Agreement or the parties' ability to compel arbitration of any remaining claims on an individual basis pursuant to the Arbitration Agreement; and (iii) to the extent that any claims must therefore proceed on a class, collective, consolidated, or representative basis, such claims must be litigated in a civil court of competent jurisdiction and not in arbitration, and the parties agree that litigation of those claims shall be stayed pending the outcome of any individual claims in arbitration.

## 3. The Marketplace Platform & Services

Uber operates a personalized multipurpose digital marketplace platform that is accessed in a number of forms, including mobile and/or web-based applications ("Applications"). Among other things, the Uber Marketplace Platform enables you to discover and receive: (i) services rendered by Uber that facilitate your requests to independent third-party providers, including drivers and restaurants ("Third-Party Providers"), for the purchase of services or goods, such as transportation, logistics and/or delivery services from those Third-Party Providers; (ii) related personalized content, including features, recommendations and advertisements for products or services tailored to your needs and interests; and (iii) any supporting services, including payment processing and customer support. The Uber Marketplace Platform, personalized content and supporting services described in this Section are collectively referred to as "the Services." Unless otherwise agreed by Uber in a separate written agreement with you, the Services are made available solely for your personal, noncommercial use.

YOU ACKNOWLEDGE THAT YOUR ABILITY TO REQUEST, AND IF APPLICABLE, OBTAIN TRANSPORTATION, LOGISTICS AND/OR DELIVERY SERVICES FROM THIRD-PARTY PROVIDERS IN CONNECTION WITH THE USE OF THE UBER MARKETPLACE PLATFORM AND SERVICES DOES NOT ESTABLISH UBER AS A PROVIDER OF TRANSPORTATION, LOGISTICS OR DELIVERY SERVICES OR AS A TRANSPORTATION OR PROPERTY CARRIER.

UBER IS NOT A COMMON OR MOTOR CARRIER, DOES NOT TRANSPORT YOU, AND USE OF THE UBER MARKETPLACE PLATFORM IS ONLY OPEN TO REGISTERED USERS OF THE UBER MARKETPLACE PLATFORM AND NOT TO THE GENERAL PUBLIC.

YOU ACKNOWLEDGE THAT INDEPENDENT THIRD-PARTY PROVIDERS, INCLUDING DRIVERS, ARE NOT ACTUAL AGENTS, APPARENT AGENTS, OSTENSIBLE AGENTS, OR EMPLOYEES OF UBER IN ANY WAY.

YOU ALSO ACKNOWLEDGE THAT ANY SAFETY RELATED EFFORT, FEATURE, PROCESS, POLICY, STANDARD OR OTHER EFFORT UNDERTAKEN BY UBER IN THE INTEREST OF PUBLIC SAFETY (WHETHER REQUIRED BY APPLICABLE REGULATIONS OR NOT) IS NOT AN INDICIA OF AN EMPLOYMENT, ACTUAL AGENCY, APPARENT AGENCY, OR OSTENSIBLE AGENCY RELATIONSHIP WITH AN INDEPENDENT THIRD-PARTY DRIVER.

License.

Subject to your compliance with these Terms, Uber grants you a limited, non-exclusive, non-sublicensable, revocable, non-transferable license to: (i) access and use the Applications on your personal device solely in connection with your use of the Services; and (ii) access and use any content, information and related materials that may be made available through the Services, in each case solely for your personal, noncommercial use. Any rights not expressly granted herein are reserved by Uber and Uber's licensors.

## Restrictions.

You may not: (i) remove any copyright, trademark or other proprietary notices from any portion of the Services; (ii) reproduce, modify, prepare derivative works based upon, distribute, license, lease, sell, resell, transfer, publicly display, publicly perform, transmit, stream, broadcast or otherwise exploit the Services except as expressly permitted by Uber; (iii) decompile, reverse engineer or disassemble the Services except as may be permitted by applicable law; (iv) link to, mirror or frame any portion of the Services; (v) cause or launch any programs or scripts for the purpose of unduly burdening or hindering the operation and/or functionality of any aspect of the Services; or (vi) attempt to gain unauthorized access to or impair any aspect of the Services or its related systems or networks.

## Third-Party Services and Content.

The Services may be made available or accessed in connection with third-party services and content (including advertising) that Uber does not control. Once you click on a link to third-party services or content, you will be subject to the terms and conditions and privacy policy of that website, destination, or third-party service provider. Uber will not warn you that you have left the Services or that you are subject to the terms and conditions (including privacy policies) of another website, destination, or third-party service provider. You use all links in third-party websites and advertisements at your own risk as these are not part of the Services and are not controlled by Uber. You acknowledge that different terms of use and privacy policies may apply to your use of such third-party services and content. Uber does not endorse such third-party services and content and in no event shall Uber be responsible or liable for any products or services of such third-party providers.

## App Stores.

You acknowledge and agree that the availability of the Applications may be dependent on the third-party from which you received the Application's license, e.g., the Apple iPhone or Android app stores ("App Store"). You acknowledge and agree that this Agreement is between you and Uber and not with the App Store and that Uber is responsible for the provision of Services as described in this Agreement. However, if you downloaded the Application from the Apple App Store, Apple and its subsidiaries are third-party beneficiaries of this Agreement. Upon your acceptance of this Agreement, Apple shall have the right (and will be deemed to have accepted the right) to enforce this Agreement against you as a third-party beneficiary thereof. This Agreement incorporates by reference Apple's Licensed Application End User License Agreement, for purposes of which, you are "the end-user." In the event of a conflict in the terms of the Licensed Application End User License Agreement and this Agreement, the terms of this Agreement will control.

## Ownership.

The Services and all rights therein are and shall remain Uber's property or the property of Uber's licensors. Neither these Terms nor your use of the Services convey or grant to you any rights in or related to the Services except for the limited license granted above.

You agree that you will not use Uber's trademarks, service marks, or trade dress or any similar names, marks, or trade dress ("Uber's Marks"), aside from use incidental to your use of the Services, without express, written permission from Uber. This prohibition on using Uber's Marks includes, but is not limited to, use in domain names, websites, and social media accounts.

# 4. Access and Use of the Services

**User Accounts.**

In order to use most aspects of the Services, you must register for and maintain an active personal user Services account ("Account"). You must be at least 18 years of age, or the age of legal majority in your jurisdiction (if different than 18), to obtain an Account, unless a specific Service permits otherwise. You cannot register for or maintain an Account if you have previously been banned from accessing or using the Services. Account registration requires you to submit to Uber certain personal information, such as your name, address, mobile phone number and age, as well as at least one valid payment method supported by Uber. For more information regarding Uber's use of your personal information, please see our Privacy Notice currently available at https://privacy.uber.com/policy/. You agree to maintain accurate, complete, and up-to-date information in your Account, including a valid phone number, address and payment method. Your failure to comply with these Terms (including policies and supplemental terms) including, without limitation, your failure to maintain accurate, complete, and up-to-date Account information, including having an invalid or expired payment method on file, may result in your inability to access or use the Services. You are responsible for all activity that occurs under your Account, and you agree to maintain the security and secrecy of your Account username and password at all times. Unless otherwise permitted by Uber in writing, you may only possess one Account.

**User Requirements and Conduct.**

You agree to abide by the Uber Community Guidelines, available here. Failure to comply with the Community Guidelines or any violation of these terms may result in the permanent loss of access to the Services.

The Services are not available for use by persons under the age of 18. You may not authorize third-parties to use your Account, and you may not allow persons under the age of 18 to request or receive transportation, delivery or logistics services from Third-Party Providers unless they are accompanied by you. You may not assign or otherwise transfer your Account to any other person or entity. You agree to comply with all applicable laws when accessing or using the Services, and you may only access or use the Services for lawful purposes (e.g., no request for the purpose or intent of transport of unlawful or hazardous materials). You may not in your access or use of the Services cause nuisance, annoyance, inconvenience, or property damage, whether to the Third-Party Provider or any other party. If you request a ride option with a car seat, you acknowledge and agree that neither Uber nor the Third-Party Provider is responsible for the safety of a child restraint/car seat that may be available in the Third-Party Provider's Vehicle. You acknowledge and agree that it is your obligation to ensure that the car seat is installed correctly and that the child is properly secured in the seat. If you request a ride option where a driver agrees to provide you with assistance outside of the vehicle (e.g., Uber Assist), you acknowledge and agree that neither Uber nor the Third-Party Provider is responsible for any injury or incident that may arise out of the assistance provided by the Third-Party Provider. In certain instances, you may be asked to provide proof of age, identity or other method of identity verification to access or use the Services, and you agree that you may be denied access to or use of the Services if you refuse to provide proof of age, identity or other method of identity verification.

Subject to the discretion of a Third-Party Provider, you may be allowed to bring a small animal, such as a dog or cat, on a ride requested through the Uber Marketplace Platform. For such trips, you are

responsible for properly securing the animal with a leash, harness, crate / carrier, or through other means. You are also responsible for ensuring that the animal does not cause damage or a mess in the Third-Party Provider's vehicle. You may be subject to a Charge for Repair or Cleaning under Section 5 for any damage or mess caused by an animal that is transported during a ride requested under your Account. Please note, in accordance with Uber's policies on Service Animals and assistive devices, Service Animals are generally permitted to accompany riders without extra charge, regardless of whether it is a Pet Friendly Trip.

For the purpose of assisting us with our compliance and insurance obligations, you agree to notify us within 24 hours and provide us with all reasonable information relating to any incident or accident that occurs during your use of the Services and you agree to cooperate with any investigation and attempted resolution of such incident.

## Text Messaging and Telephone Calls.

You agree that Uber Technologies, Inc., and its subsidiaries, representatives, affiliates, officers and directors, may contact you by telephone or text messages (including by an automatic telephone dialing system and/or with an artificial or pre-recorded voice) at any of the phone numbers provided by you or on your behalf in connection with an Uber account, including for marketing purposes. You understand that you are not required to provide this consent as a condition of purchasing any property, goods or services. You also understand that you may opt out of receiving text messages from Uber at any time, either by replying "STOP", texting the word "STOP" to 89203 using the mobile device that is receiving the messages, or by contacting help.uber.com. If you do not choose to opt out, Uber may contact you as outlined in its User Privacy Notice, located at https://www.uber.com/privacy/notice.

You agree that Uber may contact you using any of the phone numbers you provided in connection with an Uber account (including via text or voice-recorded message) or your email address in the case of suspected fraud or unlawful activity.

## User Provided Content.

Uber may, in Uber's sole discretion, permit you from time to time to submit, upload, publish or otherwise make available to Uber through the Services textual, audio, and/or visual content and information, and submission of entries for competitions and promotions ("User Content"). Any User Content provided by you remains your property. However, by providing User Content to Uber, you grant Uber a worldwide, perpetual, irrevocable, transferable, royalty-free license, with the right to sublicense, to use, copy, modify, create derivative works of, distribute, publicly display, publicly perform, and otherwise exploit in any manner such User Content in all formats and distribution channels now known or hereafter devised (including in connection with the Services and Uber's business and on third-party sites and services), without further notice to or consent from you, and without the requirement of payment to you or any other person or entity.

You represent and warrant that: (i) you either are the sole and exclusive owner of all User Content or you have all rights, licenses, consents and releases necessary to grant Uber the license to the User Content as set forth above; and (ii) neither the User Content, nor your submission, uploading, publishing or otherwise making available of such User Content, nor Uber's use of the User Content as permitted herein will infringe, misappropriate or violate a third-party's intellectual property or

proprietary rights, or rights of publicity or privacy, or result in the violation of any applicable law or regulation.

You agree to not provide User Content that is defamatory, libelous, hateful, violent, obscene, pornographic, unlawful, or otherwise offensive, as determined by Uber in its sole discretion, whether or not such material may be protected by law. Uber may, but shall not be obligated to, review, monitor, and remove User Content, at Uber's sole discretion and at any time and for any reason, without notice to you.

### User Feedback.

As Uber respects your rights to your ideas, you agree that you will not submit any confidential ideas, information, or suggestions in any form to Uber or any of its affiliates. For any ideas, information, or suggestions you do submit, regardless of what your communication regarding your submissions says, you understand that your submissions are voluntary and the following terms shall apply to your submissions: (i) your submissions and their contents will automatically become the property of Uber, without any compensation to you; (ii) Uber has no obligation to review your submissions; (iii) Uber may implement and distribute any portion of your submissions and their contents for any purpose in any way, without any compensation to you; and (iv) Uber has no obligation to keep your submissions confidential.

### Network Access and Devices.

You are responsible for obtaining the data network access necessary to use the Services. Your mobile network's data and messaging rates and fees may apply if you access or use the Services from your device. You are responsible for acquiring and updating compatible hardware or devices necessary to access and use the Services and Applications and any updates thereto. Uber does not guarantee that the Services, or any portion thereof, will function on any particular hardware or devices. In addition, the Services may be subject to malfunctions and delays inherent in the use of the Internet and electronic communications.

## 5. Payment

You understand that use of the Services may result in charges to you for the services or goods you receive from Uber and/or from Third-Party Providers ("Charges"). Uber will enable your payment of the applicable Charges for services or goods obtained through your use of the Services. Charges will include applicable taxes where required by law. Charges may include other applicable fees, product return fees, cancellation fees, estimated or actual tolls, and/or surcharges. Further, you acknowledge and agree that Charges applicable in certain geographical areas may increase substantially during times of high demand or due to other marketplace factors.

All Charges and payments will be enabled by Uber using the preferred payment method designated in your Account, after which you will receive a receipt. If your primary Account payment method is determined to be expired, invalid or otherwise not able to be charged, you agree that Uber may use a secondary payment method in your Account, if available. Charges paid by you are final and non-refundable, unless otherwise determined by Uber.

As between you and Uber, Uber reserves the right to establish or adjust Charges for any or all services or goods obtained through the use of the Services at any time. Uber will use reasonable efforts to

APP420

inform you of Charges that may apply, provided that you will be responsible for Charges incurred under your Account regardless of your awareness of such Charges or the amounts thereof. Certain users may from time to time receive promotional offers and discounts that may result in different amounts charged for the same or similar services or goods obtained through the use of the Services, and you agree that such promotional offers and discounts, unless also made available to you, shall have no bearing on your use of the Services or the Charges applied to you. Promotional offers and discounts are subject to change or withdrawal at any time and without notice. You may elect to cancel your request for Services at any time prior to the commencement of such Services, in which case you may be charged a cancellation fee on a Third-Party Provider's behalf.

With respect to Third-Party Providers, Charges you incur will be owed directly to Third-Party Providers, and Uber will collect payment of those charges from you, on the Third-Party Provider's behalf as their limited payment collection agent, and payment of the Charges shall be considered the same as payment made directly by you to the Third-Party Provider. In such cases, you retain the right to request lower Charges from a Third-Party Provider for services or goods received by you from such Third-Party Provider at the time you receive such services or goods, and Charges you incur will be owed to the Third-Party Provider. Uber will consider in good faith any request from a Third-Party Provider to modify the Charges for a particular service or good. This payment structure is intended to fully compensate a Third-Party Provider, if applicable, for the services or goods obtained in connection with your use of the Services. Except for amounts provided by you through the Application as part of the "tip" feature, Uber does not designate any portion of your payment as a tip or gratuity to a Third-Party Provider. You understand and agree that, while you are free to provide additional payment as a gratuity to any Third-Party Provider who provides you with services or goods obtained through the Service, you are under no obligation to do so. There also may be certain Charges you incur that will be owed and paid directly to Uber or its affiliates. For the avoidance of doubt, Uber does not charge a fee for a user to access the Uber Marketplace Platform, but retains the right to charge users a fee or any other Charge for accessing Services made available through the Marketplace Platform. Even if not indicated on the Uber Marketplace Platform, you understand that the prices for product or menu items displayed through the Services may differ from the prices offered or published by Third-Party Providers for the same product or menu items and/or from prices available at other third-party websites/mobile applications. Prices for product or menu items displayed through the Services may not be the lowest prices at which the product or menu items are sold. You also understand that product or menu item prices displayed through the Services may vary based on whether you choose to pick up your order or have it delivered.

If you think a correction should be made to any Charge you incurred, you must let Uber know in writing within 30 days after the Charge took place or Uber will have no further responsibility and you waive your right to later dispute the amounts charged.

## Damage, Cleaning, Lost and Found, and Violation of Terms.

Uber may charge you a fee on behalf of Third-Party Providers if, during your use of the Services, you have caused damage to a vehicle or property that requires repair or cleaning ("Repair" or "Cleaning"). The amount of such fee shall be determined, in Uber's sole discretion, based on the type of damage and the severity. Uber reserves the right to verify or otherwise require documentation of damages prior to processing a fee. In the event that a Repair or Cleaning request is verified by Uber in Uber's reasonable discretion, Uber reserves the right to facilitate payment for the reasonable cost of such Repair or Cleaning using your payment method designated in your Account. Such amounts, as well as

those pertaining to lost and found goods, will be transferred by Uber to a Third-Party Provider, if applicable, and are non-refundable.

Additionally, if you fail to comply with these Terms, you may be responsible for Charges, including without limitation, for transactions that could not be completed properly, arising out of or in connection with your failure to comply with these Terms.

# 6. Disclaimers; Limitation of Liability; Indemnity.

## Disclaimer.

THE SERVICES ARE PROVIDED "AS IS" AND "AS AVAILABLE." UBER DISCLAIMS ALL REPRESENTATIONS AND WARRANTIES, EXPRESS, IMPLIED, OR STATUTORY, NOT EXPRESSLY SET OUT IN THESE TERMS, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. IN ADDITION, UBER MAKES NO REPRESENTATION, WARRANTY, OR GUARANTEE REGARDING THE RELIABILITY, TIMELINESS, QUALITY, SUITABILITY, OR AVAILABILITY OF THE SERVICES OR ANY SERVICES OR GOODS REQUESTED THROUGH THE USE OF THE SERVICES, OR THAT THE SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE.

UBER DOES NOT GUARANTEE THE QUALITY, SUITABILITY, SAFETY OR ABILITY OF THIRD-PARTY PROVIDERS. YOU AGREE THAT THE ENTIRE RISK ARISING OUT OF YOUR USE OF THE SERVICES, AND ANY SERVICE OR GOOD REQUESTED OR OBTAINED FROM THIRD-PARTY PROVIDERS IN CONNECTION THEREWITH, REMAINS SOLELY WITH YOU, TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW.

UBER DOES NOT CONTROL, MANAGE OR DIRECT ANY THIRD-PARTY PROVIDERS INCLUDING DRIVERS. THIRD-PARTY PROVIDERS ARE NOT ACTUAL AGENTS, APPARENT AGENTS, OSTENSIBLE AGENTS, OR EMPLOYEES OF UBER.

UBER DOES NOT CONTROL, ENDORSE OR TAKE RESPONSIBILITY FOR ANY USER CONTENT OR THIRD-PARTY CONTENT AVAILABLE ON OR LINKED TO BY THE SERVICES. UBER CANNOT AND DOES NOT REPRESENT OR WARRANT THAT THE SERVICES OR SERVERS ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS.

## Limitation of Liability.

UBER SHALL NOT BE LIABLE FOR INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, PUNITIVE, OR CONSEQUENTIAL DAMAGES, INCLUDING LOST PROFITS, LOST DATA, PERSONAL INJURY, OR PROPERTY DAMAGE RELATED TO, IN CONNECTION WITH, OR OTHERWISE RESULTING FROM ANY USE OF THE SERVICES, REGARDLESS OF THE NEGLIGENCE (EITHER ACTIVE, AFFIRMATIVE, SOLE, OR CONCURRENT) OF UBER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

UBER SHALL NOT BE LIABLE FOR ANY DAMAGES, LIABILITY OR LOSSES ARISING OUT OF: (i) YOUR USE OF OR RELIANCE ON THE SERVICES OR YOUR INABILITY TO ACCESS OR USE THE SERVICES; OR (ii) ANY TRANSACTION OR RELATIONSHIP BETWEEN YOU AND ANY THIRD-PARTY PROVIDER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. UBER SHALL NOT BE LIABLE FOR DELAY OR FAILURE IN PERFORMANCE RESULTING FROM CAUSES BEYOND UBER'S REASONABLE CONTROL. YOU ACKNOWLEDGE THAT THIRD-PARTY PROVIDERS PROVIDING

TRANSPORTATION SERVICES REQUESTED THROUGH SOME UBER SERVICES MAY OFFER RIDESHARING OR PEER-TO-PEER TRANSPORTATION SERVICES AND MAY NOT BE PROFESSIONALLY LICENSED OR PERMITTED. YOU ACKNOWLEDGE THAT THIRD-PARTY PROVIDERS ARE NOT OSTENSIBLE AGENTS, APPARENT AGENTS, ACTUAL AGENTS, OR EMPLOYEES OF UBER.

THE SERVICES MAY BE USED BY YOU TO REQUEST AND SCHEDULE TRANSPORTATION, GOODS, OR LOGISTICS SERVICES WITH THIRD-PARTY PROVIDERS, BUT YOU AGREE THAT UBER HAS NO RESPONSIBILITY OR LIABILITY TO YOU RELATED TO ANY TRANSPORTATION, GOODS OR LOGISTICS SERVICES PROVIDED TO OR NOT PROVIDED TO YOU BY THIRD-PARTY PROVIDERS OTHER THAN AS EXPRESSLY SET FORTH IN THESE TERMS.

UBER SHALL NOT BE LIABLE FOR ANY DAMAGES, LIABILITY OR LOSSES ARISING OUT OF LACK OF OR IMPROPER INSTALLATION OR USE OF CHILD RESTRAINT SYSTEMS FOR GUESTS ON RIDES REQUESTED THROUGH THE SERVICES FOR WHOM A CHILD RESTRAINT SYSTEM IS LEGALLY REQUIRED.

THE LIMITATIONS AND DISCLAIMERS IN THIS SECTION DO NOT PURPORT TO LIMIT LIABILITY OR ALTER YOUR RIGHTS AS A CONSUMER THAT CANNOT BE EXCLUDED UNDER APPLICABLE LAW. BECAUSE SOME STATES OR JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF OR THE LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, IN SUCH STATES OR JURISDICTIONS, UBER'S LIABILITY SHALL BE LIMITED TO THE EXTENT PERMITTED BY LAW. THIS PROVISION SHALL HAVE NO EFFECT ON UBER'S CHOICE OF LAW PROVISION SET FORTH BELOW.

### Indemnity.

You agree to indemnify and hold Uber and its affiliates and their officers, directors, employees, and agents harmless from and against any and all actions, claims, demands, losses, liabilities, costs, damages, and expenses (including attorneys' fees), arising out of or in connection with: (i) your use of the Services or services or goods obtained through your use of the Services; (ii) your breach or violation of any of these Terms; (iii) Uber's use of your User Content; or (iv) your violation of the rights of any third party, including Third-Party Providers.

## 7. Other Provisions

### Choice of Law.

These Terms shall be governed by and construed in accordance with the laws of the state in which your dispute arises, without regard to the choice or conflict of law principles of any jurisdiction, except as may be otherwise provided in the Arbitration Agreement in Section 2 above or in supplemental terms applicable to your region. This Choice of Law provision applies only to the interpretation of these Terms, and these provisions shall not be interpreted as generally extending any state's law to you if your dispute did not arise in that state.

Any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to the Terms, shall be governed by and construed in accordance with the laws of the state in which the incident or accident occurred.

### Choice of Forum.

Any dispute, claim or controversy arising out of or relating to these Terms or the existence, breach, termination, enforcement, interpretation or validity thereof, shall be brought exclusively in the state and federal courts of the state in which the dispute, claim or controversy arose, notwithstanding that other courts may have jurisdiction over the parties and subject matter, except as may be otherwise provided by the Arbitration Agreement above or in supplemental terms applicable to your region.

Notwithstanding the foregoing, any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to the Terms, shall be brought exclusively in the state or federal courts in the State in which the incident or accident occurred, notwithstanding that other courts may have jurisdiction over the parties and subject matter, and except as may be otherwise provided in the Arbitration Agreement above or in supplemental terms applicable to your region, to the extent permitted by law.

The foregoing Choice of Law and Choice of Forum provisions do not apply to the Arbitration Agreement in Section 2, and we refer you to Section 2 for the applicable provisions for such disputes.

## Claims of Copyright Infringement.

Claims of copyright infringement should be sent to Uber's designated agent. Please visit Uber's web page at https://www.uber.com/legal/intellectual-property/copyright/global for the designated address and additional information.

## Notice.

Uber may give notice by means of a general notice on or through the Services, electronic mail to the email address associated with your Account, telephone or text message to any phone number provided in connection with your account, or by written communication sent by first class mail or pre-paid post to any address connected with your Account. Such notice shall be deemed to have been given upon the expiration of 48 hours after mailing or posting (if sent by first class mail or pre-paid post) or at the time of sending (if sent by email, telephone, or on or through the Services). You may give notice to Uber, with such notice deemed given when received by Uber, at any time by first class mail or pre-paid post to our registered agent for service of process, c/o Uber Technologies, Inc. The name and current contact information for the registered agent in each state are available online at https://www.wolterskluwer.com/en/solutions/ct-corporation/sop-locations. If another provision of these Terms addresses any specific notice (for example, notice of updates to these Terms, or notice of a dispute or arbitration demand), those specific notice provisions shall prevail to the extent there is any conflict or inconsistency between those provisions and this notice provision.

## General.

You may not assign these Terms without Uber's prior written approval. Uber may assign these Terms without your consent to: (i) a subsidiary or affiliate; (ii) an acquirer of Uber's equity, business or assets; or (iii) a successor by merger. Any purported assignment by you in violation of this section shall be void. No joint venture, partnership, employment, or agency relationship exists between you, Uber or any Third-Party Provider as a result of this Agreement or use of the Services. If any provision of these Terms is held to be invalid or unenforceable, such provision shall be struck and the remaining provisions shall be enforced to the fullest extent under law. Uber's failure to enforce any right or

provision in these Terms shall not constitute a waiver of such right or provision unless acknowledged and agreed to by Uber in writing. This provision shall not affect the Severability and Survivability section of the Arbitration Agreement of these Terms.

## Return to Legal Hub→

Uber

Visit Help Center

Do not sell my info (California)

Google Data Policy

Company

About us

Our offerings

Newsroom

Investors

Blog

Careers

AI

Gift cards

Products

Ride

Drive

Deliver

Eat

Uber for Business

APP425

Uber Freight

Global citizenship

Safety

Diversity and Inclusion

Travel

Airports

Cities

English

San Francisco Bay Area




© 2021 Uber Technologies Inc.

Privacy                    Accessibility              Terms

# EXHIBIT K

EFFECTIVE DATE 2022-04-04 UBER TERMS

Uber                                                                    Sign up

Select jurisdiction:      Select language:

United States ▾          English   ▾

Last modified: 4/4/2022

# U.S. Terms of Use
## 1. Contractual Relationship

Uber provides a personalized multipurpose digital marketplace platform ("Uber Marketplace Platform") that enables you to conveniently find, request, or receive transportation, logistics and/or delivery services from third-party providers that meet your needs and interests. These Terms of Use ("Terms") govern your access or use, from within the United States and its territories and possessions, of the Uber Marketplace Platform and any related content or services (collectively, the "Services," as more fully defined below in Section 3) made available in the United States and its territories and possessions by Uber Technologies, Inc. and its subsidiaries, representatives, affiliates, officers and directors (collectively, "Uber"). PLEASE READ THESE TERMS CAREFULLY, AS THEY CONSTITUTE A LEGAL AGREEMENT BETWEEN YOU AND UBER. In these Terms, the words "including" and "include" mean "including, but not limited to."

By accessing or using the Services, you confirm your agreement to be bound by these Terms. If you do not agree to these Terms, you may not access or use the Services. These Terms expressly supersede prior agreements or arrangements with you regarding the use of the Services.

Notwithstanding the foregoing, these Terms do not supersede or otherwise impact the enforceability of any agreements you may have with Uber or its subsidiaries regarding driving, delivering and/or providing transportation and/or delivery services (e.g., the Platform Access Agreement, the Technology Services Agreement and/or any similar agreements). To the extent (but only to the extent) any agreement you may have with Uber regarding driving, delivering and/or providing transportation and/or delivery services conflicts with these Terms, those agreements (and not these Terms) will prevail with respect to any disputes arising from you driving, delivering and/or providing transportation and/or delivery services.

Uber may immediately terminate these Terms or any Services with respect to you, or generally cease offering or deny access to the Services or any portion thereof, at any time for any reason.

IMPORTANT: PLEASE BE ADVISED THAT THIS AGREEMENT CONTAINS PROVISIONS THAT GOVERN HOW CLAIMS BETWEEN YOU AND UBER CAN BE BROUGHT, INCLUDING THE ARBITRATION AGREEMENT (SEE SECTION 2 BELOW). PLEASE REVIEW THE ARBITRATION AGREEMENT BELOW CAREFULLY, AS IT REQUIRES YOU TO RESOLVE ALL DISPUTES WITH UBER ON AN INDIVIDUAL BASIS AND, WITH LIMITED EXCEPTIONS, THROUGH FINAL AND BINDING ARBITRATION (AS DESCRIBED IN SECTION 2 BELOW). BY ENTERING INTO THIS AGREEMENT, YOU EXPRESSLY ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND ALL OF THE TERMS OF THIS AGREEMENT AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT DECISION.

Supplemental terms may apply to certain options or offers available through the Services, such as policies for a particular ride or logistics option (e.g., Uber Connect), event, program, activity, or promotion. Such supplemental terms will be disclosed to you in connection with the applicable option or offer. Supplemental terms are in addition to, and shall be deemed a part of, the Terms for the purposes of the applicable option or offer. Supplemental terms shall prevail over these Terms in the event of a conflict with respect to the applicable option or offer.

Uber may make changes to these Terms from time to time. If Uber makes changes, it will provide you with notice of such changes, such as by sending an email, providing a notice through the Services, or updating the date at the top of these Terms. Unless Uber says otherwise in its notice, the amended Terms will be effective immediately and your continued access to and use of the Services after Uber provides such notice will confirm your acceptance of the changes. If you do not agree to the amended Terms, you must stop accessing and using the Services.

Uber's collection and use of personal information in connection with the Services is described in Uber's Privacy Notice located at https://www.uber.com/privacy/notice.

## 2. Arbitration Agreement

By agreeing to the Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration as set forth in this Arbitration Agreement, and not as a class, collective, coordinated, consolidated, mass and/or representative action. This Arbitration Agreement will preclude you from bringing any class, collective, coordinated, consolidated, mass and/or representative action against Uber, and also preclude you from participating in or recovering relief in any current or future class, collective, coordinated, consolidated, mass and/or representative action brought against Uber by someone else—except as provided below in Section 2(a)(3)(c). Thus, the parties agree that the Arbitrator shall not conduct any form of class, collective, coordinated, consolidated, mass

and/or representative arbitration, nor join, coordinate, or consolidate claims of multiple individuals against Uber in a single proceeding—except as provided below in Section 2(a)(3)(c). For the avoidance of doubt, except as provided below in Section 2(a)(3)(c), this Arbitration Agreement precludes you from bringing or participating in any kind of class, collective, coordinated, consolidated, mass and/or representative or other kind of group, multi-plaintiff or joint action against Uber, other than participating in a classwide, collective, coordinated, consolidated, mass and/or representative settlement of claims.

## (a) Agreement to Binding Arbitration Between You and Uber.

(1) Covered Disputes: Except as expressly provided below in Section 2(b), you and Uber agree that any dispute, claim, or controversy in any way arising out of or relating to (i) these Terms and prior versions of these Terms, or the existence, breach, termination, enforcement, interpretation, scope, waiver, or validity thereof; (ii) your access to or use of the Services at any time; (iii) incidents or accidents resulting in personal injury to you or anyone else that you allege occurred in connection with your use of the Services (including, but not limited to, your use of the Uber Marketplace Platform or the driver version of the Uber App), regardless whether the dispute, claim, or controversy occurred or accrued before or after the date you agreed to the Terms, and regardless whether you allege that the personal injury was experienced by you or anyone else; and (iv) your relationship with Uber, will be settled by binding individual arbitration between you and Uber, and not in a court of law. This Arbitration Agreement survives after your relationship with Uber ends.

(2) Class Action Waiver: You acknowledge and agree that any and all disputes, claims, or controversies between the parties shall be resolved only in individual arbitration. The parties expressly waive the right to have any dispute, claim, or controversy brought, heard, administered, resolved, or arbitrated as a class, collective, coordinated, consolidated, and/or representative action, and neither an arbitrator nor an arbitration provider shall have any authority to hear, arbitrate, or administer any class, collective, coordinated, consolidated, and/or representative action, or to award relief to anyone but the individual in arbitration. The parties also expressly waive the right to seek, recover, or obtain any non-individual relief. Notwithstanding anything else in this agreement, this Class Action Waiver does not prevent you or Uber from participating in a classwide, collective, and/or representative settlement of claims.

The parties further agree that if for any reason a claim does not proceed in arbitration, this Class Action Waiver shall remain in effect, and a court may not preside over any action joining, coordinating, or consolidating the claims of multiple individuals against Uber in a single proceeding, except that this Class Action Waiver shall not prevent you or Uber from participating in a classwide, collective, and/or representative settlement of claims. If there is a final judicial determination that any portion of this Class Action Waiver is unenforceable or unlawful for any reason, (i) any class, collective, coordinated, consolidated, and/or

representative claims subject to the unenforceable or unlawful portion(s) shall proceed in a court of competent jurisdiction; (ii) the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration; (iii) the unenforceable or unlawful portion(s) shall be severed from this Arbitration Agreement; and (iv) severance of the unenforceable or unlawful portion(s) shall have no impact whatsoever on the enforceability, applicability, or validity of the Arbitration Agreement or the arbitrability of any remaining claims asserted by you or Uber.

(3) <u>Mass Actions</u>:

a. <u>Mass Action Waiver</u>: You acknowledge and agree that any and all disputes, claims, or controversies between the parties shall be resolved only in individual arbitration. The parties expressly waive the right to have any dispute, claim, or controversy brought, heard, administered, resolved, or arbitrated as a mass action, and neither an arbitrator nor an arbitration provider shall have any authority to hear, arbitrate, or administer any mass action or to award relief to anyone but the individual in arbitration—except as provided below in Section 2(a)(3)(c). The parties also expressly waive the right to seek, recover, or obtain any non-individual relief. The parties agree that the definition of a "Mass Action" includes, but is not limited to, instances in which you or Uber are represented by a law firm or collection of law firms that has filed 50 or more arbitration demands of a substantially similar nature against the other party within 180 days of the arbitration demand filed on your or Uber's behalf, and the law firm or collection of law firms seeks to simultaneously or collectively administer and/or arbitrate all the arbitration demands in the aggregate. Notwithstanding anything else in this agreement, this Mass Action Waiver does not prevent you or Uber from participating in a mass settlement of claims.

b. <u>Dispute Procedure</u>: Notwithstanding any provision to the contrary in the applicable arbitration provider's rules, the arbitrator shall be empowered to determine whether the party bringing any claim has filed a Mass Action in violation of the Mass Action Waiver. Either party shall raise with the arbitrator or arbitration provider such a dispute within 15 days of its arising. If such a dispute arises before an arbitrator has been appointed, the parties agree that (i) a panel of three arbitrators shall be appointed to resolve only disputes concerning whether the party bringing any claim has filed a Mass Action in violation of the Mass Action Waiver. Each party shall select one arbitrator from the arbitration provider's roster to serve as a neutral arbitrator, and these arbitrators shall appoint a third neutral arbitrator. If the parties' arbitrators cannot agree on a third arbitrator, the arbitration provider will select the third arbitrator; (ii) Uber shall pay any administrative fees or costs incidental to the appointment of Arbitrators under this provision, as well as any fees or costs that would not be incurred in a court proceeding, such as payment of the fees of the arbitrators, as well as room rental; (iii) the arbitrators shall issue a written decision with findings of fact and conclusions of law; and (iv) any further arbitration proceedings or assessment of arbitration-related fees shall be stayed pending the arbitrators' resolution of the parties' dispute. If the arbitrator or panel of arbitrators determines that you have violated the Mass Action Waiver, the parties shall have

the opportunity to opt out of arbitration within 30 days of the arbitrator's or panel of arbitrator's decision. You may opt out of arbitration by providing written notice of your intention to opt out to the arbitration provider and to Uber Technologies, Inc., Attn: Legal Department, 1515 3rd Street, San Francisco, CA 94158 via USPS Priority Mail or hand delivery. This written notice must be signed by you, and not any attorney, agent, or other representative of yours. Uber may opt out of arbitration by sending written notice of its intention to opt out to the arbitration provider and to you or your attorney, agent, or representative if you are represented. For the avoidance of doubt, the ability to opt out of arbitration described in this Section 2(a)(3)(b) only applies if the arbitrator or panel of arbitrators determines that you have violated the Mass Action Waiver. If the parties proceed with arbitration, the parties agree that arbitrations will be batched as provided in Section 2(a)(3)(c) below.

c. Batching:

i. To increase efficiency of resolution in the event a Mass Action is filed and neither party exercises its right to opt out of arbitration pursuant to Section 2(a)(3)(b) above, the following procedure shall apply. At the request of either party, an arbitrator shall be selected according to the applicable arbitration provider's rules to act as a special master ("Special Master") to resolve threshold disputes regarding the propriety of some or all the arbitration demands submitted in the Mass Action ("Mass Arbitration Demands"). These threshold disputes may include, but are not limited to:

1. Any dispute regarding filing fees owed with respect to the Mass Arbitration Demands, including whether claimants have submitted valid fee waivers;

2. Any dispute regarding whether the applicable arbitration provider has complied with the Arbitration Agreement with respect to processing and administering the Mass Arbitration Demands;

3. Any dispute regarding whether the Mass Arbitration Demands meet the requirements set forth in Section 2(d) below;

4. Whether claimants are barred from proceeding with their claims based on a prior settlement agreement, violation of these Terms, or expiration of the statute of limitations;

5. Any dispute relating to representation of the same claimant by multiple law firms;

6. Any dispute regarding whether the Mass Arbitration Demands were filed with the correct arbitration provider;

7. Any dispute regarding discovery common to all claims; and

8. Any disputes regarding legal or factual issues common to all claims.

Any such request shall be made within 15 days following the expiration of the opt-out period described in Section 2(a)(3)(b), and may be made by providing written notice to the arbitration provider. Upon the request of either party to appoint a Special Master to resolve the foregoing issues, the applicable arbitration provider shall refrain from further processing any of the Mass Arbitration Demands to which a dispute has been raised. No further payment for filing fees, administrative costs, or arbitrator fees shall be deemed due with respect to any of the Mass Arbitration Demands as to which a dispute has been raised until after the dispute(s) has/have been resolved by the Special Master. Uber shall be responsible for the applicable arbitration provider's and Special Master's fees and costs related to the proceedings before the Special Master.

A Special Master appointed pursuant to this procedure shall have no authority to consolidate cases.

ii. After proceedings before the Special Master have concluded, to the extent any of the Mass Arbitration Demands are permitted to proceed, the parties shall group the Mass Arbitration Demands into batches of no more than 100 demands per batch by state of residence, and then alphabetically by last name (plus, to the extent there are less than 100 arbitration demands left over after the batching described above, a final batch consisting of the remaining demands), and shall inform the arbitration provider of the batches and their compositions within 14 days of the conclusion of proceedings before the Special Master. The arbitration provider shall treat each batch of claims as one case, with each case having one demand for arbitration, one appointed arbitrator, and one set of administrative documents and administrative and filing fees per batch. The parties shall randomly assign sequential numbers to each batch, and only one batch shall proceed to arbitration at a time in the order of the random sequential numbers. A separate arbitrator will be appointed to, and administrative and filing fees assessed for, each batch as the batch proceeds to arbitration. You agree to cooperate in good faith with Uber and the arbitration provider to implement such a batch approach to resolution and fees. Nothing in this provision shall be construed as limiting the right to object that the filing or presentation of multiple arbitration demands by or with the assistance of the same law firm or organization violates any term of this Agreement.

iii. If any Mass Arbitration Demands were originally processed as individual arbitration demands before this batching procedure was commenced, further proceedings, including the assessment of further arbitration filing or administration fees to either party shall be governed by the procedures set forth in this Section 2(a)(3).

(4) <u>Delegation Clause</u>: Only an arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement, including without limitation any claim that all or any part of this Arbitration Agreement is void or voidable. An arbitrator shall also have exclusive authority to resolve all threshold arbitrability

issues, including issues relating to whether the Terms are applicable, unconscionable, or illusory and any defense to arbitration, including without limitation waiver, delay, laches, or estoppel. However, only a court of competent jurisdiction, and not an arbitrator, shall have the exclusive authority to resolve any and all disputes arising out of or relating to the Class Action Waiver and Mass Action Waiver, including, but not limited to, any claim that all or part of the Class Action Waiver and/or Mass Action Waiver is unenforceable, unconscionable, illegal, void, or voidable—except that, as stated and pursuant to the procedures provided in Section 2(a)(3) (b), an arbitrator or panel of arbitrators shall have authority to determine whether the party bringing any claim has violated the Mass Action Waiver.

(5) <u>Application to Third Parties</u>: This Arbitration Agreement shall be binding upon, and shall include any claims brought by or against any third parties, including but not limited to your spouses, heirs, third-party beneficiaries and assigns, where their underlying claims arise out of or relate to your use of the Services. To the extent that any third-party beneficiary to this agreement brings claims against the Parties, those claims shall also be subject to this Arbitration Agreement.

## (b) Exceptions to Arbitration.

Notwithstanding the foregoing, this Arbitration Agreement shall not require arbitration of the following claims: (i) individual claims brought in small claims court so long as the matter remains in such court and advances only on an individual basis; (ii) individual claims of sexual assault or sexual harassment occurring in connection with your use of the Services; and/or (iii) injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation, or violation of a party's copyrights, trademarks, trade secrets, patents, or other intellectual property rights.

Such claims may be brought and litigated in a court of competent jurisdiction by you on an individual basis only. On an individual basis means that you cannot bring such claims as a class, collective, coordinated, consolidated, mass and/or representative action against Uber. For the avoidance of doubt, this precludes you from bringing claims as or participating in any kind of any class, collective, coordinated, consolidated, mass and/or representative or other kind of group, multi-plaintiff or joint action against Uber and no action brought by you may be consolidated or joined in any fashion with any other proceeding. Where your claims are brought and litigated to completion on such an individual basis in a court of competent jurisdiction, Uber agrees to honor your election.

The parties' agreement not to require arbitration in these limited instances does not waive the enforceability of this Arbitration Agreement as to any other provision (including, but not limited to, the waivers provided for in Section 2(a), which will continue to apply in court as well as in arbitration), or the enforceability of this Arbitration Agreement as to any other controversy, claim, or dispute.

**(c) Rules and Governing Law.**

For disputes arising in California, the arbitration will be administered by ADR Services, Inc. ("ADR") in accordance with ADR's Arbitration Rules (the "ADR Rules") in effect at the time that the claim is brought, unless the parties agree otherwise in writing. The ADR Rules are available at www.adrservices.com or by searching for "ADR Arbitration Rules" using a service such as www.google.com or www.bing.com. The arbitration shall be heard by one arbitrator (the "Arbitrator") selected in accordance with the ADR Rules.

For disputes arising outside of California (or for disputes arising in California only if ADR cannot or will not administer the arbitration), the parties shall be required to meet and confer to select a neutral arbitration provider. Such an arbitration provider shall have operations in the state in which the dispute arises. If the parties are unable to mutually agree upon an arbitration provider, then either party may invoke 9 U.S.C. § 5 to request that a court of competent jurisdiction appoint an arbitration provider with operations in the state in which the dispute arises. Any arbitration provider appointed by a court under 9 U.S.C. § 5 shall conduct arbitration solely on an individualized basis as set forth in this Section 2. Once the parties mutually agree upon a neutral arbitration provider, or an arbitrator provider is appointed under 9 U.S.C. § 5, the ensuing arbitration shall commence pursuant to the rules of the designated arbitration provider, except as designated herein. Once an arbitration provider is agreed upon or appointed, an Arbitrator shall be appointed. The Arbitrator will be either (1) a retired judge or (2) an attorney licensed to practice law in the state where the arbitration is conducted with experience in the law underlying the dispute. The Arbitrator will be selected by the parties from the applicable arbitration provider's roster of arbitrators. If the parties are unable to agree upon an Arbitrator after a good faith meet and confer effort, then the applicable arbitration provider will appoint the Arbitrator in accordance with its rules.

Notwithstanding any choice of law or other provision in these Terms, the parties agree and acknowledge that this Arbitration Agreement evidences a transaction involving interstate commerce and that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), will govern its interpretation and enforcement and proceedings pursuant thereto. It is the intent of the parties to be bound by the provisions of the FAA for all purposes, including, but not limited to, interpretation, implementation, enforcement, and administration of this Arbitration Agreement, and that the FAA and the applicable arbitration provider's rules shall preempt all state laws to the fullest extent permitted by law. If the FAA and applicable arbitration provider's rules are found to not apply to any issue regarding the interpretation or enforcement of this Arbitration Agreement, then that issue shall be resolved under the laws of the state where you reside when you accept these Terms.

Any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date

you agreed to the Terms, shall be governed by and construed in accordance with the laws of the state in which the incident or accident occurred.

## (d) Process.

Pre-Arbitration Dispute Resolution and Notification. The parties agree that good-faith informal efforts to resolve disputes often can result in a prompt, low-cost, and mutually beneficial outcome. The parties therefore agree that, before either party demands arbitration against the other, we will personally meet and confer, via telephone or videoconference, in a good-faith effort to resolve informally any claim covered by this Arbitration Agreement. Multiple individuals initiating claims cannot participate in the same informal telephonic dispute resolution conference. If you are represented by counsel, your counsel may participate in the conference, but you shall also fully participate in the conference. The party initiating the claim must give notice to the other party in writing of their intent to initiate an informal dispute resolution conference, which shall occur within 60 days after the other party receives such notice, unless an extension is mutually agreed upon by the parties. To notify Uber that you intend to initiate an informal dispute resolution conference, write to Uber Technologies, Inc., Attn: Legal Department, 1515 3rd Street, San Francisco, CA 94158, providing your name, the telephone number(s) associated with your Uber account (if any), the email address(es) associated with your Uber account, and a description of your claim. Engaging in an informal dispute resolution conference is a condition precedent that must be fulfilled before commencing arbitration, and the Arbitrator shall dismiss any arbitration demand filed before completion of an informal dispute resolution conference. The statute of limitations and any filing fee deadlines shall be tolled while the parties engage in the informal dispute resolution process required by this paragraph.

Initiating Arbitration. In order to initiate arbitration following the conclusion of the informal dispute resolution process required by this Section, a party must provide the other party with a written demand for arbitration and file the demand with the applicable arbitration provider, as determined by Section 2(c). A party initiating an arbitration against Uber must send the written demand for arbitration to Uber Technologies, Inc., LLC, Attn: Legal Department, 1515 3rd Street, San Francisco, CA 94158, or serve the Demand on Uber's registered agent for service of process, c/o Uber Technologies, Inc. (the name and current contact information for the registered agent in each state are available online here). Additionally, a party initiating arbitration against Uber must send an electronic version of the demand for arbitration to the Arbitration Provider, and must send an electronic version of the as-filed demand to filed-arbitration-demands@uber.com.

By signing the demand for arbitration, counsel certifies to the best of counsel's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that (i) the demand for arbitration is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of dispute resolution; (ii) the claims

and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; and (iii) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Arbitrator shall be authorized to afford any relief or impose any sanctions available under Federal Rule of Civil Procedure 11 or any applicable state law for either party's violation of this requirement.

## (e) Location.

Unless you and Uber otherwise agree, the arbitration will be conducted in the county where you reside. Your right to a hearing will be determined by the applicable arbitration provider's rules. Subject to the applicable arbitration provider's rules, the Arbitrator will have the discretion to direct a reasonable exchange of information by the parties, consistent with the expedited nature of the arbitration.

## (f) Offers of Judgment.

At least 10 days before the date set for the arbitration hearing, any party may serve an offer in writing upon the other party to allow judgment on specified terms. If the offer is accepted, the offer with proof of acceptance shall be submitted to the arbitrator, who shall enter judgment accordingly. If the offer is not accepted prior to the arbitration hearing or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the arbitration. If an offer made by one party is not accepted by the other party, and the other party fails to obtain a more favorable award, the other party shall not recover their post-offer costs and shall pay the offering party's costs from the time of the offer.

## (g) Arbitrator's Decision.

The Arbitrator will render an award within the time frame specified in the applicable arbitration provider's rules. Judgment on the arbitration award may be entered in any court of competent jurisdiction. The Arbitrator may award declaratory or injunctive relief only in favor of the claimant and only to the extent necessary to provide relief warranted by the claimant's individual claim. An Arbitrator's decision shall be final and binding on all parties.

The Arbitrator is not bound by decisions reached in separate arbitrations, and the Arbitrator's decision shall be binding only upon the parties to the arbitration that are the subject of the decision.

The Arbitrator shall award reasonable costs incurred in the arbitration to the prevailing party in accordance with the law(s) of the state in which arbitration is held.

## (h) Fees.

APP438

With the exception of the provisions governing payment of arbitration costs set forth above, your responsibility to pay any filing, administrative, and arbitrator fees will be solely as set forth in the applicable arbitration provider's rules and shall be up to the amount you would be required to pay if you filed a claim in court.

If you have a gross monthly income of less than 300% of the federal poverty guidelines, you are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. If you believe that you meet the requirements to obtain a fee waiver, and your demand for arbitration arises outside of California, then you may request a fee waiver only by submitting to the arbitration provider AO 240, Application to Proceed in District Court Without Prepaying Fees or Costs (found here), or a declaration under oath containing all the information required by AO 240; if your demand for arbitration arises in California, then you must submit a declaration under oath providing your monthly income and the number of persons in your household.

Any and all disputes regarding a party's obligation to pay any arbitration fees or costs that arise after an arbitrator is appointed shall be determined solely by the arbitrator. If such a dispute arises before an arbitrator has been appointed, and if no Special Master has been requested by either party pursuant to section 2(a)(3)(c)(i) of these Terms, the parties agree that (i) the due date for any disputed fees shall be stayed pending resolution of the parties' dispute, (ii) a panel of three arbitrators shall be appointed to resolve the parties' dispute concerning a party's obligation to pay fees or costs of arbitration, (iii) the panel of arbitrators shall be appointed by each party selecting one arbitrator from the arbitration provider's roster to serve as neutral arbitrators, and these arbitrators shall appoint a third neutral arbitrator. If the parties' arbitrators cannot agree on a third arbitrator, the arbitration administrator will select the third arbitrator, (iv) Uber shall pay any administrative fees or costs incidental to the appointment of a panel of arbitrators under this provision, as well as any fees or costs that would not be incurred in a court proceeding, such as payment of the fees of the arbitrator(s), as well as room rental, and (v) the arbitrator(s) shall issue a written decision with findings of fact and conclusions of law. If two or more fee disputes between a claimant and Uber arise at or around the same time, the disputes may be consolidated for resolution by a single arbitrator or panel of arbitrators either at the agreement of the parties or the election of the party common to all such disputes.

## (i) Severability and Survival.

If any portion of this Arbitration Agreement is found to be unenforceable or unlawful for any reason, (i) the unenforceable or unlawful provision shall be severed from these Terms; (ii) severance of the unenforceable or unlawful provision shall have no impact whatsoever on the remainder of the Arbitration Agreement or the parties' ability to compel arbitration of any remaining claims on an individual basis pursuant to the Arbitration Agreement; and (iii) to the extent that any claims must therefore proceed on a class, collective, consolidated, or representative basis, such claims must be litigated in a civil court of competent jurisdiction

and not in arbitration, and the parties agree that litigation of those claims shall be stayed pending the outcome of any individual claims in arbitration.

## 3. The Marketplace Platform & Services

Uber operates a personalized multipurpose digital marketplace platform that is accessed in a number of forms, including mobile and/or web-based applications ("Applications"). Among other things, the Uber Marketplace Platform enables you to discover and receive: (i) services rendered by Uber that facilitate your requests to independent third-party providers, including drivers and restaurants ("Third-Party Providers"), for the purchase of services or goods, such as transportation, logistics and/or delivery services from those Third-Party Providers; (ii) related personalized content, including features, recommendations and advertisements for products or services tailored to your needs and interests; and (iii) any supporting services, including payment processing and customer support. The Uber Marketplace Platform, personalized content and supporting services described in this Section are collectively referred to as "the Services." Unless otherwise agreed by Uber in a separate written agreement with you, the Services are made available solely for your personal, noncommercial use.

YOU ACKNOWLEDGE THAT YOUR ABILITY TO REQUEST, AND IF APPLICABLE, OBTAIN TRANSPORTATION, LOGISTICS AND/OR DELIVERY SERVICES FROM THIRD-PARTY PROVIDERS IN CONNECTION WITH THE USE OF THE UBER MARKETPLACE PLATFORM AND SERVICES DOES NOT ESTABLISH UBER AS A PROVIDER OF TRANSPORTATION, LOGISTICS OR DELIVERY SERVICES OR AS A TRANSPORTATION OR PROPERTY CARRIER.

UBER IS NOT A COMMON OR MOTOR CARRIER, DOES NOT TRANSPORT YOU, AND USE OF THE UBER MARKETPLACE PLATFORM IS ONLY OPEN TO REGISTERED USERS OF THE UBER MARKETPLACE PLATFORM AND NOT TO THE GENERAL PUBLIC.

YOU ACKNOWLEDGE THAT INDEPENDENT THIRD-PARTY PROVIDERS, INCLUDING DRIVERS, ARE NOT ACTUAL AGENTS, APPARENT AGENTS, OSTENSIBLE AGENTS, OR EMPLOYEES OF UBER IN ANY WAY.

YOU ALSO ACKNOWLEDGE THAT ANY SAFETY RELATED EFFORT, FEATURE, PROCESS, POLICY, STANDARD OR OTHER EFFORT UNDERTAKEN BY UBER IN THE INTEREST OF PUBLIC SAFETY (WHETHER REQUIRED BY APPLICABLE REGULATIONS OR NOT) IS NOT AN INDICIA OF AN EMPLOYMENT, ACTUAL AGENCY, APPARENT AGENCY, OR OSTENSIBLE AGENCY RELATIONSHIP WITH AN INDEPENDENT THIRD-PARTY DRIVER.

### License.

Subject to your compliance with these Terms, Uber grants you a limited, non-exclusive, non-sublicensable, revocable, non-transferable license to: (i) access and use the Applications on your personal device solely in connection with your use of the Services; and (ii) access and use

any content, information and related materials that may be made available through the Services, in each case solely for your personal, noncommercial use. Any rights not expressly granted herein are reserved by Uber and Uber's licensors.

## Restrictions.

You may not: (i) remove any copyright, trademark or other proprietary notices from any portion of the Services; (ii) reproduce, modify, prepare derivative works based upon, distribute, license, lease, sell, resell, transfer, publicly display, publicly perform, transmit, stream, broadcast or otherwise exploit the Services except as expressly permitted by Uber; (iii) decompile, reverse engineer or disassemble the Services except as may be permitted by applicable law; (iv) link to, mirror or frame any portion of the Services; (v) cause or launch any programs or scripts for the purpose of unduly burdening or hindering the operation and/or functionality of any aspect of the Services; or (vi) attempt to gain unauthorized access to or impair any aspect of the Services or its related systems or networks.

## Third-Party Services and Content.

The Services may be made available or accessed in connection with third-party services and content (including advertising) that Uber does not control. Once you click on a link to third-party services or content, you will be subject to the terms and conditions and privacy policy of that website, destination, or third-party service provider. Uber will not warn you that you have left the Services or that you are subject to the terms and conditions (including privacy policies) of another website, destination, or third-party service provider. You use all links in third-party websites and advertisements at your own risk as these are not part of the Services and are not controlled by Uber. You acknowledge that different terms of use and privacy policies may apply to your use of such third-party services and content. Uber does not endorse such third-party services and content and in no event shall Uber be responsible or liable for any products or services of such third-party providers.

## App Stores.

You acknowledge and agree that the availability of the Applications may be dependent on the third-party from which you received the Application's license, e.g., the Apple iPhone or Android app stores ("App Store"). You acknowledge and agree that this Agreement is between you and Uber and not with the App Store and that Uber is responsible for the provision of Services as described in this Agreement. However, if you downloaded the Application from the Apple App Store, Apple and its subsidiaries are third-party beneficiaries of this Agreement. Upon your acceptance of this Agreement, Apple shall have the right (and will be deemed to have accepted the right) to enforce this Agreement against you as a third-party beneficiary thereof. This Agreement incorporates by reference Apple's Licensed Application End User License Agreement, for purposes of which, you are "the end-user." In the event of a conflict in the

terms of the Licensed Application End User License Agreement and this Agreement, the terms of this Agreement will control.

### Ownership.

The Services and all rights therein are and shall remain Uber's property or the property of Uber's licensors. Neither these Terms nor your use of the Services convey or grant to you any rights in or related to the Services except for the limited license granted above.

You agree that you will not use Uber's trademarks, service marks, or trade dress or any similar names, marks, or trade dress ("Uber's Marks"), aside from use incidental to your use of the Services, without express, written permission from Uber. This prohibition on using Uber's Marks includes, but is not limited to, use in domain names, websites, and social media accounts.

# 4. Access and Use of the Services

### User Accounts.

In order to use most aspects of the Services, you must register for and maintain an active personal user Services account ("Account"). You must be at least 18 years of age, or the age of legal majority in your jurisdiction (if different than 18), to obtain an Account, unless a specific Service permits otherwise. You cannot register for or maintain an Account if you have previously been banned from accessing or using the Services. Account registration requires you to submit to Uber certain personal information, such as your name, address, mobile phone number and age, as well as at least one valid payment method supported by Uber. For more information regarding Uber's use of your personal information, please see our Privacy Notice currently available at https://privacy.uber.com/policy/. You agree to maintain accurate, complete, and up-to-date information in your Account, including a valid phone number, address and payment method. Your failure to comply with these Terms (including policies and supplemental terms) including, without limitation, your failure to maintain accurate, complete, and up-to-date Account information, including having an invalid or expired payment method on file, may result in your inability to access or use the Services. You are responsible for all activity that occurs under your Account, and you agree to maintain the security and secrecy of your Account username and password at all times. Unless otherwise permitted by Uber in writing, you may only possess one Account.

### User Requirements and Conduct.

You agree to abide by the Uber Community Guidelines, available here. Failure to comply with the Community Guidelines or any violation of these terms may result in the permanent loss of access to the Services.

APP442

The Services are not available for use by persons under the age of 18. You may not authorize third-parties to use your Account, and you may not allow persons under the age of 18 to request or receive transportation, delivery or logistics services from Third-Party Providers unless they are accompanied by you. You may not assign or otherwise transfer your Account to any other person or entity. You agree to comply with all applicable laws when accessing or using the Services, and you may only access or use the Services for lawful purposes (e.g., no request for the purpose or intent of transport of unlawful or hazardous materials). You may not in your access or use of the Services cause nuisance, annoyance, inconvenience, or property damage, whether to the Third-Party Provider or any other party. If you request a ride option with a car seat, you acknowledge and agree that neither Uber nor the Third-Party Provider is responsible for the safety of a child restraint/car seat that may be available in the Third-Party Provider's Vehicle. You acknowledge and agree that it is your obligation to ensure that the car seat is installed correctly and that the child is properly secured in the seat. If you request a ride option where a driver agrees to provide you with assistance outside of the vehicle (e.g., Uber Assist), you acknowledge and agree that neither Uber nor the Third-Party Provider is responsible for any injury or incident that may arise out of the assistance provided by the Third-Party Provider. In certain instances, you may be asked to provide proof of age, identity or other method of identity verification to access or use the Services, and you agree that you may be denied access to or use of the Services if you refuse to provide proof of age, identity or other method of identity verification.

Subject to the discretion of a Third-Party Provider, you may be allowed to bring a small animal, such as a dog or cat, on a ride requested through the Uber Marketplace Platform. For such trips, you are responsible for properly securing the animal with a leash, harness, crate / carrier, or through other means. You are also responsible for ensuring that the animal does not cause damage or a mess in the Third-Party Provider's vehicle. You may be subject to a Charge for Repair or Cleaning under Section 5 for any damage or mess caused by an animal that is transported during a ride requested under your Account. Please note, in accordance with Uber's policies on Service Animals and assistive devices, Service Animals are generally permitted to accompany riders without extra charge, regardless of whether it is a Pet Friendly Trip.

For the purpose of assisting us with our compliance and insurance obligations, you agree to notify us within 24 hours and provide us with all reasonable information relating to any incident or accident that occurs during your use of the Services and you agree to cooperate with any investigation and attempted resolution of such incident.

## Text Messaging and Telephone Calls.

You agree that Uber Technologies, Inc., and its subsidiaries, representatives, affiliates, officers and directors, may contact you by telephone or text messages (including by an automatic telephone dialing system and/or with an artificial or pre-recorded voice) at any of the phone

numbers provided by you or on your behalf in connection with an Uber account, including for marketing purposes. You understand that you are not required to provide this consent as a condition of purchasing any property, goods or services. You also understand that you may opt out of receiving text messages from Uber at any time, either by replying "STOP", texting the word "STOP" to 89203 using the mobile device that is receiving the messages, or by contacting help.uber.com. If you do not choose to opt out, Uber may contact you as outlined in its User Privacy Notice, located at https://www.uber.com/privacy/notice.

You agree that Uber may contact you using any of the phone numbers you provided in connection with an Uber account (including via text or voice-recorded message) or your email address in the case of suspected fraud or unlawful activity.

## User Provided Content.

Uber may, in Uber's sole discretion, permit you from time to time to submit, upload, publish or otherwise make available to Uber through the Services textual, audio, and/or visual content and information, and submission of entries for competitions and promotions ("User Content"). Any User Content provided by you remains your property. However, by providing User Content to Uber, you grant Uber a worldwide, perpetual, irrevocable, transferable, royalty-free license, with the right to sublicense, to use, copy, modify, create derivative works of, distribute, publicly display, publicly perform, and otherwise exploit in any manner such User Content in all formats and distribution channels now known or hereafter devised (including in connection with the Services and Uber's business and on third-party sites and services), without further notice to or consent from you, and without the requirement of payment to you or any other person or entity.

You represent and warrant that: (i) you either are the sole and exclusive owner of all User Content or you have all rights, licenses, consents and releases necessary to grant Uber the license to the User Content as set forth above; and (ii) neither the User Content, nor your submission, uploading, publishing or otherwise making available of such User Content, nor Uber's use of the User Content as permitted herein will infringe, misappropriate or violate a third-party's intellectual property or proprietary rights, or rights of publicity or privacy, or result in the violation of any applicable law or regulation.

You agree to not provide User Content that is defamatory, libelous, hateful, violent, obscene, pornographic, unlawful, or otherwise offensive, as determined by Uber in its sole discretion, whether or not such material may be protected by law. Uber may, but shall not be obligated to, review, monitor, and remove User Content, at Uber's sole discretion and at any time and for any reason, without notice to you.

## User Feedback.

As Uber respects your rights to your ideas, you agree that you will not submit any confidential ideas, information, or suggestions in any form to Uber or any of its affiliates. For any ideas, information, or suggestions you do submit, regardless of what your communication regarding your submissions says, you understand that your submissions are voluntary and the following terms shall apply to your submissions: (i) your submissions and their contents will automatically become the property of Uber, without any compensation to you; (ii) Uber has no obligation to review your submissions; (iii) Uber may implement and distribute any portion of your submissions and their contents for any purpose in any way, without any compensation to you; and (iv) Uber has no obligation to keep your submissions confidential.

## Network Access and Devices.

You are responsible for obtaining the data network access necessary to use the Services. Your mobile network's data and messaging rates and fees may apply if you access or use the Services from your device. You are responsible for acquiring and updating compatible hardware or devices necessary to access and use the Services and Applications and any updates thereto. Uber does not guarantee that the Services, or any portion thereof, will function on any particular hardware or devices. In addition, the Services may be subject to malfunctions and delays inherent in the use of the Internet and electronic communications.

# 5. Payment

You understand that use of the Services may result in charges to you for the services or goods you receive from Uber and/or from Third-Party Providers ("Charges"). Uber will enable your payment of the applicable Charges for services or goods obtained through your use of the Services. Charges will include applicable taxes where required by law. Charges may include other applicable fees such as delivery fees, service fees, product return fees, cancellation fees, government-mandated fees (such as bag fees), estimated or actual tolls, and/or surcharges. Further, you acknowledge and agree that Charges applicable in certain geographical areas may increase substantially during times of high demand or due to other marketplace factors.

All Charges and payments will be enabled by Uber using the preferred payment method designated in your Account, after which you will receive a receipt. If your primary Account payment method is determined to be expired, invalid or otherwise not able to be charged, you agree that Uber may use a secondary payment method in your Account, if available. Charges paid by you are final and non-refundable, unless otherwise determined by Uber.

As between you and Uber, Uber reserves the right to establish or adjust Charges for any or all services or goods obtained through the use of the Services at any time. Uber will use reasonable efforts to inform you of Charges that may apply, provided that you will be responsible for Charges incurred under your Account regardless of your awareness of such Charges or the amounts thereof. Certain users may from time to time receive promotional

offers and discounts that may result in different amounts charged for the same or similar services or goods obtained through the use of the Services, and you agree that such promotional offers and discounts, unless also made available to you, shall have no bearing on your use of the Services or the Charges applied to you. Promotional offers and discounts are subject to change or withdrawal at any time and without notice. You may elect to cancel your request for Services at any time prior to the commencement of such Services, in which case you may be charged a cancellation fee on a Third-Party Provider's behalf.

With respect to Third-Party Providers, Charges you incur will be owed directly to Third-Party Providers, and Uber will collect payment of those charges from you, on the Third-Party Provider's behalf as their limited payment collection agent, and payment of the Charges shall be considered the same as payment made directly by you to the Third-Party Provider. In such cases, you retain the right to request lower Charges from a Third-Party Provider for services or goods received by you from such Third-Party Provider at the time you receive such services or goods, and Charges you incur will be owed to the Third-Party Provider. Uber will consider in good faith any request from a Third-Party Provider to modify the Charges for a particular service or good. This payment structure is intended to fully compensate a Third-Party Provider, if applicable, for the services or goods obtained in connection with your use of the Services. Except for amounts provided by you through the Application as part of the "tip" feature, Uber does not designate any portion of your payment as a tip or gratuity to a Third-Party Provider. You understand and agree that, while you are free to provide additional payment as a gratuity to any Third-Party Provider who provides you with services or goods obtained through the Service, you are under no obligation to do so. There also may be certain Charges you incur that will be owed and paid directly to Uber or its affiliates. For the avoidance of doubt, Uber does not charge a fee for a user to access the Uber Marketplace Platform, but may charge users a fee or any other Charge for accessing Services made available through the Marketplace Platform. Even if not indicated on the Uber Marketplace Platform, you understand that the prices for product or menu items displayed through the Services may differ from the prices offered or published by Third-Party Providers for the same product or menu items and/or from prices available at other third-party websites/mobile applications. Prices for product or menu items displayed through the Services may not be the lowest prices at which the product or menu items are sold. You also understand that product or menu item prices displayed through the Services or fees charged by and paid to Uber may vary based on whether you choose to pick up your order or have it delivered.

If you think a correction should be made to any Charge you incurred, you must let Uber know in writing within 30 days after the Charge took place or Uber will have no further responsibility and you waive your right to later dispute the amounts charged.

## Damage, Cleaning, Lost and Found, and Violation of Terms.

Uber may charge you a fee on behalf of Third-Party Providers if, during your use of the Services, you have caused damage to a vehicle or property that requires repair or cleaning ("Repair" or "Cleaning"). The amount of such fee shall be determined, in Uber's sole discretion, based on the type of damage and the severity. Uber reserves the right to verify or otherwise require documentation of damages prior to processing a fee. In the event that a Repair or Cleaning request is verified by Uber in Uber's reasonable discretion, Uber reserves the right to facilitate payment for the reasonable cost of such Repair or Cleaning using your payment method designated in your Account. Such amounts, as well as those pertaining to lost and found goods, will be transferred by Uber to a Third-Party Provider, if applicable, and are non-refundable.

Additionally, if you fail to comply with these Terms, you may be responsible for Charges, including without limitation, for transactions that could not be completed properly, arising out of or in connection with your failure to comply with these Terms.

# 6. Disclaimers; Limitation of Liability; Indemnity.

## Disclaimer.

THE SERVICES ARE PROVIDED "AS IS" AND "AS AVAILABLE." UBER DISCLAIMS ALL REPRESENTATIONS AND WARRANTIES, EXPRESS, IMPLIED, OR STATUTORY, NOT EXPRESSLY SET OUT IN THESE TERMS, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. IN ADDITION, UBER MAKES NO REPRESENTATION, WARRANTY, OR GUARANTEE REGARDING THE RELIABILITY, TIMELINESS, QUALITY, SUITABILITY, OR AVAILABILITY OF THE SERVICES OR ANY SERVICES OR GOODS REQUESTED THROUGH THE USE OF THE SERVICES, OR THAT THE SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE.

UBER DOES NOT GUARANTEE THE QUALITY, SUITABILITY, SAFETY OR ABILITY OF THIRD-PARTY PROVIDERS. YOU AGREE THAT THE ENTIRE RISK ARISING OUT OF YOUR USE OF THE SERVICES, AND ANY SERVICE OR GOOD REQUESTED OR OBTAINED FROM THIRD-PARTY PROVIDERS IN CONNECTION THEREWITH, REMAINS SOLELY WITH YOU, TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW.

UBER DOES NOT CONTROL, MANAGE OR DIRECT ANY THIRD-PARTY PROVIDERS INCLUDING DRIVERS. THIRD-PARTY PROVIDERS ARE NOT ACTUAL AGENTS, APPARENT AGENTS, OSTENSIBLE AGENTS, OR EMPLOYEES OF UBER.

UBER DOES NOT CONTROL, ENDORSE OR TAKE RESPONSIBILITY FOR ANY USER CONTENT OR THIRD-PARTY CONTENT AVAILABLE ON OR LINKED TO BY THE SERVICES. UBER CANNOT AND DOES NOT REPRESENT OR WARRANT THAT THE SERVICES OR SERVERS ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS.

## Limitation of Liability.

UBER SHALL NOT BE LIABLE FOR INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, PUNITIVE, OR CONSEQUENTIAL DAMAGES, INCLUDING LOST PROFITS, LOST DATA, PERSONAL INJURY, OR PROPERTY DAMAGE RELATED TO, IN CONNECTION WITH, OR OTHERWISE RESULTING FROM ANY USE OF THE SERVICES, REGARDLESS OF THE NEGLIGENCE (EITHER ACTIVE, AFFIRMATIVE, SOLE, OR CONCURRENT) OF UBER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

UBER SHALL NOT BE LIABLE FOR ANY DAMAGES, LIABILITY OR LOSSES ARISING OUT OF: (i) YOUR USE OF OR RELIANCE ON THE SERVICES OR YOUR INABILITY TO ACCESS OR USE THE SERVICES; OR (ii) ANY TRANSACTION OR RELATIONSHIP BETWEEN YOU AND ANY THIRD-PARTY PROVIDER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. UBER SHALL NOT BE LIABLE FOR DELAY OR FAILURE IN PERFORMANCE RESULTING FROM CAUSES BEYOND UBER'S REASONABLE CONTROL. YOU ACKNOWLEDGE THAT THIRD-PARTY PROVIDERS PROVIDING TRANSPORTATION SERVICES REQUESTED THROUGH SOME UBER SERVICES MAY OFFER RIDESHARING OR PEER-TO-PEER TRANSPORTATION SERVICES AND MAY NOT BE PROFESSIONALLY LICENSED OR PERMITTED. YOU ACKNOWLEDGE THAT THIRD-PARTY PROVIDERS ARE NOT OSTENSIBLE AGENTS, APPARENT AGENTS, ACTUAL AGENTS, OR EMPLOYEES OF UBER.

THE SERVICES MAY BE USED BY YOU TO REQUEST AND SCHEDULE TRANSPORTATION, GOODS, OR LOGISTICS SERVICES WITH THIRD-PARTY PROVIDERS, BUT YOU AGREE THAT UBER HAS NO RESPONSIBILITY OR LIABILITY TO YOU RELATED TO ANY TRANSPORTATION, GOODS OR LOGISTICS SERVICES PROVIDED TO OR NOT PROVIDED TO YOU BY THIRD-PARTY PROVIDERS OTHER THAN AS EXPRESSLY SET FORTH IN THESE TERMS.

UBER SHALL NOT BE LIABLE FOR ANY DAMAGES, LIABILITY OR LOSSES ARISING OUT OF LACK OF OR IMPROPER INSTALLATION OR USE OF CHILD RESTRAINT SYSTEMS FOR GUESTS ON RIDES REQUESTED THROUGH THE SERVICES FOR WHOM A CHILD RESTRAINT SYSTEM IS LEGALLY REQUIRED.

THE LIMITATIONS AND DISCLAIMERS IN THIS SECTION DO NOT PURPORT TO LIMIT LIABILITY OR ALTER YOUR RIGHTS AS A CONSUMER THAT CANNOT BE EXCLUDED UNDER APPLICABLE LAW. BECAUSE SOME STATES OR JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF OR THE LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, IN SUCH STATES OR JURISDICTIONS, UBER'S LIABILITY SHALL BE LIMITED TO THE EXTENT PERMITTED BY LAW. THIS PROVISION SHALL HAVE NO EFFECT ON UBER'S CHOICE OF LAW PROVISION SET FORTH BELOW.

## Indemnity.

You agree to indemnify and hold Uber and its affiliates and their officers, directors, employees, and agents harmless from and against any and all actions, claims, demands, losses, liabilities, costs, damages, and expenses (including attorneys' fees), arising out of or in connection with: (i) your use of the Services or services or goods obtained through your use of the Services; (ii) your breach or violation of any of these Terms; (iii) Uber's use of your User Content; or (iv) your violation of the rights of any third party, including Third-Party Providers.

# 7. Other Provisions

## Choice of Law.

These Terms shall be governed by and construed in accordance with the laws of the state in which your dispute arises, without regard to the choice or conflict of law principles of any jurisdiction, except as may be otherwise provided in the Arbitration Agreement in Section 2 above or in supplemental terms applicable to your region. This Choice of Law provision applies only to the interpretation of these Terms, and these provisions shall not be interpreted as generally extending any state's law to you if your dispute did not arise in that state.

Any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to the Terms, shall be governed by and construed in accordance with the laws of the state in which the incident or accident occurred.

## Choice of Forum.

Any dispute, claim or controversy arising out of or relating to these Terms or the existence, breach, termination, enforcement, interpretation or validity thereof, shall be brought exclusively in the state and federal courts of the state in which the dispute, claim or controversy arose, notwithstanding that other courts may have jurisdiction over the parties and subject matter, except as may be otherwise provided by the Arbitration Agreement above or in supplemental terms applicable to your region.

Notwithstanding the foregoing, any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to the Terms, shall be brought exclusively in the state or federal courts in the State in which the incident or accident occurred, notwithstanding that other courts may have jurisdiction over the parties and subject matter, and except as may be otherwise provided in the Arbitration Agreement above or in supplemental terms applicable to your region, to the extent permitted by law.

The foregoing Choice of Law and Choice of Forum provisions do not apply to the Arbitration Agreement in Section 2, and we refer you to Section 2 for the applicable provisions for such disputes.

## Claims of Copyright Infringement.

Claims of copyright infringement should be sent to Uber's designated agent. Please visit Uber's web page at https://www.uber.com/legal/intellectual-property/copyright/global for the designated address and additional information.

## Notice.

Uber may give notice by means of a general notice on or through the Services, electronic mail to the email address associated with your Account, telephone or text message to any phone number provided in connection with your account, or by written communication sent by first class mail or pre-paid post to any address connected with your Account. Such notice shall be deemed to have been given upon the expiration of 48 hours after mailing or posting (if sent by first class mail or pre-paid post) or at the time of sending (if sent by email, telephone, or on or through the Services). You may give notice to Uber, with such notice deemed given when received by Uber, at any time by first class mail or pre-paid post to our registered agent for service of process, c/o Uber Technologies, Inc. The name and current contact information for the registered agent in each state are available online at https://www.wolterskluwer.com/en/solutions/ct-corporation/sop-locations. If another provision of these Terms addresses any specific notice (for example, notice of updates to these Terms, or notice of a dispute or arbitration demand), those specific notice provisions shall prevail to the extent there is any conflict or inconsistency between those provisions and this notice provision.

## General.

You may not assign these Terms without Uber's prior written approval. Uber may assign these Terms without your consent to: (i) a subsidiary or affiliate; (ii) an acquirer of Uber's equity, business or assets; or (iii) a successor by merger. Any purported assignment by you in violation of this section shall be void. No joint venture, partnership, employment, or agency relationship exists between you, Uber or any Third-Party Provider as a result of this Agreement or use of the Services. If any provision of these Terms is held to be invalid or unenforceable, such provision shall be struck and the remaining provisions shall be enforced to the fullest extent under law. Uber's failure to enforce any right or provision in these Terms shall not constitute a waiver of such right or provision unless acknowledged and agreed to by Uber in writing. This provision shall not affect the Severability and Survivability section of the Arbitration Agreement of these Terms.

# Return to Legal Hub→

Uber

Visit Help Center

Do not sell my info (California)

Google Data Policy

Company

About us

Our offerings

Newsroom

Investors

Blog

Careers

AI

Gift cards

Products

Ride

Drive

Deliver

Eat

Uber for Business

Uber Freight

Global citizenship

Safety

Diversity and Inclusion

Travel

Airports

Cities

English

San Francisco Bay Area




© 2022 Uber Technologies Inc.

Privacy                Accessibility            Terms

# EXHIBIT L

Uber                                                                    Sign up

Select jurisdiction:     Select language:

United States ▾          English   ▾

Last modified: 8/16/2022

# U.S. Terms of Use
## 1. Contractual Relationship

Uber provides a personalized multipurpose digital marketplace platform ("Uber Marketplace Platform") that enables you to conveniently find, request, or receive transportation, logistics and/or delivery services from third-party providers that meet your needs and interests. These Terms of Use ("Terms") govern your access or use, from within the United States and its territories and possessions, of the Uber Marketplace Platform and any related content or services (collectively, the "Services," as more fully defined below in Section 3) made available in the United States and its territories and possessions by Uber Technologies, Inc. and its subsidiaries, representatives, affiliates, officers and directors (collectively, "Uber"). PLEASE READ THESE TERMS CAREFULLY, AS THEY CONSTITUTE A LEGAL AGREEMENT BETWEEN YOU AND UBER. In these Terms, the words "including" and "include" mean "including, but not limited to."

By accessing or using the Services, you confirm your agreement to be bound by these Terms. If you do not agree to these Terms, you may not access or use the Services. These Terms expressly supersede prior agreements or arrangements with you regarding the use of the Services.

Notwithstanding the foregoing, these Terms do not supersede or otherwise impact the enforceability of any agreements you may have with Uber or its subsidiaries regarding driving, delivering and/or providing transportation and/or delivery services (e.g., the Platform Access Agreement, the Technology Services Agreement and/or any similar agreements). To the extent (but only to the extent) any agreement you may have with Uber regarding driving, delivering and/or providing transportation and/or delivery services conflicts with these Terms, those agreements (and not these Terms) will prevail with respect to any disputes arising from you driving, delivering and/or providing transportation and/or delivery services.

Uber may immediately terminate these Terms or any Services with respect to you, or generally cease offering or deny access to the Services or any portion thereof, at any time for any reason.

IMPORTANT: PLEASE BE ADVISED THAT THIS AGREEMENT CONTAINS PROVISIONS THAT GOVERN HOW CLAIMS BETWEEN YOU AND UBER CAN BE BROUGHT, INCLUDING THE ARBITRATION AGREEMENT (SEE SECTION 2 BELOW). PLEASE REVIEW THE ARBITRATION AGREEMENT BELOW CAREFULLY, AS IT REQUIRES YOU TO RESOLVE ALL DISPUTES WITH UBER ON AN INDIVIDUAL BASIS AND, WITH LIMITED EXCEPTIONS, THROUGH FINAL AND BINDING ARBITRATION (AS DESCRIBED IN SECTION 2 BELOW). BY ENTERING INTO THIS AGREEMENT, YOU EXPRESSLY ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND ALL OF THE TERMS OF THIS AGREEMENT AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT DECISION.

Supplemental terms may apply to certain options or offers available through the Services, such as policies for a particular ride or logistics option (e.g., Uber Connect), event, program, activity, or promotion. Such supplemental terms will be disclosed to you in connection with the applicable option or offer. Supplemental terms are in addition to, and shall be deemed a part of, the Terms for the purposes of the applicable option or offer. Supplemental terms shall prevail over these Terms in the event of a conflict with respect to the applicable option or offer.

Uber may make changes to these Terms from time to time. If Uber makes changes, it will provide you with notice of such changes, such as by sending an email, providing a notice through the Services, or updating the date at the top of these Terms. Unless Uber says otherwise in its notice, the amended Terms will be effective immediately and your continued access to and use of the Services after Uber provides such notice will confirm your acceptance of the changes. If you do not agree to the amended Terms, you must stop accessing and using the Services.

Uber's collection and use of personal information in connection with the Services is described in Uber's Privacy Notice located at https://www.uber.com/privacy/notice.

# 2. Arbitration Agreement

By agreeing to the Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration as set forth in this Arbitration Agreement, and not as a class, collective, coordinated, consolidated, mass and/or representative action. This Arbitration Agreement will preclude you from bringing any class, collective, coordinated, consolidated, mass and/or representative action against Uber, and also preclude you from participating in or recovering relief in any current or future class, collective, coordinated, consolidated, mass and/or representative action brought against Uber by

someone else—except as provided below in Section 2(a)(3)(c). Thus, the parties agree that the Arbitrator shall not conduct any form of class, collective, coordinated, consolidated, mass and/or representative arbitration, nor join, coordinate, or consolidate claims of multiple individuals against Uber in a single proceeding—except as provided below in Section 2(a)(3)(c). For the avoidance of doubt, except as provided below in Section 2(a)(3)(c), this Arbitration Agreement precludes you from bringing or participating in any kind of class, collective, coordinated, consolidated, mass and/or representative or other kind of group, multi-plaintiff or joint action against Uber, other than participating in a classwide, collective, coordinated, consolidated, mass and/or representative settlement of claims.

(a) Agreement to Binding Arbitration Between You and Uber.

(1) Covered Disputes: Except as expressly provided below in Section 2(b), you and Uber agree that any dispute, claim, or controversy in any way arising out of or relating to (i) these Terms and prior versions of these Terms, or the existence, breach, termination, enforcement, interpretation, scope, waiver, or validity thereof; (ii) your access to or use of the Services at any time; (iii) incidents or accidents resulting in personal injury to you or anyone else that you allege occurred in connection with your use of the Services (including, but not limited to, your use of the Uber Marketplace Platform or the driver version of the Uber App), regardless whether the dispute, claim, or controversy occurred or accrued before or after the date you agreed to the Terms, and regardless whether you allege that the personal injury was experienced by you or anyone else; and (iv) your relationship with Uber, will be settled by binding individual arbitration between you and Uber, and not in a court of law. This Arbitration Agreement survives after your relationship with Uber ends.

(2) Class Action Waiver: You acknowledge and agree that any and all disputes, claims, or controversies between the parties shall be resolved only in individual arbitration. The parties expressly waive the right to have any dispute, claim, or controversy brought, heard, administered, resolved, or arbitrated as a class, collective, coordinated, consolidated, and/or representative action, and neither an arbitrator nor an arbitration provider shall have any authority to hear, arbitrate, or administer any class, collective, coordinated, consolidated, and/or representative action, or to award relief to anyone but the individual in arbitration. The parties also expressly waive the right to seek, recover, or obtain any non-individual relief. Notwithstanding anything else in this agreement, this Class Action Waiver does not prevent you or Uber from participating in a classwide, collective, and/or representative settlement of claims.

The parties further agree that if for any reason a claim does not proceed in arbitration, this Class Action Waiver shall remain in effect, and a court may not preside over any action joining, coordinating, or consolidating the claims of multiple individuals against Uber in a single proceeding, except that this Class Action Waiver shall not prevent you or Uber from participating in a classwide, collective, and/or representative settlement of claims. If there is a

final judicial determination that any portion of this Class Action Waiver is unenforceable or unlawful for any reason, (i) any class, collective, coordinated, consolidated, and/or representative claims subject to the unenforceable or unlawful portion(s) shall proceed in a court of competent jurisdiction; (ii) the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration; (iii) the unenforceable or unlawful portion(s) shall be severed from this Arbitration Agreement; and (iv) severance of the unenforceable or unlawful portion(s) shall have no impact whatsoever on the enforceability, applicability, or validity of the Arbitration Agreement or the arbitrability of any remaining claims asserted by you or Uber.

# (3) Mass Actions:

a. Mass Action Waiver: You acknowledge and agree that any and all disputes, claims, or controversies between the parties shall be resolved only in individual arbitration. The parties expressly waive the right to have any dispute, claim, or controversy brought, heard, administered, resolved, or arbitrated as a mass action, and neither an arbitrator nor an arbitration provider shall have any authority to hear, arbitrate, or administer any mass action or to award relief to anyone but the individual in arbitration—except as provided below in Section 2(a)(3)(c). The parties also expressly waive the right to seek, recover, or obtain any non-individual relief. The parties agree that the definition of a "Mass Action" includes, but is not limited to, instances in which you or Uber are represented by a law firm or collection of law firms that has filed 50 or more arbitration demands of a substantially similar nature against the other party within 180 days of the arbitration demand filed on your or Uber's behalf, and the law firm or collection of law firms seeks to simultaneously or collectively administer and/or arbitrate all the arbitration demands in the aggregate. Notwithstanding anything else in this agreement, this Mass Action Waiver does not prevent you or Uber from participating in a mass settlement of claims.

b. Dispute Procedure: Notwithstanding any provision to the contrary in the applicable arbitration provider's rules, the arbitrator shall be empowered to determine whether the party bringing any claim has filed a Mass Action in violation of the Mass Action Waiver. Either party shall raise with the arbitrator or arbitration provider such a dispute within 15 days of its arising. If such a dispute arises before an arbitrator has been appointed, the parties agree that (i) a panel of three arbitrators shall be appointed to resolve only disputes concerning whether the party bringing any claim has filed a Mass Action in violation of the Mass Action Waiver. Each party shall select one arbitrator from the arbitration provider's roster to serve as a neutral arbitrator, and these arbitrators shall appoint a third neutral arbitrator. If the parties' arbitrators cannot agree on a third arbitrator, the arbitration provider will select the third arbitrator; (ii) Uber shall pay any administrative fees or costs incidental to the appointment of Arbitrators under this provision, as well as any fees or costs that would not be incurred in a court proceeding, such as payment of the fees of the arbitrators, as well as room rental; (iii) the arbitrators shall issue a written decision with findings of fact and conclusions of law; and

(iv) any further arbitration proceedings or assessment of arbitration-related fees shall be stayed pending the arbitrators' resolution of the parties' dispute. If the arbitrator or panel of arbitrators determines that you have violated the Mass Action Waiver, the parties shall have the opportunity to opt out of arbitration within 30 days of the arbitrator's or panel of arbitrator's decision. You may opt out of arbitration by providing written notice of your intention to opt out to the arbitration provider and to Uber Technologies, Inc., Attn: Legal Department, 1515 3rd Street, San Francisco, CA 94158 via USPS Priority Mail or hand delivery. This written notice must be signed by you, and not any attorney, agent, or other representative of yours. Uber may opt out of arbitration by sending written notice of its intention to opt out to the arbitration provider and to you or your attorney, agent, or representative if you are represented. For the avoidance of doubt, the ability to opt out of arbitration described in this Section 2(a)(3)(b) only applies if the arbitrator or panel of arbitrators determines that you have violated the Mass Action Waiver. If the parties proceed with arbitration, the parties agree that arbitrations will be batched as provided in Section 2(a)(3)(c) below.

c. Batching:

i. To increase efficiency of resolution in the event a Mass Action is filed and neither party exercises its right to opt out of arbitration pursuant to Section 2(a)(3)(b) above, the following procedure shall apply. At the request of either party, an arbitrator shall be selected according to the applicable arbitration provider's rules to act as a special master ("Special Master") to resolve threshold disputes regarding the propriety of some or all the arbitration demands submitted in the Mass Action ("Mass Arbitration Demands"). These threshold disputes may include, but are not limited to:

1. Any dispute regarding filing fees owed with respect to the Mass Arbitration Demands, including whether claimants have submitted valid fee waivers;

2. Any dispute regarding whether the applicable arbitration provider has complied with the Arbitration Agreement with respect to processing and administering the Mass Arbitration Demands;

3. Any dispute regarding whether the Mass Arbitration Demands meet the requirements set forth in Section 2(d) below;

4. Whether claimants are barred from proceeding with their claims based on a prior settlement agreement, violation of these Terms, or expiration of the statute of limitations;

5. Any dispute relating to representation of the same claimant by multiple law firms;

6. Any dispute regarding whether the Mass Arbitration Demands were filed with the correct arbitration provider;

7. Any dispute regarding discovery common to all claims; and

8. Any disputes regarding legal or factual issues common to all claims.

Any such request shall be made within 15 days following the expiration of the opt-out period described in Section 2(a)(3)(b), and may be made by providing written notice to the arbitration provider. Upon the request of either party to appoint a Special Master to resolve the foregoing issues, the applicable arbitration provider shall refrain from further processing any of the Mass Arbitration Demands to which a dispute has been raised. No further payment for filing fees, administrative costs, or arbitrator fees shall be deemed due with respect to any of the Mass Arbitration Demands as to which a dispute has been raised until after the dispute(s) has/have been resolved by the Special Master. Uber shall be responsible for the applicable arbitration provider's and Special Master's fees and costs related to the proceedings before the Special Master.

A Special Master appointed pursuant to this procedure shall have no authority to consolidate cases.

ii. After proceedings before the Special Master have concluded, to the extent any of the Mass Arbitration Demands are permitted to proceed, the parties shall group the Mass Arbitration Demands into batches of no more than 100 demands per batch by state of residence, and then alphabetically by last name (plus, to the extent there are less than 100 arbitration demands left over after the batching described above, a final batch consisting of the remaining demands), and shall inform the arbitration provider of the batches and their compositions within 14 days of the conclusion of proceedings before the Special Master. The arbitration provider shall treat each batch of claims as one case, with each case having one demand for arbitration, one appointed arbitrator, and one set of administrative documents and administrative and filing fees per batch. The parties shall randomly assign sequential numbers to each batch, and only one batch shall proceed to arbitration at a time in the order of the random sequential numbers. A separate arbitrator will be appointed to, and administrative and filing fees assessed for, each batch as the batch proceeds to arbitration. You agree to cooperate in good faith with Uber and the arbitration provider to implement such a batch approach to resolution and fees. Nothing in this provision shall be construed as limiting the right to object that the filing or presentation of multiple arbitration demands by or with the assistance of the same law firm or organization violates any term of this Agreement.

iii. If any Mass Arbitration Demands were originally processed as individual arbitration demands before this batching procedure was commenced, further proceedings, including the assessment of further arbitration filing or administration fees to either party shall be governed by the procedures set forth in this Section 2(a)(3).

(4) Delegation Clause: Only an arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement,

including without limitation any claim that all or any part of this Arbitration Agreement is void or voidable. An arbitrator shall also have exclusive authority to resolve all threshold arbitrability issues, including issues relating to whether the Terms are applicable, unconscionable, or illusory and any defense to arbitration, including without limitation waiver, delay, laches, or estoppel. However, only a court of competent jurisdiction, and not an arbitrator, shall have the exclusive authority to resolve any and all disputes arising out of or relating to the Class Action Waiver and Mass Action Waiver, including, but not limited to, any claim that all or part of the Class Action Waiver and/or Mass Action Waiver is unenforceable, unconscionable, illegal, void, or voidable—except that, as stated and pursuant to the procedures provided in Section 2(a)(3) (b), an arbitrator or panel of arbitrators shall have authority to determine whether the party bringing any claim has violated the Mass Action Waiver.

(5) Application to Third Parties: This Arbitration Agreement shall be binding upon, and shall include any claims brought by or against any third parties, including but not limited to your spouses, heirs, third-party beneficiaries and assigns, where their underlying claims arise out of or relate to your use of the Services. To the extent that any third-party beneficiary to this agreement brings claims against the Parties, those claims shall also be subject to this Arbitration Agreement.

(b) Exceptions to Arbitration.

Notwithstanding the foregoing, this Arbitration Agreement shall not require arbitration of the following claims: (i) individual claims brought in small claims court so long as the matter remains in such court and advances only on an individual basis; (ii) individual claims of sexual assault or sexual harassment occurring in connection with your use of the Services; and/or (iii) injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation, or violation of a party's copyrights, trademarks, trade secrets, patents, or other intellectual property rights.

Such claims may be brought and litigated in a court of competent jurisdiction by you on an individual basis only. On an individual basis means that you cannot bring such claims as a class, collective, coordinated, consolidated, mass and/or representative action against Uber. For the avoidance of doubt, this precludes you from bringing claims as or participating in any kind of any class, collective, coordinated, consolidated, mass and/or representative or other kind of group, multi-plaintiff or joint action against Uber and no action brought by you may be consolidated or joined in any fashion with any other proceeding. Where your claims are brought and litigated to completion on such an individual basis in a court of competent jurisdiction, Uber agrees to honor your election.

The parties' agreement not to require arbitration in these limited instances does not waive the enforceability of this Arbitration Agreement as to any other provision (including, but not limited to, the waivers provided for in Section 2(a), which will continue to apply in court as well

as in arbitration), or the enforceability of this Arbitration Agreement as to any other controversy, claim, or dispute.

(c) Rules and Governing Law.

For disputes arising in California, the arbitration will be administered by ADR Services, Inc. ("ADR") in accordance with ADR's Arbitration Rules (the "ADR Rules") in effect at the time that the claim is brought, unless the parties agree otherwise in writing. The ADR Rules are available at www.adrservices.com or by searching for "ADR Arbitration Rules" using a service such as www.google.com or www.bing.com. The arbitration shall be heard by one arbitrator (the "Arbitrator") selected in accordance with the ADR Rules.

For disputes arising outside of California (or for disputes arising in California only if ADR cannot or will not administer the arbitration), the parties shall be required to meet and confer to select a neutral arbitration provider. Such an arbitration provider shall have operations in the state in which the dispute arises. If the parties are unable to mutually agree upon an arbitration provider, then either party may invoke 9 U.SC. § 5 to request that a court of competent jurisdiction appoint an arbitration provider with operations in the state in which the dispute arises. Any arbitration provider appointed by a court under 9 U.S.C. § 5 shall conduct arbitration solely on an individualized basis as set forth in this Section 2. Once the parties mutually agree upon a neutral arbitration provider, or an arbitrator provider is appointed under 9 U.S.C. § 5, the ensuing arbitration shall commence pursuant to the rules of the designated arbitration provider, except as designated herein. Once an arbitration provider is agreed upon or appointed, an Arbitrator shall be appointed. The Arbitrator will be either (1) a retired judge or (2) an attorney licensed to practice law in the state where the arbitration is conducted with experience in the law underlying the dispute. The Arbitrator will be selected by the parties from the applicable arbitration provider's roster of arbitrators. If the parties are unable to agree upon an Arbitrator after a good faith meet and confer effort, then the applicable arbitration provider will appoint the Arbitrator in accordance with its rules.

Notwithstanding any choice of law or other provision in these Terms, the parties agree and acknowledge that this Arbitration Agreement evidences a transaction involving interstate commerce and that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), will govern its interpretation and enforcement and proceedings pursuant thereto. It is the intent of the parties to be bound by the provisions of the FAA for all purposes, including, but not limited to, interpretation, implementation, enforcement, and administration of this Arbitration Agreement, and that the FAA and the applicable arbitration provider's rules shall preempt all state laws to the fullest extent permitted by law. If the FAA and applicable arbitration provider's rules are found to not apply to any issue regarding the interpretation or enforcement of this Arbitration Agreement, then that issue shall be resolved under the laws of the state where you reside when you accept these Terms.

Any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to the Terms, shall be governed by and construed in accordance with the laws of the state in which the incident or accident occurred.

(d) Process.

Pre-Arbitration Dispute Resolution and Notification. The parties agree that good-faith informal efforts to resolve disputes often can result in a prompt, low-cost, and mutually beneficial outcome. The parties therefore agree that, before either party demands arbitration against the other, we will personally meet and confer, via telephone or videoconference, in a good-faith effort to resolve informally any claim covered by this Arbitration Agreement. Multiple individuals initiating claims cannot participate in the same informal telephonic dispute resolution conference. If you are represented by counsel, your counsel may participate in the conference, but you shall also fully participate in the conference. The party initiating the claim must give notice to the other party in writing of their intent to initiate an informal dispute resolution conference, which shall occur within 60 days after the other party receives such notice, unless an extension is mutually agreed upon by the parties. To notify Uber that you intend to initiate an informal dispute resolution conference, write to Uber Technologies, Inc., Attn: Legal Department, 1515 3rd Street, San Francisco, CA 94158, providing your name, the telephone number(s) associated with your Uber account (if any), the email address(es) associated with your Uber account, and a description of your claim. Engaging in an informal dispute resolution conference is a condition precedent that must be fulfilled before commencing arbitration, and the Arbitrator shall dismiss any arbitration demand filed before completion of an informal dispute resolution conference. The statute of limitations and any filing fee deadlines shall be tolled while the parties engage in the informal dispute resolution process required by this paragraph.

Initiating Arbitration. In order to initiate arbitration following the conclusion of the informal dispute resolution process required by this Section, a party must provide the other party with a written demand for arbitration and file the demand with the applicable arbitration provider, as determined by Section 2(c). A party initiating an arbitration against Uber must send the written demand for arbitration to Uber Technologies, Inc., LLC, Attn: Legal Department, 1515 3rd Street, San Francisco, CA 94158, or serve the Demand on Uber's registered agent for service of process, c/o Uber Technologies, Inc. (the name and current contact information for the registered agent in each state are available online here). Additionally, a party initiating arbitration against Uber must send an electronic version of the demand for arbitration to the Arbitration Provider, and must send an electronic version of the as-filed demand to filed-arbitration-demands@uber.com.

By signing the demand for arbitration, counsel certifies to the best of counsel's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that (i) the demand for arbitration is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of dispute resolution; (ii) the claims and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; and (iii) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Arbitrator shall be authorized to afford any relief or impose any sanctions available under Federal Rule of Civil Procedure 11 or any applicable state law for either party's violation of this requirement.

(e) Location.

Unless you and Uber otherwise agree, the arbitration will be conducted in the county where you reside. Your right to a hearing will be determined by the applicable arbitration provider's rules. Subject to the applicable arbitration provider's rules, the Arbitrator will have the discretion to direct a reasonable exchange of information by the parties, consistent with the expedited nature of the arbitration.

(f) Offers of Judgment.

At least 10 days before the date set for the arbitration hearing, any party may serve an offer in writing upon the other party to allow judgment on specified terms. If the offer is accepted, the offer with proof of acceptance shall be submitted to the arbitrator, who shall enter judgment accordingly. If the offer is not accepted prior to the arbitration hearing or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the arbitration. If an offer made by one party is not accepted by the other party, and the other party fails to obtain a more favorable award, the other party shall not recover their post-offer costs and shall pay the offering party's costs from the time of the offer.

(g) Arbitrator's Decision.

The Arbitrator will render an award within the time frame specified in the applicable arbitration provider's rules. Judgment on the arbitration award may be entered in any court of competent jurisdiction. The Arbitrator may award declaratory or injunctive relief only in favor of the claimant and only to the extent necessary to provide relief warranted by the claimant's individual claim. An Arbitrator's decision shall be final and binding on all parties.

The Arbitrator is not bound by decisions reached in separate arbitrations, and the Arbitrator's decision shall be binding only upon the parties to the arbitration that are the subject of the decision.

The Arbitrator shall award reasonable costs incurred in the arbitration to the prevailing party in accordance with the law(s) of the state in which arbitration is held.

(h) Fees.

With the exception of the provisions governing payment of arbitration costs set forth above, your responsibility to pay any filing, administrative, and arbitrator fees will be solely as set forth in the applicable arbitration provider's rules and shall be up to the amount you would be required to pay if you filed a claim in court.

If you have a gross monthly income of less than 300% of the federal poverty guidelines, you are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. If you believe that you meet the requirements to obtain a fee waiver, and your demand for arbitration arises outside of California, then you may request a fee waiver only by submitting to the arbitration provider AO 240, Application to Proceed in District Court Without Prepaying Fees or Costs (found here), or a declaration under oath containing all the information required by AO 240; if your demand for arbitration arises in California, then you must submit a declaration under oath providing your monthly income and the number of persons in your household.

Any and all disputes regarding a party's obligation to pay any arbitration fees or costs that arise after an arbitrator is appointed shall be determined solely by the arbitrator. If such a dispute arises before an arbitrator has been appointed, and if no Special Master has been requested by either party pursuant to section 2(a)(3)(c)(i) of these Terms, the parties agree that (i) the due date for any disputed fees shall be stayed pending resolution of the parties' dispute, (ii) a panel of three arbitrators shall be appointed to resolve the parties' dispute concerning a party's obligation to pay fees or costs of arbitration, (iii) the panel of arbitrators shall be appointed by each party selecting one arbitrator from the arbitration provider's roster to serve as neutral arbitrators, and these arbitrators shall appoint a third neutral arbitrator. If the parties' arbitrators cannot agree on a third arbitrator, the arbitration administrator will select the third arbitrator, (iv) Uber shall pay any administrative fees or costs incidental to the appointment of a panel of arbitrators under this provision, as well as any fees or costs that would not be incurred in a court proceeding, such as payment of the fees of the arbitrator(s), as well as room rental, and (v) the arbitrator(s) shall issue a written decision with findings of fact and conclusions of law. If two or more fee disputes between a claimant and Uber arise at or around the same time, the disputes may be consolidated for resolution by a single arbitrator or panel of arbitrators either at the agreement of the parties or the election of the party common to all such disputes.

(i) Severability and Survival.

If any portion of this Arbitration Agreement is found to be unenforceable or unlawful for any reason, (i) the unenforceable or unlawful provision shall be severed from these Terms; (ii) severance of the unenforceable or unlawful provision shall have no impact whatsoever on the

remainder of the Arbitration Agreement or the parties' ability to compel arbitration of any remaining claims on an individual basis pursuant to the Arbitration Agreement; and (iii) to the extent that any claims must therefore proceed on a class, collective, consolidated, or representative basis, such claims must be litigated in a civil court of competent jurisdiction and not in arbitration, and the parties agree that litigation of those claims shall be stayed pending the outcome of any individual claims in arbitration.

3. The Marketplace Platform & Services

Uber operates a personalized multipurpose digital marketplace platform that is accessed in a number of forms, including mobile and/or web-based applications ("Applications"). Among other things, the Uber Marketplace Platform enables you to discover and receive: (i) services rendered by Uber that facilitate your requests to independent third-party providers, including drivers and restaurants ("Third-Party Providers"), for the purchase of services or goods, such as transportation, logistics and/or delivery services from those Third-Party Providers; (ii) related personalized content, including features, recommendations and advertisements for products or services tailored to your needs and interests; and (iii) any supporting services, including payment processing and customer support. The Uber Marketplace Platform, personalized content and supporting services described in this Section are collectively referred to as "the Services." Unless otherwise agreed by Uber in a separate written agreement with you, the Services are made available solely for your personal, noncommercial use.

YOU ACKNOWLEDGE THAT YOUR ABILITY TO REQUEST, AND IF APPLICABLE, OBTAIN TRANSPORTATION, LOGISTICS AND/OR DELIVERY SERVICES FROM THIRD-PARTY PROVIDERS IN CONNECTION WITH THE USE OF THE UBER MARKETPLACE PLATFORM AND SERVICES DOES NOT ESTABLISH UBER AS A PROVIDER OF TRANSPORTATION, LOGISTICS OR DELIVERY SERVICES OR AS A TRANSPORTATION OR PROPERTY CARRIER.

UBER IS NOT A COMMON OR MOTOR CARRIER, DOES NOT TRANSPORT YOU, AND USE OF THE UBER MARKETPLACE PLATFORM IS ONLY OPEN TO REGISTERED USERS OF THE UBER MARKETPLACE PLATFORM AND NOT TO THE GENERAL PUBLIC.

YOU ACKNOWLEDGE THAT INDEPENDENT THIRD-PARTY PROVIDERS, INCLUDING DRIVERS, ARE NOT ACTUAL AGENTS, APPARENT AGENTS, OSTENSIBLE AGENTS, OR EMPLOYEES OF UBER IN ANY WAY.

YOU ALSO ACKNOWLEDGE THAT ANY SAFETY RELATED EFFORT, FEATURE, PROCESS, POLICY, STANDARD OR OTHER EFFORT UNDERTAKEN BY UBER IN THE INTEREST OF PUBLIC SAFETY (WHETHER REQUIRED BY APPLICABLE REGULATIONS OR NOT) IS NOT AN INDICIA OF AN EMPLOYMENT, ACTUAL AGENCY, APPARENT AGENCY, OR OSTENSIBLE AGENCY RELATIONSHIP WITH AN INDEPENDENT THIRD-PARTY DRIVER.

License.

Subject to your compliance with these Terms, Uber grants you a limited, non-exclusive, non-sublicensable, revocable, non-transferable license to: (i) access and use the Applications on your personal device solely in connection with your use of the Services; and (ii) access and use any content, information and related materials that may be made available through the Services, in each case solely for your personal, noncommercial use. Any rights not expressly granted herein are reserved by Uber and Uber's licensors.

Restrictions.

You may not: (i) remove any copyright, trademark or other proprietary notices from any portion of the Services; (ii) reproduce, modify, prepare derivative works based upon, distribute, license, lease, sell, resell, transfer, publicly display, publicly perform, transmit, stream, broadcast or otherwise exploit the Services except as expressly permitted by Uber; (iii) decompile, reverse engineer or disassemble the Services except as may be permitted by applicable law; (iv) link to, mirror or frame any portion of the Services; (v) cause or launch any programs or scripts for the purpose of unduly burdening or hindering the operation and/or functionality of any aspect of the Services; or (vi) attempt to gain unauthorized access to or impair any aspect of the Services or its related systems or networks.

Third-Party Services and Content.

The Services may be made available or accessed in connection with third-party services and content (including advertising) that Uber does not control. Once you click on a link to third-party services or content, you will be subject to the terms and conditions and privacy policy of that website, destination, or third-party service provider. Uber will not warn you that you have left the Services or that you are subject to the terms and conditions (including privacy policies) of another website, destination, or third-party service provider. You use all links in third-party websites and advertisements at your own risk as these are not part of the Services and are not controlled by Uber. You acknowledge that different terms of use and privacy policies may apply to your use of such third-party services and content. Uber does not endorse such third-party services and content and in no event shall Uber be responsible or liable for any products or services of such third-party providers.

App Stores.

You acknowledge and agree that the availability of the Applications may be dependent on the third-party from which you received the Application's license, e.g., the Apple iPhone or Android app stores ("App Store"). You acknowledge and agree that this Agreement is between you and Uber and not with the App Store and that Uber is responsible for the provision of Services as described in this Agreement. However, if you downloaded the Application from the Apple App Store, Apple and its subsidiaries are third-party beneficiaries of this Agreement. Upon your acceptance of this Agreement, Apple shall have the right (and will be deemed to have accepted the right) to enforce this Agreement against you as a third-party beneficiary thereof.

This Agreement incorporates by reference Apple's Licensed Application End User License Agreement, for purposes of which, you are "the end-user." In the event of a conflict in the terms of the Licensed Application End User License Agreement and this Agreement, the terms of this Agreement will control.

Ownership.

The Services and all rights therein are and shall remain Uber's property or the property of Uber's licensors. Neither these Terms nor your use of the Services convey or grant to you any rights in or related to the Services except for the limited license granted above.

You agree that you will not use Uber's trademarks, service marks, or trade dress or any similar names, marks, or trade dress ("Uber's Marks"), aside from use incidental to your use of the Services, without express, written permission from Uber. This prohibition on using Uber's Marks includes, but is not limited to, use in domain names, websites, and social media accounts.

# 4. Access and Use of the Services

User Accounts.

In order to use most aspects of the Services, you must register for and maintain an active personal user Services account ("Account"). You must be at least 18 years of age, or the age of legal majority in your jurisdiction (if different than 18), to obtain an Account, unless a specific Service permits otherwise. You cannot register for or maintain an Account if you have previously been banned from accessing or using the Services. Account registration requires you to submit to Uber certain personal information, such as your name, address, mobile phone number and age, as well as at least one valid payment method supported by Uber. For more information regarding Uber's use of your personal information, please see our Privacy Notice currently available at https://privacy.uber.com/policy/. You agree to maintain accurate, complete, and up-to-date information in your Account, including a valid phone number, address and payment method. Your failure to comply with these Terms (including policies and supplemental terms) including, without limitation, your failure to maintain accurate, complete, and up-to-date Account information, including having an invalid or expired payment method on file, may result in your inability to access or use the Services. You are responsible for all activity that occurs under your Account, and you agree to maintain the security and secrecy of your Account username and password at all times. Unless otherwise permitted by Uber in writing, you may only possess one Account.

User Requirements and Conduct.

You agree to abide by the Uber Community Guidelines, available here. Failure to comply with the Community Guidelines or any violation of these terms may result in the permanent loss of

access to the Services.

The Services are not available for use by persons under the age of 18. You may not authorize third-parties to use your Account, and you may not allow persons under the age of 18 to request or receive transportation, delivery or logistics services from Third-Party Providers unless they are accompanied by you. You may not assign or otherwise transfer your Account to any other person or entity. You agree to comply with all applicable laws when accessing or using the Services, and you may only access or use the Services for lawful purposes (e.g., no request for the purpose or intent of transport of unlawful or hazardous materials). You may not in your access or use of the Services cause nuisance, annoyance, inconvenience, or property damage, whether to the Third-Party Provider or any other party. If you request a ride option with a car seat, you acknowledge and agree that neither Uber nor the Third-Party Provider is responsible for the safety of a child restraint/car seat that may be available in the Third-Party Provider's Vehicle. You acknowledge and agree that it is your obligation to ensure that the car seat is installed correctly and that the child is properly secured in the seat. If you request a ride option where a driver agrees to provide you with assistance outside of the vehicle (e.g., Uber Assist), you acknowledge and agree that neither Uber nor the Third-Party Provider is responsible for any injury or incident that may arise out of the assistance provided by the Third-Party Provider. In certain instances, you may be asked to provide proof of age, identity or other method of identity verification to access or use the Services, and you agree that you may be denied access to or use of the Services if you refuse to provide proof of age, identity or other method of identity verification.

Subject to the discretion of a Third-Party Provider, you may be allowed to bring a small animal, such as a dog or cat, on a ride requested through the Uber Marketplace Platform. For such trips, you are responsible for properly securing the animal with a leash, harness, crate / carrier, or through other means. You are also responsible for ensuring that the animal does not cause damage or a mess in the Third-Party Provider's vehicle. You may be subject to a Charge for Repair or Cleaning under Section 5 for any damage or mess caused by an animal that is transported during a ride requested under your Account. Please note, in accordance with Uber's policies on Service Animals and assistive devices, Service Animals are generally permitted to accompany riders without extra charge, regardless of whether it is a Pet Friendly Trip.

For the purpose of assisting us with our compliance and insurance obligations, you agree to notify us within 24 hours and provide us with all reasonable information relating to any incident or accident that occurs during your use of the Services and you agree to cooperate with any investigation and attempted resolution of such incident.

Text Messaging and Telephone Calls.

You agree that Uber Technologies, Inc., and its subsidiaries, representatives, affiliates, officers and directors, may contact you by telephone or text messages (including by an automatic telephone dialing system and/or with an artificial or pre-recorded voice) at any of the phone numbers provided by you or on your behalf in connection with an Uber account, including for marketing purposes. You understand that you are not required to provide this consent as a condition of purchasing any property, goods or services. You also understand that you may opt out of receiving text messages from Uber at any time, either by replying "STOP", texting the word "STOP" to 89203 using the mobile device that is receiving the messages, or by contacting help.uber.com. If you do not choose to opt out, Uber may contact you as outlined in its User Privacy Notice, located at https://www.uber.com/privacy/notice.

You agree that Uber may contact you using any of the phone numbers you provided in connection with an Uber account (including via text or voice-recorded message) or your email address in the case of suspected fraud or unlawful activity.

User Provided Content.

Uber may, in Uber's sole discretion, permit you from time to time to submit, upload, publish or otherwise make available to Uber through the Services textual, audio, and/or visual content and information, and submission of entries for competitions and promotions ("User Content"). Any User Content provided by you remains your property. However, by providing User Content to Uber, you grant Uber a worldwide, perpetual, irrevocable, transferable, royalty-free license, with the right to sublicense, to use, copy, modify, create derivative works of, distribute, publicly display, publicly perform, and otherwise exploit in any manner such User Content in all formats and distribution channels now known or hereafter devised (including in connection with the Services and Uber's business and on third-party sites and services), without further notice to or consent from you, and without the requirement of payment to you or any other person or entity.

You represent and warrant that: (i) you either are the sole and exclusive owner of all User Content or you have all rights, licenses, consents and releases necessary to grant Uber the license to the User Content as set forth above; and (ii) neither the User Content, nor your submission, uploading, publishing or otherwise making available of such User Content, nor Uber's use of the User Content as permitted herein will infringe, misappropriate or violate a third-party's intellectual property or proprietary rights, or rights of publicity or privacy, or result in the violation of any applicable law or regulation.

You agree to not provide User Content that is defamatory, libelous, hateful, violent, obscene, pornographic, unlawful, or otherwise offensive, as determined by Uber in its sole discretion, whether or not such material may be protected by law. Uber may, but shall not be obligated to, review, monitor, and remove User Content, at Uber's sole discretion and at any time and for any reason, without notice to you.

User Feedback.

As Uber respects your rights to your ideas, you agree that you will not submit any confidential ideas, information, or suggestions in any form to Uber or any of its affiliates. For any ideas, information, or suggestions you do submit, regardless of what your communication regarding your submissions says, you understand that your submissions are voluntary and the following terms shall apply to your submissions: (i) your submissions and their contents will automatically become the property of Uber, without any compensation to you; (ii) Uber has no obligation to review your submissions; (iii) Uber may implement and distribute any portion of your submissions and their contents for any purpose in any way, without any compensation to you; and (iv) Uber has no obligation to keep your submissions confidential.

Network Access and Devices.

You are responsible for obtaining the data network access necessary to use the Services. Your mobile network's data and messaging rates and fees may apply if you access or use the Services from your device. You are responsible for acquiring and updating compatible hardware or devices necessary to access and use the Services and Applications and any updates thereto. Uber does not guarantee that the Services, or any portion thereof, will function on any particular hardware or devices. In addition, the Services may be subject to malfunctions and delays inherent in the use of the Internet and electronic communications.

# 5. Payment

You understand that use of the Services may result in charges to you for the services or goods you receive from Uber and/or from Third-Party Providers ("Charges"). You acknowledge that prices displayed to you when purchasing goods through the Services may be inclusive of retail prices charged by the Third-Party Provider and service fees paid to Uber. Uber will enable your payment of the applicable Charges for services or goods obtained through your use of the Services. Charges will include applicable taxes where required by law. Charges may include other applicable fees such as delivery fees, service fees, product return fees, cancellation fees, government-mandated fees (such as bag fees), estimated or actual tolls, and/or surcharges. Further, you acknowledge and agree that Charges applicable in certain geographical areas may increase substantially during times of high demand or due to other marketplace factors.

All Charges and payments will be enabled by Uber using the preferred payment method designated in your Account, after which you will receive a receipt. If your primary Account payment method is determined to be expired, invalid or otherwise not able to be charged, you agree that Uber may use a secondary payment method in your Account, if available. Charges paid by you are final and non-refundable, unless otherwise determined by Uber.

As between you and Uber, Uber reserves the right to establish or adjust Charges for any or all services or goods obtained through the use of the Services at any time. Uber will use

reasonable efforts to inform you of Charges that may apply, provided that you will be responsible for Charges incurred under your Account regardless of your awareness of such Charges or the amounts thereof. Certain users may from time to time receive promotional offers and discounts that may result in different amounts charged for the same or similar services or goods obtained through the use of the Services, and you agree that such promotional offers and discounts, unless also made available to you, shall have no bearing on your use of the Services or the Charges applied to you. Promotional offers and discounts are subject to change or withdrawal at any time and without notice. You may elect to cancel your request for Services at any time prior to the commencement of such Services, in which case you may be charged a cancellation fee on a Third-Party Provider's behalf.

With respect to Third-Party Providers, Charges you incur will be owed directly to Third-Party Providers, and Uber will collect payment of those charges from you, on the Third-Party Provider's behalf as their limited payment collection agent, and payment of the Charges shall be considered the same as payment made directly by you to the Third-Party Provider. In such cases, you retain the right to request lower Charges from a Third-Party Provider for services or goods received by you from such Third-Party Provider at the time you receive such services or goods, and Charges you incur will be owed to the Third-Party Provider. Uber will consider in good faith any request from a Third-Party Provider to modify the Charges for a particular service or good. This payment structure is intended to fully compensate a Third-Party Provider, if applicable, for the services or goods obtained in connection with your use of the Services. Except for amounts provided by you through the Application as part of the "tip" feature, Uber does not designate any portion of your payment as a tip or gratuity to a Third-Party Provider. You understand and agree that, while you are free to provide additional payment as a gratuity to any Third-Party Provider who provides you with services or goods obtained through the Service, you are under no obligation to do so. There also may be certain Charges you incur that will be owed and paid directly to Uber or its affiliates. For the avoidance of doubt, Uber does not charge a fee for a user to access the Uber Marketplace Platform, but may charge users a fee or any other Charge for accessing Services made available through the Marketplace Platform. Even if not indicated on the Uber Marketplace Platform, you understand that the prices for product or menu items displayed through the Services may differ from the prices offered or published by Third-Party Providers for the same product or menu items and/or from prices available at other third-party websites/mobile applications. Prices for product or menu items displayed through the Services may not be the lowest prices at which the product or menu items are sold. You also understand that product or menu item prices displayed through the Services or fees charged by and paid to Uber may vary based on whether you choose to pick up your order or have it delivered.

If you think a correction should be made to any Charge you incurred, you must let Uber know in writing within 30 days after the Charge took place or Uber will have no further responsibility and you waive your right to later dispute the amounts charged.

Damage, Cleaning, Lost and Found, and Violation of Terms.

Uber may charge you a fee on behalf of Third-Party Providers if, during your use of the Services, you have caused damage to a vehicle or property that requires repair or cleaning ("Repair" or "Cleaning"). The amount of such fee shall be determined, in Uber's sole discretion, based on the type of damage and the severity. Uber reserves the right to verify or otherwise require documentation of damages prior to processing a fee. In the event that a Repair or Cleaning request is verified by Uber in Uber's reasonable discretion, Uber reserves the right to facilitate payment for the reasonable cost of such Repair or Cleaning using your payment method designated in your Account. Such amounts, as well as those pertaining to lost and found goods, will be transferred by Uber to a Third-Party Provider, if applicable, and are non-refundable.

Additionally, if you fail to comply with these Terms, you may be responsible for Charges, including without limitation, for transactions that could not be completed properly, arising out of or in connection with your failure to comply with these Terms.

# 6. Disclaimers; Limitation of Liability; Indemnity.

Disclaimer.

THE SERVICES ARE PROVIDED "AS IS" AND "AS AVAILABLE." UBER DISCLAIMS ALL REPRESENTATIONS AND WARRANTIES, EXPRESS, IMPLIED, OR STATUTORY, NOT EXPRESSLY SET OUT IN THESE TERMS, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. IN ADDITION, UBER MAKES NO REPRESENTATION, WARRANTY, OR GUARANTEE REGARDING THE RELIABILITY, TIMELINESS, QUALITY, SUITABILITY, OR AVAILABILITY OF THE SERVICES OR ANY SERVICES OR GOODS REQUESTED THROUGH THE USE OF THE SERVICES, OR THAT THE SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE.

UBER DOES NOT GUARANTEE THE QUALITY, SUITABILITY, SAFETY OR ABILITY OF THIRD-PARTY PROVIDERS. YOU AGREE THAT THE ENTIRE RISK ARISING OUT OF YOUR USE OF THE SERVICES, AND ANY SERVICE OR GOOD REQUESTED OR OBTAINED FROM THIRD-PARTY PROVIDERS IN CONNECTION THEREWITH, REMAINS SOLELY WITH YOU, TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW.

UBER DOES NOT CONTROL, MANAGE OR DIRECT ANY THIRD-PARTY PROVIDERS INCLUDING DRIVERS. THIRD-PARTY PROVIDERS ARE NOT ACTUAL AGENTS, APPARENT AGENTS, OSTENSIBLE AGENTS, OR EMPLOYEES OF UBER.

UBER DOES NOT CONTROL, ENDORSE OR TAKE RESPONSIBILITY FOR ANY USER CONTENT OR THIRD-PARTY CONTENT AVAILABLE ON OR LINKED TO BY THE SERVICES. UBER CANNOT

AND DOES NOT REPRESENT OR WARRANT THAT THE SERVICES OR SERVERS ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS.

Limitation of Liability.

UBER SHALL NOT BE LIABLE FOR INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, PUNITIVE, OR CONSEQUENTIAL DAMAGES, INCLUDING LOST PROFITS, LOST DATA, PERSONAL INJURY, OR PROPERTY DAMAGE RELATED TO, IN CONNECTION WITH, OR OTHERWISE RESULTING FROM ANY USE OF THE SERVICES, REGARDLESS OF THE NEGLIGENCE (EITHER ACTIVE, AFFIRMATIVE, SOLE, OR CONCURRENT) OF UBER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

UBER SHALL NOT BE LIABLE FOR ANY DAMAGES, LIABILITY OR LOSSES ARISING OUT OF: (i) YOUR USE OF OR RELIANCE ON THE SERVICES OR YOUR INABILITY TO ACCESS OR USE THE SERVICES; OR (ii) ANY TRANSACTION OR RELATIONSHIP BETWEEN YOU AND ANY THIRD-PARTY PROVIDER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. UBER SHALL NOT BE LIABLE FOR DELAY OR FAILURE IN PERFORMANCE RESULTING FROM CAUSES BEYOND UBER'S REASONABLE CONTROL. YOU ACKNOWLEDGE THAT THIRD-PARTY PROVIDERS PROVIDING TRANSPORTATION SERVICES REQUESTED THROUGH SOME UBER SERVICES MAY OFFER RIDESHARING OR PEER-TO-PEER TRANSPORTATION SERVICES AND MAY NOT BE PROFESSIONALLY LICENSED OR PERMITTED. YOU ACKNOWLEDGE THAT THIRD-PARTY PROVIDERS ARE NOT OSTENSIBLE AGENTS, APPARENT AGENTS, ACTUAL AGENTS, OR EMPLOYEES OF UBER.

THE SERVICES MAY BE USED BY YOU TO REQUEST AND SCHEDULE TRANSPORTATION, GOODS, OR LOGISTICS SERVICES WITH THIRD-PARTY PROVIDERS, BUT YOU AGREE THAT UBER HAS NO RESPONSIBILITY OR LIABILITY TO YOU RELATED TO ANY TRANSPORTATION, GOODS OR LOGISTICS SERVICES PROVIDED TO OR NOT PROVIDED TO YOU BY THIRD-PARTY PROVIDERS OTHER THAN AS EXPRESSLY SET FORTH IN THESE TERMS.

UBER SHALL NOT BE LIABLE FOR ANY DAMAGES, LIABILITY OR LOSSES ARISING OUT OF LACK OF OR IMPROPER INSTALLATION OR USE OF CHILD RESTRAINT SYSTEMS FOR GUESTS ON RIDES REQUESTED THROUGH THE SERVICES FOR WHOM A CHILD RESTRAINT SYSTEM IS LEGALLY REQUIRED.

THE LIMITATIONS AND DISCLAIMERS IN THIS SECTION DO NOT PURPORT TO LIMIT LIABILITY OR ALTER YOUR RIGHTS AS A CONSUMER THAT CANNOT BE EXCLUDED UNDER APPLICABLE LAW. BECAUSE SOME STATES OR JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF OR THE LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, IN SUCH STATES OR JURISDICTIONS, UBER'S LIABILITY SHALL BE LIMITED TO THE EXTENT PERMITTED BY LAW. THIS PROVISION SHALL HAVE NO EFFECT ON UBER'S CHOICE OF LAW PROVISION SET FORTH BELOW.

Indemnity.

You agree to indemnify and hold Uber and its affiliates and their officers, directors, employees, and agents harmless from and against any and all actions, claims, demands, losses, liabilities, costs, damages, and expenses (including attorneys' fees), arising out of or in connection with: (i) your use of the Services or services or goods obtained through your use of the Services; (ii) your breach or violation of any of these Terms; (iii) Uber's use of your User Content; or (iv) your violation of the rights of any third party, including Third-Party Providers.

# 7. Other Provisions

Choice of Law.

These Terms shall be governed by and construed in accordance with the laws of the state in which your dispute arises, without regard to the choice or conflict of law principles of any jurisdiction, except as may be otherwise provided in the Arbitration Agreement in Section 2 above or in supplemental terms applicable to your region. This Choice of Law provision applies only to the interpretation of these Terms, and these provisions shall not be interpreted as generally extending any state's law to you if your dispute did not arise in that state.

Any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to the Terms, shall be governed by and construed in accordance with the laws of the state in which the incident or accident occurred.

Choice of Forum.

Any dispute, claim or controversy arising out of or relating to these Terms or the existence, breach, termination, enforcement, interpretation or validity thereof, shall be brought exclusively in the state and federal courts of the state in which the dispute, claim or controversy arose, notwithstanding that other courts may have jurisdiction over the parties and subject matter, except as may be otherwise provided by the Arbitration Agreement above or in supplemental terms applicable to your region.

Notwithstanding the foregoing, any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to the Terms, shall be brought exclusively in the state or federal courts in the State in which the incident or accident occurred, notwithstanding that other courts may have jurisdiction over the parties and subject matter, and except as may be otherwise provided in the Arbitration Agreement above or in supplemental terms applicable to your region, to the extent permitted by law.

The foregoing Choice of Law and Choice of Forum provisions do not apply to the Arbitration Agreement in Section 2, and we refer you to Section 2 for the applicable provisions for such disputes.

Claims of Copyright Infringement.

Claims of copyright infringement should be sent to Uber's designated agent. Please visit Uber's web page at https://www.uber.com/legal/intellectual-property/copyright/global for the designated address and additional information.

Notice.

Uber may give notice by means of a general notice on or through the Services, electronic mail to the email address associated with your Account, telephone or text message to any phone number provided in connection with your account, or by written communication sent by first class mail or pre-paid post to any address connected with your Account. Such notice shall be deemed to have been given upon the expiration of 48 hours after mailing or posting (if sent by first class mail or pre-paid post) or at the time of sending (if sent by email, telephone, or on or through the Services). You may give notice to Uber, with such notice deemed given when received by Uber, at any time by first class mail or pre-paid post to our registered agent for service of process, c/o Uber Technologies, Inc. The name and current contact information for the registered agent in each state are available online at https://www.wolterskluwer.com/en/solutions/ct-corporation/sop-locations. If another provision of these Terms addresses any specific notice (for example, notice of updates to these Terms, or notice of a dispute or arbitration demand), those specific notice provisions shall prevail to the extent there is any conflict or inconsistency between those provisions and this notice provision.

General.

You may not assign these Terms without Uber's prior written approval. Uber may assign these Terms without your consent to: (i) a subsidiary or affiliate; (ii) an acquirer of Uber's equity, business or assets; or (iii) a successor by merger. Any purported assignment by you in violation of this section shall be void. No joint venture, partnership, employment, or agency relationship exists between you, Uber or any Third-Party Provider as a result of this Agreement or use of the Services. If any provision of these Terms is held to be invalid or unenforceable, such provision shall be struck and the remaining provisions shall be enforced to the fullest extent under law. Uber's failure to enforce any right or provision in these Terms shall not constitute a waiver of such right or provision unless acknowledged and agreed to by Uber in writing. This provision shall not affect the Severability and Survivability section of the Arbitration Agreement of these Terms.

Return to Legal Hub→

Uber

Visit Help Center

Do not sell my info (California)

Google Data Policy

Company

About us

Our offerings

Newsroom

Investors

Blog

Careers

AI

Gift cards

Products

Ride

Drive

Deliver

Eat

Uber for Business

Uber Freight

## Global citizenship

Safety

Diversity and Inclusion

## Travel

Airports

Cities

English

New York City

 

© 2022 Uber Technologies Inc.

Privacy                    Accessibility                    Terms

# EXHIBIT M

Uber                                           Oturum açın   **Kaydolun**

Yetki alanı seçin:                    Dil seçin:

| Amerika Birleşik Devletleri ▾ |   | İngilizce ▾ |

Last modified: 1/17/2023

# U.S. Terms of Use

These Terms of Service ("Terms of Service") constitute a legally binding agreement between you and Uber Technologies, Inc. and its subsidiaries, representatives, affiliates, officers and directors (collectively, "Uber") governing your use of Uber's personalized, multipurpose, digital marketplace platform ("Uber Marketplace Platform") and any related content or services, including mobile and/or web-based applications ("Applications" or the "Uber App," and together with the Uber Marketplace Platform, the "Services").

IMPORTANT: PLEASE BE ADVISED THAT THESE TERMS OF SERVICE CONTAIN PROVISIONS THAT GOVERN HOW YOU CAN BRING CLAIMS BETWEEN YOU AND UBER, INCLUDING THE ARBITRATION AGREEMENT IN SECTION 2 BELOW. THESE TERMS OF SERVICE OUTLINE HOW SUCH CLAIMS ARE RESOLVED, INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT AROSE OR WERE ASSERTED BEFORE THE EFFECTIVE DATE OF THESE TERMS OF SERVICE. PLEASE REVIEW THE ARBITRATION AGREEMENT IN SECTION 2 CAREFULLY, AS IT REQUIRES YOU TO RESOLVE ALL DISPUTES WITH UBER ON AN INDIVIDUAL BASIS AND, WITH LIMITED EXCEPTIONS, THROUGH FINAL AND BINDING ARBITRATION, YOU ARE WAIVING YOUR RIGHT TO SEEK RELIEF IN A COURT OF LAW AND TO HAVE A JURY TRIAL ON YOUR CLAIMS. BY AGREEING TO THESE TERMS OF SERVICE, YOU EXPRESSLY ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTOOD ALL OF THESE TERMS OF SERVICE AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT DECISION.

Notwithstanding the foregoing, if you choose, now or in the future, to provide transportation (e.g., ride-hailing), logistics (e.g., freight), delivery (e.g., food, packages, and other goods) and other services (collectively, "Third-Party Services"), these Terms of Service do not supersede or otherwise impact the enforceability of any agreements you may have with Uber or its subsidiaries regarding such Third-Party Services (e.g., the Platform Access Agreement, the Technology Services Agreement and/or any similar agreements). To the extent (but only to the extent) any agreement you may have with Uber regarding Third-Party Services conflicts with

these Terms of Service, those agreements (and not these Terms of Service) will prevail with respect to any disputes arising from your provision of Third-Party Services; otherwise, any relevant provisions in these Terms of Service apply.

# 1. Contractual Relationship; Termination; and Modification

In addition to these Terms of Service, your access to, and use of the Services is also governed by the applicable terms found on our website, including without limitation, the Privacy Notice, which describes how we collect, use and disclose your personal information; the Generated Content Terms; Community Guidelines; Referral Policies; and Uber's other applicable Uber standards and policies (including, without limitation, Uber's safety standards, the accessibility policies and U.S. Service Animal Policy), as well as the ADT Mobile Security Monitoring Terms, which we refer to collectively as the "Supplemental Terms."

Collectively, we refer to these Terms of Service and the Supplemental Terms as the "Terms." These Terms govern your access or use, from within the United States and its territories and possessions, of the Services made available in the United States and its territories and possessions (the "Territory"). If you use the Services in another country, you agree to be subject to Uber's terms of service for that country. PLEASE READ THESE TERMS CAREFULLY, AS THEY CONSTITUTE A LEGAL AGREEMENT BETWEEN YOU AND UBER. In these Terms, the words "including" and "include" mean "including, but not limited to."

By accessing or using the Services, you confirm your agreement to be bound by these Terms. If you do not agree to these Terms, do not access or use the Services. These Terms expressly govern the use of the Services in the Territory.

**Termination.**

Uber, in its sole discretion, may immediately terminate these Terms or any Services with respect to you, or generally cease offering or deny access to the Services or any portion thereof, at any time for any reason.

**Modification.**

Uber reserves the right to modify these Terms or its policies relating to the Services at any time, effective upon posting of an updated version of these Terms through the Services or Uber's website. You should regularly review these Terms, as your continued use of the Services after any such changes constitutes your agreement to such changes.

# 2. Arbitration Agreement

By agreeing to these Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration as set forth in this Arbitration

Agreement, and not as a class, collective, coordinated, consolidated, mass and/or representative action. You and Uber are each waiving your right to a trial by jury. This Arbitration Agreement will preclude you from bringing any class, collective, coordinated, consolidated, mass and/or representative action against Uber, and also preclude you from participating in or recovering relief in any current or future class, collective, coordinated, consolidated, mass and/or representative action brought against Uber by someone else—except as provided below in Section 2(a)(3)(c). Thus, the parties agree that the Arbitrator shall not conduct any form of class, collective, coordinated, consolidated, mass and/or representative arbitration, nor join, coordinate, or consolidate claims of multiple individuals against Uber in a single proceeding—except as provided below in Section 2(a)(3)(c). For the avoidance of doubt, except as provided below in Section 2(a)(3)(c), this Arbitration Agreement precludes you from bringing or participating in any kind of class, collective, coordinated, consolidated, mass and/or representative or other kind of group, multi-plaintiff or joint action against Uber, other than participating in a classwide, collective, coordinated, consolidated, mass and/or representative settlement of claims.

**(a) Agreement to Binding Arbitration Between You and Uber.**

(1) <u>Covered Disputes</u>: Except as expressly provided below in Section 2(b), you and Uber agree that any dispute, claim, or controversy in any way arising out of or relating to (i) these Terms and prior versions of these Terms, or the existence, breach, termination, enforcement, interpretation, scope, waiver, or validity thereof; (ii) your access to or use of the Services at any time; (iii) incidents or accidents resulting in personal injury to you or anyone else that you allege occurred in connection with your use of the Services (including, but not limited to, your use of the Uber Marketplace Platform or the driver version of the Uber App), regardless whether the dispute, claim, or controversy occurred or accrued before or after the date you agreed to these Terms, and regardless whether you allege that the personal injury was experienced by you or anyone else; and (iv) your relationship with Uber, will be settled by binding individual arbitration between you and Uber, and not in a court of law. This Arbitration Agreement survives after your relationship with Uber ends.

(2) <u>Class Action Waiver</u>: Any and all disputes, claims, or controversies between the parties shall be resolved only in individual arbitration. The parties expressly waive the right to have any dispute, claim, or controversy brought, heard, administered, resolved, or arbitrated as a class, collective, coordinated, consolidated, and/or representative action, and neither an arbitrator nor an arbitration provider shall have any authority to hear, arbitrate, or administer any class, collective, coordinated, consolidated, and/or representative action, or to award relief to anyone but the individual in arbitration. The parties also expressly waive the right to seek, recover, or obtain any non-individual relief. Notwithstanding anything else in this agreement, this Class Action Waiver does not prevent you or Uber from participating in a classwide, collective, and/or representative settlement of claims.

The parties further agree that if for any reason a claim does not proceed in arbitration, this Class Action Waiver shall remain in effect, and a court may not preside over any action joining, coordinating, or consolidating the claims of multiple individuals against Uber in a single proceeding, except that this Class Action Waiver shall not prevent you or Uber from participating in a classwide, collective, and/or representative settlement of claims. If there is a final judicial determination that any portion of this Class Action Waiver is unenforceable or unlawful for any reason, (i) any class, collective, coordinated, consolidated, and/or representative claims subject to the unenforceable or unlawful portion(s) shall proceed in a court of competent jurisdiction; (ii) the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration; (iii) the unenforceable or unlawful portion(s) shall be severed from this Arbitration Agreement; and (iv) severance of the unenforceable or unlawful portion(s) shall have no impact whatsoever on the enforceability, applicability, or validity of the Arbitration Agreement or the arbitrability of any remaining claims asserted by you or Uber.

(3) Mass Actions:

a. Mass Action Waiver: Any and all disputes, claims, or controversies between the parties shall be resolved only in individual arbitration. The parties expressly waive the right to have any dispute, claim, or controversy brought, heard, administered, resolved, or arbitrated as a mass action, and neither an arbitrator nor an arbitration provider shall have any authority to hear, arbitrate, or administer any mass action or to award relief to anyone but the individual in arbitration—except as provided below in Section 2(a)(3)(c). The parties also expressly waive the right to seek, recover, or obtain any non-individual relief. The parties agree that the definition of a "Mass Action" includes, but is not limited to, instances in which you or Uber are represented by a law firm or collection of law firms that has filed 50 or more arbitration demands of a substantially similar nature against the other party within 180 days of the arbitration demand filed on your or Uber's behalf, and the law firm or collection of law firms seeks to simultaneously or collectively administer and/or arbitrate all the arbitration demands in the aggregate. Notwithstanding anything else in this agreement, this Mass Action Waiver does not prevent you or Uber from participating in a mass settlement of claims.

b. Dispute Procedure: Notwithstanding any provision to the contrary in the applicable arbitration provider's rules, the arbitrator shall be empowered to determine whether the party bringing any claim has filed a Mass Action in violation of the Mass Action Waiver. Either party shall raise with the arbitrator or arbitration provider such a dispute within 15 days of its arising. If such a dispute arises before an arbitrator has been appointed, the parties agree that (i) a panel of three arbitrators shall be appointed to resolve only disputes concerning whether the party bringing any claim has filed a Mass Action in violation of the Mass Action Waiver. Each party shall select one arbitrator from the arbitration provider's roster to serve as a neutral arbitrator, and these arbitrators shall appoint a third neutral arbitrator. If the parties' arbitrators cannot agree on a third arbitrator, the arbitration provider will select the third

arbitrator; (ii) Uber shall pay any administrative fees or costs incidental to the appointment of Arbitrators under this provision, as well as any fees or costs that would not be incurred in a court proceeding, such as payment of the fees of the arbitrators, as well as room rental; (iii) the arbitrators shall issue a written decision with findings of fact and conclusions of law; and (iv) any further arbitration proceedings or assessment of arbitration-related fees shall be stayed pending the arbitrators' resolution of the parties' dispute. If the arbitrator or panel of arbitrators determines that you have violated the Mass Action Waiver, the parties shall have the opportunity to opt out of arbitration within 30 days of the arbitrator's or panel of arbitrator's decision. You may opt out of arbitration by providing written notice of your intention to opt out to the arbitration provider and to Uber Technologies, Inc., Attn: Legal Department, 1515 3rd Street, San Francisco, CA 94158 via USPS Priority Mail or hand delivery. This written notice must be signed by you, and not any attorney, agent, or other representative of yours. Uber may opt out of arbitration by sending written notice of its intention to opt out to the arbitration provider and to you or your attorney, agent, or representative if you are represented. For the avoidance of doubt, the ability to opt out of arbitration described in this Section 2(a)(3)(b) only applies if the arbitrator or panel of arbitrators determines that you have violated the Mass Action Waiver. If the parties proceed with arbitration, the parties agree that arbitrations will be batched as provided in Section 2(a)(3)(c) below.

c. Batching:

i. To increase efficiency of resolution in the event a Mass Action is filed and neither party exercises its right to opt out of arbitration pursuant to Section 2(a)(3)(b) above, the following procedure shall apply. At the request of either party, an arbitrator shall be selected according to the applicable arbitration provider's rules to act as a special master ("Special Master") to resolve threshold disputes regarding the propriety of some or all the arbitration demands submitted in the Mass Action ("Mass Arbitration Demands"). These threshold disputes may include, but are not limited to:

1. Any dispute regarding filing fees owed with respect to the Mass Arbitration Demands, including whether claimants have submitted valid fee waivers;

2. Any dispute regarding whether the applicable arbitration provider has complied with the Arbitration Agreement with respect to processing and administering the Mass Arbitration Demands;

3. Any dispute regarding whether the Mass Arbitration Demands meet the requirements set forth in Section 2(d) below;

4. Whether claimants are barred from proceeding with their claims based on a prior settlement agreement, violation of these Terms, or expiration of the statute of limitations;

5. Any dispute relating to representation of the same claimant by multiple law firms;

6. Any dispute regarding whether the Mass Arbitration Demands were filed with the correct arbitration provider;

7. Any dispute regarding discovery common to all claims; and

8. Any disputes regarding legal or factual issues common to all claims.

Any such request shall be made within 15 days following the expiration of the opt-out period described in Section 2(a)(3)(b), and may be made by providing written notice to the arbitration provider. Upon the request of either party to appoint a Special Master to resolve the foregoing issues, the applicable arbitration provider shall refrain from further processing any of the Mass Arbitration Demands to which a dispute has been raised. No further payment for filing fees, administrative costs, or arbitrator fees shall be deemed due with respect to any of the Mass Arbitration Demands as to which a dispute has been raised until after the dispute(s) has/have been resolved by the Special Master. Uber shall be responsible for the applicable arbitration provider's and Special Master's fees and costs related to the proceedings before the Special Master.

A Special Master appointed pursuant to this procedure shall have no authority to consolidate cases.

ii. After proceedings before the Special Master have concluded, to the extent any of the Mass Arbitration Demands are permitted to proceed, the parties shall group the Mass Arbitration Demands into batches of no more than 100 demands per batch by state of residence, and then alphabetically by last name (plus, to the extent there are less than 100 arbitration demands left over after the batching described above, a final batch consisting of the remaining demands), and shall inform the arbitration provider of the batches and their compositions within 14 days of the conclusion of proceedings before the Special Master. The arbitration provider shall treat each batch of claims as one case, with each case having one demand for arbitration, one appointed arbitrator, and one set of administrative documents and administrative and filing fees per batch. The parties shall randomly assign sequential numbers to each batch, and only one batch shall proceed to arbitration at a time in the order of the random sequential numbers. A separate arbitrator will be appointed to, and administrative and filing fees assessed for, each batch as the batch proceeds to arbitration. You agree to cooperate in good faith with Uber and the arbitration provider to implement such a batch approach to resolution and fees. Nothing in this provision shall be construed as limiting the right to object that the filing or presentation of multiple arbitration demands by or with the assistance of the same law firm or organization violates any term of this Agreement.

iii. If any Mass Arbitration Demands were originally processed as individual arbitration demands before this batching procedure was commenced, further proceedings, including the assessment of further arbitration filing or administration fees to either party shall be governed by the procedures set forth in this Section 2(a)(3).

(4) <u>Delegation Clause</u>: Only an arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement, including without limitation any claim that all or any part of this Arbitration Agreement is void or voidable. An arbitrator shall also have exclusive authority to resolve all threshold arbitrability issues, including issues relating to whether these Terms are applicable, unconscionable, or illusory and any defense to arbitration, including without limitation waiver, delay, laches, or estoppel. However, only a court of competent jurisdiction, and not an arbitrator, shall have the exclusive authority to resolve any and all disputes arising out of or relating to the Class Action Waiver and Mass Action Waiver, including, but not limited to, any claim that all or part of the Class Action Waiver and/or Mass Action Waiver is unenforceable, unconscionable, illegal, void, or voidable—except that, as stated and pursuant to the procedures provided in Section 2(a)(3)(b), an arbitrator or panel of arbitrators shall have authority to determine whether the party bringing any claim has violated the Mass Action Waiver.

(5) <u>Application to Third Parties</u>: This Arbitration Agreement shall be binding upon, and shall include any claims brought by or against any third parties, including but not limited to your spouses, heirs, third-party beneficiaries and assigns, where their underlying claims arise out of or relate to your use of the Services. To the extent that any third-party beneficiary to this agreement brings claims against the Parties, those claims shall also be subject to this Arbitration Agreement.

**(b) Exceptions to Arbitration.**

Notwithstanding the foregoing, this Arbitration Agreement shall not require arbitration of the following claims: (i) individual claims brought in small claims court so long as the matter remains in such court and advances only on an individual basis; (ii) individual claims of sexual assault or sexual harassment occurring in connection with your use of the Services; and/or (iii) injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation, or violation of a party's copyrights, trademarks, trade secrets, patents, or other intellectual property rights.

Such claims may be brought and litigated in a court of competent jurisdiction by you on an individual basis only. On an individual basis means that you cannot bring such claims as a class, collective, coordinated, consolidated, mass and/or representative action against Uber. For the avoidance of doubt, this precludes you from bringing claims as or participating in any kind of any class, collective, coordinated, consolidated, mass and/or representative or other kind of group, multi-plaintiff or joint action against Uber and no action brought by you may be consolidated or joined in any fashion with any other proceeding. Where your claims are brought and litigated to completion on such an individual basis in a court of competent jurisdiction, Uber agrees to honor your election.

The parties' agreement not to require arbitration in these limited instances does not waive the enforceability of this Arbitration Agreement as to any other provision (including, but not limited to, the waivers provided for in Section 2(a), which will continue to apply in court as well as in arbitration), or the enforceability of this Arbitration Agreement as to any other controversy, claim, or dispute.

**(c) Rules and Governing Law.**

For disputes arising in California, the arbitration will be administered by ADR Services, Inc. ("ADR") in accordance with ADR's Arbitration Rules (the "ADR Rules") in effect at the time that the claim is brought, unless the parties agree otherwise in writing. The ADR Rules are available at www.adrservices.com or by searching for "ADR Arbitration Rules" using a service such as www.google.com or www.bing.com. The arbitration shall be heard by one arbitrator (the "Arbitrator") selected in accordance with the ADR Rules.

For disputes arising outside of California (or for disputes arising in California only if ADR cannot or will not administer the arbitration), the parties shall be required to meet and confer to select a neutral arbitration provider. Such an arbitration provider shall have operations in the state in which the dispute arises. If the parties are unable to mutually agree upon an arbitration provider, then either party may invoke 9 U.S.C. § 5 to request that a court of competent jurisdiction appoint an arbitration provider with operations in the state in which the dispute arises. Any arbitration provider appointed by a court under 9 U.S.C. § 5 shall conduct arbitration solely on an individualized basis as set forth in this Section 2. Once the parties mutually agree upon a neutral arbitration provider, or an arbitrator provider is appointed under 9 U.S.C. § 5, the ensuing arbitration shall commence pursuant to the rules of the designated arbitration provider, except as designated herein. Once an arbitration provider is agreed upon or appointed, an Arbitrator shall be appointed. The Arbitrator will be either (1) a retired judge or (2) an attorney licensed to practice law in the state where the arbitration is conducted with experience in the law underlying the dispute. The Arbitrator will be selected by the parties from the applicable arbitration provider's roster of arbitrators. If the parties are unable to agree upon an Arbitrator after a good faith meet and confer effort, then the applicable arbitration provider will appoint the Arbitrator in accordance with its rules.

Notwithstanding any choice of law or other provision in these Terms, the parties agree and acknowledge that this Arbitration Agreement evidences a transaction involving interstate commerce and that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), will govern its interpretation and enforcement and proceedings pursuant thereto. It is the intent of the parties to be bound by the provisions of the FAA for all purposes, including, but not limited to, interpretation, implementation, enforcement, and administration of this Arbitration Agreement, and that the FAA and the applicable arbitration provider's rules shall preempt all state laws to the fullest extent permitted by law. All statutes of limitations that would otherwise be applicable will apply to any arbitration proceeding. If the FAA and applicable

arbitration provider's rules are found to not apply to any issue regarding the interpretation or enforcement of this Arbitration Agreement, then that issue shall be resolved under the laws of the state where you reside when you accept these Terms.

Any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to the Terms, shall be governed by and construed in accordance with the laws of the state in which the incident or accident occurred.

**(d) Process.**

Pre-Arbitration Dispute Resolution and Notification. The parties agree that good-faith informal efforts to resolve disputes often can result in a prompt, low-cost, and mutually beneficial outcome. The parties therefore agree that, before either party demands arbitration against the other, we will personally meet and confer, via telephone or videoconference, in a good-faith effort to resolve informally any claim covered by this Arbitration Agreement. Multiple individuals initiating claims cannot participate in the same informal telephonic dispute resolution conference. If you are represented by counsel, your counsel may participate in the conference, but you shall also fully participate in the conference. The party initiating the claim must give notice to the other party in writing of their intent to initiate an informal dispute resolution conference, which shall occur within 60 days after the other party receives such notice, unless an extension is mutually agreed upon by the parties. To notify Uber that you intend to initiate an informal dispute resolution conference, write to Uber Technologies, Inc., Attn: Legal Department, 1515 3rd Street, San Francisco, CA 94158, providing your name, the telephone number(s) associated with your Uber account (if any), the email address(es) associated with your Uber account, and a description of your claim. Engaging in an informal dispute resolution conference is a condition precedent that must be fulfilled before commencing arbitration, and the Arbitrator shall dismiss any arbitration demand filed before completion of an informal dispute resolution conference. The statute of limitations and any filing fee deadlines shall be tolled while the parties engage in the informal dispute resolution process required by this paragraph.

Initiating Arbitration. In order to initiate arbitration following the conclusion of the informal dispute resolution process required by this Section, a party must provide the other party with a written demand for arbitration and file the demand with the applicable arbitration provider, as determined by Section 2(c). A party initiating an arbitration against Uber must send the written demand for arbitration to Uber Technologies, Inc., LLC, Attn: Legal Department, 1515 3rd Street, San Francisco, CA 94158, or serve the Demand on Uber's registered agent for service of process, c/o Uber Technologies, Inc. (the name and current contact information for the registered agent in each state are available online here). Additionally, a party initiating arbitration against Uber must send an electronic version of the demand for arbitration to the

Arbitration Provider, and must send an electronic version of the as-filed demand to filed-arbitration-demands@uber.com.

By signing the demand for arbitration, counsel certifies to the best of counsel's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that (i) the demand for arbitration is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of dispute resolution; (ii) the claims and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; and (iii) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Arbitrator shall be authorized to afford any relief or impose any sanctions available under Federal Rule of Civil Procedure 11 or any applicable state law for either party's violation of this requirement.

**(e) Location.**

Unless you and Uber otherwise agree, if you reside in the United States, the arbitration will be conducted in the county where you reside. If you do not reside in the United States, the arbitration will be conducted in the county where the dispute arises. Your right to a hearing will be determined by the applicable arbitration provider's rules. Subject to the applicable arbitration provider's rules, the Arbitrator will have the discretion to direct a reasonable exchange of information by the parties, consistent with the expedited nature of the arbitration.

**(f) Offers of Judgment.**

At least 10 days before the date set for the arbitration hearing, any party may serve an offer in writing upon the other party to allow judgment on specified terms. If the offer is accepted, the offer with proof of acceptance shall be submitted to the arbitrator, who shall enter judgment accordingly. If the offer is not accepted prior to the arbitration hearing or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the arbitration. If an offer made by one party is not accepted by the other party, and the other party fails to obtain a more favorable award, the other party shall not recover their post-offer costs and shall pay the offering party's costs from the time of the offer.

**(g) Arbitrator's Decision.**

The Arbitrator will render an award within the time frame specified in the applicable arbitration provider's rules. Judgment on the arbitration award may be entered in any court of competent jurisdiction. The Arbitrator may award declaratory or injunctive relief only in favor of the claimant and only to the extent necessary to provide relief warranted by the claimant's individual claim. An Arbitrator's decision shall be final and binding on all parties.

The Arbitrator is not bound by decisions reached in separate arbitrations, and the Arbitrator's decision shall be binding only upon the parties to the arbitration that are the subject of the decision.

The Arbitrator shall award reasonable costs incurred in the arbitration to the prevailing party in accordance with the law(s) of the state in which arbitration is held.

**(h) Fees.**

With the exception of the provisions governing payment of arbitration costs set forth above, your responsibility to pay any filing, administrative, and arbitrator fees will be solely as set forth in the applicable arbitration provider's rules and shall be up to the amount you would be required to pay if you filed a claim in court.

If you have a gross monthly income of less than 300% of the federal poverty guidelines, you are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. If you believe that you meet the requirements to obtain a fee waiver, and your demand for arbitration arises outside of California, then you may request a fee waiver only by submitting to the arbitration provider AO 240, Application to Proceed in District Court Without Prepaying Fees or Costs (found here), or a declaration under oath containing all the information required by AO 240; if your demand for arbitration arises in California, then you must submit a declaration under oath providing your monthly income and the number of persons in your household.

Any and all disputes regarding a party's obligation to pay any arbitration fees or costs that arise after an arbitrator is appointed shall be determined solely by the arbitrator. If such a dispute arises before an arbitrator has been appointed, and if no Special Master has been requested by either party pursuant to Section 2(a)(3)(c)(i) of these Terms, the parties agree that (i) the due date for any disputed fees shall be stayed pending resolution of the parties' dispute, (ii) a panel of three arbitrators shall be appointed to resolve the parties' dispute concerning a party's obligation to pay fees or costs of arbitration, (iii) the panel of arbitrators shall be appointed by each party selecting one arbitrator from the arbitration provider's roster to serve as neutral arbitrators, and these arbitrators shall appoint a third neutral arbitrator. If the parties' arbitrators cannot agree on a third arbitrator, the arbitration administrator will select the third arbitrator, (iv) Uber shall pay any administrative fees or costs incidental to the appointment of a panel of arbitrators under this provision, as well as any fees or costs that would not be incurred in a court proceeding, such as payment of the fees of the arbitrator(s), as well as room rental, and (v) the arbitrator(s) shall issue a written decision with findings of fact and conclusions of law. If two or more fee disputes between a claimant and Uber arise at or around the same time, the disputes may be consolidated for resolution by a single arbitrator or panel of arbitrators either at the agreement of the parties or the election of the party common to all such disputes.

**(i) Severability and Survival.**

If any portion of this Arbitration Agreement is found to be unenforceable or unlawful for any reason, (i) the unenforceable or unlawful provision shall be severed from these Terms; (ii) severance of the unenforceable or unlawful provision shall have no impact whatsoever on the remainder of the Arbitration Agreement or the parties' ability to compel arbitration of any remaining claims on an individual basis pursuant to the Arbitration Agreement; and (iii) to the extent that any claims must therefore proceed on a class, collective, consolidated, or representative basis, such claims must be litigated in a civil court of competent jurisdiction and not in arbitration, and the parties agree that litigation of those claims shall be stayed pending the outcome of any individual claims in arbitration.

## 3. The Services

The Services enable you and other consumers to find, request, or receive (i) Third-Party Services from third party service providers, including without limitation, merchants, retailers, grocers, restaurants, independent drivers and delivery persons, and autonomous vehicles or autonomous vehicle fleet providers ("Third-Party Providers"); (ii) related personalized content, including features, recommendations and advertisements for products or services tailored to your needs and interests; and (iii) certain supporting services, including providing you the ability to express certain preferences about the Third-Party Services or Third-Party Service Providers, payment processing and customer support. Unless otherwise agreed by Uber in a separate written agreement with you, these Services are made available solely for your personal, noncommercial use.

Once you make a request, Uber notifies Third-Party Providers that an opportunity is available so that the Third-Party Provider may complete your request. It is up to the Third-Party Provider to decide whether or not to offer Third-Party Services to you or at all, and it is up to you to decide whether or not to accept such services from a Third-Party Provider. Please note that once your request for the Services has begun, you may no longer have the option to reschedule or cancel. If Uber is able to reschedule or cancel your request, you may be charged a fee and/or may not be refunded for items that have been purchased on your behalf.

UBER IS NOT A COMMON OR MOTOR CARRIER AND DOES NOT TRANSPORT YOU OR YOUR GOODS. GENERALLY, THE SERVICES ARE ONLY OPEN TO REGISTERED USERS OF THE SERVICES AND NOT TO THE GENERAL PUBLIC. YOUR ABILITY TO REQUEST, AND IF APPLICABLE, OBTAIN THIRD-PARTY SERVICES FROM THIRD-PARTY PROVIDERS IN CONNECTION WITH THE USE OF THE SERVICES DOES NOT ESTABLISH UBER AS A PROVIDER OF ANYTHING OTHER THAN THE SERVICES. INDEPENDENT THIRD-PARTY PROVIDERS ARE NOT ACTUAL AGENTS, APPARENT AGENTS, OSTENSIBLE AGENTS, OR EMPLOYEES OF UBER IN ANY WAY. ANY EFFORT, FEATURE, PROCESS, POLICY, STANDARD OR OTHER EFFORT UNDERTAKEN BY UBER TO FACILITATE YOUR RECEIPT OF THIRD PARTY SERVICES OR IN THE INTEREST OF SAFETY OR SECURITY (WHETHER REQUIRED BY APPLICABLE REGULATIONS OR

NOT) IS NOT AN INDICIA OF AN EMPLOYMENT, ACTUAL AGENCY, APPARENT AGENCY, OR OSTENSIBLE AGENCY RELATIONSHIP WITH A THIRD-PARTY PROVIDER.

**Third-Party Services and Content.**

While many Third-Party Services are available in the Uber App, certain Third-Party Services or content are only accessible by exiting the Uber App ("Out-of-App Experiences"). Once you click on a link to access Out-of-App Experiences, you will be subject to the terms and conditions and privacy policy of that website, destination, or Out-of-App Experience provider, which are different from Uber's. Uber will not warn you that you have left the Services or that you are subject to the terms and conditions (including privacy policies) of another website, destination, or Out-of-App Experience provider. You use all links in third-party websites and advertisements at your own risk as these are not part of the Services and are not controlled by Uber. Uber does not endorse such Out-of-App Experience providers and in no event shall Uber be responsible or liable for any products or services of such third-party providers.

Third-Party Services made available to you through the Uber App may be provided by an autonomous vehicle. An autonomous vehicle is a vehicle that is capable of operating at, or is equipped with an automated driving system that will enable the vehicle to operate at SAE Levels 3, 4 or 5 of driving automation as defined in the J3016 April 2021 SAE International specification ("Autonomous Vehicle" or "AV"). Autonomous Vehicles are operated by Third-Party Providers that operate a fleet of one or more AVs and may employ or contract with individuals to manage, monitor, or operate its AVs while such vehicles are in motion (such Third-Party Providers, "Autonomous Vehicle Fleet Providers"). Your access to Third-Party Services provided by AV may be subject to your acceptance of Autonomous Vehicle Fleet Providers' terms.

In the event of a conflict in the terms of any Third-Party Services and these Terms, these Terms shall control with respect to Uber and your agreements with Uber herein, and the limitations of liability set forth in Section 7 shall also apply to the Third-Party Provider. The Arbitration Agreement provisions in Section 2 above shall apply instead of the terms of any Third-Party Services for all purposes except with respect to claims that are solely against the Third-Party Provider.

**App Stores.**

The availability of the Services may be dependent on the third-party from which you received the license to the Uber App, e.g., the Apple iPhone or Android app stores ("App Store"). These Terms are between you and Uber and not with the App Store and Uber is responsible for the provision of Services as described in these Terms. However, if you downloaded the Uber App from the Apple App Store, Apple and its subsidiaries are third-party beneficiaries of these Terms. Upon your acceptance of these Terms, Apple shall have the right (and will be deemed to have accepted the right) to enforce these Terms against you as a third-party beneficiary

thereof. These Terms incorporate by reference Apple's Licensed Application End User License Agreement, for purposes of which, you are the "end-user." In the event of a conflict in the terms of the Licensed Application End User License Agreement and these Terms, these Terms will control.

**Ownership; License; and Restrictions.**

The Services and all rights, title, and interest, including all related intellectual property rights therein are and shall remain Uber's property or the property of Uber's licensors. These Terms are not a sale and do not convey or grant to you any rights in or related to the Services, or any intellectual property rights owned by Uber, except for the limited license granted above.

Subject to your compliance with these Terms, Uber grants you a limited, non-exclusive, non-sublicensable, revocable, non-transferable license to: (i) access and use the Uber App solely in connection with your use of the Services on your personal device; and (ii) access and use any content, information and related materials that may be made available through the Services, in each case solely for your personal, noncommercial use. Any rights not expressly granted herein are reserved by Uber and Uber's licensors. You agree that you will not use Uber's copyrights, trademarks, service marks, or trade dress, aside from use incidental to your use of the Services, without express, written permission from Uber. This prohibition includes use in domain names, websites, and social media accounts. You may not: (i) remove any copyright, trademark or other proprietary notices from any portion of the Services; (ii) reproduce, modify, prepare derivative works based upon, distribute, license, lease, sell, resell, transfer, publicly display, publicly perform, transmit, stream, broadcast or otherwise exploit the Services except as expressly permitted by Uber; (iii) decompile, reverse engineer or disassemble the Services except as may be permitted by applicable law; (iv) link to, mirror or frame any portion of the Services; (v) cause or launch any programs or scripts for the purpose of, or which result in, unduly burdening or hindering the operation and/or functionality of any aspect of the Services; or (vi) attempt to gain unauthorized access to or impair any aspect of the Services or its related systems or networks.

# 4. Accessing the Services

**User Accounts.**

In order to use most aspects of the Services, you must register for and maintain an active personal user Services account ("Account"). You cannot register for or maintain an Account if you have previously been banned from accessing or using the Services. Account registration may require you to submit to Uber certain personal information, such as your name, address, mobile phone number and age, as well as at least one valid payment method that you are authorized to use and is supported by Uber. For more information regarding Uber's use of your personal information, please see our Privacy Notice. You agree to maintain accurate, complete,

and up-to-date information in your Account, including a valid phone number, address and payment method. Except as described below, you must be at least 18 years of age, or the age of legal majority in your jurisdiction (if different than 18), to obtain an Account, unless a specific Service permits otherwise. Unless otherwise permitted by Uber in writing, you may only possess one Account and you may not assign or otherwise transfer your Account to any other person or entity. You are responsible for all activity that occurs under your Account, and you agree to maintain the security and secrecy of your Account credentials at all times.

### Minors.

Except as described below, the Services are generally not available for use by persons under the age of 18. You may not authorize third-parties to use your Account, and you may not allow persons under the age of 18 to use the Services unless they are accompanied by you or an adult. However, we may offer parents and guardians the ability to create Accounts for their children. If you are a parent or legal guardian, and you allow your child to use the Services, then these Terms apply to you and you are responsible for your child's activity on the Services. If you are under the age to obtain an Account, you must have your parent or legal guardian's permission to use an Account and accept any additional terms required in connection with your access and use of the Services as a minor. Please have your parent or legal guardian read these additional terms with you.

### Network Access and Devices.

You are responsible for obtaining the data network access necessary to use the Services. Your mobile network's data and messaging rates and fees may apply if you access or use the Services from your device. You are responsible for acquiring and updating compatible hardware or devices necessary to access and use the Services and any updates thereto. Uber does not guarantee that the Services, or any portion thereof, will function on any particular hardware or devices. In addition, the Services may be subject to malfunctions and delays inherent in the use of the Internet and electronic communications. Uber is not responsible for any delays, delivery failures, or damage, loss or injury resulting from such problems.

## 5. User Conduct and Requirements; Communications; and User Content

### User Conduct and Requirements.

In addition to complying with these Terms, you agree to comply with all applicable laws when accessing or using the Services, and you may only access or use the Services for lawful purposes (e.g., no request for the purpose or intent of transport of unlawful or hazardous materials). You may not access or use the Services to cause nuisance, annoyance, inconvenience, damage, or loss to Uber, the Third-Party Provider, or any other party.

If you request a ride option with a child restraint system, neither Uber nor the Third-Party Provider is responsible for the safety of a child restraint system that may be available in the Third-Party Provider's vehicle. It is your obligation to ensure that the child restraint system is installed correctly and that the child is properly secured in the child restraint system. Please refer to your state's laws regarding specific height, age, and weight requirements for using child restraint systems, as well as Uber's policies for child restraint systems, which may be set forth on city-specific web pages. If you request a ride option where a Third-Party Provider agrees to provide you with assistance outside of the vehicle (e.g., Uber Assist), Uber is not responsible for any injury or incident that may arise out of the assistance provided by the Third-Party Provider. In certain instances, you may be asked to provide proof of age, identity or other method of identity verification to access or use the Services, and you agree that you may be denied access to or use of the Services if you refuse to provide proof of age, identity, or other method of identity verification.

Subject to the discretion of a Third-Party Provider, you may be allowed to bring a small animal, such as a dog or cat, on a ride requested through the Services. For such trips, you are responsible for properly securing the animal with a leash, harness, crate / carrier, or through other means. You are also responsible for ensuring that the animal does not cause damage or a mess in the Third-Party Provider's vehicle. You may be subject to a Charge for Repair or Cleaning under Section 6 below for any damage or mess caused by an animal that is transported during a ride requested under your Account. Please note, in accordance with Uber's policies on Service Animals and Assistive Devices, Service Animals are generally permitted to accompany riders without extra charge, regardless of whether it is a Pet Friendly Trip.

For the purpose of assisting us with our compliance and insurance obligations, you agree to notify us within 24 hours and provide us with all reasonable information relating to any incident or accident that occurs during your use of the Services and you agree to cooperate with any investigation and attempted resolution of such incident.

**Communications with Uber.**

By creating an Account, you electronically agree to accept and receive communications from Uber, Third-Party Providers or third parties providing services to Uber including via email, text message, WhatsApp, calls, in-app communications, and push notifications to the telephone number(s) or email addresses you provided to Uber. You may also receive communications generated by automatic telephone dialing systems and/or which will deliver prerecorded messages sent by or on behalf of Uber, and/or Third-Party Providers, including but not limited to communications concerning requests placed through your Account on the Services. Message and data rates may apply. You can learn more about how Uber may contact you by reading our Privacy Notice.

If you do not wish to receive promotional emails, text messages, or other communications from Uber, you may change your notification preferences by accessing Settings in your Account. To opt out of receiving text messages from Uber, you must reply "STOP" from the mobile device receiving the messages. For purposes of clarity, text messages between you and Third-Party Providers are transactional text messages, not promotional text messages. You acknowledge that opting out of receiving all communications may impact your use of the Services. Notwithstanding the foregoing, if we suspect fraud or unlawful activity on your Account, Uber may contact you using any of the contact information you provided in connection with your Account (including via text or voice-recorded message).

**Use of Accounts Owned by Others.**

In the event you use an Uber product or service that enables use of or billing to another person or business, certain information will be shared with that party. This may include information regarding the time and date of services you request, the transportation, logistics and/or delivery requested, and the associated charges for such services. If used to request transportation, we may also share information with such person or business regarding safety-related incidents that occur in connection with such transportation. You acknowledge that such data sharing is a condition of use of any such Uber product or service.

**User Provided Content; Feedback.**

Content that you provide to Uber is governed by Uber's Generated Content Terms, which are incorporated in these Terms by reference. Feedback that you provide to Uber is governed by Uber's Feedback Policy, which are incorporated in these Terms by reference.

## 6. Payment

**Prices & Charges.**

Your use of the Services may result in charges to you for the services or goods you receive from Uber and/or from Third-Party Providers ("Charges"). Prices displayed to you when purchasing goods through the Services may be inclusive of retail prices charged by the Third-Party Provider and fees paid to Uber. Uber will enable your payment of the applicable Charges for services or goods obtained through your use of the Services. Charges will include applicable taxes where required by law. Charges may include other applicable fees such as delivery fees, service fees, product return fees, cancellation fees, government-mandated fees (such as bag fees), estimated or actual tolls, and/or surcharges. Further, Charges applicable in certain geographical areas may increase substantially during times of high demand or due to other marketplace factors.

With respect to Third-Party Providers, Charges you incur will be owed directly to Third-Party Providers, and Uber will collect payment of those charges from you, on the Third-Party

Provider's behalf as their limited payment collection agent, and payment of the Charges shall be considered the same as payment made directly by you to the Third-Party Provider. Payment to a Third-Party Provider of goods or services shall be considered to occur at the moment you submit payment through Uber. You retain the right to request lower Charges from a Third-Party Provider for services or goods received by you from such Third-Party Provider at the time you receive such services or goods. A Third-Party Provider also retains the right to request higher Charges from you for services or goods provided. For example, a Third-Party Provider that is a merchant may collect lower or higher charges where the actual goods provided differ from the products originally requested, including in connection with differences in quantity, weight, or item type. Subject to requests from you to lower such Charges from a Third-Party Provider, you agree to pay such higher or lower Charges associated with such product differences. Uber will consider in good faith any request from a Third-Party Provider to modify the Charges for a particular service or good. This payment structure is intended to fully compensate a Third-Party Provider, if applicable, for the services or goods obtained in connection with your use of the Services.

There also may be certain Charges you incur that will be owed and paid directly to Uber or its affiliates. For the avoidance of doubt, Uber does not charge a fee for you to access the Uber App, but may charge you a fee or any other Charge for accessing Third-Party Services. Even if not indicated in the Uber App, the prices for product or menu items displayed through the Services may differ from the prices offered or published by Third-Party Providers for the same product or menu items, including as may be offered or published at a physical location operated by a Third-Party Provider, and/or from prices available at other third-party websites/mobile applications. Prices for product or menu items displayed through the Services may not be the lowest prices at which the product or menu items are sold. The product or menu item prices displayed through the Services or fees charged by and paid to Uber may vary based on whether you choose to pick up your order or have it delivered.

All Charges and payments will be enabled by Uber using the preferred payment method designated in your Account, after which you will receive a receipt. If your primary Account payment method is determined to be expired, invalid or otherwise not able to be charged, you agree that Uber may use another available payment method in your Account.

As between you and Uber, Uber reserves the right to establish or adjust Charges for any or all services or goods obtained through the use of the Services at any time. Uber will use reasonable efforts to inform you of Charges that may apply, provided that you will be responsible for Charges incurred under your Account regardless of your awareness of such Charges or the amounts thereof.

**Refunds.**

Charges paid by you are final and non-refundable, unless otherwise determined by Uber and the Third-Party Provider assessing the Charge. If you have any requests for cancellations, refunds, or returns, or if you think a correction should be made to any Charge you incurred, please visit the "Help" tab in your Account to initiate such requests within 30 days after the Charge took place or Uber will have no further responsibility and you waive your right to later dispute the amounts charged.

**Promotional Offers.**

Certain users may, from time to time, receive promotional offers and discounts that result in different amounts charged for the same or similar services or goods obtained through the use of the Services, and you agree that such promotional offers and discounts, unless also made available to you, shall have no bearing on your use of the Services or the Charges applied to you. Promotional offers and discounts are subject to change or withdrawal at any time and without notice.

**Gratuity.**

Except for amounts provided by you through the Services as part of the "tip" feature, Uber does not designate any portion of your payment as a tip or gratuity to a Third-Party Provider. You understand and agree that, while you are free to provide additional payment as a gratuity to any Third-Party Provider who provides you with services or goods obtained through the Service, you are under no obligation to do so.

**Damage, Cleaning, Lost and Found, and Charges for Violation of Terms.**

Uber may charge you a fee on behalf of Third-Party Providers if, during your use of the Services, you have caused damage to a vehicle or property that requires repair or cleaning ("Repair" or "Cleaning"). The amount of such fee shall be determined, in Uber's sole discretion, based on the type of damage and the severity. Uber reserves the right to verify or otherwise require documentation of damages prior to processing a fee. In the event that a Repair or Cleaning request is verified by Uber in Uber's reasonable discretion, Uber reserves the right to facilitate payment for the reasonable cost of such Repair or Cleaning using your payment method designated in your Account. Such amounts, as well as those pertaining to lost and found goods, will be transferred by Uber to a Third-Party Provider, if applicable, and are non-refundable. Additionally, if you fail to comply with these Terms, you may be responsible for Charges, including without limitation, for transactions that could not be completed properly, arising out of or in connection with your failure to comply with these Terms.

# 7. Disclaimers; Limitation of Liability; and Indemnity.

**Disclaimers.**

THE SERVICES ARE PROVIDED "AS IS" AND "AS AVAILABLE." UBER DISCLAIMS ALL REPRESENTATIONS AND WARRANTIES, EXPRESS, IMPLIED, OR STATUTORY, NOT EXPRESSLY SET OUT IN THESE TERMS, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. IN ADDITION, UBER MAKES NO REPRESENTATION, WARRANTY, OR GUARANTEE REGARDING THE RELIABILITY, TIMELINESS, QUALITY, SUITABILITY, OR AVAILABILITY OF THE SERVICES OR ANY SERVICES OR GOODS REQUESTED THROUGH THE USE OF THE SERVICES, OR THAT THE SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE.

UBER DOES NOT GUARANTEE THE QUALITY, SUITABILITY, SAFETY OR ABILITY OF THIRD-PARTY PROVIDERS. YOU AGREE THAT THE ENTIRE RISK ARISING OUT OF YOUR USE OF THE SERVICES, AND ANY SERVICE OR GOOD REQUESTED OR OBTAINED FROM THIRD-PARTY PROVIDERS IN CONNECTION THEREWITH, REMAINS SOLELY WITH YOU, TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW.

UBER DOES NOT CONTROL, MANAGE OR DIRECT ANY THIRD-PARTY PROVIDERS. THIRD-PARTY PROVIDERS ARE NOT ACTUAL AGENTS, APPARENT AGENTS, OSTENSIBLE AGENTS, OR EMPLOYEES OF UBER. IF A DISPUTE ARISES BETWEEN YOU AND OR ANY OTHER THIRD PARTY, YOU RELEASE UBER FROM LOSSES OF EVERY KIND AND NATURE, KNOWN AND UNKNOWN, SUSPECTED AND UNSUSPECTED, DISCLOSED AND UNDISCLOSED, ARISING OUT OF OR IN ANY WAY CONNECTED WITH SUCH DISPUTES.

UBER DOES NOT CONTROL, ENDORSE OR TAKE RESPONSIBILITY FOR ANY USER CONTENT OR THIRD-PARTY CONTENT AVAILABLE ON OR LINKED TO BY THE SERVICES. UBER CANNOT AND DOES NOT REPRESENT OR WARRANT THAT THE SERVICES ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS.

UBER'S USE OF ALGORITHMS IN AN ATTEMPT TO PROVIDE SERVICES OR IMPROVE THE EXPERIENCE OF USERS AND THE SECURITY AND SAFETY OF THE SERVICES DOES NOT CONSTITUTE A GUARANTEE OR WARRANTY OF ANY KIND, EXPRESSED OR IMPLIED.

**Limitation of Liability.**

UBER SHALL NOT BE LIABLE FOR INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, PUNITIVE, OR CONSEQUENTIAL DAMAGES, INCLUDING LOST PROFITS, LOST DATA, PERSONAL INJURY, OR PROPERTY DAMAGE RELATED TO, IN CONNECTION WITH, OR OTHERWISE RESULTING FROM ANY USE OF THE SERVICES, REGARDLESS OF THE NEGLIGENCE (EITHER ACTIVE, AFFIRMATIVE, SOLE, OR CONCURRENT) OF UBER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

UBER SHALL NOT BE LIABLE FOR ANY DAMAGES, LIABILITY OR LOSSES ARISING OUT OF: (i) YOUR USE OF OR RELIANCE ON THE SERVICES OR YOUR INABILITY TO ACCESS OR USE THE SERVICES; OR (ii) ANY TRANSACTION OR RELATIONSHIP BETWEEN YOU AND ANY THIRD-

PARTY PROVIDER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. UBER SHALL NOT BE LIABLE FOR DELAY OR FAILURE IN PERFORMANCE RESULTING FROM CAUSES BEYOND UBER'S REASONABLE CONTROL. YOU ACKNOWLEDGE THAT THIRD-PARTY PROVIDERS PROVIDING TRANSPORTATION SERVICES REQUESTED THROUGH SOME UBER SERVICES MAY OFFER RIDESHARING OR PEER-TO-PEER TRANSPORTATION SERVICES AND MAY NOT BE PROFESSIONALLY LICENSED OR PERMITTED. YOU ACKNOWLEDGE THAT THIRD-PARTY PROVIDERS ARE NOT OSTENSIBLE AGENTS, APPARENT AGENTS, ACTUAL AGENTS, OR EMPLOYEES OF UBER.

THE SERVICES MAY BE USED BY YOU TO REQUEST AND SCHEDULE TRANSPORTATION, GOODS, OR LOGISTICS SERVICES WITH THIRD-PARTY PROVIDERS, BUT YOU AGREE THAT UBER HAS NO RESPONSIBILITY OR LIABILITY TO YOU RELATED TO ANY TRANSPORTATION, GOODS OR LOGISTICS SERVICES PROVIDED TO OR NOT PROVIDED TO YOU BY THIRD-PARTY PROVIDERS OTHER THAN AS EXPRESSLY SET FORTH IN THESE TERMS.

UBER SHALL NOT BE LIABLE FOR ANY DAMAGES, LIABILITY OR LOSSES ARISING OUT OF LACK OF OR IMPROPER INSTALLATION OR USE OF CHILD RESTRAINT SYSTEMS FOR GUESTS ON RIDES REQUESTED THROUGH THE SERVICES FOR WHOM A CHILD RESTRAINT SYSTEM IS LEGALLY REQUIRED.

THE LIMITATIONS AND DISCLAIMERS IN THIS SECTION DO NOT PURPORT TO LIMIT LIABILITY OR ALTER YOUR RIGHTS AS A CONSUMER THAT CANNOT BE EXCLUDED UNDER APPLICABLE LAW. BECAUSE SOME STATES OR JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF OR THE LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, IN SUCH STATES OR JURISDICTIONS, UBER'S LIABILITY SHALL BE LIMITED TO THE EXTENT PERMITTED BY LAW. THIS PROVISION SHALL HAVE NO EFFECT ON UBER'S CHOICE OF LAW PROVISION SET FORTH BELOW.

**Indemnity.**

You agree to indemnify and hold Uber and its affiliates and their officers, directors, employees, and agents harmless from and against any and all actions, claims, demands, losses, liabilities, costs, damages, and expenses (including attorneys' fees), arising out of or in connection with: (i) your use of the Services or services or goods obtained through your use of the Services; (ii) your breach or violation of any of these Terms; (iii) Uber's use of your User Content; or (iv) your violation of the rights of any third party, including Third-Party Providers.

# 8. Other Provisions

### Choice of Law.

These Terms shall be governed by and construed in accordance with the laws of the state in which your dispute arises, without regard to the choice or conflict of law principles of any

jurisdiction, except as may be otherwise provided in the Arbitration Agreement in Section 2 above or in Supplemental Terms applicable to your region. This Choice of Law provision applies only to the interpretation of these Terms, and these provisions shall not be interpreted as generally extending any state's law to you if your dispute did not arise in that state.

Any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to these Terms, shall be governed by and construed in accordance with the laws of the state in which the incident or accident occurred.

### Choice of Forum.

Any dispute, claim or controversy arising out of or relating to these Terms or the existence, breach, termination, enforcement, interpretation or validity thereof, shall be brought exclusively in the state and federal courts of the state in which the dispute, claim or controversy arose, notwithstanding that other courts may have jurisdiction over the parties and subject matter, except as may be otherwise provided by the Arbitration Agreement above or in Supplemental Terms applicable to your region.

Notwithstanding the foregoing, any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to these Terms, shall be brought exclusively in the state or federal courts in the state in which the incident or accident occurred, notwithstanding that other courts may have jurisdiction over the parties and subject matter, and except as may be otherwise provided in the Arbitration Agreement in Section 2 or in Supplemental Terms applicable to your region, to the extent permitted by law.

The foregoing Choice of Law and Choice of Forum provisions do not apply to the Arbitration Agreement in Section 2, and we refer you to Section 2 for the applicable provisions for such disputes.

### Claims of Copyright Infringement.

Claims of copyright infringement should be sent to Uber's designated agent. Please see Uber's Copyright Policy for the designated address and additional information.

### Notice.

Uber may give notice by means of a general notice on or through the Services, electronic mail to the email address associated with your Account, telephone or text message to any phone number provided in connection with your Account, or by written communication sent by first class mail or pre-paid post to any address connected with your Account. Such notice shall be

deemed to have been given upon the expiration of 48 hours after mailing or posting (if sent by first class mail or pre-paid post) or at the time of sending (if sent by email, telephone, or on or through the Services). Notwithstanding the foregoing, notice of any modifications to these Terms shall be effective upon posting an updated version of these Terms on Uber's website or through the Services. You may give notice to Uber, with such notice deemed given when received by Uber, at any time by first class mail or pre-paid post to our registered agent for service of process, c/o Uber Technologies, Inc. The name and current contact information for the registered agent in each state are available online at https://www.wolterskluwer.com/en/solutions/ct-corporation/sop-locations. If another provision of these Terms addresses any specific notice (for example, notice of updates to these Terms, or notice of a dispute or arbitration demand), those specific notice provisions shall prevail to the extent there is any conflict or inconsistency between those provisions and this notice provision.

**General.**

You may not assign these Terms without Uber's prior written approval. Uber may assign these Terms without your consent to: (i) a subsidiary or affiliate; (ii) an acquirer of Uber's equity, business or assets; or (iii) a successor by merger. Any purported assignment by you in violation of this Section shall be void. No joint venture, partnership, employment, or agency relationship exists between you, Uber, any Third-Party Provider, or any Out-of-App Experience Provider as a result of these Terms or use of the Services. If any provision of these Terms is held to be invalid or unenforceable, such provision shall be struck and the remaining provisions shall be enforced to the fullest extent under law. Uber's failure to enforce any right or provision in these Terms shall not constitute a waiver of such right or provision unless acknowledged and agreed to by Uber in writing. This provision shall not affect the Severability and Survivability section of the Arbitration Agreement of these Terms.

## Yasal Merkez'e dönün→

Uber

Yardım Merkezini Ziyaret Edin

Kişisel bilgilerimi satmayın ve paylaşmayın

Google Veri Politikası

## Şirket

Hakkımızda

Sunduklarımız

Güncel Haberler

Yatırımcılar

Blog

Kariyer fırsatları

AI

Hediye kartları

## Ürünler

Yolculuk

Araç sürün

Teslim edin

Yemek siparişi verin

Uber for Business

Uber Freight

## Küresel vatandaşlık

Güvenlik

Çeşitlilik ve Kapsayıcılık

Sürdürülebilirlik

Yolculuk

Havalimanları

Şehirler

English

New York

 

© 2023 Uber Technologies Inc.

Gizlilik                    Erişilebilirlik              Hükümler ve Koşullar

# EXHIBIT N

EFFECTIVE DATE 2023-06-14 UBER TERMS

Uber                                        Log in    Sign up    ≡

Select jurisdiction:      Select language:

United States ▼           English ▼

Last modified: 6/14/2023

# U.S. Terms of Use

These Terms of Service ("Terms of Service") constitute a legally binding agreement between you and Uber Technologies, Inc. and its subsidiaries, representatives, affiliates, officers and directors (collectively, "Uber") governing your use of Uber's personalized, multipurpose, digital marketplace platform ("Uber Marketplace Platform") and any related content or services, including mobile and/or web-based applications ("Applications" or the "Uber App," and together with the Uber Marketplace Platform, the "Services").

IMPORTANT: PLEASE BE ADVISED THAT THESE TERMS OF SERVICE CONTAIN PROVISIONS THAT GOVERN HOW YOU CAN BRING CLAIMS BETWEEN YOU AND UBER, INCLUDING THE ARBITRATION AGREEMENT IN SECTION 2 BELOW. THESE TERMS OF SERVICE OUTLINE HOW SUCH CLAIMS ARE RESOLVED, INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT AROSE OR WERE ASSERTED BEFORE THE EFFECTIVE DATE OF THESE TERMS OF SERVICE. PLEASE REVIEW THE ARBITRATION AGREEMENT IN SECTION 2 CAREFULLY, AS IT REQUIRES YOU TO RESOLVE ALL DISPUTES WITH UBER ON AN INDIVIDUAL BASIS AND, WITH LIMITED EXCEPTIONS, THROUGH FINAL AND BINDING ARBITRATION, YOU ARE WAIVING YOUR RIGHT TO SEEK RELIEF IN A COURT OF LAW AND TO HAVE A JURY TRIAL ON YOUR CLAIMS. BY AGREEING TO THESE TERMS OF SERVICE, YOU EXPRESSLY ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTOOD ALL OF THESE TERMS OF SERVICE AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT DECISION.

Notwithstanding the foregoing, if you choose, now or in the future, to provide transportation (e.g., ride-hailing), logistics (e.g., freight), delivery (e.g., food, packages, and other goods) and other services (collectively, "Third-Party Services"), these Terms of Service do not supersede or otherwise impact the enforceability of any agreements you may have with Uber or its subsidiaries regarding such Third-Party Services (e.g., the Platform Access Agreement, the Technology Services Agreement and/or any similar agreements). To the extent (but only to the extent) any agreement you may have with Uber regarding Third-Party Services conflicts with

these Terms of Service, those agreements (and not these Terms of Service) will prevail with respect to any disputes arising from your provision of Third-Party Services; otherwise, any relevant provisions in these Terms of Service apply.

# 1. Contractual Relationship; Termination; and Modification

In addition to these Terms of Service, your access to, and use of the Services is also governed by the applicable terms found on our website, including without limitation, the Privacy Notice, which describes how we collect, use and disclose your personal information; the Generated Content Terms; Community Guidelines; Referral Policies; and Uber's other applicable Uber standards and policies (including, without limitation, Uber's safety standards, the accessibility policies and U.S. Service Animal Policy), as well as the ADT Mobile Security Monitoring Terms, which we refer to collectively as the "Supplemental Terms."

Collectively, we refer to these Terms of Service and the Supplemental Terms as the "Terms." These Terms govern your access or use, from within the United States and its territories and possessions, of the Services made available in the United States and its territories and possessions (the "Territory"). If you use the Services in another country, you agree to be subject to Uber's terms of service for that country. PLEASE READ THESE TERMS CAREFULLY, AS THEY CONSTITUTE A LEGAL AGREEMENT BETWEEN YOU AND UBER. In these Terms, the words "including" and "include" mean "including, but not limited to."

By accessing or using the Services, you confirm your agreement to be bound by these Terms. If you do not agree to these Terms, do not access or use the Services. These Terms expressly govern the use of the Services in the Territory.

Termination.

Uber, in its sole discretion, may immediately terminate these Terms or any Services with respect to you, or generally cease offering or deny access to the Services or any portion thereof, at any time for any reason.

Modification.

Uber reserves the right to modify these Terms or its policies relating to the Services at any time, effective upon posting of an updated version of these Terms through the Services or Uber's website. You should regularly review these Terms, as your continued use of the Services after any such changes constitutes your agreement to such changes.

# 2. Arbitration Agreement

By agreeing to these Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration as set forth in this Arbitration

Agreement, and not as a class, collective, coordinated, consolidated, mass and/or representative action. You and Uber are each waiving your right to a trial by jury. This Arbitration Agreement will preclude you from bringing any class, collective, coordinated, consolidated, mass and/or representative action against Uber, and also preclude you from participating in or recovering relief in any current or future class, collective, coordinated, consolidated, mass and/or representative action brought against Uber by someone else— except as provided below in Section 2(a)(3)(c). Thus, the parties agree that the Arbitrator shall not conduct any form of class, collective, coordinated, consolidated, mass and/or representative arbitration, nor join, coordinate, or consolidate claims of multiple individuals against Uber in a single proceeding—except as provided below in Section 2(a)(3)(c). For the avoidance of doubt, except as provided below in Section 2(a)(3)(c), this Arbitration Agreement precludes you from bringing or participating in any kind of class, collective, coordinated, consolidated, mass and/or representative or other kind of group, multi-plaintiff or joint action against Uber, other than participating in a classwide, collective, coordinated, consolidated, mass and/or representative settlement of claims.

(a) Agreement to Binding Arbitration Between You and Uber.

(1) Covered Disputes: Except as expressly provided below in Section 2(b), you and Uber agree that any dispute, claim, or controversy in any way arising out of or relating to (i) these Terms and prior versions of these Terms, or the existence, breach, termination, enforcement, interpretation, scope, waiver, or validity thereof; (ii) your access to or use of the Services at any time; (iii) incidents or accidents resulting in personal injury to you or anyone else that you allege occurred in connection with your use of the Services (including, but not limited to, your use of the Uber Marketplace Platform or the driver version of the Uber App), regardless whether the dispute, claim, or controversy occurred or accrued before or after the date you agreed to these Terms, and regardless whether you allege that the personal injury was experienced by you or anyone else; and (iv) your relationship with Uber, will be settled by binding individual arbitration between you and Uber, and not in a court of law. This Arbitration Agreement survives after your relationship with Uber ends.

(2) Class Action Waiver: Any and all disputes, claims, or controversies between the parties shall be resolved only in individual arbitration. The parties expressly waive the right to have any dispute, claim, or controversy brought, heard, administered, resolved, or arbitrated as a class, collective, coordinated, consolidated, and/or representative action, and neither an arbitrator nor an arbitration provider shall have any authority to hear, arbitrate, or administer any class, collective, coordinated, consolidated, and/or representative action, or to award relief to anyone but the individual in arbitration. The parties also expressly waive the right to seek, recover, or obtain any non-individual relief. Notwithstanding anything else in this agreement, this Class Action Waiver does not prevent you or Uber from participating in a classwide, collective, and/or representative settlement of claims.

The parties further agree that if for any reason a claim does not proceed in arbitration, this Class Action Waiver shall remain in effect, and a court may not preside over any action joining, coordinating, or consolidating the claims of multiple individuals against Uber in a single proceeding, except that this Class Action Waiver shall not prevent you or Uber from participating in a classwide, collective, and/or representative settlement of claims. If there is a final judicial determination that any portion of this Class Action Waiver is unenforceable or unlawful for any reason, (i) any class, collective, coordinated, consolidated, and/or representative claims subject to the unenforceable or unlawful portion(s) shall proceed in a court of competent jurisdiction; (ii) the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration; (iii) the unenforceable or unlawful portion(s) shall be severed from this Arbitration Agreement; and (iv) severance of the unenforceable or unlawful portion(s) shall have no impact whatsoever on the enforceability, applicability, or validity of the Arbitration Agreement or the arbitrability of any remaining claims asserted by you or Uber.

(3) <u>Mass Actions</u>:

a. <u>Mass Action Waiver</u>: Any and all disputes, claims, or controversies between the parties shall be resolved only in individual arbitration. The parties expressly waive the right to have any dispute, claim, or controversy brought, heard, administered, resolved, or arbitrated as a mass action, and neither an arbitrator nor an arbitration provider shall have any authority to hear, arbitrate, or administer any mass action or to award relief to anyone but the individual in arbitration—except as provided below in Section 2(a)(3)(c). The parties also expressly waive the right to seek, recover, or obtain any non-individual relief. The parties agree that the definition of a "Mass Action" includes, but is not limited to, instances in which you or Uber are represented by a law firm or collection of law firms that has filed 50 or more arbitration demands of a substantially similar nature against the other party within 180 days of the arbitration demand filed on your or Uber's behalf, and the law firm or collection of law firms seeks to simultaneously or collectively administer and/or arbitrate all the arbitration demands in the aggregate. Notwithstanding anything else in this agreement, this Mass Action Waiver does not prevent you or Uber from participating in a mass settlement of claims.

b. <u>Dispute Procedure</u>: Notwithstanding any provision to the contrary in the applicable arbitration provider's rules, the arbitrator shall be empowered to determine whether the party bringing any claim has filed a Mass Action in violation of the Mass Action Waiver. Either party shall raise with the arbitrator or arbitration provider such a dispute within 15 days of its arising. If such a dispute arises before an arbitrator has been appointed, the parties agree that (i) a panel of three arbitrators shall be appointed to resolve only disputes concerning whether the party bringing any claim has filed a Mass Action in violation of the Mass Action Waiver. Each party shall select one arbitrator from the arbitration provider's roster to serve as a neutral arbitrator, and these arbitrators shall appoint a third neutral arbitrator. If the parties' arbitrators cannot agree on a third arbitrator, the arbitration provider will select the third arbitrator; (ii) Uber shall pay any administrative fees or costs incidental to the appointment of

Arbitrators under this provision, as well as any fees or costs that would not be incurred in a court proceeding, such as payment of the fees of the arbitrators, as well as room rental; (iii) the arbitrators shall issue a written decision with findings of fact and conclusions of law; and (iv) any further arbitration proceedings or assessment of arbitration-related fees shall be stayed pending the arbitrators' resolution of the parties' dispute. If the arbitrator or panel of arbitrators determines that you have violated the Mass Action Waiver, the parties shall have the opportunity to opt out of arbitration within 30 days of the arbitrator's or panel of arbitrator's decision. You may opt out of arbitration by providing written notice of your intention to opt out to the arbitration provider and to Uber Technologies, Inc., Attn: Legal Department, 1515 3rd Street, San Francisco, CA 94158 via USPS Priority Mail or hand delivery. This written notice must be signed by you, and not any attorney, agent, or other representative of yours. Uber may opt out of arbitration by sending written notice of its intention to opt out to the arbitration provider and to you or your attorney, agent, or representative if you are represented. For the avoidance of doubt, the ability to opt out of arbitration described in this Section 2(a)(3)(b) only applies if the arbitrator or panel of arbitrators determines that you have violated the Mass Action Waiver. If the parties proceed with arbitration, the parties agree that arbitrations will be batched as provided in Section 2(a)(3)(c) below.

c. Batching:

i. To increase efficiency of resolution in the event a Mass Action is filed and neither party exercises its right to opt out of arbitration pursuant to Section 2(a)(3)(b) above, the following procedure shall apply. At the request of either party, an arbitrator shall be selected according to the applicable arbitration provider's rules to act as a special master ("Special Master") to resolve threshold disputes regarding the propriety of some or all the arbitration demands submitted in the Mass Action ("Mass Arbitration Demands"). These threshold disputes may include, but are not limited to:

1. Any dispute regarding filing fees owed with respect to the Mass Arbitration Demands, including whether claimants have submitted valid fee waivers;

2. Any dispute regarding whether the applicable arbitration provider has complied with the Arbitration Agreement with respect to processing and administering the Mass Arbitration Demands;

3. Any dispute regarding whether the Mass Arbitration Demands meet the requirements set forth in Section 2(d) below;

4. Whether claimants are barred from proceeding with their claims based on a prior settlement agreement, violation of these Terms, or expiration of the statute of limitations;

5. Any dispute relating to representation of the same claimant by multiple law firms;

6. Any dispute regarding whether the Mass Arbitration Demands were filed with the correct arbitration provider;

7. Any dispute regarding discovery common to all claims; and

8. Any disputes regarding legal or factual issues common to all claims.

Any such request shall be made within 15 days following the expiration of the opt-out period described in Section 2(a)(3)(b), and may be made by providing written notice to the arbitration provider. Upon the request of either party to appoint a Special Master to resolve the foregoing issues, the applicable arbitration provider shall refrain from further processing any of the Mass Arbitration Demands to which a dispute has been raised. No further payment for filing fees, administrative costs, or arbitrator fees shall be deemed due with respect to any of the Mass Arbitration Demands as to which a dispute has been raised until after the dispute(s) has/have been resolved by the Special Master. Uber shall be responsible for the applicable arbitration provider's and Special Master's fees and costs related to the proceedings before the Special Master.

A Special Master appointed pursuant to this procedure shall have no authority to consolidate cases.

ii. After proceedings before the Special Master have concluded, to the extent any of the Mass Arbitration Demands are permitted to proceed, the parties shall group the Mass Arbitration Demands into batches of no more than 100 demands per batch by state of residence, and then alphabetically by last name (plus, to the extent there are less than 100 arbitration demands left over after the batching described above, a final batch consisting of the remaining demands), and shall inform the arbitration provider of the batches and their compositions within 14 days of the conclusion of proceedings before the Special Master. The arbitration provider shall treat each batch of claims as one case, with each case having one demand for arbitration, one appointed arbitrator, and one set of administrative documents and administrative and filing fees per batch. The parties shall randomly assign sequential numbers to each batch, and only one batch shall proceed to arbitration at a time in the order of the random sequential numbers. A separate arbitrator will be appointed to, and administrative and filing fees assessed for, each batch as the batch proceeds to arbitration. You agree to cooperate in good faith with Uber and the arbitration provider to implement such a batch approach to resolution and fees. Nothing in this provision shall be construed as limiting the right to object that the filing or presentation of multiple arbitration demands by or with the assistance of the same law firm or organization violates any term of this Agreement.

iii. If any Mass Arbitration Demands were originally processed as individual arbitration demands before this batching procedure was commenced, further proceedings, including the assessment of further arbitration filing or administration fees to either party shall be governed by the procedures set forth in this Section 2(a)(3).

(4) <u>Delegation Clause</u>: Only an arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement, including without limitation any claim that all or any part of this Arbitration Agreement is void or voidable. An arbitrator shall also have exclusive authority to resolve all threshold arbitrability issues, including issues relating to whether these Terms are applicable, unconscionable, or illusory and any defense to arbitration, including without limitation waiver, delay, laches, or estoppel. However, only a court of competent jurisdiction, and not an arbitrator, shall have the exclusive authority to resolve any and all disputes arising out of or relating to the Class Action Waiver and Mass Action Waiver, including, but not limited to, any claim that all or part of the Class Action Waiver and/or Mass Action Waiver is unenforceable, unconscionable, illegal, void, or voidable—except that, as stated and pursuant to the procedures provided in Section 2(a)(3)(b), an arbitrator or panel of arbitrators shall have authority to determine whether the party bringing any claim has violated the Mass Action Waiver.

(5) <u>Application to Third Parties</u>: This Arbitration Agreement shall be binding upon, and shall include any claims brought by or against any third parties, including but not limited to your spouses, heirs, third-party beneficiaries and assigns, where their underlying claims arise out of or relate to your use of the Services. To the extent that any third-party beneficiary to this agreement brings claims against the Parties, those claims shall also be subject to this Arbitration Agreement.

(b) Exceptions to Arbitration.

Notwithstanding the foregoing, this Arbitration Agreement shall not require arbitration of the following claims: (i) individual claims brought in small claims court so long as the matter remains in such court and advances only on an individual basis; (ii) individual claims of sexual assault or sexual harassment occurring in connection with your use of the Services; and/or (iii) injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation, or violation of a party's copyrights, trademarks, trade secrets, patents, or other intellectual property rights.

Such claims may be brought and litigated in a court of competent jurisdiction by you on an individual basis only. On an individual basis means that you cannot bring such claims as a class, collective, coordinated, consolidated, mass and/or representative action against Uber. For the avoidance of doubt, this precludes you from bringing claims as or participating in any kind of any class, collective, coordinated, consolidated, mass and/or representative or other kind of group, multi-plaintiff or joint action against Uber and no action brought by you may be consolidated or joined in any fashion with any other proceeding. Where your claims are brought and litigated to completion on such an individual basis in a court of competent jurisdiction, Uber agrees to honor your election.

The parties' agreement not to require arbitration in these limited instances does not waive the enforceability of this Arbitration Agreement as to any other provision (including, but not limited to, the waivers provided for in Section 2(a), which will continue to apply in court as well as in arbitration), or the enforceability of this Arbitration Agreement as to any other controversy, claim, or dispute.

(c) Rules and Governing Law.

For disputes arising in California, the arbitration will be administered by ADR Services, Inc. ("ADR") in accordance with ADR's Arbitration Rules (the "ADR Rules") in effect at the time that the claim is brought, unless the parties agree otherwise in writing. The ADR Rules are available at www.adrservices.com or by searching for "ADR Arbitration Rules" using a service such as www.google.com or www.bing.com. The arbitration shall be heard by one arbitrator (the "Arbitrator") selected in accordance with the ADR Rules.

For disputes arising outside of California (or for disputes arising in California only if ADR cannot or will not administer the arbitration), the parties shall be required to meet and confer to select a neutral arbitration provider. Such an arbitration provider shall have operations in the state in which the dispute arises. If the parties are unable to mutually agree upon an arbitration provider, then either party may invoke 9 U.S.C. § 5 to request that a court of competent jurisdiction appoint an arbitration provider with operations in the state in which the dispute arises. Any arbitration provider appointed by a court under 9 U.S.C. § 5 shall conduct arbitration solely on an individualized basis as set forth in this Section 2. Once the parties mutually agree upon a neutral arbitration provider, or an arbitrator provider is appointed under 9 U.S.C. § 5, the ensuing arbitration shall commence pursuant to the rules of the designated arbitration provider, except as designated herein. Once an arbitration provider is agreed upon or appointed, an Arbitrator shall be appointed. The Arbitrator will be either (1) a retired judge or (2) an attorney licensed to practice law in the state where the arbitration is conducted with experience in the law underlying the dispute. The Arbitrator will be selected by the parties from the applicable arbitration provider's roster of arbitrators. If the parties are unable to agree upon an Arbitrator after a good faith meet and confer effort, then the applicable arbitration provider will appoint the Arbitrator in accordance with its rules.

Notwithstanding any choice of law or other provision in these Terms, the parties agree and acknowledge that this Arbitration Agreement evidences a transaction involving interstate commerce and that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), will govern its interpretation and enforcement and proceedings pursuant thereto. It is the intent of the parties to be bound by the provisions of the FAA for all purposes, including, but not limited to, interpretation, implementation, enforcement, and administration of this Arbitration Agreement, and that the FAA and the applicable arbitration provider's rules shall preempt all state laws to the fullest extent permitted by law. All statutes of limitations that would otherwise be applicable will apply to any arbitration proceeding. If the FAA and applicable

arbitration provider's rules are found to not apply to any issue regarding the interpretation or enforcement of this Arbitration Agreement, then that issue shall be resolved under the laws of the state where you reside when you accept these Terms.

Any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to the Terms, shall be governed by and construed in accordance with the laws of the state in which the incident or accident occurred.

(d) Process.

Pre-Arbitration Dispute Resolution and Notification. The parties agree that good-faith informal efforts to resolve disputes often can result in a prompt, low-cost, and mutually beneficial outcome. The parties therefore agree that, before either party demands arbitration against the other, we will personally meet and confer, via telephone or videoconference, in a good-faith effort to resolve informally any claim covered by this Arbitration Agreement. Multiple individuals initiating claims cannot participate in the same informal telephonic dispute resolution conference. If you are represented by counsel, your counsel may participate in the conference, but you shall also fully participate in the conference. The party initiating the claim must give notice to the other party in writing of their intent to initiate an informal dispute resolution conference, which shall occur within 60 days after the other party receives such notice, unless an extension is mutually agreed upon by the parties. To notify Uber that you intend to initiate an informal dispute resolution conference, write to Uber Technologies, Inc., Attn: Legal Department, 1515 3rd Street, San Francisco, CA 94158, providing your name, the telephone number(s) associated with your Uber account (if any), the email address(es) associated with your Uber account, and a description of your claim. Engaging in an informal dispute resolution conference is a condition precedent that must be fulfilled before commencing arbitration, and the Arbitrator shall dismiss any arbitration demand filed before completion of an informal dispute resolution conference. The statute of limitations and any filing fee deadlines shall be tolled while the parties engage in the informal dispute resolution process required by this paragraph.

Initiating Arbitration. In order to initiate arbitration following the conclusion of the informal dispute resolution process required by this Section, a party must provide the other party with a written demand for arbitration and file the demand with the applicable arbitration provider, as determined by Section 2(c). A party initiating an arbitration against Uber must send the written demand for arbitration to Uber Technologies, Inc., LLC, Attn: Legal Department, 1515 3rd Street, San Francisco, CA 94158, or serve the Demand on Uber's registered agent for service of process, c/o Uber Technologies, Inc. (the name and current contact information for the registered agent in each state are available online here). Additionally, a party initiating arbitration against Uber must send an electronic version of the demand for arbitration to the

Arbitration Provider, and must send an electronic version of the as-filed demand to filed-arbitration-demands@uber.com.

By signing the demand for arbitration, counsel certifies to the best of counsel's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that (i) the demand for arbitration is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of dispute resolution; (ii) the claims and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; and (iii) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Arbitrator shall be authorized to afford any relief or impose any sanctions available under Federal Rule of Civil Procedure 11 or any applicable state law for either party's violation of this requirement.

(e) Location.

Unless you and Uber otherwise agree, if you reside in the United States, the arbitration will be conducted in the county where you reside. If you do not reside in the United States, the arbitration will be conducted in the county where the dispute arises. Your right to a hearing will be determined by the applicable arbitration provider's rules. Subject to the applicable arbitration provider's rules, the Arbitrator will have the discretion to direct a reasonable exchange of information by the parties, consistent with the expedited nature of the arbitration.

(f) Offers of Judgment.

At least 10 days before the date set for the arbitration hearing, any party may serve an offer in writing upon the other party to allow judgment on specified terms. If the offer is accepted, the offer with proof of acceptance shall be submitted to the arbitrator, who shall enter judgment accordingly. If the offer is not accepted prior to the arbitration hearing or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the arbitration. If an offer made by one party is not accepted by the other party, and the other party fails to obtain a more favorable award, the other party shall not recover their post-offer costs and shall pay the offering party's costs from the time of the offer.

(g) Arbitrator's Decision.

The Arbitrator will render an award within the time frame specified in the applicable arbitration provider's rules. Judgment on the arbitration award may be entered in any court of competent jurisdiction. The Arbitrator may award declaratory or injunctive relief only in favor of the claimant and only to the extent necessary to provide relief warranted by the claimant's individual claim. An Arbitrator's decision shall be final and binding on all parties.

The Arbitrator is not bound by decisions reached in separate arbitrations, and the Arbitrator's decision shall be binding only upon the parties to the arbitration that are the subject of the decision.

The Arbitrator shall award reasonable costs incurred in the arbitration to the prevailing party in accordance with the law(s) of the state in which arbitration is held.

(h) Fees.

With the exception of the provisions governing payment of arbitration costs set forth above, your responsibility to pay any filing, administrative, and arbitrator fees will be solely as set forth in the applicable arbitration provider's rules and shall be up to the amount you would be required to pay if you filed a claim in court.

If you have a gross monthly income of less than 300% of the federal poverty guidelines, you are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. If you believe that you meet the requirements to obtain a fee waiver, and your demand for arbitration arises outside of California, then you may request a fee waiver only by submitting to the arbitration provider AO 240, Application to Proceed in District Court Without Prepaying Fees or Costs (found here), or a declaration under oath containing all the information required by AO 240; if your demand for arbitration arises in California, then you must submit a declaration under oath providing your monthly income and the number of persons in your household.

Any and all disputes regarding a party's obligation to pay any arbitration fees or costs that arise after an arbitrator is appointed shall be determined solely by the arbitrator. If such a dispute arises before an arbitrator has been appointed, and if no Special Master has been requested by either party pursuant to Section 2(a)(3)(c)(i) of these Terms, the parties agree that (i) the due date for any disputed fees shall be stayed pending resolution of the parties' dispute, (ii) a panel of three arbitrators shall be appointed to resolve the parties' dispute concerning a party's obligation to pay fees or costs of arbitration, (iii) the panel of arbitrators shall be appointed by each party selecting one arbitrator from the arbitration provider's roster to serve as neutral arbitrators, and these arbitrators shall appoint a third neutral arbitrator. If the parties' arbitrators cannot agree on a third arbitrator, the arbitration administrator will select the third arbitrator, (iv) Uber shall pay any administrative fees or costs incidental to the appointment of a panel of arbitrators under this provision, as well as any fees or costs that would not be incurred in a court proceeding, such as payment of the fees of the arbitrator(s), as well as room rental, and (v) the arbitrator(s) shall issue a written decision with findings of fact and conclusions of law. If two or more fee disputes between a claimant and Uber arise at or around the same time, the disputes may be consolidated for resolution by a single arbitrator or panel of arbitrators either at the agreement of the parties or the election of the party common to all such disputes.

(i) Severability and Survival.

If any portion of this Arbitration Agreement is found to be unenforceable or unlawful for any reason, (i) the unenforceable or unlawful provision shall be severed from these Terms; (ii) severance of the unenforceable or unlawful provision shall have no impact whatsoever on the remainder of the Arbitration Agreement or the parties' ability to compel arbitration of any remaining claims on an individual basis pursuant to the Arbitration Agreement; and (iii) to the extent that any claims must therefore proceed on a class, collective, consolidated, or representative basis, such claims must be litigated in a civil court of competent jurisdiction and not in arbitration, and the parties agree that litigation of those claims shall be stayed pending the outcome of any individual claims in arbitration.

## 3. The Services

The Services enable you and other consumers to find, request, or receive (i) Third-Party Services from third party service providers, including without limitation, merchants, retailers, grocers, restaurants, independent drivers and delivery persons, and autonomous vehicles or autonomous vehicle fleet providers ("Third-Party Providers"); (ii) related personalized content, including features, recommendations and advertisements for products or services tailored to your needs and interests; and (iii) certain supporting services, including providing you the ability to express certain preferences about the Third-Party Services or Third-Party Service Providers, payment processing and customer support. Unless otherwise agreed by Uber in a separate written agreement with you, these Services are made available solely for your personal, noncommercial use.

Once you make a request, Uber notifies Third-Party Providers that an opportunity is available so that the Third-Party Provider may complete your request. It is up to the Third-Party Provider to decide whether or not to offer Third-Party Services to you or at all, and it is up to you to decide whether or not to accept such services from a Third-Party Provider. Please note that once your request for the Services has begun, you may no longer have the option to reschedule or cancel. If Uber is able to reschedule or cancel your request, you may be charged a fee and/or may not be refunded for items that have been purchased on your behalf.

UBER IS NOT A COMMON OR MOTOR CARRIER AND DOES NOT TRANSPORT YOU OR YOUR GOODS. GENERALLY, THE SERVICES ARE ONLY OPEN TO REGISTERED USERS OF THE SERVICES AND NOT TO THE GENERAL PUBLIC. YOUR ABILITY TO REQUEST, AND IF APPLICABLE, OBTAIN THIRD-PARTY SERVICES FROM THIRD-PARTY PROVIDERS IN CONNECTION WITH THE USE OF THE SERVICES DOES NOT ESTABLISH UBER AS A PROVIDER OF ANYTHING OTHER THAN THE SERVICES. INDEPENDENT THIRD-PARTY PROVIDERS ARE NOT ACTUAL AGENTS, APPARENT AGENTS, OSTENSIBLE AGENTS, OR EMPLOYEES OF UBER IN ANY WAY. ANY EFFORT, FEATURE, PROCESS, POLICY, STANDARD OR OTHER EFFORT UNDERTAKEN BY UBER TO FACILITATE YOUR RECEIPT OF THIRD PARTY SERVICES OR IN THE INTEREST OF SAFETY OR SECURITY (WHETHER REQUIRED BY APPLICABLE REGULATIONS OR

NOT) IS NOT AN INDICIA OF AN EMPLOYMENT, ACTUAL AGENCY, APPARENT AGENCY, OR OSTENSIBLE AGENCY RELATIONSHIP WITH A THIRD-PARTY PROVIDER.

Third-Party Services and Content.

While many Third-Party Services are available in the Uber App, certain Third-Party Services or content are only accessible by exiting the Uber App ("Out-of-App Experiences"). Once you click on a link to access Out-of-App Experiences, you will be subject to the terms and conditions and privacy policy of that website, destination, or Out-of-App Experience provider, which are different from Uber's. Uber will not warn you that you have left the Services or that you are subject to the terms and conditions (including privacy policies) of another website, destination, or Out-of-App Experience provider. You use all links in third-party websites and advertisements at your own risk as these are not part of the Services and are not controlled by Uber. Uber does not endorse such Out-of-App Experience providers and in no event shall Uber be responsible or liable for any products or services of such third-party providers.

Third-Party Services made available to you through the Uber App may be provided by an autonomous vehicle. An autonomous vehicle is a vehicle that is capable of operating at, or is equipped with an automated driving system that will enable the vehicle to operate at SAE Levels 3, 4 or 5 of driving automation as defined in the J3016 April 2021 SAE International specification ("Autonomous Vehicle" or "AV"). Autonomous Vehicles are operated by Third-Party Providers that operate a fleet of one or more AVs and may employ or contract with individuals to manage, monitor, or operate its AVs while such vehicles are in motion (such Third-Party Providers, "Autonomous Vehicle Fleet Providers"). Your access to Third-Party Services provided by AV may be subject to your acceptance of Autonomous Vehicle Fleet Providers' terms.

In the event of a conflict in the terms of any Third-Party Services and these Terms, these Terms shall control with respect to Uber and your agreements with Uber herein, and the limitations of liability set forth in Section 7 shall also apply to the Third-Party Provider. The Arbitration Agreement provisions in Section 2 above shall apply instead of the terms of any Third-Party Services for all purposes except with respect to claims that are solely against the Third-Party Provider.

App Stores.

The availability of the Services may be dependent on the third-party from which you received the license to the Uber App, e.g., the Apple iPhone or Android app stores ("App Store"). These Terms are between you and Uber and not with the App Store and Uber is responsible for the provision of Services as described in these Terms. However, if you downloaded the Uber App from the Apple App Store, Apple and its subsidiaries are third-party beneficiaries of these Terms. Upon your acceptance of these Terms, Apple shall have the right (and will be deemed to have accepted the right) to enforce these Terms against you as a third-party beneficiary

thereof. These Terms incorporate by reference Apple's Licensed Application End User License Agreement, for purposes of which, you are the "end-user." In the event of a conflict in the terms of the Licensed Application End User License Agreement and these Terms, these Terms will control.

Ownership; License; and Restrictions.

The Services and all rights, title, and interest, including all related intellectual property rights therein are and shall remain Uber's property or the property of Uber's licensors. These Terms are not a sale and do not convey or grant to you any rights in or related to the Services, or any intellectual property rights owned by Uber, except for the limited license granted above.

Subject to your compliance with these Terms, Uber grants you a limited, non-exclusive, non-sublicensable, revocable, non-transferable license to: (i) access and use the Uber App solely in connection with your use of the Services on your personal device; and (ii) access and use any content, information and related materials that may be made available through the Services, in each case solely for your personal, noncommercial use. Any rights not expressly granted herein are reserved by Uber and Uber's licensors. You agree that you will not use Uber's copyrights, trademarks, service marks, or trade dress, aside from use incidental to your use of the Services, without express, written permission from Uber. This prohibition includes use in domain names, websites, and social media accounts. You may not: (i) remove any copyright, trademark or other proprietary notices from any portion of the Services; (ii) reproduce, modify, prepare derivative works based upon, distribute, license, lease, sell, resell, transfer, publicly display, publicly perform, transmit, stream, broadcast or otherwise exploit the Services except as expressly permitted by Uber; (iii) decompile, reverse engineer or disassemble the Services except as may be permitted by applicable law; (iv) link to, mirror or frame any portion of the Services; (v) cause or launch any programs or scripts for the purpose of, or which result in, unduly burdening or hindering the operation and/or functionality of any aspect of the Services; or (vi) attempt to gain unauthorized access to or impair any aspect of the Services or its related systems or networks.

## 4. Accessing the Services

User Accounts.

In order to use most aspects of the Services, you must register for and maintain an active personal user Services account ("Account"). You cannot register for or maintain an Account if you have previously been banned from accessing or using the Services. Account registration may require you to submit to Uber certain personal information, such as your name, address, mobile phone number and age, as well as at least one valid payment method that you are authorized to use and is supported by Uber. For more information regarding Uber's use of your personal information, please see our Privacy Notice. You agree to maintain accurate, complete,

and up-to-date information in your Account, including a valid phone number, address and payment method. Except as described below, you must be at least 18 years of age, or the age of legal majority in your jurisdiction (if different than 18), to obtain an Account, unless a specific Service permits otherwise. Unless otherwise permitted by Uber in writing, you may only possess one Account and you may not assign or otherwise transfer your Account to any other person or entity. You are responsible for all activity that occurs under your Account, and you agree to maintain the security and secrecy of your Account credentials at all times.

Minors.

Except as described below, the Services are generally not available for use by persons under the age of 18. You may not authorize third-parties to use your Account, and you may not allow persons under the age of 18 to use the Services unless they are accompanied by you or an adult. However, we may offer parents and guardians the ability to create Accounts for their children. If you are a parent or legal guardian, and you allow your child to use the Services, then these Terms apply to you and you are responsible for your child's activity on the Services. If you are under the age to obtain an Account, you must have your parent or legal guardian's permission to use an Account and accept any additional terms required in connection with your access and use of the Services as a minor. Please have your parent or legal guardian read these additional terms with you.

Network Access and Devices.

You are responsible for obtaining the data network access necessary to use the Services. Your mobile network's data and messaging rates and fees may apply if you access or use the Services from your device. You are responsible for acquiring and updating compatible hardware or devices necessary to access and use the Services and any updates thereto. Uber does not guarantee that the Services, or any portion thereof, will function on any particular hardware or devices. In addition, the Services may be subject to malfunctions and delays inherent in the use of the Internet and electronic communications. Uber is not responsible for any delays, delivery failures, or damage, loss or injury resulting from such problems.

## 5. User Conduct and Requirements; Communications; and User Content

User Conduct and Requirements.

In addition to complying with these Terms, you agree to comply with all applicable laws when accessing or using the Services, and you may only access or use the Services for lawful purposes (e.g., no request for the purpose or intent of transport of unlawful or hazardous materials). You may not access or use the Services to cause nuisance, annoyance, inconvenience, damage, or loss to Uber, the Third-Party Provider, or any other party.

If you request a ride option with a child restraint system, neither Uber nor the Third-Party Provider is responsible for the safety of a child restraint system that may be available in the Third-Party Provider's vehicle. It is your obligation to ensure that the child restraint system is installed correctly and that the child is properly secured in the child restraint system. Please refer to your state's laws regarding specific height, age, and weight requirements for using child restraint systems, as well as Uber's policies for child restraint systems, which may be set forth on city-specific web pages. If you request a ride option where a Third-Party Provider agrees to provide you with assistance outside of the vehicle (e.g., Uber Assist), Uber is not responsible for any injury or incident that may arise out of the assistance provided by the Third-Party Provider. In certain instances, you may be asked to provide proof of age, identity or other method of identity verification to access or use the Services, and you agree that you may be denied access to or use of the Services if you refuse to provide proof of age, identity, or other method of identity verification.

Subject to the discretion of a Third-Party Provider, you may be allowed to bring a small animal, such as a dog or cat, on a ride requested through the Services. For such trips, you are responsible for properly securing the animal with a leash, harness, crate / carrier, or through other means. You are also responsible for ensuring that the animal does not cause damage or a mess in the Third-Party Provider's vehicle. You may be subject to a Charge for Repair or Cleaning under Section 6 below for any damage or mess caused by an animal that is transported during a ride requested under your Account. Please note, in accordance with Uber's policies on Service Animals and Assistive Devices, Service Animals are generally permitted to accompany riders without extra charge, regardless of whether it is a Pet Friendly Trip.

For the purpose of assisting us with our compliance and insurance obligations, you agree to notify us within 24 hours and provide us with all reasonable information relating to any incident or accident that occurs during your use of the Services and you agree to cooperate with any investigation and attempted resolution of such incident.

Communications with Uber.

By creating an Account, you electronically agree to accept and receive communications from Uber, Third-Party Providers or third parties providing services to Uber including via email, text message, WhatsApp, calls, in-app communications, and push notifications to the telephone number(s) or email addresses you provided to Uber. You may also receive communications generated by automatic telephone dialing systems and/or which will deliver prerecorded messages sent by or on behalf of Uber, and/or Third-Party Providers, including but not limited to communications concerning requests placed through your Account on the Services. Message and data rates may apply. You can learn more about how Uber may contact you by reading our Privacy Notice.

If you do not wish to receive promotional emails, text messages, or other communications from Uber, you may change your notification preferences by accessing Settings in your Account. To opt out of receiving text messages from Uber, you must reply "STOP" from the mobile device receiving the messages. For purposes of clarity, text messages between you and Third-Party Providers are transactional text messages, not promotional text messages. You acknowledge that opting out of receiving all communications may impact your use of the Services. Notwithstanding the foregoing, if we suspect fraud or unlawful activity on your Account, Uber may contact you using any of the contact information you provided in connection with your Account (including via text or voice-recorded message).

Use of Accounts Owned by Others.

In the event you use an Uber product or service that enables use of or billing to another person or business, certain information will be shared with that party. This may include information regarding the time and date of services you request, the transportation, logistics and/or delivery requested, and the associated charges for such services. If used to request transportation, we may also share information with such person or business regarding safety-related incidents that occur in connection with such transportation. You acknowledge that such data sharing is a condition of use of any such Uber product or service.

User Provided Content; Feedback.

Content that you provide to Uber is governed by Uber's Generated Content Terms, which are incorporated in these Terms by reference. Feedback that you provide to Uber is governed by Uber's Feedback Policy, which are incorporated in these Terms by reference.

## 6. Payment

Prices & Charges.

Your use of the Services may result in charges to you for the services or goods you receive from Uber and/or from Third-Party Providers ("Charges"). Prices displayed to you when purchasing goods through the Services may be inclusive of retail prices charged by the Third-Party Provider and fees paid to Uber. Uber will enable your payment of the applicable Charges for services or goods obtained through your use of the Services. Charges will include applicable taxes where required by law. Charges may include other applicable fees such as delivery fees, service fees, product return fees, cancellation fees, government-mandated fees (such as bag fees), estimated or actual tolls, and/or surcharges. Further, Charges applicable in certain geographical areas may increase substantially during times of high demand or due to other marketplace factors.

With respect to Third-Party Providers, Charges you incur will be owed directly to Third-Party Providers, and Uber will collect payment of those charges from you, on the Third-Party

Provider's behalf as their limited payment collection agent, and payment of the Charges shall be considered the same as payment made directly by you to the Third-Party Provider. Payment to a Third-Party Provider of goods or services shall be considered to occur at the moment you submit payment through Uber. You retain the right to request lower Charges from a Third-Party Provider for services or goods received by you from such Third-Party Provider at the time you receive such services or goods. A Third-Party Provider also retains the right to request higher Charges from you for services or goods provided. For example, a Third-Party Provider that is a merchant may collect lower or higher charges where the actual goods provided differ from the products originally requested, including in connection with differences in quantity, weight, or item type. Subject to requests from you to lower such Charges from a Third-Party Provider, you agree to pay such higher or lower Charges associated with such product differences. Uber will consider in good faith any request from a Third-Party Provider to modify the Charges for a particular service or good. This payment structure is intended to fully compensate a Third-Party Provider, if applicable, for the services or goods obtained in connection with your use of the Services.

There also may be certain Charges you incur that will be owed and paid directly to Uber or its affiliates. For the avoidance of doubt, Uber does not charge a fee for you to access the Uber App, but may charge you a fee or any other Charge for accessing Third-Party Services. Even if not indicated in the Uber App, the prices for product or menu items displayed through the Services may differ from the prices offered or published by Third-Party Providers for the same product or menu items, including as may be offered or published at a physical location operated by a Third-Party Provider, and/or from prices available at other third-party websites/mobile applications. Prices for product or menu items displayed through the Services may not be the lowest prices at which the product or menu items are sold. The product or menu item prices displayed through the Services or fees charged by and paid to Uber may vary based on whether you choose to pick up your order or have it delivered.

All Charges and payments will be enabled by Uber using the preferred payment method designated in your Account, after which you will receive a receipt. If your primary Account payment method is determined to be expired, invalid or otherwise not able to be charged, you agree that Uber may use another available payment method in your Account.

As between you and Uber, Uber reserves the right to establish or adjust Charges for any or all services or goods obtained through the use of the Services at any time. Uber will use reasonable efforts to inform you of Charges that may apply, provided that you will be responsible for Charges incurred under your Account regardless of your awareness of such Charges or the amounts thereof.

Refunds.

Charges paid by you are final and non-refundable, unless otherwise determined by Uber and the Third-Party Provider assessing the Charge. If you have any requests for cancellations, refunds, or returns, or if you think a correction should be made to any Charge you incurred, please visit the "Help" tab in your Account to initiate such requests within 30 days after the Charge took place or Uber will have no further responsibility and you waive your right to later dispute the amounts charged.

Promotional Offers.

Certain users may, from time to time, receive promotional offers and discounts that result in different amounts charged for the same or similar services or goods obtained through the use of the Services, and you agree that such promotional offers and discounts, unless also made available to you, shall have no bearing on your use of the Services or the Charges applied to you. Promotional offers and discounts are subject to change or withdrawal at any time and without notice.

Gratuity.

Except for amounts provided by you through the Services as part of the "tip" feature, Uber does not designate any portion of your payment as a tip or gratuity to a Third-Party Provider. You understand and agree that, while you are free to provide additional payment as a gratuity to any Third-Party Provider who provides you with services or goods obtained through the Service, you are under no obligation to do so.

Damage, Cleaning, Lost and Found, and Charges for Violation of Terms.

Uber may charge you a fee on behalf of Third-Party Providers if, during your use of the Services, you have caused damage to a vehicle or property that requires repair or cleaning ("Repair" or "Cleaning"). The amount of such fee shall be determined, in Uber's sole discretion, based on the type of damage and the severity. Uber reserves the right to verify or otherwise require documentation of damages prior to processing a fee. In the event that a Repair or Cleaning request is verified by Uber in Uber's reasonable discretion, Uber reserves the right to facilitate payment for the reasonable cost of such Repair or Cleaning using your payment method designated in your Account. Such amounts, as well as those pertaining to lost and found goods, will be transferred by Uber to a Third-Party Provider, if applicable, and are non-refundable. Additionally, if you fail to comply with these Terms, you may be responsible for Charges, including without limitation, for transactions that could not be completed properly, arising out of or in connection with your failure to comply with these Terms.

# 7. Disclaimers; Limitation of Liability; and Indemnity.

Disclaimers.

THE SERVICES ARE PROVIDED "AS IS" AND "AS AVAILABLE." UBER DISCLAIMS ALL REPRESENTATIONS AND WARRANTIES, EXPRESS, IMPLIED, OR STATUTORY, NOT EXPRESSLY SET OUT IN THESE TERMS, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. IN ADDITION, UBER MAKES NO REPRESENTATION, WARRANTY, OR GUARANTEE REGARDING THE RELIABILITY, TIMELINESS, QUALITY, SUITABILITY, OR AVAILABILITY OF THE SERVICES OR ANY SERVICES OR GOODS REQUESTED THROUGH THE USE OF THE SERVICES, OR THAT THE SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE.

UBER DOES NOT GUARANTEE THE QUALITY, SUITABILITY, SAFETY OR ABILITY OF THIRD-PARTY PROVIDERS. YOU AGREE THAT THE ENTIRE RISK ARISING OUT OF YOUR USE OF THE SERVICES, AND ANY SERVICE OR GOOD REQUESTED OR OBTAINED FROM THIRD-PARTY PROVIDERS IN CONNECTION THEREWITH, REMAINS SOLELY WITH YOU, TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW.

UBER DOES NOT CONTROL, MANAGE OR DIRECT ANY THIRD-PARTY PROVIDERS. THIRD-PARTY PROVIDERS ARE NOT ACTUAL AGENTS, APPARENT AGENTS, OSTENSIBLE AGENTS, OR EMPLOYEES OF UBER. IF A DISPUTE ARISES BETWEEN YOU AND OR ANY OTHER THIRD PARTY, YOU RELEASE UBER FROM LOSSES OF EVERY KIND AND NATURE, KNOWN AND UNKNOWN, SUSPECTED AND UNSUSPECTED, DISCLOSED AND UNDISCLOSED, ARISING OUT OF OR IN ANY WAY CONNECTED WITH SUCH DISPUTES.

UBER DOES NOT CONTROL, ENDORSE OR TAKE RESPONSIBILITY FOR ANY USER CONTENT OR THIRD-PARTY CONTENT AVAILABLE ON OR LINKED TO BY THE SERVICES. UBER CANNOT AND DOES NOT REPRESENT OR WARRANT THAT THE SERVICES ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS.

UBER'S USE OF ALGORITHMS IN AN ATTEMPT TO PROVIDE SERVICES OR IMPROVE THE EXPERIENCE OF USERS AND THE SECURITY AND SAFETY OF THE SERVICES DOES NOT CONSTITUTE A GUARANTEE OR WARRANTY OF ANY KIND, EXPRESSED OR IMPLIED.

Limitation of Liability.

UBER SHALL NOT BE LIABLE FOR INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, PUNITIVE, OR CONSEQUENTIAL DAMAGES, INCLUDING LOST PROFITS, LOST DATA, PERSONAL INJURY, OR PROPERTY DAMAGE RELATED TO, IN CONNECTION WITH, OR OTHERWISE RESULTING FROM ANY USE OF THE SERVICES, REGARDLESS OF THE NEGLIGENCE (EITHER ACTIVE, AFFIRMATIVE, SOLE, OR CONCURRENT) OF UBER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

UBER SHALL NOT BE LIABLE FOR ANY DAMAGES, LIABILITY OR LOSSES ARISING OUT OF: (i) YOUR USE OF OR RELIANCE ON THE SERVICES OR YOUR INABILITY TO ACCESS OR USE THE SERVICES; OR (ii) ANY TRANSACTION OR RELATIONSHIP BETWEEN YOU AND ANY THIRD-

PARTY PROVIDER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. UBER SHALL NOT BE LIABLE FOR DELAY OR FAILURE IN PERFORMANCE RESULTING FROM CAUSES BEYOND UBER'S REASONABLE CONTROL. YOU ACKNOWLEDGE THAT THIRD-PARTY PROVIDERS PROVIDING TRANSPORTATION SERVICES REQUESTED THROUGH SOME UBER SERVICES MAY OFFER RIDESHARING OR PEER-TO-PEER TRANSPORTATION SERVICES AND MAY NOT BE PROFESSIONALLY LICENSED OR PERMITTED. YOU ACKNOWLEDGE THAT THIRD-PARTY PROVIDERS ARE NOT OSTENSIBLE AGENTS, APPARENT AGENTS, ACTUAL AGENTS, OR EMPLOYEES OF UBER.

THE SERVICES MAY BE USED BY YOU TO REQUEST AND SCHEDULE TRANSPORTATION, GOODS, OR LOGISTICS SERVICES WITH THIRD-PARTY PROVIDERS, BUT YOU AGREE THAT UBER HAS NO RESPONSIBILITY OR LIABILITY TO YOU RELATED TO ANY TRANSPORTATION, GOODS OR LOGISTICS SERVICES PROVIDED TO OR NOT PROVIDED TO YOU BY THIRD-PARTY PROVIDERS OTHER THAN AS EXPRESSLY SET FORTH IN THESE TERMS.

UBER SHALL NOT BE LIABLE FOR ANY DAMAGES, LIABILITY OR LOSSES ARISING OUT OF LACK OF OR IMPROPER INSTALLATION OR USE OF CHILD RESTRAINT SYSTEMS FOR GUESTS ON RIDES REQUESTED THROUGH THE SERVICES FOR WHOM A CHILD RESTRAINT SYSTEM IS LEGALLY REQUIRED.

THE LIMITATIONS AND DISCLAIMERS IN THIS SECTION DO NOT PURPORT TO LIMIT LIABILITY OR ALTER YOUR RIGHTS AS A CONSUMER THAT CANNOT BE EXCLUDED UNDER APPLICABLE LAW. BECAUSE SOME STATES OR JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF OR THE LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, IN SUCH STATES OR JURISDICTIONS, UBER'S LIABILITY SHALL BE LIMITED TO THE EXTENT PERMITTED BY LAW. THIS PROVISION SHALL HAVE NO EFFECT ON UBER'S CHOICE OF LAW PROVISION SET FORTH BELOW.

Indemnity.

You agree to indemnify and hold Uber and its affiliates and their officers, directors, employees, and agents harmless from and against any and all actions, claims, demands, losses, liabilities, costs, damages, and expenses (including attorneys' fees), arising out of or in connection with: (i) your use of the Services or services or goods obtained through your use of the Services; (ii) your breach or violation of any of these Terms; (iii) Uber's use of your User Content; or (iv) your violation of the rights of any third party, including Third-Party Providers.

# 8. Other Provisions

Choice of Law.

These Terms shall be governed by and construed in accordance with the laws of the state in which your dispute arises, without regard to the choice or conflict of law principles of any

jurisdiction, except as may be otherwise provided in the Arbitration Agreement in Section 2 above or in Supplemental Terms applicable to your region. This Choice of Law provision applies only to the interpretation of these Terms, and these provisions shall not be interpreted as generally extending any state's law to you if your dispute did not arise in that state.

Any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to these Terms, shall be governed by and construed in accordance with the laws of the state in which the incident or accident occurred.

Choice of Forum.

Any dispute, claim or controversy arising out of or relating to these Terms or the existence, breach, termination, enforcement, interpretation or validity thereof, shall be brought exclusively in the state and federal courts of the state in which the dispute, claim or controversy arose, notwithstanding that other courts may have jurisdiction over the parties and subject matter, except as may be otherwise provided by the Arbitration Agreement above or in Supplemental Terms applicable to your region.

Notwithstanding the foregoing, any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to these Terms, shall be brought exclusively in the state or federal courts in the state in which the incident or accident occurred, notwithstanding that other courts may have jurisdiction over the parties and subject matter, and except as may be otherwise provided in the Arbitration Agreement in Section 2 or in Supplemental Terms applicable to your region, to the extent permitted by law.

The foregoing Choice of Law and Choice of Forum provisions do not apply to the Arbitration Agreement in Section 2, and we refer you to Section 2 for the applicable provisions for such disputes.

Claims of Copyright and Trademark Infringement.

Claims of copyright and trademark infringement should be sent to Uber's designated agent. Please see Uber's Copyright Policy or Trademark Policy for the designated address and additional information.

Notice.

Uber may give notice by means of a general notice on or through the Services, electronic mail to the email address associated with your Account, telephone or text message to any phone number provided in connection with your Account, or by written communication sent by first

class mail or pre-paid post to any address connected with your Account. Such notice shall be deemed to have been given upon the expiration of 48 hours after mailing or posting (if sent by first class mail or pre-paid post) or at the time of sending (if sent by email, telephone, or on or through the Services). Notwithstanding the foregoing, notice of any modifications to these Terms shall be effective upon posting an updated version of these Terms on Uber's website or through the Services. You may give notice to Uber, with such notice deemed given when received by Uber, at any time by first class mail or pre-paid post to our registered agent for service of process, c/o Uber Technologies, Inc. The name and current contact information for the registered agent in each state are available online at https://www.wolterskluwer.com/en/solutions/ct-corporation/sop-locations. If another provision of these Terms addresses any specific notice (for example, notice of updates to these Terms, or notice of a dispute or arbitration demand), those specific notice provisions shall prevail to the extent there is any conflict or inconsistency between those provisions and this notice provision.

General.

You may not assign these Terms without Uber's prior written approval. Uber may assign these Terms without your consent to: (i) a subsidiary or affiliate; (ii) an acquirer of Uber's equity, business or assets; or (iii) a successor by merger. Any purported assignment by you in violation of this Section shall be void. No joint venture, partnership, employment, or agency relationship exists between you, Uber, any Third-Party Provider, or any Out-of-App Experience Provider as a result of these Terms or use of the Services. If any provision of these Terms is held to be invalid or unenforceable, such provision shall be struck and the remaining provisions shall be enforced to the fullest extent under law. Uber's failure to enforce any right or provision in these Terms shall not constitute a waiver of such right or provision unless acknowledged and agreed to by Uber in writing. This provision shall not affect the Severability and Survivability section of the Arbitration Agreement of these Terms.

# Return to Legal Hub→

Uber

Visit Help Center

Do not sell or share my personal information

Google Data Policy

## Company

About us

Our offerings

Newsroom

Investors

Blog

Careers

AI

Gift cards

## Products

Ride

Drive

Deliver

Eat

Uber for Business

Uber Freight

## Global citizenship

Safety

Diversity and Inclusion

Sustainability



## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation | **)** **)** **)** **)** | MDL Docket No. 3084 |

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR TRANSFER OF ACTIONS TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

### I.      INTRODUCTION

Uber Technologies, Inc. ("Uber") opposes Plaintiffs' motion for consolidation and centralization based on the erroneous assertion that the Terms of Use Agreement in Uber's App contractually prohibits Plaintiffs from pursuing coordination, and that Plaintiffs' cases lack the requisite commonality and thus are "ill-suited" for centralization. Both arguments fail.

Nothing in Uber's Terms of Use Agreement ("TSU"), even if enforceable, would constitute a contractual commitment to forgo judicial coordination of these cases. Indeed, Uber made the same argument in an attempt to avoid coordination of the California state-court sexual assault litigation. The California Judicial Council for Coordinated Proceedings ("JCCP") rejected Uber's argument and coordinated the hundreds of cases alleging sexual assault by Uber drivers in California state courts into a single proceeding. The Panel should do the same here.

Likewise, in deciding whether coordination is appropriate, the Panel should disregard Uber's red-herring arguments that state-specific issues predominate over common ones and recognize that transfer will facilitate the convenience of the parties and promote the just and efficient conduct of the transferred cases. Consolidation will eliminate duplicative discovery, avoid conflicting rulings and schedules, reduce litigation costs, and conserve the time and effort of the parties, attorneys, witnesses, and courts. Manual for Complex Litigation (Fourth), § 20.131, at 219.

Nevertheless, Uber contends that federal coordination and centralization is improper. Its position is perplexing, however, as Uber made a completely contradictory argument during oral argument on Uber's Motion to Dismiss non-California resident plaintiffs from the JCCP based on *Forum Non Conveniens*. When Judge Ethan P. Schulman was weighing the potential consequences of Uber's *FNC* Motion, Uber's counsel, Robert Atkins, stated:

> It's true of every national personal injury product liability litigation…**it will convert this court into a magnet for what they call complex national litigation.** It won't just be this case. **This court and the other courts of the state will become the MDL center of what is supposed to be a federalized judicial system**…"[1]

Uber cannot have it both ways. When appearing before the state court, Uber argued that a federal MDL is the proper avenue for consolidation. Now Uber contends that a federal MDL is improper. Apparently, Uber's consolidation argument depends on what forum it is addressing.

## II.   ARGUMENT

### A.  Uber's Terms of Use Does Not Preclude Coordination.

Uber insists the "Panel need not conduct any analysis under 28 U.S.C. § 1407 because this motion is barred by the plaintiffs' contractual agreement with Uber." Uber's Response at p. 6. Rather than prohibiting consolidation, however, this argument instead identifies another common issue that should be decided by the transferee court, if coordination is granted. To the extent the merits of this argument are to be decided by the JPML, Uber's argument fails for two reasons.

First, the TSU is unenforceable in light of Uber's failure to provide Plaintiffs with adequate and reasonable notice of the terms purportedly barring "coordinated, consolidated, mass and/or representative action against Uber." *Id*. Reasonable notice is a prerequisite to enforceability. *See*

---

[1] *See* January 4, 2023, Transcript from JCCP proceedings on Uber's Motions to Stay or Dismiss Based on *Forum Non Conveniens*, (p. 50: 9-10, and 13-18), attached as Exhibit 1 (emphasis added).

2

*e.g. Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 64 (1st Cir. 2018) (holding that Uber failed to reasonably and conspicuously notify plaintiffs of arbitration clause in part because terms were "filled with other very noticeable terms that diminished the conspicuousness" of the arbitration clause); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178-79 (9th Cir. 2014) (holding user was not reasonably notified because the Terms of Use Agreement presented in a browsewrap manner did not prompt users to take affirmative action to demonstrate assent to the terms and conditions).

Second, the TSU is in direct conflict with the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (EFASASHA), 9 U.S.C. § 402, which explicitly states that predispute arbitration agreements and joint-action waivers are unenforceable in sexual harassment and sexual assault disputes. The EFASASHA provides, in pertinent part:

> [A]t the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute… no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C.A. § 402(a). Uber's opposition ignores, however, that the coordination language in its TSU exists as part of its mandatory arbitration agreement,[2] which is unenforceable as to sexual harassment and sexual assault cases like those brought by Plaintiffs. *Id.*

Critically, the EFASASHA provides that no "predispute joint-action waiver" shall be valid or enforceable." *Id.* As defined therein, a "predispute joint-action waiver" is "an agreement … that would prohibit, or waive the right of, one of the parties to the agreement to participate in a joint, class, or collective action…" 9 U.S.C. § 401(2)). Thus, the provisions of Uber's TSU prohibiting consolidated actions are not valid and enforceable and do not require denial of consolidation here.

---

[2] *See* Uber's Terms of Use dated December 16, 2021, attached as Exhibit J to the Declaration of Alejandra O'Connor, Doc. 65-2.

To the contrary, the United States Congress has mandated that these claims be litigated according to the election of sexual assault and harassment survivors.

Notwithstanding the unenforceability of the joint-action waiver under the EFASASHA, Uber's own TSU states that Uber will honor a plaintiff's forum choice. ("Where your claims are brought and litigated to completion on such an individual basis in a court of competent jurisdiction, Uber agrees to honor your election."). Section 2(b) of the TSU, pertaining to arbitration, provides:

> Notwithstanding the foregoing, this Arbitration Agreement shall not require arbitration of the following claims: . . . ii) individual claims of sexual assault or sexual harassment occurring in connection with your use of the Services. Such claims may be brought and litigated in a court of competent jurisdiction by you on an individual basis only . . .

Additionally, section 2 of the TSU contains a severability clause. Specifically, section 2(i) provides: "If any portion of this Arbitration Agreement is found to be unenforceable or unlawful for any reason, (1) the unenforceable or unlawful provision shall be severed from these Terms …" Thus, a fair reading of the TSU, drafted and unilaterally imposed on customers by Uber, is that Uber has promised to "honor" Plaintiffs' choice of forum. Moreover, on May 15, 2018, Uber expressed its purported commitment to "do the right thing, period" with respect to survivors of sexual assault.[3] As part of its commitment to "do the right thing," Uber announced that it was voiding the arbitration requirements in its TSU because it is "important to give sexual assault and harassment survivors control of how they pursue their claims." *Id.* Despite Uber's representations to the public, however, Uber now seeks to backtrack its position and impose unconscionable terms on sexual violence victims.

---

[3] *See* Tony West, *Turning the lights on*, (May 15, 2018), https://www.uber.com/newsroom/turning-the-lights-on/ (last visited August 25, 2023).

4

Uber's joint-action prohibition is not clearly presented to consumers in the TSU and clearly conflicts with federal law and Uber's own messaging to its customers. As a result, the Panel should disregard Uber's misplaced joint-action waiver argument. Further, regardless of whether Uber's TSU is valid or enforceable, 28 U.S.C. § 1407 empowers the Panel to centralize these cases in a single district court for pretrial proceedings, and all underlying claims and defenses should be determined by the transferee judge.

### B. Transfer and Coordination of these Cases is Appropriate Pursuant to 28 U.S.C. § 1407.

#### 1. Common Factual and Legal Issues Predominate.

The threshold requirement of §1407 is that there be questions of fact and law common to the cases for which MDL treatment is sought. Commonalities in factual and legal questions need not be complete, nor even the majority, to merit transfer. *In re Katz Interactive Call Processing Pat. Litig.*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007). "[I]ndividualized factual issues" do not "negate the efficiencies to be gained by centralization." *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017).

Here, *all* of the actions involve Plaintiffs who were sexually assaulted by Uber drivers who were supposed to safely transport Plaintiffs to their destinations. The same facts apply to all cases: (1) Uber created a platform allowing predator Uber drivers to sexually assault Plaintiffs; (2) all Plaintiffs were sexually assaulted by Uber drivers; and (3) Uber failed to provide safety measures to prevent Plaintiffs from sexual assaults by their drivers. Uber opposes centralization on the basis that Plaintiffs reside in different states and were assaulted by different drivers[4] at different times, while ignoring the overwhelming commonality among the issues presented in these actions.

---

[4] Except for one case, Uber drivers are *not* defendants in these actions. (*Jane Doe v. Uber Technologies, Inc. and Edward Roe*, 23-cv-10745 (USDC MA)).

5

Uber attempts to portray these cases as inherently different from other personal-injury consolidated actions and disregards the fact that *all* personal-injury MDLs — including pharmaceutical and medical-device litigations — involve case-specific facts. Pharmaceutical and medical-device coordinated proceedings always include cases with different individual facts, such as each plaintiff's medical history, prescribing or implanting physicians, injury-treating medical providers, different factors relevant to specific causation, and individualized damages. Indeed, the JPML addressed this precise issue in consolidating fluoroquinolone cases:

> In these circumstances, the existence of individualized factual issues does not negate the efficiencies gained by centralization. Almost all personal injury litigation involves questions of causation that are plaintiff-specific. Those differences are not an impediment to centralization when common questions of fact are multiple and complex. *See, e.g., In re: Xarelto (Rivaroxaban) Prods. Liab. Litig.,* 65 F. Supp. 3d 1402, 1403 (J.P.M.L.2014). Once discovery and other pretrial proceedings related to the common issues have been completed, the transferee judge may suggest Section 1407 remand of actions to their transferor courts for more individual discovery and trial, if necessary. *See In re: Darvocet, Darvon and Propoxyphene Prods. Liab. Litig.,* 780 F. Supp. 2d 1379, 1381 (J.P.M.L. 2011).

*In re: Fluoroquinolone Prod. Liab. Litig.,* 122 F. Supp. 3d 1378, 1379 (J.P.M.L. 2015). Ultimately, if the Panel were to adopt Uber's position, no cases involving personal injuries would ever be consolidated, as *every* such MDL involves injured plaintiffs from different states who were harmed under different circumstances at different times.[5]

Uber's reliance on the Panel's denial of coordination in *In re Varsity Spirit Athlete Abuse Litigation*, 2023 WL 3828645 (J.P.M.L. 2023) is unfounded and without merit. The only similarity between the 9 plaintiffs in the *Varsity Spirit* cases and the numerous Uber Plaintiffs here is that

---

[5] Uber states that "these types of personal injury cases have historically been filed in local venues (including federal courts where the incident occurred) and have proceeded efficiently as individualized cases without centralization." *See* Uber's Response, note 7. Notably, Uber cites only 2 cases, both filed in 2020. *Id.*

6

the injuries involve an underlying sexual assault. The *Varsity Spirit* cases presented "unique factual issues concerning the various individual gym and coach defendants named in each action and the particulars of the abuse alleged by each plaintiff." *Id.* (MDL No. 3077, Doc. 128). The Panel further differentiated the proposed *Varsity Spirit* coordination by stating that "[w]hile the eight common defendants are named in all actions, there are approximately 30 individual coaches, gyms, and choreographers named as defendants in these actions. Most are named in just one action, and none are named in more than one district." *Id.* The Panel further distinguished the *Varsity Spirit* cases, noting that "(1) plaintiffs in all actions share counsel, (2) there are a limited number of involved actions and districts, and (3) the parties have been successfully informally coordinating the actions." *Id.* Here, there are at least 55 Uber Plaintiffs in 14 district courts, represented by at least 14 different firms, and apart from one case, Uber is the only Defendant.[6]

Uber further argues that because "sexual assault is a deeply personal crime and that each incident is unique to the victim," cases involving sexual assaults, like Plaintiffs, should not be coordinated. *See* Uber's Response, p. 8. Uber's argument fails. There are dozens of consolidated bankruptcy cases involving numerous individual sexual assault plaintiffs. *See, e.g., In re USA Gymnastics,* No. 1:18-bk-09108 (Bankr. S.D. Ind. Dec. 5, 2018); *In re Boy Scouts of America and Delaware BSA*, LLC, No. 20-bk-110343 (Bankr. D. Del.). Defendants filed for bankruptcy in these cases ***because consolidation was preferred over litigating cases on an individual basis.***[7]

---

[6] See *supra* note 2. Uber claims that it may add its drivers as defendants. *See* Uber's Response, p. 10. Uber's mere hypothetical joinder of drivers should not bar coordination.

[7]    *See*    https://sfarchdiocese.org/press-release-the-roman-catholic-archbishop-of-san-francisco-files-for-chapter-11-bankruptcy-to-facilitate-settlements-with-abuse-survivors/                ("The Archdiocese has neither the financial means nor the practical ability to litigate all of these abuse claims individually and therefore, after much consideration, concluded that the bankruptcy process was the best solution for providing fair and equitable compensation to the innocent survivors who have been harmed.")

7

Uber's Response focuses heavily on the various causes of action and legal theories presented in these cases, alleging that these somehow are uncommon among Plaintiffs. But the common legal issues that pervade all Plaintiffs' cases are extensive, including common-carrier liability, vicarious liability, the scope of Uber's duties to its passengers, the scope of Uber's duty to screen and supervise its drivers, and the impact of its representations that it provides a "safe ride" home. These cases should be coordinated to centrally address those common issues, rather than requiring the parties to proceed piecemeal in numerous separate federal actions.

### a. Differing State Laws Do Not Prohibit Coordination.

Uber contends that legal theories such as vicarious liability, common-carrier allegations, negligence, fraud, and misrepresentation vary "state-to-state" and that "states' tort and regulatory laws set 'the standards by which Uber's liability' will be determined." *See* Uber's Response, p. 12. But the majority (if not all) MDLs involve plaintiffs residing and/or injured in different states, and thus involve varying state laws. In *In re Tepezza Marketing, Sales Practices, and Products Liability Litigation*, the Panel examined the defendant's motions to dismiss brought under varying state laws and stated "[w]e view having multiple judges resolve these common preemption arguments about the same drug as a highly inefficient arrangement that undermines judicial economy and needlessly increases the risk of inconsistent rulings." --- F. Supp. 3d ---, 2023 WL 3829248, *1 (J.P.M.L. June 2, 2023).

In alleging state-law differences, Uber relies heavily on the Uber JCCP proceedings in California. But notwithstanding Judge Schulman's *Forum Non Conveniens* ruling, the JCCP clearly recognized the many reasons why coordinating Uber passenger sexual assault cases is appropriate. As the presiding coordination judge of the San Francisco Superior Court (Judge Andrew Y.S. Cheng) stated, coordination is warranted because the cases:

8

[S]hare similar facts and issues concerning the same central claims: whether Uber failed to adequately vet and train drivers regarding sexual assault, implement adequate safety measures to protect its passengers from being sexually assaulted, and adequately respond to driver complaints…Other overlapping questions on liability including common carrier liability, vicarious liability, the scope of Uber's duty (if any), Uber's breach (if any), causation, liability of drivers whether drivers are independent contractors or employees, whether Uber's app is defective, and the impact of Uber's public representations are also present…Liability centers on [Uber] not it's drivers…the parties will likely benefit from uniformly resolving the common factual and legal questions that predominate all issues.[8]

### b.  There are Numerous Cases Involving Complex Issues.

There are currently 55 Plaintiffs filed in 14 federal districts around the country. As previously noted, hundreds, if not thousands, of similar cases likely will be filed. These cases are clearly complex. The complexity inherent in this litigation revolves around the corporate-liability case, which encompasses Uber's course of conduct over many years and involves hundreds of thousands of documents, multiple databases, scores of current and former corporate witnesses, multiple third-party companies, and extensive expert testimony on issues such as the safety standards for transportation companies, video surveillance, handling passenger complaints, and a host of other issues passenger safety issues. These factors weigh heavily in favor of coordination.

### 2.  Coordination Will Promote Convenience and Efficiency.

Now is the most appropriate time to consolidate these actions. The litigation of these cases is not advanced in any court, but Uber has filed motions to transfer venue and motions to dismiss in several jurisdictions. Further, despite Plaintiffs' counsel's repeated efforts to informally coordinate actions, Uber has refused requests for informal coordination and opposed Plaintiffs' motion to relate cases in the Northern District of California. *See* Uber's Response, Exhibit 4. The Panel should not wait for inconsistent rulings or inefficient discovery to

---

[8] See JCCP Coordination Order p. 3, lines 9-21, attached as Exhibit 2.

commence before it transfers and consolidates these actions. Instead, it should act now in furtherance of § 1407's goal of avoiding such inefficiency in the first instance. Here, as in the Uber JCCP, "coordination will promote judicial efficiency, streamline discovery among a myriad of Plaintiffs (including avoiding duplicative deposition and trial testimony), facilitate settlement, and eradicate the possibility of different courts deciding on novel and overlapping issues with the same defendants."[9]

### 3. The Northern District of California Is a Suitable, Appropriate and Logical Forum for Coordination.

As discussed in Plaintiffs' transfer motion, the Northern District of California is convenient, accessible, and has ample MDL experience and docket capacity. At the time of filing this motion, there are 38 Uber Passenger Sexual Assault cases pending in the Northern District Court of California. Moreover, Uber is headquartered in San Francisco, and its top executives and most of its current and former employees also reside there. Thus, the Northern District of California is the most convenient forum in which to coordinate common discovery for these cases, resolve any related disputes, and conduct any trials in the MDL, as it has the best access to parties and witnesses. In light of these facts, Uber's assertion that "[t]here is nothing about the Northern District of California that renders it uniquely suited to oversee these diversity jurisdiction cases" is nonsensical. *See* Uber's Response, p. 20.

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Panel transfer these Uber Passenger Sexual Assault actions to the United States District Court for Northern District of California for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407.

---

[9] See JCCP Coordination Order p. 4, lines 9-21, attached as Exhibit 2.

Dated: August 25, 2023

Respectfully submitted,

*/s/ Rachel Abrams*
Rachel Abrams (Cal. Bar No. 209316)
**PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: 415.766.3545
Facsimile: 415.402.0058
Email: rabrams@peifferwolf.com

*Counsel for Kathrine Hylin, Taylor Gavin, Cynthia Crawford, E.R., A.G., A.M., A.H.M., H.B., C.S., Jillian Sullivan, Elunda Murphy, N.R., S.W., Aundreya Rollo, D.P., Ashley Jones, S.D.*

11



LOUISVILLE  LEXINGTON  LONDON  FLORENCE  CINCINNATI  INDIANAPOLIS  ORLANDO  JACKSONVILLE  TAMPA

# MDL NO. 3084 IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

## HEARING - MDL NO. 3084

## DATE:

### September 28, 2023





schedule@kentuckianareporters.com

877.808.5856 | 502.589.2273

www.kentuckianareporters.com

```
 1                 UNITED STATES JUDICIAL PANEL

 2                            ON

 3                 MULTIDISTRICT LITIGATION

 4

 5

 6

 7

 8

 9

10   MDL NO. 3084 IN RE: UBER TECHNOLOGIES, INC., PASSENGER

11                SEXUAL ASSAULT LITIGATION

12

13

14                HEARING - MDL NO. 3084

15

16

17

18

19

20

21

22

23

24   DATE:      SEPTEMBER 28, 2023

25   REPORTER:  AALAYAH PURNELL
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

APP543

HEARING - MDL NO. 3084, taken on September 28, 2023

2..5

Page 2

APPEARANCES

1

2

3  JUDICIAL PANEL

4

5  Chair:

6  Karen K. Caldwell

7

8  Members:

9  Judge Nathaniel M. Gorton

10  Judge David C. Norton

11  Judge David A. Kimball

12  Judge Matthew F. Kennelly

13  Judge Roger T. Benitez

14  Judge Madeline Cox Arleo

15

16

17

18

19

20

21

22

23

24

25

Page 4

STIPULATION

1

2

3  The hearing was taken at UNIVERSITY OF KENTUCKY, J.

4  DAVID ROSENBERG COLLEGE OF LAW, 620 SOUTH LIMESTONE,

5  ROOM 199, LEXINGTON, KENTUCKY 40506 on THURSDAY the 28th

6  day of SEPTEMBER 2023 at approximately 9:35 a.m. ET;

7  said hearing was taken pursuant to the FEDERAL Rules of

8  Civil Procedure.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

INDEX

1

2                                                    Page

3  PROCEEDINGS                                         5

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 5

PROCEEDINGS

1

2

3      JUDGE CALDWELL:  The panel will now turn to

4  MDL number 3084, the Uber Technologies sexual

5  assault litigation.  Ms. Abrams.

6      MS. ABRAMS:  May it please the Court.  Good

7  morning.  My name is Rachel Abrams, and I'm a

8  partner at Peiffer Wolf, based out of San Fransico.

9  I represent the petitioners for this MDL and am

10  seeking coordination and consolidation in the

11  Northern District California. As of this morning,

12  just an update the Court, there are 88 individual

13  cases filed in 16 different federal district courts

14  and with 21 unique plaintiff's law firms.  And the

15  reason why we're today, there are many of the

16  plaintiffs that are part of this petition before

17  the Panel have had their cases filed since 2020.

18  Many of the assaults occurred years before that.

19  In December of 2021 the California JCCP granted

20  consolidation of all California and non-California

21  resident who were sexual assault cases and assigned

22  them to Judge Ethan Schulman. By the time Uber

23  filed it's motion to dismiss based on forum non

24  conveniens, the number of filed cases had grown to

25  over a 1,000.  And when Judge Schulman granted

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

APP544

HEARING - MDL NO. 3084, taken on September 28, 2023

6..9

Page 6

1 Uber's FNC motion in January of this year, there
2 were over 1,400 cases filed. As a result of the
3 FNC ruling, approximately a 1,000 case can no
4 longer pursue recourse in the JCCP against Uber.
5 And although the JCCP leadership has appealed the
6 FNC ruling this past August, these 1,000 plaintiffs
7 were placed an untenable position of waiting even
8 longer on appeal or, as many of them have, refiled
9 in other jurisdictions across the country. So these
10 woman live with the trauma of these assaults at the
11 hands of the Uber drivers for the rest of their
12 lives, but they shouldn't have to wait to have
13 their cases efficiently litigated. Consolidation
14 of these cases will give these survivors the
15 opportunity to no longer sit idle and to timely
16 seek the justice they deserve. Further, Uber
17 sexual assaults continue to occur at an alarming
18 rate, and there'll likely be thousands more cases
19 that are filed. That's exactly why centralization
20 and consolidation of these cases is essential.
21 JUDGE CALDWELL: Thank you.
22 MS. ABRAMS: Thank you. Question, Judge
23 Kennelly.
24 MR. KENNELLY: So the predominant argument
25 that's made against this is there's individual

Page 7

1 injuries, individual facts in each assault, et
2 cetera, et cetera, et cetera. As you point out in
3 the reply, that's also true in every -- each and
4 every product liability MDL that we centralize. So
5 what I'm thinking might be different here is that
6 at least in those product liability MDLs, there's
7 generally a big question that's in common. Most
8 cases, it's general causation. Some cases, it's
9 also preemption or something like that. Is there
10 something like that there, a big central question
11 that's common to every one of the cases?
12 MS. ABRAMS: Well, the essential question is
13 Uber's liability --
14 MR. KENNELLY: But that's a too broad of a
15 level. You've got to narrower than that.
16 MS. ABRAMS: Yeah. Well, I mean, you compared
17 it the pharmaceutical cases. where there's an
18 overarching, you know, theory. I mean, in this
19 case, there's actually less individual case
20 specific facts because most of these woman have not
21 sought police involvement. Some have had had
22 therapy or medical treatment, but in, like, a
23 pharmaceutical, medical device case, what we're
24 talking about prescribing doctors or implanting
25 doctors and then treating physicians, sales

Page 8

1 marketing --
2 MR. KENNELLY: Right. But I kind of think
3 you're kind of avoiding the question. I'm not
4 asking for what's different. I get what's
5 different. I want to know what's the same.
6 MS. ABRAMS: Well --
7 MR. KENNELLY: Something specific that's the
8 same.
9 MS. ABRAMS: Something that's specific that's
10 the same with regards --
11 MR. KENNELLY: Similar question in all the
12 cases. There's something that's like the general
13 causation question in a pharma case.
14 MS. ABRAMS: Something that's -- well, in all
15 -- every single one of these cases, Uber has hired
16 these drivers, the standards for --
17 MR. KENNELLY: Right. But that's going to be
18 an individual question, too, whether a particular
19 person would have been hired or not, if there had
20 been all of the vetting that you think could have
21 been there. There's going to be some number of
22 these people that wouldn't have had any history at
23 all, some others that did.
24 MS. ABRAMS: Well, it's not just about the
25 history of the individual drivers, and it's about

Page 9

1 the training of the drivers, their standards for
2 training and safety, and the lack of safety
3 precautions and requirements that they've
4 implemented across the board for all cases, such as
5 cameras in the car, mandatory, having mandatory
6 cameras in these cars. That's across the board.
7 We -- if the safety standards had been implemented
8 in these cases, the majority of these assaults
9 would not have occurred.
10 MR. KENNELLY: They all happened inside the
11 cars.
12 MS. ABRAMS: The majority of the assaults
13 happened within the cars --
14 MR. KENNELLY: Thanks.
15 MS. ABRAMS: -- or close to them.
16 JUDGE ARLEO: So just all -- it sounds like
17 there's two lines. One is negligent hiring,
18 inadequate background checks, negligent hiring, and
19 also the safety, what you could have done to
20 discourage the drivers who are predisposed to
21 assaulting someone because of having a camera in
22 the car or other safety mechanisms that would
23 discourage someone from acting in a car or doing
24 something that would be unlawful. Are those the
25 two threats?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

APP545

HEARING - MDL NO. 3084, taken on September 28, 2023

10..13

Page 10

1    MS. ABRAMS:  Yeah, from beginning, to the
2  training, adequate training, adequate safety
3  standards to hiring background checks to --
4    JUDGE ARLEO:  What does it have to do with
5  training?  I don't understand training.  If you are
6  a sexual predator, having training about don't be a
7  predator, I don't think would be particularly
8  useful.
9    MS. ABRAMS:  Well, they can train them on
10  proper procedures and safety precautions --
11    JUDGE ARLEO:  Like what?  Like --
12    MS. ABRAMS:  -- and sexual assault.
13    JUDGE ARLEO:  So you -- these are criminals.
14  They sexual assaulted women.  They are predators
15  and criminals.  What kind of safety protocols would
16  have changed the result, which was sexual assault?
17    MS. ABRAMS:  Well, the platform was created to
18  attract the predators.  If they properly vetted,
19  did background checks and --
20    JUDGE ARLEO:  That's a different question
21  though, right, as opposed to training.
22    MS. ABRAMS:  Well, the training, they -- to
23  become an Uber driver, you have to learn how to use
24  the app.  They don't do sexual assault training.
25  They don't do what -- you know, protocols.

Page 11

1    JUDGE ARLEO:  Specifically, training.  I'm
2  just confused on the training part of it because I
3  don't understand what kind of training -- this a
4  side issue, but just what kind of training as a
5  combination would have been in placed that would
6  have change -- that would impose liability on Uber?
7  What kind of training?  These are predators.
8    MS. ABRAMS:  Well, the training of what is
9  proper procedures in handling passengers, what --
10  you know, not allowing them to get out of the car
11  or go in the backseat of the car, that type of
12  training in regards to allowing these drivers, you
13  know, or not training them on adequate procedures
14  and protocols of what is acceptable behavior to
15  drive passengers safely to their destination.
16    JUDGE CALDWELL:  Other questions.  Yes, Judge
17  Kimball.
18    JUDGE KIMBALL:  I assume that -- excuse me.  I
19  assume that many of these cases were reported to
20  law enforcement and perhaps some of them were not;
21  is that correct?
22    MS. ABRAMS:  The majority of the plaintiffs
23  were not reported to the police.
24    JUDGE KIMBALL:  Were not reported?
25    MS. ABRAMS:  The majority are reported to Uber

Page 12

1  themselves but were not reported to the police.
2  There are -- I would say 10 to 15 percent of the
3  cases that I represent have gone to the police.
4    JUDGE KIMBALL:  And would that be a whole set
5  of issues by itself, that -- how do you impose
6  liability upon Uber with people who don't tell Uber
7  or law enforcement that they've been assaulted?
8    MS. ABRAMS:  How do you -- I'm sorry.  I
9  missed the question.
10    JUDGE KIMBALL:  Is there going to be a problem
11  -- a huge problem in figuring out who was actually
12  assaulted and who was not?
13    MS. ABRAMS:  Not in the cases that we
14  represent because -- I mean, of course, we have to
15  have adequate evidence and proof that the ride in
16  fact happened and the assault happened.  Even
17  without a police reports, there's other, you know,
18  evidence that we do have, whether they reported it
19  to Uber.  The majority of them did.  Other
20  corroborating evidence that we have, including
21  contemporaneous texts, you know, calls.
22    JUDGE KIMBALL:  Okay.
23    MS. ABRAMS:  A lot of them do have video
24  footage outside of the car at locations where
25  they're going in and out of their -- the residence.

Page 13

1  So there are other -- you know, other corroborating
2  evidence.
3    JUDGE KIMBALL:  Okay.
4    JUDGE CALDWELL:  Other questions.  Thank you
5  for your argument.  You have a minute reserved for
6  rebuttal.
7    MS. ABRAMS:  Yep.  Thank you.
8    JUDGE CALDWELL:  Mr. Williams.
9    MR. WILLIAMS:  Good morning.  I stand before
10  you representing the four firms that have been
11  appointed in the JCCP, the consolidated proceedings
12  in California that you heard some discussion about,
13  and we advocate for consolidation and consolidation
14  in the Northern district of California.  The
15  central question in all these cases is this:  Your
16  mother told you don't get a car with a stranger.
17  Uber says, it's safe to do it with us.  They've
18  spent millions of dollars marketing to woman that
19  it is safe because our drivers are safe.  We are a
20  safe alternative.  Oftentimes, it was.
21  Unfortunately, frequently it was not.  They attract
22  sexual predators because sexual predators look for
23  an isolation situation and a vulnerable victim, a
24  woman. And that is exactly what Uber holds itself
25  out to do, is to do that.  And that's why they are

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

APP546

HEARING - MDL NO. 3084, taken on September 28, 2023

14..17

Page 14

1  responsible, because they betrayed the trust and
2  they betrayed this representation to these woman
3  because these drivers, whom they had not vetted and
4  are sexual predators, come to that platform and do
5  this -- these horrible deeds. The JCCP was formed,
6  as you know, almost two years ago, and Uber has
7  created its own chaos by saying that they want
8  cases thrown out under forum non conveniens.  It
9  gets cases back into the federal courts, and
10  they've created this chaos.  Now, it is our
11  position that it should be in the Northern District
12  of California because Uber resides there, the JCCP
13  resides there, Uber's headquarters is there, and
14  their -- the majority of their executives are
15  there.  And the MDL, likewise, we advocate should
16  be there for coordination amongst the lawyers and
17  for simplification.  Thank you.
18      JUDGE CALDWELL:  Thank you.  Any questions?
19      JUDGE BENITEZL:  I have a question.  So maybe
20  you can answer this for me.  How does Uber go about
21  finding out that one of its drivers is or is not
22  going to be a sexual predator?
23      MR. WILLIAMS:  Thank you.  So one of the
24  things is one would do a background check, just
25  like you wouldn't have your daughter or spouse get

Page 15

1  in a car with a stranger.
2      JUDGE BENITEZ:  So is the issue -- excuse me.
3  So is the issue that Uber did not pick up on the
4  fact that some of its drivers had prior sexual
5  assault convictions of some sort?
6      MR. WILLIAMS:  That's one of the things.  They
7  also -- their policies and procedures and lack of
8  policies and procedures failure to have a zero-
9  tolerance policy.  We're asking -- there's a
10  question earlier about what -- you know, how
11  training would make a difference.  Well, it's
12  policies and procedures and training that, number
13  one, you don't a ask a woman, hey, do you -- "Are
14  you in a relationship?"  Number two, you don't ask
15  her -- tell the woman, "You're looking mighty good
16  today", and you don't ask a woman, "Can I have your
17  phone number, would you like to have a friend, are
18  you interested in some fun."  And all these things
19  happen. And with absence of a zero-tolerance policy
20  at -- and cameras that would be a deterrent, all of
21  these things make it a platform that is a magnet
22  for these sexual predators.  They want these
23  isolation situation and a vulnerable woman.
24      JUDGE CALDWELL:  Yes.  Judge Kennelly.
25      JUDGE KENNELLY:  So I'm going to back to the

Page 16

1  question I asked Ms. Abrams.  So -- and you kind of
2  touched on it.  I want to make sure I'm getting
3  clear answers, though.  So in your average product
4  liability MDL, which is what the defendant kind of
5  analogizes this too, says it's not like that.
6  There's always at least one question that's common.
7  That question is what's called general causation.
8  What I mean by general causation is, can this
9  product cause this injury? That's general
10  causation.  What's the thing like that in this
11  case?  Because it seems to me that, like, what
12  you're talking about is all specific causation.
13  Did the failure to have a zero-tolerance policy
14  cause this injury? Not can.  Did.  So what am I --
15  where's the general -- where's the general question
16  -- general causation analogy here?
17      MR. WILLIAMS:  In my mind, Your Honor, is that
18  it goes back to that central question.  Your mother
19  warned you don't get a car with strangers.  So
20  Uber's whole platform is made -- is focused on
21  putting strangers with strangers.  And in order to
22  convey -- in order to persuade women to overcome
23  what's in their mind, that you don't get into a car
24  with strangers, they have spent millions and
25  millions of dollars persuading people that it's

Page 17

1  safe.  So the central question is: When they hold
2  out that promise of the safe ride, it's the
3  violation of that trust, it's the violation of that
4  promise of getting you to your destination safely.
5      JUDGE KENNELLY:  So the -- but what's the
6  factual issue about that?  I mean, you say that
7  there's thing.  I guess it's on their website or on
8  their app or whatever it is.  What's the factual
9  issue about it that's going to bear on the cases?
10      MR. WILLIAMS:  Oh, oh.  Their marketing.  I
11  would advocate safe -- it's their marketing where
12  they spent millions saying we are the safe
13  alternative and, in fact, we will get you home
14  safely from the bars.  And they market and
15  target --
16      JUDGE KENNELLY:  So it's kind of like --
17      MR. WILLIAMS:  -- women. And they --
18      JUDGE KENNELLY:  It's kind of like a
19  fraudulent marketing case, so to speak.  I mean, I
20  don't want to overdo it, but that's kind of where
21  you're going.
22      MR. WILLIAMS:  Right.  That's an important
23  part, is they target --
24      JUDGE KENNELLY:  Okay.
25      MR. WILLIAMS:  -- women who are looking for a

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

APP547

HEARING - MDL NO. 3084, taken on September 28, 2023

18..21

Page 18

1  safe alternative and safe ride home.
2      JUDGE KENNELLY:  Okay.
3      MR. WILLIAMS:  Thank you.
4      JUDGE CALDWELL:  Other questions?  Thank you
5  very much.
6      MR. WILLIAMS:  Thank you.
7      JUDGE CALDWELL:  Ms. Bliss?  I didn't see you
8  over there.
9      MS. BLISS:  Good morning, Your Honor.  Thank
10  you for having me, and thank you for the time
11  today.  I am Paula Bliss.  I am a partner in the
12  law firm of the Justice Law Collaborative in
13  Massachusetts, and my firm and I have been
14  representing survivors of sexual assault for years.
15  And I can tell you why sexual assault cases like
16  this one against Uber should be treated no
17  differently with respect to consolidation.  The
18  overriding questions here:  What did Uber know?  We
19  know it's publicly available.  They knew they had a
20  sexual assault problem.  When did they know that?
21  We know it was years ago.  What did they do?  Very,
22  very little. So the overriding question that hits
23  every single case: What did Uber know, what -- when
24  did it know it, and what steps could have been
25  taken to protect my clients from sexual assault?

Page 19

1  They knew they had a problem. They also knew that
2  they were getting reports of their individual
3  drivers of leering, or doing inappropriate things.
4  They let them continue driving.  And it's an
5  escalation of those apps that led to so many of
6  these assaults.  Uber knew they had a problem.
7  They did nothing to protect our clients.  And in
8  fact, consolidation for sexual assault cases makes
9  so much more sense.  We all know that sexual
10  assault is tragically and significantly
11  underreported.  These woman don't want to come
12  forward.  If they're allowed to come forward in a
13  group, in a consolidated action, they're allowed to
14  come forward with some sense of anonymity publicly,
15  that is going to aid their healing process. This
16  makes so much sense for sexual assault survivors.
17  They don't want to be alone.  Last thing I would
18  like to say is Massachusetts seems pretty
19  attractive here today, and I would like to also, in
20  addition to considering the Southern District of
21  California an appropriate forum, Massachusetts is
22  also proven to be very effective, very efficient,
23  with the only -- I think there's only five open
24  MDLs in Massachusetts.  I'm sure you all know this.
25  All of them are in the end stages of MDL life.

Page 20

1  Thank you very much.
2      JUDGE CALDWELL:  Questions.  Yes, Judge
3  Norton?
4      JUDGE NORTON:  About a year or two ago we had
5  a case where hotels were being used for sex
6  trafficking, and we did not consolidate that
7  because the argument, I believe, from the victim's
8  lawyers were that they want to use -- do their own
9  individual cases because it was their own
10  individual injury.  How do you distinguish those
11  two cases?
12      MS. BLISS:  Well, and I do handle sex
13  trafficking against hotels.  And I agree with that,
14  because each individual hotel has their own
15  individual policies.  They have their own security
16  systems.  They have their own security processes,
17  where Uber has their own.  That's it.  That's all
18  we're looking at, are Uber's policies and
19  procedures when it comes to hiring drivers,
20  reviewing drivers, following up on complaints, and,
21  like we've just heard, having that zero -- zero
22  policy when it comes to these assaults and
23  questionable conduct with respect to the drivers.
24      JUDGE NORTON:  Thank you.
25      MS. BLISS:  Yes.

Page 21

1      JUDGE NORTON:  How do you respond to your
2  predecessors argument that California is the center
3  of gravity of this case and it ought to be centered
4  in California?
5      MS. BLISS:  I agree.  Uber is there.  But
6  we're now in 2023, almost 2024.  Everything is --
7  can be done electronically.  We're moving around a
8  lot very easy.  California has a lot of cases, but
9  I agree California is an excellent jurisdiction.
10  Massachusetts is also equally as good.  Somebody
11  mentioned Logan Airport is not a big airport.  It
12  is.  And you can actually see the airport from the
13  courthouse.  And so I -- and I think the cases in
14  Massachusetts are dwindling.
15      JUDGE CALDWELL:  Other questions?
16      JUDGE KIMBALL:  So this is like the hotel
17  case, but if all the hotels in the country had the
18  same standard for safety; is that what you're
19  saying?
20      MS. BLISS:  Then I think there could be
21  consolidation.  If they're working under the same
22  policies and security systems, yes.  But I don't
23  see that right now.
24      JUDGE CALDWELL:  Other questions.  Thank you,
25  Counsel, for your argument.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

APP548

HEARING - MDL NO. 3084, taken on September 28, 2023

22..25

Page 22

1  MS. BLISS:  Thank you, you Honors.
2  JUDGE CALDWELL:  Mr. Stanley.
3  MR. STANLEY:  Good morning, Your Honor.  Bret
4  Stanley with Kherkher Garcia from Houston, Texas.
5  Uber's U.S. safety report indicates that they pair
6  1 billion riders with drivers every year in the
7  United States.  Uber's safety reports says that
8  they also receive one million serious safety
9  reports from drivers or about drivers from riders
10  on their system.  Uber keeps 21 different
11  categories of sexual misconduct or sexual assault
12  areas that they are collecting data on their
13  drivers every day.  These range from leering to
14  suggestive speaking, all the way up to penetration
15  -- forceable penetration.  Uber has the data on
16  these drivers to take them off the system earlier.
17  This is a question about was Uber negligent in
18  handling their platform day after day after day
19  when you have people in getting injured every
20  single day.  That's the question.  So that's how
21  this works.  They hold all the data on all of these
22  drivers, and there are reasons to take them off the
23  system earlier, before you get to someone putting
24  hands on somebody.  They know people are
25  complaining when they're intuition says this guy or

Page 23

1  this gal is doing something wrong.  Uber has that
2  information, and they've got to get these people
3  gone before it escalates to something really bad.
4  JUDGE CALDWELL:  Questions.  Hearing none,
5  thank you for your argument.
6  MR. STANLEY:  Also, how about Texas?  They
7  wouldn't let me back in Texas if I didn't say that.
8  We support Northern California, but Texas would be
9  good with Judge Kinkeade in the Northern District.
10  JUDGE CALDWELL:  Got to root for the home
11  team, don't ya?  Come on over, Mr. Atkins.
12  MR. ATKINS:  Thank you.  I'm from New Jersey.
13  I feel bound to say that.  Robert Atkins.  I
14  represent Uber in this matter.  Maybe I could level
15  set.  These are dozens, and maybe dozens of
16  individual, unrelated, unique, ideocratic sexual
17  assaults.  There's nothing more personal and
18  individualized than a sexual assault. And here, and
19  this is important, we're not talking about some
20  broad category.  We're talking about a variety of
21  different types of incidents involving in each
22  case.  Dozens indeed, for every case, there is a
23  different perpetrator, a different principle
24  original tortfeasor, the drivers, in 28 states
25  governed by 28 different bodies of law.  And this

Page 24

1  is very important.  It's not just differences in
2  tort law, which is enough of a headache when it
3  comes to intervening cause, superseding cause, but
4  as I think you saw from our papers, ride sharing
5  businesses are heavily regulated state by state and
6  even municipality by municipality.  And every legal
7  issue here is going to have to be filtered through
8  laws of currently 28 states and I imagine others.
9  A case I would suggest is helpful here, is the Uber
10  wage and hour case.  That case was about one issue,
11  which was:  Are the drivers employees or are they
12  independent contractors?  That one issue alone was
13  enough for this panel to say centralization is
14  inconvenient, inefficient, and isn't necessary.
15  That one issue, because it varies from state to
16  state, depending on the different laws state to
17  state, and it even held that discovery would be
18  different state to state.  In this case, that
19  actually is one of the key pillars of the case.
20  You have heard drivers being hired.  The question
21  of liability in large part, certainly the
22  negligence hiring case, vicarious liability claimed
23  -- sorry, the vicarious liability case of action
24  will turn on that one question, but there are
25  myriad other questions -- legal questions.  For

Page 25

1  example, is Uber or is Uber not a common carrier?
2  There's a common carrier negligence cause of
3  action.  Common carrier figures into vicarious
4  liability.  There are, by my count, 30 different
5  statutes and regulations regarding the question of
6  whether or not ride sharing companies -- they're
7  called TNCs, transportation network companies --
8  are or are not common carriers.  There's states
9  where they're not. There's state where there's a
10  multi-factor test.  So there's, are they employees,
11  is Uber a common carrier. A good -- another good
12  example is background checks. That's obviously
13  important to the plaintiff's case. Background
14  checks are also governed state to state by state
15  regulations regarding what is a sufficient and
16  what's an insufficient background check.  So if the
17  JCCP teaches us anything and it's the granting of
18  the forum non motion -- I'm going to stop since my
19  red light up. I was going to read you such a high
20  quality quote, but I expect you'll read it without
21  my help.
22  JUDGE CALDWELL:  All right.  Thank you.  Judge
23  Kennelly.
24  JUDGE KENNELLY:  So virtually everything you
25  say would also be true in big product liability

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

APP549

HEARING - MDL NO. 3084, taken on September 28, 2023

26..29

Page 26

1  MDL.  I had one that had involved 7,983 plaintiffs
2  from 50 states, plus the District of Columbia, plus
3  Puerto Rico, different laws in each one of those
4  states on each -- on various permutations of about
5  a dozen and half claims.  It was basically one
6  common question, and the panel -- before I was on
7  it, the panel chose, as it does in product
8  liability cases often, to centralize the case.  The
9  common question is general causation.  So there's
10 been a couple of offerings here about what the
11 common question is in this case.  What's wrong with
12 what's being argued on that?
13      MR. ATKINS:  What's wrong is the question of
14 Uber's liability for each one of these different
15 cases involving a different driver who did a
16 different thing is not going to be some broad --
17 you know, this isn't a congressional hearing.  This
18 is would -- did Uber do something or failed to do
19 something that would have prevented the incident.
20 So --
21      JUDGE KENNELLY:  Basically there's no analog
22 to general causation?
23      MR. ATKINS:  There's not at all.  There's no
24 general causation.  It's individual causation.  An
25 example, background checks.  Well, that argument is

Page 27

1  only going to apply, and it might or might not
2  work, if there was a deficient background check,
3  there was something that Uber missed, or its third-
4  party vendor.  That's not a common or a general
5  question.  Their other obligation is there should
6  be video monitor.  Well, that only works to the
7  extent, maybe, maybe if there's an incident that
8  takes place in the car.  Many of these incidents,
9  sadly, tragically occur outside the car, after the
10 drive is over, after the app is off.  A lot of
11 these drivers are accused of stalking, following,
12 having nothing to do with being in a car using Uber
13 app.  So video monitoring, whatever the pros and
14 cons are, are not going to be decisive of Uber's
15 fault and causation.  Last thing, example I'll give,
16 is they also plead -- and this is key to them --
17 that there should be GPS monitoring to determine
18 when drivers -- I'm quoting from one of the
19 pleadings -- dramatically divert -- veer off
20 course.  Well, that only is applicable if the
21 incident involved a driver who veered off course.
22 Tragically, some of these incidents occur when
23 drivers don't veer off course.  So in each one of
24 these cases, setting aside that the facts are
25 different, the incidents are different, the

Page 28

1  driver's culpability is different, the cause of the
2  alleged injury, that is to say did Uber fail to
3  something or do something that would have prevented
4  it, is going to depend on the details and specifics
5  of what happened and then is there a technology, is
6  there a training manual, is there a procedure that
7  would, in fact, have prevented it.  In other words,
8  was the absence of that methodology, technology the
9  but for a cause of the incident.  Thank you.
10      JUDGE ARLEO:  One of the claims --
11      MR. ATKINS:  Yes.
12      JUDGE ARLEO:  This is all different theories,
13 right, and they all turn back to Uber.  Some were
14 in the car.  Some were out of the car.  Maybe some
15 of it would work.  Maybe it wouldn't work.  Maybe a
16 background check wouldn't have shown anything.  But
17 one of the other claims that we haven't discussed
18 was that they had notice that they had got -- there
19 were complaints about inappropriate comments, you
20 know, odd behavior by a driver, and they were --
21 and they weren't -- they -- nothing was done in
22 response to that.  So the -- you know, I think
23 Judge Kennelly said it.  He talked -- you know, he
24 characterized it as fraudulent advertising.  You're
25 advertising that this is a safe riding platform,

Page 29

1  and a lack of different safety mechanisms are at
2  the core of the plaintiff's claims.  Different
3  safety mechanisms might have prevented different
4  assaults.  If there was a software in the car,
5  maybe not that would have stopped some of the
6  assaults.  But the -- but certainly, the lack of
7  policies or -- according to the plaintiff, or
8  action when they had noticed inappropriate
9  behavior, that is another issue that -- that
10 certainly could be supported by having those issues
11 consolidated, looking at the Uber policies, looking
12 at how it would have affected different women
13 victims.
14      MR. ATKINS:  A couple of things.  First of
15 all, I unfortunately go back to what I just said
16 before, which is, it's still going to ultimately
17 come down to would this other policy -- I don't
18 know what it is -- would training, would a device,
19 would technology, would awareness have, in fact,
20 prevented -- let's take the worst case -- a sexual
21 predator from engaging in deviant criminal
22 behavior --
23      JUDGE ARLEO:  No what --
24      MR. ATKINS:  -- in that circumstance.
25      JUDGE ARLEO:  What they're saying -- the

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

APP550

HEARING - MDL NO. 3084, taken on September 28, 2023

30..33

Page 30

1 arguments I heard from Plaintiff's counsel was, how
2 did they notice that some -- a woman calls an Uber
3 and said this guy is acting really weird, he was
4 asking me personal questions, he asked me if I was
5 single, and I felt really uncomfortable, I ran out
6 of the Uber. And what did Uber do? I mean, and so
7 you got to -- I envision an expert will report
8 this, but were all these different safety glitches
9 or safety inadequacies that Uber had in place, and
10 they should have had things that were better to
11 ensure the safety of their passengers, and that is
12 one of them that they said, right --
13 MR. ATKINS: I would respectfully say that in
14 a case where there was a driver who was the subject
15 of prior complaint, that's going to be specific to
16 that case and --
17 JUDGE ARLEO: But the theory -- they're going
18 to have three or four theories. Cameras,
19 background checks, complaints, policies, training,
20 all those things that what's the -- and then there
21 is going to be different women that have different
22 scenarios, but that's -- but it all goes back to
23 Uber, and it goes back to Uber's safety protocols.
24 MR. ATKINS: I still respectfully suggest you
25 would still have to prove but for causation. But

Page 31

1 the other thing I would say, and this is also --
2 you can glean from the Uber wage and hour cases,
3 which is the fact that there's sort of business
4 practices, that there's a set of -- as they refer
5 to it a corporate liability, that still doesn't
6 outweigh the predominance of this sort of endless
7 line of individualized questions about what
8 happened, who's at fault, and of course, what --
9 you know, what the law under 28 different states
10 applies and how it governors the outcome of that
11 case. So I still -- even if there's kind of core
12 discovery and these sort of broad arguments, it's -
13 - that's not going to outweigh at all. It's not
14 going to come close, in my opinion, to the
15 predominance of individualized issues. I'd also --
16 because you reference it, Your Honor. I would like
17 to note with respect to the -- I think were
18 referred to as marketing claims. Two things about
19 that. First of all, for what it's worth, in
20 California, in the JCCP, those were all dismissed
21 with prejudice for a variety of reasons. They were
22 not sufficiently plead. That's also a state-by-
23 state issue. There's the skinny girl case from the
24 Panel. There's the Nutella case from the Panel.
25 Claims of fraud or consumer misrepresentation are

Page 32

1 highly case specific. What's the representation,
2 was there reliance, etc. etc.
3 JUDGE ARLEO: Thank you.
4 MR. ATKINS: Thank you, Your Honor.
5 JUDGE CALDWELL: Judge Benitez.
6 JUDGE BENITEZ: So Mr. Atkins, you mentioned
7 something that had been on my mind from the start
8 of your presentation, and that is this: You talked
9 about the common discovery issues. You can bet
10 your bottom dollar that in every single case, every
11 one of these cases, the plaintiffs are going to be
12 asking you to provide discovery with regards to
13 certain things, for example, your training, your
14 dealing with prior complaints and so on and so
15 forth. And in every one of those cases, there's
16 probably going to be an objection of some sort as
17 to the discovery that is being sought. Doesn't it
18 make sense to have one judge preside over all of
19 that, deal with all of those discovery questions,
20 and then obviously, as you all know, when the case
21 comes time for trial, the cases will go out to the
22 various districts to be tried.
23 MR. ATKINS: Sure.
24 JUDGE BENITEZ: But doesn't it make sense to
25 have one judge dealing with all of those discovery

Page 33

1 issues at the very beginning, up front, rather than
2 having a number of other judges dealing with it.
3 MR. ATKINS: I think the answer to that lies
4 in the ability of these parties and these lawyers
5 in particular to cooperate and coordinate
6 informally. We all know each other. We talk to
7 each other every single day. When the plaintiffs'
8 lawyers --
9 JUDGE BENITEZ: I see a head shaking back
10 there, so Mr. Atkins, you might want to have a chat
11 with her.
12 MR. ATKINS: No. We're good friends. They
13 know who to call. It's Mr. Smith. So we're
14 already dealing with this. Now, in all
15 seriousness, I think -- and I've been doing this a
16 long time. This is one of the more positive
17 relationships I've had. They know who to call.
18 We're going to certainly be as coordinated and
19 uniform as possible, and I don't expect there to be
20 that many discovery disputes on the broad level.
21 We don't want to do, you know, multiple document
22 productions. We're going to operate, hopefully, by
23 a common set of rules that we will work on
24 together. We just finished negotiating with each
25 other an ESI protocol. It took a lot of time, a

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

APP551

HEARING - MDL NO. 3084, taken on September 28, 2023

34..37

Page 34

1  lot of tug of war.  We got it done.  That's a
2  perfect example.  We didn't -- you know, the judge
3  told us to get it done, but we got it done.  And I
4  expect that's going to be a template for all these
5  cases.
6      JUDGE BENITEZ:  Thank you.
7      MR. ATKINS:  Thank you, Your Honor.
8      JUDGE KIMBALL:  If the Panel centralizes,
9  which you don't want us to do, obviously, where
10 should it be centralized?
11     MR. ATKINS:  Well, and let me -- if you'll
12 allow me to say where it shouldn't be centralized.
13 California is the last place this should be.
14     JUDGE KIMBALL:  Why?
15     MR. ATKINS:  Because there are actually zero
16 plaintiffs from California.  There never will be
17 because they're all -- you don't have diversity,
18 so there's not -- there will not be a plaintiff.
19 Is Uber -- does Uber have an office there?  Of
20 course it does.  But because of this patchwork of
21 different regulations, we have operations all over
22 the country.  I think it was said by one of
23 plaintiff's counsel, that is that we have 37
24 offices in 20 states, so that doesn't -- it's not a
25 magnet.  And you know better than I do, the

Page 35

1  Northern District of California is either the
2  number one or the number two in terms of MDL
3  workload.  We suggested North Carolina, which is
4  maybe strange coming from a Jersey boy, but --
5      JUDGE KIMBALL:  But why North Carolina?
6      MR. ATKINS:  Well, we have a case there.  I
7  don't believe they have any MDLs, so it's a place
8  where I think we could kind of get the attention
9  this case deserves.  And I think that it's a
10 sensible choice. Maybe there are others, but as you
11 can tell, what we feel strongly about is we don't
12 want to be in a state where there's no reason to be
13 there, the Court is already overwhelmed.  We, and I
14 presume the plaintiffs, would like this thing to
15 move easily, efficiently, you know, and with -- you
16 know, sufficient speed.
17     JUDGE CALDWELL:  Yes.  Judge Norton.
18     JUDGE NORTON:  Being from South Carolina, and
19 I'm sure you-all watch TV, you see the Camp Lejeune
20 advertisements all the time.  Every one of those
21 Camp Lejeune cases are going to be assigned to a
22 judge from the Eastern District in North Carolina,
23 and there's thousands of them, so they are
24 overwhelmed.
25     MR. ATKINS:  All right.  I'm out of the loop.

Page 36

1      JUDGE NORTON:  I'm just putting my word in for
2  my peeps.  Everybody here is sitting on the edge of
3  their chair waiting for your quotes, so I'm going
4  to let you give it to us.
5      MR. ATKINS:  Oh, well, that's awfully kind. So
6  what's so helpful, I believe, and instructive, was
7  the decision by this coordinating judge -- not
8  consolidated, by the way -- coordination judge was
9  to grant our motion for forum non conveniens.
10 Keyword being non conveniens, ineffective,
11 inconvenient to have claims from -- in that case,
12 it was more than 40 different states all jammed
13 together in one court.  Why? Here's what the court
14 found, and I would suggest that it's applicable
15 here as well.  "Plaintiffs ignore or understate the
16 importance of other states tort and regulatory laws
17 in setting the standards by which Uber's liability
18 is likely to be determined."  So that judge
19 understood that these cases are more sconvenient
20 and more sensible and more efficient in the states
21 where the applicable law is going to be applied as
22 opposed to one court that's going to have to
23 grapple with the laws 28, 30, wherever we end up,
24 probably 40.  He didn't want to do it and -- you
25 know, not because he's lazy, not because he isn't

Page 37

1  he smart.  To the contrary.  But it was
2  insufficient, and it would be a massive headache to
3  have to deal with all of that regulatory law,
4  statutory law, and tort law in determining Uber's
5  liability and therefore related issues.  Surprise,
6  surprise.  We're going to move to dismiss, which
7  was met with great success in California, and
8  that's going to be -- it's going to involve the
9  laws of different states.
10     JUDGE ARLEO:  Thank you.
11     JUDGE CALDWELL:  Hearing no further questions,
12 thank you for your argument.
13     MR. ATKINS:  Thank you very much for your
14 time.
15     JUDGE CALDWELL:  Ms. Abrams, you get to bring
16 it home for the movement -- movants.
17     MS. ABRAMS:  Thank you.  To address a few of
18 the issues that Mr. Atkins just raised, starting
19 with Judge Kennelly.  I was on the PSC for the TRT
20 MDL. There were always individualized issues with
21 regards to these cases.  There's no way around
22 that.  But what matters here are what are the
23 common issues that predominate.  And in these
24 cases, common facts of law -- facts and law
25 predominate, and having a piecemeal litigation of

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

APP552

HEARING - MDL NO. 3084, taken on September 28, 2023

38..39

Page 38

1  each of these cases around the country would -- is
2  going to wreak havoc on -- as opposed to having one
3  central location where one judge can oversee this
4  litigation and determine the liability of Uber over
5  these victims.
6      JUDGE CALDWELL:  Thank you.  Any questions for
7  Ms. Abrams?  That concludes the panel's
8  consideration of MDL Number 3084 and our business
9  for the day.
10      (MDL 3084 CONCLUDED AT 11:19 A.M. ET)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 39

1              CERTIFICATE OF REPORTER
2          COMMONWEALTH OF KENTUCKY AT LARGE
3
4
5   I do hereby certify that the hearing in the foregoing
6   transcript was taken on the date, and at the time and
7   place set out on the Title page here of by me and that
8   the said matter was recorded digitally by me and then
9   reduced to type written form under my direction, and
10  constitutes a true record of the transcript as taken,
11  all to the best of my skill and ability. I certify that
12  I am not a relative or employee of either counsel, and
13  that I am in no way interested financially, directly or
14  indirectly, in this action.
15
16
17
18
19
20
21
22  AALAYAH PURNELL,
23  COURT REPORTER / NOTARY
24  MY COMMISSION EXPIRES ON: 03/22/2025
25  SUBMITTED ON: 10/02/2023

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

APP553

HEARING - MDL NO. 3084, taken on September 28, 2023

40

---

**1**

**1** 22:6

**1,000** 5:25 6:3, 6

**1,400** 6:2

**10** 12:2

**11:19** 38:10

**15** 12:2

**16** 5:13

---

**2**

**20** 34:24

**2020** 5:17

**2021** 5:19

**2023** 21:6

**2024** 21:6

**21** 5:14 22:10

**28** 23:24,25 24:8 31:9 36:23

---

**3**

**30** 25:4 36:23

**3084** 5:4 38:8, 10

**37** 34:23

---

**4**

**40** 36:12,24

---

**5**

**50** 26:2

---

**7**

**7,983** 26:1

---

**8**

**88** 5:12

---

**A**

**A.M.** 38:10

**ability** 33:4

**Abrams** 5:5,6, 7 6:22 7:12,16 8:6,9,14,24 9:12,15 10:1,9, 12,17,22 11:8, 22,25 12:8,13, 23 13:7 16:1 37:15,17 38:7

**absence** 15:19 28:8

**acceptable** 11:14

**accused** 27:11

**acting** 9:23 30:3

**action** 19:13 24:23 25:3 29:8

**addition** 19:20

**address** 37:17

**adequate** 10:2 11:13 12:15

**advertisements** 35:20

**advertising** 28:24,25

**advocate** 13:13 14:15 17:11

**affected** 29:12

**agree** 20:13 21:5,9

**aid** 19:15

**airport** 21:11, 12

**alarming** 6:17

**alleged** 28:2

**allowed** 19:12, 13

**allowing** 11:10,12

**alternative** 13:20 17:13 18:1

**analog** 26:21

**analogizes** 16:5

**analogy** 16:16

**anonymity** 19:14

**answers** 16:3

**app** 10:24 17:8 27:10,13

**appeal** 6:8

**appealed** 6:5

**applicable** 27:20 36:14,21

**applied** 36:21

**applies** 31:10

**apply** 27:1

**appointed** 13:11

**approximately** 6:3

**apps** 19:5

**areas** 22:12

**argued** 26:12

**argument** 6:24 13:5 20:7 21:2, 25 23:5 26:25 37:12

**arguments** 30:1 31:12

**ARLEO** 9:16 10:4,11,13,20 11:1 28:10,12 29:23,25 30:17 32:3 37:10

**assault** 5:5,21

**alleged** 28:2

7:1 10:12,16,24 12:16 15:5 18:14,15,20,25 19:8,10,16 22:11 23:18

**assaulted** 10:14 12:7,12

**assaulting** 9:21

**assaults** 5:18 6:10,17 9:8,12 19:6 20:22 23:17 29:4,6

**assigned** 5:21 35:21

**assume** 11:18, 19

**Atkins** 23:11, 12,13 26:13,23 28:11 29:14,24 30:13,24 32:4, 6,23 33:3,10,12 34:7,11,15 35:6,25 36:5 37:13,18

**attention** 35:8

**attract** 10:18 13:21

**attractive** 19:19

**August** 6:6

**average** 16:3

**avoiding** 8:3

**awareness** 29:19

---

**B**

**back** 14:9 15:25 16:18 23:7 28:13 29:15 30:22,23 33:9

**background** 9:18 10:3,19 14:24 25:12,13, 16 26:25 27:2 28:16 30:19

**backseat** 11:11

**bad** 23:3

**bars** 17:14

**based** 5:8,23

**basically** 26:5, 21

**bear** 17:9

**beginning** 10:1 33:1

**behavior** 11:14 28:20 29:9,22

**Benitez** 15:2 32:5,6,24 33:9 34:6

**BENITEZL** 14:19

**bet** 32:9

**betrayed** 14:1, 2

**big** 7:7,10 21:11 25:25

**billion** 22:6

**Bliss** 18:7,9,11 20:12,25 21:5, 20 22:1

**board** 9:4,6

**bodies** 23:25

**bottom** 32:10

**bound** 23:13

**boy** 35:4

**Bret** 22:3

**bring** 37:15

**broad** 7:14 23:20 26:16 31:12 33:20

**business** 31:3 38:8

**businesses** 24:5

---

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**C**

**CALDWELL**
5:3 6:21 11:16
13:4,8 14:18
15:24 18:4,7
20:2 21:15,24
22:2 23:4,10
25:22 32:5
35:17 37:11,15
38:6

**California**
5:11,19,20
13:12,14 14:12
19:21 21:2,4,8,
9 23:8 31:20
34:13,16 35:1
37:7

**call** 33:13,17

**called** 16:7
25:7

**calls** 12:21
30:2

**camera** 9:21

**cameras** 9:5,6
15:20 30:18

**Camp** 35:19,21

**car** 9:5,22,23
11:10,11 12:24
13:16 15:1
16:19,23 27:8,
9,12 28:14 29:4

**Carolina** 35:3,
5,18,22

**carrier** 25:1,2,
3,11

**carriers** 25:8

**cars** 9:6,11,13

**case** 6:3 7:19,
23 8:13 16:11
17:19 18:23
20:5 21:3,17
23:22 24:9,10,
18,19,22,23
25:13 26:8,11
29:20 30:14,16
31:11,23,24
32:1,10,20

35:6,9 36:11

**cases** 5:13,17,
21,24 6:2,13,
14,18,20 7:8,
11,17 8:12,15
9:4,8 11:19
12:3,13 13:15
14:8,9 17:9
18:15 19:8
20:9,11 21:8,13
26:8,15 27:24
31:2 32:11,15,
21 34:5 35:21
36:19 37:21,24
38:1

**categories**
22:11

**category**
23:20

**causation** 7:8
8:13 16:7,8,10,
12,16 26:9,22,
24 27:15 30:25

**center** 21:2

**centered** 21:3

**central** 7:10
13:15 16:18
17:1 38:3

**centralization**
6:19 24:13

**centralize** 7:4
26:8

**centralized**
34:10,12

**centralizes**
34:8

**cetera** 7:2

**chair** 36:3

**change** 11:6

**changed** 10:16

**chaos** 14:7,10

**characterized**
28:24

**chat** 33:10

**check** 14:24
25:16 27:2

28:16

**checks** 9:18
10:3,19 25:12,
14 26:25 30:19

**choice** 35:10

**chose** 26:7

**circumstance**
29:24

**claimed** 24:22

**claims** 26:5
28:10,17 29:2
31:18,25 36:11

**clear** 16:3

**clients** 18:25
19:7

**close** 9:15
31:14

**Collaborative**
18:12

**collecting**
22:12

**Columbia** 26:2

**combination**
11:5

**comments**
28:19

**common** 7:7,
11 16:6 25:1,2,
3,8,11 26:6,9,
11 27:4 32:9
33:23 37:23,24

**companies**
25:6,7

**compared**
7:16

**complaining**
22:25

**complaint**
30:15

**complaints**
20:20 28:19
30:19 32:14

**CONCLUDED**
38:10

**concludes**
38:7

**conduct** 20:23

**confused** 11:2

**congressional**
26:17

**cons** 27:14

**consideration**
38:8

**consolidate**
20:6

**consolidated**
13:11 19:13
29:11 36:8

**consolidation**
5:10,20 6:13,20
13:13 18:17
19:8 21:21

**consumer**
31:25

**contemporane**
**ous** 12:21

**continue** 6:17
19:4

**contractors**
24:12

**contrary** 37:1

**conveniens**
5:24 14:8 36:9,
10

**convey** 16:22

**convictions**
15:5

**cooperate**
33:5

**coordinate**
33:5

**coordinated**
33:18

**coordinating**
36:7

**coordination**
5:10 14:16 36:8

**core** 29:2 31:11

**corporate** 31:5

**correct** 11:21

**corroborating**
12:20 13:1

**counsel** 21:25
30:1 34:23

**count** 25:4

**country** 6:9
21:17 34:22
38:1

**couple** 26:10
29:14

**court** 5:6,12
35:13 36:13,22

**courthouse**
21:13

**courts** 5:13
14:9

**created** 10:17
14:7,10

**criminal** 29:21

**criminals**
10:13,15

**culpability**
28:1

**D**

**data** 22:12,15,
21

**daughter**
14:25

**day** 22:13,18,
20 33:7 38:9

**deal** 32:19 37:3

**dealing** 32:14,
25 33:2,14

**December**
5:19

**decision** 36:7

**decisive** 27:14

**deeds** 14:5

**defendant**


Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

APP555

16:4

**deficient** 27:2

**depend** 28:4

**depending** 24:16

**deserve** 6:16

**deserves** 35:9

**destination** 11:15 17:4

**details** 28:4

**determine** 27:17 38:4

**determined** 36:18

**determining** 37:4

**deterrent** 15:20

**deviant** 29:21

**device** 7:23 29:18

**difference** 15:11

**differences** 24:1

**differently** 18:17

**discourage** 9:20,23

**discovery** 24:17 31:12 32:9,12,17,19, 25 33:20

**discussed** 28:17

**discussion** 13:12

**dismiss** 5:23 37:6

**dismissed** 31:20

**disputes** 33:20

**distinguish**

20:10

**district** 5:11,13 13:14 14:11 19:20 23:9 26:2 35:1,22

**districts** 32:22

**diversity** 34:17

**divert** 27:19

**doctors** 7:24, 25

**document** 33:21

**dollar** 32:10

**dollars** 13:18 16:25

**dozen** 26:5

**dozens** 23:15, 22

**dramatically** 27:19

**drive** 11:15 27:10

**driver** 10:23 26:15 27:21 28:20 30:14

**driver's** 28:1

**drivers** 6:11 8:16,25 9:1,20 11:12 13:19 14:3,21 15:4 19:3 20:19,20, 23 22:6,9,13, 16,22 23:24 24:11,20 27:11, 18,23

**driving** 19:4

**dwindling** 21:14

—————

**E**

**earlier** 15:10 22:16,23

**easily** 35:15

**Eastern** 35:22

**easy** 21:8

**edge** 36:2

**effective** 19:22

**efficient** 19:22 36:20

**efficiently** 6:13 35:15

**electronically** 21:7

**employees** 24:11 25:10

**end** 19:25 36:23

**endless** 31:6

**enforcement** 11:20 12:7

**engaging** 29:21

**ensure** 30:11

**envision** 30:7

**equally** 21:10

**escalates** 23:3

**escalation** 19:5

**ESI** 33:25

**essential** 6:20 7:12

**Ethan** 5:22

**evidence** 12:15,18,20 13:2

**excellent** 21:9

**excuse** 11:18 15:2

**executives** 14:14

**expect** 25:20 33:19 34:4

**expert** 30:7

**extent** 27:7

—————

**F**

**fact** 12:16 15:4 17:13 19:8 28:7 29:19 31:3

**facts** 7:1,20 27:24 37:24

**factual** 17:6,8

**fail** 28:2

**failed** 26:18

**failure** 15:8 16:13

**fault** 27:15 31:8

**federal** 5:13 14:9

**feel** 23:13 35:11

**felt** 30:5

**figures** 25:3

**figuring** 12:11

**filed** 5:13,17, 23,24 6:2,19

**filtered** 24:7

**finding** 14:21

**finished** 33:24

**firm** 18:12,13

**firms** 5:14 13:10

**FNC** 6:1,3,6

**focused** 16:20

**footage** 12:24

**forceable** 22:15

**formed** 14:5

**forum** 5:23 14:8 19:21 25:18 36:9

**forward** 19:12, 14

**found** 36:14

**Fransico** 5:8

**fraud** 31:25

**fraudulent** 17:19 28:24

**frequently** 13:21

**friend** 15:17

**friends** 33:12

**front** 33:1

**fun** 15:18

—————

**G**

**gal** 23:1

**Garcia** 22:4

**general** 7:8 8:12 16:7,8,9, 15,16 26:9,22, 24 27:4

**generally** 7:7

**girl** 31:23

**give** 6:14 27:15 36:4

**glean** 31:2

**glitches** 30:8

**good** 5:6 13:9 15:15 18:9 21:10 22:3 23:9 25:11 33:12

**governed** 23:25 25:14

**governors** 31:10

**GPS** 27:17

**grant** 36:9

**granted** 5:19, 25

**granting** 25:17

**grapple** 36:23

**gravity** 21:3

**great** 37:7

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com



APP556

HEARING - MDL NO. 3084, taken on September 28, 2023

43

**group** 19:13

**grown** 5:24

**guess** 17:7

**guy** 22:25 30:3

**H**

**half** 26:5

**handle** 20:12

**handling** 11:9
22:18

**hands** 6:11
22:24

**happen** 15:19

**happened**
9:10,13 12:16
28:5 31:8

**havoc** 38:2

**head** 33:9

**headache** 24:2
37:2

**headquarters**
14:13

**healing** 19:15

**heard** 13:12
20:21 24:20
30:1

**hearing** 23:4
26:17 37:11

**heavily** 24:5

**held** 24:17

**helpful** 24:9
36:6

**hey** 15:13

**high** 25:19

**highly** 32:1

**hired** 8:15,19
24:20

**hiring** 9:17,18
10:3 20:19
24:22

**history** 8:22,25

**hits** 18:22

**hold** 17:1 22:21

**holds** 13:24

**home** 17:13
18:1 23:10
37:16

**Honor** 16:17
18:9 22:3 31:16
32:4 34:7

**Honors** 22:1

**horrible** 14:5

**hotel** 20:14
21:16

**hotels** 20:5,13
21:17

**hour** 24:10
31:2

**Houston** 22:4

**huge** 12:11

**I**

**ideocratic**
23:16

**idle** 6:15

**ignore** 36:15

**imagine** 24:8

**implanting**
7:24

**implemented**
9:4,7

**importance**
36:16

**important**
17:22 23:19
24:1 25:13

**impose** 11:6
12:5

**inadequacies**
30:9

**inadequate**
9:18

**inappropriate**

19:3 28:19 29:8

**incident** 26:19
27:7,21 28:9

**incidents**
23:21 27:8,22,
25

**including**
12:20

**inconvenient**
24:14 36:11

**independent**
24:12

**individual** 5:12
6:25 7:1,19
8:18,25 19:2
20:9,10,14,15
23:16 26:24

**individualized**
23:18 31:7,15
37:20

**ineffective**
36:10

**inefficient**
24:14

**informally**
33:6

**information**
23:2

**injured** 22:19

**injuries** 7:1

**injury** 16:9,14
20:10 28:2

**inside** 9:10

**instructive**
36:6

**insufficient**
25:16 37:2

**interested**
15:18

**intervening**
24:3

**intuition** 22:25

**involve** 37:8

**involved** 26:1

27:21

**involvement**
7:21

**involving**
23:21 26:15

**isolation** 13:23
15:23

**issue** 11:4
15:2,3 17:6,9
24:7,10,12,15
29:9 31:23

**issues** 12:5
29:10 31:15
32:9 33:1 37:5,
18,20,23

**J**

**jammed** 36:12

**January** 6:1

**JCCP** 5:19 6:4,
5 13:11 14:5,12
25:17 31:20

**Jersey** 23:12
35:4

**judge** 5:3,22,
25 6:21,22 9:16
10:4,11,13,20
11:1,16,18,24
12:4,10,22
13:3,4,8 14:18,
19 15:2,24,25
17:5,16,18,24
18:2,4,7 20:2,4,
24 21:1,15,16,
24 22:2 23:4,9,
10 25:22,24
26:21 28:10,12,
23 29:23,25
30:17 32:3,5,6,
18,24,25 33:9
34:2,6,8,14
35:5,17,18,22
36:1,7,8,18
37:10,11,15,19
38:3,6

**judges** 33:2

**jurisdiction**
21:9

**jurisdictions**
6:9

**justice** 6:16
18:12

**K**

**Kennelly** 6:23,
24 7:14 8:2,7,
11,17 9:10,14
15:24,25 17:5,
16,18,24 18:2
25:23,24 26:21
28:23 37:19

**key** 24:19
27:16

**Keyword**
36:10

**Kherkher** 22:4

**Kimball** 11:17,
18:24 12:4,10,
22 13:3 21:16
34:8,14 35:5

**kind** 8:2,3
10:15 11:3,4,7
16:1,4 17:16,
18,20 31:11
35:8 36:5

**Kinkeade** 23:9

**knew** 18:19
19:1,6

**L**

**lack** 9:2 15:7
29:1,6

**large** 24:21

**law** 5:14 11:20
12:7 18:12
23:25 24:2 31:9
36:21 37:3,4,24

**laws** 24:8,16
26:3 36:16,23
37:9

**lawyers** 14:16
20:8 33:4,8

**lazy** 36:25


Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

leadership 6:5

learn 10:23

led 19:5

leering 19:3 22:13

legal 24:6,25

Lejeune 35:19, 21

level 7:15 23:14 33:20

liability 7:4,6, 13 11:6 12:6 16:4 24:21,22, 23 25:4,25 26:8,14 31:5 36:17 37:5 38:4

lies 33:3

life 19:25

light 25:19

likewise 14:15

lines 9:17

litigated 6:13

litigation 5:5 37:25 38:4

live 6:10

lives 6:12

location 38:3

locations 12:24

Logan 21:11

long 33:16

longer 6:4,8,15

loop 35:25

lot 12:23 21:8 27:10 33:25 34:1

**M**

made 6:25 16:20

magnet 15:21

34:25

majority 9:8,12 11:22,25 12:19 14:14

make 15:11,21 16:2 32:18,24

makes 19:8,16

mandatory 9:5

manual 28:6

market 17:14

marketing 8:1 13:18 17:10,11, 19 31:18

Massachusetts 18:13 19:18, 21,24 21:10,14

massive 37:2

matter 23:14

matters 37:22

MDL 5:4,9 7:4 14:15 16:4 19:25 26:1 35:2 37:20 38:8,10

MDLS 7:6 19:24 35:7

mechanisms 9:22 29:1,3

medical 7:22, 23

mentioned 21:11 32:6

met 37:7

methodology 28:8

mighty 15:15

million 22:8

millions 13:18 16:24,25 17:12

mind 16:17,23 32:7

minute 13:5

misconduct 22:11

misrepresentation 31:25

missed 12:9 27:3

monitor 27:6

monitoring 27:13,17

morning 5:7, 11 13:9 18:9 22:3

mother 13:16 16:18

motion 5:23 6:1 25:18 36:9

movants 37:16

move 35:15 37:6

movement 37:16

moving 21:7

multi-factor 25:10

multiple 33:21

municipality 24:6

myriad 24:25

**N**

narrower 7:15

negligence 24:22 25:2

negligent 9:17,18 22:17

negotiating 33:24

network 25:7

non-california 5:20

North 35:3,5,22

Northern 5:11 13:14 14:11 23:8,9 35:1

Norton 20:3,4, 24 21:1 35:17, 18 36:1

note 31:17

notice 28:18 30:2

noticed 29:8

number 5:4,24 8:21 15:12,14, 17 33:2 35:2 38:8

Nutella 31:24

**O**

objection 32:16

obligation 27:5

occur 6:17 27:9,22

occurred 5:18 9:9

odd 28:20

offerings 26:10

office 34:19

offices 34:24

Oftentimes 13:20

open 19:23

operate 33:22

operations 34:21

opinion 31:14

opportunity 6:15

opposed 10:21 36:22 38:2

order 16:21,22

original 23:24

outcome 31:10

outweigh 31:6, 13

overarching 7:18

overcome 16:22

overdo 17:20

overriding 18:18,22

oversee 38:3

overwhelmed 35:13,24

**P**

pair 22:5

panel 5:3,17 24:13 26:6,7 31:24 34:8

panel's 38:7

papers 24:4

part 5:16 11:2 17:23 24:21

parties 33:4

partner 5:8 18:11

party 27:4

passengers 11:9,15 30:11

past 6:6

patchwork 34:20

Paula 18:11

peeps 36:2

Peiffer 5:8

penetration 22:14,15

people 8:22 12:6 16:25 22:19,24 23:2

percent 12:2

perfect 34:2



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

APP558

HEARING - MDL NO. 3084, taken on September 28, 2023

45

permutations 26:4

perpetrator 23:23

person 8:19

personal 23:17 30:4

persuade 16:22

persuading 16:25

petition 5:16

petitioners 5:9

pharma 8:13

pharmaceutical 7:17,23

phone 15:17

physicians 7:25

pick 15:3

piecemeal 37:25

pillars 24:19

place 27:8 30:9 34:13 35:7

plaintiff 29:7 34:18

plaintiff's 5:14 25:13 29:2 30:1 34:23

plaintiffs 5:16 6:6 11:22 26:1 32:11 34:16 35:14 36:15

plaintiffs' 33:7

platform 10:17 14:4 15:21 16:20 22:18 28:25

plead 27:16 31:22

pleadings 27:19

point 7:2

police 7:21 11:23 12:1,3,17

policies 15:7, 8,12 20:15,18 21:22 29:7,11 30:19

policy 15:9,19 16:13 20:22 29:17

position 6:7 14:11

positive 33:16

practices 31:4

precautions 9:3 10:10

predator 10:6, 7 14:22 29:21

predators 10:14,18 11:7 13:22 14:4 15:22

predecessors 21:2

predisposed 9:20

predominance 31:6,15

predominant 6:24

predominate 37:23,25

preemption 7:9

prejudice 31:21

prescribing 7:24

presentation 32:8

preside 32:18

presume 35:14

pretty 19:18

prevented 26:19 28:3,7 29:3,20

principle 23:23

prior 15:4 30:15 32:14

problem 12:10,11 18:20 19:1,6

procedure 28:6

procedures 10:10 11:9,13 15:7,8,12 20:19

proceedings 5:1 13:11

process 19:15

processes 20:16

product 7:4,6 16:3,9 25:25 26:7

productions 33:22

promise 17:2,4

proof 12:15

proper 10:10 11:9

properly 10:18

pros 27:13

protect 18:25 19:7

protocol 33:25

protocols 10:15,25 11:14 30:23

prove 30:25

proven 19:22

provide 32:12

PSC 37:19

publicly 18:19 19:14

Puerto 26:3

pursue 6:4

putting 16:21 22:23 36:1

_____

**Q**

_____

quality 25:20

question 6:22 7:7,10,12 8:3, 11,13,18 10:20 12:9 13:15 14:19 15:10 16:1,6,7,15,18 17:1 18:22 22:17,20 24:20, 24 25:5 26:6,9, 11,13 27:5

questionable 20:23

questions 11:16 13:4 14:18 18:4,18 20:2 21:15,24 23:4 24:25 30:4 31:7 32:19 37:11 38:6

quote 25:20

quotes 36:3

quoting 27:18

_____

**R**

_____

Rachel 5:7

raised 37:18

ran 30:5

range 22:13

rate 6:18

read 25:19,20

reason 5:15 35:12

reasons 22:22 31:21

rebuttal 13:6

receive 22:8

recourse 6:4

red 25:19

refer 31:4

reference 31:16

referred 31:18

refiled 6:8

regulated 24:5

regulations 25:5,15 34:21

regulatory 36:16 37:3

related 37:5

relationship 15:14

relationships 33:17

reliance 32:2

reply 7:3

report 22:5 30:7

reported 11:19,23,24,25 12:1,18

reports 12:17 19:2 22:7,9

represent 5:9 12:3,14 23:14

representation 14:2 32:1

representing 13:10 18:14

requirements 9:3

reserved 13:5

residence 12:25

resident 5:21

resides 14:12, 13

respect 18:17 20:23 31:17

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

HEARING - MDL NO. 3084, taken on September 28, 2023

46

respectfully 30:13,24

respond 21:1

response 28:22

responsible 14:1

rest 6:11

result 6:2 10:16

reviewing 20:20

Rico 26:3

ride 12:15 17:2 18:1 24:4 25:6

riders 22:6,9

riding 28:25

Robert 23:13

root 23:10

rules 33:23

ruling 6:3,6

—————

S

—————

sadly 27:9

safe 13:17,19, 20 17:1,2,11,12 18:1 28:25

safely 11:15 17:4,14

safety 9:2,7,19, 22 10:2,10,15 21:18 22:5,7,8 29:1,3 30:8,9, 11,23

sales 7:25

San 5:8

scenarios 30:22

Schulman 5:22,25

sconvenient 36:19

security 20:15, 16 21:22

seek 6:16

seeking 5:10

sense 19:9,14, 16 32:18,24

seriousness 33:15

set 12:4 23:15 31:4 33:23

setting 27:24 36:17

sex 20:5,12

sexual 5:4,21 6:17 10:6,12, 14,16,24 13:22 14:4,22 15:4,22 18:14,15,20,25 19:8,9,16 22:11 23:16,18 29:20

shaking 33:9

sharing 24:4 25:6

shown 28:16

side 11:4

significantly 19:10

Similar 8:11

simplification 14:17

single 8:15 18:23 22:20 30:5 32:10 33:7

sit 6:15

sitting 36:2

situation 13:23 15:23

skinny 31:23

smart 37:1

Smith 33:13

software 29:4

sort 15:5 31:3, 6,12 32:16

sought 7:21 32:17

sounds 9:16

South 35:18

Southern 19:20

speak 17:19

speaking 22:14

specific 7:20 8:7,9 16:12 30:15 32:1

Specifically 11:1

specifics 28:4

speed 35:16

spent 13:18 16:24 17:12

spouse 14:25

stages 19:25

stalking 27:11

stand 13:9

standard 21:18

standards 8:16 9:1,7 10:3 36:17

Stanley 22:2,3, 4 23:6

start 32:7

starting 37:18

state 24:5,15, 16,17,18 25:9, 14 31:23 35:12

state-by- 31:22

states 22:7 23:24 24:8 25:8 26:2,4 31:9 34:24 36:12,16, 20 37:9

statutes 25:5

statutory 37:4

steps 18:24

stop 25:18

stopped 29:5

strange 35:4

stranger 13:16 15:1

strangers 16:19,21,24

strongly 35:11

subject 30:14

success 37:7

sufficient 25:15 35:16

sufficiently 31:22

suggest 24:9 30:24 36:14

suggested 35:3

suggestive 22:14

superseding 24:3

support 23:8

supported 29:10

surprise 37:5, 6

survivors 6:14 18:14 19:16

system 22:10, 16,23

systems 20:16 21:22

—————

T

—————

takes 27:8

talk 33:6

talked 28:23 32:8

talking 7:24 16:12 23:19,20

target 17:15,23

teaches 25:17

team 23:11

Technologies 5:4

technology 28:5,8 29:19

template 34:4

terms 35:2

test 25:10

Texas 22:4 23:6,7,8

texts 12:21

theories 28:12 30:18

theory 7:18 30:17

therapy 7:22

there'll 6:18

thing 16:10 17:7 19:17 26:16 27:15 31:1 35:14

things 14:24 15:6,18,21 19:3 29:14 30:10,20 31:18 32:13

thinking 7:5

third- 27:3

thousands 6:18 35:23

threats 9:25

thrown 14:8

time 5:22 18:10 32:21 33:16,25 35:20 37:14

timely 6:15

TNCS 25:7

today 5:15 15:16 18:11 19:19

told 13:16 34:3

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

HEARING - MDL NO. 3084, taken on September 28, 2023

47

tolerance 15:9

tort 24:2 36:16
37:4

tortfeasor
23:24

touched 16:2

trafficking
20:6,13

tragically
19:10 27:9,22

train 10:9

training 9:1,2
10:2,5,6,21,22,
24 11:1,2,3,4,7,
8,12,13 15:11,
12 28:6 29:18
30:19 32:13

transportation
25:7

trauma 6:10

treated 18:16

treating 7:25

treatment 7:22

trial 32:21

TRT 37:19

true 7:3 25:25

trust 14:1 17:3

tug 34:1

turn 5:3 24:24
28:13

TV 35:19

type 11:11

types 23:21

_____
U
_____

U.S. 22:5

Uber 5:4,22
6:4,11,16 8:15
10:23 11:6,25
12:6,19 13:17,
24 14:6,12,20
15:3 18:16,18,

23 19:6 20:17
21:5 22:10,15,
17 23:1,14 24:9
25:1,11 26:18
27:3,12 28:2,13
29:11 30:2,6,9,
23 31:2 34:19
38:4

Uber's 6:1 7:13
14:13 16:20
20:18 22:5,7
26:14 27:14
30:23 36:17
37:4

ultimately
29:16

uncomfortable
30:5

underreported
19:11

understand
10:5 11:3

understate
36:15

understood
36:19

uniform 33:19

unique 5:14
23:16

United 22:7

unlawful 9:24

unrelated
23:16

untenable 6:7

update 5:12

_____
V
_____

varies 24:15

variety 23:20
31:21

veer 27:19,23

veered 27:21

vendor 27:4

vetted 10:18

14:3

vetting 8:20

vicarious
24:22,23 25:3

victim 13:23

victim's 20:7

victims 29:13
38:5

video 12:23
27:6,13

violation 17:3

virtually 25:24

vulnerable
13:23 15:23

_____
W
_____

wage 24:10
31:2

wait 6:12

waiting 6:7
36:3

war 34:1

warned 16:19

watch 35:19

website 17:7

weird 30:3

Williams 13:8,
9 14:23 15:6
16:17 17:10,17,
22,25 18:3,6

Wolf 5:8

woman 6:10
7:20 13:18,24
14:2 15:13,15,
16,23 19:11
30:2

women 10:14
16:22 17:17,25
29:12 30:21

word 36:1

words 28:7

work 27:2
28:15 33:23

working 21:21

workload 35:3

works 22:21
27:6

worst 29:20

worth 31:19

wreak 38:2

wrong 23:1
26:11,13

_____
Y
_____

ya 23:11

year 6:1 20:4
22:6

years 5:18 14:6
18:14,21

you-all 35:19

_____
Z
_____

zero- 15:8

zero-tolerance
15:19 16:13

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

IN RE: UBER TECHNOLOGIES, INC.,
PASSENGER SEXUAL ASSAULT LITIGATION                    MDL No. 3084

TRANSFER ORDER

**Before the Panel**: Plaintiffs in 14 actions move under 28 U.S.C. § 1407 to centralize this litigation in the Northern District of California. This litigation consists of 22 actions pending in 11 districts, as listed on Schedule A. Since the filing of the motion, the Panel has been notified of 57 related actions in four districts.[1]

Plaintiffs in 44 actions—including plaintiffs in 33 actions represented by court-appointed leadership counsel in the California state court coordinated cases[2]—support the motion. Plaintiffs in nine of these actions alternatively support centralization in the District of Massachusetts, and plaintiff in one action also alternatively supports centralization in the Northern District of Texas. Defendants[3] oppose centralization or, alternatively, suggest the Eastern District of North Carolina as the transferee district.

On the basis of the papers filed and the hearing session held, we find that these actions involve common questions of fact, and that centralization in the Northern District of California will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. These actions share complex factual questions arising from allegations that Uber failed to implement appropriate safety precautions to protect passengers, and that plaintiffs suffered sexual assault or harassment as a result. Common factual questions include Uber's knowledge about the prevalence of sexual assault by Uber drivers, and whether Uber failed to conduct adequate background checks of its drivers, train drivers regarding sexual assault and harassment, implement adequate safety measures to protect passengers from sexual assault, and

---

[1]     These and any other related actions are potential tag-along actions. *See* Panel Rules 1.1(h), 7.1, and 7.2.

Movants notified the Panel of a 58th action in a Notice of Related Actions that they later informed the Panel had been included erroneously. No party has responded that this action should be included in centralized proceedings.

[2]     California Judicial Council Coordination Proceeding No. 5188 (Uber JCCP).

[3]     Uber Technologies, Inc.; Rasier, LLC; and Rasier-CA, LLC (together, Uber).

- 2 -

adequately respond to complaints about drivers. Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary.

Defendants argue that individual and state-specific factual and legal issues will predominate, and that discovery will focus on the various circumstances of plaintiffs' alleged assaults and their injuries. Though, as defendants argue, these claims are of a deeply personal nature, "almost all injury litigation involves questions of causation that are case- and plaintiff-specific. Such differences have not been an impediment to centralization in the past." *See In re Wright Med. Tech., Inc., Conserve Hip Implant Prods. Liab. Litig.*, 844 F. Supp. 2d 1371, 1372 (J.P.M.L. 2012). Defendants respond that, unlike in a medical device products liability litigation, an overarching question of general causation will not be at issue here. We find there are sufficient common issues present to warrant centralized treatment, including, for example, Uber's knowledge of the prevalence of sexual assault, representations regarding safety, and policies and practices for handling complaints about drivers. "Although individualized factual issues may arise in each action, such issues do not—especially at this early stage of litigation—negate the efficiencies to be gained by centralization." *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017).

Defendants also assert that they intend to name the drivers as third-party defendants, and the actions will hinge on each driver's status and alleged conduct. Therefore, defendants argue, denial of centralization would be consistent with our decision in *In re Varsity Spirit Athlete Abuse Litigation. See __ F. Supp. 3d __,* 2023 WL 3828645 at *1 (J.P.M.L. June 5, 2023). We decline to speculate as to the impact of as yet unfiled third-party claims on the efficiency of common proceedings. In *Varsity Athlete Abuse*, we concluded that discovery regarding an alleged common scheme would be overwhelmed by unique factual issues concerning each plaintiff's alleged abuse and the more than 30 individual coaches and gyms named as defendants. But that conclusion also was supported by our findings that all plaintiffs shared counsel, just ten actions were pending in seven districts, and the parties already had been successfully informally coordinating the actions. *Id.* at *2. Here, in contrast, there are 79 actions pending in 13 districts, and at least 14 different plaintiffs' firms are involved. Given the large and growing number of involved actions and counsel, centralization likely will streamline overlapping discovery and pretrial proceedings arising from nearly identical allegations regarding Uber's corporate policies and practices as to alleged passenger sexual assaults.

Defendants further argue that common legal issues are not present because of differences in state law. But many MDLs involve the application of various states' laws. Defendants cite *In re Uber Technologies, Inc., Wage & Hour Employment Practices Litigation*, in which the Panel denied centralization, finding that "the standards for determining whether independent contractors are employees vary substantially from state to state and involve a broad range of factors." 158 F. Supp. 3d 1372, 1373 (J.P.M.L. 2016). While this issue also is common to the actions before us and key to certain claims, it is not the question at the root of the litigation, as it was in *Uber Wage & Hour*. Rather, discovery and pretrial proceedings here will be focused on far more than this one issue. Additionally, regardless of whether differences in state law will reduce the risk of

- 3 -

inconsistent rulings, centralization still will allow for efficient briefing schedules on motions to dismiss. Thus far, the parties appear to be working informally to enter stipulated briefing schedules, but with the number of cases and attorneys increasing, this likely will not continue to be feasible. We, therefore, are not convinced that informal coordination is preferable here.

The California state court's order granting Uber's motion to dismiss the non-California cases on *forum non conveniens* grounds is not relevant to our determination of whether centralization is appropriate under Section 1407. We consider whether the actions involve common questions of fact, and whether centralization will serve the convenience of parties and witnesses and promote the just and efficient conduct of the litigation. *See* 28 U.S.C. § 1407(a). In deciding Uber's *forum non conveniens* motion, the state court weighed public interest considerations—such as avoiding overburdening local courts with foreign cases—that we do not examine under Section 1407. *See In re Uber Rideshare Litigation*, JCCP No. 5188, January 23, 2023, Order on Uber's FNC Motion, at p. 11.

Finally, Uber's argument that its Terms of Use preclude the motion for centralization is not persuasive. The Panel is not bound by Uber's Terms of Use, and Section 1407(c) grants the Panel the authority to centralize civil cases upon its own initiative. Moreover, plaintiffs suggest they will challenge the enforceability of Uber's Terms of Use. Centralization thus will allow for streamlined briefing on this common issue.

We find the Northern District of California the most appropriate transferee district for this litigation. Sixty-two of the 79 actions are pending in this district, where Uber is headquartered, and where the California Uber JCCP is located. Centralization there will allow for coordination between the courts and parties. The Honorable Charles R. Breyer, who presides over seven of the related actions, has unparalleled experience as a transferee judge, and we are confident that he will steer this litigation on a prudent course.

IT IS THEREFORE ORDERED that the actions listed on Schedule A and pending outside the Northern District of California are transferred to the Northern District of California and, with the consent of that court, assigned to the Honorable Charles R. Breyer for coordinated or consolidated pretrial proceedings.

- 4 -

PANEL ON MULTIDISTRICT LITIGATION

_____

Karen K. Caldwell
Chair

| | |
|---|---|
| Nathaniel M. Gorton | Matthew F. Kennelly |
| David C. Norton | Roger T. Benitez |
| Dale A. Kimball | Madeline Cox Arleo |

IN RE: UBER TECHNOLOGIES, INC.,
PASSENGER SEXUAL ASSAULT LITIGATION                    MDL No. 3084

## SCHEDULE A

District of Arizona

ADORNO v. UBER TECHNOLOGIES INCORPORATED, ET AL.,
    C.A. No. 2:23−00875

Northern District of California

DOE LSA 340 v. UBER TECHNOLOGIES, INC., ET AL., C.A. No. 3:23−01165
HYLIN v. UBER TECHNOLOGIES, INC., ET AL., C.A. No. 3:23−01630
R. v. UBER TECHNOLOGIES, INC., ET AL., C.A. No. 3:23−02051
G. v. UBER TECHNOLOGIES, INC., ET AL., C.A. No. 3:23−02071
GAVIN v. UBER TECHNOLOGIES, INC., ET AL., C.A. No. 3:23−02111
CRAWFORD v. UBER TECHNOLOGIES, INC., ET AL., C.A. No. 3:23−02290
M. v. UBER TECHNOLOGIES, INC., ET AL., C.A. No. 3:23−03406
A.H.M. v. UBER TECHNOLOGIES, INC., ET AL., C.A. No. 3:23−03482
B. v. UBER TECHNOLOGIES, INC., ET AL., C.A. No. 3:23−03488

District of Colorado

GLASER v. UBER TECHNOLOGIES, INC., ET AL., C.A. No. 1:23−01734
M.H. v. UBER TECHNOLOGIES, INC., ET AL., C.A. No. 1:23−01735

Middle District of Georgia

FRESHWATER v. UBER TECHNOLOGIES, INC., ET AL., C.A. No. 5:23−00246

Northern District of Georgia

N.R. v. UBER TECHNOLOGIES, INC., ET AL., C.A. No. 1:23−02603

Northern District of Illinois

C.S. v. UBER TECHNOLOGIES, INC., ET AL., C.A. No. 1:23−02766
SULLIVAN v. UBER TECHNOLOGIES, INC., C.A. No. 1:23−02767
MURPHY v. UBER TECHNOLOGIES, INC., ET AL., C.A. No. 1:23−03425

-A2

District of Massachusetts

DOE v. UBER TECHNOLOGIES, INC., ET AL., C.A. No. 1:23−10745

Western District of Missouri

COWSERT v. UBER TECHNOLOGIES, INC., ET AL., C.A. No. 2:23−04133

Eastern District of North Carolina

S.W. v. UBER TECHNOLOGIES, INC., ET AL., C.A. No. 5:23−00317

Northern District of Texas

ESPINOSA v. UBER TECHNOLOGIES, INC., ET AL., C.A. No. 3:23−01519

Southern District of Texas

ROLLO v. UBER TECHNOLOGIES, INC., ET AL., C.A. No. 3:23−00216