**Case Nos. 23-3445, 24-5063**

# In the United States Court of Appeals for the Ninth Circuit

_____

### IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

_____

On Petition for a Writ of Mandamus to the United States
Judicial Panel on Multidistrict Litigation (MDL No. 3084)

_____

On Appeal from the United States District Court
for the Northern District of California (MDL No. 3084)

_____

## SUPPLEMENTAL BRIEF OF REAL PARTIES IN INTEREST / PLAINTIFFS-APPELLEES

_____

Sarah R. London
Andrew R. Kaufman
LIEFF, CABRASER, HEIMANN &
 BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
(415) 956-1000

*MDL Plaintiffs' Co-Lead Counsel*

Samuel Issacharoff
40 Washington Square South 411J
New York, NY 10012
(212) 998-6580
si13@nyu.edu

*Counsel for Real Parties In Interest /
Plaintiffs-Appellees*

Roopal P. Luhana
Steven D. Cohn
CHAFFIN LUHANA LLP
600 Third Ave., 12th Floor
New York, NY 10016
(888) 480-1123

*MDL Plaintiffs' Co-Lead Counsel*

Rachel B. Abrams
PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP
555 Montgomery Street, Ste. 820
San Francisco, CA 94111
(415) 426-5641

*MDL Plaintiffs' Co-Lead Counsel*

## CORPORATE DISCLOSURE STATEMENT

No corporation is a Real Party in Interest / Plaintiff-Appellee in this case.

Therefore, no corporate disclosure statement is required under Rule 26.1 of the

Federal Rules of Appellate Procedure.

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................1

STANDARDS OF REVIEW ...................................................................3

ARGUMENT ..........................................................................................4

    I.     The § 1292(b) appeal should be dismissed for lack of appellate jurisdiction...............................................................................4

    II.    The petition for writ of mandamus should be denied. ........................6

        A.    Congress committed centralization decisions to the JPML's discretion absent unprecedented circumstances...........6

        B.    Uber cannot meet the prerequisites for a writ of mandamus. ....................................................................7

            1.    Uber shows no harm justifying mandamus.......................7

            2.    Uber does not show clear legal error. .............................11

                a.    Uber's legal arguments contradict the text of the MDL statute..................................................12

                b.    Like Uber's other positions, its TOU argument contradicts the text of § 1407..............16

                c.    Because the statute answers the question before the Court, no further contractual analysis is necessary...........................................20

CONCLUSION......................................................................................21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Pac. Dairy Prod. v. Dist. Ct. of Guam*,
    217 F.2d 589 (9th Cir. 1955) .................................................................8

*Amador v. United States*,
    98 F. 4th 28 (1st Cir. 2024) .................................................................7

*In re Asbestos Prods. Liab. Litig. (No. VI)*,
    718 F.3d 236 (3d Cir. 2013) ...............................................................15

*Atl. Marine Const. Co, Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
    571 U.S. 49 (2013) .............................................................................19

*Bankers Life & Cas. Co. v. Holland*,
    346 U.S. 379 (1953) ...........................................................................12

*Bauman v. U.S. Dist. Ct.*,
    557 F.2d 650 (9th Cir. 1977) .....................................................2, 3, 13

*Cheney v. U.S. Dist. Ct. for Dist. of Colum.*,
    542 U.S. 367 (2004) ......................................................................8, 12

*Cigna Corp. v. Amara*,
    563 U.S. 421 (2011) .............................................................................8

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ...........................................................................17

*DeGeorge v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*,
    219 F.3d 930 (9th Cir. 2000) ...............................................................9

*DePuy Synthes Sales, Inc. v. Howmedica Oseonics Corp.*,
    28 F. 4th 956 (9th Cir. 2022) ...........................................................3, 4

*Ex parte Fahey*,
    332 U.S. 258 (1947) .............................................................................8

*Fed. Ins. Co. v. United States*,
    882 F.3d 348 (2d Cir. 2018) ................................................................8

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*FedEx Ground Package Sys, Inc. v. JPML*,
  662 F.3d 887 (7th Cir. 2011) ................................................................7

*United States ex rel. Greathouse v. Dern*,
  289 U.S. 352 (1933)............................................................................8

*Heckler v. Ringer*,
  466 U.S. 602 (1984)..........................................................................12

*Hoult v. Hoult*,
  57 F.3d 1 (1st Cir. 1995) ...................................................................17

*Karnoski v. Trump*,
  926 F.3d 1180 (9th Cir. 2019) ..........................................................11

*Kellogg v. Watts Guerra LLP*,
  41 F. 4th 1246 (10th Cir. 2022) ..........................................................5

*Kerr v. U.S. Dist. Ct. for the N. Dist. of Cal.*,
  426 U.S. 394 (1976)............................................................................8

*In re Kirkland*,
  75 F. 4th 1030 (9th Cir. 2023) ..........................................................13

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
  523 U.S. 26 (1998)............................................................................14

*Looper v. Cook Inc.*,
  20 F. 4th 387 (7th Cir. 2021) ..............................................................9

*Mayacamas Corp v. Gulfstream Aerospace Corp.*,
  806 F.2d 928 (9th Cir. 1986), *aff'd*, 485 U.S. 271 (1988)..............8, 9

*McLane Co., Inc. v. EEOC*,
  581 U.S. 72 (2017)..............................................................................7

*Miller v. Baker Implement Co.*,
  439 F.3d 407 (8th Cir. 2006) ............................................................17

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re Morgan*,
  506 F.3d 705 (9th Cir. 2007) ...............................................................18

*In re Mortg. Elec. Reg. Sys., Inc.*,
  754 F.3d 772 (9th Cir. 2014) ..................................................................5

*In re Park W. Galleries, Inc., Mktg. & Sales Prac. Litig.*,
  655 F. Supp. 2d 1378 (J.P.M.L. 2009) ..............................................18

*Perez v. K&B Transp., Inc.*,
  967 F.3d 651 (7th Cir. 2020) ...............................................................17

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
  460 F.3d 1217 (9th Cir. 2006) ......................................1, 5, 10, 16

*Romag Fasteners, Inc. v. Fossil, Inc.*,
  590 U.S. 212 (2020)................................................................................15

*In re U.S. Dep't of Educ.*,
  25 F. 4th 692 (9th Cir. 2022) .............................................................13

*In re Walsh*,
  15 F. 4th 1005 (9th Cir. 2021) .........................................................3, 8

*Will v. United States*,
  389 U.S. 90 (1967)................................................................................12

**Statutes**

9 U.S.C. § 1 ...............................................................................................17

9 U.S.C. § 2 ...............................................................................................17

9 U.S.C. § 402 .........................................................................................17

18 U.S.C. § 3553 .....................................................................................18

28 U.S.C. § 137 .......................................................................................18

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

28 U.S.C. § 1391 .................................................................................19

28 U.S.C. § 1404 ..............................................................................9, 19

28 U.S.C. § 1407 ........................................... 4, 5, 6, 14, 16, 18, 20

An Act to Establish Rules of Evidence for Certain Courts and
    Proceedings, Pub. L. 93-595, 88 Stat. 1926 (1975)............................17

Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (2005) ...................15

**Court Rules**

Proposed Fed. R. Civ. P. 16.1 ..........................................................13

Fed. R. Civ. P. 23(a).....................................................................14, 19

Fed. R. Crim. P. 11.........................................................................18

Fed. R. Evid. 101 ...........................................................................17

**Other Authorities**

Andrew D. Bradt, *"A Radical Proposal": The Multidistrict Litigation
    Act of 1968*, 165 Univ. of Penn. L. Rev. 831 (2017) ..........................10

Fed. Jud. Ctr., *Manual for Complex Litigation* (4th ed. 2004)..................5

Robert H. Klonoff, *Federal Multidistrict Litigation in a Nutshell*
    (West 2020)......................................................................7, 19

## INTRODUCTION

Rarely are appeals so squarely controlled by the text of the underlying statute. In crafting 28 U.S.C. § 1407, "Congress saw a need to create a mandatory" regime "for conducting joint pretrial proceedings." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1230 (9th Cir. 2006). Congress "created the Judicial Panel on Multidistrict Litigation," a specialized seven-member court consisting of both district and circuit judges, and "conferred on the Panel the power to consolidate pretrial proceedings for such cases and assign them to a single judge who would coordinate them." *Id.* Review of those decisions is limited, with orders granting MDL centralization reviewable only by mandamus, and denials not reviewable at all. Application of the statute yields straightforward results in both cases before the Court.

*First*, the new appeal (No. 24-5063) must be dismissed for lack of appellate jurisdiction. Uber contends in that appeal that the transferee court erred by permitting certain cases to be part of the MDL in light of restrictions on coordinated litigation in Uber's Terms of Use (TOU). But Congress assigned determination of which cases are included in an MDL to the JPML. That court exercised its statutory authority and ordered these cases centralized, expressly rejecting Uber's reliance on the same TOU in the process. Under the MDL statute, the transferee judge has no authority to alter or undo the JPML's centralization

- 1 -

decision. Further, under the statute, Uber may seek review of that decision only through mandamus, not through subsequent appeal from the transferee court.

*Second*, the mandamus petition (No. 23-3445) must be denied. Congress reserved appellate review of JPML transfer orders for exceptional circumstances. Yet Uber identifies no irreparable harm that it will suffer, a prerequisite to mandamus relief under the conditions this Court set out in *Bauman v. U.S. Dist. Ct.*, 557 F.2d 650, 654 (9th Cir. 1977). Given the unique composition of the tribunal, the inherently discretionary task assigned to it, and the deferential standard of review, no court of appeals has ever issued a writ of mandamus against an MDL centralization order. This case should not be the first.

*Third,* Uber cannot satisfy the third, and most important *Bauman* criterion, the requirement that the JPML committed clear legal error. *Id.* at 654-55. Uber asks the Court to modify the plain language of the MDL statute, by adding a "predominance" requirement, or requiring some federal question to justify MDL centralization. Both arguments run counter to the statute's text, which allows the JPML to consolidate cases "involving one or more common questions of fact." Certainly, arguments that run contrary to statutory text cannot be the source of clear legal error, as required for mandamus.

*Fourth*, Uber's TOU argument is just more of the same: the statute clearly assigns determination of whether to centralize cases into an MDL to "the judicial

panel on multidistrict litigation upon its own initiative," not to the whims of private parties expressed through contract. The JPML acts in furtherance of the congressional mandate to deploy efficiently the resources of the federal courts in cases with overlapping issues of fact. It is not designed primarily to further the private interests of parties, nor is it beholden to those private interests.

The mandamus petition should be denied and the § 1292(b) appeal dismissed.

### STANDARDS OF REVIEW

**Case No. 23-3445**. Decisions of the JPML are reviewable only by extraordinary writ, 28 U.S.C. § 1407. This Court issues the writ only upon a showing of "extraordinary circumstances" amounting "to a judicial usurpation of power or a clear abuse of discretion." *In re Walsh*, 15 F. 4th 1005, 1008 (9th Cir. 2021) (citation omitted). The Court applies the factors articulated in *Bauman*, 557 F.2d at 654-55.

**Case No. 24-5063**. Assuming appellate jurisdiction exists, the Court reviews the district court's order for an abuse of discretion. *See DePuy Synthes Sales, Inc. v. Howmedica Oseonics Corp.*, 28 F. 4th 956, 961 (9th Cir. 2022) (by analogy, denial of transfer based on forum-selection clause reviewed for abuse of discretion).

## ARGUMENT

**I.      The § 1292(b) appeal should be dismissed for lack of appellate jurisdiction.**

Uber's § 1292(b) appeal from the transferee court's order finding the TOU unenforceable is just a re-packaging of Uber's original challenge to the JPML's decision to centralize these cases in an MDL. Before the JPML, Uber argued "that its Terms of Use preclude the motion for centralization." PER-5 (JPML Order).[1] The JPML rejected Uber's argument, explaining that Congress gave it, not private parties, the authority to determine the propriety of MDL. *Id.* ("The Panel is not bound by Uber's Terms of Use, and Section 1407(c) grants the Panel the authority to centralize civil cases upon its own initiative.").

In the § 1292(b) appeal, Uber does not challenge anything the transferee court did as part of its own case management responsibilities (dispositive motions, discovery, etc.). The district court correctly rejected the claim that consolidation was in any manner the province of the transferee court: "Transferee courts do not make transfer determinations under Section 1407(a), and they certainly are not empowered to independently reevaluate the JPML's conclusions about whether transfer was appropriate. *See* 28 U.S.C. § 1407(e) (review of transfer decisions only by extraordinary writ in the court of appeals having jurisdiction over the

---

[1] "PER" refers to the Excerpts of Record filed with this supplemental brief.

transferee court)." PER-30 (N.D. Cal. Order); *see also id.* at PER-36 n.7 (acknowledging "a host of practical difficulties with the relief that Uber asks for," but "[f]or purposes of this discussion, … set[ting] these difficulties aside"); *PPA*, 460 F.3d at 1231 ("the transferee court … has no independent authority to … remand") (quoting Fed. Jud. Ctr., *Manual for Complex Litigation* § 20.133 (4th ed. 2004)).

Uber was not free to argue in the transferee court "whether many plaintiffs' claims are adjudicated in this MDL or whether they are adjudicated elsewhere." 1292 Pet. at 9. The MDL statute assigns resolution of that question to the JPML, which answered it when it ordered transfer and centralization. Uber's beef is with the JPML, not the transferee court.

In turn, under the express statutory terms, "No proceedings for review of any order of the panel may be permitted except by extraordinary writ." 28 U.S.C. §1407(e). Accordingly, this Court lacks jurisdiction to review the JPML's order via appeal from the transferee court under § 1292(b). *See In re Mortg. Elec. Reg. Sys., Inc.*, 754 F.3d 772, 780 (9th Cir. 2014) ("dismiss[ing] for lack of jurisdiction … appeal of the JPML Order" sought through route other than "mandamus"); *Kellogg v. Watts Guerra LLP*, 41 F. 4th 1246, 1254 (10th Cir. 2022) (collecting cases). To be sure, any issues falling within the district court's subsequent assigned functions

are subject to this Court's supervisory review (whether under § 1292(b), mandamus, or, if a final order, § 1291), but the actions of the JPML are not.

## II. The petition for writ of mandamus should be denied.

### A. Congress committed centralization decisions to the JPML's discretion absent unprecedented circumstances.

Appellate review of the JPML is sharply circumscribed. An order "denying a motion to transfer" is not subject to any "appeal or review." 28 U.S.C. § 1407(e). And "review of any" other "order of the panel may be permitted [only] by extraordinary writ." *Id.* This makes sense given the structure Congress created. The JPML is a specialized, Article III court comprising "seven circuit and district judges designated … by the Chief Justice …, no two of whom shall be from the same circuit." *Id.* § 1407(d). It would be passing strange for day-to-day determinations of a seven-member court (one that may include circuit judges) with nationwide representation to be subject to routine appellate review by three-member panels. The federal appellate structure is not formed around fewer judges hearing appeals from a larger number of Article III judges.

Under § 1407, civil actions "involving one or more common questions of fact" may be centralized if transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." *Id.* § 1407(a). Here, Uber says that the JPML got that wrong, that questions regarding Uber's policies around sexual assault would not benefit from common discovery

- 6 -

and instead should be litigated in more than a thousand individual cases separately. But the "choice between these two methods of case management is an archetype for a discretionary judgment." *FedEx Ground Package Sys, Inc. v. JPML*, 662 F.3d 887, 891 (7th Cir. 2011). Such judgments turn "on the application of broad standards to multifarious, fleeting, special, narrow facts that utterly resist generalization," and naturally receive "deferential review." *McLane Co., Inc. v. EEOC*, 581 U.S. 72, 81 (2017); *see also Amador v. United States*, 98 F. 4th 28, 36 (1st Cir. 2024) ("judgment calls receive a classically deferential reception") (citation omitted).

Predictably, considering the statute's structure and limits on appellate review, the inherently discretionary judgment calls the JPML must make, and the exacting requirements for mandamus, no court of appeals has ever issued a writ against a JPML order centralizing cases under § 1407. *See* Robert H. Klonoff, *Federal Multidistrict Litigation in a Nutshell* § 5.6 (West 2020) (reviewing cases). Uber does not explain why this Court should be the first.

### B.     Uber cannot meet the prerequisites for a writ of mandamus.

#### 1.     Uber shows no harm justifying mandamus.

The Court need not even reach the merits of the JPML's decision because Uber does not identify how it is harmed by the order it seeks to challenge. This Court has clearly established that mandamus requires that "the petitioner will be

damaged or prejudiced in a way not correctable on appeal." *Walsh*, 15 F. 4th at

1008; *Am. Pac. Dairy Prod. v. Dist. Ct. of Guam*, 217 F.2d 589, 590 (9th Cir.

1955) (denying mandamus arising out of case consolidation because "[t]here is no

showing of what, if any prejudice will result to movant by such consolidation");

*Mayacamas Corp v. Gulfstream Aerospace Corp.*, 806 F.2d 928, 930 (9th Cir.

1986), *aff'd*, 485 U.S. 271 (1988) (denying mandamus where petitioner failed to

show "serious hardship or prejudice").

By permitting review only through mandamus, Congress knowingly selected

a "drastic and extraordinary" remedy "reserved for really extraordinary causes." *Ex*

*parte Fahey*, 332 U.S. 258, 259-60 (1947). Mandamus may not issue unless the

petitioner satisfies three preconditions: (1) the unsuitability of other means of

review; (2) the right to the writ must be "clear and indisputable"; and (3) the writ

must be compelled by the circumstances of the case. *Cheney v. U.S. Dist. Ct. for*

*Dist. of Colum.*, 542 U.S. 367, 380-81 (2004) (citing *Kerr v. U.S. Dist. Ct. for the*

*N. Dist. of Cal.*, 426 U.S. 394, 403 (1976)).

With regard to the third condition of compelling circumstances, courts have

treated mandamus as being in the nature of equitable remedy, *Cigna Corp. v.*

*Amara*, 563 U.S. 421, 440 (2011), and "its allowance [a]s controlled by equitable

principles," *United States ex rel. Greathouse v. Dern*, 289 U.S. 352, 359 (1933);

*accord, e.g.*, *Fed. Ins. Co. v. United States*, 882 F.3d 348, 365 (2d Cir. 2018)

- 8 -

("[E]quitable principles have traditionally governed petitions for mandamus relief."). Accordingly, mandamus, like other equitable relief, requires significant and irreparable harm; the Court denies mandamus absent a showing of such. *See Mayacamas Corp.*, 806 F.2d at 930; *DeGeorge v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 219 F.3d 930, 936 (9th Cir. 2000) ("cost and delay" are "not the type of prejudice that is relevant in determining mandamus relief").

Here, Uber has not articulated any cognizable harm to itself flowing from the JPML's transfer decision.[2] The only harm asserted—an inability to serve process on third parties—was never argued to the JPML and is thereby waived. PER-12 (JPML Supp. Order); *see also* PER-39 (N.D. Cal. Order) (noting that "Uber has not … articulated its interests in the enforcement" of the TOU). Further, the argument is meritless because MDL centralization does not limit (or expand) Uber's ability to implead third parties.[3] *See* Ans. to Pet. for Mandamus at 24-26.

Developments in the transferee court demonstrate that, instead of prejudice, MDL centralization through coordinated discovery has already benefited Uber in

---

[2] MDL centralization is for pretrial proceedings only. So, unlike an order under 28 U.S.C. § 1404 transferring a case for all purposes, there is no risk of trial (and thus preclusion) in the wrong venue.

[3] Even cases directly filed in the MDL retain the venue and jurisdiction of where they would have been filed absent an MDL. *See Looper v. Cook Inc.*, 20 F. 4th 387, 389-93 (7th Cir. 2021). For that reason, the MDL does not create any new personal jurisdiction or venue obstacles to Uber asserting third-party claims.

meaningful ways. The transferee court has ordered that each Uber witness be

deposed only once in the MDL, and that absent "good cause or court order,

common witnesses should not be deposed separately" between the MDL and the

parallel state-court proceedings. PE-104–122 (deposition protocol) § F. Without

MDL coordination, Uber's key corporate witnesses would be subject to hundreds

of depositions in federal court cases alone, on top of those taken in the state court

proceedings, precisely the inefficiency that the MDL structure was designed to

avoid. Without the MDL, Uber would have to move for protective orders in dozens

of courts and individual judges would have to fashion ad hoc workouts of the

obvious problem in repeated similar discovery. As the history of the MDL statute

reveals, this was precisely the impromptu workaround in the *Electrical Products*

cases that Congress sought to overcome through the mandatory provisions of

§ 1407. *PPA*, 460 F.3d at 1229-30 (Congress saw need to create a mandatory, not

voluntary, procedure for related cases); Andrew D. Bradt, *"A Radical Proposal":*

*The Multidistrict Litigation Act of 1968*, 165 Univ. of Penn. L. Rev. 831, 854-63

(2017) (on history of electrical products cases and the formation of the MDL

approach).

Uber has also obtained accelerated, organized discovery that it could never

get in an individual case. The transferee court ordered every plaintiff, before any

formal discovery, to immediately produce evidence of the Uber ride during which

they were assaulted, PER-52–59 (discovery order) § 4, and soon after to provide extensive information about the claimant's background, incident, witnesses, damages, etc. *See* PER-60–105 (fact sheet order). And Uber has enjoyed other systemic benefits, like resolving cross-cutting legal issues once rather than over and over in each individual case. *See* PER-125–179 (motion to dismiss order).

Nor has Uber argued that there any broader questions at stake beyond the mere administration of the immediate cases, or otherwise presenting "new and important problems of first impression." *Karnoski v. Trump*, 926 F.3d 1180, 1203 (9th Cir. 2019). Certainly nothing in the Petition rises to the compelling public interest in avoiding difficult potential intrusions on executive privilege, as presented in *Karnoski*.

### 2. Uber does not show clear legal error.

Uber argues that the JPML "clearly erred" in five ways: by "(A) failing to address the fact that the answers to many of the fundamental legal questions at the core of these lawsuits will vary from state to state; (B) failing to consider that many highly individualized questions will predominate over the very few common questions; (C) declining to consider the fault and liability of third-party drivers; (D) finding that it will be efficient and convenient to centralize; and (E) disregarding Uber's Terms of Use." Mandamus Pet. at 14-15.

The common thread is disregard of the plain terms of the statute, which does not provide for consideration of the factors in arguments (A)-(C) and (E). The one exception is argument (D), but the determination of whether centralization will promote justice, efficiency, and convenience is committed to the JPML's broad discretion. PER-10 (JPML Supp. Order). Uber cannot predicate clear error on either the addition of words into the statute or second-guessing an inherently discretionary judgment call.

### a. Uber's legal arguments contradict the text of the MDL statute.

Mandamus is not an appeal by another name but reserved for "exceptional circumstances amounting to a judicial 'usurpation of power,'" *Will v. United States*, 389 U.S. 90, 95 (1967), or a "clear abuse of discretion." *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953). Only such extraordinary circumstances "will justify the invocation of this extraordinary remedy," *Cheney*, 542 U.S. at 380 (quoting *Will*, 389 U.S. at 95). Simply put, mandamus is an extraordinary remedy, available to a petitioner only "if ... the [respondent] owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). In selecting this limited remedy in 1968, Congress was well aware that, as this Court has noted, "cases and authorities bristle with language likewise suggesting that mandamus will issue only in 'drastic,' 'exceptional' and 'extra-ordinary' circumstances." *Bauman*, 557 F.2d at 654.

- 12 -

*Bauman* identified five requirements for mandamus to issue, of which the third, clear legal error, "is almost always a necessary predicate for the granting of the writ." *In re Kirkland*, 75 F. 4th 1030, 1041 (9th Cir. 2023) (quoting *In re U.S. Dep't of Educ.*, 25 F. 4th 692, 698 (9th Cir. 2022)). As such, "[t]he clear-error standard is highly deferential and typically requires prior authority from this court that prohibits the lower court's action." *Id.* at 1041.

What then is the clear legal error invoked by Uber? Rather than identify a "usurpation of power" or a "clear abuse" or a "clear nondiscretionary duty," Uber's legal argument for the writ rests on its claim that the JPML abused its discretion by ordering centralization "without considering the predominance of state-specific and case-specific legal and factual questions." Mandamus Pet. at 4.

Rather than seeking to protect well-settled principles, Uber invites this Court to disregard of the plain text of the MDL statute. To start, the term "predominance" appears nowhere in 28 U.S.C. § 1407.[4] As the JPML properly noted in rejecting this argument, Congress could have limited MDLs to circumstances where common questions of law and fact predominate, but it did not do so. PER-12 (JPML Supp. Order) ("The statute does not contain a predominance requirement.").

---

[4] *See also* Proposed Fed. R. Civ. P. 16.1, Advisory Committee Note ("MDL proceedings do not have the same commonality requirements as class actions"), *available at* https://www.uscourts.gov/sites/default/files/september_2024_standing_committee_report_to_the_judicial_conference.pdf.

Uber exports the predominance requirement from Rule 23(b)(3) class actions into the MDL statutory directive. The text of the two makes this clear. Rule 23(b)(3) demands for certification that "the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). By contrast, the MDL statute has no predominance requirement, does not address the role of questions of law, and asks only about the efficient consolidation of pretrial factual inquiries: "When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a).

Thus, Congress authorized MDLs when the JPML finds one or more common questions of fact alone and, in its discretion, determines that coordinated pretrial adjudication of those facts will promote just and efficient conduct of the actions. And Congress specified that, unlike class actions, MDLs do not provide for consolidated trials of fact questions. 28 U.S.C. § 1407(a) ("Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings[.]"); *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34-35 (1998) (finding controlling the "uncompromising terms of the Panel's remand obligation").

The same is true of Uber's suggestion that MDL consolidation of state-law claims is appropriate only where cases "involve at least some *federal* law issues." Mandamus Reply at 8 (emphasis in original). Again, the statute calls for "one or more common questions of fact," and in no way conditions the JPML's broad discretion on the presence or absence of a federal claim or defense. Courts almost never "read into statutes words that aren't there." *Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 215 (2020). Uber's rule would have prohibited centralization, for example, in the highly successful MDL treatment of more than 100,000 asbestos cases, the bulk of which had no federal issues whatsoever. *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d 236, 240 (3d Cir. 2013) (noting that "MDL 875 [] included more than 150,000 plaintiffs … from around the country"). That would have prevented the JPML from relieving overburdened federal courts from a crisis situation based on the source of federal subject matter jurisdiction rather than efficient use of docket control in the federal courts, the primary statutory concern under § 1407.[5]

---

[5] Uber's federal-issue requirement is also at odds with Congressional expansion of diversity jurisdiction in mass litigation based on the policy that "cases of national importance" belong in "Federal court" even if they raise exclusively state-law issues. Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4, 5 (2005).

### b.   Like Uber's other positions, its TOU argument contradicts the text of § 1407.

Uber's TOU argument is again squarely controlled by the statutory text. Uber's basic argument is that a clause in a contract of adhesion prevents the JPML from centralizing litigation. The question presented by Uber's argument is who decides whether to transfer and coordinate cases into an MDL: The JPML? Or private parties? The answer is found in the statute's plain text: "Such transfers shall be made by the [JPML] upon its determination that" the statutory standard is met. 28 U.S.C. § 1407(a). And "proceedings for the transfer … may be initiated by the [JPML] upon its own initiative." *Id.* § 1407(c)(i); *see also* PER-14 (JPML Supp. Order); PER-32, 43 (N.D. Cal. Order) ("[D]ecisions about consolidation are entrusted to the JPML. … Fundamentally, whether to 'participate' in an MDL is not a choice Congress committed to litigants."). In creating the § 1407framework, "Congress saw a need to create a mandatory version of [a] procedure" for "conducting joint pretrial proceedings." *PPA*, 460 F.3d at 1229-30. As this Court has long recognized, this "procedure" is "mandatory;" it is not a matter of the willingness of the parties. *Id.*

Uber claims a right to foreclose MDL consolidation because litigants often have the ability to waive important rights. But some things are matters of individual right and others are not, and the question is not whether a matter is important, but to whom the power to make the decision is assigned. The question

- 16 -

requires, like any other legal inquiry, first (and often last) looking at the text of the statute or constitutional provision involved. So, for example, the Seventh Amendment does not mandate "trial by jury"; it only "preserve[s]" "the right of trial by jury." U.S. Const., Amend. VII. And the Federal Arbitration Act expressly assigns, in most cases, the decision whether a case will proceed in court or in arbitration to the contracting parties, not to the courts. 9 U.S.C. § 2.[6]

But other rules and issues are not a matter of contract; they are statutory mandates that create requirements for the courts not subject to party override. Consider the Federal Rules of Evidence, which, by statute, "apply to proceedings in United States courts." Fed. R. Evid. 101.[7] These include Rule 702, which assigns courts a mandatory "gatekeeping role" under which "the trial judge must ensure" the reliability of "scientific testimony or evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 597 (1993). Accordingly, litigants may not stipulate around Rule 702 and require a court to allow both sides' experts to testify without guardrails. *See, e.g.*, *Perez v. K&B Transp., Inc.*, 967 F.3d 651, 656 (7th Cir. 2020) ("A district court is entitled to rule on expert admissibility sua sponte.");

---

[6] Uber's position that freedom of contract displaces mandatory statutory language would not only render the FAA superfluous, but would make its exceptions unlawful. *See* 9 U.S.C. § 1 (excepting interstate commerce workers); 9 U.S.C. § 402 (exempting sexual assault disputes).

[7] An Act to Establish Rules of Evidence for Certain Courts and Proceedings, Pub. L. 93-595, 88 Stat. 1926 (1975)

- 17 -

*Miller v. Baker Implement Co.*, 439 F.3d 407, 413 (8th Cir. 2006) (same); *Hoult v. Hoult*, 57 F.3d 1, 4 (1st Cir. 1995) ("*Daubert* does instruct district courts to conduct a preliminary assessment of the reliability of expert testimony, even in the absence of an objection.").

Criminal sentencing is similar: parties may enter a plea, but it is always the court that determines the sentence. *See* Fed. R. Crim. P. 11(c)(3)(A) ("the court may accept the agreement [or] reject it"); *In re Morgan*, 506 F.3d 705, 711 (9th Cir. 2007) ("a prosecutor plays a strictly advisory role in sentencing decisions"); 18 U.S.C. § 3553 ("The court shall impose a sentence ...."). So too, parties may not contract that their case be assigned to a particular district judge; rather, "[t]he business of a court having more than one judge shall be divided among the judges as provided by the rules and orders of the court." 28 U.S.C. § 137(a).

Forum selection clauses are instructive. Parties may contract for a particular forum, but it has always been understood that such contracts do not limit the authority of the JPML because the statute makes clear that "actions may be transferred to *any* district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a) (emphasis added); *see also, e.g.*, *In re Park W. Galleries, Inc., Mktg. & Sales Prac. Litig.*, 655 F. Supp. 2d 1378, 1379 (J.P.M.L. 2009) ("When civil actions satisfy the criteria set forth in 28 U.S.C. § 1407(a), the statute authorizes the Panel to centralize those actions (as well as any subsequently

identified tag-along actions) in 'any district.'"); PER-13 (Supp. Order); Klonoff, *Nutshell* § 4.2(7).[8]

Uber relies on decisions honoring contractual class waivers and denying class certification under Rule 23. But, as the transferee court observed, Rule 23 has different text and structure than statutory directives to a court, like the one in § 1407. A "party can always elect not to have her claims decided on a class basis by simply not suing on behalf of a purported class." PER-42 (N.D. Cal. Order). A "court cannot decide *sua sponte* that a given claim is suitable for class treatment and conscript the plaintiff into being a class representative." *Id.*; *see also* Fed. R. Civ. P. 23(a) ("a prerequisite to a class action is that "[o]ne or more members of a class … sue or be sued as representative parties"); Fed. R. Civ. P. 23(c)(1)(a) (obligation to issue a "certification order" is triggered only "after a person sues or is sued as a class representative"). Bringing "an action on behalf of a class … is a

---

[8] The Supreme Court made a similar point when it held that forum selection clauses do not override the relevant statutory criteria for proper venue in 28 U.S.C. § 1391. *Atl. Marine Const. Co, Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 56 (2013). Uber relies on *Atlantic Marine*'s holding that party preference is relevant to transfer decisions under 28 U.S.C. § 1404(a), but the Supreme Court made clear that the prospect of transfer under § 1404 pursuant to a forum selection clause does not alter the statutory venue requirement. As the district court explained, the Supreme Court's analysis there was "a matter of interpreting the language of Section 1404(a), not elevating the parties' agreement above it. PER-30 n.4 (N.D. Cal. Order). In addition, § 1404 expressly authorizes transfer to a district "to which all parties have consented."

- 19 -

prerogative belonging to plaintiffs[;] the same is simply not true of case consolidation and case coordination, including under Section 1407." PER-42.

### c. Because the statute answers the question before the Court, no further contractual analysis is necessary.

To restate, Uber's challenge is that certain cases should not be part of these "consolidated or coordinated pretrial proceedings." 28 U.S.C. § 1407(a). The JPML disagreed. So everything turns on the JPML's authority to make that determination notwithstanding a private agreement providing otherwise. Accordingly, this Court need not reach the question whether the TOU are unenforceable as against public policy as a matter of contract law. The district court properly ruled that "where a procedural statute is 'sufficiently broad to control' an issue about which parties have reached a private agreement, the parties' agreement is not entitled to dispositive consideration, but only the amount of consideration contemplated by the statute." PER-30 (N.D. Cal. Order) (citing Supreme Court authority).

In an act of caution, the district court indulged the public policy argument and concluded that: enforcement of Uber's TOU would seriously compromise the public purpose § 1407 serves; Uber's cognizable countervailing interests were never identified and could not in any event outweigh the harm to public policy; and, as a result, the TOU are unenforceable as a matter of state and federal contract law. The court's order speaks for itself on each of those points. But it is

- 20 -

unnecessary to reach them: the JPML ordered that these cases participate in the MDL, its prerogative under the controlling statute; that is the end of the matter.

## CONCLUSION

The appeal in Case No. 24-5063 should be dismissed for lack of appellate jurisdiction and the Petition in Case No. 23-3445 should be denied.

Dated: September 3, 2024                     Respectfully submitted,

                                             By: */s/ Samuel Issacharoff*
                                                 Samuel Issacharoff

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing Answer is in compliance with the Court's order authorizing supplemental briefs up to 5,000 words, because it contains 4,876 words, as determined by Microsoft Word 2016, including the headings and footnotes and excluding the parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

The Answer also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the text appears in 14-point Times New Roman, a proportionally-spaced serif typeface.


September 3, 2024                         By:  */s/ Andrew R. Kaufman*
                                         Andrew R. Kaufman

## CERTIFICATE OF SERVICE

I certify that, on September 3, 2024, Real Parties in Interest / Plaintiffs-Appellees electronically filed the foregoing Supplemental Brief using the Court's ACMS system, which will serve all parties via their counsel of record.

September 3, 2024                    By: _/s/ Andrew R. Kaufman_____
                                          Andrew R. Kaufman