Nos. 23-3445 & 24-5063

# In the United States Court of Appeals for the Ninth Circuit

_____

IN RE UBER TECHNOLOGIES, INC.,
PASSENGER SEXUAL ASSAULT LITIGATION

_____

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA (MDL NO. 3084)
(THE HONORABLE CHARLES R. BREYER, J.)*

_____

**SUPPLEMENTAL BRIEF OF APPELLANTS**

_____

RANDALL S. LUSKEY
ANNA M. STAPLETON
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
*535 Mission Street
San Francisco, CA 94105*

ROBERT ATKINS
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
*1285 Avenue of the Americas
New York, NY 10019*

KANNON K. SHANMUGAM
WILLIAM T. MARKS
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
*2001 K Street, N.W.
Washington, DC 20006
(202) 223-7300
kshanmugam@paulweiss.com*

## CORPORATE DISCLOSURE STATEMENT

Uber Technologies, Inc., has no parent corporation, and no publicly held company holds 10% or more of its stock.  Rasier, LLC, and Rasier-CA, LLC, are wholly owned subsidiaries of Uber Technologies, Inc.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................... iii

INTRODUCTION ................................................................................1

STATEMENT OF THE ISSUE ..............................................................2

BACKGROUND ...................................................................................3

ARGUMENT .........................................................................................7

    A.    Parties' Contractual Choices Regarding Litigation Procedures Are Ordinarily Enforceable ...............................8

    B.    Section 1407 Does Not Bar Enforcement Of Non-Consolidation Clauses ...............................................13

CONCLUSION ....................................................................................20

# TABLE OF AUTHORITIES

Page

## CASES

*ABF Capital Corp.* v. *Berglass,*
130 Cal. App. 4th 825 (2005)......................................................................8

*American Express Co.* v. *Italian Colors Restaurant,*
570 U.S. 228 (2013)..........................................................................9, 15, 19

*Atlantic Marine Construction Co.* v. *United States District*
*Court for Western District of Texas,*
571 U.S. 49 (2013)..............................................................................*passim*

*Bartenwerfer* v. *Buckley,*
598 U.S. 69 (2023)...................................................................................17

*Benedict* v. *Hewlett-Packard Co.,*
Civ. No. 13-119, 2016 WL 1213985 (N.D. Cal. Mar. 29, 2016)...................9

*Carnival Cruise Lines, Inc.* v. *Shute,*
499 U.S. 585 (1991).................................................................................8

*CompuCredit Corp.* v. *Greenwood,*
565 U.S. 95 (2012)..................................................................................8

*Davies* v. *Grossmont Union High School District,*
930 F.2d 1390 (9th Cir. 1991) .................................................................13

*Dean Witter Reynolds, Inc.* v. *Byrd,*
470 U.S. 213 (1985)................................................................................10

*Department of Energy Stripper Well Exemption Litigation,*
*In re,*
472 F. Supp. 1282 (J.P.M.L. 1979) ...........................................................3

*Doe WHBE 3* v. *Uber Technologies, Inc.,*
322 Cal. Rptr. 3d 505 (Cal. Ct. App. 2024), *petition for review*
*pending,* No. S286213 (Cal.)....................................................................5

iii

*Great Lakes Insurance SE* v. *Raiders Retreat Realty Co., LLC*,
601 U.S. 65 (2024)......................................................................8, 9

*Hotel Booking Access For Individuals With Disabilities*
*Litigation, In re*,
521 F. Supp. 3d 1361 (J.P.M.L. 2021) ..........................................3

*Kiddie Rides, Inc.* v. *Southland Engineering, Inc.*,
361 F.2d 575 (9th Cir. 1966) ......................................................19

*Lexecon, Inc.* v. *Milberg Weiss Beshad Hynes Lerach*,
523 U.S. 26 (1998)......................................................................11

*M/S Bremen* v. *Zapata Off-Shore Co.*,
407 U.S. 1 (1972)................................................................ 8, 10

*McGill* v. *Citibank*,
393 P.3d 85 (Cal. 2017) ....................................................... 13, 14

*National Equipment Rental, Ltd.* v. *Szukhent*,
375 U.S. 311 (1964)......................................................................8

*Roundup Products Liability Litigation, In re*,
544 F. Supp. 3d 950 (N.D. Cal. 2021) ..........................................12

*Thomas* v. *Asterion, Inc.*,
Civ. No. 10-1973, 2010 WL 3037149 (N.D. Cal. July 30, 2010)..................11

*Town of Newton* v. *Rumery*,
480 U.S. 386 (1987)......................................................................13

*Uber Technologies, Inc., Passenger Sexual Assault Litigation,*
*In re*,
699 F. Supp. 3d 1396 (J.P.M.L. 2023) ..........................................6

*Viking River Cruises, Inc.* v. *Moriana*,
596 U.S. 639 (2022)......................................................................12

*Washington Public Utilities Group* v. *United States District*
*Court for the Western District of Washington*,
843 F.2d 319 (9th Cir. 1987)......................................................15

## STATUTES

7 U.S.C. § 26(n)(1) .......................................................................... 14

7 U.S.C. § 26(n)(2) .......................................................................... 14

9 U.S.C. § 402(a) ............................................................................. 14

12 U.S.C. § 5567(d)(1) ..................................................................... 14

12 U.S.C. § 5567(d)(2) ..................................................................... 14

28 U.S.C. § 1404 ........................................................................ 15, 16

28 U.S.C. § 1404(a) .................................................................... 16, 18

28 U.S.C. § 1407 ....................................................................... *passim*

28 U.S.C. § 1407(a) .................................................................. 3, 16, 17

28 U.S.C. § 1407(c)(i) .................................................................. 3, 15

28 U.S.C. § 1407(c)(ii) .............................................................. 3, 14, 17

## OTHER AUTHORITIES

Fed. R. Civ. P. Rule 23 ............................................................... 15, 18

# INTRODUCTION

This appeal addresses a narrow question of law regarding parties' ability to enter contracts about how they will litigate disputes. Appellants Uber Technologies, Inc.; Rasier, LLC; and Rasier-CA, LLC (collectively, "Uber"), entered into contractual agreements with plaintiffs-appellees containing a "non-consolidation clause," pursuant to which any litigation arising from plaintiffs' use of the Uber App to find rides would not proceed in any coordinated or consolidated fashion. Nevertheless, after the Judicial Panel on Multidistrict Litigation ordered plaintiffs' cases against Uber coordinated in a multidistrict litigation, the district court overseeing that litigation refused to enforce the parties' agreed-upon terms and denied Uber's motion to dismiss these cases from the coordinated proceedings. That refusal rested solely on the district court's conclusion that the parties' non-consolidation clause was categorically unenforceable as contrary to public policy.

That conclusion was legally erroneous. Absent some particular bar or unusual circumstances to the contrary, courts routinely enforce contractual agreements regarding the forms litigation between parties to the contract may take. Indeed, the Supreme Court has recognized that parties' ability to rely on judicial enforcement of such clauses is essential to protecting the interests of justice and the bargained-for expectations of the parties. Although the enforceability of the non-consolidation clause at issue here may present a novel

legal question, that provision has much in common with the types of clauses (such as forum-selection clauses, arbitration agreements, and class-action waivers) that courts regularly enforce.

Nor does the statute creating multidistrict litigation, 28 U.S.C. § 1407, disallow enforcement of non-consolidation clauses such as the one at issue here. The district court identified Section 1407 as the source of the public policy that it concluded must bar enforcement. But the court's own order recognized that nothing in the text of that statute imposes any such prohibition. To the contrary, Section 1407 empowers parties to pursue coordination—a right that they may reasonably expect to be able to bargain away. And the statute's text explicitly requires the Judicial Panel on Multidistrict Litigation to consider the parties' interests in deciding whether cases should be coordinated, alongside the just and efficient conduct of litigation. The district court's failure to give proper consideration to that countervailing policy interest was erroneous, and its order refusing to enforce the non-consolidation clause should therefore be reversed.

## STATEMENT OF THE ISSUE

Whether the district court erred by concluding that the parties' contractual agreement not to participate in consolidated or coordinated litigation proceedings is categorically unenforceable in the context of multidistrict litigation under 28 U.S.C. § 1407.

## BACKGROUND

1.     In enacting 28 U.S.C. § 1407, Congress established a mechanism by which parties may seek to have multiple individual suits involving overlapping issues of fact transferred into a single district for coordinated proceedings. The statute creates the Judicial Panel on Multidistrict Litigation (JPML), which is charged with determining whether "transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). If the JPML determines transfer is appropriate, the cases are assigned to a district court judge tasked with overseeing the multidistrict litigation (MDL).

The statute also permits the JPML to initiate transfer of cases into an MDL "upon its own initiative." 28 U.S.C. § 1407(c)(i). But in practice, MDLs are typically created in response to a "motion filed with the panel by a party" to one or more of the cases to be transferred. 28 U.S.C. § 1407(c)(ii). The JPML often invokes its authority to initiate transfer only after identifying some procedural flaw in a party's motion, such as the previous dismissal of a case against a particular defendant or uncertainty about whether a plaintiff's petition intended to include specific cases among those to be transferred. *See, e.g.*, *In re Hotel Booking Access For Individuals With Disabilities Litigation*, 521 F. Supp. 3d 1361, 1361 n.2 (J.P.M.L. 2021); *In re Department of Energy Stripper Well Exemption Litigation*, 472 F. Supp. 1282, 1285 n.2 (J.P.M.L. 1979).

3

2.    This appeal arises from an MDL involving personal-injury law-suits wherein plaintiffs allege sexual misconduct, harassment, or assault by third-party, independent drivers using the Uber App.[1]  Uber is a transporta-tion network company.  Users who have registered with Uber can use the Uber App to connect with independent drivers for a ride.  App users must first as-sent to the terms of use, which Uber regularly updates.  Users are also re-quired to affirmatively assent to any updates to the terms of use before re-questing a ride.  *See* SER-83–84.

By assenting to the terms of use, users accept two provisions governing any litigation regarding claims of sexual harassment or assault:  a forum-se-lection clause and a non-consolidation clause.[2]  This appeal concerns the lat-ter.[3]  The non-consolidation  clause, which is included in all versions of the

---

[1] The district court's order directly governs 26 cases brought by plaintiffs who had, at the time Uber filed the motion at issue in this appeal, submitted sufficient information to allow Uber to demonstrate their assent to versions of the terms of use that included the non-consolidation clause.  Since that time, agreement to the non-consolidation clause has been confirmed for many addi-tional plaintiffs in existing cases, and many other additional cases have been added to the MDL.  Uber has reserved, and continues to reserve, the right to make equivalent motions respecting these additional plaintiffs.

[2] Sexual-assault and harassment claims are exempted from an arbitration requirement, which includes a waiver of any classwide proceedings.  Those provisions are not at issue in this appeal.

[3] Before the district court, Uber also argued that, in addition to violating the non-consolidation  clause, plaintiffs had also violated the forum-selection

4

terms of use dated on or after January 18, 2021, requires that users litigating any claims—including sexual-harassment or assault claims—do so "on an individual basis only," and explains that users are precluded from bringing or participating in any coordinated or consolidated proceeding.[4]

3.     Plaintiffs here used the Uber App to request rides from independent drivers after assenting to a version of the terms of use containing both the forum-selection and the non-consolidation clauses.  All are non-residents of California and allege incidents occurring outside California.

Plaintiffs originally filed individual actions against Uber in California state court.  They then sought and obtained an order coordinating their individual state-court actions.  Uber moved to dismiss from the coordinated state proceedings cases involving incidents that occurred outside of California, on the ground of *forum non conveniens*.[5]  That motion was granted on January

---

clause.  The district court declined to reach that argument, stating that "Uber will have the chance to seek enforcement of the forum selection clause at the appropriate time, but that time is not now."  Order 3.  Although it is not the subject of this interlocutory appeal, Uber reserves the right to pursue further review of that issue.

[4]    Uber's terms of use are collected in the appendix to the accompanying petition for a writ of mandamus (hereafter "Pet. App.") as exhibits accompanying the Declaration of Alejandra O'Connor.  *See* Pet. App. 297-530.

[5]    Uber has not yet filed any motion in the JCCP proceeding asserting that plaintiffs violated the terms of use, based on the JCCP court's case management schedule prioritizing the *forum non conveniens* briefing.  Uber has reserved its right to raise its terms-of-use argument in the JCCP at a later date.

23, 2023, and was recently affirmed by the California Court of Appeal. *Doe WHBE 3* v. *Uber Technologies, Inc.*, 322 Cal. Rptr. 3d 505 (Cal. Ct. App. 2024), *petition for review pending*, No. S286213 (Cal.).

4.    Although the state court had determined that California was not the appropriate state in which to litigate these claims, plaintiffs nevertheless filed new actions in California federal court and moved in the MDL for coordination of those claims. Pet. App. 19. The JPML granted that motion and assigned the MDL to Judge Breyer in the Northern District of California. *See In re Uber Technologies, Inc., Passenger Sexual Assault Litigation*, 699 F. Supp. 3d 1396, 1400 (J.P.M.L. 2023).

Recognizing that the terms of use presented a significant threshold issue in litigating these cases, the district court directed the parties to make any motion involving the enforceability of those terms at the outset of the coordinated proceedings. *See* SER-173. Uber accordingly filed a motion asserting that plaintiffs' application for and participation in the MDL violated the non-consolidation clause and that the cases should accordingly be dismissed from the MDL. *See* SER-57–79.

The district court denied Uber's motion. *See* SER-20–56 (hereafter "Order"). The court recognized that the text of Section 1407 was "silent as to MDL transferee courts' enforcement of consolidation waivers." Order 14. In the absence of statutory text or case law squarely addressing this point, the court

held that, as a matter of public policy, Section 1407 privileged judicial efficiency over private parties' contractual agreements not to pursue coordinated litigation. *See id*. at 22. The district court also acknowledged that "parties can use pre-litigation contracts to tailor their experience of litigation," but it nevertheless concluded that the non-consolidation clause fell outside what it considered to be the permissible range of such agreements. *Id*. at 25-26.

5.      Uber moved to certify the question of the enforceability of the non-consolidation clause for interlocutory appeal and asked the district court to stay proceedings pending that appeal. *See* SER-6–19. The district court granted the motion for interlocutory appeal but declined to grant a stay, *see* SER-4–5, and Uber petitioned this Court for interlocutory review, *see* Dkt. No. 1. This Court granted that motion, consolidated this appeal with the pending mandamus petition, and invited the parties to file supplemental briefs addressing any additional issues raised by this consolidated case. *See* Dkt. No. 3.

## ARGUMENT

This interlocutory appeal presents a single issue of first impression: may parties who contractually agree not to pursue coordinated litigation, including multidistrict litigation under 28 U.S.C. § 1407, expect to have that choice respected and enforced by federal courts? The district court's answer was "no." But that categorical answer is dramatically out of step with courts'

general deference to parties' contractual choices regarding the form the litigation of disputes arising under a contract might take. And contrary to the district court's analysis, nothing in the text or policy embodied by Section 1407 mandates such an approach. Courts should therefore be required to treat non-consolidation clauses, such as the one users accept when they agree to Uber's terms of use, as generally enforceable. The district court's order should be reversed.

## A. Parties' Contractual Choices Regarding Litigation Procedures Are Ordinarily Enforceable

Courts routinely enforce contractual clauses limiting the forms and forums for litigation between parties to the contract. Those include such common terms as arbitration clauses, forum-selection clauses, choice-of-law provisions, and class-action and collective-action waivers. *See, e.g., Great Lakes Insurance SE* v. *Raiders Retreat Realty Co., LLC*, 601 U.S. 65, 79 (2024) (choice-of-law clauses); *Atlantic Marine Construction Co.* v. *United States District Court for Western District of Texas*, 571 U.S. 49, 63 (2013) (forum-selection clauses); *CompuCredit Corp.* v. *Greenwood*, 565 U.S. 95, 104-105 (2012) (arbitration provision); *Carnival Cruise Lines, Inc.* v. *Shute*, 499 U.S. 585, 595 (1991) (forum-selection clause); *M/S Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1, 17-18 (1972) (forum-selection clause); *National Equipment Rental, Ltd.* v. *Szukhent*, 375 U.S. 311, 315-316 (1964) (forum-selection clause); *ABF Capital Corp.* v. *Berglass*, 130 Cal. App. 4th 825, 836 (2005) (choice-of-law provision);

*Benedict* v. *Hewlett-Packard Co.*, Civ. No. 13-119, 2016 WL 1213985, at \*4 (N.D. Cal. Mar. 29, 2016) (collecting cases enforcing collective-action waivers).

As the Supreme Court has recognized, enforcing these types of contractual provisions "protects" the parties' "legitimate expectations" and "furthers vital interests of the justice system." *Atlantic Marine Construction*, 571 U.S. at 63 (citation omitted). Forum-selection clauses are thus enforced unless "extraordinary circumstances" dictate otherwise. *Id.* at 52. Similarly, the Supreme Court has said that waivers of class arbitration are enforceable absent a "contrary congressional command" requiring their rejection. *American Express Co.* v. *Italian Colors Restaurant*, 570 U.S. 228, 233 (2013). And choice-of-law provisions are enforceable absent particular circumstances to the contrary. *See Great Lakes Insurance*, 601 U.S. at 79 (citing Restatement (Second) of Conflict of Laws § 187(2)(b)). For all of these types of contractual provisions, the ordinary course is for courts to enforce the parties' agreements unless presented with a specific and compelling reason not to.

The district court's refusal to enforce the non-consolidation clause here represents a conspicuous break from that practice. To justify that departure, the court reasoned that non-consolidation clauses differ from agreements to forgo "other procedural options available to litigants" because "coordination and consolidation are primarily the prerogative of the judiciary rather than of litigants." Order 2. But that logic reflects a now-outdated view of parties'

9

abilities to shape litigation procedures by contract. Courts once viewed forum-selection clauses as "improper" because "they tend to 'oust' a court of jurisdiction." *Bremen*, 407 U.S. at 12. And indeed, Congress created the Federal Arbitration Act to resolve an "anachronism" in American law that caused courts to "refuse[] to enforce specific agreements to arbitrate" out of "jealousy . . . for their own jurisdiction." *Dean Witter Reynolds, Inc.* v. *Byrd*, 470 U.S. 213, 220 n.6 (1985). Such guarding of judicial control over litigation procedures is no longer the accepted rule. Both the Supreme Court and Congress have recognized the "illogical nature and the injustice" of refusing to enforce parties' agreements with respect to such procedures. *Id.*; *see also Bremen*, 407 U.S. at 12.

The district court nevertheless viewed the non-consolidation clause as an untenable infringement on the court's authority to manage cases. Posing a series of admittedly "extreme" hypothetical examples of procedural terms to which parties might contractually agree, the court reasoned that there must be some line between parties' right to contract and impermissible interference with judicial procedure. Order 26. But those hypotheticals only underscore the reasonableness of the non-consolidation clause at issue here. Unlike a clause requiring an American judge to follow German civil procedure, *see id.*, the non-consolidation clause does not create a blatantly impractical and unworkable scenario in which the parties attempt to force the judiciary to apply

entirely foreign procedures. And while clauses permitting parties to lie in court or barring litigation in which motions remain pending for more than three days would directly impinge on the fairness and integrity of judicial proceedings, *see id.*, the parties here have simply agreed to litigate each case individually rather than as a coordinated mass. Such an agreement poses no threat to the ability of courts to dispense justice in each case.

Indeed, the non-consolidation clause in some respects imposes a *lesser* restriction on courts' authority than do other types of contractual provisions that are routinely enforced. Forum-selection clauses, for example, directly impact a court's authority to order a case transferred *sua sponte*, including in the interest of relieving court congestion. *See, e.g., Thomas* v. *Asterion, Inc.*, Civ. No. 10-1973, 2010 WL 3037149, at *2 (N.D. Cal. July 30, 2010). And arbitration clauses completely remove from courts' jurisdiction matters over which they would ordinarily preside.

By contrast, the non-consolidation clause merely directs that parties who choose to litigate their claims in court must do so individually. To the extent that such agreements deny the MDL transferee court jurisdiction over the coordinated action, that jurisdiction was limited in the first instance to "pretrial proceedings," as any case that remains pending must be "remand[ed] . . . to its originating court when, at the latest, those pretrial proceedings have run their course." *Lexecon, Inc.* v. *Milberg Weiss Beshad Hynes Lerach*,

523 U.S. 26, 34 (1998). Thus, by keeping cases out of any MDL, a non-consol-idation clause has the effect of ensuring that a single federal court will consider each case individually from start to finish. Like forum-selection clauses, non-consolidation clauses may affect *which* court oversees a particular case, but they do not remove cases from the purview of the federal judicial system en-tirely.

In addition, the non-consolidation clause does not limit parties' substan-tive rights. In that sense, the non-consolidation clause is similar to arbitration clauses, which are enforceable in part for that reason. *See Viking River Cruises, Inc.* v. *Moriana*, 596 U.S. 639, 653 (2022). The coordination ordered by the JPML pursuant to Section 1407 relates to the location for centralizing pre-trial proceedings, and thus Section 1407 is merely a "procedural statute." *In re Roundup Products Liability Litigation*, 544 F. Supp. 3d 950, 958 (N.D. Cal. 2021). Plaintiffs' substantive rights have not been diminished by agreeing to forgo that procedural option. The terms of use allow plaintiffs to have their day in court; plaintiffs simply agreed to do so individually.

In short, the non-consolidation clause at issue here thus falls well within the normal range of contractual agreements limiting the form of litigation that courts routinely enforce. Accordingly, it should be viewed as enforceable in the ordinary course, absent some particular circumstance compelling different treatment.

12

**B.    Section 1407 Does Not Bar Enforcement Of Non-Consolidation Clauses**

The district court concluded that the non-consolidation clause at issue here is "void as against public policy" under California law.  Order 10 (discussing *McGill* v. *Citibank*, 393 P.3d 85 (Cal. 2017)).[6]  The relevant case law provides that "a party may waive a statutory provision if a statute does not prohibit doing so, the statute's public benefit  .  .  .  is merely incidental to its primary purpose, and waiver does not seriously compromise any public purpose that the statute was intended to serve."  *McGill*, 393 P.3d at 94 (cleaned up).  The district court proceeded to analyze the "public purpose" of the MDL statute, 28 U.S.C. § 1407, and concluded that it must bar enforcement of non-consolidation clauses such as the one at issue here.  Order 22.

The district court's analysis was fundamentally flawed.  Nothing in the text of Section 1407 prohibits parties from contracting to forgo the option of coordinated proceedings, nor can Section 1407 fairly be read to embody an overriding policy against  such contractual agreements.  Instead, Section 1407 is best understood as creating an optional mechanism for coordination intended to redound to the benefit of both the parties and the courts.  Because

---

[6] Uber has not challenged the district court's conclusion that California law controls this analysis.  In any event, the district court noted that "the substance and outcome" of its analysis "would not differ if it applied the federal .  .  .  test rather than solely California law."  Order 14 (discussing *Town of Newton* v. *Rumery*, 480 U.S. 386, 392 (1987); *Davies* v. *Grossmont Union High School District*, 930 F.2d 1390, 1396 (9th Cir. 1991)).

nothing in the statute suggests that the courts' interest in efficient proceedings can or should outweigh the parties' freedom to agree to pursue individual litigation, Section 1407 poses no bar to enforcement of non-consolidation clauses such as the one at issue here.

      1.    As the district court acknowledged, nothing in the text of Section 1407 prohibits parties from contracting to forgo the right to seek or participate in coordinated proceedings. Order 14. Rather, the statute grants parties the ability to move for "transfer for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(c)(ii). And the default rule under California law is that "a party may waive a statutory provision if a statute does not prohibit doing so" and no other bar to enforcement exists. *McGill*, 393 P.3d at 94 (citation omitted). Section 1407 does not contain any such prohibition.

      When Congress intends to make a party's right to a procedural mechanism unwaivable, it knows how to do so. Congress has enacted numerous provisions that specifically prohibit parties from waiving certain rights or remedies and declare that any attempts to do so will not be "valid or enforceable." *See, e.g.,* 7 U.S.C. § 26(n)(1)-(2) (barring waiver of certain whistleblowers' rights and remedies); 9 U.S.C. § 402(a) (barring arbitration agreements and collective action waivers in the context of sexual assault and harassment claims); 12 U.S.C. § 5567(d)(1)-(2) (barring waiver of employment discrimination rights and remedies). No such language appears in Section 1407.

In that respect, Section 1407 resembles Rule 23, which also creates a procedure by which individuals may choose to pursue litigation on a collective basis. *See* Fed. R. Civ. P. 23. Just as parties may contractually waive the right to pursue or participate in classwide proceedings, see *American Express*, 570 U.S. at 233-234, so too should they be permitted to waive the right to seek or assent to coordinated proceedings under Section 1407.

2. The district court distinguished Section 1407 from other provisions that similarly grant parties procedural rights by emphasizing that the text of Section 1407 also permits the JPML to initiate transfer of an action of its own accord. Order 18 (discussing 28 U.S.C. § 1407(c)(i)). But the statute is silent as to whether parties may nevertheless agree *ex ante* to opt out of any such coordination. Rather, the district court appears to have taken for granted that any *sua sponte* procedural authority granted to courts may never be altered by means of private contract. *See* Order 18-19.

But Supreme Court precedent addressing the statutory provision for changes in venue, 28 U.S.C. § 1404, makes clear that private contracts *can* alter such statutory authority in ways that courts are obligated to respect. Like Section 1407, the venue statute also grants a court the authority to consider a transfer absent the motion of any party, taking into consideration "the convenience of parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a); *see Washington Public Utilities Group* v. *United States District*

*Court for the Western District of Washington*, 843 F.2d 319, 326 (9th Cir. 1987). Nevertheless, the Supreme Court has explained that, when the parties have agreed to a valid forum-selection clause, the statutory analysis is altered. *See Atlantic Marine Construction*, 571 U.S. at 63. Rather than engaging in a balancing of "the convenience of the parties and various public-interest considerations" prescribed by 28 U.S.C. § 1404(a), a court considering a motion to transfer on the basis of a valid forum-selection clause must instead consider "the interest of justice" best served "by holding parties to their bargain" in "all but the most unusual cases." *Atlantic Marine Construction*, 571 U.S. at 62-63, 66. That is so even though Section 1404(a) empowers a court to transfer a case on its own motion.

By the same logic, then, enforcement of valid non-consolidation clauses should be understood to "promote the just . . . conduct" of the cases at issue here. 28 U.S.C. § 1407(a).[7] Such enforcement is "vital" to preserve the bargained-for expectations of the parties and the integrity of the contract by

---

[7] The district court considered *Atlantic Marine Construction* inapposite to the issue at hand because, unlike a court considering a transfer motion under § 1404(a), the transferee court does not itself consider the appropriateness of an MDL under Section 1407; that is for the JPML to decide. *See* Order 16. But the district court *did* consider the text of Section 1407 in concluding that the JPML's *sua sponte* authority to transfer cases into an MDL defeated the parties' contractual agreement. Within that framing, the analogy between the JPML and a court considering a motion under Section 1404 is relevant. *See*

which they agreed to be bound.  *See Atlantic Marine Construction*, 571 U.S. at 63 (citation omitted).  And because this MDL began with a motion for coordination brought by plaintiffs, the Court need not decide whether a non-consolidation clause operates to bar any *sua sponte* action of the JPML; it is sufficient to recognize that Section 1407(c)(ii) creates a right granted to private parties that those parties may, under ordinary circumstances, choose to contract away.  That is what plaintiffs have chosen to do here, and that valid contractual choice should be upheld.

3.      After recognizing that the text of Section 1407 posed no bar to enforcement of the non-consolidation clause, the district court proceeded to evaluate whether the statute nevertheless embodies some public policy opposing its enforcement.  It concluded that the overriding purpose of Section 1407 is to "conserve resources and avoid conflicting rulings."  Order 18.  But "like all statutes," Section 1407 "balances multiple, often competing interests."  *Bartenwerfer* v. *Buckley*, 598 U.S. 69, 81 (2023).  Indeed, the first purpose listed in the statutory text is to serve "the convenience of [the] parties."  28 U.S.C. § 1407(a).  The relevant question, then, is whether anything in Section 1407 makes clear that the interest in judicial efficiency must outweigh the interest

---

*also* Order 16 n.4 (acknowledging that *Atlantic Marine Construction* "clarifies that under Section 1404(a), the parties' valid contractual choice of forum should be given 'controlling weight in all but the most exceptional circumstances'" (quoting 571 U.S. at 60)).

17

in the parties' convenience, taking into account the preferences expressed in their contractual choices regarding the form of litigation in which they will participate. Nothing in the statute can be fairly read to support that conclusion.

To some extent, the district court recognized that Section 1407 is, like other statutes, "aimed at striking some balance between the interests of the parties and the interests of justice." Order 18. In so doing, the court particularly cited Section 1404(a), the provision permitting transfer to a more convenient forum. *See id.* As already explained, Section 1404(a) is a prime example of courts being required to grant significant deference to the parties' contractual agreements, even when otherwise empowered to make significant procedural decisions on their own. *See Atlantic Marine Construction*, 571 U.S. at 63. But the district court nevertheless insisted that Section 1407 is "different" from other such statutes because it "largely removes decisions about where pretrial proceedings should take place, and whether those proceedings will be coordinated or consolidated, from the control of the parties." Order 18. The district court thereby simply assumed its conclusion: that Section 1407 does not allow parties to agree not to coordinate their cases.

To the extent it embodies any public policy, Section 1407 should be read to embody one akin to the one underlying Rule 23. Although both provisions

18

inherently favor the litigation procedures they create, neither explicitly inhibits the parties' rights to contract around that form of litigation. And notwithstanding the desirable public benefits of class actions, the right to apply for class treatment under the federal rules is not absolute. Rather, applications for class status are not "nonwaivable," and there is no "entitlement to class proceedings." *American Express*, 570 U.S. at 234. Accordingly, when parties contract to waive the right to seek or obtain class treatment, a court may not "erase that expectation" merely to "vindicate" some competing policy. *Id.*

The same is true for consolidation and coordination under Section 1407. As the district court recognized, "[p]arties are among the intended beneficiaries of the MDL process." Order 18. Although multidistrict litigation may provide some desirable benefits, there is no cause to treat the right to seek coordinated litigation as nonwaivable or absolute. If anything, the public policy *in favor* of enforcing class-action waivers should also be considered with respect to non-consolidation clauses. "It is essential to society's commercial welfare that there be no undermining of the desirable stability of contracts. When their terms are reasonably explicit and plain, . . . the courts should enforce them." *Kiddie Rides, Inc.* v. *Southland Engineering, Inc.*, 361 F.2d 575, 578 (9th Cir. 1966). Where, as here, parties have contractually agreed to litigate claims on an individual basis, nothing in Section 1407 gives license for a court

to eviscerate that agreement. That is what happened below, and this Court should remedy the district court's error.

## CONCLUSION

The district court's order refusing to enforce the parties' non-consolidation clause should be reversed.[8]

Respectfully submitted,

/s/ Kannon K. Shanmugam

RANDALL S. LUSKEY
ANNA M. STAPLETON
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  535 Mission Street
  San Francisco, CA 94105

ROBERT ATKINS
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  1285 Avenue of the Americas
  New York, NY 10019

SEPTEMBER 3, 2024

KANNON K. SHANMUGAM
WILLIAM T. MARKS
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  2001 K Street, N.W.
  Washington, DC 20006
  (202) 223-7300

---

[8]    The district court declined to address plaintiffs' alternative arguments against enforcing the non-consolidation provisions. *See* Order 10 n.3. Accordingly, this Court should decline to address those issues in the first instance and should leave them to the district court on remand. *See Reese* v. *BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688-690 (9th Cir. 2011).

## STATEMENT OF RELATED CASES

Currently pending in this Court is *Uber Technologies, Inc., et al.* v. *United States Judicial Panel on Multidistrict Litigation*, No. 23-3445, which arises out of the same multidistrict litigation in the Northern District of California as this petition. *See In re Uber Technologies, Inc., Passenger Sexual Assault Litigation*, MDL No. 23-3084 (N.D. Cal.). This Court has already ordered the cases to be consolidated for oral argument. *See* Dkt. No. 3.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 23-3445 and 24-5063

I am the attorney or self-represented party.

**This brief contains** | 4,645 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◉ complies with the length limit designated by court order dated | 08/19/2024 |.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Kannon K. Shanmugam | **Date** | 09/03/2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*