**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UBER TECHNOLOGIES, INC.; RASIER, LLC; RASIER-CA, LLC, | No. 23-3445 |
| *Petitioners*, | MDL. No. 3084 |
| v. | United States Judicial Panel on Multidistrict Litigation, JPML |
| UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION, | |
| *Respondent*, | OPINION |
| JANE DOE LS 340, et al.[*], | |
| *Real Parties in Interest*. | |

Petition for a Writ of Mandamus

Argued and Submitted October 8, 2024
San Francisco, California

Filed March 10, 2025

Before: M. Margaret McKeown, Lucy H. Koh, and
Anthony D. Johnstone, Circuit Judges.

Opinion by Judge Koh

---

[*] The court is not listing herein all of the numerous individual real parties in interest in this appeal.

## SUMMARY[**]

### Mandamus/Multidistrict Litigation

The panel denied the petition for writ of mandamus challenging an order of the Judicial Panel on Multidistrict Litigation ("JPML") centralizing claims against Uber Technologies, Inc. pursuant to the federal multidistrict litigation statute, 28 U.S.C. § 1407.

Plaintiffs in the centralized cases are individuals who were allegedly sexually assaulted or harassed by Uber drivers. Plaintiffs allege that Uber failed to take reasonable measures to prevent this misconduct by Uber drivers, asserting claims for negligence, misrepresentation, products liability, and vicarious liability against Uber.

The panel held that Uber had not shown the JPML committed a clear error of law or a clear abuse of discretion in centralizing the cases, as is required to establish an entitlement to a writ of mandamus. The JPML did not abuse its discretion in concluding that the centralized cases presented common questions of fact. Contrary to Uber's contention, nothing in Section 1407 requires that common questions of fact predominate over individual ones or that the cases be amenable to common proof, as would be required in a class action. Nor did the JPML abuse its discretion in concluding that centralization of the cases would be for the convenience of the parties and promote the just and efficient conduct of the actions.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel rejected Uber's argument that the collective action waiver in Uber's terms of use precluded centralization. Section 1407 grants the JPML the power to centralize cases on its own authority, and that power cannot be overridden by a private agreement to the contrary. To the extent Uber argues that the collective action waiver was a factor that the JPML should have given greater weight in the Section 1407 analysis, Uber likely waived this argument by failing to present it to the JPML. Even if this argument was not waived, Section 1407 does not require that the JPML accord the collective action waiver dispositive weight.

## COUNSEL

Kannon K. Shanmugam (argued) and William T. Marks, Paul Weiss Rifkind Wharton & Garrison LLP, Washington, D.C.; Robert A. Atkins, Paul Weiss Rifkind Wharton & Garrison LLP, New York, New York; Randall S. Luskey and Anna M. Stapleton, Paul Weiss Rifkind Wharton & Garrison LLP, San Francisco, California; for Petitioners.

Samuel Issacharoff (argued), New York, New York; William A. Levin and David M. Grimes, Levin Simes LLP, San Francisco, California; Adam B. Wolf, Peiffer Wolf Carr Kane Conway & Wise LLP, Los Angeles, California; Rachel B. Abrams, Peiffer Wolf Carr Kane Conway & Wise LLP, San Francisco, California; Brandon M. Wise, Peiffer Wolf Carr Kane Conway & Wise LLP, St. Louis, Missouri; Bartlet Brebner, Brebner Law Firm PC, Phoenix, Arizona; Eric D. Holland, Holland Law Firm, St. Louis, Missouri; Michael Nimmo, Wahlberg Woodruff Nimmo & Sloane LLP, Denver, Colorado; Matthew R. Wilson, Meyer Wilson Co.

LPA, Columbus, Ohio; Lauren Welling, Slater Slater Schulman LLP, Beverly Hills, California; Kimberly A. Dougherty, Justice Law Collaborative LLC, North Easton, Massachusetts; Andrew R. Kaufman and Sarah R. London, Lieff Cabraser Heimann & Bernstein, San Francisco, California; Roopal P. Luhana and Steven D. Cohn, Chaffin Luhana LLP, New York, New York; Bret D. Stanley, Kherkher Garcia LLP, Houston, Texas; Karen Barth Menzies, KBM Law, Los Angeles, California; John E. Williams Jr., Williams Hart & Boundas LLP, Houston, Texas; Benjamin T. Carroll, Kenney & Conley PC, Braintree, Massachusetts; for Respondents & Real Parties in Interest.

---

## OPINION

KOH, Circuit Judge:

Before the court is a mandamus petition filed by Uber Technologies, Inc., Rasier LLC, and Rasier-CA, LLA ("Uber") challenging an order of the Judicial Panel on Multidistrict Litigation ("JPML") transferring certain actions against Uber to the Northern District of California for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407. Uber contends the JPML improperly applied the relevant statutory criteria and improperly ignored the collective action waiver in its terms of use with riders that Uber claims precluded such transfer. For the reasons set forth below, we deny the petition.[1]

---

[1] We address the consolidated interlocutory appeal in a concurrently filed memorandum order.

## I.

### A.

Uber operates a mobile application that connects drivers with riders, allowing riders to obtain services similar to a traditional taxi service. Plaintiffs are individual riders who were allegedly sexually assaulted or harassed by Uber drivers during trips booked through the Uber application. Plaintiffs filed a series of individual lawsuits throughout the country against Uber based upon this conduct.

Although each complaint varies, plaintiffs generally allege that Uber has been on notice of a rash of sexual misconduct and assaults by its drivers since at least 2014 but has failed to take reasonable measures in response. Plaintiffs claim that Uber does not have an adequate background check process to screen its drivers, does not report sexual assaults to law enforcement or cooperate with them, has adopted a permissive "three strikes policy" for drivers found to have engaged in misconduct, and has declined to adopt other reasonable safety measures. Potential measures plaintiffs claim Uber could have adopted include employing industry-standard background checks, emergency notification to law enforcement, an improved system to respond to rider complaints to discipline drivers, and video monitoring of drivers.

Plaintiffs further allege that Uber repeatedly gave false assurances to riders that its platform was safe and falsely represented that Uber was taking steps to protect riders. For example, plaintiffs allege that Uber has historically charged a $1 "Safe Rider Fee" that passengers were told "support[ed] our continued efforts to ensure the safest possible platform for Uber riders and drivers, including an industry-leading background check process, regular motor vehicle checks,

driver safety education, development of safety features in the app, and insurance." Plaintiffs allege that Uber collected hundreds of millions of dollars in such fees, but did not spend the money on improving rider safety.

Plaintiffs variously assert claims for negligence, misrepresentation, products liability, and vicarious liability against Uber.

**B.**

28 U.S.C. § 1407 ("Section 1407"), the multidistrict litigation statute, provides that where "civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). To exercise this transfer authority, the JPML must find (i) that the actions "involv[e] one or more common questions of fact" and (ii) "that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." *Id*. To distinguish Section 1407's procedures from other forms of coordination or consolidation, the JPML refers to such transfers as "centralization," a terminology we employ herein.

In July 2023, certain plaintiffs filed a motion with the JPML seeking to have their cases centralized in the Northern District of California. The request encompassed 22 actions pending in 11 districts. By the time the JPML ordered centralization that number had risen to 79 actions pending in 13 judicial districts. Those numbers continue to grow.

Uber made two broad arguments in opposition to centralization. First, Uber argued that its terms of use to which riders agreed before using the Uber application precluded centralization. Specifically, Uber relied on the

following provision that purportedly waives the right to participate in collective actions (the "Collective Action Waiver"):

> Such claims may be brought and litigated in a court of competent jurisdiction by you on an individual basis only. On an individual basis means that you cannot bring such claims as a class, collective, coordinated, consolidated, mass and/or representative action against Uber. For the avoidance of doubt, **this precludes you from bringing claims as or participating in any kind of any class, collective, coordinated, consolidated, mass and/or representative or other kind of group, multi-plaintiff or joint action against Uber and no action brought by you may be consolidated or joined in any fashion with any other proceeding**.[2]

Uber argued that the creation of an MDL would constitute a "collective, coordinated, consolidated [or] mass" action and that plaintiffs' request for its creation violated this clause.

Second, Uber argued that centralization was inappropriate because the actions did not involve common

---

[2] The quoted language is taken from the January 17, 2023, version of the terms of use. The language of the Collective Action Waiver changed over time. However, the parties have apparently assumed that the Collective Action Waiver would have prohibited participation in the MDL notwithstanding these changes. Accordingly, the Court adopts the same assumption.

questions of fact that were sufficiently complex or numerous to warrant centralization, and there would be no efficiency gains from centralization in light of the numerous individualized legal and factual questions each case presented.

After full briefing and a hearing, the JPML unanimously agreed with plaintiffs that centralization was appropriate and appointed the Honorable Charles R. Breyer in the Northern District of California to oversee the MDL, noting that Judge Breyer "has unparalleled experience as a transferee judge." *In re Uber Techs., Inc., Passenger Sexual Assault Litig.* (*Uber I*), 699 F. Supp. 3d 1396, 1399–1400 (J.P.M.L. 2023). Uber then filed the instant mandamus petition challenging the JPML's transfer order centralizing the cases. At the invitation of this Court, the JPML issued a supplemental order responding to the petition and further explaining the rationale for its decision. *See In re Uber Techs., Inc., Passenger Sexual Assault Litig.* (*Uber II*), 712 F. Supp. 3d 1394 (J.P.M.L. 2024).

## II.

To qualify for mandamus relief, three conditions must be satisfied: "(1) the petitioner must have no other adequate means to attain the relief desired; (2) the petitioner must show that the right to the writ is clear and indisputable; and (3) 'even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.'" *Karnoski v. Trump*, 926 F.3d 1180, 1203 (9th Cir. 2019) (quoting *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380–81 (2004)).

Uber's petition falters at the second condition for mandamus. To establish a "right to issuance of the writ [that]

is clear and indisputable," Uber must demonstrate "exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion." *Cheney*, 542 U.S. at 367 (internal citation and quotation marks omitted). This is "a highly deferential standard of review" and "[m]andamus will not issue merely because the petitioner has identified legal error." *In re Van Dusen*, 654 F.3d 838, 841 (9th Cir. 2011). Rather, mandamus will issue only if we are left with a "'firm conviction' that the [JPML] misinterpreted the law . . . or committed a 'clear abuse of discretion.'" *In re Walsh*, 15 F.4th 1005, 1009 (9th Cir. 2021) (quoting *In re Perez*, 749 F.3d 849, 855 (9th Cir. 2014)).

Deference is particularly appropriate here because "the [MDL] statute grants unusually broad discretion to the [JPML] to carry out its assigned functions." *In re Collins*, 233 F.3d 809, 811 (3d Cir. 2000). This is confirmed by the statutory prohibition on "proceedings for review of any order of the [JPML] . . . except by extraordinary writ." 28 U.S.C. § 1407(e). The JPML comprises a panel of "seven circuit and district judges designated . . . by the Chief Justice of the United States, no two of whom shall be from the same circuit." 28 U.S.C. § 1407(d). These judges "bring[] to bear decades of experience with more than a thousand MDL proceedings." *FedEx Ground Package Sys., Inc. v. U.S. Jud. Panel on Multidistrict Litig.*, 662 F.3d 887, 891 (7th Cir. 2011). It would be anomalous for a three-judge panel from a single circuit to override the judgment of such a body in all but the most extreme circumstances. Indeed, we are unaware of a single instance in the more than 50 years that the JPML has existed where an appellate court has reversed a JPML order granting centralization. Uber has not convinced us that we should be the first.

### A.

The first requirement for Section 1407 centralization is that the actions share "one or more common questions of fact." 28 U.S.C. § 1407(a). In finding that this requirement was satisfied, the JPML identified the following common factual questions: "Uber's knowledge about the prevalence of sexual assault by Uber drivers, and whether Uber failed to conduct adequate background checks of its drivers, train drivers regarding sexual assault and harassment, implement adequate safety measures to protect passengers from sexual assault, and adequately respond to complaints about drivers." *Uber I*, 699 F. Supp. 3d at 1398.[3] In attacking this finding, Uber argues centralization is appropriate only where common questions of fact "predominate over individual factual issues," and argues the questions of fact identified by the panel are not "common" across the actions because coordinated proceedings will produce no "common answer[s]" amongst the plaintiffs. Uber's arguments are unpersuasive.

Section 1407 contains no requirement that common factual questions predominate over individual ones, instead

---

[3] The JPML elaborated on this list in its supplemental order in the instant case, explaining common issues "included but were not limited to: (1) Uber's policies for vetting, training, and monitoring of its drivers; (2) Uber's representations about its safety and hiring policies; (3) any knowledge Uber may have had concerning the pervasiveness of sexual assault by its drivers; (4) Uber's practices for gathering information about sexual assault and sexual harassment on its platform; (5) Uber's practices for responding to and investigating sexual assault and harassment complaints; (6) Uber's policies on cooperating with law enforcement in connection with sexual assault and harassment complaints; (7) Uber's policies regarding disciplining drivers about whom it received complaints; and (8) safety measures that were, or could have been but were not, implemented." *Uber II*, 712 F. Supp. 3d at 1399.

requiring only that "one or more common questions of fact" exist. 28 U.S.C. § 1407(a). Indeed, during the drafting of Section 1407, Congress considered but declined to adopt such a predominance requirement.[4] The JPML has similarly declined to adopt such a predominance requirement, instead making clear that "Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 669 F. Supp. 3d 1375, 1380 (J.P.M.L. 2023) (quoting *In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005)); *see, e.g.*, *In re Rembrandt Techs., LP, Pat. Litig.*, 493 F. Supp. 2d 1367, 1369 (J.P.M.L. 2007) (ordering consolidation over defendant's objection that "unique questions of fact relating to each patent will predominate over common factual questions"); *In re Kugel Mesh Hernia Patch Prods. Liab. Litig.*, 493 F. Supp. 2d 1371, 1372–73 (J.P.M.L. 2007) (similar).

The JPML decisions cited by Uber that have referenced predominance did so not in evaluating whether the threshold common factual questions requirement is met, but instead in

---

[4] *See A Proposal to Provide Pre-Trial Consolidation of Multidistrict Litigation: Hearings Before the S. Comm. on the Judiciary, Subcomm. on Improvements in Judicial Machinery*, 89th & 90th Cong. 134 (1967) (supplemental statement of Philip Price) (proposing addition of requirement that the JPML find "common questions of fact and law predominate" and noting this "is similar to that of the recently amended Federal Rule of Civil Procedure 23(b)(3)"); *Id.* (Memorandum from the Law Firm of Cravath, Swaine & Moore to Senate Judiciary Committee) ("A prerequisite to Section 1407 treatment is that the cases involve 'one or more common questions of fact'. Because the procedure is extraordinary and involves stripping the transferor court of some of its functions, we suggest . . . incorporate[ing] language in the revised Fed. R. Civ. P. 23(b)(3)" requiring common question of fact "predominate").

considering whether centralization will likely "be for the convenience of the parties and witnesses" and "promote the just and efficient conduct of the actions." 28 U.S.C. § 1407(a); *see Uber II*, 712 F. Supp. 3d at 1399 ("To the extent predominance is a factor, it is only one factor the [JPML] considers when it determines whether centralization of a litigation will result in significant efficiencies for the parties, witnesses, and the courts.").

Uber argues that the common factual questions identified by the JPML are not, in fact, common because the significance of the underlying facts to any given case will vary substantially. For example, Uber suggests that whether the company mishandled complaints about a given driver or whether alternative policies would have prevented any given assault are questions that have "no common answer" but instead vary from plaintiff to plaintiff. But Section 1407 speaks exclusively in terms of "common questions of fact." 28 U.S.C. § 1407(a). Here, there are many common questions of fact. For example, the JPML properly observed that "Uber's corporate policies and practices as to alleged passenger sexual assaults" present a common factual question, *Uber I*, 699 F. Supp. 3d at 1399, because all plaintiffs will no doubt seek discovery into what those policies were, even if the substance of those policies may have different implications for the ultimate resolution of each plaintiffs' case.

Uber's attempt to equate common questions with common answers is apparently based on an improper comparison to the class certification context. In that context, it has become conventional to treat Federal Rule of Civil Procedure 23's requirement that "there [be] questions of law or fact common to the class" as, in reality, requiring proof that class proceedings are capable of generating common

*answers* across the class. *See Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011); *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1052 (9th Cir. 2015) ("[I]t is not just the common contention, but the answer to that contention, that is important . . . ."). But "[t]he criteria for a class determination pursuant to Rule 23 . . . are different from the criteria for transfer pursuant to 28 U.S.C. § 1407." *In re 7-Eleven Franchise Antitrust Litig.*, 358 F. Supp. 286, 287 (J.P.M.L. 1973). A class action must, by design, adjudicate the claims, or at least a portion of the claims, of all class members "in one stroke," *Wal-mart*, 564 U.S. at 350, whereas the MDL statute contains precisely the opposite presumption, requiring all cases be remanded to their individual transferor districts for trial. *See* 28 U.S.C. § 1407(a); *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34–35 (1998) (finding controlling the "uncompromising terms of the Panel's remand obligation"). Of course, the transferee judge has the authority to resolve pretrial motions that may, in practice, prove dispositive, but there is no requirement that the transferee judge be able to adjudicate the cases on an aggregate basis.

To be clear, the extent to which common questions predominate or are amenable to common proof may be relevant to the second requirement for centralization. But the significance of common questions and their amenability to common proof are at most individual factors that compose one part of the broader, discretionary analysis the JPML must undertake at the second step of the centralization inquiry. As explained below, the JPML acted well within its discretion when it concluded these factors were not dispositive here.

## B.

The second requirement for centralization is "that transfers . . . will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). This determination is made in light of the purposes of the MDL statute, *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1230 (9th Cir. 2006), and so generally involves consideration of four goals: "[1] eliminat[ion of] duplication in discovery, [2] avoid[ance of] conflicting rulings and schedules, [3] reduc[tion of] litigation costs, and [4] [conservation of] the time and effort of the parties, the attorneys, the witnesses, and the courts." *Gelboim v. Bank of Am. Corp*., 574 U.S. 405, 410 (2015) (quoting Fed. J. Ctr., *Manual for Complex Litig.* § 20.131 (4th ed. 2004)).

Here, the JPML concluded that "[c]entralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary." *Uber I,* 699 F. Supp. 3d at 1398. The record amply supports this conclusion. There was a large and quickly growing number of cases against Uber that raised common factual issues. Each case involved substantially identical and duplicative discovery into Uber's knowledge, policies, and conduct in relation to sexual assaults by Uber drivers. Coordinated discovery into these matters would generate substantial efficiencies, whereas in the absence of centralization Uber would have been required to produce the same documents and corporate witnesses in potentially hundreds of individual actions across numerous judicial districts. Centralization would also avoid inefficient and conflicting rulings on the scope of discovery, including as to which witnesses were to be deposed and under what circumstances, which ESI sources were to be searched,

which search terms or other methods were to be used, and which documents would be produced.

Uber does not meaningfully dispute these benefits to centralization. Instead, Uber argues that the JPML failed to properly consider the drawbacks of centralization in light of the individual issues each case presents. Contrary to Uber's contention, the JPML did consider this evidence but, on balance, found the benefits of centralization outweighed any inconvenience it may cause. *See Uber I*, 699 F. Supp. 3d at 1398–99; *see also Uber II*, 712 F. Supp. 3d at 1398 (confirming that the JPML considered the arguments Uber now raises on appeal). As explained below, the JPML did not abuse its discretion when balancing these considerations.

Uber argues centralization is inappropriate because the plaintiffs' claims arise under disparate state laws and so do not present any common legal questions that might benefit from coordinated briefing. But the existence of common legal, as opposed to factual, questions is not a prerequisite to centralization. *See* Wright & Miller, Fed. Prac. & Prod. § 3863 (4th ed.) ("[T]he fact different legal theories are advanced in some or all of the cases [should not] prevent coordination and transfer."); David F. Herr, *Multidistrict Litigation Manual* § 5:4 (May 2024) ("The presence of common issues of law has no effect on transfer: it is neither a necessary nor sufficient condition for transfer."). The JPML "routinely . . . centralize[s] actions asserting similar claims under different state statutes where they involve common questions of fact." *In re BPS Direct, LLC, & Cabela's LLC, Wiretapping Litig.*, 677 F. Supp. 3d 1363, 1364–65 (J.P.M.L. 2023); *see also In re CVS Caremark Corp. Wage & Hour Emp. Pracs. Litig.*, 684 F. Supp. 2d 1377, 1378 (J.P.M.L. 2010) ("[I]t is within the very nature of coordinated or consolidated pretrial proceedings in

multidistrict litigation for the transferee judge to be called upon to apply the law of more than one state." (internal quotation marks omitted)).

Uber points out that the JPML previously refused to create an MDL involving wage-and-hour claims by Uber drivers against the company, concluding in that case that "the determination of whether a plaintiff is an employee or independent contractor will rest on state-specific legal and factual inquiries that are not suitable for centralized pretrial proceedings." *In re Uber Techs., Inc., Wage & Hour Emp. Pracs. (Uber Wage & Hour)*, 158 F. Supp. 3d 1372, 1373 (J.P.M.L. 2016). Similarly, Uber argues this case is uniquely ill suited to centralization because the underlying tortious conduct was committed by third-party drivers,[5] citing the JPML's decision in *In re Varsity Spirit Athlete Abuse Litig. (Varsity Spirit)*, 677 F. Supp. 3d 1376 (J.P.M.L. 2023). But both cases are distinguishable because they involved other factors, not present here, that weighed against centralization. In *Uber Wage & Hour*, there was an absence of common factual issues that would justify centralization, *see* 158 F. Supp. 3d at 1373, *Varsity Spirit* involved "just ten actions . . . pending in seven districts," *Uber I*, 699 F. Supp. 3d at 1399, and in both of those cases the JPML found that informal coordination of discovery was practical, whereas

---

[5] Uber also argues that centralization "created unnecessary and undue complication and confusion with respect to the procedure for joining drivers as parties in these lawsuits" because the drivers will likely argue they are not subject to personal jurisdiction in California. This argument lacks merit because, as Uber acknowledges, an MDL transferee court may exercise the same personal jurisdiction as the court where the action was originally filed. *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 163 (2d Cir. 1987). Accordingly, the creation of the MDL in no way contributed to any supposed jurisdictional problem in joining third party drivers.

the JPML found that such informal coordination was not practicable here. *See id* at 1398–99.

Section 1407(a) calls on the JPML to balance a multitude of competing considerations concerning the benefits and drawbacks of centralization. Such a determination is necessarily "case-specific" and "turns not on a neat set of legal rules, but instead on the application of broad standards to multifarious, fleeting, special, narrow facts that utterly resist generalization." *McLane Co. v. E.E.O.C.*, 581 U.S. 72, 81 (2017) (internal quotation marks and citations omitted). On mandamus review, we are generally not at liberty to reweigh the benefits and drawbacks of such a discretionary decision. *See Kasey v. Molybdenum Corp. of Am.*, 408 F.2d 16, 20 (9th Cir. 1969) (Mandamus will be denied as long as "it appears from a well-reasoned holding by the trial judge that he has considered the [relevant factors] and has made his decision accordingly."); *N. Acceptance Tr. 1065 v. Gray*, 423 F.2d 653, 654 (9th Cir. 1970) (explaining that it is inappropriate on mandamus review for an appellate court to engage in "a de novo balancing . . . of the competing factors bearing upon convenience and the interests of justice"). Instead, weighing these competing factors to determine whether centralization is desirable "is best left to . . . [the] JPML, without trying to impose a rigid rule for all cases and circumstances." *FedEx Ground Packaging Sys.*, 662 F.3d at 891 ("The choice between these two methods of case management is an archetype for a discretionary judgment, and . . . the JPML [is] in the best position to make that judgment."). Uber has not demonstrated the JPML's weighing of these competing considerations was a clear abuse of discretion.

## C.

Uber's final argument is that the Collective Action Waiver in its terms of use precluded centralization. Uber contends that the Collective Action Waiver is no different than other agreements modifying litigation procedures that courts are willing to enforce, citing forum selection clauses, arbitration clauses, and class action waivers as examples. We disagree that the Collective Action Waiver precluded centralization.

Where a federal statute vests a court with the power (or duty) to act of its own accord, a private agreement cannot bind the court and the agreement is entitled to only so much consideration as provided for by Congress. Forum selection clauses neatly illustrate this rule. A forum selection clause cannot eliminate a district court's jurisdiction to hear a suit. *See M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 12 (1972) ("No one seriously contends in this case that the forum selection clause 'ousted' the District Court of jurisdiction . . . ."); Restatement (Second) of Conflict of Laws § 80, cmt. a (rev. ed. 1988) ("Private individuals have no power to alter the rules of judicial jurisdiction."). Nor can a forum selection clause render venue "wrong" or "improper" under the governing federal venue laws. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013) ("Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause."). Rather, courts enforce forum selection clauses because the general change-of-venue statute, 28 U.S.C. § 1404(a) ("Section 1404(a)"), requires that such agreements be considered in the venue analysis. *See Atl. Marine*, 571 U.S. at 58–63; *Stewart Org., Inc. v.*

*Ricoh Corp.,* 487 U.S. 22, 31 (1988) ("The forum-selection clause . . . should receive neither dispositive consideration (as respondent might have it) nor no consideration (as Alabama law might have it), but rather the consideration for which Congress provided in § 1404(a)."). Whether Section 1407 requires the Collective Action Waiver must be given similar weight in the Section 1407 analysis is a matter of statutory interpretation.[6]

---

[6] The other examples of enforceable provision cited by Uber—arbitration clauses and class action waivers—are consistent with this rule. Courts enforce arbitration clauses for the straightforward reason that a federal statute, the Federal Arbitration Act ("FAA"), generally requires they do so. *See* 9 U.S.C. § 2; *see, e.g.*, *Viking River Cruises, Inc.* v. *Moriana*, 596 U.S. 639, 650 (2022) (explaining that the FAA "renders agreements to arbitrate enforceable as a matter of federal law"). Class action waivers contained in arbitration agreements are enforceable for the same reason. *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233–35 (2013) ("And consistent with [the] text [of the FAA], courts must rigorously enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted." (cleaned up)). But it is not clear that class action waivers not contained in an arbitration clause are generally enforceable. *Compare Davis v. Oasis Legal Fin. Operating Co., LLC*, 936 F.3d 1174, 1183 (11th Cir. 2019) ("The class action waiver here is not contained in an arbitration agreement, so § 2 of the FAA does not stand in the way of enforcing Georgia's public policy.")*, with Benedict v. Hewlett-Packard Co.*, No. 13-cv-00119-BLF, 2016 WL 1213985, at *4 (N.D. Cal. Mar. 29, 2016) (collecting cases holding class actions waivers not contained enforceable under FLSA). We need not decide whether class action waivers not contained in an arbitration clause are generally enforceable because Federal Rule of Civil Procedure 23, which governs class actions, is distinguishable from Section 1407. Whereas the JPML may order centralization on its own initiative, and as explained above cannot be stripped of that authority through a private agreement, a court may not certify a class *sua sponte* or otherwise compel a plaintiff to bring a class action.

It is clear from the text of Section 1407 that the statute does not create an individual right to centralization that may be waived but instead vests the JPML with a power to manage the federal docket by centralizing cases that is unfettered by private agreements. Section 1407(a) provides that "civil actions . . . may be transferred to any district for coordinated or consolidated pretrial proceedings" and that "[s]uch transfers shall be made by the [JPML] upon its determination that" the statutory criteria are met. 28 U.S.C. § 1407(a). This provision makes clear that it is the JPML, not private parties, that must make the "determination" whether centralization is appropriate. *Id.* By specifying such actions "may be transferred," *id.*, the provision "confer[s] categorical permission" upon the JPML to act where the statute's criteria are met. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (holding that Rule 23's statement that "[a] class action may be maintained" if the Rule's conditions are met precluded state law from imposing additional limitations on maintaining class actions (quoting Fed. R. Civ. Proc. 23(b))). Section 1407 expressly authorizes the JPML to initiate transfer proceedings *sua sponte* "upon its own initiative," even where no party has requested centralization. 28 U.S.C. § 1407(c). Conversely, the JPML often denies centralization even where all parties have joined in the transfer application. *See In re Equinox Fitness Wage & Hour Emp. Pracs. Litig.*, 764 F. Supp. 2d 1347, 1349 (J.P.M.L. 2011) (collecting cases). Only the JPML may order Section 1407 centralization, and the JPML's refusal to do so is completely unreviewable, making clear centralization is not a matter of individual right. *See* 28 U.S.C. § 1407(e). Under the plain text of Section 1407, the JPML may centralize a case, or

decline to do so, notwithstanding any private agreement to the contrary.[7]

The history of Section 1407 confirms this reading of the statute. Section 1407 was enacted in 1968 in response to the judiciary's experience with the "more than 1,800 separate actions filed against electrical equipment manufacturers in 33 District Courts." *Gelboim*, 574 U.S. at 410; *see* H.R. No. 1130, 90th Cong., 2d Sess. 2 (1968). The number and volume of those cases threatened to overwhelm the federal courts and were "rendered manageable only by conducting joint pretrial proceedings." *PPA*, 460 F.3d at 1229–30.[8]

Section 1407 was enacted "to furnish statutory authority for the kind of pretrial consolidation and coordination successfully implemented in the electrical cases, but which, in that situation, entirely depended on the voluntary agreement of all the parties as well as presiding judges." H.R. No. 1130, 90th Cong., 2d Sess. 2 (1968); *PPA*, 460 F.3d at 1230. Significantly, Congress believed the system of voluntary cooperation used in the electrical equipment cases might prove inadequate in the future and accordingly "saw a need to create a *mandatory* version of that procedure" when

---

[7] Uber argues that the JPML's *sua sponte* transfer authority does not matter here, because it was the plaintiffs who initiated the transfer proceedings with the JPML. But the JPML explicitly invoked its "authority to centralize civil cases upon its own initiative" in rejecting Uber's argument concerning the Collective Action Waiver. *Uber I*, 699 F. Supp. 3d at 1399.

[8] The Senate Report described how the Hon. Edwin A. Robson, who was vice chairman of the committee coordinating the electrical equipment cases and a key drafter of the MDL legislation, "estimated that the electrical cases might have taken 20 years to litigate without the extraordinary procedures used." S.R. No. 454, 90th Cong., 1st Sess. 6 (1967).

it enacted Section 1407. *PPA*, 460 F.3d at 1230 (emphasis added); *see also* Andrew D. Brant, *"A Radical Proposal": The Multidistrict Litigation Act of 1968*, 165 U. PENN. L. REV. 831, 839 (2017) ("The creators of the [MDL] statute had the conviction that a litigation explosion was coming that would overwhelm the federal courts. . . . In [the drafters'] view, the only way to meet the demands created by the litigation explosion was through centralized judicial power over national controversies.")*.* As the Senate Report explains:

> The opinion was expressed by bench and bar, however, that the voluntary procedures used in the electrical cases are insufficient for future litigation for two reasons: (1) Great inefficiencies resulted from the necessity of gathering together as many as 35 district judges at one time and place to decide upon procedural matters; and (2) the plan could not have proceeded without the complete consent of judges, attorneys, and parties. Because of the obvious emergency presented by this unique situation involving almost 2,000 cases, cooperation was relatively easy to achieve. In the future, however, under less pressing circumstances the consent of counsel and the judges may be more difficult to obtain. . . . **The goal of efficient justice should not depend on such contingencies.**

S.R. No. 454, 90th Cong., 1st Sess. 6–7 (1967) (emphasis added). This history underscores what is plain from the text of Section 1407: Parties may not opt out of Section 1407's "mandatory" procedure. *PPA*, 460 F.3d at 1230.

Uber argues that considering the parties' agreement is consistent with the text of Section 1407 because doing so "will serve 'the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.'" As an initial matter, at the JPML Uber took the position that "[t]he Panel need not conduct any analysis under 28 U.S.C. § 1407 because this motion is barred by the plaintiffs' contractual agreement with Uber." Uber did not argue, as it now does, that the Collective Action Waiver was a factor to be considered in the Section 1407 analysis, but instead claimed the Section 1407 analysis was unnecessary. "[W]e will not find the [JPML's] decision so egregiously wrong as to constitute clear error [for purposes of mandamus] where the purported error was never brought to its attention." *United States v. U.S. Dist. Ct. for S. Dist. of California*, 384 F.3d 1202, 1205 (9th Cir. 2004). Even assuming Uber's argument, that the Collective Action Waiver bears on "the convenience of parties and witnesses," was properly preserved, it is insufficient to warrant mandamus relief.

Uber's argument rests upon an analogy to the general change of venue statute, which permits transfer "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). In *Atlantic Marine Construction*, the Supreme Court found that, in applying Section 1404(a), "a forum-selection clause [should] be given controlling weight in all but the most exceptional cases." 571 U.S. at 58 (internal quotation marks omitted). In Uber's view, the Collective Action Waiver should be given similarly controlling weight in applying Section 1407. We disagree because, as explained above, the text and history of Section 1407 make clear that the statute grants the JPML broad power to centralize cases, even over the objection of the parties. Uber's analogy to Section 1404(a) cannot

overcome this straightforward interpretation of the statute and is inapt for several reasons.

*First*, there are key textual differences between Section 1404(a) and Section 1407. *See In re Regents of Univ. of California*, 964 F.2d 1128, 1133 (Fed. Cir. 1992) ("The considerations pertinent to a change of venue under § 1404(a) are not the same as those pertinent to coordination of pretrial proceedings in multiple cases involving common parties [under Section 1407]."). Section 1407 vests the power to make centralization determinations solely with the JPML and expressly grants the JPML the authority to centralize cases on its own initiative.[9] By contrast, Section 1404(a) explicitly contemplates transfer to a "district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1407(a) also expressly demands consideration of the need to "promote the just and efficient conduct of such actions," whereas Section 1404(a) makes no reference to efficiency or to the "conduct of such actions." 28 U.S.C. § 1407(a). Section 1404(a) instead places "the convenience of parties and witnesses" front and center, while capturing all other considerations in the nebulous concept of the "interest of justice." 28 U.S.C. § 1404(a).[10]

---

[9] Uber argues that courts may initiate transfer under Section 1404(a) *sua sponte* as well. However, any such authority under Section 1404(a) has been inferred by courts, whereas Congress expressly and unqualifiedly granted the JPML such authority in Section 1407.

[10] Uber cites to the Fifth Circuit's decision in *In re Rolls Royce Corp.*, 775 F.3d 671 (5th Cir. 2014), to support its argument that Section 1404(a) and Section 1407 are textually similar. That decision involved a mandamus petition challenging a transfer under Section 1404(a), not Section 1407, and so any statement about how Section 1407 should be construed was pure dicta. What is more, the Fifth Circuit went on to observe "that judicial economy is of significant concern to a MDL

*Second*, the benefits derived from centralization extend beyond the parties to any collective action waiver in a way that is not true of a forum selection clause. The judiciary typically has a "strong interest" in enforcing forum selection clauses. *See Stewart*, 487 U.S. at 33 (Kennedy, J., concurring) ("The federal judicial system has a strong interest in [enforcing forum selection clauses], not only to spare litigants unnecessary costs but also to relieve courts of time-consuming pretrial motions."). By contrast, the judiciary has a strong institutional interest in *not* enforcing collective action waivers where Section 1407 centralization is otherwise appropriate. *See PPA*, 460 F.3d at 1230 ("Without [Section 1407 centralization], conflicting pretrial discovery demands for documents and witnesses might disrupt the functions of the Federal courts . . . ." (internal quotation marks omitted)). Similarly, centralization, by its nature, will frequently involve a diverse array of other private parties who never agreed to any collective action waiver, but whose interests would nonetheless be harmed by the disaggregation resulting from the enforcement of such a clause. Here, for example, the Collective Action Waiver may not be enforceable against many of the plaintiffs in the MDL.[11] Whatever significance a collective action waiver

---

transfer decision and often parallels private interests—more so than for the mine-run transfer—and so while *Atlantic Marine* may counsel against such consolidation in a marginal case, **its independent force is much dissipated in the world of MDL**." *Id.* at 682 (emphasis added).

[11] The Collective Action Waiver may not apply to some plaintiffs for at least two reasons. First, plaintiffs argued before the transferee court that Uber has not proven that all of the plaintiffs actually agreed to the terms of use. Second, the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFASASHA") may preclude enforcement of the Collective Action Waiver, at least as against any plaintiff whose claim accrued on or after March 3, 2022, the Act's

may have to assessing the "convenience of the parties" who were signatories to it, the waiver can have no bearing on the substantial interests of the judiciary and third parties weighing in favor of centralization.

*Third*, courts accord controlling weight to forum selection clauses in the Section 1404(a) analysis because it is presumed that "[w]hatever inconvenience [the parties] would suffer by being forced to litigate in the contractual forum" was "clearly foreseeable at the time of contracting." *Atl. Marine*, 571 U.S. at 64 (internal quotation marks omitted). But the kind of mass litigation that justifies centralization under Section 1407 is, by its nature, unforeseeable and extraordinary. It accordingly makes far less sense to presume that the "convenience of the parties and witnesses" will be best served by enforcing a collective action waiver. 28 U.S.C. § 1407(a).

Uber has not shown the JPML committed a clear abuse of discretion or clear legal error. Accordingly, Uber's Petition for Writ of Mandamus is **DENIED.**

---

effective date. *See* Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, PL 117-90, March 3, 2022, 136 Stat 26. However, for purposes of this appeal we need not resolve whether the EFASASHA applies.